UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DEREK BROWN and JULIA BARECKI-BROWN, <br><br> Plaintiffs, <br> v. <br><br> DERRICK BURMASTER, SHAUN FERGUSON, and the CITY OF NEW ORLEANS, <br><br> Defendants. | CIVIL ACTION NO. 22-0847 <br><br> SECTION: L <br><br> HONORABLE ELDON E. FALLON <br><br> DIVISION: 4 <br><br> HONORABLE KAREN WELLS ROBY |

## FIRST AMENDED COMPLAINT

1. On April 10, 2021, NOPD officer Derrick Burmaster and his partner responded to a noise complaint at the home of the Brown family in the Lower Garden District.

2. When the officers entered the gate of the home, two dogs ran towards the officers.

3. Burmaster's partner stepped backwards and exited the gate.

4. But Burmaster withdrew his firearm and fired three rounds at the smaller of the two dogs, a 18-week-old rescue puppy named Apollo. Burmaster struck Apollo with one round.

5. Apollo was a Catahoula and weighed just over 22 pounds. He stood less than 18 inches tall. He was so young that he had not yet developed the ability to bark. This was Apollo:



6.     Apollo was so small that Burmaster's bullet passed right through him – entering through the back of Apollo's neck and exiting through Apollo's chest. According to an autopsy, the bullet broke two of Apollo's ribs, damaged his lung, and caused his lung to fill with blood.

7.     Shrapnel from Burmaster's volley injured three of Apollo's paws, and caused an injury to the hand of Burmaster's partner.

8.     Plaintiffs Derek Brown and Julia Barecki-Brown stepped outside their home to find out what was happening. They found their dog Apollo bleeding on the ground.

9.     Mr. Brown held Apollo as he died from the gunshot wound.

10.    NOPD's internal affairs division investigated Burmaster's shooting of Apollo. It found the shooting to be unjustified.

11.    NOPD's Use of Force Review Board also concluded that Burmaster's shooting of Apollo was unjustified.

12.    But it was too late. The City had ample warning about Burmaster: he had at least thirty recorded uses of force since 2011, including one time in which he shot and killed a dog. He should not have still been working on the street. The City failed in its supervision of Officer Burmaster.

13. The City also failed to provide Burmaster with sufficient training (1) on the use of nonlethal force and (2) to deal with animals encountered in the line of duty.

14. Plaintiffs now bring this suit for justice and accountability.

## II.   JURISDICTION AND VENUE

15. Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988. Jurisdiction derives from 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights).

16. Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear claims arising under state law.

17. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to Plaintiffs' claims arose in the Eastern District of Louisiana.

## III.   PARTIES

*Plaintiffs*

18. Plaintiff **DEREK BROWN** is an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana. He is married to Julia Barecki-Brown.

19. Plaintiff **JULIA BARECKI-BROWN** is an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana. She is married to Derek Brown.

*Defendants*

20. Defendant Officer **DERRICK BURMASTER** is an adult resident of the Eastern District of Louisiana and an officer in the New Orleans Police Department.

21. Defendant **SHAUN FERGUSON** is an adult resident of the Eastern District of Louisiana and the Superintendent of the New Orleans Police Department. Defendant Ferguson is responsible for the supervision, administration, policies, practices, procedures, and customs of the NOPD. He is responsible for the hiring, training, discipline, and control of the NOPD staff,

supervisors, and deputies. He is sued in his individual and official capacities.

22. Defendant **CITY OF NEW ORLEANS** is a political subdivision of the State of Louisiana. It operates the New Orleans Police Department, a law enforcement agency operating in the Eastern District of Louisiana which employed and controlled the Officer-Defendant in this case and was responsible for the hiring, training, and discipline of the officer. The City of New Orleans, through the NOPD, also created, instituted, and oversaw enforcing the policies and procedures at issue in this case.

23. Except as otherwise indicated, each defendant is a joint tortfeasor with every other defendant under Louisiana Civil Code Art. 2324.

### IV.   STATEMENT OF FACTS

24. In early 2021, the Browns adopted Apollo from Trampled Rose Rescue and Rehab, a nonprofit dog rescue operating in southeast Louisiana.

