UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and | * | CIVIL ACTION |
| JULIA BARECKI-BROWN | * | |
| | * | DOCKET NUMBER: 22-00847 |
| VERSUS | * | |
| | * | SECTION: L |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | HONORABLE ELDON E. FALLON |
| NEW ORLEANS | * | |
| | * | DIVISION: 4 |
| | * | |
| | * | HONORABLE KAREN WELLS ROBY |

*****************************************************************************

**REPLY IN SUPPORT OF CITY OF NEW ORLEANS AND SHAUN FERGUSON'S RULE 12(b)(6) MOTION TO DISMISS *MONELL* CLAIM**

Defendants, the City of New Orleans and Shaun Ferguson, Superintendent of the New Orleans Police Department (the "City Defendants") reply as follows to Plaintiffs' Opposition to the City Defendants' Motion to Dismiss *Monell* Claim (Doc. 56, the "Opposition"). In their Opposition, Plaintiffs assert three arguments, none of which has merit. Each is addressed below.

1. **Potential future discipline of Officer Burmaster should not delay a ruling on this Motion**.

Plaintiffs argue that their *Monell* Claim cannot be dismissed because the City has not completed an internal disciplinary procedure – a "Chief's Hearing" – concerning Defendant Burmaster's actions that are the subject of this case. Plaintiffs speculate that the result of the Chief's Hearing may support a claim of municipal liability based on ratification.[1] However, to survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must base their grounds for entitlement to

---

[1] Among the possible outcomes of the Chief's Hearing are: (1) a decision may be made by that Defendant Burmaster violated NOPD policies and procedures; (2) a decision may be made that Defendant Burmaster did not violate NOPD policies and procedures; (3) a decision may be made which is appealed; or (4) a hearing and decision may be postponed. It should also be noted that it is unlikely that a Chief's Hearing decision will be made before the deadline set forth in the applicable Scheduling Order for pleadings to be amended has passed.

1

relief on allegations made in their complaint, not on some speculative future event.[2] See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (factual allegations when assumed to be true must "raise a right to relief above the speculative level.").

Further, even if Officer Burmaster is ultimately not disciplined, that decision will not support a *Monell* claim based on "ratification." Ratification by a municipality is limited to "extreme factual situations." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir.2009). This is not an extreme factual situation.

*Peterson* is a case where an extreme factual situation did not exist. In *Peterson*, the plaintiff was found sleeping in the back of his truck in the very early hours of morning at a drinking establishment. Police officers responded, the plaintiff failed to cooperate, and the officers arrested the plaintiff. During the arrest, an officer conducted a "hard knee strike" to the plaintiff's thigh while the plaintiff was handcuffed. The officer's conduct was investigated by the police chief, who decided that the officer did not use excessive force. The plaintiff argued that the police chief's decision constituted ratification. The Fifth Circuit Court of Appeal disagreed.

The Court in *Peterson* found that a question of fact existed as to whether the officer used excessive force. However, the Court held that the officer's conduct was not sufficiently extreme to support a claim of ratification. *Id.* at 848. In its analysis, the Court compared *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), which found and extreme situation where officers "poured" gunfire onto a truck and killed an innocent occupant, and *Snyder v. Trepagnier*, 142 F.3d

---

[2] In their Opposition, Plaintiffs contend that previous counsel for the City Defendants during an initial status conference "informed the Court that it was the City's then-position that Burmaster's shooting was justified." Doc. 56, p. 3. Even assuming the accuracy of this alleged statement, this statement is not a policy statement by the City of New Orleans. To the contrary, Plaintiffs specifically allege in their Amended Complaint that the City of New Orleans' Public Integrity Bureau found Officer's Burmaster's shooting of Plaintiffs' dog was unjustified (Doc. 36, ¶¶ 61-62) and that the NOPD's Use of Force Review Board concluded that the shooting was unjustified (Doc. 36, ¶¶ 65-66).

791, 798 (5th Cir. 1998), where no ratification was found in a case where an officer shot a fleeing suspect in the back.

In this case, Officer Burmaster used his firearm to defend himself after two barking dogs suddenly emerged out of the darkness of a porch and ran at his partner and him.[3] Officer Burmaster may reasonably argue self-defense under these facts. Further, it is apparent that Plaintiffs have cherry-picked facts and omitted important facts in their Amended Complaint.[4] Under these circumstances, any contention that this case involves "extreme conduct" is not plausible and should be rejected.

> **2. Plaintiffs fail to show a sufficiently strong connection between Officer Burmaster's background and the particular type of injury suffered by Plaintiffs.**

A *Monell* claim based on allegedly improper retention must demonstrate a municipality's "deliberate indifference" to "known or obvious consequences" of decisions in hiring and retaining an officer. See *Gomez v. Galman*, 18 4th 769, 778 (5th Cir. 2021). To show deliberate indifference, "the connection between the background of the individual and the specific violation alleged must be strong," as a plaintiff "must show that the hired officer was ***highly likely*** to inflict the ***particular type of injury he suffered***." *Id*. (punctuation omitted, emphasis added) (quoting *Gros v. City of Grand Prairie*, 209 F.3d 431, 434 (5th Cir. 2000) (no deliberate indifference by municipality shown in case involving sexual assault by officer where officer's background consisted of sustained and unsustained complaints regarding use of force, problems with accepting supervision, and instances of unprofessional conduct).

