**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| DEREK BROWN and | * | CIVIL ACTION |
| JULIA BARECKI-BROWN | * | |
| | * | DOCKET NUMBER: 22-00847 |
| VERSUS | * | |
| | * | SECTION: L |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | HONORABLE ELDON E. FALLON |
| NEW ORLEANS | * | |
| | * | DIVISION: 4 |
| | * | |
| | * | HONORABLE KAREN WELLS ROBY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**SHAUN FERGUSON'S AND THE CITY OF NEW ORLEANS' MEMORANDUM IN
SUPPORT OF THEIR RULE 12(b)(6) MOTION TO DISMISS *MONELL* CLAIM
AS CONTAINED IN PLAINTIFFS' SECOND AMENDED COMPLAINT**

NOW INTO COURT, through undersigned counsel, come defendants, Shaun Ferguson

("Superintendent Ferguson") and the City of New Orleans (the "City") (collectively referred to as

the "City Defendants"), who submit the following Memorandum in support of their Rule 12(b)(6)

Motion to Dismiss Plaintiffs' *Monell* Claim as Contained in Plaintiffs' Second Amended

Complaint.[1] The City Defendants move to dismiss the cause of action entitled "Sixth Cause of

Action – Monell Liability"[2] together with any claim asserted against Superintendent Ferguson in

his official capacity (collectively referred to as the "*Monell* Claim").[3]

---

[1] On October 28, 2022, Plaintiffs filed a First Amended Complaint (Doc. 36), asserting for the first time a claim of municipal liability against the City Defendants. See Doc. 36, ¶¶ 21, 112-117. On November 18, 2022, the City Defendants filed a Rule 12(b)(6) Motion to Dismiss *Monell* Claim (Doc. 45), seeking dismissal of the claim of municipal liabilty as asserted in the First Amended Complaint. On December 14, 2022, Plaintiffs' Second Amended Complaint (Doc. 60) was filed, which added allegations relating to the claim of municipal liability. Doc. 60, ¶¶ 112-137. None of the new allegations create a viable or plausible claim of municipal liability. Rather, Plaintiffs' additional unavailing efforts demonstrate the futility of permitting any further amendment of their complaint.

[2] Doc. 60, ¶¶ 112-137 ("Sixth Cause of Action – Monell Liability").

[3] See *Id*., ¶ 21 (stating that Shaun Ferguson, Superintendent of the New Orleans Police Department, "is sued in his individual and official capacities."). Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978).

As is shown more fully below, Plaintiffs fail to allege facts to show that the City Defendants were deliberately indifferent in their training, supervision and discipline of New Orleans Police Department ("NOPD") officer, co-defendant Derrick Burmaster ("Defendant Burmaster"), with respect to use of force upon dogs. NOPD has a reasonable and constitutional policy relating to animal encounters which authorizes use of a firearm against an animal only if necessary for safety and if alternative methods are not reasonably available:

> [NOPD officers may] use firearms to stop an animal . . . [if it] appears to pose an imminent threat to human safety and[if] alternative methods are not reasonably available or would likely be ineffective.[4]

In addition, NOPD trains its officers with respect to dog and animal encounters.[5] Plaintiffs contend that NOPD's dog encounter training program omits content contained in a U.S. Department of Justice training and is therefore inadequate.[6] However, Plaintiffs fail to describe the actual content of NOPD's training program and thus leaves it to speculation as to whether the program is inadequate. Further, Plaintiffs do not contend that any portion of the NOPD dog training contradicts the clear NOPD policy of prohibiting use of unreasonable force against dogs. And Plaintiffs do not cite any policy of NOPD that condones or encourages unreasonable use of force by officers in their encounters with dogs and other animals.

