**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| DEREK BROWN and | * | Civil Action No. 22-00847 |
| JULIA BARECKI-BROWN | * | |
| | * | SECTION: L |
| VERSUS | * | |
| | * | HONORABLE ELDON E. FALLON |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | DIVISION: 4 |
| NEW ORLEANS | * | |
| | * | HONORABLE KAREN WELLS ROBY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Memorandum in Opposition to City of New Orleans and**
**Superintendant's Motion to Dismiss *Monell* Claim**

On April 10, 2021, NOPD officer Derrick Burmaster fired his gun and killed Apollo,

Plaintiffs' 18-week-old Catahoula puppy. Plaintiffs sued. In their Second Amended Complaint,

Plaintiffs bring a *Monell* claim against the City of New Orleans and the Superintendent of the

NOPD[1] (together, the "City") for failure to adequately train, supervise, and discipline Officer

Burmaster.[2]

The City has filed a Motion to Dismiss, asking this Court to dismiss only Plaintiffs' *Monell*

claim.[3] (The City does not ask for dismissal of any of the other claims, such as negligence,

conversion, indemnity, or respondeat superior for state law claims.) The City argues that Plaintiffs'

complaint does not contain sufficient factual allegations to support a *Monell* claim.

The motion should be denied for three reasons.

First, because the complaint provides granular detail about the about the specific deficiencies

in NOPD's training of Burmaster. In particular, NOPD copied a training curriculum developed by

---

[1] The Second Amended Complaint names Superintendent Shaun Ferguson in his official capacity as a defendant.
Subsequently, Superintendent Ferguson retired and was replaced by Interim Superintendent Michelle Woodfork. Per
Fed. R. Civ. Proc. Rule 25(d), an "officer's successor is automatically substituted as a party."
[2] R. Doc. 60 at ¶¶ 112-137.
[3] R. Doc. 68-1.

the U.S. Department of Justice's COPS program – but omitted or removed all the training about how an approaching dog is "almost always friendly" and how officers should not "view a dog running toward them as a threat." That is exactly what happened with Burmaster and the puppy.

Second, the City's motion should be denied because the complaint details how the City retained Burmaster as an officer despite dozens of examples of uses of force, repeated complaints about force, sustained acts of misconduct, and even the shooting and killing of another dog.

And third, the City's motion should be denied because it is premature – the City is waiting on the outcome of the upcoming Chief's Hearing to take an official position on the appropriateness of Burmaster's shooting. For that reason, it is not yet known whether the City will satisfy *Monell* by ratifying Burmaster's conduct.

For these reasons, City Defendants' Motion should be denied.

## I.   ANALYSIS

### A.   Standard of Review

Dismissal under Rule 12(b)(6) is disfavored and should be rarely granted.[4] Under the 12(b)(6) standard, all well-pleaded facts must be viewed in the light most favorable to the plaintiff.[5] Plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim.[6] Courts generally confine their analysis under Rule 12(b)(6) to the complaint and its proper attachments, which "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[7] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[4] *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).
[5] *Hale v. King*, 642 F.3d 492, 498-99 (5th Cir. 2011) (*en banc*).
[6] *Id.*
[7] *Id., quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

liable for the misconduct alleged."[8]

**B.     The Motion should be denied because the Plaintiffs' complaint details how NOPD copied and pasted from a DOJ training manual – but omitted or removed all the DOJ training about how a running dog is <u>not</u> necessarily a threat.**

Plaintiffs' complaint brings a *Monell* claim for Defendants' failure to adequately train Burmaster.[9] The City's motion contends that Plaintiffs' allegations regarding training are "barebones" and "generic."[10] The City argues that "Plaintiffs fail to describe the content of the NOPD curriculum" and so it is "mere speculation" as to whether the program was inadequate."[11]

But the allegations are neither barebones nor generic: Plaintiffs' complaint goes into granular detail about what specific content is missing from NOPD's dog-related training, and connects that deficiency to Burmaster's actions.

