**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| DEREK BROWN and | * | Civil Action No. 22-00847 |
| JULIA BARECKI-BROWN | * | |
| | * | SECTION: L |
| VERSUS | * | |
| | * | HONORABLE ELDON E. FALLON |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | DIVISION: 4 |
| NEW ORLEANS | * | |
| | * | HONORABLE KAREN WELLS ROBY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Memorandum in Support of Plaintiffs' First Motions *in Limine***

COME NOW, Plaintiffs, by and through undersigned counsel, who respectfully request that this Court grant the following motion *in limine*.

In this Motion, Plaintiffs ask the Court to:

- bar any intimations of criminal conduct by Plaintiffs.

- allow the City Defendants to argue they are not liable for the shooting under *Monell*, but bar them from arguing that the shooting was justified.

- bar any references to NOPD training that Defendants did not produce in discovery.

- bar two surprise witnesses listed by Burmaster on his witness list that were never identified in initial disclosures.

- include Apollo's height and weight in the stipulated facts.

Based on the reasoning and evidence presented herein, Plaintiffs' ask the Court to grant their motion.

1

**A.     Statement Regarding Compliance with this Court's Standing Order to Meet and Confer.**

Pursuant to this Court's standing order, the Parties met in person on March 9, 2023 and via Zoom on March 15, 2023, to discuss the motions *in limine* urged in this motion, and corresponded by email. Defendants did not agree to these limitations.

**B.     Motions in Limine Generally.**

In general, the term "*in limine*" "refer[s] to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). A ruling on evidence *in limine* "aid[s] the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Bowden v. Wal-Mart Stores, Inc.*, No. CIV. A. 99-D-880-E, 2001 WL 617521 at *1 (M.D. Ala. February 20, 2001) (citations omitted). "[It] also may save the parties time, effort and cost in preparing and presenting their cases." *Id*. "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the District Court's inherent authority to manage the course of trials." *Luce*, 469 U.S. at 41 n. 4.

**C.     This Court should bar any intimations of criminal conduct by Plaintiffs, as NOPD cleared them of any wrongdoing.**

Plaintiffs ask that this Court bar Defendants from suggesting that Plaintiffs committed a crime, either related to the initial call for service or for how they secured their dogs.

The facts of this case were precipitated by an argument the Plaintiffs had, which led a neighbor to call the police. Neither plaintiff was arrested, and there are no allegations of domestic abuse. Because Burmaster was answering a call for service, Plaintiffs do not dispute that Burmaster

2

had a valid reason to enter their property. As a result, the specific facts of the call for service are not relevant here. They should therefore be excluded as irrelevant under Fed. R. Evid. 401.

Going into the details of the call for service might falsely suggest to the jury that one of the Plaintiffs was engaged in domestic violence. For that reason, the details of the call for service should also be excluded as unfairly prejudicial under Fed. R. Evid. 403. "Unfairly prejudicial" evidence is that which has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *U.S. v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) (*quoting Old Chief v. United States*, 519 U.S. 172, 180 (1997)).

If an explanation for Burmaster's presence is needed at trial, it is sufficient to say there was "a call for service" or a "disturbance" without getting into the details, which are irrelevant to the claims and defenses here.

Also, during his internal affairs interviews, Burmaster suggested that the Browns might have committed a crime by failing to secure their dogs. But the dogs were behind a latched gate, and Burmaster had no specific facts to suggest a failure to secure. Sergeant Deborah Pruitt of NOPD's Public Integrity Bureau investigated the question of whether the dogs were secured, and concluded that the dogs were "properly secured" and that there "was not any wrongdoing on the Browns' part."[1] Accordingly, any suggestion that the Browns failed to follow the law in securing

---

[1] Ex. C at 71-72 (Deposition of 30(b)(6) witness D. Pruitt):

> Q. Turning to page 37. Am, I correct that you concluded that the owners, the Brown's, had properly secured their yard to prevent the dogs from escaping?
> A. Correct.
>  . . .
> Q.· Understood. So you base -- based on what I just read, you concluded that there was not any wrongdoing on the Brown's part, correct?
> A. Correct.

their dogs is unsupported and unfairly prejudicial, and should be excluded. The motion should be granted.

