UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DEREK BROWN and** | * | CIVIL ACTION |
| **JULIA BARECKI-BROWN** | * | |
| | * | NO. 22-847 |
| versus | * | |
| | * | SECTION "L" |
| **DERRICK BURMASTER, SHAUN** | * | JUDGE FALLON |
| **FERGUSON, and the CITY OF NEW** | * | |
| **ORLEANS** | * | MAGISTRATE DIVISION "4" |
| | * | MAGISTRATE JUDGE ROBY |
| * * * * * * * * * * * * * * * * * * * * * * * * | * | |

**DERRICK BURMASTER'S STATEMENT OF UNCONTESTED MATERIAL FACTS**

Defendant, Derrick Burmaster ("Burmaster"), respectfully submits the following Statement of Uncontested Material Facts as to which Defendant contends that there is no genuine issue to be tried pursuant to Local Rule 56.1.

1. Senior Police Officer Derrick Burmaster has been a member of the New Orleans Police Department for twenty-three years.[1]

2. During that time he has responded to many calls for service, including calls where dogs were present.

3. He has been bitten several times by dogs while on calls.

4. Accordingly, when he responds to a call for service at a location, he will look for food and water bowls, dog feces and any other indications that there is an animal present.[2]

---

[1] Exhibit "A", Deposition of Burmaster, p. 15, ll. .7-9.

[2] Exhibit "A", p. 261, l. 1 - p. 262, l. 9.

5. He also makes "kissing" noises as he approaches to draw out any animal.[3]

6. On the night of April 10, 2021 Officer Burmaster responded to a disturbance for service regarding a home at 1420 Felicity Street.

7. Officer Burmaster arrived first and spoke to the complainant who told him he heard a woman shouting and things breaking at a house across the street.[4]

8. He indicated that the house was 1420 Felicity Street, a multi-family house, and indicated that the disturbance came from the downstairs apartment.[5]

9. After Officer Roussel arrived, Officer Burmaster briefed him and then they walked across Felicity Street and approached the house.

10. As Officer Burmaster neared the house, he made "kissing" noises to draw out any dogs.[6]

11. There was no response and he also noticed that there was nothing in the yard to indicate dogs were present.[7]

12. He even said on his Body Worn Camera video "no dogs."[8]

13. Upon determining that it was safe to enter the property, Officer Roussel opened the

---

[3] Exhibit "A", p. 34, l. 23 - p. 35, l. 7.

[4] Exhibit "A", p. 34, ll. 4-22.

[5] *Id.*

[6] Exhibit "A", p. 43, l. 25 - p. 44, l. 12; Burmaster BWC video, Exhibit "B", timestamp 21:41:03 - 21:41:07 (the timestamps are in the upper right hand corner of the BWC videos.

[7] Exhibit "A", p. 45, ll. 6-17.

[8] Exhibit "B", timestamp 21:41:07 - 21:41:09.

gate and Officer Burmaster entered the yard followed by Officer Roussel.

14. As they were walking to the first-floor apartment and well inside the gate, Officer Burmaster heard barking and then two dogs ran down the stairs.[9]

15. The larger of the two dogs ran towards Officer Roussel while the smaller one ran directly towards Officer Burmaster.[10]

16. The dogs were not behaving in a friendly manner but rather were aggressive.

17. Officer Burmaster was certain that the dog coming at him was going to bite him as it was coming in a threatening manner.[11]

18. Officer Burmaster had just seconds to react.

19. He realized he did not have time to escape out of the gate as Officer Roussel did nor was he able to find any cover.[12]

20. He had to defend himself so he drew his gun and fired three shots at the smaller of the two dogs which was coming straight for him.

21. The shots resulted in its death.

22. The larger of the two dogs then ran back up the stairs[13] and, as it no longer posed a threat, Officer Burmaster was then able to safely exit the yard.

23. No more than five seconds elapsed between Officer Burmaster becoming aware of

---

[9]Exhibit "A", p. 51, ll. 11-14.

[10]Exhibit "B", timestamp 21:41:25 - 21:41:30.

[11]Exhibit "A", p 91, l. 17 - p. 92, l. 19.

[12]Exhibit "A", p. 80, l. 12 - p. 81 l. 6.

[13]Exhibit "B", timestamp 21:41:25 - 21:41:30.

the dogs and the last shot.[14]

24. The entire incident is captured on Officer Burmaster's and Officer Roussel's Body Worn Cameras.[15]

25. At the request of the Use of Force Review Board, Sgt. David Duplantier of the NOPD Training Academy reviewed Officer Burmaster's actions, met with Officer Burmaster and prepared a report.[16]

26. Sgt. Duplantier supervises that portion of the Academy that teaches use of force, including involving interactions with dogs, and instructs in this area.

27. Further he was designated by the City to testify as its representative in the City's 30(b)(6) deposition in the area of "training on how officers are to handle animals in the field, including NOPD's development of that training."[17]

28. Sgt. Duplantier personally taught a course at inservice at the Academy regarding use of force on animals and dogs in particular.[18]

29. He also testified that officers took a training provided by the ASPCA as well as training using Daily Training Bulletins ("DTB").[19]

---

[14] *Id.*

[15] Exhibit "B", timestamp 21:39:33 - 21:41:33; Exhibit "C", Roussel BWC, timestamp 21:40:43 - 21:41:31.

[16] Exhibit "I", "Policy Tactics Training Recommendations", Exhibit 40 to Exhibit "H", Deposition of David Duplantier, hereinafter "report"..

[17] Exhibit "H", p. 21 ll. 10-12.

[18] Exhibit "H", p. 27, ll. 3-25; p. 30, l. 5 - p. 32, l. 8.

[19] Exhibit "H", p. 24, l. 23 - p. 25, l. 18.

30. In his report and testimony, he testified that it was his opinion that Officer Burmaster acted properly and that Officer Burmaster's response fell within reason..[20]

31. Sgt. Duplantier testified that Officer Burmaster had no viable alternative.[21]

32. Sgt. Duplantier thought that Officer Burmaster acted properly.[22]

33. Sgt. Duplantier testified that it was not unreasonable for Officer Burmaster to believe that the dogs were attacking him.[23]

34. Sgt. Duplaintier testified that dogs act in packs.[24]

35. Sgt. Duplantier testified that, taking all of this into account, he determined that it was a reasonable use of force and he did not see anything wrong with Sgt. Burmaster's actions.[25]

36. Sgt. Duplaintier testified that his comments and findings were based on NOPD policy of use of force.[26]

37. He further testified that his comments and findings were the official position of the NOPD Training Academy.[27]

---

[20] Exhibit "H", p. 5.

[21] Exhibit "H", p. 96 l. 11 - p. 97, l. 21.

[22] Exhibit "H", p. 99, ll. 6-15.

[23] Exhibit "H", p. 99, l. 15 - p. 100, l. 23.

[24] *Id*.

[25] Exhibit "H", p. 101, ll. 13-24.

[26] Exhibit "H". P. 108, l. 18 - p. 109, l. 7.

[27] Exhibit "H" p. 110, ll. 4-12.

Respectfully submitted:

*/s/ C. Theodore Alpaugh, III*
**C. THEODORE ALPAUGH, III, T.A. (#02430)**
**CLAUDE A. SCHLESINGER (#15042)**
GUSTE, BARNETT, SCHLESINGER & ALPAUGH, L.L.P.
639 Loyola Avenue, Suite 2130
New Orleans, Louisiana 70113-7103
Telephone:    (504) 529-4141
Facsimile:    (504) 561-0326
Email:          cta@gustebarnett.com

**Attorneys for Defendant,**
**DERRICK BURMASTER**