UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and<br>JULIA BARECKI-BROWN | * <br> * <br> * | CIVIL ACTION <br><br> DOCKET NUMBER: 22-00847 |
| VERSUS | * <br> * | <br> SECTION: L |
| DERRICK BURMASTER, SHAUN<br>FERGUSON, and the CITY OF<br>NEW ORLEANS | * <br> * <br> * <br> * <br> * <br> * | <br> HONORABLE ELDON E. FALLON <br><br> DIVISION: 4 <br><br> HONORABLE KAREN WELLS ROBY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN SUPPORT OF
SHAUN FERGUSON'S AND THE CITY OF NEW ORLEANS'
MOTION FOR SUMMARY JUDGMENT**

Defendants, Shaun Ferguson ("Superintendent Ferguson") and the City of New Orleans (the "City") (collectively the "City Defendants") respectfully submit this memorandum in support their Motion for Summary Judgment (the "Motion"). In the Motion, the City seeks dismissal of Plaintiff's claim for municipal liability, entitled "Sixth Cause of Action – Monell Liability,"[1] which is asserted against only the City, and the City Defendants seek dismissal of Plaintiffs remaining claims against them.[2]

**INTRODUCTION**

This case involves the shooting of one Plaintiffs' family dogs by a New Orleans Police Department ("NOPD") officer, Defendant Derrick Burmaster ("Officer Burmaster"). Plaintiffs sued Officer Burmaster, Superintendent Ferguson, who was the NOPD superintendent at the time, and the City. Plaintiffs asserted, among other claims, a claim of municipal liability under 42 U.S.C.

---

[1] Doc. 60, ¶ 112-137.
[2] Plaintiffs assert a claim of "Federal Civil Rights Violations" against Defendant Derrick Burmaster, which is not included in this Motion.

1

§ 1983 and *Monell v. New York City Dept. of Social Services*[3] against the City (the "*Monell* claim"). In the *Monell* claim, Plaintiff contend that the City was deliberately indifferent to allegedly inadequate training, supervision and discipline of Officer Burmaster, and this caused Plaintiffs' dog to be shot.[4] Plaintiffs' state law claims consist of a variety of negligence claims, a conversion claim, and a claim based on vicarious liability for Officer Burmaster's actions.

Plaintiffs concede, as they must, that NOPD has a written policy – NOPD Operations Manual Chapter 1.3 (Use of Force), paragraph 32 (Dangerous Animals) (the "NOPD Use of Force Policy")[5] – which governs use of force upon dangerous animals by NOPD officers. The NOPD Use of Force Policy prohibits deadly force unless necessary to protect the safety of and officer or other person.[6] As is shown below, this policy is facially constitutional.

Further, the undisputed evidence shows that it is the custom and practice of NOPD to train its officers to adhere to the NOPD Use of Force Policy as it applies to animals and to supervise its officers to achieve compliance with the policy.[7] Contrary to Plaintiffs' assertion, NOPD does not train its officers to presume that dogs are hostile.[8] Rather NOPD trains its officers to assess each situation on a case-by-case basis and to use only an appropriate amount of force upon animals, with an emphasis on avoiding the use of force if possible.[9] The NOPD's training and supervision of Officer Burmaster with respect to dog encounters in the field was fully adequate.

Although it is true that Officer Burmaster shot a dog once before, in 2012, since that

---

[3] 436 U.S. 658, 690, n.55, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978).
[4] Doc. 60 (Second Amended Complaint), ¶¶ 114, 115, 137.
[5] Ex. A (Ch. 1.3 - NOPD Use of Force Policy), p. 11; this exhibit A was attached as Exhibit 23 to the deposition transcript of David Duplantier. See Ex. B Transcript of Deposition of 30(b)(6) witness David Duplantier ("Duplantier Deposition"), pp. 49:8 – 52:10.
[6] Doc. 60, ¶ 53. See Ex. A (NOPD Operations Manual Ch. 1.3, para. 32 (Use of Force, Dangerous Animals)).
[7] See Ex. B (Duplantier Deposition), pp. 48:15 – 48:20; 50:10 – 50:21.
[8] See Doc. 60, ¶¶ 122, 129.
[9] Ex. B 132:18 – 133:9.

2

incident he did not use force against animals again until April 10, 2021.[10] For this reason, Officer Burmaster's other uses of force – which only involved humans – are a different kind of use of force and do not support a claim that there was a pattern of violations which that show deliberate indifference in connection to a *Monell* claim. Further, Plaintiffs cannot demonstrate any causal link between NOPD's training, supervision and discipline of Officer Burmaster and the shooting of Plaintiffs' dog.

