

# NEW ORLEANS POLICE DEPARTMENT
# OPERATIONS MANUAL

## CHAPTER: 1.3

## TITLE: USE OF FORCE

**EFFECTIVE:** 12/06/15
**REVISED:** 04/01/2018, 10/02/2022

### PURPOSE

This Chapter governs the use of force by NOPD police officers. The Use of Force Chapter applies to all commissioned members of the NOPD.

### DEFINITIONS

**Active Resistance**—Resistance exhibited by a suspect that is between passive resistance and aggressive resistance (e.g., attempts to leave the scene, flee, hide from detection, or pull away from the officer's grasp). Verbal statements, bracing, or tensing alone do not constitute active resistance.

**Aggravated Resistance**—When a subject's actions create an objectively reasonable perception on the part of the officer that the officer or another person is subject to imminent death or serious physical injury as a result of the circumstances and/or nature of an attack. Aggravated resistance represents the least encountered but most serious threat to the safety of law enforcement personnel or another person.

**Aggressive Resistance**—Is a subject's attempt to attack or an actual attack of an officer. Exhibiting aggressive behavior (e.g., lunging toward the officer, striking the officer with hands, fists, kicks) are examples of aggressive resistance. Neither passive nor active resistance, including fleeing, pulling away, verbal statements, bracing, or tensing, constitute aggressive resistance.

**Anatomical Compliance Technique / Pressure Point Compliance Technique**—The act of applying pressure to vulnerable areas, weak points or pressure points of the body. This technique is used to cause immediate compliance by a subject who poses a threat.

**Apprehension**—The arrest, capture or taking into custody of a person.

**Arrest**—The taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him. (La. C.Cr. P. Art. 201).

**Canine Apprehension**—Where articulated facts demonstrate that a canine played a clear role in the capture of a person. The mere presence of a canine at the scene of an arrest shall not

Exhibit 23

count as a canine apprehension.

**Canine Deployment**—Any situation, except one involving an on-leash article search only, in which a canine is brought to the scene and used in an attempt to locate or apprehend a suspect, whether or not a suspect actually is located or apprehended. This includes all instances in which a canine is removed from the police car; or when a suspect gives up immediately after an announcement is made that if they do not surrender, the canine will be released; or when a canine search is conducted in an effort to apprehend a suspect.

**Civil Disturbance**—
Any incident which disrupts a community where law enforcement intervention is required to maintain public safety. Civil disturbances may consist of riots, demonstrations, strikes, sit-ins, or mass acts of criminal damage or violence.
**Compliant**—Cooperative obedience in response to lawful requests or directions from law enforcement personnel.

**Critical Firearm Discharge**—A discharge of a firearm by an NOPD officer, including discharges when no person or animal is struck. Range and training firings, humane destruction of animals, and off-duty hunting discharges when no person is struck are not critical firearms discharges.

**Conducted Energy Weapon (CEW)**—A weapon designed primarily to discharge electrical impulses into a subject that will cause involuntary muscle contractions and override the subject's voluntary motor responses.

**CEW Application**—The contact and delivery of electrical impulse to a subject with a CEW.

**Deadly Force/Lethal Force**—Any force likely to cause death or serious physical injury. The use of a firearm (discharge) is considered deadly force. Neck holds and strikes to the head, neck or throat with a hard object are considered lethal force.

**Elbow strike**—A strike to a person with the point of an officer's elbow.

**Firearm**—A pistol, revolver, shotgun, carbine, or machine gun. Any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive. (Gun Control Act of 1960, Title 18, US, chapter 44, Title1)

**Force Statement**—A written statement required as part of the departmental Use of Force Report (in Blue Team application and Form #114). The Force Statement is completed by an involved officer or witness officer documenting a use of force. A Force Statement is not considered a compelled statement under *Garrity* v. *New Jersey* or under analogous State law. The statement can be considered compelled only when the officer is ordered to provide a statement after refusing to do so on the grounds that the officer has a reasonable, good faith belief that such statement may incriminate himself/herself.

