**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| DEREK BROWN and | * | CIVIL ACTION |
| JULIA BARECKI-BROWN | * | |
| | * | DOCKET NUMBER: 22-00847 |
| VERSUS | * | |
| | * | SECTION: L |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | HONORABLE ELDON E. FALLON |
| NEW ORLEANS | * | |
| | * | DIVISION: 4 |
| | * | |
| | * | HONORABLE KAREN WELLS ROBY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## STATEMENT OF UNCONTESTED MATERIAL FACTS

Shaun Ferguson and the City of New Orleans in the above referenced matter submit the following statement of uncontested material facts in support of their Motion for Summary Judgment:

1.      Chapter 1.3 of the New Orleans Police Department Operations Manual, which is entitled "Use of Force," became effective December 6, 2015, and governs the use of force by New Orleans Police Department officers. Chapter 1.3, paragraph 32 is entitled "Dangerous Animals," and states in full:

> Officers are authorized to use firearms to stop an animal in circumstances in which the animal reasonably appears to pose an imminent threat to human safety and alternative methods are not reasonably available or would likely be ineffective. The officer must be cognizant of the surroundings when shooting at an animal and ensure there is no risk to people in the area. Under circumstances in which officers have sufficient advance notice that a potentially dangerous animal may be encountered, officers should develop reasonable contingency plans for dealing with the animal (e.g., fire extinguisher, CEW, animal control officer). Nothing in this Chapter shall prohibit any officer from shooting a dangerous animal if circumstances reasonably dictate that a contingency plan has failed or becomes impractical.[1]

---

[1] *Id.*, Ch. 1.3, para. 32.

2.      Officer Burmaster was hired as a commissioned police officer by the NOPD on August 13, 2000.[2]

3.      At all times relevant to this case, NOPD provided training to all police officers, including Officer Burmaster, with regard to the NOPD Use of Force Policy as it related to dangerous animals.[3]

4.      NOPD training of its officers with respect to encounters with dangerous animals was provided through "in service" training through the NOPD Academy, "daily training bulletins" through the NOPD's Professional Standards Accountability Bureau ("PSAB"), and by mandated online courses with the ASPCA, an animal-focused organization that, among other things, provides educational programs to law enforcement organizations.[4]

5.      The NOPD trained its officers, including Officer Burmaster, that a firearm should against an animal only in circumstances that is in which it reasonably appeared that the animal appeared to pose an imminent threat to human safety and alternative methods were not reasonably available or would likely not be effective.[5]

6.      The NOPD trained its officers to evaluate risks posed by each potential animal encounter faced by officers and not to consider every animal encountered to be a threat.[6]

7.      The NOPD trained its officers to consider alternative means to avoid use of force against animals.[7]

---

[2] Ex. C (Deposition of Helou), p. 16:18 – 18:11, Exhibit 38, p.1.
[3] Ex. B (Duplantier Deposition), pp. 23:2 – 25:21, 27:3 – 30:24; 48:15 – 49:1; 50:17 - 50:21; 121:10 – 124:21; 128:11 – 128:14; Ex. D, Excerpts of Deposition of Derrick Burmaster (Burmaster Deposition), pp. 180:25 – 181::24.
[4] Ex. B, 23:2 – 25:21; 122:10-124:21.
[5] *Id.*, pp. 23:2 – 25:21, 27:3 – 30:24; 30:3 -30:17; 32:9 – 42:24.42:25 – 45:17; 48:15 – 49:1; 121:10 – 124:21; 125:18 – 127:7; 128:11 – 128:14; 130:19 – 136:1. 78:23 – 81:7; Ex. D (Burmaster Deposition), p. 250:9 – 250:12.
[6] Ex. B, (Duplantier Deposition), pp. 30:3 -30:17, 32:10 – 42:24.
[7] *Id*, pp. 42:46:15; 130:19 – 133:4.

2

8.      On January 1, 2012, Officer Burmaster shot a dog while serving as a NOPD officer.[8]

9.      Officer Burmaster did not violate any NOPD policy in connection with the dog shooting on January 1, 2012.[9]

10.     From January 1, 2012, to April 10, 2021, Officer Burmaster was involved in no other instance where a complaint was made regarding his use of force against an animal.[10]

11.     From January 1, 2012, to April 10, 2021, Officer Burmaster was the subject of five PIB investigations involving use of force against humans; but none of these investigations resulted in a finding that Officer Burmaster violated NOPD policies regarding use of force.[11]

12.     On the evening of April 10, 2021, Officer Burmaster was on duty for the NOPD.[12]

13.     On April 10, 2021, Officer Burmaster and NOPD officer John Roussel responded to a domestic disturbance call at Plaintiff's residence.[13]

14.     April 10, 2021, Officer Burmaster entered the gate of Plaintiffs house and proceeded onto the driveway; Plaintiffs' two dogs ran down the porch stairs; at least one dog was loudly barking. One dog ran at Officer Burmaster, and he shot that dog.[14]

---

[8] Ex. C (Helou Deposition), Exhibit 31.
[9] Ex. C (Helou Deposition), pp. 39:5 – 45:12.
[10] Ex. C (Helou Deposition), Exhibit 31.
[11] Ex. C, pp. 40:15 – 45:12.
[12] Ex. D, (Burmaster Deposition), p. 33:6 – 33:15.
[13] Ex. D, pp. 33:16 - 36:13.
[14] Ex. D, pp. 33:16 - 36:13, 65:5 – 67:1.

Respectfully submitted:

*/s/ James M. Roquemore*_____
**JAMES M. ROQUEMORE, LSB #40035**
ASSISTANT CITY ATTORNEY
james.roquemore@nola.gov
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET, SUITE 5E03
NEW ORLEANS, LOUISIANA 70112
TEL: (504) 658-9800
FACSIMILE: (504) 658-9868

*Counsel for Shaun Ferguson and the City of New Orleans*