## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BROWN ET AL** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 22-847** |
| | * | |
| **BURMASTER ET AL** | * | **SECTION: "L" (4)** |
| | * | |
| | * | |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss for Failure to State a Claim by Defendants Shaun Ferguson and the City of New Orleans. R. Doc. 68. Plaintiffs have filed a memorandum in opposition. R. Doc. 71.

### I.      BACKGROUND

This cases arises out of the alleged shooting of a dog by a New Orleans Police Department ("NOPD") officer during a response to noise complaint on April 10, 2021. R. Doc. 60 at ¶¶ 1-7. Plaintiffs allege that NOPD officer Derrick Burmaster and his partner arrived to the Plaintiffs' home, in New Orleans, to respond to a noise complaint. *Id.* at ¶ 29. The officers allegedly banged on the fence to see if there were any dogs present and walked through the gate. *Id.* at ¶ 30. As two dogs ran towards the officers, Burmaster's partner stepped backward and exited the gate. *Id.* at ¶ 32. Burmaster withdrew his firearm and fired three rounds at the dogs. *Id.* at ¶ 37. Plaintiff further allege that Burmaster was carrying a TASER which he did not use or deploy. *Id.* at ¶ 35. One of the rounds hit and killed the smaller of the two dogs: Apollo, an 18-week-old Catahoula puppy that stood at about 18 inches tall. *Id.* at ¶ 37. Shrapnel from the round hit Burmaster's partner, who was treated for minor hand injuries at Tulane University Medical Center. *Id.* at ¶¶ 43-44.

1

After the incident, Plaintiff alleges, NOPD's internal affairs division, the Public Integrity Bureau ("PIB"), and NOPD Use of Force Review Board conducted an investigation and found the shooting to be unjustified, and that Burmaster had not engaged in appropriate de-escalation of the situation. *Id.* at ¶¶ 61-63. Plaintiffs allege that Burmaster is a "frequent user of force," who has used force at least 30 times since 2011, including an incident in 2012 when he shot and killed a dog while investigating a property damage complaint. *Id.* at ¶¶ 68-71. Plaintiffs allege that Burmaster's use of force has been the subject of multiple complaints, and that the NOPD has sustained at least twenty other rule violations against Burmaster, for violations involving "verbal intimidation, moral conduct, professionalism, performance of duty, neglect of duty, [and] failure to comply with instructions." *Id.* at ¶ 74.

Plaintiffs state seven causes of action against Burmaster, against NOPD Superintendent Shaun Ferguson, and against the City of New Orleans. First, Plaintiffs allege that Burmaster's shooting of Apollo was a violation of their Fourth, Fifth, and Fourteenth Amendment rights, because "[i]t is clearly established that an officer cannot shoot a dog in the absence of an objectively legitimate and imminent threat to him or others." *Id.* at ¶¶ 76-80. Plaintiffs also bring claims of negligence; negligent hiring, training, and supervision; vicarious liability; indemnity; and conversion against various defendants.

The claim at issue in this Motion to Dismiss is Plaintiffs' sixth claim, for *Monell* liability against Shaun Ferguson and the City of New Orleans. Plaintiffs allege that the City had a "constitutional duty to adequately train, supervise and discipline Burmaster in order to prevent the violation of the rights of the citizens that he encountered," and that it was deliberately indifferent to Plaintiffs' constitutional rights in its failure to do so. *Id.* at ¶¶ 113-114. Plaintiffs allege that, despite Burmaster's 2012 shooting of a dog, he either received no training or the

NOPD's "The Problem of Dog-Related Incidents and Encounters" training. *Id.* at ¶ 110. This training is deficient, Plaintiffs allege, because it copies a U.S. Department of Justice COPS program training while taking out passages about the low risk and general friendliness of approaching dogs, and information about "specific tactics" for dealing with animals. *Id.* at ¶¶ 121-135. Plaintiffs allege that the inclusion of these facts would have reduced the likelihood of Burmaster shooting Apollo. *Id.* at ¶¶ 121-136.

Defendants Shaun Ferguson and the City of New Orleans then filed the present Motion to Dismiss.

