UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and | * | CIVIL ACTION |
| JULIA BARECKI-BROWN | * | |
| | * | DOCKET NUMBER: 22-00847 |
| VERSUS | * | |
| | * | SECTION: L |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | HONORABLE ELDON E. FALLON |
| NEW ORLEANS | * | |
| | * | DIVISION: 4 |
| | * | |
| | * | HONORABLE KAREN WELLS ROBY |

***********************************************************************

### SHAUN FERGUSON'S AND CITY OF NEW ORLEANS' OPPOSITION TO PLAINTIFFS' FIRST MOTION *IN LIMINE* (DOC. 94)

Defendants, Shaun Ferguson and the City of New Orleans (the "City Defendants"), oppose Plaintiffs' First Motion *in Limine* (Doc. 94) for the following reasons.

### A. LEGAL STANDARD FOR MOTIONS IN LIMINE

A motion *in limine* is made before trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds. *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n. 1 (5th Cir.1977) (punctuation omitted).

### 1. Intimations of criminal conduct by Plaintiffs.

Plaintiffs seek a ruling barring Defendants from "suggesting that Plaintiffs committed a crime, either related to the initial call for service or for how they secured their dogs."[1] This is a very broad and ambiguous request. It is difficult to discern what Plaintiffs mean by "suggesting"

---

[1] Doc 94-1, p. 2.

1

and it will be difficult to comply with an order preventing any testimony that "suggests" Plaintiffs committed a crime.

Nevertheless, it is clear that Officer Burmaster was responding to a domestic disturbance call on the night in question. This fact is relevant to Officer Burmaster's state of mind when he entered Plaintiffs' property and encountered Plaintiffs dogs running loose. In addition, the fact that a witness at the scene told Officer Burmaster that a woman had been screaming is relevant to Officer Burmaster's evaluation of the circumstances in this case.

As a New Orleans Police Department Academy instructor on use of force explained:

> I know [Officer Burmaster and his partner] got a domestic call, so that plays a factor into things as well, not only for response but exposure as well. [A] [d]omestic call is very dangerous. It's already a heated situation. So if it was a true domestic call, we take that into consideration.[2]

Similarly, Officer Burmaster's understanding as to the lawfulness of Plaintiffs' dogs being loose in their yard is relevant to the totality of the circumstances in which Officer Burmaster evaluated his use of force options. Further, the Plaintiffs' beliefs as to whether they were at fault for letting their dogs free to run loose is relevant to their claim for damages for emotional distress.

Because the evidence is relevant and not unduly prejudicial is admissible under Federal Rule of Evidence 401 and not excludable under Rule 403.

**2. Allow the City Defendants to argue that they are not liable for the shooting under *Monell*, but bar them from arguing that the shooting was justified.**

Plaintiffs seek to preclude the City Defendants form "arguing at trial that the shooting was justified."[3] However, the problem with this motion *in limine* is that Plaintiffs mix up the different usage and meaning of the word "justified" as between (a) NOPD administrative and Use of Force Review Board ("UFRB") investigations, which looked to whether Officer Burmaster's conduct

---

[2] Ex. A (Excepts of Deposition transcript of 30(b)(6) witness David Duplantier), p. 95:20 – 95:25.
[3] Doc. 94-1, 6.

was "justified" in accordance with NOPD policies, and (b) the Fourth Amendment, which has a different standard. For 30(b)(6) deposition purposes, none of the City Defendant's witnesses were designated to provide an opinion on whether Officer Burmaster violated the Fourth Amendment. Rather, the witnesses testified as to whether Officer Burmaster's conduct was justified as to NOPD policies.

For example, Chris Goodly, a 30(b)(6) witness, served on NOPD's UFRB.[4] The UFRB minutes[5] show that it considered only whether Officer Burmaster's use of force violated NOPD policies:

**EXHIBIT 29**

ASI2021-03, D-13802-21

## Use of Force Board

MINUTES    AUGUST 19, 2021    11:57 A.M    VIA ZOOM

| MEETING CALLED BY | Sergeant Samuel Davis Jr. |
| --- | --- |
| TYPE OF MEETING | Use Of Force Review Board |
| FACILITATOR | Deputy Superintendent Christopher Goodly |
| NOTE TAKER | Sergeant Samuel Davis Jr |
| TIMEKEEPER | Sergeant Samuel Davis Jr. |
| VOTING MEMBERS | Deputy Superintendent Christopher Goodly<br>Deputy Superintendent Paul Noel<br>Deputy Superintendent Arlinda Westbrook |
| NON-VOTING MEMBERS | Captain Hans Ganthier Training Academy<br>Captain Sandra Contreras PSAB<br>Captain Regina Williams Fifth District<br>Captain Daryll Albert SOD<br>Consent Decree Monitor Mitchell Brown |

Agenda topics

ASI2021-03

| DISCUSSION | |

---

[4] Ex. B, Excerpts of Deposition of Chris Goodley, p. 62:16 – 62:25.
[5] Ex. C, UFRB Minutes, which was attached as Exhibit 29 to the Goodley Deposition. See Ex. A, p. 67:2 – 67:25.

