```
 1           UNITED STATES DISTRICT COURT
         EASTERN DISTRICT FOR THE STATE OF LOUISIANA
 2
     * * * * * * * * * * * * * * * * * * * * *
 3
                    DEREK BROWN and
 4                JULIA BARECKI-BROWN

 5                      VERSUS

 6     DERRICK BURMASTER, SHAUN FERGUSON, and the
                 CITY OF NEW ORLEANS
 7
     * * * * * * * * * * * * * * * * * * * * *
 8        CIVIL ACTION NO. 22-00847        DIVISION: 4

 9        SECTION: L

10

11      The 30(b)(6) deposition of CHRIS GOODLY taken on

12          Monday, March 7, 2023, starting at 1:45 p.m. at

13      New Orleans City Hall, 1300 Perdido Street, Room 5E03,

14              New Orleans, Louisiana 70112.

15

16

17

18

19

20

21

22

23   CARRIE A. HARTILL

24   CERTIFIED COURT REPORTER

25   STATE OF LOUISIANA
```




EXHIBIT B

```
1   APPEARANCES:
2   FOR THE CITY OF NEW ORLEANS AND CITY DEFENDANTS:
3    JAMES M. ROQUEMORE, ESQ
4    CITY OF NEW ORLEANS
5    NEW ORLEANS, LOUISIANA
6    EMAIL: james.roquemore@nola.gov
7
8   FOR THE DEFENDANT, DERRICK BURMASTER:
9    C. THEODORE ALPAUGH, III, ESQ.
10   FRATERNAL ORDER OF POLICE LEGAL COUNSEL
11   639 LOYOLA AVENUE, SUITE 2130
12   NEW ORLEANS, LOUISIANA 70113
13   PHONE: (504) 529-4141
14   EMAIL: cta@gustebarnett.com
15
16  FOR THE PLAINTIFF DEREK BROWN AND JULIA BARECKI-BROWN:
17   TARAK ANADA, ESQ.
18   JONES WALKER LLP
19   201 ST. CHARLES AVENUE, SUITE 4900
20   NEW ORLEANS, LA 70170
21   PHONE: (504) 582-8322
22   EMAIL: tanada@joneswalker.com
23
24
25
```



```
 1   ALSO REPRESENTING THE PLAINTIFFS:
 2   WILLIAM BROCK MOST, ESQ.
 3   MOST & ASSOCIATES
 4   201 SAINT CHARLES AVENUE, SUITE 114
 5   NEW ORLEANS, LA 70170
 6           PHONE: (504) 509-5023
 7   EMAIL: williammost@gmail.com
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```



Chris Goodly                                                  March 07, 2023

INDEX

                                                                     PAGE

DIRECT EXAMINATION:

BY MR. MOST . . . . . . . . . . . . . . . . . . . . . . . 6

CROSS-EXAMINATION:

BY MR. ALPAUGH . . . . . . . . . . . . . . . . . . . . . 86

FOLLOW-UP:

BY MR. MOST . . . . . . . . . . . . . . . . . . . . . . 97


                        EXHIBITS
                        DESCRIPTION                             PAGE

EXHIBIT NO. 8      NOD                     . . . . . . . . . .   10
EXHIBIT NO. 24     NOPD OPERATIONS MANUEL . . . . .              15
EXHIBIT NO. 20     NOPD ASI    . . . . . . . . . . . .           26
EXHIBIT NO. 29     USE OF FORCE BOARD minutes . . .              30



Chris Goodly                                                    March 07, 2023

```
 1
 2                    S T I P U L A T I O N
 3          It is stipulated and agreed by and
 4   between counsel that the deposition of
 5                    CHRIS GOODLY,
 6   is hereby being taken pursuant to the Rules
 7   of Court, including applicable articles of
 8   the Louisiana Code of Civil Procedure.
 9          The formalities of sealing and
10   certification are hereby waived.  The
11   witness waives the right to read and sign
12   the deposition.  The party responsible for
13   the service of the discovery material shall
14   retain the original.
15          All objections are to be made in
16   accordance with the Rules of Court, including
17   applicable articles of the Louisiana Code of
18   Civil Procedure.
19                        * * *
20             Carrie A. Hartill, Certified Court
21   Reporter in and for the State of Louisiana,
22   officiated in administering the oath to the
23   witness.
24
25
```



Chris Goodly                                            March 07, 2023
                                                        Page 62

