UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and | * | Civil Action No. 22-00847 |
| JULIA BARECKI-BROWN | * | |
| | * | SECTION: L |
| VERSUS | * | |
| | * | HONORABLE ELDON E. FALLON |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | DIVISION: 4 |
| NEW ORLEANS | * | |
| | * | HONORABLE KAREN WELLS ROBY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Plaintiffs' Opposition to City Defendants' Motion for Summary Judgment (R. Doc. 109)**

In January 2023, the City of New Orleans filed a Motion to Dismiss this suit. R. Doc. 68. In March 2023, the City filed a Motion for Summary Judgment. R. Doc. 109. The City made nearly identical legal arguments in both motions: that Plaintiffs failed to meet the threshold for an inadequate training or supervision claim that would hold the City liable for Officer Burmaster's killing of the Plaintiffs' puppy.

On March 21, 2023, this Court denied the Motion to Dismiss in its entirety. Of course, a Motion to Dismiss is distinct from a Motion for Summary Judgment: the former deals with allegations, the latter deals with evidence. But because the Court has disposed of the legal issues common to both motions, the question now is this: do Plaintiffs have evidence to support the allegations that were sufficient to deny the Motion to Dismiss, when read in the light most favorable to Plaintiffs?

The answer is yes. As detailed below, Plaintiffs have abundant record evidence to support each of the facts that the Court found sufficient to deny the Motion to Dismiss. And Plaintiffs have a range of additional facts that are relevant to the *Monell* claim, like the City's 30(b)(6) witness testifying that it was "wrong" for the City to omit key elements from its training

1

materials. Accordingly, the Court should deny the present motion just as it denied the Motion to Dismiss.

The City does make one new argument in its Motion for Summary Judgment: it argues that the City is immunized from liability by R.S. § 9:2798.1. But that statute protects government actors from liability for "decisions based on social, economic, or political concerns" – not operational decisions involving training requirements like the ones at issue in this case. For that reason, this Court denied Section 2798.1 immunity to a law enforcement agency on a failure-to-train claim like Plaintiffs' just last year. *See Pierre v. Wellpath*, LLC, 21-cv-01043-EEF-DPC, R. Doc. 64 at *8-9 (June 23, 2022).

And finally, the City's motion asserts that the relevant material facts are undisputed. That is incorrect. Most saliently, the motion relies on the adequacy of its training of Burmaster – but the City is not even *internally* consistent about what that training was. The City's discovery responses say that Burmaster took a course called "The Problem of Dog-Related Incidents and Encounters." But the City's 30(b)(6) witness testified that the City had no knowledge of such a training, and no knowledge that *any* NOPD officer had ever been trained using that course.

And the City's motion claims that there were only "there were only eight animal shootings by NOPD officers between 2012 and April 10, 2021." But the City's 30(b)(6) witness testified that "dogs get shot multiple times every year by the NOPD." Ex. F at 73.

For these reasons, this Court should deny the City's motion.

## I.     LEGAL STANDARD

"[S]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[1] Summary

---

[1] *Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

2

judgment is only appropriate when the moving party identifies material facts not in dispute, "and the nonmoving party fails to produce or identify in the record summary judgment evidence sufficient to sustain a finding in its favor respecting such of those facts as to which it bears the trial burden of proof."[2] This Court will view "the evidence and all justifiable inferences in the light most favorable to the non-moving party."[3]

## II. ANALYSIS

**A.   The Motion should be denied because Plaintiffs have record evidence to support each of the allegations that this Court relied upon in denying the City's Motion to Dismiss.**

In its January 2023 Motion to Dismiss, the City argued that Plaintiffs' allegations failed to meet the legal threshold for alleging inadequate training or supervision, and that "Plaintiffs fail to show a plausible direct causal link between Defendant Burmaster's employment history and the shooting of Plaintiffs' dog." R. Doc. 68-1 at 14.

In its March 2023 Motion for Summary Judgment (R. Doc. 109), the City makes essentially the same arguments: that Plaintiffs' allegations failed to meet the legal threshold for alleging inadequate training or supervision, and that "Plaintiffs cannot show that any training, supervision or discipline directly caused the shooting of the dog by Officer Burmaster. R. Doc. 109-1 at 17. (The City's MSJ makes one new argument about R.S. § 9:2798.1 immunity, which is discussed below.)

