UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and | * | Civil Action No. 22-00847 |
| JULIA BARECKI-BROWN | * | |
| | * | SECTION: L |
| VERSUS | * | |
| | * | HONORABLE ELDON E. FALLON |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | DIVISION: 4 |
| NEW ORLEANS | * | |
| | * | HONORABLE KAREN WELLS ROBY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Plaintiffs' Response to City Defendants' Material Facts**

| | Plaintiffs' Material Facts: | City Defendants' Response: |
|---|---|---|
| 1 | Dogs get shot multiple times every year by the NOPD.[1] | |
| 2 | Burmaster is a 'frequent user of force,' who has used force at least 30 times since 2011.[2] | |
| 3 | Burmaster's use of force includes "an incident in 2012 when he shot and killed a dog while investigating a property damage complaint."[3] | |
| 4 | "Burmaster's use of force has been the subject of multiple complaints'"[4] | |
| 5 | NOPD has sustained at least twenty other rule violations against Burmaster.[5] | |
| 6 | Burmaster's rule violations involved "'verbal intimidation, moral conduct, professionalism, performance of duty, neglect of duty, [and] failure to comply with instructions."[6] | |

---

[1] Ex. F at 73:10-12 (Pruitt 30(b)(6) dep).
[2] Ex. C at pgs. 3-4 (admitting RFA that "Officer Burmaster reported use of force thirty or more times at NOPD").
[3] Ex. A at 191:3-8 (Burmaster admitting he killed a dog while on the job in 2012).
[4] Ex. C at 3 (admitting that there have been five complaints about Burmaster's use of force); Ex. B (30(b)(6) Dep.) (admitting "least five complaints of use of force").
[5] Ex. B (30(b)(6) Dep.) at 25:11-20 ("Q. So at least PIB has approved 22 rule violations by Burmaster? . . . A. Yeah. I'd agree to that based on the document.")
[6] *Id*. at 26: ("PIB has sustained 22 rule violations by Burmaster, including violations regarding verbal intimidation, moral conduct, professionalism, performance of duty, and neglect of duty. Agreed? . . . The Witness: Yes.")

1

| # | | |
|---|---|---|
| 7 | NOPD's training is deficient "because it copies a U.S. Department of Justice COPS program training while taking out passages about the low risk and general friendliness of approaching dogs, and information about 'specific tactics' for dealing with animals."[7] | |
| 8 | According to the City's 30(b)(6) witness on training, it "would be wrong" for NOPD to copy its training from the DOJ training, but leave out the part about how an "approaching dog is almost friendly."[8] The City did leave that part out. | |
| 9 | The 30(b)(6) witness likewise testified that the City should not have omitted from its training the idea that officers "should not view a dog running towards them as a threat," because that is "pertinent information."[9] The City did leave that part out. | |
| 10 | The 30(b)(6) witness likewise testified that the City should have included in its training the language from the DOJ that "Dogs are seldom dangerous."[10] The City left that part out. | |
| # | City Defendants' Material Facts (R. Doc. 109-8): | Plaintiffs' Response: |
| 1 | Chapter 1.3 of the New Orleans Police Department Operations Manual, which is entitled "Use of Force," became effective December 6, 2015, and governs the use of force by New Orleans Police Department officers. Chapter 1.3, paragraph 32 is entitled "Dangerous Animals," and states in full:<br><br>Officers are authorized to use firearms to stop an animal in circumstances in which the animal reasonably appears to pose an imminent threat to human safety and alternative methods are not reasonably available or would likely be ineffective. The officer must be cognizant of the surroundings when shooting at an animal and ensure there is no risk | Undisputed. |

---

[7] Compare verbatim match between R. Doc. 56-2 (NOPD Training) with R. Doc. 56-3 (US DOJ COPS training). See also R. Doc. 110-18 at ¶ 12 (Expert report of Jim Crosby, observing that "crucial [DOJ] material was specifically omitted from the presented [NOPD] course material and likely contributed to Burmaster's incorrect perception of Apollo as a threat. Other materials illustrative of positive behavior of dogs is likewise omitted from the offered presentation.")
[8] Ex. D at 137:21-137:6.
[9] *Id*. at 138:20-24.
[10] *Id*. at 140:19-23

