In the Matter of:

*Derek Brown and Julia Barecki-Brown*

*vs.*

*Derrick Burmaster, Shawn Fergusan, and the City of New Orleans*

_____

# City of New Orleans through their designated representative, Lieutenant John Helou 30(b)(6) Deposition

March 10, 2023

_____

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

5UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

DEREK BROWN and JULIA         Civil Action No.
BARECKI-BROWN                 22-847

VERSUS                        SECTION: L

DERRICK BURMASTER,            HONORABLE ELDON E.
SHAWN FERGUSAN,               FALON
and the CITY OF
NEW ORLEANS                   DIVISION:  4

                              HONORABLE KAREN WELLS
                              ROBY

        *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

        30 (B)(6) deposition of CITY OF NEW
ORLEANS, through their designated
representative, LIEUTENANT JOHN HELOU, 1340
Poydras Street, Suite 1900, New Orleans,
Louisiana 70112, taken at the CITY ATTORNEY'S
OFFICE, located at 1300 Perdido Street, 5E03,
New Orleans, Louisiana 70112, commencing at
3:39  P.M., on Friday, the 10th day of March,
2023.

APPEARANCES:

    MOST & ASSOCIATES
    (By:  William Most, Esquire)
    201 St. Charles Avenue
    Suite 114 PMB 101
    New Orleans, Louisiana  70170
      (Attorneys for the Plaintiffs,
       Derek Brown and Julia Barecki-Brown)

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

```
 1    APPEARANCES (continued):

 2

 3       GUSTE, BARNETT, SCHLESINGER, HENDERSON
         & ALPAUGH, L.L.P.
 4       (By:  C. Theodore Alpaugh, III, Esquire)
         639 Loyola Avenue
 5       Suite 2130
         New Orleans, Louisiana  70113
 6         (Attorneys for the Defendant,
            Officer Derrick P. Burmaster)
 7

 8       CITY OF NEW ORLEANS
         (By:  James Roquemore, Esquire)
 9       1300 Perdido Street
         5E03
10       New Orleans, Louisiana
           (Attorneys for the Defendants,
11          City of New Orleans and Shaun
            Ferguson)
12

13

14    ALSO PRESENT:

15
         Sofia Sophcefolia
16

17
      REPORTED BY:
18

19       KATHY ELLSWORTH SHAW, CCR, RPR
         Certified Court Reporter
20       (No. 049519)

21

22

23

24

25
```

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

```
 1              E X A M I N A T I O N   I N D E X

 2

 3                                              PAGE

 4

 5   EXAMINATION BY MR. MOST........................5
                RE-EXAMINATION......................49
 6
     EXAMINATION BY MR. ALPAUGH...................39
 7
     EXAMINATION BY MR. ROQUEMORE.................46
 8

 9              E X H I B I T   I N D E X
10

11   EXHIBIT NO. 14...............................21

12   EXHIBIT NO. 31...............................12

13   EXHIBIT NO. 38...............................16

14   EXHIBIT NO. 42...............................26

15   EXHIBIT NO. 45...............................32

16   EXHIBIT NO. 46...............................16

17              *      *      *      *      *

18

19

20

21

22

23

24

25
```

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

Page 4

```
 1                    S T I P U L A T I O N

 2              It is stipulated and agreed by

 3    and among counsel for the parties hereto that

 4    the deposition of the aforementioned witness is

 5    hereby being taken under the Federal Rules of

 6    Civil Procedure, for all purposes, in

 7    accordance with law;

 8              That the formalities of reading and

 9    signing are specifically waived.

10              That the formalities of filing, sealing,

11    and certification are specifically waived;

12              That all objections, save those

13    as to the form of the question and the

14    responsiveness of the answer, are hereby

15    reserved until such time as this

16    deposition, or any part thereof, may be

17    used or sought to be used in evidence.

18              *       *       *       *       *

19              KATHY ELLSWORTH SHAW, certified

20    Court Reporter, State of Louisiana,

21    officiated in administering the oath to

22    the witness.

23

24

25
```

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

```
 1                    LIEUTENANT JOHN HELOU,

 2   after having been first duly sworn by the

 3   above-mentioned Certified Court Reporter, was

 4   examined and testified as follows:

 5   EXAMINATION BY MR. MOST:

 6          Q.   All right.  Lieutenant Helou, we met

 7   before.  As you know, I'm William Most.  I

 8   represent the plaintiffs in this case.

 9               Could you give us your name and

10   title for the record?

11          A.   Sure.  Lieutenant John Helou

12   assigned to the Public Integrity Bureau's Force

13   Investigation Team.

14          Q.   And, Lieutenant, have you ever given

15   a deposition before?

16          A.   I have.

17          Q.   Just ballpark, how many have you

18   given?

19          A.   Two or three.

20          Q.   And were those depositions through

21   your role as an officer of NOPD?

22          A.   Yes.  All of them have been tied to

23   my employment with NOPD.

24          Q.   So you understand that you're under

25   oath here today?
```

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

```
 1          A.    I do.

 2          Q.    And your answers here today have the

 3     same force as if we're in a courtroom with a

 4     judge and jury?

 5          A.    I do.

 6          Q.    Is there anything today, whether

 7     it's medication, fatigue, illness, or anything

 8     else, that would prevent you from giving your

 9     full attention and truthful and complete

10     answers to questions?

11          A.    No.

12          Q.    And as you know from prior

13     depositions, we can take a break.  This doesn't

14     have to be continuous, although if we take a

15     break, I'll ask you who you spoke to and any

16     documents you looked at.  All right?

17          A.    Yes, sir.

18          Q.    And you're already doing this great

19     obviously, but if you wait for me to finish my

20     questions before answering, I'll do you the

21     same courtesy.  And that will make it easier on

22     our court reporter.

23          A.    Okay.

24          Q.    If I ask you a question that you

25     don't understand or it's confusing or vague,
```

```
 1   will you agree now to tell me that that's the
 2   case rather than just trying to answer it?
 3        A.   Yes.
 4        Q.   And do you know what case you're
 5   here for today?
 6        A.   The case dealing with Officer
 7   Burmaster's shooting of a dog, I believe, in
 8   2021.
 9        Q.   And in this deposition, you've been
10   designated by the City of New Orleans to speak
11   on behalf of the City of New Orleans.  Do you
12   understand that?
13        A.   Correct, yeah.
14        Q.   Was that the case of the prior
15   depositions you did?
16        A.   So one for sure and I think the
17   other one, I believe, I was named as a
18   defendant.
19        Q.   Okay.  So you've done this at least
20   once before where you understand that you've
21   been made available today to represent the City
22   of New Orleans; right?
23        A.   Yeah.  I think this time they gave
24   me -- Like this time they gave me a 30(b)(6),
25   said what I would be testifying to.
```

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

```
 1        Q.    Yeah.  We can show you a copy of
 2   that.
 3        MR. ALPAUGH:
 4             Do you have an extra copy, William?
 5        MR. MOST:
 6             I think -- I think one paper copy.
 7        MR. ALPAUGH:
 8             Never mind.  Just go on.
 9   EXAMINATION BY MR. MOST:
10        Q.    And so you understand that today
11   when I ask questions of you, I'm really asking
12   a question of the City of New Orleans.  And
13   when you give answers, you're really giving the
14   answers of the City of New Orleans, not just
15   John Helou; right?
16        A.    Correct.  Yes.
17        Q.    And this is also different than a
18   normal deposition in that in a normal
19   deposition, "I don't know" is a perfectly
20   sufficient answer.  That may not be the case
21   here today, but we'll just deal with that as it
22   comes.  All right?
23        A.    Okay.
24        Q.    And roughly when did you begin
25   preparing for this deposition?
```

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

Page 9

```
 1          A.     Maybe about a month ago.

 2          Q.     Okay.  And aside from talking to

 3     your lawyer, what did you do to prepare for the

 4     deposition in terms of who you talked to and

 5     what documents you looked at?

 6          A.     So I went into our professional

 7     standard software, which is IAPRO, looked at

 8     Burmaster's -- basically his file in IAPRO,

 9     which basically lists everything he's been

10     involved in with the -- since he's been hired

11     by the NOPD.  I believe I looked at Detective

12     Brewer's formal disciplinary investigation into

13     Officer Burmaster regarding that incident, the

14     dog shooting.  I believe I looked at Officer

15     Burmaster's Insight, Employee Summary Report,

16     and then I also looked at a document that was

17     forwarded by Mr. Roquemore from you, something

18     to do with a Fourth Circuit appeal.

19          Q.     Uh-huh (indicating affirmatively).

20          A.     Yeah.  I believe that's

21     everything -- Oh, and also -- I'm sorry.  I

22     also looked at the NOPD consent decree.

23          Q.     Okay.  When you say you looked the

24     IAPRO, for our court reporter, that's

25     I-A-P-R-O; right?
```

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

1       A.    I believe there's a space between IA
2   and PRO.
3       Q.    And when you looked in IAPRO, did
4   that show you Burmaster's short form and long
5   form?
6       A.    It gives me basically everything
7   that's associated with him and I can filter it
8   to do short form, long form.  I can exclude or
9   include, like uses of force, vehicle accidents,
10  civil lawsuits.  What else?  Firearm
11  discharges, stuff like that.
12      Q.    Okay.  And other than your attorney,
13  did you talk to anyone to prepare for this
14  deposition?
15      A.    No.
16      Q.    Did you take any notes in preparing
17  for this deposition?
18      A.    Kind of just what Mr. Roquemore told
19  me to familiarize myself with.
20      Q.    Okay.  So other than notes
21  reflecting your conversation with
22  Mr. Roquemore, did you take any other notes?
23      A.    No.
24      Q.    Okay.  And so my understanding is
25  that you've been designated today to talk about

1    the topic of Burmaster's disciplinary history,

2    including sustained and not sustained

3    complaints.

4            A.    Yes, sir.

5            Q.    That's your understanding as well?

6            A.    It is.

7            Q.    And you're prepared to talk about

8    that today?

9            A.    I am.

10           Q.    Okay.  Okay.  So you are a

11   Lieutenant in the Public Integrity Bureau?

12           A.    I am.

13           Q.    And that is essentially NOPD's

14   office that -- it's like an Internal Affairs

15   Department; right?

16           A.    That's exactly what it is, yes.

17           Q.    And so that department investigates,

18   among other things, officers who discharge

19   their weapon; right?

20           A.    Yes.

21           Q.    And many officers go their whole

22   career without firing their gun at a person or

23   animal; right?