25. Apollo was one of ten puppies born to a recent rescue whose breeder had kept her chained to a tree while pregnant. Apollo is the dog on the right in the following picture:



26. The Browns took Apollo into their home, joining their other dog, Bucho.

27. Holly Williams of Trampled Rose Rescue described the Browns as "the kind of family that we hope to find each time for rescues."

28. The Browns quickly came to care deeply for Apollo.

29. On April 10, 2021, New Orleans Police Department officer Derrick Burmaster and his partner responded to a noise complaint at the Browns' home in the Lower Garden District.

30. The Brown's home is surrounded by a fence and gate.

31. The officers anticipated that dogs might be present, and banged on the fence to see if any dogs were present.

32. The officers then opened and entered the gate of the Browns' home. The Brown's two dogs ran down the steps of the home towards the officers.

33. Burmaster's partner responded by stepping backwards out of the gate.

34. Burmaster, however, did not retreat.

35. Nor did he deploy the TASER he was carrying, even though NOPD policy specifically authorizes the use of TASERs on animals.[1]

36. Nor did he use a baton – because he was not carrying one, in violation of NOPD policy.

37. Instead, Burmaster withdrew his service firearm and fired three times at the smaller of the two dogs, which was Apollo.

38. He fired multiple rounds even though he was in a residential area, with homes he knew to be occupied.

39. Burmaster struck Apollo with one of the rounds.

40. Apollo was within the Brown's property when Burmaster shot him.

---

[1] NOPD Policy Manual Chapter 1.7.1, ¶ 57 et seq.

41. Apollo was so small that the bullet passed right through him – entering through the back of Apollo's neck and exiting through Apollo's chest.

42. The bullet broke two ribs and cut Apollo's lung as it passed through his body, causing his lung to fill with blood.

43. A piece of shrapnel from Burmaster's gunfire hit the other officer.

44. That officer was taken to the Tulane University Medical Center to be treated for the minor resulting injury.

45. Plaintiffs Derek Brown and Julia Barecki-Brown heard the gunfire, thinking it was perhaps fireworks. They stepped outside their home to find out what was happening. They found Apollo bleeding on the ground.

46. Mr. Brown held Apollo as he died from the gunshot wound.

47. The Browns were devastated.

48. "I feel responsible," said Mr. Brown. "It's my job to protect that little guy."

49. An autopsy by LSU's Louisiana Animal Disease Diagnostic Laboratory confirmed that Apollo suffered "[t]rauma due to multiple gunshot wounds."

50. The autopsy found that Apollo weighed only 10.1 kg (22.25 lbs), and stood only 17.7 inches tall.

51. The autopsy showed that three of Apollo's limbs had been lacerated by metal fragments from the bullets. Some of the fragments were found inside of Apollo's paws.

52. Burmaster's actions violated the U.S. Constitution and state law, and also violated NOPD policy.

53. NOPD's policy manual requires officers to develop "reasonable contingency plans for dealing with (an) animal" for which they have sufficient warning. But, officers can "use

firearms to stop an animal ... (if it) appears to pose an imminent threat to human safety and (if) alternative methods are not reasonably available or would likely be ineffective," the manual adds.

54. Officers must also "ensure there is no risk to people in the area" when opening fire on an animal to comply with the policy.

55. Here, Burmaster did not develop any contingency plans for dealing with an animal, even though he suspected animals might be present.

56. Burmaster did not employ available alternative methods.

57. For example, NOPD policy specifically notes that a TASER "has proven to be an effective tool against dangerous animals and may reduce the need for greater, more injurious force against such animals. The use of a CEW on an animal is a safer, more humane, and less traumatic conclusion to the incident."[2]

58. Burmaster had a TASER on his person, but did not use it.

59. Burmaster did not ensure there was no risk to people in the area.

60. (Indeed, he injured his own partner with his gunfire.)

61. NOPD's internal affairs division, the Public Integrity Bureau ("PIB"), investigated Burmaster's shooting of Apollo.

62. PIB found it to be unjustified.

63. Specifically, PIB found that Burmaster had not engaged in appropriate de-escalation of the situation.

64. PIB also found that Burmaster should have had a baton with him, which he could have used as an alternative to his firearm. But Burmaster was not carrying a firearm.