---

[3] See Doc. 36, ¶¶ 29-32, 37.
[4] Among the facts that Plaintiffs omit are (1) the distance traveled by Officer Burmaster into Plaintiffs' property, whether gate was closed, and whether Officer Burmaster reasonably believed that he could escape without being bitten; (2) the darkness on the porch from which the two dogs emerged and the short amount of time in which Officer Burmaster had to react to Plaintiffs' dogs when they first became visible; (3) the size, aggressiveness, and actions of Plaintiffs other dog; and (4) the aggressiveness of Plaintiffs' dog that was shot.

Here, Plaintiffs allege that Officer Burmaster used force (without providing any details as to the use of force) on multiple occasions.[5] In addition, Plaintiffs label Officer Burmaster as a "frequent user of force" and recount prior allegations, unbounded by any temporal limitation, of "a range of rule violations" other than use of force. Plaintiffs' generalized allegations of use of force and other complaints fail to meet the high standard as articulated by *Gomez, supra* (cited by Plaintiffs in their Opposition) to support a *Monell* claim based on improper retention.[6] See *Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." (quoting *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 389 (1997)). Further, Plaintiffs do not allege a pattern of misconduct towards animals or misuse of firearms by Officer Burmaster.

In *Gomez*, a plaintiff was harassed and beaten unconscious at a local bar by two off-duty police officers. *Id*. at 774. For one officer, the plaintiff alleged two instances of misconduct on the part of one officer which he contended showed deliberate indifference on the part of the municipality in retaining the officer. One instance involved an illegal, invasive, and public strip search of an arrestee in his custody. The second involved an instance where the officer damaged a side mirror by hitting and headbutting it. The Court noted that these instances were "egregious." However, the instances were too unlike the "specific constitutional violation alleged" by the plaintiff to make it "plainly obvious" that the office had a "proclivity toward such brutal violence as alleged here." *Id*. at 778. Here, as in *Gomez*, Plaintiffs' allegations are unlike the shooting of a dog. The prior complaionts fail to establish a connection between Officer Burmaster's background and the shooting of the dog. Therefore, they fail to support a *Monell* claim for improper retention.[7]

---

[5] Doc. 56, p. 5.
[6] Doc. 56, footnotes 17, 18, 19and 20.
[7] Plaintiffs mistakenly argue that this Court's Order (Doc. 61) on Plaintiffs Motion to Compel determined that Plaintiff's general allegations regarding Officer Burmaster's use of force demonstrated a strong connection between

### 3. "Additional information" will not cure the pleading deficiencies in Plaintiffs' *Monell* failure to train claim.

To prevail on a *Monell* "failure to train theory" a plaintiff must demonstrate: "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls, Tex*. 614 F.3d. 161, 170 (5th Cir. 2010) (citing *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009). "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." *City of Canton v. Harris*, 489 U.S. 378, 389, (1989) (internal quotation and alteration omitted). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983." *Id*.

Plaintiffs are aware that the City Defendants have affirmed that Officer Burmaster received training specific to handling animals and provided proof of such training. In fact, Plaintiffs attached at least a portion of Officer Burmaster's training to their Opposition. Plaintiffs' criticisms of the slide presentation provided to Officer Burmaster demonstrates at most a difference in opinion as to how best to train police officers. However, the training slides demonstrate that NOPD made a deliberate choice to attempt to provide adequate training to NOPD police officers. Under these circumstances, Plaintiff cannot allege a set of facts that would support a *Monell* failure to train claim.

---

Officer Burmaster's history and the shooting of the dog as required under the stringent standards required by the entirety of the *Monell* progeny. Rather, the Court held that Officer Burmaster's records regarding use of excessive force "are relevant as required under Rule 26," meaning that the records met the minimal threshold of relevance necessary to be discoverable. See *Woods v. City of St. Luis Police Dep't*, No. 4:07CV931 SNLJ, 2009 U.S. Dist. LEXIS 49622, 2009 WL 1650093, at *2 9E.D. Mo. June 12, 2009).

5

**WHEREFORE**, the City of New Orleans and Shaun Ferguson, Superintendent of the New Orleans Police Department, pray that their Motion to Dismiss be granted and the *Monell* Claim, as alleged in Plaintiffs' Amended Complaint, be dismissed.

Respectfully submitted:

*/s/ James M. Roquemore*
**JAMES M. ROQUEMORE, LSB #40035**
ASSISTANT CITY ATTORNEY
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET, SUITE 5E03
NEW ORLEANS, LOUISIANA 70112
TEL: (504) 658-9800
FACSIMILE: (504) 658-9868
James.Roquemore@nola.gov
*Counsel for Shaun Ferguson and the City of New Orleans*