In addition, Plaintiffs are unable to allege facts to support a pattern or a single incident sufficient to show deliberate indifference by the City Defendants. Plaintiffs' *Monell* Claim is primarily founded on a single prior incident in which Defendant Burmaster discharged a firearm at a dog in 2012, coupled with generalized complaints of rule breaking (not involving use of force)

---

[4] *Id*., ¶ 53 (quoting the NOPD policy manual).
[5] *Id*., ¶ 120 (referencing NOPD's training program entitled "The Problem of Dog-Related Incidents and Encounters").
[6] *Id*., ¶¶ 117-136.

and past uses of force (not found to be improper) by Defendant Burmaster. Notably, Plaintiffs fail

to allege whether any past use of force by Defendant Burmaster was unconstitutional or against

NOPD policy. Further, the prior incidents, except for arguably the 2012 dog incident, are too

dissimilar to the incident in this case to plausibly show a pattern or single incident to support a

claim of municipal liability based on *Monell*.

      As a result, Plaintiffs fail to adequately plead sufficient facts to state a cause of action for

municipal liability against the City or Superintendent Ferguson under 42 U.S.C. § 1983 based on

*Monell v. New York City Dept. of Social Services*.[7] The Monell Claim should be dismissed pursuant

to Rule 12(b)(6).

**ALLEGATIONS OF THE SECOND AMENDED COMPLAINT**

      On April 10, 2021, Defendant Burmaster responded to a disturbance call at Plaintiff's

residence, entered a gate, and walked towards Plaintiffs' home.[8] Suddenly, Plaintiffs' two dogs

ran down the front porch stairs and at least one dog ran towards Defendant Burmaster.[9] Defendant

Burmaster shot Plaintiffs' dog that was running at him.[10] Plaintiffs claim that they suffered a

constitutional harm due to the the deprivation of their property, *to wit,* their dog.[11]

      With respect to the *Monell* Claim, Plaintiffs allege that the City was "deliberately

indifferent" to Plaintiffs' "constitutional rights" by "failing to adequately train, supervise and

discipline Burmaster[.]"[12] Plaintiffs assert that the City "declined to implement sufficient training,

sufficient policies, or any legitimate mechanism for oversight or punishment of Burmaster."[13]

---

[7] 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978).
[8] Doc. 60, ¶ 29-30.
[9] *Id*., ¶ 32.
[10] *Id*., ¶ 37.
[11] See *Id*., ¶¶ 52, 77-80, 84 (the shooting of Plaintiffs' dog "deprived Plaintiffs of a protected property interest" and "violated the Due Process Clause of the 14th Amendment"), 137.
[12] *Id*., ¶ 114.
[13] *Id*., ¶ 115.

Plaintiffs describe Defendant Burmaster as a "frequent user of force" because Defendant Burmaster was "noted" by NOPD to "use force, at least thirty times in ten years."[14] However, Plaintiffs fail to provide any context for Defendant Burmaster's prior uses of force. In addition, although the NOPD provided training to its officers regarding dog encounters, Plaintiffs claim that this training was constitutionally inadequate because it was different from training provided by the U.S. Department of Justice. Neither of these allegations are sufficient to support an inference that the City Defendants were deliberately indifferent to Officer Burmaster's training, supervision or discipline.

**LAW AND ARGUMENT**

### A. Dismissal under Rule 12(B)(6).

To withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted). If the allegations in a complaint "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but not has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (punctuation omitted).

---

[14] *Id*., ¶¶ 116.

**B. Plaintiffs' Second Amended Complaint fails to state a claim of municipal liability under Section 1983.**

Plaintiffs base their federal claim of municipal liability, their "Sixth Cause of Action – Monell Liability," on an allegation that the City did not "adequately train, supervise and discipline Burmaster[.]"[15] This allegation is not supported by sufficient facts to make it plausible on its face.