First, the Complaint points out that NOPD's dog-related training is deficient on its own terms. On page 2, NOPD's curriculum says that "[b]asic and in-service training should include . . . Partnering with animal control and other animal services . . . [and] Information on local resources."[12] But NOPD's curriculum does not actually suggest any partnering with other services, and does not include any information on local resources.[13] It therefore fails to meet its own explicit standard for sufficiency.[14]

Second, NOPD's training appears to be largely copied-and-pasted from the U.S. Department of Justice's COPS curriculum with the same title.[15] But NOPD's training omits or removes key

---

[8] *Id.*
[9] R. Doc. 60 at ¶¶ 114-137.
[10] R. Doc. 68-1 at 9.
[11] *Id.* at 8.
[12] Ex. 60 at ¶ 133. *See also* R. Doc. 45-1 (NOPD Training) at 2.
[13] Ex. 60 at ¶ 134. *See also* R. Doc. 45-1 (NOPD Training).
[14] Ex. 60 at ¶ 134.
[15] *Compare* R. Doc. 45-1 (NOPD Training) *with* R. Doc. 45-2 (DOJ Training). For example, slide 2 of NOPD's training is copied verbatim from page 21 of the COPS training. R. Doc. 60 at ¶ 121; *compare* R. Doc. 45-1 at 2 *with* 45-2 at 21. Same with slide 2 of NOPD's training and page 26 of the COPS training. (For the COPS training, page numbers refer to the page of the PDF.) *Id.*

elements that are part of the COPS training. For example, NOPD omits the fact that "serious [dog]

bites are relatively rare" and that the "overwhelming majority of dog bites are minor, causing either

no injury at all or injuries so minor that no medical care is required."[16] The COPS training notes

that "[f]ewer than 2 percent of the individuals visiting an emergency room complaining of a dog

bite require hospitalization," and compares that to 5.7 percent for people assaulted by a human.[17]

And that "even as the canine population has steadily increased over the past three decades, the

number of reported dog bites has drastically decreased."[18] COPS concludes that "dogs are seldom

dangerous."[19] NOPD copied and pasted other content – but omitted all of this.

The COPS training also includes – and NOPD omits – a video of "a real-time example of a

safe, effective use of the Taser®—which ensures the safety of the officers, bystanders, and dogs."[20]

And directly on point to the case here, the COPS training notes that a factor contributing to

dog-related incidents is "Insufficiently Trained Police Officers" who "view a dog running toward

them as a threat (the dog could be friendly and merely greeting the officer)."[21] The COPS training

specifically noted that:

> An approaching dog: Most dogs happily greet a new human. Some will be so
> enthusiastic about greeting that they will do this at a full run and then launch
> themselves at the officer. Absent any of the warning signals described below, **an
> approaching dog is almost always friendly**. A dog who feels threatened will usually
> try to keep his distance.[22]

But NOPD omits all that. Accordingly, Burmaster was not trained by NOPD that an

approaching dog is almost always friendly – a fact that could have saved Apollo's life.

The COPS training also includes specific tactics that NOPD omits or removes. For

---

[16] R. Doc. 60 at ¶ 123. R. Doc. 45-2 (COPS Training) at 11.
[17] *Id.*
[18] *Id.* at 12.
[19] *Id.* at 13.
[20] *Id.* at 16.
[21] *Id.* at 15.
[22] *Id.* at 25.

example, the COPS training notes that "when encountering a dog, officers should stop all forward movement and turn their bodies to the side. Officers should drop their eyes and watch the dog using peripheral vision."[23]

The NOPD training also omits or removes the fact that <u>all</u> dogs hit with TASER darts but not immobilized "fled the scene and did not attack."[24]

In summary, NOPD derived its training by copying-and-pasting from the US DOJ COPS program. But it did not do so in a neutral fashion; there is a pattern in which NOPD deliberately omitted everything about how a dog running at an officer is "almost always friendly" and other elements that would weigh against shooting and killing a dog. This pattern of choices about what to include or exclude makes it at least plausible that NOPD acted with deliberate indifference when putting together its dog-response training.

And there is also plausibility of causation. Burmaster has said he shot the puppy because he thought the dog was "going to bite his penis." But if he had been trained – as the US DOJ says officers should be trained – that a dog running at an officer is "almost always friendly," Burmaster would not have felt the need to shoot and kill multiple dogs, including a foot-and-a-half-tall, eighteen-week-old puppy running toward him. Accordingly, this Court should grant Plaintiffs leave to amend the complaint to add these facts in support of their *Monell* claim. NOPD Defendants have consented to such a motion, and Plaintiff will file it along with this Opposition.