**D.**       **This Court should allow the City Defendants to argue they are not liable for the shooting, but bar them from arguing that the shooting was justified.**

Plaintiffs ask that the Court bar the City from arguing that the shooting was justified, because the City's 30(b)(6) witness would not say whether the city's position is that the shooting was justified or not.

"When a corporation produces an employee pursuant to a rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition." *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). Courts interpret this rule to require the party receiving the notice to "make a conscientious, good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those persons in order that they can answer full, completely, unevasively, the questions posed . . . as to the relevant subject matters." *Bank of New York v. Meridien BIAO Bank,* 171 F.R.D. 134, 151 (SDNY 1997).

Furthermore, in the division of roles between client and lawyer, the client has authority over core issues such as fault. *See McCoy v. Louisiana*, 138 S.Ct. 1500, 1503 (2018) ("Autonomy to decide that the objective of the defense is to assert innocence belongs in this reserved-for-the-client category."); *Commissioner v. Banks*, 543 U.S. 426, 436 (2005) (while a client relies upon the attorney's expertise and skill, the client retains "ultimate dominion and control over the underlying claim"); *see also* Restatement (Third) of the Law Governing Lawyers § 23 cmt. c ("[A] lawyer has no right to remain in a representation and insist, contrary to a client's instruction, that the client comply with the lawyer's view of the client's intended and lawful course of action[.]").

Here, NOPD's Public Integrity Bureau investigated Burmaster's killing of Apollo. PIB's

report concluded that Burmaster fired his "weapon out of fear and not because the dog presented

a threat of serious bodily injury or death to Officer Burmaster." Ex. E (ASI Report) at 17. That

conclusion was approved by PIB's Detective Shannon Brewer, Sergeant John Helou, and

Captain Sabrina Richardson. *Id*. at 19. Once PIB completed its investigation, NOPD's Use of

Force Review Board assessed the evidence. The voting members of that Board (Deputy

Superintendent Christopher Goodly, Deputy Superintendent Paul Noel, and Deputy

Superintendent Arlinda Westbrook) unanimously agreed that the shooting was "NOT

JUSTIFIED." Ex F (UFRB Minutes) at 3.

But the City's 30(b)(6) representative, however, could not say whether the City contends

Burmaster's shooting was justified or not.[2] According to the 30(b)(6) representative, the City has

not even reached a decision. To reach that final decision, there needs to be a "Chiefs' Hearing"

which will then make a recommendation to Interim Superintendent Woodfork. Neither the

Chief's Hearing nor Woodfork's decision have occurred. Ex. D (30(b)(6) Goodly Dep.) at 80-81.

And so according to the City's 30(b)(6) representative, to date "the city has never taken a

position that his shooting was justified" (setting aside the matter of criminal liability). Ex. D at

83. Thus, the representative testified:

> Q.    Okay, so Brewer, Helou, Richardson, Noel, Westbrook, and Goodly all
>        agreed it was unjustified, agreed?
>
> A.    Yes.
>
> Q.    Are you aware of anyone who voted that it was justified anywhere in the
>        Chain of Command?

---

[2] Ex. D at 81:11-16 ("Q. Okay. So, even almost two years after the incident, NOPD has not made a final decision about whether it was justified or unjustified, agreed? A. The Superintendent has not reached a decision on this matter; that I'm aware of.")

> A.    Chain of Command? Not that I'm aware of.

Ex. D at 66:19-23.

For that reason, the City Defendants should be prevented from arguing at trial that the

shooting was justified. The City's lawyers can hardly argue a position that their clients have

never endorsed, and which their 30(b)(6) representative could not answer. Indeed, every single

one of the City Defendants' non-retained experts – Debra Pruitt, Chris Goodly, Shannon Brewer,

David Duplantier, and John Helou – testified that they would not have shot Apollo. *See* Ex. D at

48:12-19 (City's expert Goodly testifying that at "the time he discharged, I would not have fired.