Plaintiffs' state law claim of negligence against the City Defendants based hiring, training, retention and supervision is barred by Louisiana Revised Statute § 9:2798.1, which provides immunity to public entities for discretionary acts. Further, Plaintiff's state law claims of negligence, negligent infliction of emotional distress, and conversion, are premised on a finding that Officer Burmaster's conduct was wrongful. Officer Burmaster is seeking summary judgment on the grounds that the shooting of Plaintiffs' dog was lawful. If he succeeds and the shooting is deemed to be lawful, then these state law claims against the City Defendants should be dismissed. Otherwise, the City Defendants request that the Court decline supplement jurisdiction over the state law claims.

## UNDISPUTED FACTS

Officer Burmaster was hired as a commissioned police officer by NOPD on August 13, 2000.[11]

At all relevant times of Officer Burmaster's tenure as police officer with NOPD, maintained the following written policy which governed use of force by NOPD police officers:[12]

NOPD Operations Manual, Ch. 1.3, Title: Use of Force, paragraph 32, Dangerous

---

[10] Ex. C, Excerpts of Transcript of Deposition of 30(b)(6) witness John Helou ("Helou Deposition"), pp. 48:18 – 49:1.
[11] Ex. C (Deposition of Helou), p. 16:18 – 18:11, Exhibit 38, p.1.
[12] Ex. A (Ch. 1.3, NOPD policy - Use of Force), p. 1 ("This Chapter governs the use of force by NOPD police officers. The Use of Force Chapter applies to all commissioned members of the NOPD.").

3

>Animals:
>
>Officers are authorized to use firearms to stop an animal in circumstances in which the animal reasonably appears to pose an imminent threat to human safety and alternative methods are not reasonably available or would likely be ineffective. The officer must be cognizant of the surroundings when shooting at an animal and ensure there is no risk to people in the area. Under circumstances in which officers have sufficient advance notice that a potentially dangerous animal may be encountered, officers should develop reasonable contingency plans for dealing with the animal (e.g., fire extinguisher, CEW, animal control officer). Nothing in this Chapter shall prohibit any officer from shooting a dangerous animal if circumstances reasonably dictate that a contingency plan has failed or becomes impractical.[13]

At all times relevant to this case, NOPD provided training to all police officers, including Officer Burmaster, with regard to the NOPD Use of Force Policy as it related to dangerous animals.[14] This training was provided through "in service" training through the NOPD Academy, "daily training bulletins" through the NOPD's Professional Standards Accountability Bureau ("PSAB"), and by mandated online courses with the ASPCA, an animal-focused organization that, among other things, provides educational programs to law enforcement organizations.[15] The NOPD trained its officers, including Officer Burmaster, that a firearm should against an animal only in circumstances that is in which it reasonably appeared that the animal appeared to pose an imminent threat to human safety and alternative methods were not reasonably available or would likely not be effective.[16] In addition, the NOPD trained its officers to evaluate the risks posed by each potential animal encounter faced by officers and not to consider every animal encountered to

---

[13] *Id*., Ch. 1.3, para. 32.
[14] Ex. B (Duplantier Deposition), pp. 23:2 – 25:21, 27:3 – 30:24; 48:15 – 49:1; 50:17 - 50:21; 121:10 – 124:21; 128:11 – 128:14; Ex. D, Excerpts of Deposition of Derrick Burmaster (Burmaster Deposition), pp. 180:25 – 181::24.
[15] Ex. B, 23:2 – 25:21; 122:10-124:21.
[16] *Id*., pp. 23:2 – 25:21, 27:3 – 30:24; 30:3 -30:17; 32:9 – 42:24.42:25 – 45:17; 48:15 – 49:1; 121:10 – 124:21; 125:18 – 127:7; 128:11 – 128:14; 130:19 – 136:1. 78:23 – 81:7; Ex. D (Burmaster Deposition), p. 250:9 – 250:12.

be a threat.[17] The NOPD trained its officers to consider alternative means to avoid use of force against animals.[18]

On January 1, 2012, Officer Burmaster shot a dog while serving as a NOPD officer.[19] There was no allegation that Officer Burmaster violated a NOPD policy during this incident.[20]

From January 1, 2012, to April 10, 2021, Officer Burmaster was involved in no other instance where a complaint was made regarding his use of force against an animal.[21] During that time, Officer Burmaster was the subject of five PIB investigations involving use of force against humans; but none of these investigation resulted in a finding that Officer Burmaster violated NOPD policies regarding use of force.[22]

On the evening of April 10, 2021, Officer Burmaster was on duty for the NOPD.[23] On that evening, Officer Burmaster and NOPD officer John Roussel responded to a domestic disturbance call at Plaintiff's residence.[24] After Officer Burmaster entered the gate of the house in question and proceeded onto the driveway, there was barking and two dogs ran down the porch stairs.[25] One dog ran at Officer Burmaster and he shot the dog.