**Force Tracking Number**—A unique number assigned by FIT to each reportable use of force event to facilitate awareness event and tracking of a use of force investigation. The number includes the letters "FTN" for Force Tracking Number, followed by the year the force event occurred followed by a three-digit sequential number starting with 001 for the first recorded allegation of the year. FTN 2014-001 indicates the first reportable use of force event in 2014.

**Force Transition**—Force transition is the movement, escalation/de-escalation, from the application of one force type to another in conjunction with the "objectively reasonable" standard.

**Force Investigation Team (FIT)**—The NOPD unit tasked with conducting investigations of serious uses of force; uses of force indicating apparent criminal conduct by an officer; uses of force by NOPD personnel of a rank higher than sergeant; and uses of force reassigned to FIT by the Superintendent, the Superintendent's designee, or PIB. FIT also shall investigate all instances in which an individual has died while in, or as an apparent result of being in, the custody of NOPD.

**Imminent Threat**—An immediately impending danger that must be instantly met.

**Impact Weapon**—Any solid or semi-solid object used by an officer as a method of gaining control of a subject. Absent exigent circumstances, officers shall not use non-traditional weapons/hard objects, such as firearms or radios, as impact weapons.

**In-Custody Death**—An incident in which an individual died while in, or as an apparent result of being in, the custody of NOPD.

**Kick**—To forcibly strike a person with any part of an officer's leg.

**Leg sweep**—To trip a person and/or cause one or both legs of a person to collapse and the person to fall to the ground.

**Less-Lethal Force**—Force employed that is neither likely nor intended to cause death or serious injury.

**Less-Lethal Weapon**—An apprehension or restraint tool that, when used as designed and intended, is less likely to cause death or serious injury than a conventional lethal weapon such as a firearm.

**Neck Hold**—One of the following types of holds: (1) arm-bar control hold, a hold that inhibits breathing by compression of the airway in the neck; (2) carotid restraint hold, a hold that inhibits blood flow by compression of the blood vessels in the neck; (3) lateral vascular neck constraint; or (4) a hold with a knee or other object to the back of a prone subject's neck; (5) any actions with the hands and fingers of an officer, which restricts the airflow of an individual.  A neck hold is considered lethal force.

**Passive Resistance**—Behavior that is unresponsive to police verbal communication or direction (e.g., ignoring or disregarding police attempts at verbal communication or control; going limp; or failing to physically respond or move) and verbal resistance (e.g., verbally rejecting police verbal communication or direction; telling the officer that he or she will not comply with police direction, to leave alone, or not bother him or her). Bracing, tensing, linking arms, or verbally signaling an intention to avoid or prevent being taken into custody constitutes passive resistance. Passive resistance, including verbal statements, bracing, or tensing alone does not constitute active resistance

**Probable Cause**—The facts and circumstances, known to the officer at the time, which would justify a reasonable person in believing that the suspect committed or was committing an offense.

**Reasonable Force**—Force that is objectively reasonable under the circumstances. The minimum amount of force necessary to effect an arrest or protect the officer or other person.

**Reasonably Necessary**—Force is reasonably necessary when the facts and circumstances, including the reasonable inferences drawn therefrom, known to an officer at the time he or she uses force, would cause an objectively reasonable officer to believe that force is appropriate.

**Reportable Use of Force**—Any force above hand control or escort techniques applied for the purposes of handcuffing, or escort techniques that are not used as pressure-point compliance techniques, do not result in injury or complaint of injury, and are not used to overcome resistance. The pointing of a firearm at a subject is a reportable use of force.

**Seizure (or Detention)**—Occurs when an officer's words, actions, or control would convey to a reasonable person that he or she is not free to leave.

**Serious Physical Injury**—Physical injury that creates a substantial risk of death; causes death or serious and protracted disfigurement; or causes impairment of the function of any bodily organ or limb.