## II.    PRESENT MOTION

Movants seek to dismiss the *Monell* claim that Plaintiffs allege against Shaun Ferguson and the City of New Orleans in Plaintiffs' Second Amended Complaint for failure to state a claim upon which relief can be granted. Movants argue that the Plaintiffs' allegation that the city failed to adequately train, supervise, and discipline Burmaster is "not supported by sufficient facts to make it plausible on its face." R. Doc. 68-1 at 5. Movants argue that Plaintiffs did not identify a policy, custom, or practice that was the "driving force behind Defendant Burmaster's shooting of Plaintiffs' dog," *id.* at 7; rather, in their complaint Plaintiffs identify a provision in the NOPD policy manual instructing members of the force to develop animal-related contingency plans as well as a training program limiting force against animals to "cases of imminent threat of human safety" when no alternative method was available, *id.* at 8.

Further, Movants contend, Plaintiffs do not describe the contents of the NOPD's dog training program in enough detail to move beyond "mere speculation as to whether the NOPD program was inadequate," *id.*, and do not describe how past uses of force by Burmaster "may be related to the incident in the instant case.," *id.* at 9. Because Plaintiffs cite only one prior instance

involving Burmaster's shooting of a dog and fail to establish the relationship between use of
force against humans and shootings of dogs, Movants argue, there is not sufficient context to
"support an inference of deliberate indifference" by the City in its failure to train, supervise, or
discipline Burmaster. *Id.* at 11. Further, Movants contend, these facts do not meet the
requirements of the "single-issue exception" to the pattern requirement in a *Monell* claim,
because, while Plaintiffs here plead facts indicating that the NOPD did provide dog encounter
training to officers, that exception "is generally reserved for those cases in which the government
actor was provided no training whatsoever." *Id.* at 12 (citing *Pena v. City of Rio Grande City*,
879 F.3d 613, 624 (5th Cir. 2018)).

Finally, Defendants argue that Plaintiffs do not allege a "direct causal link between the
adequacy of the City Defendants' training, supervision of Defendant Burmaster . . . and the
alleged constitutional deprivation of the Plaintiffs," *id.* at 14, because Plaintiffs did not
sufficiently describe the facts of the prior disciplines of Burmaster or explain how those incidents
"made it 'obvious' to the City Defendants that Burmaster would shoot Plaintiffs' dog," *id.* at 15.
As a result, Movants argue, Plaintiffs' allegations are "conclusory" and insufficient to support a
Monell claim. *Id.*

In response, Plaintiffs argue that, despite Movants' argument that the complaint's
allegations are "barebones" and "generic," the complaint goes into "granular detail" about the
deficiencies of the dog-related training and the ways in which those deficiencies led to
Burmaster's deadly encounter with the Apollo. R. Doc. 71 at 1. Further, Plaintiffs argue, they
alleged enough facts sufficient to state a claim that the Movants showed deliberate indifference,
which exists "where adequate scrutiny of an applicant's background would lead a reasonable
supervisor to conclude that the plainly obvious consequences of the decision to [retain] would be

the deprivation of a third party's constitutional rights." *Id.* at 7 (citing *Gomez v. Galman*, 18 F.4th 769, 778 (5th Cir. 2021)). Given their allegations of Burmaster's frequent uses of "complaint-generating force" as well as other misconduct, Plaintiffs argue, they have provided "sufficient factual allegations to support a *Monell* claim premised on the City's choice to retain Burmaster on the force." *Id.* at 9.

## III.   APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is plausible on its face when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. Although a court must liberally construe the complaint in light most favorable to the plaintiff, accept the plaintiff's allegations as true, and draw all reasonable inferences in favor of the plaintiff, *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996), courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

## IV.   ANALYSIS

To prevail on a claim that a municipality is liable for failing to train, supervise,  or discipline an employee, a plaintiff must plead facts plausibly establishing (1) that the municipality's training, supervisory, or disciplinary policies or practices were inadequate, (2)

that the municipality was deliberately indifferent in adopting this deficient policy, and (3) that the inadequate training, supervisory, or disciplinary policy directly caused the violations in question. See *Ratliff v. Aransas Cnty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020). "[T]o show deliberate indifference, a plaintiff normally must allege a 'pattern of similar constitutional violations by untrained employees.' But where a plaintiff does not allege such a pattern, it is still possible to establish deliberate indifference through the single-incident exception." *Hutcheson v. Dallas Cnty., Texas*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). This exception is "extremely narrow" and requires a plaintiff to allege "that the highly predictable consequence of a failure to train would result in the specific injury suffered." *Id.* An injury is "highly predictable" where the municipality "fail[s] to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Id.* (*Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624-25 (5th Cir. 2018)).