3

Policy Violations:

V1: Rule 4 Performance of Duty, Paragraph 4 Neglect of Duty (c6) Failing to comply with instructions, oral or written from any authoritative source to wit with NOPD Chapter 1.3 Use of Force, Paragraph 11 ............SUSTAINED

Officer shall not draw or exhibit their firearm unless the circumstances surrounding the incident create an objectively reasonable belief that a situation may escalate to the point at which lethal force would be authorized. Once an officer determines that the use of deadly force is no longer likely, the officer shall re-holster their weapon.

V2: Rule 4: Performance of Duty, Paragraph 4 Neglect of Duty c6 Failing to comply with Instructions, oral or written, from any authoritative source to wit; NOPD Chapter 1.3 Use of Force; Paragraph 13(a) ....................... SUSTAINED

Deadly/Lethal force shall be used only when: There is an imminent danger of death or serious physical injury to the officer or another person;

V3: Rule 4: Performance of Duty, Paragraph 4 Neglect of Duty c6 Failing to comply with Instructions, oral, or written, from any authoritative source to wit, NOPD Chapter 1.3 Use of Force, Paragraph 32 ....................... SUSTAINED

Dangerous Animals-Officers are authorized to use firearms to stop an animal in circumstances in which the animal reasonably appears to pose an imminent threat to human safety and alternative methods are not reasonably available or would likely be ineffective. The officer must be cognizant of the surroundings when shooting at an animal and ensure there is no risk to people in the area. Under circumstances in which officers have sufficient advance notice that a potentially dangerous animal may be encountered, officers should develop reasonable contingency plans for dealing with the animal (e.g., fire extinguisher, CEW, animal control officer). Nothing in this Chapter shall prohibit any officer from shooting a dangerous animal if circumstances reasonably dictate that a contingency plan has failed or becomes impractical.

V4: Rule 4: Performance of Duty, Paragraph 4 Neglect of Duty c6 Failing to comply with Instructions, oral, or written, from any authoritative source to wit, NOPD Chapter 41.10 Paragraph 29 ....................... SUSTAINED

Discussion: Chief Goodly asked about Officer Burmaster firing out of fear. What was his target when he fired his weapon? Sergeant Brewer explained Officer Burmaster stated he fired at the dog closest to him and he did see the larger dog going towards Officer Roussel. Chief Goodly stated he had a false perception of a threat that was not there. Chief Westbrook stated Officer Burmaster did not articulate any threat towards him.

Captain Albert (SOD) stated after watching all video he noted Officer Burmaster said the dogs were attacking him and the barking was what caused him to believe it was an attack. Chief Noel asked Captain Albert he believed this to be true. Captain Albert said he did not see an attack, but Officer Burmaster had a perception of an attack. Officer Burmaster did not describe any threat.

Sergeant Brewer explained something was removed from Officer Roussel's arm by EMS but was unable to determine what the object was.

Chief Goodly stated the larger dog was the bigger threat and the smaller dog posed no threat. IPM and OCDM had no questions.

Sergeant Davis asked if Officer Burmaster should be reviewed for being an FTO. Captain Ganthier (academy) stated he will be reviewed as he is released back to full duty.

Voting:
Chief Goodly: NOT JUSTIFIED
Chief Noel: NOT JUSTIFIED
Chief Westbrook: NOT JUSTIFIED

| CONCLUSIONS | NOT JUSTIFIED |
|---|---|

| ACTION ITEMS | PERSON RESPONSIBLE | DEADLINE |
|---|---|---|
| Burmaster De-escalation training | Academy | ASAP |

| OBSERVERS | I.P.M: ABE Lowe, PSAB: Captain Contreras, , Sgt. Seuzeeneu, Tim Lindsey, Joy Butler, PIB: Sgt. Halou, Sgt. Pruitt, Det. Brewer, |
|---|---|
| RESOURCE PERSONS | |
| ENDING TIME | 12:26 PM |

Similarly, the NOPD Public Integrity Bureau, Force Investigation Team, investigation was not concerned with whether a Fourth Amendment violation occurred, but rather whether a policy violation occurred.[6]