```
 1   NOPD policy on the equipment Burmaster should
 2   have been carrying.
 3       Moving on to Topic 11.  Well, let me back up.
 4   In your opinion, was it reasonable for a Burmaster
 5   to feel -- to fear that this puppy was gonna bite him in
 6   the penis?
 7     A.  At the time he discharged his weapon, I did
 8   not feel that the perceived threat or the puppy
 9   Apollo -- the dog Apollo, the animal was in
10   a proximity and/or situation where he was in
11   great bodily harm to discharge his weapon.
12     Q.  And so you didn't see anything that indicated
13   to you that the dog was likely to bite
14   Burmaster in the penis.
15     A.  No, not during my review.  No.
16     Q.  Okay.  So we're gonna move on to Topic 11,
17   which is the Use of Force Review Board's
18   investigation hearing and conclusions;
19   are you prepared to testify about that?
20     A.  To the best of my ability, let's do it.
21     Q.  So at the Use of Force Review Board hearing,
22   there were three voting members, yourself,
23   Deputy Superintendent Paul Noel and
24   Deputy Superintendent Linda Westbrook, correct?
25     A.  Correct.
```



```
 1              I'm sorry, you're referring to what part?
 2        MR. MOST:
 3              Sure, it's page 17, the paragraph that's
 4        entitled Summary and Conclusions.
 5   EXAMINATION BY MR. MOST:
 6    Q. Are you there, Mr. Goodly?
 7    A. Sure.
 8    Q. Okay.  You see that the conclusion of this
 9   administrative shooting investigation was that
10   (READING) "Officer Burmaster's discharge occurred due to
11   Officer Burmaster observing the dogs and firing
12    his weapon out of fear and not because the dog
13   presented a threat of serious bodily injury or
14   death to Officer Burmaster."  Do you see that?
15    A. Yes.
16    Q. And then on the last page, you see that it's
17   submitted by Detective Brewer and then Sergeant
18   Helou and Captain Richardson concur?
19    A. Yes.
20    Q. So in terms of NOPD officers who reviewed the
21   evidence and reached a conclusion, Detective Brewer,
22   Sergeant Helou, Captain Richardson, Deputy
23   Superintendent Noel, Deputy Superintendent Westbrook,
24   and yourself all unanimously concluded that it
25   was an unjustified shooting, by Burmaster, agree?
```



Chris Goodly                                     March 07, 2023

1  MR. ROQUEMORE:
2      Objection to form.
3  MR. MOST:
4      You can answer it.
5  THE WITNESS:
6      So the investigator prepared a
7  recommendation. And you just read it
8  into the record.
9  And yes, the people that you indicated
10 concur with the conclusion of the investigator:
11 Sergeant Helou, Captain Sabrina Richardson,
12 and as a result of that presentation
13 presented by the use of force review board,
14 all of those voting members, myself, Deputy Chief
15 Westbrook, at the time, and Deputy Chief Paul Noel
16 all at the time rendered the decision that the
17 shooting was not justified.
18 BY MR. MOST:
19 Q. Okay, so Brewer, Helou, Richardson, Noel, Westbrook,
20 and Goodly all agreed it was unjustified, agreed?
21 A. Yes.
22 Q. Are you aware of anyone who voted that it was justified
23 anywhere in the Chain of Command?
24 A. Chain of Command? Not that I'm aware of.
25 Q. And of course we're setting aside for the moment



```
     Chris Goodly                                  March 07, 2023
 1   what may be still pending.
 2        Do you recall that at the Use of Force Review
 3   Board hearing Captain Albert of the Special
 4   Operations Division said he did not see an attack?
 5             MR. ROQUEMORE:
 6                  Objection to form.
 7             THE WITNESS:
 8                  I don't recall.
 9   BY MR. MOST:
10   Q.   Yeah, it's okay.  I'm going to designate this
11   as Exhibit 29.  This document it says Use of Force
12   Board at the top.  Do you see this, Mr. Goodly?
13   A.   Yes, sir.
14   Q.   Do you see that this says minutes in the upper
15   left front page?
16   A.   Yes.
17   Q.   So this is the -- these are the minutes of
18   the Use of Force Review Board hearing
19   about Mr. Burmaster?
20   A.   One, two, three, yes it is.
21   Q.   2021-03; that's the ASI number --
22   A.   Correct, yes.
23   Q.   And that's a consistent tracking number for
24   this shooting investigation?
25   A.   Yes, sir.
```



Chris Goodly                                                                          March 07, 2023
                                                                                              Page 76