Then, on March 21, 2023, this Court denied the Motion to Dismiss in its entirety. The Court held that "Plaintiffs provide significant detail about the specific pieces of information from the COPS program training that the NOPD left out of its training" and that "the complaint includes numerous factual allegations about Burmaster's use of force complaints and disciplinary

---

[2] *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 521 (5th Cir. 1999).
[3] *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 225 (5th Cir. 2004).

record, which, if true, could raise significant questions about whether or not the NOPD showed 'deliberate indifference' to Plaintiffs' constitutional rights by continuing to employ him on the force." R. Doc. 115 at 7.

Accordingly, the Court should consider how the City's Motion for Summary Judgment intersects with the Court's ruling on the Motion to Dismiss. *See St. Paul Fire & Marine Ins. Co. v. Bd. of Comm'rs of the Port of New Orleans*, 07-3053 (E.D. La., Apr. 2, 2012) (when MSJ and MTD made overlapping arguments, the "Court converts the Motion to Dismiss into a summary judgment motion and addresses the two motions concurrently.")

A motion to dismiss deals with allegations, and a motion for summary judgment deals with evidence. But the City's arguments in its Motion for Summary Judgment and its (denied) Motion to Dismiss are the same. For that reason, the question now is this: <u>do Plaintiffs have evidence to support the allegations that this Court found sufficient to deny the Motion to Dismiss</u>, when read in the light most favorable to Plaintiffs?

The answer is <u>yes</u>. These are the allegations that led the Court to deny the Motion to dismiss, along with record evidence to support each allegation:

| Allegation relevant to denial of Motion to Dismiss | Record evidence supporting allegation |
|---|---|
| "Burmaster is a 'frequent user of force,' who has used force at least 30 times since 2011." R. Doc. 115 at 2. | Ex. C at pgs. 3-4 (admitting RFA that "Officer Burmaster reported use of force thirty or more times at NOPD"). |
| Burmaster's use of force includes "an incident in 2012 when he shot and killed a dog while investigating a property damage complaint." *Id.* | Ex. A at 191:3-8 (Burmaster admitting he killed a dog while on the job in 2012). |
| "Burmaster's use of force has been the subject of multiple complaints'" *Id.* | Ex. C at 3 (admitting that there have been five complaints about Burmaster's use of force); Ex. B (30(b)(6) Dep.) (admitting "least five complaints of use of force"). |

4

| | |
|---|---|
| "NOPD has sustained at least twenty other rule violations against Burmaster." *Id*. | Ex. B (30(b)(6) Dep.) at 25:11-20 ("Q. So at least PIB has approved 22 rule violations by Burmaster? . . . A. Yeah. I'd agree to that based on the document.") |
| Burmaster's rule violations involved "'verbal intimidation, moral conduct, professionalism, performance of duty, neglect of duty, [and] failure to comply with instructions." *Id*. | *Id*. at 26: ("PIB has sustained 22 rule violations by Burmaster, including violations regarding verbal intimidation, moral conduct, professionalism, performance of duty, and neglect of duty. Agreed? . . . The Witness: Yes.") |
| NOPD's training is deficient "because it copies a U.S. Department of Justice COPS program training while taking out passages about the low risk and general friendliness of approaching dogs, and information about 'specific tactics' for dealing with animals." *Id*. at 3. | Compare verbatim match between R. Doc. 56-2 (NOPD Training) with R. Doc. 56-3 (US DOJ COPS training).<br><br>See also R. Doc. 110-18 at ¶ 12 (Expert report of Jim Crosby, observing that "crucial [DOJ] material was specifically omitted from the presented [NOPD] course material and likely contributed to Burmaster's incorrect perception of Apollo as a threat. Other materials illustrative of positive behavior of dogs is likewise omitted from the offered presentation.") |
| Burmaster posted an Instagram post about an ethics test. *Id*. at 7. | Ex. A at 201:20-25 (Burmaster admitting he posted the item to Instagram). |

The above facts were sufficient to deny the Motion to Dismiss. Now that they are facts with evidentiary support, and not just allegations, they should be sufficient to deny the Motion for Summary Judgment as well.