2

| | | |
|---|---|---|
| | to people in the area. Under circumstances in which officers have sufficient advance notice that a potentially dangerous animal may be encountered, officers should develop reasonable contingency plans for dealing with the animal (e.g., fire extinguisher, CEW, animal control officer). Nothing in this Chapter shall prohibit any officer from shooting a dangerous animal if circumstances reasonably dictate that a contingency plan has failed or becomes impractical. | |
| 2 | Officer Burmaster was hired as a commissioned police officer by the NOPD on August 13, 2000. | Undisputed. |
| 3 | At all times relevant to this case, NOPD provided training to all police officers, including Officer Burmaster, with regard to the NOPD Use of Force Policy as it related to dangerous animals. | Unknown if all officers received this training. |
| 4 | NOPD training of its officers with respect to encounters with dangerous animals was provided through "in service" training through the NOPD Academy, "daily training bulletins" through the NOPD's Professional Standards Accountability Bureau ("PSAB"), and by mandated online courses with the ASPCA, an animal-focused organization that, among other things, provides educational programs to law enforcement organizations | **Disputed**. The City refused to produce some of these training materials. See R. Doc. 94-1 at 6 (motion in limine to "bar any references to NOPD training that Defendants did not produce in discovery.")<br><br>Additionally, the City's 30(b)(6) witness testified that he had never heard of some of these materials. The training that the City provided in discovery - "The Problem of Dog-Related Incidents and Encounters" (R. Doc. 56-2) was completely unknown to the City's 30(b)(6) witness on the topic of training. Ex. D at 67:7-23. |
| 5 | The NOPD trained its officers, including Officer Burmaster, that a firearm should against an animal only in circumstances that is in which it reasonably appeared that the animal appeared to pose an imminent threat to human safety and alternative methods were not reasonably available or would likely not be effective. | Undisputed. |
| 6 | The NOPD trained its officers to evaluate risks posed by each potential animal encounter faced by officers and not to consider every animal encountered to be a threat. | **Disputed**. Burmaster testified that he only recalled being trained with the NOPD's "The Problem of Dog-Related Incidents and Encounters" training. *See* Ex. A (Burmaster Dep.) at 250:20-251:7. That training (found at R. Doc. 56-2) does not advise against considering every animal encountered to be a threat. |
| 7 | The NOPD trained its officers to consider alternative | Undisputed. |

3

| | | |
|---|---|---|
| | means to avoid use of force against animals. | |
| 8 | On January 1, 2012, Officer Burmaster shot a dog while serving as a NOPD officer. | Undisputed. |
| 9 | Officer Burmaster did not violate any NOPD policy in connection with the dog shooting on January 1, 2012. | **Disputed**. Because there were no witnesses to the shooting, NOPD's Public Integrity Bureau did not conclude there was enough evidence to support a policy violation.<br><br>But that does not mean that the shooting was compliant with policy. In fact, Burmaster testified that he was afraid that the dog in 2012 was going to bite him in the groin, just like how he described his fear of Apollo. Ex. A at 194:14-18 ("Q. So the two times you've shot and killed dogs while acting as a police officer, both times you've indicated a fear that the dog was going to bite you in the groin? A. Yes.") The implausibility of that explanation, coupled with the similarity to the unjustified 2021 shooting, suggests that the 2012 dog did not present an imminent threat and was therefore outside of NOPD policy. |
| 10 | From January 1, 2012, to April 10, 2021, Officer Burmaster was involved in no other instance where a complaint was made regarding his use of force against an animal. | Undisputed. |
| 11 | From January 1, 2012, to April 10, 2021, Officer Burmaster was the subject of five PIB investigations involving use of force against humans; but none of these investigations resulted in a finding that Officer Burmaster violated NOPD policies regarding use of force. | Undisputed. |
| 12 | On the evening of April 10, 2021, Officer Burmaster was on duty for the NOPD. | Undisputed. |
| 13 | On April 10, 2021, Officer Burmaster and NOPD officer John Roussel responded to a domestic disturbance call at Plaintiff's residence. | Undisputed. |
| 14 | April 10, 2021, Officer Burmaster entered the gate of Plaintiffs house and proceeded onto the driveway; Plaintiffs' two dogs ran down the porch stairs; at least one dog was loudly barking. One dog ran at Officer | Undisputed. |

| | |
|---|---|
| Burmaster, and he shot that dog. | |

Respectfully Submitted:

*/s/ William Most*
WILLIAM MOST (La. Bar No. 36914)
HOPE PHELPS (La. Bar No. 37259)
DAVID LANSER (La. Bar No. 37764)
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
Tel: 504.509-5023
Email: williammost@gmail.com

TARAK ANADA (#31598)
JONES WALKER LLP
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8322
Facsimile: (504) 589-8322
E-Mail: tanada@joneswaker.com