24           A.    Yeah.  I'd say that's accurate.

25           Q.    In fact, most officers go their

Page 12

```
 1   whole career without firing their gun at a

 2   person or animal.  Agreed?

 3        A.   Yeah, I'd agree to that.

 4        Q.   Okay.  And we can look at a document

 5   about this if you're not sure, but Burmaster,

 6   however, has fired his gun at a person or

 7   animal at least four times; right?

 8        A.   Correct.

 9        Q.   We can look at a document if you're

10   not sure about this, but Burmaster is the only

11   officer in at least the last ten years to have

12   shot two animals; right?

13        A.   I might have to look at a document.

14        Q.   Sure.

15   MR. ALPAUGH:

16             What's that going to be?

17   MR. MOST:

18             Thirty-one.

19             (Tenders document to witness.)

20   EXAMINATION BY MR. MOST:

21        Q.   So do you see this document,

22   Lieutenant?

23        A.   I do.

24        Q.   And this was presented to us as a

25   list of firearm discharges involving animals by
```

```
 1    NOPD officers.  Is that what it appears to be
 2    to you?
 3         A.   Yes.  It looks like starting at 2012
 4    -- August 29, 2012, through January 3rd of
 5    2020.
 6         Q.   Okay.  And it looks like you
 7    generated this document?
 8         A.   Yes.
 9         Q.   And you generated it in July 2022?
10         A.   Yes.
11         Q.   And do you know whether there have
12    been subsequent animal shootings since July of
13    2022?
14         A.   Yes.
15         Q.   And has there been any?
16         A.   There's been two.
17         Q.   Do you know the officers involved in
18    those?
19         A.   I do.
20         Q.   Who are they?
21         A.   Officer Kaja Rhea.  I think it's
22    K-A-J-A is the first name.  R-H-E-A is the last
23    name.  And the second incident, I believe which
24    was January of this year, was Officer Russell
25    Green.
```

Page 14

```
 1        Q.    Okay.  So going back to at least

 2   2012 to the present, based on this document and

 3   what you know, Officer Burmaster is the only

 4   officer in the NOPD to have shot two animals.

 5   Agreed?

 6        A.    Agreed.

 7        Q.    And this was an interrogatory

 8   response, but you may know the answer.

 9   Burmaster has used force more than 30 times

10   while part of the NOPD.  Do you know if that's

11   right?

12        A.    I don't know the exact number, but I

13   know there's a number of them in his IAPRO

14   profile.

15        Q.    Okay.  And this is a question that I

16   will, if necessary, just show you the document

17   on my computer.  The question is that his Use

18   of Force file is more than 600 pages long.  Can

19   you answer that without referring to a

20   document?

21        A.    No, because I'm not sure what we're

22   referring to by 600 pages.

23        Q.    Yeah.

24        MR. ALPAUGH:

25             Do those have Bates number on them?
```

Page 15

1        MR. MOST:

2              Yeah.  I'll read it after he gives

3         it to me back.

4        MR. ALPAUGH:

5              That's the City production of the

6         Use of Force files?

7        MR. MOST:

8              Yeah.

9    EXAMINATION BY MR. MOST:

10       Q.   So can you see that this is a

11   document that was produced to us?  The name of

12   the file is Use of Force, Burmaster?

13       A.   Yes.

14       Q.   And the document is 610 pages long?

15       A.   It is.

16       Q.   So Officer Burmaster's Use of Force

17   file is more than 600 pages long?

18       A.   Yes.  But can I just clarify?

19       Q.   Yeah.

20       A.   I mean, that 610 pages includes

21   attachments associated with each use of force

22   investigation.  So each investigation is going

23   to have the report and then supporting

24   evidence, like force statements, police

25   reports.  Some could have photos, police

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

```
 1   reports, stuff like that.

 2       Q.   Right.  So it doesn't indicate he's

 3   used force 610 times, but the file itself is

 4   610 pages long; right?

 5       A.   Yes.

 6       MR. MOST:

 7            And we'll designate that as

 8        Exhibit 46.  We'll provide it

 9        electronically.  That's Bates 2730

10        through 3339.

11       MR. ALPAUGH:

12            That's the defendants'?  That's the

13        Defendants' 2730?

14       MR. MOST:

15            Yes.

16            Okay.  Next we designate Exhibit 38.

17   EXAMINATION BY MR. MOST:

18       Q.   You mentioned Insight.  That's a

19   software program?

20       A.   Yes, sir.

21       Q.   That's a -- That's a software

22   program that kind of generates a report about a

23   particular officer with a range of information,

24   discipline, use of force, sick days, all sorts

25   of stuff?
```

```
 1        A.   Yeah.  It's a -- It's basically --

 2   It's not a disciplinary program.  It's

 3   basically a management tool for supervisors,

 4   and it pulls data from different sources,

 5   different -- other software programs throughout

 6   the department.  And it just generates a

 7   summary report to assist the supervisor in

 8   spotting any types of patterns or anything

 9   negative that -- or positive that the

10   supervisor may need to take action on in order

11   to avoid something more serious down the line.

12   It's also supposed to alert the supervisor if

13   employee crosses a certain threshold in various

14   aspects to allow the supervisor to basically

15   proactively step in and see if there's

16   something that requires attention.

17        Q.   Is this the early warning system

18   that I've heard described?

19        A.   Yeah.  I think it -- I've heard

20   early warning system, early intervention

21   system.

22        Q.   And do you know what the thresholds

23   are for flagging officers in terms of use of

24   force or other things?

25        A.   I don't.  It is -- It's not a PIB
```

1  system.  It's, I believe -- I'm not sure if

2  it's MSB that manages it, but there is a early

3  intervention unit within headquarters that

4  actually sets those thresholds.

5       Q.   Does PIB get notified when officers

6  hit certain thresholds in Insight?

7       A.   Only if it's involving people that

8  we supervise.  We don't -- We don't have access

9  to Insight past our -- or people under our

10  chain of command.

11       Q.   Do you know if there's a document or

12  a memo or something that lays out what those

13  thresholds are?

14       MR. ROQUEMORE:

15          I'm going to object.  This is beyond

16       the scope.

17       MR. MOST:

18          Okay.

19  EXAMINATION BY MR. MOST:

20       Q.   And just so you know, the lawyers

21  that are here may make objections, but unless

22  Jim instructs you not to answer, you can just

23  go ahead and answer.  They've made their

24  objections for the record.

25          So do you know if there's like a

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

Page 19

1  memo or document or something that lays out

2  what the thresholds are?

3     A.   Yeah, I believe there is.

4     Q.   Okay.  Do you know what that's

5  called?

6     A.   No. It may be -- I think there's

7  a -- There's an NOPD policy on Insight.  It may

8  be at the end of the policy possibly because I

9  may have seen it in training or something like

10 that before.

11    Q.   Okay.  So if you look at pages nine

12 to ten of this Exhibit 38, the Insight

13 document.

14    A.   I have nine of 42.

15    Q.   Yeah.  So look at nine and ten of

16 42.

17    A.   Okay.  Gotcha.

18         (Witness examines document.)

19    Q.   And so this reflects use of force

20 information; right?

21    A.   Yes.  It looks like from January 1st

22 of 2016.

23    Q.   Right.  And it only goes back to

24 2016 because NOPD started using Insight in

25 2016?

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

```
 1        A.    Yeah, I believe that's right.
 2   Somewhere around then, yes.
 3        Q.    Okay.  So -- And you can check my
 4   counting here, but Burmaster has used force at
 5   least reflected here, at least 13 times since
 6   2016; correct?
 7        A.    Thirteen.
 8        Q.    And this actually doesn't include
 9   the Apollo shooting in 2021; correct?
10        A.    No.
11        Q.    So at least 13.  And we know it's
12   more than 13, but we don't know how many since
13   2016; right?
14        A.    Not -- I mean, not from this report,
15   no.
16        Q.    Right.  And NOPD chose to retain
17   Burmaster on the force despite these uses of
18   force.  Agreed?
19        A.    Yeah.  He's still on the job.
20        Q.    Do you know whether Burmaster's FTO
21   role has been removed from him?
22        A.    I don't know that --
23        Q.    Okay.
24        A.    -- off the top of my head.  I know
25   he's changed districts.
```

```
 1        MR. MOST:

 2             Okay.  We're going to designate as

 3             Exhibit 14 a document that starts with

 4             City Defendants 1999.

 5   EXAMINATION BY MR. MOST:

 6        Q.    Lieutenant, this is Officer

 7   Burmaster's short form?

 8        A.    Yes.

 9        Q.    And the short form is -- it's a

10   Public Integrity Bureau document that

11   summarizes a subset of the complaints made

12   against an officer?

13        A.    Yes.  Well, repeat the question for

14   me one more time.

15        Q.    Sure.  So PID can generate a short

16   report or a long report for an officer; right?

17        A.    That's correct.

18        Q.    And those reports detail complaints

19   and investigations against an officer?

20        A.    So the short form would only include

21   sustained and not sustained complaints.  Where

22   a long form would include everything, including

23   those claims that were found to be unfounded,

24   exonerated, or no formal investigation merited.

25        Q.    Uh-huh (indicating affirmatively).
```

Page 22

```
 1                And so this short form -- We might
 2    need to count to check my accounting here, but
 3    I count 20 sustained violations of NOPD policy
 4    by Burmaster.  Would you agree with that?
 5          A.    Give me a second to count.
 6          Q.    Yeah.  Take as much time as you
 7    need.
 8                (Whereupon a pause occurred in the
 9            proceedings.)
10          THE WITNESS:
11                Let me recount one more -- because I
12            got 15.  What was that you said, 16?
13          MR. MOST:
14                I said 20, and I'm talking
15            specifically about not just control
16            numbers, but actual --
17          THE WITNESS:
18                Oh, you're talking about actual
19            allegations?
20          MR. MOST:
21                Yeah.
22          MR. ALPAUGH:
23                Oh, okay.  That's what I was curious
24            about.  You're taking about not
25            incidents, but you're talking about rule
```

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

Page 23

```
 1        violations?

 2     MR. MOST:

 3          Rule violations, yeah.  Thank you.

 4     Yeah, I'm talking 20 rule violations.

 5     THE WITNESS:

 6          All right.  One second.  It looks

 7     like 22, but some of them are awaiting

 8     hearing.

 9     MR. MOST:

10        Okay.

11     THE WITNESS:

12          So it's not a -- it's not a final

13     disposition until -- These are just

14     recommendations until he's actually been

15     issued a disciplinary letter that's been

16     signed by the superintendent of police.

17     MR. MOST:

18        Okay.

19  EXAMINATION BY MR. MOST:

20     Q.   So at least the Public Integrity

21  Bureau has found that Burmaster violated NOPD

22  rules 22 times in total?

23     MR. ROQUEMORE:

24          Objection; form.

25     MR. ALPAUGH:
```