---

[2] NOPD Policy Manual Chapter 1.7.1, ¶ 62

65. NOPD's Use of Force Review Board also concluded that Burmaster's shooting of Apollo was unjustified.

66. Accordingly, the Use of Force Review Board sustained PIB's findings of two violations – a violation of NOPD's use of force policy, and a violation of NOPD's uniform policy (because of Burmaster's failure to carry a baton).

67. This was not the first time Burmaster had shot and killed a dog.

68. In 2012, Burmaster and a crime lab technician went to a home in the Upper 9th Ward to investigate a property damage complaint.

69. The technician saw two dogs and told Burmaster the animals scared her, so he went to the home's yard to tell the owner to secure the dogs.

70. When the dogs approached Burmaster, he withdrew his service weapon and fired twice, striking and killing one of the dogs.

71. Burmaster is a frequent user of force.

72. He is recorded as having used force at least 30 times from 2011 to the present.

73. His PIB Short Form reflects a range of complaints about Burmaster's use of force, including a Public Initiated Complaint in 2008 (PIB Control Number: 2008-0306-C), a Public Initiated Complaint in 2010 (PIB Control Number: 2010-0673-C), a Rank Initiated Complaint in 2012 (PIB Control Number: 2012-0513-R), and a Public Initiated Complaint from 2013 (PIB Control Number: 2013-0398-C).

74. NOPD has sustained a range of rule violations by Burmaster, including violations regarding verbal intimidation, moral conduct, professionalism, performance of duty, neglect of duty, failure to comply with instructions,

75. Burmaster has had dozens of allegations of NOPD rule violations brought against him, and at least **twenty** of them were sustained by NOPD.

## V.   CAUSES OF ACTION

### *First Cause of Action* – Federal Civil Rights Violations
*Against Burmaster*

76. Plaintiff incorporates the allegations in each preceding and following paragraph.

77. Burmaster engaged in a course of conduct that deprived Plaintiffs of their Fourth, Fifth and Fourteenth rights.

78. The Fourth Amendment provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"

79. Privately-owned dogs are "effects" under the Fourth Amendment.[3]

80. It is clearly established that an officer cannot shoot a dog in the absence of an objectively legitimate and imminent threat to him or others.[4]

81. A twenty-two-pound Catahoula puppy, standing less than a foot and a half tall, does not present an objectively legitimate and imminent threat to police officers.

82. Apollo was the privately-owned property of the Browns.

83. There were numerous non-lethal alternative solutions readily available to Burmaster including but not limited to (1) allowing the Plaintiffs to secure Apollo, (2) utilizing a taser, a baton, a catch pole, a qualified animal control officer, and/or a shield, or (3) simply moving

---

[3] *Hansen v. Black*, 872 F.3d 554, 558 (8th Cir. 2017).

[4] *Viilo v. Eyre*, 547 F.3d 707, 710–11 (7th Cir. 2008) (holding that a police officer is on notice that unnecessarily killing a person's pet offends the Fourth Amendment); *San Jose Charter of Hells Angels v. City of San Jose*, 402 F.3d 962, 977–78 (9th Cir. 2005) (holding it was clearly established that an officer cannot unnecessarily kill a person's pet); *Brown*, 269 F.3d at 210–11 (holding it was clearly established that an officer cannot destroy a pet that poses no immediate danger and whose owners are "known, available, and desirous of assuming custody").

back away from the property and outside the gate, as Burmaster's partner did.

84. The foregoing State actions deprived Plaintiffs of a protected property interest, and the state procedures available for challenging the deprivation do not satisfy the requirements of due process. For that reason, they violated the Due Process Clause of the 14th Amendment.

85. At all relevant times, Burmaster acted unreasonably, recklessly, and with deliberate indifference and disregard for the constitutional civil rights of Plaintiffs.