A claim of municipal liability pursuant to § 1983, which in the instant Motion is referred to as a *Monell* claim,[16] may arise when a municipality maintains an unconstitutional policy or custom. *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010 (citing *Monell v. Dept of Soc. Servs.*, 436 U.S. 658, 691 (1978)). In order to state a claim of municipal liability pursuant to § 1983, a plaintiff must allege that (1) the municipality had an official policy (2) promulgated by a policymaker (3) that was the moving force behind the violation of a consutituional right. *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017). A primary inquiry in analyzing a *Monell* claim is "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dept of Soc. Servs.*, 436 U.S. at 694).

For purposes of a *Monell* claim, a complained-of policy or custom alleged must consist of "a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000). However, "[a] plaintiff may not infer a policy merely because harm resulted from some interatction with a governmental entity." *Pudas v. St. Tammany Par., La.*, No. 18-10052, 2019 WL

---

[15] Doc. 60, ¶ 114, 137.
[16] See *Monell v. Dept of Soc. Servs.*, 436 U.S. 658 (1978).

2410939, at *3 (E.D. La. June 7, 2019) (Barbier, J.) (alteration in original) (quoting *Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 245 (5th Cir. 1993)).

In limited circumstances, a failure to train police officers by a municipality may constitute a policy for purposes of § 1983 liability, but only if the failure to train reflects "deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A municipality's responsibility for a deprivation of rights is at its "most tenuous" with respect to a claim of failure to train. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985)).

"Deliberate indifference is a high standard." *Valdez,* (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)) ("[A] showing of simple or even heightened negligence will not suffice."). To state a claim that a municipality is liable for failure to train, supervise, or discipline an employee, a plaintiff must allege: "(1) that the municipality's training, supervisory, or disciplinary policies or practices were inadequate, (2) that the municipality was deliberately indifferent in adopting these deficient policies, and (3) that the inadequate training, supervisory, or disciplinary policies directly caused the violations in question." *Hankins v. Wheeler*, No. 21-1129, 2022 WL 2208848, at *7 (E.D. La. June 21, 2022) (Fallon, J.) (citing *Ratliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020). "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." *City of Canton v. Harris*, 489 U.S. 378, 389, (1989) (internal quotation and alteration omitted). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983." *Id*.

There are two ways to prove deliberate indifference: (1) proof by pattern; and (2) a single incident. *Littell v. Houston Indep. Sch. Dist*., 894 F.3d at 624 (citing *Canton*). Proof by pattern

requires that a plaintiff show that municipal employees violated constitutional rights "so often" that the factfinder could infer from the pattern of violations that "the need for further training must have been plainly obvious to the . . . policymakers." *Valdez*, 852 Fed. Appx. at 135 (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011), and quoting *Canton*, 489 U.S. at 390 n.10)). A pattern requires "similarity and specificity" and "sufficiently numerous prior incidents." *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 1989).

Proof of deliberate indifference by a single incident is the exception to general rule requiring a pattern; it requires a showing that "a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation[.]" *Valdez*, 852 Fed. Appx. at 136 (citing *Bd. of the City Comm'rs v. Brown*, 520 U.S. 397, 409 (1997), and citing *Canton*, 489 U.S. at 390, 109 S.Ct. 1197). This "single-incident exception" exists only where the "risk of constitutional violations" was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy." *Id.* (quoting *Littell*, 894 F.3d at 624).

Plaintiffs' Amended Complaint fails to state a § 1983 claim against the City and Superintendent Ferguson for several reasons, which are set forth below.

1. **Plaintiffs do not allege any actual policy or custom that resulted in the shooting of their dog.**

Plaintiffs' Second Amended Complaint does not identify any actual municipal policy, custom, or practice which was the driving force behind Defendant Burmaster's shooting of Plaintiffs' dog. To the contrary, the Second Amended Complaint identifies a NOPD policy manual provision that required officers to develop "reasonable contingency plans for dealing with (an) animal" for which they have sufficient warning and that officers may "use firearms to stop an animal . . . (if it) appears to pose an imminent threat to human safety and (if) alternative methods

are not reasonably available or would likely be ineffective[.]"[17] In addition, Plaintiffs identify a

dog training program which limited use of force against animals except in cases of imminent threat

to human safety and where alternavie methods are not available or would not be effective.[18]

**2. Plaintiffs fail to allege facts sufficient to show that the Defendant Burmaster's training, supervision or punishment was inadequate.**

In the Second Amended Complaint, Plaintiff allege that a NOPD training program relating

to dogs was inadequate because it differed from a training curriculum developed by the U.S.