**C.    The City's motion should be denied as premature because the City has not yet decided whether it will ratify Burmaster's conduct or not.**

When an authorized policymaker approves a subordinate's decision and the basis for it, such ratification can be chargeable to the government entity.[25] *Monell* liability through ratification is

---

[23] R. Doc. 60 at ¶ 131. R. Doc. 45-2 (COPS Training) at 34.
[24] R. Doc. 60 at ¶ 131. R. Doc. 45-2 (COPS Training) at 37.
[25] *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

generally limited to when "the subordinate's actions are sufficiently extreme,"[26] and cannot be

proved by simple failure to investigate[27] or good faith statements made in defending complaints.[28]

Here, the complaint describes extreme conduct by a subordinate – Officer Burmaster chose

to aim, shoot, and kill the *smaller* of two dogs on residential property.[29] The dog was an eighteen-

week-old puppy that weighed just over 22 pounds and was less than a foot and a half tall.[30] It was

approximately one-tenth of Burmaster's weight. Burmaster used a gun even though NOPD policy

specifically authorizes the use of TASERs on animals.[31] Burmaster fired his gun in the direction

of a residential home he knew to be occupied (because it was the one he was responding to a call

for service to),[32] and wounded another officer with shrapnel.

The question then is whether the City ratifies Burmaster's actions. NOPD's Public Integrity

Bureau and Use of Force Review Board investigated and found the shooting to be unjustified.[33]

But at the initial status conference in this matter, NOPD's counsel informed the Court that it was

the City's then-position that Burmaster's shooting was justified.[34] After the status conference,

Plaintiff's counsel asked how the City's position could be contrary to its own findings. The City's

counsel explained that the City's position about the shooting was tentative – its final position will

be developed after Burmaster's disciplinary Chief's Hearing. And in a previous pleading, the City

confirmed that "[a]mong the possible outcomes of the Chief's Hearing are: (1) a decision may be

made by that Defendant Burmaster violated NOPD policies and procedures; (2) a decision may be

---

[26] *World Wide Street Preachers v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009)

[27] *Praprotnik, supra,* at 131 ("the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority. . . .")

[28] *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) ("Good faith statements made in defending complaints against municipal employees do not demonstrate ratification.").

[29] R. Doc. 60 (Amended Complaint) at ¶ 4.

[30] *Id.* at ¶¶ 4-5.

[31] *Id.* at ¶ 35.

[32] *Id.* at ¶ 38.

[33] *Id.* at ¶ ¶ 61-66.

[34] *See* R. Doc. 19 (setting initial status conference).

made that Defendant Burmaster did not violate NOPD policies and procedures . . . "[35] In the intervening months, that hearing has been repeatedly rescheduled. As a result, the City has not formulated its official position on the Burmaster shooting.

Accordingly, the *Monell* question is premature. It cannot be resolved until the City conducts the Chief's Hearing, finalizes its position on the shooting, and thus informs the Court as to whether it ratifies the shooting or not. For that reason, the Court should deny the pending motion without prejudice to the City raising the issue later in the case.

**D.    The motion should be denied because the complaint pleads detailed allegations for the improper retention of Burmaster.**

In the Fifth Circuit, a municipality "may be held liable for decisions about hiring and retention" if the plaintiff can show "'deliberate indifference' to the known or obvious consequence[s] of such decisions."[36]

Deliberate indifference exists "where adequate scrutiny of an applicant's background would lead a reasonable supervisor to conclude that the plainly obvious consequences of the decision to [retain] would be the deprivation of a third party's constitutional rights."[37]

To show deliberate indifference, the connection between the background of the individual and the specific violation alleged must be strong, as the plaintiff "must show that the hired officer was highly likely to inflict the particular type of injury [he] suffered."[38] One way to show this is

---

[35] R. Doc. 62-1 at fn. 1.
[36] *Gomez v. Galman*, 18 F. 4th 769, 778 (5th Cir. 2021).
[37] *Gomez, supra, citing Gros v. City of Grand Prairie*, 209 F.3d 431, 433-34 (5th Cir. 2000), *citing Snyder v. Trepagnier*, 142 F.3d 791, 797 (5th Cir. 1998).
[38] *Gomez, supra; see also Board of Comm'rs of Bryan Cty. v. Brown*, 520 US 397, 412 (1997).

to show a pattern of conduct that indicates a "proclivity" towards violence.[39] This theory of *Monell*

liability is not new; it was developed in a series of cases four decades ago.[40]

Here, Plaintiff's complaint alleges that Burmaster is a "frequent user of force," with over

thirty recorded uses of force.[41] That force has resulted in repeated complaints about Burmaster's

use of force, including one initiated by a member of NOPD.[42] Burmaster's repeated use of

complaint-generating force made it likely that he would continue to inappropriately use force like

he did in using his gun to shoot and kill an eighteen-week-old puppy.