I would not have shot my weapon" and that the shooting was "not justified"); Ex. C at 70:23-25

(City's expert Pruitt testifying that she would not "be taking [her] gun out in that situation").

The City is welcome, of course, to argue that Plaintiffs have not met their burden under

*Monell* to hold the City liable for the shooting. But it would confuse the jury if the City's lawyers

were to argue that the shooting was justified when <u>no one</u> in the City's chain of command has

taken that position, and when the City's five designated non-retained experts all say they would

not have fired. *See Lawton v. Alitalia-Linee Aeree Italiane-Societa*, No. 97 Civ. 4472, 1999 WL

632846, at *5 (S.D.N.Y. Aug. 18, 1999) (ruling that "speculation [by plaintiff's attorney] cannot

serve to contradict the sworn testimony of the witnesses").

The motion should be granted.

**E.    This Court should bar any references to NOPD training that Defendants did not produce in discovery.**

The City of New Orleans did not identify any training documents in its initial disclosures.

Ex. A (City's Initial Disclosures). In discovery, Plaintiffs asked the City of New Orleans to

"[p]roduce all documents that reflect training" about use of force on animals at the time of the

incident. Ex. B at 3. The City produced one training document: a PowerPoint entitled "The

Problem of Dog-Related Incidents and Encounters." See R. Doc. 56-2 (PowerPoint). The City

also described an ASPCA training taken by Burmaster, which Plaintiffs obtained by subpoena to

the ASPCA.

But in depositions on March 8 and 10, 2023 – just weeks before trial – witnesses

described *other* training documents about using force on animals. NOPD 30(b)(6) witness

Duplantier described another training PowerPoint. And Burmaster described a Daily Training

Bulletin. These documents were neither identified in Defendants' initial disclosures, nor

produced in discovery. Accordingly, Defendants should not be able to make reference to or use

any training documents that were not produced in discovery, as Plaintiffs have not seen the

documents much less had an opportunity to depose witnesses about them.

In correspondence of March 14, 2023, counsel for City Defendants wrote that "City

Defendants oppose, but do not intend to produce any document that is responsive to a discovery

request that was not produced." Accordingly, there is no prejudice from this motion being

granted.

**F.      This Court should bar two witnesses listed by Burmaster on his witness list that
           were never identified in initial disclosures.**

The disclosure of all witnesses and the subject matter of their testimony is required under

Rule 26(a). The purpose of such disclosures early in the course of litigation is to "allow the parties

to develop fully and crystalize concise factual issues for trial" and when "[p]roperly used, they

prevent prejudicial surprises and conserve precious judicial energies." *Burns v. Thiokol Chem.*

*Corp.*, 483 F.2d 300, 304 (5th Cir. 1973). The failure to make such Rule 26 disclosures results in

Defendants being unable "to use that information or witness to supply evidence on a motion, at a

hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. Pro.

37(c).

Here, Defendant Burmaster put two witnesses – Precious Banks and Russell Green – on his witness list in the proposed pre-trial order. Neither Banks nor Green was listed on Burmaster's initial disclosures. Ex. G. Nor were they mentioned in discovery, or at deposition. Burmaster gave no indication at any point in this lawsuit that Banks and Green might be witnesses – until March 15, 2023, just over two weeks before trial.

Burmaster's inclusion of undisclosed witnesses at the last minute is neither substantially justified nor harmless. In performing a Rule 37(c)(1) exclusion analysis, courts in this circuit looks to four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563-64 (5th Cir. 2004).

Here, all four factors weigh in favor of excluding Banks and Green. First, the witnesses are not important. Neither is a percipient witness to the shooting. Burmaster suggests that Banks will "testify regarding her knowledge of the incident and subsequent investigation." – but there are already several other PIB witnesses who can testify about the investigation. Burmaster suggests that Green will testify about "his background, experience and events relating to the claims of the plaintiff herein, including but not limited to encounters with dogs while working the street." But Green is not identified as an expert, and his personal encounters with dogs have no relevance to the issues for trial.