## LAW AND ARGUMENT

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted when the record indicates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). "On a motion

---

[17] Ex. B, (Duplantier Deposition), pp. 30:3 -30:17, 32:10 – 42:24.
[18] *Id*, pp. 42:46:15; 130:19 – 133:4.
[19] Ex. C (Helou Deposition), Exhibit 31.
[20] Ex. C (Helou Deposition), pp. 39:5 – 45:12.
[21] Ex. C (Helou Deposition), Exhibit 31.
[22] Ex. C, pp. 40:15 – 45:12.
[23] Ex. D, (Burmaster Deposition), p. 33:6 – 33:15.
[24] Ex. D, pp. 33:16 - 36:13.
[25] Ex. D. 65:5 – 67:1.

for summary judgment, a court must review the facts in the light most favorable to the non-movant, and all inferences must be drawn in favor of the non-movant." *Estate of Pollard v. Hood Cnty., Tex.*, 579 F. App'x 260, 264 (5th Cir. 2014) (per curiam). "Summary judgment is mandatory against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Graham v. Hodge*, 69 F. Supp. 3d 618, 625 (S.D. Miss. 2014) (quoting *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011)).

## B. *MONELL* STANDARD – FAILURE TO TRAIN, SUPERVISE AND DISCIPLINE

Plaintiffs, in the Second Amended Petition, allege a Fourth Amendment "seizure" of their property – a "twenty-two-pound Catahoula puppy."[26] To establish this claim, Plaintiffs must prove that the NOPD maintained an official policy, practice, or custom that caused the alleged violation. *Monell v. New York City Dept of Social Services*, 436 U.S. at 690; *Piotrowski v. City of Houston*, 237 F. 3d 567, 579 (5th Cir. 2001) (municipal liability claim based on a pattern of unconstitutional activity of employees must show the activity was a customary practice that amounted to an unofficial municipal policy).

The elements of a *Monell* claim for failure to train, supervise, or discipline are: "(1) that the municipality's training, supervisory, or disciplinary policies or practices were inadequate, (2) that the municipality was deliberately indifferent in adopting these deficient policies, and (3) that the inadequate training, supervisory, or disciplinary policies directly caused the violations in question." *Hankins v. Wheeler*, No. 21-1129, 2022 WL 2208848, at *7 (E.D. La. June 21, 2022)

---

[26] Doc. 60, ¶¶ 77, 79, 81. Plaintiffs also claim deprivation of rights under the Fifth and Fourteenth Amendments. However, it has been held that a Fourteenth Amendment "substantive due process right to be free of prosecution without probable cause" is a Fourth, not a Fourteenth, Amendment claim. *Hannon v. Newton*, 2011 WL 13234402 (N.D. Tex. March 11, 2011) (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). A similar analysis would apply to a purported Fifth Amendment claim. Therefore, Plaintiffs' Fifth and Fourteenth Amendment claims are identical to their Fourth Amendment claim.

(Fallon, J.) (citing *Ratliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020). Deliberate indifference is a stringent standard of fault and requires proof that the NOPD disregarded a known or obvious consequence of its actions. *Board of Court Commissioners of Bryan County v. Brown*, 520 U.S. 397, 410 (1997).

    1. **<u>Plaintiff cannot show that NOPD's training was inadequate.</u>**

Plaintiffs' alleged, in their Second Amended Complaint, that "Burmaster received no training regarding animals[.]"[27] However, Sgt. David Duplantier, the NOPD's Academy trainer regarding use of force, flatly contradicted this assertion, testifying that: (1) without exception, all NOPD officers, including Officer Burmaster, underwent in-service training through the NOPD Academy (the training division of the NOPD) regarding animal encounters and use of force; (2) the NOPD Professional Standards and Accountability Bureau (PSAB) provided a directed training bulletin ("DTB") to officers specific to dangerous dog encounters; and (3) the NOPD mandated that officers participate in online training through the ASPCA regarding animal encounters.[28] Sgt. Duplantier further testified that the NOPD trains its officers to assess all dog encounters on a case by case basis to determine the level of risk, and not to assume all dogs are dangerous.[29] Specifically, NOPD trains its officers that shooting a dog is a last resort, and that non-lethal uses of force should be used if reasonably possible.[30] Further, training is fully consistent with NOPD policy Ch. 1.3, paragraph 32, Use of Force.