**Serious Use of Force**—Includes the following:
  (a) All uses of lethal force by an NOPD officer;
  (b) All critical firearm discharges by an NOPD officer;
  (c) All uses of force by an NOPD officer resulting in serious physical injury or requiring hospitalization;
  (d) All neck holds;
  (e) All uses of force by an NOPD officer resulting in a loss of consciousness;
  (f) All canine bites
  (g) More than two applications of an CEW on an individual during a single interaction, regardless of the mode or duration of the application, and whether the applications are by the same or different officers, or CEW application for 15 seconds or longer, whether continuous or consecutive; and
  (h) Any strike, blow, kick, CEW application or similar use of force against a handcuffed subject.

**Specialized Weapons** - weapons which require specialized training, certification and authorization prior to use, such as chemical agents, 40mm launchers, stinger rounds and grenades, flashbangs, LRAD systems, etc. (see: **Chapter 46.2.3 – CRU SWAT Equipment and Storage**.)

**Specialty Impact Munitions** - Refers to extended range impact munitions. These munitions may include impact rounds containing chemical agents.

**Supervisor**—A sworn NOPD employee at the rank of sergeant or above and non-sworn NOPD members with oversight responsibility for officers.

**Takedown**—A person is thrown, pushed, tackled, or shoved to the ground or against a wall, car, or other surface by an officer. The key element to a takedown is the degree of force used. The use of a compliance technique off-balancing the subject against a wall, car, or surface (**other than ground**) alone is **not** a takedown. A shove or push does not maintain contact, but rather <u>creates distance between the officer and the subject, and is not a takedown unless a fall to the ground results.</u>

**Use of Force**—Physical effort to compel compliance by an unwilling subject above unresisted handcuffing, including pointing a firearm at a person.

**Use of Force Indicating Apparent Criminal Conduct by an Officer**—Force that a reasonable and trained supervisor would conclude could result in criminal charges due to the apparent circumstances of the use of force. The level of the force used as compared to the resistance encountered, discrepancies in the use of force as described by the officer and the use of force as evidenced by any resulting injuries, witness statements, or other evidence are examples.

**Use of Force Levels**—For reporting and investigative purposes, the New Orleans Police

Department categorizes use of force by its members into four (4) primary force levels:

### LEVEL 1
Level-1 uses of force include pointing a firearm at a person and hand control or escort techniques (e.g., elbow grip, wrist grip, or shoulder grip) applied as pressure point compliance techniques that are not reasonably expected to cause injury; takedowns that do not result in actual injury or complaint of injury; and use of an impact weapon for non-striking purposes (e.g., prying limbs, moving, or controlling a person) that does not result in actual injury or complaint of injury. It does not include escorting, touching, or handcuffing a person with minimal or no resistance.

### LEVEL 2
Level-2 uses of force include use of a CEW (including where a CEW is fired at a person but misses); the use of "flash bangs" and "aerial flash bangs" to compel compliance from an unwilling subject; a canine deployment resulting in an apprehension without contact and force that causes or could reasonably be expected to cause an injury greater than transitory pain but does not rise to a Level 3 use of force.

### LEVEL 3
Level-3 uses of force include any strike to the head (except for a strike with an impact weapon); use of impact weapons when contact is made (except to the head), regardless of injury; a canine deployment resulting in an apprehension contact that is not a bite or the destruction of an animal.

### LEVEL 4
Level-4 uses of force include all 'serious uses of force' as listed below:
   (a) All uses of lethal force by an NOPD officer;
   (b) All critical firearm discharges by an NOPD officer;
   (c) All uses of force by an NOPD officer resulting in serious physical injury or requiring hospitalization;
   (d) All neck holds;
   (e) All uses of force by an NOPD officer resulting in a loss of consciousness;
   (f) All canine bites;
   (g) More than two applications of a CEW on an individual during a single interaction, regardless of the mode or duration of the application, and whether the applications are by the same or different officers, or CEW application for 15 seconds or longer, whether continuous or consecutive;
   (h) Any strike, blow, kick, CEW application, or similar use of force against a handcuffed subject; and
   (i) Any vehicle pursuit resulting in death, serious physical injury, or injuries requiring hospitalization.
   (j) Any use of specialized weapons, such as gas dispersants, the use of "flash bangs" and "aerial flash bangs" or impact rounds for the purposes of crowd control (See **Chapter 46.2.1 – Response to First Amendment Assemblies, Mass Demonstrations, and Civil Disturbances**), including the munitions listed in **Appendix E** of Chapter 46.2.1).