In the context of municipal liability, only minimal factual allegations are required at the motion to dismiss stage. *See Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842-43 (S.D. Tex. 2011). This is so because, at the pleading stage, plaintiffs usually will not have access to or personal knowledge of the specific details of a municipality's internal training or supervisory policies and procedures. See *id*. On the other hand, Plaintiffs must do more than merely recite the elements of a cause of action. See *Iqbal*, 556 U.S. at 678.

In this case, Plaintiffs have filed a complaint with detailed factual allegations that are more than "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arias-Benn*, 495 F.3d at 230. The core of Plaintiffs' allegation is that, despite Burmaster's 2012 shooting of a dog, he either received no training or a training that was insufficient because it left

out essential information about how a police offer should approach an interaction with an animal. R. Doc. 60 at ¶ 110. Plaintiffs provide significant detail about the specific pieces of information from the COPS program training that the NOPD left out of its training. R. Doc. 60 at ¶¶ 120-132. Further, the complaint includes numerous factual allegations about Burmaster's use of force complaints and disciplinary record, which, if true, could raise significant questions about whether or not the NOPD showed "deliberate indifference" to Plaintiffs' constitutional rights by continuing to employ him on the force. *Gomez v. Galman*, 18 F.4th 769, 778 (5th Cir. 2021)).

Movants argue that the "single-incident exception" cannot apply here because the complaint "sets forth numerous instances in which Defendant Burmaster was provided policies, training, supervision and discipline by the City Defendants." R. Doc. 68-1 at 13. But on the face of the complaint, the Plaintiffs allege that Burmaster "received no training regarding animals at all, or he received NOPD's training entitled 'The Problem of Dog-Related Incidents and Encounters.'" R. Doc. 60 at ¶ 117. The subsequent paragraphs include factual allegations as to why this training was inadequate. Furthermore, in a footnote, Movants cite paragraphs from the complaint as evidence that Plaintiffs conceded that there was in fact "training, supervising, and disciplining" of Burmaster. R. Doc 68-1 at 9n.23. But the paragraphs cited here involve complaints against Burmaster and sustained rule violations (¶¶ 73-75), his reputation for using force (¶ 97), and an Instagram post in which Burmaster seems to suggest that "daily training bulletins" are sufficient preparation for the NOPD's ethics test (¶ 100)—with none of these incidents resulting in his dismissal from the NOPD. It cannot be true that Plaintiffs' allegations, intended to communicate an intolerably low level of training and discipline, can or should be read as concessions that training, supervision, and discipline existed.

The Court also rejects Movants' argument here that "[t]here is nothing 'obvious' about

Defendant Burmaster's unspecified use of force against humans that would necessarily lead to Defendant Burmaster's shooting of Plaintiffs' dog." R. Doc. 68-1 at 15. But when analyzing the sufficiency of a *Monell* claim in the context of a motion to dismiss based on 12(b)(6), it is appropriate to suggest that it is foreseeable that a failure to train or discipline an officer who used excessive force would result in his continued use of excessive force—whether against humans or against other living beings.

At the 12(b)(6) stage, the inquiry is not whether Plaintiffs will prevail in front of a jury on their allegations made against Defendants, or if there is a set of facts under which the NOPD provided adequate training, supervision, and discipline and Burmaster still shot Plaintiff's dog. Rather, drawing all reasonable inferences in favor of the Plaintiff, if this Court accepts as true Plaintiffs' allegations about Burmaster's past use of force incidents and other rule violations, the complaint does raise factual questions about "the inappropriateness of NOPD's choice to continue having Burmaster on the force." R. Doc. 71 at 8. Because Plaintiffs have pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, they have stated a *Monell* claim.

## V.    JUDGMENT

The Motion to Dismiss *Monell* Claims by Defendant Shaun Ferguson and the City of New Orleans is **DENIED**.

New Orleans, Louisiana, this 20th day of March, 2023.

**THE HONORABLE ELDON E. FALLON**
**UNITED STATES DISTRICT JUDGE**