In the Motion, Plaintiffs misleadingly tries to make it seem like he was asking witnesses about justification under the Fourth Amendment. However, at deposition, the term "justified" was used only in the context of NOPD's investigations.[7] Mr. Goodly made it clear that he used word "justified" only in the context of NOPD's administrative investigations:

> Q. Okay. So, Mr. Goodly, it's my understanding that setting aside whether or not Mr. Burmaster's action were criminal or not, setting that aside, the City has never taken a position that his shooting was justified, would you agree?
>
> A. The Superintendent has not rendered a decision on the administrative investigation, yes.[8]

Caselaw makes it clear that there a difference between justification for use of force under law enforcement policies and justification for use of force pursuant to the Fourth Amendment. In *Kelly v. Stassi*, 2022 WL 263565 (M.D. La. 01/27/2022), a case involving a Fourth Amendment excessive force claim, the court granted a motion *in limine* to exclude testimony that force was unreasonable which was based on a "violation of established police practices and training." *Id*. at *2. The court reasoned:

> violation of a policy, or conduct that is inconsistent with best practices, has no direct causal link to the officer's at the moment decision-making vis-a-vis the force used. The question is whether the officer had reason to believe, at that moment, that there was a threat of physical harm. The reasonableness of an officer's use of deadly force is determined by the existence of a credible, serious threat to the physical safety of the officer or to those in the vicinity. The excessive force inquiry is

---

[6] Ex. D, NOPD Public Integrity Bureau Force Investigation Team Administrative Shooting Investigation, which was attached as Exhibit 20 to the Goodley Deposition.
[7] Ex. B (Goodly Deposition), pp. 65:20:20 – 66:21 (Q: So, in terms of NOPD officers who reviewed the evidence and reached a conclusion, Detective Brewer, Sergeant Helou, Captain Richardson, Deputy Superintendent Noel, Deputy Superintendent Westbrook, and yourself . . .").
[8] Ex. B, p. 83:7 – 83:13; see also 76:18 – 82:25.

confined to whether the officer was in danger at the moment of the threat that resulted in the [officers] shooting of the plaintiff.

*Id.* (punctuation and quotation marks omitted) (quoting *Luna v. Mullenix*, 773 F.3d 712, 719 (5th Cir. 2014), *Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007) and *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 493 (5th Cir. 2001).

In sum, the City Defendants agree with Plaintiffs that the City has not taken a position as to whether there was a policy violation with respect to whether the use of force was justified. The Chief's hearing on Officer Burmaster's policy violation allegations has not been conducted yet. However, it does not follow that the City Defendants should be precluded from arguing based on the facts proven at trial that the use of force was justified in accordance with Fourth Amendment principles, which is a different question.

### 3. Bar any references to NOPD training that Defendants did not produce in discovery.

The City Defendants do not intend to introduce at trial any document that was not identified in the proposed Pretrial Order. All of those documents have been provided to Plaintiffs. In addition, the City Defendants have produced all documents related to training that they have in their possession. Documents that once existed, but are no longer in the City Defendants' possession, cannot be produced or used at trial. But that does not mean there are grounds to preclude testimony about any training provided to officers, so long as there is a foundation for such testimony. Plaintiffs conducted a robust examination of Sgt. David Duplantier, the City Defendants' 30(b)(6) witness regarding the training provided by NOPD. They cannot claim to be unduly prejudiced by Sgt. Duplantier's testimony.

### 4. Bar two surprise witnesses listed by Burmaster on his witness list that were never identified in initial disclosures.

The City Defendants will defer to Officer Burmaster as to this matter, since these are his witnesses.

**5. Include Apollo's height and weight in the stipulated facts.**

The City Defendants object to this request on the ground that putting such information in a stipulated fact will cause undue emphasis on the height and weight, when there are many other relevant factors that will not be part of stipulated facts. There is no burden to Plaintiffs for providing testimony on this fact. Further, the size of the dog is shown in multiple photographs and videos that will be introduced. The height and size being read to the jury is cumulative, and any probative value of reading the height and weight of the dog is substantially outweighed by the overemphasis on this single fact by reading to the jury in a stipulate fact. For these reasons, the City Defendants choose not to stipulate to having this matter read to the jury as a stipulated fat.

## CONCLUSION

The City Defendant therefore ask that all items on the Plaintiffs' First Motions *in Limine* be denied.

Respectfully submitted:

*/s/ James M. Roquemore*
**JAMES M. ROQUEMORE, LSB #40035**
ASSISTANT CITY ATTORNEY
james.roquemore@nola.gov
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET, SUITE 5E03
NEW ORLEANS, LOUISIANA 70112
TEL: (504) 658-9800
FACSIMILE: (504) 658-9868

*Counsel for Shaun Ferguson and the City of New Orleans*

7