```
 1    Q.  Right.
 2   So at the time that the language of that rule,
 3   when we talked about use of force against a person
 4   and so that was the reason Burmaster wasn't
 5   found in violation of this Moral Conduct Rule,
 6   correct?
 7    A.  That would appear to be correct at the time
 8   from this note on page three, yes.
 9    Q.  Right.  But if the language at the time had
10   included animals, he might have been in
11   violation of that rule, as well?
12              MR. ROQUEMORE:
13                  Objection to form.
14              THE WITNESS:
15                  If it was worded that way,
16   yes.
17   BY MR. MOST:
18    Q.  So next, I'm gonna move on to Topics 12
19   to 13.  Anything else you'd like to comment on?
20    A.  Let me see.  No.
21    Q.  Topic 12 is about the Chief's Hearing
22   process and what conclusions that reached and I
23   understand that that process may not be concluded
24   yet, but we'd like to cover it, are you
25   prepared to talk about that?
```



```
 1    A. As ready as I'm going to be, yes, sir.
 2    Q. So, I will admit that my understanding of the
 3  Chief's Hearing process is kind of fuzzy.
 4  What I understand is that PIB reaches
 5  conclusions about whether there's been rule
 6  violations and then that is confirmed through
 7  the Chief's Hearing process -- confirmed or
 8  rejected through the Chief's Hearing process?
 9    A. So that's -- from my review, it's -- it's
10  a three member panel, at the time.  It could
11  be more, it could be less but the Superintendent
12  designates you know a three member panel
13  to do the Chief's Hearing.
14      And what we look at is not an absolution
15  of like if the investigator did a sustained
16  or not sustained.  It's the appropriation of,
17  we consider any mitigating or aggravating
18  circumstances, and we may concur with the
19  findings, we may overturn the findings.
20      And render a disposition to the
21  Superintendent with the ultimate authority to agree
22  with the recommendations or not.
23  So once those violations, those dispositions
24  are rendered, it's not an absolution even
25  from the the Chief's Hearing -- the Deputy Chief's
```



```
 1   Hearing.  The only person that has the ultimate
 2   authority to impose that action is the Superintendent.
 3     Q. So POB does an investigation.
 4     A. Yes.
 5     Q. It says we've determined that this officer has
 6   violated these policies.  Then there's a Chief's
 7   Hearing by which a three board -- a three member
 8   panel makes recommendations to the Superintendent?
 9     A. At the time, yes.
10     Q. And then the Superintendent makes the final
11   decision about whether something is in
12   violation of the policy,
13     A. He can oppose action, he can agree, disagree,
14   impose any action, or no action at all.
15     Q. So when we talk about the Chief's Hearing,
16   we're talking about, does that referring to the
17   Chief of Police?
18     A. The Chief's Hearing is actually the review of
19   the rendering of disposition appointed through
20   any investigation, any administrative
21   investigation.
22        And then we apply the penalty matrix to the
23   the disposition that are sustained, and we
24   hear the mitigating or aggravating circumstances
25   that we may adopt, and you know, we can keep
```



```
 1   it at the presumptive penalty, we apply the
 2   penalty matrix to the charges that are being
 3   filed.  Or the violations that were rendered.
 4        And then we give a recommendation to the
 5   Superintendent as to what penalties should
 6   apply to the individual officer.  And he or
 7   she can, you know, concur, agree or
 8   disagree and oppose whatever penalty he or
 9   she wants to impose on them or no penalties at all.
10     Q. So POB does an investigation and says,
11   we've found what we think are these policy
12   violations.  Then the Chief's Hearing panel
13   says, Okay, we either agree or disagree
14   those are policy violations.  And here's our
15   recommended punishment if there's policy violations,
16   and then the Superintendent makes the final call.
17     A. Correct.
18     Q. Okay.  And it's my understanding that there
19   has not been a Chief's Hearing yet for
20   Burmaster's shooting of Apollo; is that your
21   understand, as well?
22     A. I'm not aware.
23          MR. MOST:
24               So why don't we take a quick break?
25          (Brief break)
```



Chris Goodly                                          March 07, 2023
                                                             Page 80