And furthermore, Plaintiffs now have additional relevant facts on top of what was alleged in the Complaint. For example:

- According to the City's 30(b)(6) witness on training, it "would be wrong" for NOPD to copy its training from the DOJ training, but leave out the part about how an "approaching dog is almost friendly." Ex. D at 137:21-137:6 (emphasis added). The City's witness said "that's pertinent information." *Id.* The City did leave that part out.

- The 30(b)(6) witness likewise testified that the City should not have omitted from its training the idea that officers "should not view a dog running towards them as a threat," because that is "pertinent information." Id. at 138:20-24. The City did leave that part out.

5

- The 30(b)(6) witness likewise testified that the City should have included in its training the language from the DOJ that "Dogs are seldom dangerous." *Id*. at 140:19-23. The City left that part out.

- According to Defendants' 30(b)(6) witness, "most officers go their whole career without firing their gun at a person or animal."[4] But Burmaster has fired his gun at a person or animal at least four times.[5]

- According to Defendants' 30(b)(6) witness, the fact that Burmaster made the kissing noise "as he walked past the neighboring residence" – rather than in front of the Brown's residence – was in accordance with Burmaster's training. *Id*. at 92:2-6. Officer Roussel testified that it would have been "more prudent to make the kissing noises in front of the ·Brown's residence rather than in front of their neighbor's residence." Ex. G at 62:21-63-2.

- Going back to at least 2012 to the present, Officer Burmaster is the only officer in the NOPD to have shot two animals.[6] But they still retained him on the force.

- Burmaster's use of force file is more than 600 pages long.[7]

- A state criminal district court and the state Fourth Circuit "upheld that determination that Burmaster engaged in an unconstitutional search" – but that finding that Burmaster had violated the constitution appears nowhere "HR, personnel, or PIB files."[8]

- Expert Jim Crosby will testify that "the disciplinary history of Officer Burmaster documents his poor decision making, lack of professional conduct, and should have, in my experience, resulted in his termination from service. Thus, it appears that the New Orleans Police Department wrongly retained Burmaster prior to this shooting, and wrongfully retained him again in the aftermath of this incident." R. Doc. 110-18 at ¶ 17.

- The City of New Orleans didn't just tolerate Burmaster on the force. It selected him to be a Field Training Officer – one of the less than 10% of officers that are used as "good examples of policing to train new recruits." R. Doc. 94-7 (30(b)(6) Dep. at 54:21-24.

It is particularly telling that NOPD found Burmaster to have violated their rules almost

two dozen times, and did not even keep track of judicial decisions finding that Burmaster

---

[4] Ex. B at 11:25-12:3.
[5] Ex. B at 12:4-8.
[6] Ex. B (30(b)(6) Dep.) at 14:1-6 ("Q. Okay. So going back to at least 2012 to the present, based on this document and what you know, Officer Burmaster is the only officer in the NOPD to have shot two animals. Agreed? A. Agreed.")
[7] *Id*. at 16:16-18.
[8] *Id*. at 34:13-35:9.

violated the U.S. Constitution, but specially selected him to be an exemplar of good policing for new recruits.

These facts, in addition to the ones assessed in the Court's Order on the City's Motion to Dismiss could lead a reasonable jury to find that the City failed in its training, oversight, or retention of Burmaster. See R. Doc. 115 at 8 (concluding that "drawing all reasonable inferences in favor of the Plaintiff, if this Court accepts as true Plaintiffs' allegations about Burmaster's past use of force incidents and other rule violations, the complaint does raise factual questions about 'the inappropriateness of NOPD's choice to continue having Burmaster on the force.'")

The City also argues that "Officer Burmaster's prior uses of force against humans are not sufficiently similar to constitute a pattern for purposes of a *Monell* clam." R. Doc. 109-1 at 11. This Court has rejected that argument. R. Doc. 115 at 7-8 ("The Court also rejects Movants' argument here that '[t]here is nothing 'obvious' about Defendant Burmaster's unspecified use of force against humans that would necessarily lead to Defendant Burmaster's shooting of Plaintiffs' dog.")

Because Plaintiffs have evidentiary support for the relevant allegations that was sufficient to state a claim, and have substantial additional material as well, this Court should deny the City's motion.