Page 24

```
 1              Objection to form.

 2         THE WITNESS:

 3              It could be -- I mean, some of these

 4         could have been done by PIB.  Some of

 5         them could have been done by

 6         investigators outside of PIB and sent to

 7         us for review and approval.  But, yeah,

 8         ultimately, we approve the formal

 9         disciplinary investigations.

10    EXAMINATION BY MR. MOST:

11         Q.   So at least PIB has approved 22 rule

12    violations by Burmaster?

13         MR. ROQUEMORE:

14              Objection; form.

15         MR. ALPAUGH:

16              Same objection.

17    EXAMINATION BY MR. MOST:

18         Q.   Is that right?

19         A.   Yeah.  I'd agree to that based on

20    the document.

21         Q.   Sure.  And just to go over some of

22    these, on the first page, it was a sustained

23    rule violation of verbal intimidation and

24    professionalism?  That's under May 28th, 2007?

25         A.   Yes.
```

```
 1        Q.    And that's -- The first one of those
 2   is under Moral Conduct?
 3        A.    Yeah.   That's the rule that he was
 4   found to have violated.
 5        Q.    And under May 22nd, 2012, there's a
 6   sustained violation for performance of duty?
 7        A.    May 22nd, 2012?
 8        Q.    Yeah.
 9        A.    Yes.   Performance of duty.
10        Q.    Yeah.   And under November 9th, 2012,
11   there's a sustained violation of -- regarding
12   neglect of duty?
13        A.    Yes.
14        Q.    And when we say "sustained," we
15   mean -- it means that PIB concluded that
16   Burmaster violated this rule?
17        MR. ROQUEMORE:
18             Objection to form.
19        MR. ALPAUGH:
20             Same objection.
21        THE WITNESS:
22             So the definition of sustained is
23          basically based on the preponderance of
24          the evidence, the alleged misconduct
25          likely occurred.
```

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

Page 26

```
 1        MR. MOST:

 2            Okay.

 3   EXAMINATION BY MR. MOST:

 4        Q.   So to sum up, over Burmaster's

 5   career with NOPD, PIB has sustained 22 rule

 6   violations by Burmaster, including violations

 7   regarding verbal intimidation, moral conduct,

 8   professionalism, performance of duty, and

 9   neglect of duty.  Agreed?

10        MR. ROQUEMORE:

11            Objection.  Objection; form.

12        MR. ALPAUGH:

13            Same objection.

14        THE WITNESS:

15            Yes.

16   EXAMINATION BY MR. MOST:

17        Q.   And NOPD chose to retain Burmaster

18   on the force despite those sustained

19   violations?

20        A.   Yes, he's still employed with the

21   department.

22        MR. MOST:

23            We're going to designate Exhibit 42.

24   EXAMINATION BY MR. MOST:

25        Q.   Lieutenant, is this Burmaster's long
```

Page 27

```
 1    form?

 2         A.    Give me one second to review it.

 3    I'm just checking to see if there was anything

 4    unfounded or exonerated on here.

 5         Q.    There's some NFIMs on the first

 6    page; right?

 7         A.    Yes.

 8         Q.    So that indicates this is the long

 9    form?

10         A.    Okay.  I see some unfounded ones.

11               So, no, this isn't technically the

12    long form because it's -- I think this was

13    printed from our web version of IAPRO and right

14    now it doesn't allow the printing of long

15    forms, but it contains the same information

16    that a long form would have.

17         Q.    Okay.  So if you look -- I'm going

18    to go through just -- So this document contains

19    complaints against an officer, whether it was

20    sustained or there was an outcome other than

21    sustained; right?

22         A.    Yes.  And it also has some

23    nondisciplinary items, like counselings,

24    because back then, we didn't have an Insight to

25    put it in, so everything went into IAPRO.
```

Page 28

```
 1          Q.    So I'm going to go by the Bates
 2    numbers at the bottom, which is like -- on this
 3    first page, it says 3666.  You see that?
 4          A.    Yes.
 5          Q.    So on page 3666, there was a claim
 6    of excessive force against Burmaster from 2006?
 7          A.    Yes.
 8          Q.    There was also a complaint of
 9    excessive force against Burmaster in 2007?
10    Same page.
11          A.    I don't see it on the same page.  I
12    see one excessive force and at the bottom, I
13    see adherence to law and professionalism.
14          Q.    Okay.
15          A.    You said -- You said 3666; right?
16          Q.    Yeah.  Maybe I just said that wrong.
17                Okay.  And then if you go to 3670.
18          A.    Three six seven zero, okay.
19          Q.    There's a complaint of excessive
20    force against Burmaster in 2010?
21          A.    Yes, I see it.
22          Q.    Okay.  And so to go back to 3667.
23          A.    Okay.  Oh, 3667.
24          Q.    There was a claim of excessive force
25    against Burmaster in 2008?
```

1      A.   Yes.

2      Q.   So so far we've got 2006, 2008,

3   2010; right?

4      A.   Yes.

5      Q.   And then if you go to 3671, he got

6   -- at the bottom of the page a complaint of

7   excessive force from 2012?

8      A.   Yes.

9      Q.   And that was another NOPD officer

10   reporting Officer Burmaster for striking a

11   handcuffed subject with his fist.  That was at

12   least the allegation?

13      A.   Yeah, that's what it says on the --

14   in the incident summary.

15      Q.   Okay.  And then if you go to 3674,

16   you've got one from -- an excessive force

17   complaint against Burmaster in 2013?

18      A.   Yes.

19      Q.   And then if you go to 3676, you've

20   got a complaint of excessive force against

21   Burmaster in 2015?

22      A.   Three six seven six?

23      Q.   Uh-huh (indicating affirmatively).

24      A.   I think it's on the 3677.

25      Q.   Yeah.

1         A.    Well, it starts at 76 and goes to

2    77.

3         Q.    Right.  So there's a 2015 complaint

4    of excessive force against Burmaster?

5         A.    Yes.

6         Q.    So after reviewing this document, we

7    see that prior to the shooting of Apollo, there

8    were five complaints of excessive force against

9    Burmaster in 2006, 2008, 2010, 2012, and 2015?

10        A.    Yes.

11        Q.    Okay.  So to sum up what we've

12   talked about so far, Burmaster has had more

13   than 30 uses of force, at least 20 sustained

14   policy violations, and at least five complaints

15   of use of force, and NOPD has chosen to retain

16   him as part of the department.  Would you

17   agree?

18        A.    Yes, but can I clarify a little bit?

19        Q.    Sure.

20        A.    So I can't speak to how PIB operated

21   pre-consent decree, which was, I think, in July

22   of 2012 -- 2012 when it was signed.  So I can

23   only talk about what I know about PIB since

24   I've been there since July of 2015.  I know

25   by -- The consent decree requires us to be

1    allegation driven.  So it doesn't take much to

2    lodge an excessive force complaint against --

3    against somebody.

4           Q.   Uh-huh (indicating affirmatively).

5           A.   So I just kind of wanted to put that

6    on the record.

7           Q.   Sure.  But at least the way I

8    phrased it, it was a true statement; right?

9           A.   Can you repeat it one more time?

10          Q.   Sure.  So to sum up from the

11   documents we've looked at, these documents show

12   that Burmaster has had at least 30 uses of

13   force, at least 20 sustained policy violations,

14   at least five complaints of use of force;

15   correct?

16          A.   Correct.  Excessive force or use of

17   force?

18          Q.   Excessive force.

19          A.   Yes.

20          Q.   And NOPD has chosen to retain him in

21   the department.  Agreed?

22          A.   Agreed.

23          Q.   So then there was a Fourth Circuit

24   opinion you looked at in preparing for this?

25          A.   That's correct.

```
 1        Q.   That was State V Loicana?

 2        A.   Yes, that's correct.

 3   MR. MOST:

 4             Designate this as Exhibit 45.

 5             I'm sorry.  Loicana, L-O-I-C-A-N-A.

 6   THE WITNESS:

 7             Okay.

 8   EXAMINATION BY MR. MOST:

 9        Q.   Is that what we're looking at?

10        A.   That is what we're looking at.

11        Q.   And you read this case before coming

12   to this deposition?

13        A.   I did.

14        Q.   Okay.  And in this case, Judge Buras

15   found that Burmaster had committed an

16   unconstitutional search?

17   MR. ROQUEMORE:

18             Objection to form.  He's not an

19        expert.  It's beyond the scope.

20   MR. ALPAUGH:

21             Same objection.

22   THE WITNESS:

23             So, yes, some parts of it I didn't

24        understand because I'm not a lawyer, but,

25        yeah, that -- that was the gist of what I
```

Page 33

```
 1        had read.
 2   EXAMINATION BY MR. MOST:
 3        Q.   And the Fourth --
 4        MR. MOST:
 5             And just we'll have that objection
 6          be for this whole line of questioning if
 7          you like.
 8        MR. ROQUEMORE:
 9             Yes.
10        MR. ALPAUGH:
11             Yes.
12   EXAMINATION BY MR. MOST:
13        Q.   And the Fourth Circuit upheld that
14   determination that Burmaster engaged in an
15   unconstitutional search?
16        A.   That's correct.
17        Q.   Uh-huh (indicating affirmatively).
18        A.   But I didn't understand what writ
19   granted and what relief denied meant.
20        Q.   Sure.
21        A.   Yeah.
22        Q.   So I haven't seen any reference in
23   any of Burmaster's like HR, personnel, or PIB
24   files, any reference to this.  Do you know of
25   any?
```

1    A.   So after I got this, I did research

2   his -- I put this person's name, Loicana -- I'm

3   not sure if I'm pronouncing it right.  I did

4   put it through IAPRO.  I didn't see him as the

5   subject of any complaint at all.  I did forward

6   this to our QA, quality Assurance Unit

7   supervisor, which is Sergeant Homer Garcia, to

8   forward to our Professional Standards and

9   Accountability Bureau to look into this.

10    Q.   Do you know of any system NOPD has

11   for keeping track of when officers are found by

12   a court to have violated the Constitution?

13    A.   I know Insight is supposed to track

14   when no probable cause is found.  Now, I don't

15   know if it's something that when the D.A.

16   doesn't find probable cause or when the court

17   finds probable cause.  I'm not sure on that.

18   And those are supposed to be sent over to

19   Professional Standards and Accountability for

20   further action, but I don't know what --

21   exactly what year that started.

22    Q.   Uh-huh (indicating affirmatively).

23         Because that would be relevant to

24   whether NOPD chooses to retain an officer,

25   whether the courts had found him to have

 1    violated the Constitution.  Wouldn't you agree?

 2         MR. ROQUEMORE:

 3              Objection; beyond the scope.

 4         MR. ALPAUGH:

 5              Same objection.

 6         THE WITNESS:

 7              I mean, it could be.

 8    EXAMINATION BY MR. MOST:

 9         Q.   Okay.  And have you personally

10    reviewed the video footage of the shooting of

11    the dog that's the subject of this case?

12         A.   Yeah, back in 2021.

13         Q.   Uh-huh (indicating affirmatively).

14              If you were in Burmaster's shoes,

15    would you have pulled your gun out of its

16    holster?

17         MR. ALPAUGH:

18              Object to form.

19         MR. ROQUEMORE:

20              Before we go forward, are we

21         talking -- are we asking questions of him

22         personally now?  He's no longer the

23         representative of the City because this

24         is beyond the scope?