86. Burmaster's actions were reckless, willful, and wanton.

87. The acts alleged herein were the proximate cause and cause in fact of Plaintiffs damages and injuries.

***Second Cause of Action* – State Torts of Negligence
and Negligent Infliction of Emotional Distress**
*Against all Defendants*

88. Plaintiffs incorporate and reassert the allegations in each preceding and following paragraphs of this Complaint.

89. Under duty-risk analysis for determining liability, a plaintiff must prove (1) the conduct in question was the cause-in-fact of the resulting harm; (2) the defendant owed a duty of care to plaintiff; (3) the requisite duty was breached by the defendant; and (4) the risk of harm was within the scope of protection afforded by the duty breached. *Stroik v. Ponseti*, 699 So.2d 1072, 1078 (La. 1997).

90. Defendant Burmaster's actions were the cause-in-fact of Plaintiffs' injury and emotional distress, and the risk of harm was within the scope of duty that was breached by the Burmaster.

91. Police officers owe the public the duty of maintaining peace and order, preventing and detecting crime, and enforcing laws. *Zeagler v. Town of Jena,* 556 So.2d 978 (La. App. 3 Cir.).

92. Defendants Ferguson and City of New Orleans assumed a particular duty to take care with regard to Plaintiffs by continuing to allow Officer Burmaster to handle field assignments that might put him into contact with situations where he would use force.

93. Defendant Ferguson and the City of New Orleans were vicariously liable for the acts of Defendant Burmaster and independently negligent for failing to adequately train its officers and effectively supervise officers who have a history of shooting dogs.

*Third Cause of Action* – **Negligent Hiring, Training, Retention, and Supervision**
*Against Ferguson and City of New Orleans*

94. Plaintiffs incorporate and reassert the allegations in each preceding and following paragraphs of this Complaint.

95. Municipal employers have a duty to exercise reasonable care in the hiring, training, and supervision of its employees.[5] Failure to do so is a cognizable tort under Louisiana Civil Code art. 2315.[6]

96. Here, Defendants failed to reasonably hire, train, and supervise Burmaster, and retained him past the point of reasonableness.

97. For example, Defendant Burmaster was repeatedly noted by NOPD to use force, at least thirty times in ten years. At least one of those times involved shooting and killing a dog prior to Apollo.

98. Burmaster has also been held to have committed constitutional violations. For

---

[5] *Roberts v. Benoit*, 605 So.2d 1032, 1038 (La. 1991); see also *Cote v. City of Shreveport*, 73 So.3d 435 (La. App. 2011) ("When an employer hires an employee who in the performance of his duties will have a unique opportunity to commit a tort against a third party, he has a duty to exercise reasonable care in the selection of that employee.")

[6] *Id.* at 1044 ("We now expressly recognize the tort of negligent hiring as cognizable under Louisiana fault principles embodied in LSA-C.C. Art. 2315.")

example, in 2018, the Louisiana Court of Appeal for the Fourth Circuit reviewed Burmaster's body-worn camera footage and found that Burmaster had conducted an unconstitutional search.[7]

99. Burmaster has also shown public contempt for the New Orleans civil service process. For example, in 2014, he posted to Instagram an image of Batman slapping Robin for commenting "I'm gonna reform civil service." Burmaster commented: "Haha!"



100. He publicly joked about NOPD ethics requirements, commenting "Just passed the ethics test! Lol! I should've printed out my certificate on parchment!"

---

[7] *State v. Loicana*, 254 So. 3d 761 (La. Ct. App. 2018) ("For the above-mentioned reasons we do not find that the trial court abused its discretion by granting Mr. Loicano's motion to suppress the evidence and statements and by finding no probable cause. The exceptions for a warrantless search [by Burmaster] do not apply to the facts and circumstances of this case.")



101. The failure to train and discipline by Ferguson and the City of New Orleans, especially after being put on notice of Defendant Burmaster's history with dogs, is a breach of Defendants' duty.

*Fourth Cause of Action* – **Vicarious Liability**
*Against Defendants Ferguson and City of New Orleans*

102. Plaintiffs incorporate and reassert the allegations in each preceding and following paragraphs of this Complaint.

103. Under Louisiana Civil Code article 2320, employers are liable for damages caused by their employees who are "in the exercise of the functions in which they are employed."

104. An employee acts within the scope of their employment when their conduct is "so closely connected in time, place, and causation to his employment-related duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted

by purely personal considerations entirely extraneous to the employer's interests."[8]

105. At all times relevant to this Complaint, Burmaster was acting within the scope of his employment with the New Orleans Police Department.