Department of Justice.[19] However, Plaintiffs fail to describe the substance of the content contained

in the NOPD curriculum.[20] Specifically, Plaintiffs fail to describe the content of the NOPD

curriculum that trained officers with respect to dog encounters. Plaintiffs cannot cite any portion

of the program that contradicted NOPD's clear policy that  an officer may not use a firearm against

a dog unless the dog "appears to pose an imminent threat to human safety and (if) alternative

methods are not reasonably available or would likely be ineffective."[21] Without a description of

the NOPD program, its is mere speculation as to whether the NOPD program was inadequate. "In

order for liability to attach based on an inadequate training claim, a plaintiff must allege with

specificity how a particular training program is defective." *Zarnow v. City of Wichita Falls, Tex.*,

---

[17] Doc. 60, ¶ 53.

[18] *Id.*, ¶ 53.

[19] *Id.*, ¶ 120. Plaintiffs concede that NOPD had policies in force regarding police animal encounters and that the NOPD provided training to its officers regarding dog encounters. See *Id.*, ¶¶ 53, 54, 57, 117-120, 130, 133.

[20] The only description of a NOPD training program alleged by Plaintiffs is a statement that "NOPD's curriculum says that '[b]asic and in-service training should include . . . Partnering with animal control and other animal services . . . [and] Information on local resources.'"  Plaintiffs criticise NOPD's training in that, according to Plaintiffs, the curriculum should "suggest any partnering with other services, and does not include any information on local resources."  These critisms of the NOPD training are far too minor to support a claim that the City Defendants maintained an official policy or custom that was the moving force behind the shooting of Plaintiffs' dog.

[21] See *Id.*, ¶ 53 (quoting NOPD policy manual).

614 F.3d 161, 170 (5th Cir. 2010). Plaintiffs have failed to do so and their *Monell* Claim therefore fails.

In addition, Plaintiffs alternatively base their claim of failure to train, supervise or discipline Defendant Burmaster upon Defendant Burmaster's employment history.[22] However, it is clear from the allegations of the Second Amended Complaint that the NOPD trained, supervised and disciplined Defendant Burmaster on multiple occasions.[23] These instances show that the City Defendants were active in training, supervising and disciplining Defendant Burmaster when appropriate.

Further, Plaintiffs cite past incidents in Defendant Burmaster's history as an officer in an effort to support their *Monell* Claim. However, Plaintiffs fail to allege whether any past instance constituted a constitutional violation involving use of force (whether against humans or animals) or how any prior instance may be related to the incident in the instant case. The allegations concerning prior instances are therefore not sufficient to articulate the manner in which NOPD's training, supervision or discipline of Defendant Burmaster may have been inadequate. See *Zarnow*, 614 F.3d at 170. ("this Court has previously rejected attempts by plaintiffs to present evidence of isolated violations and ascribe those violations to a failure to train.") (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). Plaintiffs' barebones, generic, "failure to train" allegations are insufficient to state a claim. See *Igbal*, *Twombly*.

### 3. Plaintiffs fail to allege deliberate indifference through any pattern of prior constitutional violations by Defendant Burmaster.

To establish deliberate indifference, "a plaintiff may allege that the municipality had '[n]otice of a pattern of similar vilations,' which were 'fairly similar to what ultimately transpired."

---

[22] See *Id*., ¶¶ 115-116.
[23] *Id*., ¶¶ 73-75 (supervision and discipline); 97 (supervision); 100 (training).