Buttressing these allegations about the use of force are the other instances of Burmaster's

misconduct. The complaint notes that "NOPD has sustained a range of rule violations by

Burmaster, including violations regarding verbal intimidation, moral conduct, professionalism,

performance of duty, neglect of duty, [and] failure to comply with instructions."[43] It adds that

"Burmaster has had dozens of allegations of NOPD rule violations brought against him, and at

least **twenty** of them were sustained by NOPD."[44] The complaint provides examples of Burmaster

publicly expressing contempt for reforming NOPD's civil service (in the form of a social media

post depicting Batman slapping Robin in the face after saying he would "reform civil service")

and contempt for NOPD's ethics test.[45] These allegations add to the inappropriateness of NOPD's

choice to continue having Burmaster on the force.

The City argues that most of Burmaster's employment history is irrelevant here, because

most of his prior uses of force "involve humans" and "use of force against humans is very different

---

[39] *Gomez v. Galman*, 18 F. 4th 769, 778 (5th Cir. 2021).

[40] *See, e.g., Turpin v. Mailet*, 619 F2d 196 (2nd Cir. 1980) (allowing Monell claim to be premised on failure to discipline); *McKenna v. City of Memphis*, 785 F.2d 560 (6th Cir. 1986) (jury question of whether city failed to "adequately to discipline . . . its officers").

[41] R. Doc. 60 at ¶¶ 72-73.

[42] *Id*. at ¶ 73.

[43] *Id*. at ¶ 74.

[44] *Id*. at ¶ 75 (emphasis in original).

[45] *Id*. at ¶¶ 99-100.

than with animals."[46] But the City already made that argument in this case,[47] and this Court rejected

it in its Motion to Compel ruling:

> Defendants' counsel argued that they should not be compelled to produce the
> records beyond the descriptions in the Short Report because they do not concern
> "dog encounters" and thus, are irrelevant. . . . The Court finds that to the extent
> sustained or unsustained complaints relate to the use of excessive force by
> Burmaster, they are deemed relevant.[48]

For these reasons, Plaintiffs have provided sufficient factual allegations to support a *Monell*

claim premised on the City's choice to retain Burmaster on the force. The motion should be denied.

**E.     The City is correct that they are not vicariously liable for Burmaster's constitutional
violations. Plaintiff's complaint does not suggest otherwise.**

The City's final argument is that they "cannot be held vicariously liable for the alleged

constitutional violation of Defendant Burmaster."[49] That is true. But the City does not cite to any

section of Plaintiffs' complaint suggesting that Plaintiffs seek to hold the City vicariously liable

for constitutional claims. The Complaint's section on vicarious liability is couched specifically in

terms of Louisiana Civil Code Art. 2320.[50] And Plaintiffs have explicitly noted previously in this

case that the "parties are in agreement that any vicarious liability would be for state law claims,

not federal claims."[51] This aspect of the City's motion should be denied as moot, because there is

no disagreement between the parties.

### III.     CONCLUSION

For these reasons, Plaintiffs' respectfully request that this Court deny the City Defendants'

Motion to Dismiss Plaintiffs' *Monell* Claim.

---

[46] R. Doc. 45-1 at 7.
[47] R. Doc. 41 (Opposition to Motion to Compel) at 9 ("Complaints concerning Defendant Burmaster's interactions with humans, including use of force, are not relevant to City Defendants' hiring, training or supervision with respect to Defendant Burmaster's interactions with dogs.")
[48] R. Doc. 61 (Order on Motion to Compel) at 6.
[49] R. Doc. 45-1 at 13.
[50] R. Doc. 60 at ¶¶ 103-106.
[51] R. Doc. 56 at 9. Emphasis added.

Respectfully Submitted:

*/s/ William Most*
WILLIAM MOST (La. Bar No. 36914)
DAVID LANSER (La. Bar No. 37764)
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
Tel: 504.509-5023
Email: williammost@gmail.com

TARAK ANADA (#31598)
JONES WALKER LLP
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8322
Facsimile: (504) 589-8322
E-Mail: tanada@joneswaker.com