Second, Plaintiffs are prejudiced by these surprise witnesses because they have no idea what they might have to say, and have no opportunity to depose them. *See Imani v. Baton Rouge*, 17-cv-00439-JWD-EWD, R. Doc. 376 at 3-4 (M.D. La. Dec. 20, 2022) (excluding "defense witnesses that were not disclosed in initial disclosures" because these "witnesses were not

disclosed timely to Plaintiffs and Plaintiffs would suffer prejudice were the Court to allow their testimony since they are not able to depose them at this time.");

Third, a continuance would not remedy the problem, because Plaintiffs have an expert flying in for trial, and rescheduling would require dislocation and cost to them.

And fourth, there is no explanation for the party's failure to disclose. The parties held a meet and confer on March 15, 2023. Burmaster's counsel offered no explanation for the failure to disclose Banks. Regarding Green, Burmaster's counsel indicated that he had recently learned about Green at the deposition of John Helou. But he articulated that Green is only identified as another officer who shot another animal – not that he knows anything relevant to the Burmaster case. And in any case, Burmaster never updated his initial disclosures.

The motion should be granted.

**G.    This Court should include Apollo's height and weight in the stipulated facts.**

This Court ordered the parties to conduct a conference "for the purpose of arriving at all possible stipulations." R. Doc. 63-1. The parties held that conference on March 15, 2023. Defendants reviewed Plaintiffs proposed stipulated facts, circulated several days in advance. The parties agreed on some stipulated facts, and could not agree on others. One in particular, however, presents an issue at trial.

Plaintiffs proposed as a stipulated fact that "Apollo was 17.7 inches tall, and weighed 22.3 pounds." That height and weight is derived from converting the 45 cm and 10.1 kg measurements of Apollo's autopsy into inches and pounds.[3] The City Defendants refused to stipulate to that fact. They did not dispute that the measurements are accurate; they only contended that Apollo's size was not relevant to the case. But Apollo's size is certainly relevant to this dog-shooting case, in

---

[3] See Ex. H (Autopsy) at 2 ("Submitted for postmortem examination is a 10.1 kg, juvenile, intact male Catahoula dog . . . Crown to rump length is 68 cm, height is 45 cm, and the body thickness is 17 cm.")

which Burmaster contends he shot Apollo because the dog presented a serious risk of injury. *See Stephenson v. McClelland*, 632 Fed. Appx. 177 (5th Cir. 2015) (unpublished) (noting in dog shooting case that the dog was a "50-pound, three-year-old boxer").

And the City Defendants' refusal to stipulate to a fact they do not dispute creates a logistical problem at trial: a witness will have to do math on the stand to convert Apollo's height and weight from kilograms and centimeters to the more familiar pounds and inches. For that reason, Plaintiffs ask that this Court include in the stipulated facts what the City does not dispute – that "Apollo was 17.7 inches tall, and weighed 22.3 pounds."

## H.    Conclusion

For these reasons, Plaintiffs ask the Court to:

- bar any intimations of criminal conduct by Plaintiffs.

- allow the City Defendants to argue they are not liable for the shooting, but bar them from arguing that the shooting was justified.

- bar any references to Defendants' financial inability to pay.

- bar any references to NOPD training that Defendants did not produce in discovery.

- bar two witnesses listed by Burmaster on his witness list that were never identified in initial disclosures.

- include Apollo's height and weight in the stipulated facts.

Respectfully Submitted:

*/s/ William Most*
WILLIAM MOST (La. Bar No. 36914)
DAVID LANSER (La. Bar No. 37764)
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
Tel: 504.509-5023
Email: williammost@gmail.com

TARAK ANADA (#31598)
JONES WALKER LLP
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8322
Facsimile: (504) 589-8322
E-Mail: tanada@joneswaker.com