Plaintiffs also criticized the contents of a slide presentation entitled "The Problem of Dog-Related Incidents and Encounters."[31] Sgt. Duplantier confirmed that the slide presentation is

---

[27] Doc. 60, ¶ 117.
[28] Ex. B, Duplantier Deposition, pp. 23:2 – 25:21, 27:3 – 30:24; 48:15 – 49:1; 121:10 – 124:21; 128:11 – 128:14.
[29] Ex. B, pp. 30:3 -30:17; 32:9 – 42:24.42:25 – 45:17
[30] Ex. B, pp. 125:18 – 127:7; 130:19 – 136:1.
[31] Doc. 60, ¶ 119.

consistent with NOPD training, but his testimony also made it clear that the slide presentation is not the entirety of NOPD's training of its officers.[32] Plaintiffs argue that the presentation reflects deliberate indifference by NOPD because it does not have certain content that is contained in a U.S. Department of Justice paper with the same name.[33] However, Plaintiff offers no evidence of any motive attributable to NOPD in designing the slide presentation and, in fact, there is none.[34] In any event, Sgt. Duplantier affirmed that NOPD's training is consistent with the statement that "a dog running at an officer is 'almost always friendly'" other criticisms raised in Plaintiffs' Second Amended Complaint. Former Chief Chris Goodly made it clear that he did not consider Officer Burmaster's training to be inadequate, although "we always could use more training."[35]

A municipality's responsibility for a deprivation of rights is at its "most tenuous" with respect to a claim of failure to train. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985)). This is certainly true in this case. Plaintiff has utterly failed to demonstrate that NOPD's training was in any way deficient and this claim should therefore be dismissed.[36]

**2. Plaintiffs cannot show that NOPD's supervision of Officer Burmaster was deficient.**

Plaintiffs contend that NOPD "declined to implement sufficient training, sufficient policies, or any legitimate mechanism for oversight or punishment of Burmaster."[37] However, the City has shown that NOPD supervises its officers via a traditional command structure and also maintains a computer database available to supervisors to track key metrics of employees and to

---

[32] Ex. B, 124:23 – 133:9.
[33] Doc. 60, ¶ 119-132, 135-36.
[34] Ex. B, 70:5 – 71:7.
[35] Ex. B, pp. 42:1 – 42:19; 138:11 – 138:24; 142:16 – 142:21.
[36] Ex. E (Goodly Deposition), 83:18 – 85:9.
[37] Doc. 60, ¶ 115.

provide alerts as needed and a system to track disciplinary actions.[38]

In addition, with respect to NOPD's discipline of Officer Burmaster, Louisiana Revised Statute § 40:2531, also known as the Police Officer Bill of Rights, mandates procedures for conducting administrative investigations of police officers. La. Stat. Ann. § 40:2531. Whenever a police employee or law enforcement officer is under investigation, the statute provides minimum due process standards that apply. *Id*. The statute provides that there shall be no discipline, demotion, dismissal, or adverse action of any sort taken against a police employee or law enforcement officer unless the investigation is conducted in accordance with the minimum standards provided in the statute. Any discipline, demotion, dismissal, or adverse action of any sort whatsoever taken against a police employee or law enforcement officer without complete compliance with the foregoing minimum standards is an absolute nullity. *Id*. It is clear that NOPD has investigated and pursued disciplinary actions against Officer Burmaster when appropriate.[39] Plaintiff can provide no evidence whatsoever to support a claim that NOPD failed to properly investigate or discipline Officer Burmaster when authorized by the Police Officer Bill of Rights.

> 3. **Plaintiff cannot demonstrate that NOPD was deliberately indifferent to the results of its policies with respect to training or supervision.**

Plaintiffs cannot establish that the City was deliberately indifferent in any way relevant to this case. There are two ways to prove deliberate indifference: (1) proof by pattern; and (2) a single incident. *Littell v. Houston Indep. Sch. Dist*., 894 F.3d at 624 (citing *Canton*). Proof by pattern requires that a plaintiff show that municipal employees violated constitutional rights "so often" that the factfinder could infer from the pattern of violations that "the need for further training must have been plainly obvious to the . . . policymakers." *Valdez*, 852 Fed. Appx. at 135 (citing *Connick*

---

[38] Ex. C (Helou Deposition), pp. 9:14 – 9:15, 9:23: 10:5, 16:16 – 18:10.
[39] Ex. C, pp. 39:21 – 45:8.

9

*v. Thompson*, 563 U.S. 51, 61 (2011), and quoting *Canton*, 489 U.S. at 390 n.10)). A pattern requires "similarity and specificity" and "sufficiently numerous prior incidents." *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 1989).