**Use of Force Report**—A written report documenting a supervisor's investigation of a use of force (in Blue Team application and Form #114).

### USE OF FORCE POLICY STATEMENT

1. The policy of the New Orleans Police Department is to value and preserve human life when using lawful authority to use force. Therefore, officers of the New Orleans Police

Department shall use the minimum amount of force that the objectively reasonable officer would use in light of the circumstances to effectively bring an incident or person under control, while protecting the lives of the member or others. Members are advised that the Department places restrictions on officer use of force that go beyond the restrictions set forth under the Constitution or state law.

2. Officers shall perform their work in a manner that avoids unduly jeopardizing their own safety or the safety of others through the use of poor tactical decisions.

3. When feasible based on the circumstances, officers will use de-escalation techniques, disengagement; area containment; surveillance; waiting out a subject; summoning reinforcements; and/or calling in specialized units such as mental health and crisis resources, in order to reduce the need for force, and increase officer and civilian safety. Moreover, the officers shall de-escalate the amount of force used as the resistance decreases.

4. Any evaluation of reasonableness must allow for the fact that officers must sometimes make split-second decisions about the amount of force that is necessary in a particular situation with limited information and in circumstances that are tense, uncertain and rapidly evolving.

5. While the ultimate objective of every law enforcement encounter is to protect the public, nothing in this Chapter requires an officer to retreat or be exposed to possible physical injury before applying reasonable force. Nevertheless, officers should strive, where practicable, to first try to de-escalate a situation prior to using force.

**USE OF FORCE PRINCIPLES**

6. NOPD officers, regardless of the type of force or weapon used, shall abide by the following requirements:
    (a) Officers shall use verbal advisements, warnings, and persuasion, when possible, before resorting to force.
    (b) Officers are expected to use sound judgment when making a subjective and independent decision regarding the need and appropriateness of the force to be used.
    (c) Under no circumstances will an officer use force solely because another officer is using force.
    (d) Officers will use disengagement; area containment; surveillance; waiting out a subject; summoning reinforcements; and/or calling in specialized units such as mental health professionals or a CIT Officer, when feasible, in order to reduce the need for force and increase officer and civilian safety.
    (e) When possible, officers shall allow individuals time to submit to arrest before force is used.

**MEDICAL ATTENTION**

7. Immediately following a use of force, officers and supervisors shall inspect and observe subjects for injury or complaints of pain. Officers shall obtain medical assistance for any person who exhibits signs of physical distress, has sustained visible injury, expresses a complaint of injury or continuing pain, or who was rendered unconscious. This may require officers to render emergency first aid within the limits of their individual skills, training and available equipment until professional medical care providers arrive on the scene. Any individual exhibiting signs of physical distress after an encounter should be continuously monitored by the officer involved in the incident or an on-scene assisting officer until medical personnel can assess the individual. NOPD officers shall request

medical assistance without delay when a subject has visible injuries or the subject complains of injury.

**AUTHORITY TO USE REASONABLE FORCE (Louisiana R.S. 14:20 and R.S. 14:22)**

8. Officers may use only necessary and reasonable force:
   (a) To protect themselves from injury;
   (b) To protect others from injury;
   (c) To effect a lawful detention;
   (d) To effect a lawful arrest; or
   (e) To conduct a lawful search.

9. A use of force is "necessary" when it is reasonably required, considering the totality of facts and circumstances, to carry out one of the above listed law enforcement objectives.

10. When practicable, officers will identify themselves as peace officers before using force. If it is not already known by the subject to be detained, arrested, or searched, officers should, if reasonable, make clear their intent to detain, arrest or search the subject.
11. Officers shall not draw or exhibit a firearm unless the circumstances surrounding the incident create an objectively reasonable belief that a situation may escalate to the point at which lethal force would be authorized. Once an officer determines that the use of deadly force is no longer likely, the officer shall re-holster the weapon.