```
 1         COURT REPORTER:
 2              On the record.
 3   EXAMINATION BY MR. MOST:
 4    Q. So Mr. Goodly, there has not yet been
 5   a Chief's Hearing for Burmaster's shooting of
 6   Apollo, right?
 7    A. Not that I'm aware.  No, there's
 8   no final disposition that I'm aware that has
 9   been rendered by the Superintendent of the Police.
10    Q. Okay.  And you'd be aware if there was, right?
11   A disposition?
12    A. In this position?  If I was still on the job,
13   yeah, I'd probably be aware of it, but in
14   this current capacity, no I'm not aware.
15    Q. Well, I guess what I'm trying to figure out
16   is do you know whether there has been a Chief's Hearing
17   or not?  Like, do you have any knowledge about whether
18   there has or has not been a Chief's Hearing?
19         MR. ROQUEMORE:
20              We'll stipulate that there has not been
21         a Chief's Hearing, okay?
22         MR. MOST:
23              Okay.  Right, that's what I'm trying to
24         get to.  Okay.
25   EXAMINATION BY MR. MOST:
```



1   Q. So there's -- you don't have any reason to disagree
2   with Mr. Roquemore, right.
3   A. No.
4   Q. Okay. So, although everybody in the Chain of
5   Command that we already discussed, has
6   found it to be unjustified, the shooting of Apollo
7   by Burmaster, NOPD's final decision maker has
8   not yet made a decision about whether it was
9   justified or not, agreed?
10  A. That's correct.... To my understanding, yes.
11  Q. Okay. So, even almost two years after the
12  incident, NOPD has not made a final decision
13  about whether it was justified or unjustified,
14  agreed?
15  A. The Superintendent has not reached a
16  decision on this matter; that I'm aware of.
17  Q. So that the City of New Orleans is still
18  yet to decide whether the shooting was justified
19  or unjustified, agreed?
20  A. A decision by the Ultimate Authority has not
21  been rendered.
22  Q. Any idea of when a decision will be made?
23  A. Not under my purview.
24  Q. Okay.  So Topic 13 is NOPD's conclusions about
25  the basis for each shot fired by Officer Burmaster



```
 1   and whether each shot was justified or not.
 2       Are you prepared to testify
 3   about that, given the limitations we've discussed.
 4   A. Yes, sir.
 5   Q. So it sounds to me like NOPD has not yet
 6   decided whether the first shot was justified
 7   or unjustified, agreed?
 8   A. Final conclusion, yes, I agree.
 9   Q. So every officer in the Chain of Command that
10   has so far weighed in on it, has found the first
11   shot to be unjustified, but there isn't a final
12   decision, agreed?
13   A. Correct.
14   Q. And the same is true for the second and
15   third shots, agreed?
16   A. To summarize it, all the shots were not
17   justified.
18           MR. ROQUEMORE:
19               Let me just impose a cautionary
20           objection.  That we did have officer Pruitt --
21           Sergeant Pruitt today, who depending on if
22           we put her in the chain of command.  She did offer her
23           opinion.  And it was what it was.
24           MR. MOST:
25               Okay.  Yeah, Pruitt's testimony was what it was.
```



Can we just step out here real quick?
OFF RECORD
We may be done. Okay.
COURT REPORTER:
3:38, Back on the record.
EXAMINATION BY MR. MOST:
Q. Okay. So, Mr. Goodly, it's my understanding that setting aside whether or not Mr. Burmaster's actions were criminal or not, setting that aside, the City has never taken a position that his shooting was justified, would you agree?
A. The Superintendent has not rendered a decision on the administrative investigation, yes.
Q. Right. So neither the Superintendent, nor anyone below the Superintendent as yet found the shooting to be justified setting aside criminal liability, correct?
A. Correct.
Q. Then the other thing was that he Use of Force review board -- Use of Force Review Board had its vote about justified, not justified, but it also made some policy and training recommendations, right?
If you look at page 3 of the minutes.
A. "Training recommendation Officer Burmaster will receive de-escalation training."
Q. Right. So you and the other members of the Use