**B.     Defendant's motion should be denied because they are not entitled R.S. § 9:2798.1 immunity.**

In its motion, the City asks this Court to dismiss state-law claims against the City pursuant to Louisiana Revised Statute § 9:2798.1.

That statute allows for immunity for "policymaking or discretionary" acts by public entities. The Louisiana Supreme Court has explained that R.S. 9:2798.1 specifically protects discretion "grounded in social, economic, or political activity." *Cormier v. T.H.E. Ins. Co.*, 745

7

So.2d 1, 6-7 (La. 1999). It does not, however, protect choices that are "specifically prescribed by [] statute, regulation, or policy." *Id.* Nor does the statute "protect against legal fault or negligent conduct at the operational level, but only confers immunity for policy decisions; *i.e.* decisions based on social, economic, or political concerns." *Saine v. City of Scott*, 819 So.2d 496 (La. App. 3 Cir.2002) (*citing Chaney v. Nat. R.R. Passenger Corp.*, 583 So.2d 926, 929 (La.App. 1 Cir.1991)). Thus, "[t]he exception protects the government from liability only at the policy making or ministerial level, not at the operational level." *Fowler v. Roberts*, 556 So.2d 1, 15 (La.1989).

Under that legal framework, the statute does not immunize the City from Plaintiffs' claims for several reasons. First, the failures of training and oversight that Plaintiffs allege in this case are entirely at the operational level, rather than the policymaking level. There is no dispute that the City chose to provide *some* training and supervision to Burmaster – the dispute is about whether the City failed operationally in how it carried out that training and supervision.

Second, it is not "discretionary" whether a government entity complies with the state and federal constitutions. That is a mandatory duty: not something the City has discretion over. The City is also bound by state law requirements regarding training. In a 2022 opinion, this Court denied R.S. 9:2798.1 to law enforcement on a failure to train-and-supervise claim for that reason:

> Here, Defendants cannot show, at this stage, that the affirmative defense of discretionary immunity precludes Plaintiff's claim. Plaintiff specifically alleges in her operative complaint that the Sheriff had a mandatory duty to train and supervise deputies in accordance with certain officer training requirements described in La. Rev. Stat. §§ 40:2404.2 and 40:2405.8 and that the Sheriff was negligent in regards to this duty to train and supervise. R. Doc. 39 at 21. The Court notes that, on their face, these statutes indeed mandate officer training requirements; for example, one provision requires officers to be trained for a certain number of hours. La. Rev. Stat. § 40:2404.2. The negligent failure of the Sheriff to abide but such a mandatory policy would thus deprive the Sheriff of a discretionary immunity defense. *See, e.g., Williams v. City of Monroe*, 27,065 (La. App. 2 Cir. 7/3/95), 658 So. 2d 820, 828 (holding that the Department of Transportation and Development, a public entity, was not entitled to discretionary immunity when it failed to act in accordance with mandatory statutory requirements). Taking as true Plaintiff's allegation that the

8

> Sheriff's actions regarding training and supervision were thus prescribed by statute, then the Sheriff's conduct was not "discretionary." *Glaster* 2015 WL 852412, at *10. Accordingly, the Sheriff cannot, at this time, pass the first prong of the discretionary immunity test—demonstrating that the challenged policy was indeed discretionary. Plaintiff has therefore defeated Defendant's motion.

*Pierre v. Wellpath*, LLC, 21-cv-01043-EEF-DPC, R. Doc. 64 at *8-9 (E.D. La., June 23, 2022).

So too here. NOPD is bound by the same training statutes as the Sheriff's Office. NOPD is required by the constitution and state law to ensure that its officers do not violate citizens' basic civil rights. NOPD – unlike the Sheriff's Office – is additionally subject to a court-ordered federal consent decree, which specifically addresses requirements for NOPD's use of force training. *See United States v. City of New Orleans,* 12-cv-01924-SM-JCW, R. Doc. 565 at ¶¶ 109 *et seq.* (E.D. La., Oct. 2, 2018) (Amended and Restated Consent Decree). For that reason, this case does not implicate the "decisions based on social, economic, or political concerns" that Section 2798.1 protects. The motion should be denied.

One note: in its motion, the City objects to Plaintiffs' "claim of negligent hiring." R. Doc. 109-1 at 17. Plaintiffs will not pursue a negligent hiring theory at trial. They will focus solely on the City's inappropriate training, supervision, and retention of Burmaster.