25         MR. MOST:

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

```
 1                   Yeah, I think --
 2          MR. ROQUEMORE:
 3               I mean, he does have some
 4          involvement in the early investigations.
 5          You can ask him about that.  But if
 6          you're asking for a City opinion, I'm
 7          going to object.
 8          MR. MOST:
 9               Yeah, I understand.  You know, we'll
10          note the objection, that it's the
11          contention that it's outside the scope of
12          the 30 (b)(6) notice.  And we can note
13          that objection as continuing through this
14          whole line of questioning.
15          MR. ROQUEMORE:
16               Okay.
17     EXAMINATION BY MR. MOST:
18          Q.   Lieutenant, if you were in
19     Burmaster's shoes, based on what you reviewed,
20     would you have pulled your gun out of its
21     holster?
22          MR. ROQUEMORE:
23               Objection; form.
24          MR. ALPAUGH:
25               Objection; form.
```

```
 1          THE WITNESS:

 2               Not necessarily.  I mean, I don't --

 3          I don't really have a fear of dogs, so I

 4          don't -- unless they're really showing

 5          some sign of aggression or imminent

 6          attack is coming, I don't -- I don't

 7          believe so.

 8   EXAMINATION BY MR. MOST:

 9          Q.   And you didn't see any sign of

10   aggression or imminent attack from what you

11   reviewed?

12          A.   Not from what I reviewed.

13          Q.   Would you have shot the dog?

14          A.   From what I reviewed?

15          Q.   Uh-huh (indicating affirmatively).

16          A.   Probably not.

17          Q.   You're aware that Burmaster

18   expressed a fear or a worry that this dog would

19   bite his penis?

20          A.   Yes, I believe he said that a few

21   times.

22          Q.   Has any other officer that you know

23   of expressed a fear of dogs biting their penis?

24          A.   Not to my knowledge.

25          Q.   Are you aware of any NOPD officer
```

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

Page 38

```
 1   that has actually had his penis or genitals

 2   bitten by a dog?

 3        A.   Not to my knowledge.

 4        Q.   Do you know what the Hexagon System

 5   is?

 6        A.   No.

 7        Q.   Okay.

 8        A.   That's not that new software program

 9   they're going to, huh?

10        Q.   I think it is.

11        A.   Okay.  I heard a little bit about

12   it.

13        Q.   Yeah.

14        A.   Yeah.

15        Q.   Do you know if it's up and running

16   yet?

17        A.   No, I don't.  Well, if it is, I

18   don't know anything about it.  I think I saw an

19   article on NOLA a couple of days ago that said

20   it wasn't.  I think it was still in testing or

21   something like that.

22        Q.   Okay.

23        MR. MOST:

24             Reserving follow-up, that's the

25          questions I've got for now.  You guys --
```

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

```
 1          MR. ALPAUGH:

 2               Yeah.  John, I've got a couple for

 3          you.  Let's get back to the beginning.

 4     EXAMINATION BY MR. ALPAUGH:

 5          Q.   You were asked whether -- about

 6     Officer Burmaster allegedly using force 13

 7     times since 2016.  Do you remember that?

 8          A.   Yes, sir.

 9          Q.   Is that an unusual amount of use of

10     force for an officer in that time frame that's

11     being a proactive police officer?

12          A.   What was the time frame again?  I'm

13     sorry.

14          Q.   I believe the question is since

15     2016?

16          A.   No.  I wouldn't say it's unusual.

17          Q.   Okay.  Now, on his short form, which

18     is Exhibit 14 -- Do you have it in front of

19     you?

20          A.   Yes.

21          Q.   All right.  You were asked if there

22     were 22 different rule violations on there;

23     correct?

24          A.   Sustained allegations?

25          Q.   Sustained allegations, yeah.
```

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

Page 40

```
 1        A.   Yeah, separate sustained

 2   allegations.

 3        Q.   Are those 22 separate incidents?

 4        A.   No.

 5        Q.   You have to look under each incident

 6   to see and then for -- to find out how many

 7   allegations were on each one of them?

 8        A.   Correct.

 9        Q.   So that's not 22 incidents.  It's

10   less than that?

11        A.   Correct.

12        Q.   Let's see.  And these incidents on

13   the short form, I think the first one was on

14   0199 or -- I'm sorry.  Strike that.

15             And then you were asked some

16   questions about on Exhibit 42?

17        A.   Yes.

18        Q.   And you were asked about the use of

19   unauthorized force?

20        A.   Yes, sir.

21        Q.   Okay.  And the first one, I think,

22   was on page 3666 down at the bottom.  Let's see

23   where it is.  I'm sorry.  Right at the top,

24   November 26, 2006.

25        A.   Yes, sir.
```

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

1    Q.   That's the received date.  Occurred

2    date, November 13, 2006?

3    A.   Yes, sir.

4    Q.   And it's got an IA number

5    2006-0664-N.

6    A.   Uh-huh (indicating affirmatively).

7    Q.   And that has an allegation of

8    unauthorized force?

9    A.   Yes.

10   Q.   And what's the disposition?

11   A.   No further investigation merited.

12   Q.   What does that mean?

13   A.   Basically -- And, well, I could tell

14   you what it means today.  I don't know what it

15   meant in 2006.

16   Q.   But it meant he wasn't -- he wasn't

17   found that he committed a violation, was he?

18   A.   Correct.  It wasn't sustainable.

19   Q.   Wasn't sustained.  All right.

20   A.   And it wasn't not sustained where

21   they couldn't prove it one way or the other.

22   Q.   Right.  Let's see.  On page 3670.

23   A.   Okay.

24   Q.   You were asked about an incident

25   of -- Let's see.  This is the one, I believe,

Page 42

```
 1     in 2010.  It said it occurred April 28, 2010.

 2     Received May 14, 2010.  It's IA 2010-0673-C?

 3          A.   Yes.

 4          Q.   All right.  Again, that is an

 5     allegation of unauthorized force?

 6          A.   Correct.

 7          Q.   What was the disposition?

 8          A.   Well, for everything -- All the

 9     allegations including --

10          Q.   The whole thing.

11          A.   -- unauthorized force, it was not

12     sustained.

13          Q.   Okay.  All right.  Again, that

14     means?

15          A.   It means the investigator could

16     neither prove or disprove based on the

17     preponderance of the evidence that the alleged

18     misconduct occurred.

19          Q.   I apologize for going back.  I'm

20     going to 3667.

21          A.   Three six six seven.

22          Q.   Down at the bottom, you have an

23     incident occur date October 12, 2007.  Receive

24     date April 24th, 2008.  It's a public initiated

25     complaint, IA-2008-0306-C, and that has an
```

Page 43

1   unauthorized force complaint on it, does it

2   not?

3          A.   Yes, sir.

4          Q.   And that was one of the ones you

5   were asked about?

6          A.   Yes, sir.

7          Q.   And that's not sustained; correct?

8          A.   Not sustained.

9          Q.   Okay.  On 3671, toward the bottom,

10  it's occur date May 22nd, 2012.  Receive date

11  May 23, 2012.  It's a rank-initiated complaint,

12  2012-0513-R.  You see that one?

13         A.   Yes, sir.

14         Q.   And that's an unauthorized force

15  complaint?

16         A.   Correct.

17         Q.   And the disposition was?

18         A.   Not sustained.

19         Q.   Okay.  And 3674, toward the bottom,

20  it's -- the incident occurred on April 30,

21  2013.  Received May 19, 2013.  Public initiated

22  2013-0398-C.  Do you see that one?

23         A.   Yes, sir.

24         Q.   That's one of the ones you were

25  asked about previously?

```
 1          A.    Yes, sir.

 2          Q.    And this is a complaint of

 3    unauthorized force?

 4          A.    Yes, sir.

 5          Q.    And what's the disposition on that

 6    one?

 7          A.    For unauthorized force, it's

 8    exonerated.

 9          Q.    That means it didn't happen; right?

10          A.    It means the alleged misconduct

11    occurred, but it was found not to be a

12    violation of policy.  Well, the alleged action

13    occurred, but it was found not to be a

14    violation of policy.

15          Q.    Okay.  And the last one that you

16    were asked about was on 3676 -- bottom of 3676

17    to top of 3677, with an occurrence date of

18    April 16th, 2015, and received April 23rd,

19    2015.  Public initiated complaint, 2015-0230-C?

20          A.    Yes.

21          Q.    And that's also an unauthorized

22    force?

23          A.    Yes.

24          Q.    Among other things?

25          A.    Yes.
```

```
 1          Q.    And on all the allegations, he was
 2    exonerated; correct?
 3          A.    That is correct.
 4          Q.    Okay.  So those are the five things
 5    you were asked about and all of them, either he
 6    was -- The first one was no investigation
 7    merited?
 8          A.    Yes.
 9          Q.    And then it was not sustained for, I
10    think, maybe one or two, and then exonerated
11    for the last two; correct?
12          A.    Correct.
13          Q.    And you were asked whether you would
14    have -- And, again, you acknowledge you've seen
15    the video of the shooting in this case.  That's
16    because you were part of the administrative
17    shooting investigation?
18          A.    Yes.
19          Q.    All right.  And you said that you
20    personally would not have pulled your gun in
21    this case?
22          A.    Correct.
23          Q.    All right.  But you can't -- You're
24    not putting yourself inside what Officer
25    Burmaster was perceiving at the time, are you?
```

1        A.    No.  I wasn't there.  I wasn't there

2    at the time he fired his gun.

3        Q.    And you don't know what else was

4    going on, what his perceptions were at the time

5    when he fired his gun?

6        A.    No.  I can only base that off what I

7    saw in the video.

8        Q.    So you're basing it off of hindsight

9    looking at the video?

10        A.    Correct.

11        Q.    But not being in the moment?

12        A.    No.

13    MR. ALPAUGH:

14            Thank you, sir.  Thanks for

15         answering my questions.

16    MR. ROQUEMORE:

17            Lieutenant Helou, I just have a

18         couple of questions.

19    EXAMINATION BY MR. ROQUEMORE:

20        Q.    So the only -- On the long form,

21    Exhibit No. 42, this -- this lists the -- Am I

22    correct in saying that the long form and the

23    short form list complaints that were

24    investigated by the PIB with regard to

25    Burmaster?

```
 1        A.    Yes.

 2        Q.    Okay.  So if there's a use of force

 3   that did not generate a complaint, that would

 4   not being reflected on this; is that right?

 5        A.    Correct.

 6        Q.    And what would that indicate to you

 7   with regard to whether the use of force was

 8   justified or not?

 9        A.    It would lead me to believe that the

10   use was force was justified and within policy.

11        Q.    If it was not on Exhibit -- If it

12   does not make it to a complaint; is that right?

13        A.    Yes, sir.

14        Q.    And what does it indicate to you if

15   the complaint is investigated and found to be

16   not sustained or exonerated or anything but

17   sustained?

18        A.    So not sustained basically means

19   that the investigator looked at the evidence

20   and based on the preponderance of the evidence,

21   he couldn't or they couldn't decide one way or

22   another whether it was sustained or whether he

23   did or did not or they did or did not commit

24   the misconduct.

25             Exonerated means they looked at the
```

 1   evidence and based on the preponderance of the

 2   evidence, what was alleged to have happened did

 3   happen, but it was found not to be a violation

 4   of policy.

 5        Q.   And the complaint in this case, the

 6   shooting of the Browns' dog, that case has not

 7   been resolved at this point in time; is that

 8   fair?