106. All Supervisor-Defendants and the City of New Orleans are liable to Plaintiffs for Burmaster's negligent and intentional acts and omissions of those under their direction and control pursuant to Louisiana Civil Code article 2320 and the doctrine of *respondeat superior*.

### *Fifth Cause of Action* – **Indemnity**
*Against the City of New Orleans*

107. Plaintiff incorporates and reasserts the allegations in each preceding and following paragraphs of this Complaint.

108. Louisiana law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable for actions taken in the discharge of their duties that are within the scope of their employment activities.

109. The City of New Orleans operates the New Orleans Police Department, a law enforcement agency which employed and controlled the Officer-Defendants in this case, and was responsible for the hiring, training, and discipline of the officers.

110. While committing the misconduct alleged herein, some Defendants were employees, members, and agents of the City of New Orleans within the scope of their employment.

111. The City of New Orleans is therefore obligated by Louisiana statute to pay any judgment entered against their employees, Officer-Defendants and Supervisor-Defendants.

### *Sixth Cause of Action* – **Monell Liability**
*Against the City of New Orleans*

112. Plaintiffs incorporate and reassert the allegations in each preceding and following

---

[8] *LeBrane v. Lewis*, 292 So.2d 216 (La.1974).

paragraphs of this Complaint.

113. The City of New Orleans had a constitutional duty to adequately train, supervise and discipline Burmaster in order to prevent the violation of the rights of the citizens that he encountered.

114. The City of New Orleans was deliberately indifferent to Plaintiffs' constitutional rights in failing to adequately train, supervise and discipline Burmaster, as specifically described above herein.

115. The City of New Orleans declined to implement sufficient training, sufficient policies, or any legitimate mechanism for oversight or punishment of Burmaster.

116. For example, Defendant Burmaster was repeatedly noted by NOPD to use force, at least thirty times in ten years. At least one of those times involved shooting and killing a dog prior to Apollo.

117. As a result of the City's actions and omissions, including failure to train, supervise and discipline Burmaster, Plaintiffs' constitutional rights were violated.

*Seventh Cause of Action* – **Conversion**
*Against all Defendants*

118. Plaintiffs incorporate and reassert the allegations in each preceding and following paragraphs of this Complaint.

119. By unnecessarily shooting Apollo, Burmaseter wrongfully committed an act of dominion over the Plaintiffs' property in denial of and inconsistent with the Plaintiffs' ownership rights. This wrongful exercise of authority over the Plaintiffs' property deprived the Plaintiffs of possession of Apollo permanently.

VI.    RELIEF REQUESTED

120. Wherefore Plaintiffs pray for judgment against Defendants as follows:

(a) For an order finding Defendants liable for violations of civil and constitutional rights;

(b) For a judgment against Defendants for all asserted causes of action;

(c) For a judgment awarding compensatory damages;

(d) For a judgment awarding special and punitive damages;

(e) For a judgment awarding Plaintiffs their costs and attorney's fees;

(f) For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law; and

(g) For all other and further relief as may be necessary and appropriate.

121. Plaintiff states any and all other causes of action that may become known through a trial of this matter on its merits against any and all other parties which are herein named or which may be added later, and request any and all other damages or remedies which this Court may deem equitable.

122. Plaintiff reserves the right to notice of defect to this pleading and reserve the right to amend or supplement this Petition after discovery of any additional fact, law, or claim, the amendment of which to be performed by the filing of any subsequent pleading.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury on all issues so triable.

Respectfully Submitted:

*/s/ William Most*
WILLIAM MOST (La. Bar No. 36914)
DAVID LANSER (La. Bar No. 37764)
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
Tel: 504.509-5023
Email: williammost@gmail.com

*/s/ Tarak Anada*
TARAK ANADA (#31598)
JONES WALKER LLP
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8322
Facsimile: (504) 589-8322
Email: tanada@joneswaker.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 24, 2022, the foregoing was filed electronically using the CM/ECF system which will send notice of electronic filing to all counsel of record.

*/s/ Tarak Anada*