*Saenz v. City of El Paso*, 637 F.App'x 828, 832 (5th Cir. 2016) (quoting *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010)). Plaintiffs fail to allege a sufficiently large number of similar constitutional abuses to demonstrate a pattern to support a claim of deliberate indifference.

Plaintiffs allege only one prior instance – in 2012 – in which Defendant Burmaster used force against a dog in his entire service as police officer with NOPD.[24] This clearly does not demonstrate a pattern. See *Valdez*, 852 Fed. Appx. at 136-37 (allegations that sheriff's office conducted two strip searches and four incidents of sex-based classifications in previous five years did not show a pattern). Moreover, Plaintiffs do not allege that Defendant Burmaster's shooting of a dog in 2012 was improper or in any way factually similar to the instant case (other than involving a dog that was shot).[25]

Plaintiffs argue that Defendant Burmaster's prior uses of force against humans should be considered as forming a pattern. However, in order to demonstrate a pattern, prior acts must be "fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act have involved injury to a third party." *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005). Plaintiffs fail to allege facts that show any similarity between Defendant Burmaster's prior uses of force and the shooting of Plaintiffs' dog. In fact, Plaintiffs fail to allege any facts that describe the facts and circumstances of any of Defendant Burmaster's prior instances involving "use of force." Without any description of the facts and circumstances of any incident, Plaintiffs cannot show allege a pattern based on similar past events.

Further refuting Plaintiffs' contention that a pattern might be shown by previous uses of force is the fact that only a small number of Defendant Burmaster's prior uses of force were even considered worthy of investigation by NOPD as to the possibility that a policy or rule was

---

[24] Doc. 60, ¶¶ 67-70.
[25] *Id.*, ¶¶ 67-70.

violated.[26] Plaintiffs fail to allege any prior use of force that resulted in discipline of Defendant

Burmaster. Plaintiffs have therefore failed to allege any similarity to the alleged constitutional

violation in the instant case – the shooting of their dog. As such, Plaintiffs have failed to allege

facts to support an inference that the City Defendants were deliberately indifferent to the proper

training, supervision and discipline of Defendant Burmaster. See *Estate of Davis ex rel. McCully,*

*supra,* 406 F.3d at 384 (deputy's improper exposure of himself in photography, history of

demonstrated lack of judgment, crudity, and "perhaps illegalities," and reports of acting like a

"rogue" cop during a traffic stop, did not demonstrate a relevant pattern for with respect to "using

deadly force during a traffic stop").

Even if all of Defendant Burmaster's past uses of force are deemed similar to the shooting

of Plaintiffs' dog (which they should not be), Plaintiffs have failed to provide any context for such

prior uses of force sufficient to support an inference of deliberate indifference. Context is necessary

to support a claim that a pattern exists as to use of force. *Peterson v. City of Fort Worth, Tex.*, 588

F.3d at 851. For example, in *Peterson*, the Court held that twenty-seven complaints of use of

excessive force did not support a pattern "so common and well-settled as to constitute a custom

that fairly represents municipal policy" where the plaintiff failed to provide context, including the

size of the police department or how many arrests were made. 588 F.3d at 851 (quoting *Piotrowski*

*v. City of Houston*, 237 F.3d at 579). And in *Saenz*, the Court held that twenty-one previous

incidents in which a police officer killed people failed to establish a pattern absent "further context

surrounding the circumstances" of the of the prior shootings. 637 F.App'x at 832. Here, Plaintiffs

fail to provide context as to whether the number of Defendant Burmaster's previous uses of force

was unusually large in comparison to other officers employed by NOPD or whether the instances

---

[26] Doc. 60, ¶ 73 (identifying complaints made in 2008, 2010, 2012 and 2013).

of use of force by Defendant Burmaster were in any way unusually egregiousor unlawful. Plaintiffs

have therefore failed to allege facts sufficient to permit an inference that the City Defendants were

put on notice that its training, supervision or discipline of Defendant Burmaster was inadequate.