### a. There is no pattern of dog shootings by Officer Burmaster or other officers.

In this case, there is no pattern of dog shootings that would have made NOPD aware that its training or supervision was inadequate. Prior to the date that Plaintiffs' dog was shot, Officer Burmaster had only one other instance – ten years prior – in which he fired a gun at a dog.[40] The general rule, which is applicable here, is that the existence of a constitutionally deficient policy, practice, or custom cannot be inferred from a single wrongful act, when the policy, practice, or custom relied upon is not, itself, unconstitutional. *Thompkins v. Belt*, 828 F. 2d 298, 304 (5th Cir. 1987). It is anticipated that Plaintiffs will argue that Officer Burmaster had "a strange ongoing fear for the last ten years that small dogs are going to bite [his] genitalia," and that NOPD should have terminated Officer Burmaster's employment or taken some other supervisory action against Officer Burmaster.[41] However, there is no evidence, even assuming that Officer Burmaster had a fear of dogs, that his conduct as a police officer was adversely affected in any manner sufficient to put the City Defendants on notice that he might shoot a dog unlawfully. Further, the fact that he served without incident with respect to dogs for ten years disproves Plaintiffs' theory. For these reasons, Officer Burmaster's 2012 dog shooting provided no reason for the City to reasonably foresee dog shooting in 2021.

With respect to other officers' conduct, there were only eight animal shootings by NOPD

---

[40] Ex. C (Helou Deposition), Exhibit 31.
[41] Ex. B, (Duplantier Deposition), p. 38:12 – 38:17 ("Q. If I have this strange ongoing fear for the last ten years that small dogs are going to bite my genitalia, am I allowed to consider that in the overall analysis? A. I'm not quite sure how to answer. I'm going to say consider it in the overall analysis."); Ex. E, Excerpts of 30(b)(6) witness Chris Goodly (Goodly Deposition), pp. 50:9 – 50:14, 59:11 - 55:22, 60:9 – 61:5, 62:3 – 62:15

officers between 2012 and April 10, 2021.[42] This low number of previous animal shooting incidents, as a matter of law, does not demonstrate a pattern. See *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002), (eleven incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry); *Peterson v. City of Fort Worth, Texas*, 588 F.3d 836, 850-851 (5th Cir. 2009) (twenty-seven excessive force complaints over a four-year period did not establish a pattern of excessive force).

### b. Officer Burmaster's prior uses of force against humans are not sufficiently similar to a dog shooting to show a pattern.

In addition, it is anticipated that Plaintiffs will argue that that Officer Burmaster's prior uses of force, which Plaintiffs say numbered "at least thirty times in ten years," constituted a pattern that should have put NOPD on notice that its supervision and retention of Officer Burmaster was inadequate and would result in the shooting of a dog.[43] Only one prior instance of Officer Burmaster's use of force involved a dog.[44] In addition, the number of uses of force by Officer Burmaster, without any other context, was not unusual in comparison to other officers for a proactive police officer like Officer Burmaster.[45]

In addition, Officer Burmaster's prior uses of force against humans are not sufficiently similar to constitute a pattern for purposes of a *Monell* clam. A pattern requires "similarity and specificity" as well as "sufficiently numerous prior incidents." *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 1989). Prior acts must be "fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act have involved injury to a third party." *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005). "To

---

[42] Ex. C (Helou Deposition), Exhibit 31.
[43] Doc. 60, ¶ 116.
[44] Ex. C (Helou Deposition), p. 48:18: - 49:1.
[45] Ex. C, p. 39:5 – 39:16.

11

show deliberate indifference, the connection between the background of the individual and the specific violation alleged must be strong, as the plaintiff 'must show that the hired officer was highly likely to inflict the particular type of injury [he] suffered.'" *Gomez v. Galman*, 18 F.4th 769, 778 (5th Cir. 2021) (quoting *Gros v. City of Grand Prairie*, 209 F.3d 431, 433–34 (5th Cir. 2000)).

Use of force against humans is substantially different from use of force against dogs. According to Sgt. Duplantier, there are different standards for use of force for humans versus animals.[46] One reason is that tasers are more effective upon humans because of body mass and speed of potential attack. For tasers, the goal of achieving "neuromuscular incapacitation," is much more difficult for a dog, which is relatively smaller and speedier than a human.[47] In addition, a dog acts on instinct, so de-escalation is much less of an option in use of force situations for a dog encounter than it is for a human.[48] Further, dogs are pack animals, so when there are multiple dogs, as was the situation in this case, that is an additional factor that must be considered in determining whether to use force.[49]

Moreover, use of force against a dog is use of force against property, which is a different kind of force than use of force against humans. The case of *Gomez v. Galman*, *supra*, is instructive in this regard. In *Gomez*, the plaintiff was at a bar and two off-duty police officers "harassed and later beaten [the plaintiff] unconscious." *Id*. at 774. Plaintiff sued the municipality, asserting a claim under *Monell* that the municipality had a policy of hiring and retaining unqualified officers. *Id*. at 777 -78. The plaintiff claimed that the municipality was consciously indifferent based on its knowledge of one of the officer's prior improper strip-search of an arrestee and the fact that the