12. Officers shall not use force to attempt to effect compliance with a command that is unlawful. Any use of force by an officer to subdue an individual resisting arrest or detention is unreasonable when the initial arrest or detention of the individual was unlawful. **(See La. C. Cr. P. 220)**

**DEADLY FORCE**

13. **Deadly/Lethal force shall be used only when:**
    (a) There is an imminent danger of death or serious physical injury to the officer or another person; or
    (b) To prevent the escape of a fleeing subject if there is probable cause to believe:
        i. The subject has committed a felony involving the infliction or threatened infliction of serious bodily injury or death; and
        ii. The escape of the subject would pose an imminent danger of death or serious bodily injury to the officer or to another person.

14. Officers are not authorized to fire their firearms in order to subdue an escaping suspect who presents no imminent threat of death or serious injury. **(Tennessee v. Garner, 471 U.S. 1 (1985).**

15. Deadly Force may never be used for the protection of property.

**DETERMINING THE REASONABLENESS OF FORCE**

16. When determining whether to use force **(see: Graham v. Connor, 490 U.S. 386 (1989))** and in evaluating whether an officer has used reasonable force, the facts and circumstances, when they are known or reasonably should be known by the officer, that should be considered include, but are not limited to:
    (a) The seriousness of the suspected offense or reason for contact with the individual;
    (b) Whether the subject poses a threat of injury to himself, officers or others, and the immediacy and severity of the threat;

(c) The conduct of the individual being confronted as reasonably perceived by the officer at the time;
(d) Officer/subject factors (age, size, relative strength, skill level, injuries sustained, level of exhaustion or fatigue, and the number of officers versus subjects);
(e) The effects of drugs or alcohol;
(f) The subject's mental state or capacity;
(g) Proximity to weapons or dangerous improvised weapons/devices;
(h) The degree to which the subject has been effectively restrained and his/her ability to resist despite being restrained;
(i) The availability of other options and their possible effectiveness;
(j) The training and experience of the officer;
(k) The environment wherein the event is occurring;
(l) Whether the person appears to be resisting in an active, aggressive, or aggravated manner;
(m) The risk of escape;
(n) The apparent need for immediate control of the subject for a prompt resolution of the situation versus the ability to step back, regroup and develop an alternative approach and the time available to the officer to make a decision;
(o) Whether the conduct of the individual being confronted no longer reasonably appears to pose an imminent threat to the officer or others; and
(p) Any other exigent and articulable circumstances.

## DE-ESCALATION

17. When it is consistent with protecting the safety of the officer, the subject, or the public, officers shall use de-escalation techniques to avoid or reduce the need for the use of force. These techniques include gathering information about the incident, assessing the risks, assembling resources, attempting to slow momentum, and communicating and coordinating a response. In their interaction with subjects, officers should use advisements, warnings, verbal persuasion, and other tactics and alternatives to higher levels of force. Officers should recognize that they may withdraw to a position that is tactically more secure or allows them greater distance in order to consider or deploy a greater variety of force options.

## SUPERVISORY RESPONSE TO FORCE INCIDENTS

18. The prospect of a favorable outcome is often enhanced when supervisors become involved in the management of an overall response to potential violent encounters by coordinating resources and officers' tactical actions. Whenever possible, supervisors shall acknowledge and respond in a timely manner to in-progress incidents in which there is a higher potential for officers to use force.

## FORCE LEVELS

19. When use of force is needed, officers will assess each incident to determine, based on policy, training and experience, which use of force option is believed to be appropriate for the situation and bring it under control in a safe and prudent manner.

### LEVELS OF RESISTANCE
   (a) **Passive Resistance,**
   (b) **Active Resistance,**
   (c) **Aggressive Resistance, and**
   (d) **Aggravated Resistance.**

**LEVELS OF CONTROL**

20. There are a variety of controls officers can use to stop the unlawful actions of a subject(s) or to protect a subject(s) from injuring himself/herself/themselves or others. The type of control officers use may vary based upon the facts and circumstances confronting them. Officers shall assess all contacts to determine the appropriate level of control. When possible, officers shall attempt to gain control of subjects by using verbal commands/directives first.