**C.    The City's motion should be denied because it relies on disputed facts, such as their own 30(b)(6) witness contradicting their discovery responses about training.**

In order to prevail on summary judgment, the moving party must "demonstrate the absence of any genuine issue of material fact."[9] However, in this case, the City's motion relies on several disputed facts.

First, the City contends that Plaintiffs "cannot show that NOPD's training was inadequate." R. Doc. 109-1 at 7. But the City cannot even keep straight what that training <u>was</u>. First, the City indicated that the only training documents they had were the bare text of their

---

[9] *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986).

policies. See Ex. E at Response to RFP 4.  Then they sad that Burmaster "took and passed a course entitled 'the Problem of Dog Related Incidents and Encounters.'" Ex. C at Response to Interrogatory 3. But then their 30(b)(6) witness on the topic of training testified that he had never heard of that course:

```
        Have you ever heard of a training entitled,
quote, "The Problem of Dog-Related Incidents and
Encounters"?
      A.   I can't say that I have.
      Q.   That wasn't the title of what we were just
talking about, the in-service, right?
      A.   No.
      Q.   That's something different?
      A.   It had a different title.
      Q.   All right.  You ever heard of that training?
      A.   I can't say that I have.
      Q.   All right.  To your knowledge, has any
NOPD officer ever been trained on a slideshow or a
presentation or program entitled "The Problem of
Dog-Related Incidents and Encounters"?
      A.   No idea.
```

Ex. D at 67:7-23.

The City cannot premise a motion for summary judgment on the factual nature of its training when *it cannot consistently identify what that training was.*

Similarly, the City's motion contends that with "respect to other officers' conduct, there were only eight animal shootings by NOPD officers between 2012 and April 10, 2021." R. Doc. 109-1 at 10-11. But the City's 30(b)(6) witness Sgt. Pruitt testified otherwise:

> Q. Is it correct that dogs get shot multiple times every year by the NOPD?
> A. Yes.

Ex. F at 73:10-12.

Plaintiffs also dispute the City's sixth material fact. That proffered fact is: "NOPD trained its officers to evaluate risks posed by each potential animal encounter faced by officers and not to consider every animal encountered to be a threat." R. Doc. 109-8. That is disputed. Burmaster testified that he only "probably" recalled being trained with the NOPD's "The Problem of Dog-Related Incidents and Encounters" training. See Ex. A (Burmaster Dep.) at 182:6-25; 250:20-251:7.[10] That training (found at R. Doc. 56-2) does not advise against considering every animal encountered to be a threat, contrary to the City's material fact

The City's ninth material fact is that "Officer Burmaster did not violate any NOPD policy in connection with the dog shooting on January 1, 2012." R. Doc. 109-8. That is disputed. Because there were no witnesses to the shooting, NOPD's Public Integrity Bureau did not conclude there was enough evidence to support a policy violation. But that does not mean that the shooting was compliant with policy. In fact, Burmaster testified that he was afraid that the dog in 2012 was going to bite him in the groin, just like how he described his fear of Apollo. Ex. A at 194:14-18 ("Q. So the two times you've shot and killed dogs while acting as a police officer, both times you've indicated a fear that the dog was going to bite you in the groin? A. Yes.") The implausibility of that explanation, coupled with the similarity to the unjustified 2021 shooting, suggests that the 2012 dog did not present an imminent threat – and was therefore outside of NOPD policy.

---

[10] He also testified that he has received no other training from NOPD about dealing with animals in the line of duty besides "probably" having seen this training document, Ex. A at 182:6-183:4; 250:20-251:8.

Because the City's motion relies on disputed facts, it should be denied.

### III.   CONCLUSION

For these reasons, the City's Motion for Summary Judgment should be denied.

Respectfully Submitted:

*/s/ William Most*
WILLIAM MOST (La. Bar No. 36914)
HOPE PHELPS (La. Bar No. 37259)
DAVID LANSER (La. Bar No. 37764)
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
Tel: 504.509-5023
Email: williammost@gmail.com

TARAK ANADA (#31598)
JONES WALKER LLP
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8322
Facsimile: (504) 589-8322
E-Mail: tanada@joneswaker.com