 9        A.   You're talking about the formal

10   disciplinary investigation?

11        Q.   Yes.  The PIB investigation, it

12   hasn't been signed off by the superintendent

13   yet?

14        A.   No.  I think it's still -- I believe

15   it's still awaiting a hearing, a chief's panel

16   hearing for imposition of any discipline or

17   potential.

18        Q.   All right.  Other than that dog

19   shooting -- How many of the cases that were

20   investigated involved a shooting of a dog that

21   are shown on the long form or the short form?

22        A.   Wait.  This one here?

23        Q.   Yes, 47.

24        A.   To my knowledge --

25        Q.   Or 42 -- I'm sorry -- Exhibit.

```
 1          A.   To my knowledge, none.

 2          Q.   Okay.

 3     MR. ROQUEMORE:

 4               All right.  That's all I have.

 5      Thank you.

 6     MR. MOST:

 7               Okay.  Just a couple of follow-up

 8      questions.

 9     RE-EXAMINATION BY MR. MOST:

10          Q.   We're talking about what

11     nonsustained and NFIM mean?

12          A.   Yes, sir.

13          Q.   And you said that that could be the

14     result of the investigator saying, "I can't

15     tell beyond a preponderance of evidence what

16     happened here"; right?

17          A.   For not sustained.

18          Q.   Right.  And no further investigation

19     merited could be because it can't be determined

20     what happened; right?

21          A.   No.  That's actually not accurate.

22          Q.   Okay.

23          A.   Again, I can't tell what it meant

24     back in 2006, yeah.  I mean, I could tell you

25     now no further investigation merited would mean
```

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

1   the accused isn't a member of NOPD, the accused

2   can't be identified, incident involves a --

3   like issuing of a traffic citation, and I think

4   something about there's no nexus to the job

5   based on -- the complaint has no nexus of the

6   job.  I think those are the four categories

7   that something could be classified as no formal

8   investigation merited.

9        Q.   So for not sustained -- for example,

10  the one where an officer said he saw Burmaster

11  hit a handcuffed subject, if it was before a

12  body cam and there was no video and one officer

13  says, "Burmaster hit a handcuffed subject," and

14  Burmaster said, "I didn't," the investigator

15  might conclude can't be proven beyond a

16  preponderance and conclude not sustained;

17  right?  That's a possibility?

18       MR. ROQUEMORE:

19            Objection; form.

20       MR. ALPAUGH:

21            Objection; form.

22       THE WITNESS:

23            One more time with the question.

24       MR. MOST:

25            Sure.

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

```
 1        MR. ROQUEMORE:

 2             Same objection.

 3        MR. ALPAUGH:

 4             Same one.

 5   EXAMINATION BY MR. MOST:

 6        Q.   Subject to the objection, you can

 7   have a nonsustained outcome when it's like a he

 8   said/she said and there's no video; right?

 9        A.   Correct.  If you have -- If it's he

10   said/she said and there's no -- nothing there

11   to support either side.

12        Q.   Yeah.  Okay.

13             And when you said when you were

14   assessing what you would have done in

15   Burmaster's shoes, you watched the video, but

16   you also were familiar with the interviews of

17   Burmaster as well; right?

18        A.   Yeah.  I believe I monitored them.

19        Q.   Uh-huh (indicating affirmatively).

20             And you looked at some of the other

21   forms of evidence that were collected through

22   that administrative shooting investigation?

23        A.   Yeah, but I can't specifically

24   remember which ones.

25        Q.   That's okay.  But it wasn't just the
```

1    video; right?

2            A.   No.

3            Q.   Okay.  And I think I heard you say

4    that if -- if a use of force didn't generate a

5    complaint, you would conclude that the use of

6    force was justified.  Did I hear you right?

7            A.   Yes.

8            Q.   I mean, there's a lot of reasons why

9    a use of force might not generate a complaint,

10   like a person who was subject to the use of

11   force might not feel comfortable going to and

12   making a complaint to the New Orleans Police

13   Department; right?

14           MR. ROQUEMORE:

15               Object to the form.

16           MR. ALPAUGH:

17               Objection to form.

18           THE WITNESS:

19               That's true.

20           MR. MOST:

21               Yeah.

22   EXAMINATION BY MR. MOST:

23           Q.   So no complaint doesn't necessarily

24   mean it was justified; right?  It just means

25   there wasn't a complaint filed about that use

```
 1    of force?

 2          A.   So, again, I don't know what

 3    happened pre-FIT.  So I know right now if the

 4    Force Investigation Team reviews all uses of

 5    force and they determine -- They're the final

 6    determining factor, unless it's a serious use

 7    of force, whether or not the force is -- is or

 8    is not justified.

 9          Q.   Okay.  So at least before some

10    period of time -- Well, okay.  I'll just strike

11    that.

12          MR. MOST:

13               Okay.  That's all I got.

14               Anything else from you guys?

15          MR. ALPAUGH:

16               I'm done.

17          MR. ROQUEMORE:

18               I'm done.

19               (Whereupon the deposition was

20          concluded at 4:39 P.M.)

21               *    *    *    *    *

22

23

24

25
```

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

Page 54

```
 1
 2                  REPORTER'S CERTIFICATE
 3        This certification is valid only for a
      transcript accompanied by my original signature
 4    and original required seal on this page.
            I, Kathy Ellsworth Shaw, Certified Court
 5    Reporter in and for the State of Louisiana, as
      the officer before whom this testimony was
 6    taken, do hereby certify that LIEUTENANT JOHN
      HELOU, to whom oath was administered, after
 7    having been duly sworn by me upon authority of
      R.S. 37:2554, did testify as hereinabove set
 8    forth in the foregoing 53 pages; that this
      testimony was reported by me in stenotype
 9    reporting method, was prepared and transcribed
      by me or under my personal direction and
10    supervision, and is a true and correct
      transcript to the best of my ability and
11    understanding; that the transcript has been
      prepared in compliance with transcript format
12    guidelines required by statute or by rules of
      the board, and that I am informed about the
13    complete arrangement, financial or otherwise,
      with the person or entity making arrangements
14    for deposition services; that I have acted in
      compliance with the prohibition on contractual
15    relationships, as defined by Louisiana Code of
      Civil Procedure Article 1434 and in rules and
16    advisory opinions of the board; that I have no
      actual knowledge of any prohibited employment
17    or contractual relationship, direct or
      indirect, between a court reporting firm and
18    any party litigant in this matter nor is there
      any such relationship between myself and a
19    party litigant in this matter nor is there any
      such relationship between myself and a party
20    litigant in this matter; I am not related to
      counsel or to the parties herein, nor am I
21    otherwise interested in the outcome of this
      matter.
22
23    _____
      KATHY ELLSWORTH SHAW, CCR, RPR
24    Certified Court Reporter
25
```

**A**

ability 54:10
above-mentioned 5:3
access 18:8
accidents 10:9
accompanied 54:3
Accountability 34:9 34:19
accounting 22:2
accurate 11:24 49:21
accused 50:1,1
acknowledge 45:14
acted 54:14
action 1:5 17:10 34:20 44:12
actual 22:16,18 54:16
adherence 28:13
administered 54:6
administering 4:21
administrative 45:16 51:22
advisory 54:16
Affairs 11:14
affirmatively 9:19 21:25 29:23 31:4 33:17 34:22 35:13 37:15 41:6 51:19
aforementioned 4:4
aggression 37:5,10
ago 9:1 38:19
agree 7:1 12:3 22:4 24:19 30:17 35:1
agreed 4:2 12:2 14:5,6 20:18 26:9 31:21,22
ahead 15:3
alert 17:12
allegation 29:12 31:1 41:7 42:5
allegations 22:19 39:24,25 40:2,7 42:9 45:1
alleged 25:24 42:17 44:10,12 48:2
allegedly 39:6
allow 17:14 27:14
Alpaugh 2:3,4 3:6 8:3,7 12:15 14:24 15:4 16:11 22:22 23:25 24:15 25:19 26:12 32:20 33:10 35:4,17 36:24 39:1,4 46:13 50:20 51:3 52:16

**A**

53:15
amount 39:9
animal 11:23 12:2,7 13:12
animals 12:12,25 14:4
answer 4:14 7:2 8:20 14:8,19 18:22,23
answering 6:20 46:15
answers 6:2,10 8:13 8:14
Apollo 20:9 30:7
apologize 42:19
appeal 9:18
APPEARANCES 1:19 2:1
appears 13:1
approval 24:7
approve 24:8
approved 24:11
April 42:1,24 43:20 44:18,18
arrangement 54:13
arrangements 54:13
article 38:19 54:15
aside 9:2
asked 39:5,21 40:15 40:18 41:24 43:5 43:25 44:16 45:5 45:13
asking 8:11 35:21 36:6
aspects 17:14
assessing 51:14
assigned 5:12
assist 17:7
associated 10:7 15:21
ASSOCIATES 1:20
Assurance 34:6
attachments 15:21
attack 37:6,10
attention 6:9 17:16
attorney 10:12
ATTORNEY'S 1:15
Attorneys 1:23 2:6 2:10
August 13:4
authority 54:7
available 7:21
Avenue 1:21 2:4
avoid 17:11
awaiting 23:7 48:15
aware 37:17,25

**B**

b 1:13 3:9 36:12
back 14:1 15:3 19:23 27:24 28:22 35:12 39:3 42:19 49:24
ballpark 5:17
Barecki-Brown 1:5 1:23
BARNETT 2:3
base 46:6
based 14:2 24:19 25:23 36:19 42:16 47:20 48:1 50:5
basically 9:8,9 10:6 17:1,3,14 25:23 41:13 47:18
basing 46:8
Bates 14:25 16:9 28:1
beginning 39:3
behalf 7:11
believe 7:7,17 9:11 9:14,20 10:1 13:23 18:1 19:3 20:1 37:7,20 39:14 41:25 47:9 48:14 51:18
best 54:10
beyond 18:15 32:19 35:3,24 49:15 50:15
bit 30:18 38:11
bite 37:19
biting 37:23
bitten 38:2
board 54:12,16
body 50:12
bottom 28:2,12 29:6 40:22 42:22 43:9 43:19 44:16
break 6:13,15
Brewer's 9:12
Brown 1:5,23
Browns' 48:6
Buras 32:14
Bureau 11:11 21:10 23:21 34:9
Bureau's 5:12
Burmaster 1:7 2:6 9:13 12:5,10 14:3 14:9 15:12 20:4 20:17 22:4 23:21 24:12 25:16 26:6 26:17 28:6,9,20 28:25 29:10,17,21 30:4,9,12 31:12

32:15 33:14 37:17 39:6 45:25 46:25 50:10,13,14 51:17
Burmaster's 7:7 9:8 9:15 10:4 11:1 15:16 20:20 21:7 26:4,25 33:23 35:14 36:19 51:15