See *Weiland v. Palm Beach City. Sheriff's Office*, 792 F.3d 1313, 1328 n. 21 (11th Cir. 2015)

(allegations of "thousands of contacts" with mentally ill people and "numerous police shootings"

of mentally ill did not put sheriff's office on notice that training was inadequate where "factual

enhancement" was missing to show similarity of constitutional violations).

4. **Plaintiffs fail to allege deliberate indifference through a single incident – Defendant Burmaster's employment history did not make it apparent that he would shoot a dog.**

The "single-incident exception" is an exception to the requirement that a pattern be shown

in order to prove deliberate indifference in a *Monell* claim context. See *Westfall v. Luna*, 903 F.3d

534, 552-553 (5th Cir. 2018). Under this exception, deliberate indifference may exist "where the

facts giving rise to the violation are such that it should have been apparent to the policymaker that

a constitutional violation was the highly predictable consequence of a particular policy or failure

to train." *Id.* (*citing Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003)). The single-

incident exception "is generally reserved for those cases in thich the government actor was

provided no training whatsoever." See *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th

Cir. 2018) (citing *Brown v. Bryan County*, 219 F.3d 450, 453-54 (5th Cir. 2000) and quoting

*McClendon v. City of Columbia,* 258 F.3d 432, 442–43 (5th Cir. 2001), *vacated for reh'g en banc,*

285 F.3d 1078 (5th Cir.)*, decision on rehearing en banc,* 305 F.3d 314 (5th Cir. 2002) for the

proposition that "there is a difference between a complete failure to train, as in *Brown v. Bryan*

*County*, and a failure to train in one limited area.").

For example, in *Brown v. Bryan County*, 219 F.3d 450 (5th Cir. 2000), a county sheriff

failed to provide any training or supervision for a new officer who had a demonstrated history of

forcing three or four individuals "to the ground" out of twelve arrests, which an expert testified was excessive. 219 F.3d at 462. The Court held that the total lack of training or supervision, together with the high frequency of forceable arrests, demonstrated the sheriff's deliberate indifference to the unconstitutional forceable take-down arrest of the plaintiff which resulted in injures to the plaintiff. *Id.* at 462-463. See also *Littell*, 894 F.3d at 627 (allegation that school district provided "no training whatsoever" as to how to conduct a lawful search was actionable as a *Monell* claim).

In contrast, in *Pena, supra*, a *Monell* claim was asserted against a city based on a failure-to-train theory based on alleged inadequacies in the city's taser-training program. 879 F.3d at 623. The Court noted that the plaintiffs acknowledged that there was some training provided to officers for tasers. Because there was some training, rather than no training, the Court held that the plaintiffs could not satisfy "the exacting test for the narrow single-incident exception" for municipal liability. *Id.* at 624,

Here, unlike *Bryan County* and *Littell*, there is no allegation that the City Defendants provided no training, supervision or discipline of Defendant Burmaster. To the contrary, the Amended Complaint sets forth numerous instances in which Defendant Burmaster was provided policies, training, supervision and discipline by the City Defendants.[27]

Further, unlike in the untrained officer in *Bryan County*, the background of Defendant Burmaster is almost entirely unrelated to the constitutional deprivation alleged by Plaintiffs. See *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 412, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997) ("[t]he connection between the background of the particular [defendant] and the specific constitutional violation alleged must be strong."). The discipline history of Defendant

---

[27] See *supra*, footnote 23.