---

[46] Ex. B, Duplantier Deposition, p. 52:25 – 53:3 ("Q. Is there, like, a different – a difference in the standards of when an officer can use lethal force against a human versus when an officer can use lethal force against a dog? A. Yes.")
[47] Ex. B, pp. 53:4 – 56:18.
[48] Ex. B, p. 56:20 – 57:10.
[49] Ex. B, pp. 99:23 – 100:18

officer headbutted a mirror on a car. However, the court held that the strip search did not make it "plainly obvious" that the officer had a "proclivity toward such brutal violence as alleged here." *Id*. The court reasoned that officer's previous use of force to damage property was different in *kind* from the use of force upon the plaintiff. The court therefore dismissed the *Monell* claim against the municipality.

Here, as in *Gomez*, Officer Burmaster's history involves a different kind of use of force than in the current case. Dogs are property. Dogs behave differently than humans. As *Gomez* instructs, Officer Burmaster's different kind of use of force does not support a finding of deliberate indifference by the City. Accordingly, Officer Burmaster's prior history does not show that he was "highly likely to inflict the particular type of jury" that the Plaintiffs suffered. See *Id*. at 778.

In any event, Plaintiffs cannot show that any prior use of force by Officer Burmaster was improper, since none of the incidents violate NOPD policies, and only 5 instances resulted in a formal investigation. Plaintiffs have therefore failed to allege any similarity to the alleged constitutional violation in the instant case – the shooting of their dog. As such, Plaintiffs have failed to allege facts to support an inference that the City Defendants were deliberately indifferent to the proper training, supervision and discipline of Defendant Burmaster. See *Estate of Davis ex rel. McCully, supra,* 406 F.3d at 384 (deputy's improper exposure of himself in photography, history of demonstrated lack of judgment, crudity, and "perhaps illegalities," and reports of acting like a "rogue" cop during a traffic stop, did not demonstrate a relevant pattern for with respect to "using deadly force during a traffic stop").

Finally, the number of Defendant Burmaster's prior uses of force are irrelevant without context sufficient to support an inference of deliberate indifference. Context is necessary to support a claim that a pattern exists as to use of force. See *Peterson v. City of Fort Worth, Tex*., 588 F.3d

13

at 851. In *Peterson*, the Court held that twenty-seven complaints of use of excessive force did not support a pattern "so common and well-settled as to constitute a custom that fairly represents municipal policy" where the plaintiff failed to provide context, including the size of the police department or how many arrests were made. 588 F.3d at 851 (quoting *Piotrowski v. City of Houston*, 237 F.3d at 579). And in *Saenz*, the Court held that twenty-one previous incidents in which a police officer killed people failed to establish a pattern absent "further context surrounding the circumstances" of the of the prior shootings. 637 F. App'x at 832.

Here, Plaintiffs cannot provide any context sufficient to create a question of fact as to whether the number of Defendant Burmaster's previous uses of force were unusually large in comparison to other officers employed by NOPD or whether the instances of use of force by Defendant Burmaster were in any way unusually egregious or unlawful. Plaintiffs is therefore unable to establish a patter sufficient to support a claim that the City was consciously indifferent to any risk Officer Burmaster allegedly posed. See *Weiland v. Palm Beach City. Sheriff's Office*, 792 F.3d 1313, 1328 n. 21 (11th Cir. 2015) (allegations of "thousands of contacts" with mentally ill people and "numerous police shootings" of mentally ill did not put sheriff's office on notice that training was inadequate where "factual enhancement" was missing to show similarity of constitutional violations).

    c. **<u>This is case is not an exception to the rule requiring proof of a pattern.</u>**

Proof of deliberate indifference by a single incident is the exception to general rule requiring a pattern; it requires a showing that "a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation[.]" *Valdez*, 852 Fed. Appx. at 136 (citing *Bd. of the City Comm'rs v. Brown*, 520 U.S. 397, 409 (1997), and citing *Canton*, 489 U.S. at 390, 109 S.Ct. 1197). This "single-incident exception" exists only where the

"risk of constitutional violations" was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy." *Id*. (quoting *Littell*, 894 F.3d at 624). The single-incident exception "is generally reserved for those cases in thich the government actor was provided no training whatsoever." See *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018) (citing *Brown v. Bryan County*, 219 F.3d 450, 453-54 (5th Cir. 2000) and quoting *McClendon v. City of Columbia,* 258 F.3d 432, 442–43 (5th Cir. 2001), *vacated for reh'g en banc,* 285 F.3d 1078 (5th Cir.)*, decision on rehearing en banc,* 305 F.3d 314 (5th Cir. 2002) for the proposition that "there is a difference between a complete failure to train, as in *Brown v. Bryan County*, and a failure to train in one limited area.").