21. If verbal commands/directives are ineffective or not feasible, officers may utilize other control methods. If force is necessary, officers shall determine which control technique(s), tactics or authorized defensive equipment would best de-escalate the incident and bring it under control in the safest manner. When it is objectively reasonable, officers may utilize the following skills and techniques as follows:
    (a) **Professional Presence**—This includes all symbols of police authority, such as badge, uniform, marked police vehicle, etc., and applies to all levels of control.
    (b) **Verbal Commands**—This level includes fundamental verbal skills and strategies that are available to the trained officer. The mere presence of the officer can be included in this category.
    (c) **Contact Controls**—When confronted with a subject demonstrating minimal resistant behavior, the officer may use low-level anatomical compliance techniques or physical tactics to gain control and cooperation. These tactics can be psychologically manipulative as well as physical, and include additional verbal persuasion skills, anatomical applications, and escort positions.
    (d) **Compliance Techniques**—When a subject becomes resistant (active resistance), the officer may use anatomical compliance techniques or physical control tactics to overcome the level of resistance and remain vigilant for more aggressive behavior from the subject.
    (e) **Conducted Energy Weapon**—The CEW is used in: (1) situations in which a subject who may be lawfully detained or apprehended poses an imminent risk of harm to the officer(s), the subject, or others; attempts to subdue the subject with less intrusive means have been or will likely be ineffective; and there is an objectively reasonable expectation that it would be unsafe for officers to approach the suspect within contact range; OR (2) situations in which a suspect for whom an officer has probable cause to arrest is actively fleeing from arrest for a serious offense; and attempts to subdue the subject with less intrusive means have been or will likely be ineffective or increase the likelihood of greater harm to the officer, the subject or another party. **<u>Officers are reminded that mere flight shall not be the sole justification for using a CEW against a suspect</u>**. Members should consider the severity of the offense, the suspect's threat level to others, and the risk of serious injury to the subject before deciding to use a CEW on a fleeing suspect.
    (f) **Defensive Tactics**—When a subject attempts to assault the officer or another person (aggressive resistance or aggravated resistance), the officer is justified in taking appropriate physical action to immediately stop the aggressive action and to gain control of the subject. This may include the use of hands, fists and feet.
    (g) **Authorized Impact Weapons**—Those less-than-lethal weapons such as the PR-24 and expandable batons, which, when authorized by the NOPD and utilized in accordance with training, may be used to overcome aggressive and aggravated resistance.
    (h) **Deadly or Lethal Force**—Deadly/Lethal force shall be used only when:
        i. There is an imminent danger of death or serious physical injury to the officer or another person; or
        ii. To prevent the escape of a fleeing subject if there is probable cause to believe:

- The subject has committed a felony involving the infliction or threatened infliction of serious bodily injury or death; and
- The escape of the subject would pose an imminent danger of death or serious bodily injury to the officer or to another person.

**DUTY TO INTERCEDE**

22. Officers have a duty to intercede to prevent the use of unreasonable force if the officer has reason to know that unreasonable force is being used and there is a realistic opportunity to intervene to prevent harm. The action required by the officer will depend on the circumstances of the incident. Appropriate action may include, but is not limited to:
    (a) Verbal or physical intervention;
    (b) Immediate notification to a supervisor; and
    (c) A direct order by a supervisor to cease the use of unreasonable force.

**PROHIBITED ACTIONS**

23. **Neck Holds**—Officers shall not use neck holds, except when lethal force is authorized.

24. **Head, Neck, Throat, Heart, Kidney, and Groin Strikes with Impact Weapons**—The head, neck, throat, spine, heart, kidneys and groin shall not be intentionally targeted with impact weapons except when deadly force is authorized. Head strikes with impact weapons are prohibited except when lethal force is authorized.

25. **Shooting at or from moving vehicles**—Officers shall not discharge a firearm from or at a moving vehicle unless the occupants of the vehicle are using deadly force other than the vehicle itself against the officer or another person, and such action is necessary for self-defense or to protect another person. Discharging a firearm in this circumstance is never authorized when it is reasonable to believe that the vehicle may contain an innocent passenger or it is reasonably apparent that the vehicle may careen out of control and injure an innocent bystander.