**C**

C 2:4
called 19:5
cam 50:12
career 11:22 12:1 26:5
case 5:8 7:2,4,6,14 8:20 32:11,14 35:11 45:15,21 48:5,6
cases 48:19
categories 50:6
cause 34:14,16,17
CCR 2:19 54:23
certain 17:13 18:6
CERTIFICATE 54:2
certification 4:11 54:3
certified 2:19 4:19 5:3 54:4,24
certify 54:6
chain 18:10
changed 20:25
Charles 1:21
check 20:3 22:2
checking 27:3
chief's 48:15
chooses 34:24
chose 20:16 26:17
chosen 30:15 31:20
Circuit 9:18 31:23 33:13
citation 50:3
City 1:8,13,15 2:8 2:11 7:10,11,21 8:12,14 15:5 21:4 35:23 36:6
civil 1:5 4:6 10:10 54:15
claim 28:5,24
claims 21:23
clarify 15:18 30:18
classified 50:7
Code 54:15
collected 51:21
comes 8:22
comfortable 52:11
coming 32:11 37:6

command 18:10
commencing 1:16
commit 47:23
committed 32:15 41:17
complaint 28:8,19 29:6,17,20 30:3 31:2 34:5 42:25 43:1,11,15 44:2 44:19 47:3,12,15 48:5 50:5 52:5,9 52:12,23,25
complaints 11:3 21:11,18,21 27:19 30:8,14 31:14 46:23
complete 6:9 54:13
compliance 54:11 54:14
computer 14:17
conclude 50:15,16 52:5
concluded 25:15 53:20
conduct 25:2 26:7
confusing 6:25
consent 9:22 30:25
Constitution 34:12 35:1
contains 27:15,18
contention 36:11
continued 2:1
continuing 36:13
continuous 6:14
contractual 54:14 54:17
control 22:15
conversation 10:21
copy 8:1,4,6
correct 7:13 8:16 12:8 20:6,9 21:17 31:15,16,25 32:2 33:16 39:23 40:8 40:11 41:18 42:6 43:7,16 45:2,3,11 45:12,22 46:10,22 47:5 51:9 54:10
counsel 4:3 54:20
counselings 27:23
count 22:2,3,5
counting 20:4
couple 38:19 39:2 46:18 49:7
court 1:1 2:19 4:20 5:3 6:2 9:24 34:12,16 54:4,17 54:24
courtesy 6:21

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

courtroom 6:3
courts 34:25
crosses 17:13
curious 22:23

**D**

D 3:1,9
D.A 34:15
data 17:4
date 41:1,2 42:23
  42:24 43:10,10
  44:17
day 1:17
days 16:24 38:19
deal 8:21
dealing 7:6
decide 47:21
decree 9:22 30:21
  30:25
defendant 2:6 7:18
Defendants 2:10
  21:4
defendants' 16:12
  16:13
defined 54:15
definition 25:22
denied 33:19
department 11:15
  11:17 17:6 26:21
  30:16 31:21 52:13
deposition 1:13 4:4
  4:16 5:15 7:9 8:18
  8:19,25 9:4 10:14
  10:17 32:12 53:19
  54:14
depositions 5:20
  6:13 7:15
Derek 1:5,23
Derrick 1:7 2:6
described 17:18
designate 16:7,16
  21:2 26:23 32:4
designated 1:14
  7:10 10:25
despite 20:17 26:18
detail 21:18
Detective 9:11
determination
  33:14
determine 53:5
determined 49:19
determining 53:6
different 8:17 17:4
  17:5 39:22
direct 54:17
direction 54:9
discharge 11:18
discharges 10:11

12:25
disciplinary 9:12
  11:1 17:2 23:15
  24:9 48:10
discipline 16:24
  48:16
disposition 23:13
  41:10 42:7 43:17
  44:5
disprove 42:16
DISTRICT 1:1,2
districts 20:25
DIVISION 1:9
document 9:16 12:4
  12:9,13,19,21
  13:7 14:2,16,20
  15:11,14 18:11
  19:1,13,18 21:3
  21:10 24:20 27:18
  30:6
documents 6:16 9:5
  31:11,11
dog 7:7 9:14 35:11
  37:13,18 38:2
  48:6,18,20
dogs 37:3,23
doing 6:18
driven 31:1
duly 5:2 54:7
duty 25:6,9,12 26:8
  26:9

**E**

E 1:7 3:1,1,9,9
early 17:17,20,20
  18:2 36:4
easier 6:21
EASTERN 1:2
either 45:5 51:11
ELDON 1:7
electronically 16:9
Ellsworth 2:19 4:19
  54:4,23
employed 26:20
employee 9:15
  17:13
employment 5:23
  54:16
engaged 33:14
entity 54:13
Esquire 1:21 2:4,8
essentially 11:13
evidence 4:17 15:24
  25:24 42:17 47:19
  47:20 48:1,2
  49:15 51:21
exact 14:12
exactly 11:16 34:21

EXAMINATION
  3:5,6,7 5:5 8:9
  12:20 15:9 16:17
  18:19 21:5 23:19
  24:10,17 26:3,16
  26:24 32:8 33:2
  33:12 35:8 36:17
  37:8 39:4 46:19
  51:5 52:22
examined 5:4
examines 19:18
example 50:9
excessive 28:6,9,12
  28:19,24 29:7,16
  29:20 30:4,8 31:2
  31:16,18
exclude 10:8
Exhibit 3:11,12,13
  3:14,15,16 16:8
  16:16 19:12 21:3
  26:23 32:4 39:18
  40:16 46:21 47:11
  48:25
exonerated 21:24
  27:4 44:8 45:2,10
  47:16,25
expert 32:19
expressed 37:18,23
extra 8:4

**F**

fact 11:25
factor 53:6
fair 48:8
FALON 1:8
familiar 51:16
familiarize 10:19
far 29:2 30:12
fatigue 6:7
fear 37:3,18,23
Federal 4:5
feel 52:11
FERGUSAN 1:8
Ferguson 2:11
file 9:8 14:18 15:12
  15:17 16:3
filed 52:25
files 15:6 33:24
filing 4:10
filter 10:7
final 23:12 53:5
financial 54:13
find 34:16 40:6
finds 34:17
finish 6:19
firearm 10:10 12:25
fired 12:6 46:2,5
firing 11:22 12:1

firm 54:17
first 5:2 13:22
  24:22 25:1 27:5
  28:3 40:13,21
  45:6
fist 29:11
five 30:8,14 31:14
  45:4
flagging 17:23
follow-up 38:24
  49:7
follows 5:4
footage 35:10
force 5:12 6:3 10:9
  14:9,18 15:6,12
  15:16,21,24 16:3
  16:24 17:24 19:19
  20:4,17,18 26:18
  28:6,9,12,20,24
  29:7,16,20 30:4,8
  30:13,15 31:2,13
  31:14,16,17,18
  39:6,10 40:19
  41:8 42:5,11 43:1
  43:14 44:3,7,22
  47:2,7,10 52:4,6,9
  52:11 53:1,4,5,7,7
foregoing 54:8
form 4:13 10:4,5,8
  10:8 21:7,9,20,22
  22:1 23:24 24:1
  24:14 25:18 26:11
  27:1,9,12,16
  32:18 35:18 36:23
  36:25 39:17 40:13
  46:20,22,23 48:17
  48:21 50:19,21
  52:15,17
formal 9:12 21:24
  24:8 48:9 50:7
formalities 4:8,10
format 54:11
forms 27:15 51:21
forth 54:8
forward 34:5,8
  35:20
forwarded 9:17
found 21:23 23:21
  25:4 32:15 34:11
  34:14,25 41:17
  44:11,13 47:15
  48:3
four 12:7 50:6
Fourth 9:18 31:23
  33:3,13
frame 39:10,12
Friday 1:17
front 39:18

FTO 20:20
full 6:9
further 34:20 41:11
  49:18,25

**G**

Garcia 34:7
generate 21:15 47:3
  52:4,9
generated 13:7,9
generates 16:22
  17:6
genitals 38:1
gist 32:25
give 5:9 8:13 22:5
  27:2
given 5:14,18
gives 10:6 15:2
giving 6:8 8:13
go 8:8 11:21,25
  18:23 24:21 27:18
  28:1,17,22 29:5
  29:15,19 35:20
goes 19:23 30:1
going 12:16 14:1
  15:22 18:15 21:2
  26:23 27:17 28:1
  36:7 38:9 42:19
  42:20 46:4 52:11
Gotcha 19:17
granted 33:19
great 6:18
Green 13:25
guidelines 54:12
gun 11:22 12:1,6
  35:15 36:20 45:20
  46:2,5
GUSTE 2:3
guys 38:25 53:14

**H**

H 3:9
handcuffed 29:11
  50:11,13
happen 44:9 48:3
happened 48:2
  49:16,20 53:3
head 20:24
headquarters 18:3
hear 52:6
heard 17:18,19
  38:11 52:3
hearing 23:8 48:15
  48:16
Helou 1:14 5:1,6,11
  8:15 46:17 54:6
HENDERSON 2:3
hereinabove 54:7

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

Page 57

**hereto** 4:3
**Hexagon** 38:4
**hindsight** 46:8
**hired** 9:10
**history** 11:1
**hit** 18:6 50:11,13
**holster** 35:16 36:21
**Homer** 34:7
**HONORABLE** 1:7
  1:10
**HR** 33:23
**huh** 38:9

**I**

**I-A-P-R-O** 9:25
**IA** 10:1 41:4 42:2
**IA-2008-0306-C**
  42:25
**IAPRO** 9:7,8,24
  10:3 14:13 27:13
  27:25 34:4
**identified** 50:2
**III** 2:4
**illness** 6:7
**imminent** 37:5,10
**imposition** 48:16
**incident** 9:13 13:23
  29:14 40:5 41:24
  42:23 43:20 50:2
**incidents** 22:25
  40:3,9,12
**include** 10:9 20:8
  21:20,22
**includes** 15:20
**including** 11:2
  21:22 26:6 42:9
**indicate** 16:2 47:6
  47:14
**indicates** 27:8
**indicating** 9:19
  21:25 29:23 31:4
  33:17 34:22 35:13
  37:15 41:6 51:19
**indirect** 54:17
**information** 16:23
  19:20 27:15
**informed** 54:12
**initiated** 42:24
  43:21 44:19
**inside** 45:24
**Insight** 9:15 16:18
  18:6,9 19:7,12,24
  27:24 34:13
**instructs** 18:22
**Integrity** 5:12 11:11
  21:10 23:20
**interested** 54:21
**Internal** 11:14

**interrogatory** 14:7
**intervention** 17:20
  18:3
**interviews** 51:16
**intimidation** 24:23
  26:7
**investigated** 46:24
  47:15 48:20
**investigates** 11:17
**investigation** 5:13
  9:12 15:22,22
  21:24 41:11 45:6
  45:17 48:10,11
  49:18,25 50:8
  51:22 53:4
**investigations** 21:19
  24:9 36:4
**investigator** 42:15
  47:19 49:14 50:14
**investigators** 24:6
**involved** 9:10 13:17
  48:20
**involvement** 36:4
**involves** 50:2
**involving** 12:25
  18:7
**issued** 23:15
**issuing** 50:3
**items** 27:23