Burmaster that is alleged by Plaintiffs involves only one prior encounter with a dog. Moreover, Plaintiffs do not allege whether this encounter involved an unconstitutional deprivation of property. The other incidents in Defendant Burmaster's employment history involve humans. Use of force against humans is very different than with animals. Among other things, a dog is property; a human is not.[28]

Given Defendant Burmaster's employment history, as articulated by Plaintiffs, it cannot be said that it should have been apparent to the City Defendants that Defendant Burmaster's shooting of Plaintiffs' dog was the highly predictable consequence of the program of training, supervision and discipline the City Defendants undertook for Defendant Burmaster. *Monell* liability depends on a finding that "*this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." *Brown*, 520 U.S. at 412 (emphasis in original). On this record, the City Defendants cannot be deemed deliberately indifferent with respect to their training, supervision or discipline of Defendant Burmaster.

   5. **Plaintiffs fail to show a plausible direct causal link between Defendant Burmaster's employment history and the shooting of Plaintiffs' dog.**

Plaintiffs fail to adequately allege a direct causal link between the adequacy of the City Defendants' training, supervision of Defendant Burmaster, as demonstrated by the discipline history of Defendant Burmaster, and the alleged constitutional deprivation of the Plaintiffs. See *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dept of Soc. Servs.*, 436 U.S. at 694) (a *Monell* claim requires a direct causal link between a policy and the alleged constitutional deprivation).

---

[28] La. R.S 3:2773(A) ("Dogs owned by citizens of this state . . . are declared to be personal property of such citizens.").

14

Plaintiffs allege that they suffered a Fourth Amendment seizure of their dog.[29] However, except for one instance, none of the various prior disciplines of Defendant Burmaster alleged by Plaintiff involved dogs. Further, other than generally describing some of the incidents for which complaints were made against Defendant Burmaster as involving "use of force" (without regard to whether such complaints were sustained or not), Plaintiffs do not describe the facts or circumstances of any prior disciplines. In addition, Plaintiffs do not allege that any of the prior disciplines (except for the prior dog incident) involved a dog or the use of a firearm.

Significantly, Plaintiffs fail to explain how any of the prior incidents in Defendant Burmaster's lengthy employment history made it "obvious" to the City Defendants that Defendant Burmaster would shoot Plaintiffs' dog. See *Connick*, 563 U.S. 61 ("Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action")(punctuation omitted) (quoting *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). There is nothing "obvious" about Defendant Burmaster's unspecified use of force against humans that would necessarily lead to Defendant Burmaster's shooting of Plaintiffs' dog. Plaintiffs have failed to adequately allege that any policy of inadequate training, supervision or discipline directly caused their dog to be shot. See *Valdez*, 852 Fed. Appx. at 135. Plaintiffs' conclusory allegations are insufficient to support their Monell Claim. See, generally, *Iqbal* and *Twombly*.

---

[29] Doc. 60, ¶¶ 77-80.

**6. The City Defendants are not vicariously liable for any alleged constitutional violation committed by Defendant Burmaster.**

*Monell* makes it clear that a municipality may not be held liable under § 1983 based solely on the existence of an employer-employee relationship. *Monell,* 436 U.S. at 694; *City of Canton,* 489 U.S. at 392. Therefore, the City Defendants cannot be held vicariously liable for the alleged constitutional violation of Defendant Burmaster.

## CONCLUSION

For the above and foregoing reasons, Defendants, Shaun Ferguson and the City of New Orleans, respectfully pray that their Rule 12(b)(6) Motion to Dismiss *Monell* Claim as Contained in Plaintiffs' Second Amended Complaint be granted and that Judgment issue dismissing the *Monell* Claim in Plaintiffs' Second Amended Complaint with prejudice and at Plaintiff's cost.

Respectfully submitted:

*/s/ James M. Roquemore*
**JAMES M. ROQUEMORE, LSB #40035**
ASSISTANT CITY ATTORNEY
james.roquemore@nola.gov
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET, SUITE 5E03
NEW ORLEANS, LOUISIANA 70112
TEL: (504) 658-9800
FACSIMILE: (504) 658-9868

*Counsel for Shaun Ferguson and the City of New Orleans*

16