The single-incident exception "is generally reserved for those cases in which the government actor was provided no training whatsoever." See *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018) (citing *Brown v. Bryan County*, 219 F.3d 450, 453-54 (5th Cir. 2000) and quoting *McClendon v. City of Columbia,* 258 F.3d 432, 442–43 (5th Cir. 2001), *vacated for reh'g en banc,* 285 F.3d 1078 (5th Cir.)*, decision on rehearing en banc,* 305 F.3d 314 (5th Cir. 2002) for the proposition that "there is a difference between a complete failure to train, as in *Brown v. Bryan County*, and a failure to train in one limited area.").

In *Brown v. Bryan County*, 219 F.3d 450 (5th Cir. 2000), a county sheriff failed to provide any training or supervision for a new officer who had a demonstrated history of forcing three or four individuals "to the ground" out of twelve arrests, which an expert testified was excessive. 219 F.3d at 462. The Court held that the total lack of training or supervision, together with the high frequency of forceable arrests, demonstrated the sheriff's deliberate indifference to the unconstitutional forceable take-down arrest of the plaintiff which resulted in injures to the plaintiff.

*Id*. at 462-463. See also *Littell*, 894 F.3d at 627 (allegation that school district provided "no training whatsoever" as to how to conduct a lawful search was actionable as a *Monell* claim).

In contrast, in *Pena, supra*, a *Monell* claim was asserted against a city based on a failure-to-train theory based on alleged inadequacies in the city's taser-training program. 879 F.3d at 623. The Court noted that the plaintiffs acknowledged that there was some training provided to officers for tasers. Because there was some training, rather than no training, the Court held that the plaintiffs could not satisfy "the exacting test for the narrow single-incident exception" for municipal liability. *Id*. at 624,

Here, unlike *Bryan County* and *Littell*, it is clear that NOPD provided appropriate training as to use of force upon animal and supervised and disciplined Officer Burmaster. Further, unlike in the untrained officer in *Bryan County*, prior uses of force by Officer Burmaster are almost entirely unrelated to shooting a dog. See *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 412, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997) ("[t]he connection between the background of the particular [defendant] and the specific constitutional violation alleged must be strong."). As has been discussed above, use of force against humans is different than with animals.

For these reasons, it cannot be said that it should have been apparent to the City that Officer Burmaster's shooting of Plaintiffs' dog was the highly predictable consequence of the program of training, supervision and discipline by City. *Monell* liability depends on a finding that "***this*** officer was highly likely to inflict the ***particular*** injury suffered by the plaintiff." *Brown*, 520 U.S. at 412 (emphasis in original). On this record, the City cannot be deemed deliberately indifferent with respect to the training, supervision or discipline of Defendant Burmaster.

### 4. **Plaintiffs cannot show that any training, supervision or discipline directly caused the shooting of the dog by Officer Burmaster.**

Plaintiffs cannot establish a direct causal link between the City's training, supervision and discipline of Officer Burmaster and the shooting of Plaintiffs' dog. See *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dept of Soc. Servs.*, 436 U.S. at 694) (a *Monell* claim requires a direct causal link between a policy and the alleged constitutional deprivation).

Contrary to Plaintiffs' allegations, there were no omissions in NOPD's training that resulted in Officer Burmaster shooting of Plaintiffs' dog. Further, even if Officer Burmaster was afraid of dogs, he worked as a police office for ten years without incident. Plaintiffs cannot establish that any inadequate training, supervision or discipline directly caused their dog to be shot.

### C. **STATE LAW CLAIMS**

#### 1. **Negligent Hiring, Training, Retention, and Supervision Against The City Defendants.**

Plaintiffs assert a state law claim of negligent hiring, training, retention, and supervision against the City Defendants.[50] Plaintiffs offer absolutely no facts to support their negligent hiring claim. In addition, Plaintiffs negligent training, retention and supervision claims are without merit for the same reasons as discussed in connection to the *Monell* claim, above.

However, an additional reason to dismiss these claims is that the City Defendants are immune from such claims based on Louisiana Revised Statute § 9:2798.1. This statute provides, "Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." Louisiana Revised Statute § 9:2798.1(B).

---

[50] Doc. 60, ¶102-106.