    Officers shall not intentionally place themselves in the path of, or reach inside, a moving vehicle. Where possible the officer shall attempt to move out of the path of a moving vehicle rather than discharge their weapon to stop the vehicle. Officers shall not shoot at any part of a vehicle in an attempt to disable the vehicle.

26. **Shooting through a door or window** when the target is not clearly in view.

27. **Warning shots** or shots fired for the purpose of summoning aid are prohibited.

28. **Using firearm as impact weapon**—Officers should never use a firearm as an impact weapon, i.e. "pistol whip" a subject or using the firearm as a club, except in situations where deadly force would be authorized.

29. **Force against persons in handcuffs**—Officers shall not use force against persons in handcuffs, except to prevent imminent bodily harm to the officer, or another person, or to physically move the subject who has become passively resistant.

30. **Force to overcome passive resistance**—Officers shall not use force to overcome passive resistance, except that physically moving a subject is permitted when it is necessary and objectively reasonable.

**OLEORISIN CAPSICUM SPRAY (OC Spray)–PROHIBITED**

31. Oleoresin capsicum spray is **not** authorized for general use by the New Orleans Police Department. Officers shall not use or possess OC Spray while on duty, including officers working secondary employment. Exception to the general prohibition is made for SOD/SWAT use only, under highly specific circumstances such as civil disturbances when a command level decision has been made to deploy OC spray. (See **Chapter 46.2.1 – Response to First Amendment Assemblies, Mass Demonstrations, and Civil Disturbances**).

**DANGEROUS ANIMALS**

32. Officers are authorized to use firearms to stop an animal in circumstances in which the animal reasonably appears to pose an imminent threat to human safety and alternative methods are not reasonably available or would likely be ineffective. The officer must be cognizant of the surroundings when shooting at an animal and ensure there is no risk to people in the area. Under circumstances in which officers have sufficient advance notice that a potentially dangerous animal may be encountered, officers should develop reasonable contingency plans for dealing with the animal (e.g., fire extinguisher, CEW, animal control officer). Nothing in this Chapter shall prohibit any officer from shooting a dangerous animal if circumstances reasonably dictate that a contingency plan has failed or becomes impractical.

**SPECIALIZED UNITS AND WEAPONS**

33. Not every member of the NOPD is trained on all available weapons or skills. Specialized weapons are **RESTRICTED** to members of designated units (i.e., SOD), who have been trained in their use, and for use during special events or incidents (see: **Chapter 46.2.1 – Response to First Amendment Assemblies, Mass Demonstrations, and Civil Disturbances**). The general guidelines for the appropriate levels of force categories follow the guidelines of this Chapter, such as:
    a. If the weapon is used or deployed as an impact round, it's a Level 3 UOF (like an impact weapon), unless it meets the requirements for an impact round to be a level 4 such as a strike to the head or sensitive area, loss of consciousness, serious physical injury, or hospitalization. OR if the weapons are used or deployed in a crowd control setting, they are considered a Level 4 UOF.
    b. Any of the gas dispersants or agents, including aerial, would be a Level 2 UOF (in line with OC spray) **unless** used in a civil disturbance / crowd control setting, then they would be considered a Level 4 UOF.
    c. Aerial flash bangs are distraction devices and considered a Level 2 UOF, unless they cause injury or strike/impact someone. The same applies to a flash bang. **unless** used in a crowd control / civil disturbance setting, then they would be considered a Level 4 UOF.
    d. Any weapon or munition used in a civil disturbance setting is considered a Level 4 UOF.

34. Specialized units (i.e. SOD) and members who have been trained on the weapons and skills covered in **Chapter 46.2.1 – Response to First Amendment Assemblies, Mass Demonstrations, and Civil Disturbances (Appendix – E)** shall have their individual training documented, along with the required certification and re-certification in their individual Departmental training records and in INSIGHT (personnel jacket). Any use of specialized weapons by a member who has not achieved and/or maintained required certification shall be investigated as a Level 4 UOF and appropriate corrective action taken.