**J**

**James** 2:8
**January** 13:4,24
  19:21
**Jim** 18:22
**job** 20:19 50:4,6
**John** 1:14 5:1,11
  8:15 39:2 54:6
**judge** 6:4 32:14
**Julia** 1:5,23
**July** 13:9,12 30:21
  30:24
**jury** 6:4
**justified** 47:8,10
  52:6,24 53:8

**K**

**K-A-J-A** 13:22
**Kaja** 13:21
**KAREN** 1:10
**Kathy** 2:19 4:19
  54:4,23
**keeping** 34:11
**kind** 10:18 16:22
  31:5
**know** 5:7 6:12 7:4
  8:19 13:11,17
  14:3,8,10,12,13

17:22 18:11,20,25
  19:4 20:11,12,20
  20:22,24 30:23,24
  33:24 34:10,13,15
  34:20 36:9 37:22
  38:4,15,18 41:14
  46:3 53:2,3
**knowledge** 37:24
  38:3 48:24 49:1
  54:16

**L**

**L** 1:6 4:1
**L-O-I-C-A-N-A**
  32:5
**L.L.P** 2:3
**law** 4:7 28:13
**lawsuits** 10:10
**lawyer** 9:3 32:24
**lawyers** 18:20
**lays** 18:12 19:1
**lead** 47:9
**Let's** 39:3 40:12,22
  41:22,25
**letter** 23:15
**Lieutenant** 1:14 5:1
  5:6,11,14 11:11
  12:22 21:6 26:25
  36:18 46:17 54:6
**line** 17:11 33:6
  36:14
**list** 12:25 46:23
**lists** 9:9 46:21
**litigant** 54:18,19,20
**little** 30:18 38:11
**located** 1:16
**lodge** 31:2
**Loicana** 32:1,5 34:2
**long** 10:4,8 14:18
  15:14,17 16:4
  21:16,22 26:25
  27:8,12,14,16
  46:20,22 48:21
**longer** 35:22
**look** 12:4,9,13
  19:11,15 27:17
  34:9 40:5
**looked** 6:16 9:5,7
  9:11,14,16,22,23
  10:3 31:11,24
  47:19,25 51:20
**looking** 32:9,10
  46:9
**looks** 13:3,6 19:21
  31:5
**lot** 52:8
**Louisiana** 1:2,15,16
  1:22 2:5,10 4:20

54:5,15
**Loyola** 2:4

**M**

**M** 3:1
**making** 52:12 54:13
**management** 17:3
**manages** 18:2
**March** 1:17
**matter** 54:18,19,20
  54:21
**mean** 15:20 20:14
  24:3 25:15 35:7
  36:3 37:2 41:12
  49:11,24,25 52:8
  52:24
**means** 25:15 41:14
  42:14,15 44:9,10
  47:18,25 52:24
**meant** 33:19 41:15
  41:16 49:23
**medication** 6:7
**member** 50:1
**memo** 18:12 19:1
**mentioned** 16:18
**merited** 21:24 41:11
  45:7 49:19,25
  50:8
**met** 5:6
**method** 54:9
**mind** 8:8
**misconduct** 25:24
  42:18 44:10 47:24
**moment** 46:11
**monitored** 51:18
**month** 9:1
**moral** 25:2 26:7
**MSB** 18:2

**N**

**N** 3:1,1,1,9 4:1
**name** 5:9 13:22,23
  15:11 34:2
**named** 7:17
**necessarily** 37:2
  52:23
**necessary** 14:16
**need** 17:10 22:2,7
**negative** 17:9
**neglect** 25:12 26:9
**neither** 42:16
**Never** 8:8
**new** 1:9,13,15,16,22
  2:5,8,10,11 7:10
  7:11,22 8:12,14
  38:8 52:12
**nexus** 50:4,5
**NFIM** 49:11

**NFIMs** 27:5
**nine** 19:11,14,15
**NOLA** 38:19
**nondisciplinary**
  27:23
**nonsustained** 49:11
  51:7
**NOPD** 5:21,23 9:11
  9:22 13:1 14:4,10
  19:7,24 20:16
  22:3 23:21 26:5
  26:17 29:9 30:15
  31:20 34:10,24
  37:25 50:1
**NOPD's** 11:13
**normal** 8:18,18
**note** 26:11,11
**notes** 10:16,20,22
**notice** 36:12
**notified** 18:5
**November** 25:10
  40:24 41:2
**number** 14:12,13
  14:25 41:4
**numbers** 22:16 28:2

**O**

**O** 3:1 4:1
**oath** 4:21 5:25 54:6
**object** 18:15 35:18
  36:7 52:15
**objection** 23:24
  24:1,4,16 25:18
  25:20 26:11,11,13
  32:18,21 33:5
  35:3,5 36:10,13
  36:23,25 50:19,21
  51:2,6 52:17
**objections** 4:12
  18:21,24
**obviously** 6:19
**occur** 42:23 43:10
**occurred** 22:8
  25:25 41:1 42:1
  42:18 43:20 44:11
  44:13
**occurrence** 44:17
**October** 42:23
**office** 1:16 11:14
**officer** 2:6 5:21 7:6
  9:13,14 12:11
  13:21,24 14:3,4
  15:16 16:23 21:6
  21:12,16,19 27:19
  29:9,10 34:24
  37:22,25 39:6,10
  39:11 45:24 50:10
  50:12 54:5

officers 11:18,21,25
  13:1,17 17:23
  18:5 34:11
officiated 4:21
Oh 9:21 22:18,23
  28:23
okay 6:23 7:19 8:23
  9:2,23 10:12,20
  10:24 11:10,10
  12:4 13:6 14:1,15
  16:16 18:18 19:4
  19:11,17 20:3,23
  21:2 22:23 23:10
  23:18 26:2 27:10
  27:17 28:14,17,18
  28:22,23 29:15
  30:11 32:7,14
  35:9 36:16 38:7
  38:11,22 39:17
  40:21 41:23 42:13
  43:9,19 44:15
  45:4 47:2 49:2,7
  49:22 51:12,25
  52:3 53:9,10,13
once 7:20
ones 27:10 43:4,24
  51:24
operated 30:20
opinion 31:24 36:6
opinions 54:16
order 17:10
original 54:3,4
Orleans 1:9,14,15
  1:16,22 2:5,8,10
  2:11 7:10,11,22
  8:12,14 52:12
outcome 27:20 51:7
  54:21
outside 24:6 36:11

_____

**P**

P 2:6 4:1
P.M 1:17 53:20
page 3:3 24:22 27:6
  28:3,5,10,11 29:6
  40:22 41:22 54:4
pages 14:18,22
  15:14,17,20 16:4
  19:11 54:8
panel 48:15
paper 8:6
part 4:16 14:10
  30:16 45:16
particular 16:23
parties 4:3 54:20
parts 32:23
party 54:18,19,19
patterns 17:8

pause 22:8
penis 37:19,23 38:1
people 18:7,9
perceiving 45:25
perceptions 46:4
Perdido 1:16 2:9
perfectly 8:19
performance 25:6,9
  26:8
period 53:10
person 11:22 12:2,6
  52:10 54:13
person's 34:2
personal 54:9
personally 35:9,22
  45:20
personnel 33:23
photos 15:25
phrased 31:8
PIB 17:25 18:5 24:4
  24:6,11 25:15
  26:5 30:20,23
  33:23 46:24 48:11
PID 21:15
plaintiffs 1:23 5:8
PMB 1:22
point 48:7
police 15:24,25
  23:16 39:11 52:12
policy 19:7,8 22:3
  30:14 31:13 44:12
  44:14 47:10 48:4
positive 17:9
possibility 50:17
possibly 19:8
potential 48:17
Poydras 1:15
pre-consent 30:21
pre-FIT 53:3
prepare 9:3 10:13
prepared 11:7 54:9
  54:11
preparing 8:25
  10:16 31:24
preponderance
  25:23 42:17 47:20
  48:1 49:15 50:16
present 2:14 14:2
presented 12:24
prevent 6:8
previously 43:25
printed 27:13
printing 27:14
prior 6:12 7:14 30:7
PRO 10:2
proactive 39:11
proactively 17:15
probable 34:14,16

34:17
Probably 37:16
Procedure 4:6
  54:15
proceedings 22:9
produced 15:11
production 15:5
professional 9:6
  34:8,19
professionalism
  24:24 26:8 28:13
profile 14:14
program 16:19,22
  17:2 38:8
programs 17:5
prohibited 54:16
prohibition 54:14
pronouncing 34:3
prove 41:21 42:16
proven 50:15
provide 16:8
public 5:12 11:11
  21:10 23:20 42:24
  43:21 44:19
pulled 35:15 36:20
  45:20
pulls 17:4
purposes 4:6
put 27:25 31:5 34:2
  34:4
putting 45:24

_____

**Q**

QA 34:6
quality 34:6
question 4:13 6:24
  8:12 14:15,17
  21:13 39:14 50:23
questioning 33:6
  36:14
questions 6:10,20
  8:11 35:21 38:25
  40:16 46:15,18
  49:8

_____

**R**

R-H-E-A 13:22
R.S 54:7
range 16:23
rank-initiated
  43:11
RE-EXAMINAT...
  3:5 49:9
read 15:2 32:11
  33:1
reading 4:8
really 8:11,13 37:3
  37:4

reasons 52:8
Receive 42:23 43:10
received 41:1 42:2
  43:21 44:18
recommendations
  23:14
record 5:10 18:24
  31:6
recount 22:11
reference 33:22,24
referring 14:19,22
reflected 20:5 47:4
reflecting 10:21
reflects 19:19
regard 46:24 47:7
regarding 9:13
  25:11 26:7
related 54:20
relationship 54:17
  54:18,19
relationships 54:15
relevant 34:23
relief 33:19
remember 39:7
  51:24
removed 20:21
repeat 21:13 31:9
report 9:15 15:23
  16:22 17:7 20:14
  21:16,16
reported 2:17 54:8
reporter 2:19 4:20
  5:3 6:22 9:24 54:5
  54:24
REPORTER'S
  54:2
reporting 29:10
  54:9,17
reports 15:25 16:1
  21:18
represent 5:8 7:21
representative 1:14
  35:23
required 54:4,12
requires 17:16
  30:25
research 34:1
reserved 4:15
Reserving 38:24
resolved 48:7
response 14:8
responsiveness 4:14
result 49:14
retain 20:16 26:17
  30:15 31:20 34:24
review 24:7 27:2
reviewed 35:10
  36:19 37:11,12,14

reviewing 30:6
reviews 53:4
Rhea 13:21
right 5:6 6:16 7:22
  8:15,22 9:25
  11:15,19,23 12:7
  12:12 14:11 16:2
  16:4 19:20,23
  20:1,13,16 21:16
  23:6 24:18 27:6
  27:13,21 28:15
  29:3 30:3 31:8
  34:3 39:21 40:23
  41:19,22 42:4,13
  44:9 45:19,23
  47:4,12 48:18
  49:4,16,18,20
  50:17 51:8,17
  52:1,6,13,24 53:3
ROBY 1:10
role 5:21 20:21
Roquemore 2:8 3:7
  9:17 10:18,22
  18:14 23:23 24:13
  25:17 26:10 32:17
  33:8 35:2,19 36:2
  36:15,22 46:16,19
  49:3 50:18 51:1
  52:14 53:17
roughly 8:24
RPR 2:19 54:23
rule 22:25 23:3,4
  24:11,23 25:3,16
  26:5 39:22
rules 4:5 23:22
  54:12,15
running 38:15
Russell 13:24