In *Hoffpauir v. Columbia Casualty Company*, 2013 WL 5934699 (M.D. La. 11/5/2013) (unreported), a plaintiff brought claims of negligent hiring, training, retention, and supervision against a sheriff's department. The court granted summary judgment for the sheriff's department on the claims of negligent hiring, training, retention, and supervision, holding that hiring, training, retention and supervision of officers were discretionary acts and that Louisiana Revised Statute § 9:2798.1 provided the sheriff's department immunity. The court in *Hoffpauir* reviewed a case with relevant facts, *Smith v. Lafayette Parish Sheriff's Department*, 874 So.2d 863 La. App. 3 Cir. (2004), which involved allegations of improper hiring and retention of a rapist deputy, and held:

> Similarly, the hiring, training and supervision policy of the Livingston Parish Sheriff's Department is a discretionary function. Like in *Smith*, the plaintiffs have failed to point to a Louisiana statute mandating a particular policy or procedure for hiring, training, supervising or screening officers; and the court's review has also failed to uncover any relevant statute mandating a policy or procedure. Accordingly, the Sheriff's Department's hiring, training, retention and supervision policy are discretionary functions, for which Louisiana Revised Statutes § 9:2798.1 grants the officers and the department immunity.

*Hoffpauir*, at *9. In addition, in *Allemang v. State of Louisiana*, 2021 WL 2383934 (W.D. La. 06/10/2021), plaintiffs asserted that a state trooper was negligently trained. Even though the plaintiff's expert provided an opinion that the trooper improperly conducted a test of a suspect and that the State Police department was unable or unwilling to adequately train and supervise troopers, the district court held that the claims for negligent training were barred by Louisiana Revised Statute § 9:2798.1.

The cases cited by Plaintiffs in their Second Amended Complaint are inapt. The opinion in *Roberts v. Benoit*, 605 So.2d 1032, 1038 (La. 1991), was rendered four years before the effective date of Louisiana Revised Statute § 9:2798.1. *Cote v. City of Shreveport*, 46,571 (La. App. 2 Cir. 9/21/2011), 73 So.3d 435, did not consider the city's immunity, but instead granted summary

18

judgment to the city defendant because the facts did not make it foreseeable that its employee would commit the criminal act alleged by the plaintiff.

The City Defendants' actions in the hiring, training, retention, and supervision of Officer Burmaster are discretionary functions for which immunity is provided by statute. Accordingly, all claims and causes of action for negligent training, hiring, retention and supervision made under state law should also be dismissed.

2. **Negligence, Conversion and Vicarious Liability**

A negligence or conversion claim will fail if there is no wrongful action. See *Cote v. City of Shreveport*, 73 So.3d at 435 (negligence); *Estis v. Mills*, Case No. 53,852 (La. App. 2 Cir. 4/14/21), 318 So.3d 449 (conversion). If the Court determines that Officer Burmaster's shooting of Plaintiffs' dog did not violate the constitutional and was lawful, it follows that the shooting was not wrongful and the claims for negligence and conversion should be dismissed.

In addition, It is well established that there is no vicarious liability if there is no underlying tortious conduct. See *Cote*. If it is determined that the underlying conduct of Officer Burmaster was lawful, all claims against the City Defendants based on vicarious liability should be dismissed.

3. **Alternatively, if following the Court's rulings on the parties' summary judgment motions there are no Federal questions in the suit, the Court should decline jurisdiction over such state law claims.**

Having established above that the City is entitled to a judgment dismissing Plaintiffs' *Monell* claim under § 1983, if the Court does not grant summary judgment as to Plaintiffs' state law claims, and if the Court dismisses the federal question claim against Officer Burmaster, the Court should decline to exercise supplemental jurisdiction over any remaining state law claim. Pursuant to 28 U.S.C. § 1367(c)(3), the Court may decline supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." Plaintiff's only

19

federal claims are premised on 42 U.S.C. § 1983, so their dismissal will leave no federal questions in the suit to provide original jurisdiction. Accordingly, the Court should follow the practice in the Fifth Circuit and the Eastern District of Louisiana of declining jurisdiction over state law tort claims once all federal claims have been dismissed. *Rhyne v. Henderson Cnty.*, 973 F. 2d 386 (5th Cir. 1992); *James v. Chutz*, 62 F. 3d 394 (5th Cir. 1995).

## CONCLUSION

Plaintiffs' *Monell* claims should be dismissed as a matter of law because they cannot establish that the City's training, supervisory, or disciplinary policies or practices were inadequate with respect to Officer Burmaster or officers' use of force with regard to dangerous animals. Further the *Monell* claims should be dismissed because Plaintiffs cannot show that the City was deliberately indifferent in adopting its policies or that any training, supervisory, or disciplinary policies directly caused the shooting of Plaintiffs' dog. Plaintiffs state las clais should be dismissed because of immunity and absence of wrongful conduct.

Respectfully submitted:

*/s/ James M. Roquemore*
**JAMES M. ROQUEMORE, LSB #40035**
ASSISTANT CITY ATTORNEY
james.roquemore@nola.gov
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET, SUITE 5E03
NEW ORLEANS, LOUISIANA 70112
TEL: (504) 658-9800
FACSIMILE: (504) 658-9868

*Counsel for Shaun Ferguson and the City of New Orleans*