_____

**S**

S 4:1
said/she 51:8,10
save 4:12
saw 38:18 46:7
  50:10
saying 46:22 49:14
says 28:3 29:13
  50:13
SCHLESINGER
  2:3
scope 18:16 32:19
  35:3,24 36:11
seal 54:4
sealing 4:10
search 32:16 33:15
second 13:23 22:5
  23:6 27:2
SECTION 1:6

see 12:21 15:10
  17:15 27:3,10
  28:3,11,12,13,21
  30:7 34:4 37:9
  40:6,12,22 41:22
  41:25 43:12,22
seen 19:9 33:22
  45:14
sent 24:6 34:18
separate 40:1,3
Sergeant 34:7
serious 17:11 53:6
services 54:14
set 54:7
sets 18:4
seven 28:18 29:22
  42:21
Shaun 2:11
Shaw 2:19 4:19
  54:4,23
SHAWN 1:8
shoes 35:14 36:19
  51:15
shooting 7:7 9:14
  20:9 30:7 35:10
  45:15,17 48:6,19
  48:20 51:22
shootings 13:12
short 10:4,8 21:7,9
  21:15,20 22:1
  39:17 40:13 46:23
  48:21
shot 12:12 14:4
  37:13
show 8:1 10:4 14:16
  31:11
showing 37:4
shown 48:21
sick 16:24
side 51:11
sign 37:5,9
signature 54:3
signed 23:16 30:22
  48:12
signing 4:9
sir 6:17 11:4 16:20
  39:8 40:20,25
  41:3 43:3,6,13,23
  44:1,4 46:14
  47:13 49:12
six 28:18 29:22,22
  42:21,21
Sofia 2:15
software 9:7 16:19
  16:21 17:5 38:8
somebody 31:3
Sophcefolia 2:15
sorry 9:21 32:5

39:13 40:14,23
  48:25
sorts 16:24
sought 4:17
sources 17:4
space 10:1
speak 7:10 30:20
specifically 4:9,11
  22:15 51:23
spoke 6:15
spotting 17:8
St 1:21
standard 9:7
Standards 34:8,19
started 19:24 34:21
starting 13:3
starts 21:3 30:1
State 4:20 32:1 54:5
statement 31:8
statements 15:24
STATES 1:1
statute 54:12
stenotype 54:8
step 17:15
stipulated 4:2
Street 1:15,16 2:9
strike 40:14 53:10
striking 29:10
stuff 10:11 16:1,25
subject 29:11 34:5
  35:11 50:11,13
  51:6 52:10
subsequent 13:12
subset 21:11
sufficient 8:20
Suite 1:15,22 2:5
sum 26:4 30:11
  31:10
summarizes 21:11
summary 9:15 17:7
  29:14
superintendent
  23:16 48:12
supervise 18:8
supervision 54:10
supervisor 17:7,10
  17:12,14 34:7
supervisors 17:3
support 51:11
supporting 15:23
supposed 17:12
  34:13,18
sure 5:11 7:16 12:5
  12:10,14 14:21
  18:1 21:15 24:21
  30:19 31:7,10
  33:20 34:3,17
  50:25

sustainable 41:18
sustained 11:2,2
  21:21,21 22:3
  24:22 25:6,11,14
  25:22 26:5,18
  27:20,21 30:13
  31:13 39:24,25
  40:1 41:19,20
  42:12 43:7,8,18
  45:9 47:16,17,18
  47:22 49:17 50:9
  50:16
sworn 5:2 54:7
system 17:17,20,21
  18:1 34:10 38:4

                T
T 3:1,9 4:1,1
take 6:13,14 10:16
  10:22 17:10 22:6
  31:1
taken 1:15 4:5 54:6
talk 10:13,25 11:7
  30:23
talked 9:4 30:12
talking 9:2 22:14,18
  22:25 23:4 35:21
  48:9 49:10
Team 5:13 53:4
technically 27:11
tell 7:1 41:13 49:15
  49:23,24
ten 12:11 19:12,15
Tenders 12:19
terms 9:4 17:23
testified 5:4
testify 54:7
testifying 7:25
testimony 54:5,8
testing 38:20
Thank 23:3 46:14
  49:5
Thanks 46:14
Theodore 2:4
thereof 4:16
thing 42:10
things 11:18 17:24
  44:24 45:4
think 7:16,23 8:6,6
  13:21 17:19 19:6
  27:12 29:24 30:21
  36:1 38:10,18,20
  40:13,21 45:10
  48:14 50:3,6 52:3
Thirteen 20:7
Thirty-one 12:18
three 5:19 28:18
  29:22 42:21

threshold 17:13
thresholds 17:22
  18:4,6,13 19:2
tied 5:22
time 4:15 7:23,24
  21:14 22:6 31:9
  39:10,12 45:25
  46:2,4 48:7 50:23
  53:10
times 12:7 14:9 16:3
  20:5 23:22 37:21
  39:7
title 5:10
today 5:25 6:2,6 7:5
  7:21 8:10,21
  10:25 11:8 41:14
told 10:18
tool 17:3
top 20:24 40:23
  44:17
topic 11:1
total 23:22
track 34:11,13
traffic 50:3
training 19:9
transcribed 54:9
transcript 54:3,10
  54:11,11
true 31:8 52:19
  54:10
truthful 6:9
trying 7:2
two 5:19 12:12
  13:16 14:4 45:10
  45:11
types 17:8

                U
U 4:1
Uh-huh 9:19 21:25
  29:23 31:4 33:17
  34:22 35:13 37:15
  41:6 51:19
ultimately 24:8
unauthorized 40:19
  41:8 42:5,11 43:1
  43:14 44:3,7,21
unconstitutional
  32:16 33:15
understand 5:24
  6:25 7:12,20 8:10
  32:24 33:18 36:9
understanding
  10:24 11:5 54:11
unfounded 21:23
  27:4,10
unit 18:3 34:6
unusual 39:9,16

upheld 33:13
use 14:17 15:6,12
  15:16,21 16:24
  17:23 19:19 30:15
  31:14,16 39:9
  40:18 47:2,7,10
  52:4,5,9,10,25
  53:6
uses 10:9 20:17
  30:13 31:12 53:4

                V
V 32:1
vague 6:25
valid 54:3
various 17:13
vehicle 10:9
verbal 24:23 26:7
version 27:13
VERSUS 1:6
video 35:10 45:15
  46:7,9 50:12 51:8
  51:15 52:1
violated 23:21 25:4
  25:16 34:12 35:1
violation 24:23 25:6
  25:11 41:17 44:12
  44:14 48:3
violations 22:3 23:1
  23:3,4 24:12 26:6
  26:6,19 30:14
  31:13 39:22

                W
wait 6:19 48:22
waived 4:9,11
wanted 31:5
warning 17:17,20
wasn't 38:20 41:16
  41:16,18,19,20
  46:1,1 51:25
  52:25
watched 51:15
way 31:7 41:21
  47:21
we'll 8:21 16:7,8
  33:5 36:9
we're 6:3 14:21
  21:2 26:23 32:9
  32:10 49:10
we've 29:2 30:11
  31:11
weapon 11:19
web 27:13
WELLS 1:10
went 9:6 27:25
William 1:21 5:7
  8:4

City of New Orleans through their designated representative, Lieutenant John Helou
March 10, 2023

witness 4:4,22
  12:19 19:18 22:10
  22:17 23:5,11
  24:2 25:21 26:14
  32:6,22 35:6 37:1
  50:22 52:18
worry 37:18
wouldn't 35:1 39:16
writ 33:18
wrong 28:16

**X**

X 3:1,1,9,9

**Y**

yeah 7:13,23 8:1
  9:20 11:24 12:3
  14:23 15:2,8,19
  17:1,19 19:3,15
  20:1,19 22:6,21
  23:3,4 24:7,19
  25:3,8,10 28:16
  29:13,25 32:25
  33:21 35:12 36:1
  36:9 38:13,14
  39:2,25 40:1
  49:24 51:12,18,23
  52:21
year 13:24 34:21
years 12:11

**Z**

zero 28:18

**0**

0199 40:14
049519 2:20

**1**

101 1:22
10th 1:17
114 1:22
12 3:12 42:23
13 20:5,11,12 39:6
  41:2
1300 1:16 2:9
1340 1:14
14 3:11 21:3 39:18
  42:2
1434 54:15
15 22:12
16 3:13,16 22:12
16th 44:18
19 43:21
1900 1:15
1999 21:4
1st 19:21

**2**

20 22:3,14 23:4
  30:13 31:13
2006 28:6 29:2 30:9
  40:24 41:2,15
  49:24
2006-0664-N 41:5
2007 24:24 28:9
  42:23
2008 28:25 29:2
  30:9 42:24
201 1:21
2010 28:20 29:3
  30:9 42:1,1,2
2010-0673-C 42:2
2012 13:3,4 14:2
  25:5,7,10 29:7
  30:9,22,22 43:10
  43:11
2012-0513-R 43:12
2013 29:17 43:21,21
2013-0398-C 43:22
2015 29:21 30:3,9
  30:24 44:18,19
2015-0230-C 44:19
2016 19:22,24,25
  20:6,13 39:7,15
2020 13:5
2021 7:8 20:9 35:12
2022 13:9,13
2023 1:17
21 3:11
2130 2:5
22 23:7,22 24:11
  26:5 39:22 40:3,9
22-847 1:5
22nd 25:5,7 43:10
23 43:11
23rd 44:18
24th 42:24
26 3:14 40:24
2730 16:9,13
28 42:1
28th 24:24
29 13:4

**3**

3:39 1:17
30 1:13 14:9 30:13
  31:12 36:12 43:20
30(b)(6) 7:24
31 3:12
32 3:15
3339 16:10
3666 28:3,5,15
  40:22
3667 28:22,23 42:20

3670 28:17 41:22
3671 29:5 43:9
3674 29:15 43:19
3676 29:19 44:16,16
3677 29:24 44:17
37:2554 54:7
38 3:13 16:16 19:12
39 3:6
3rd 13:4

**4**

4 1:9
4:39 53:20
42 3:14 19:14,16
  26:23 40:16 46:21
  48:25
45 3:15 32:4
46 3:7,16 16:8
47 48:23
49 3:5

**5**

5 3:5
53 54:8
5E03 1:16 2:9
5UNITED 1:1

**6**

6 1:13 36:12
600 14:18,22 15:17
610 15:14,20 16:3,4
639 2:4

**7**

70112 1:15,16
70113 2:5
70170 1:22
76 30:1
77 30:2

**8**

**9**

9th 25:10