UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DEREK BROWN and<br>JULIA BARECKI-BROWN<br>VERSUS<br>DERRICK BURMASTER,<br>SHAUN FERGUSON,    and the CITY<br>OF NEW ORLEANS | Civil Action No. 22-00847<br><br>SECTION: L         DIVISION: 4<br><br>HONORABLE ELDON E. FALLON<br><br>HONORABLE MAGISTRATE KAREN<br>WELLS ROBY |

**PLAINTIFFS' STATEMENT OF MATERIAL FACTS THAT
PRESENT A GENUINE ISSUE**

Pursuant to Local Rule 56.2, Plaintiffs Derek and Julia Brown submit the following statement of material facts that present a genuine issue.

The following material facts that Defendant Officer Burmaster allege to be uncontested in his statement of uncontested material facts are not only contested, but contradicted by the evidence such that partial summary judgment on liability should be granted in Plaintiffs' favor.

1. [Burmaster] makes "kissing" noises as he approaches to draw out any animal.

    *This is contested to the extent that it implies that Burmaster makes such noises when he is in front of or at the gate of a residence that he is approaching. He does not do that, but instead makes these noises while passing the neighboring house next to the target residence.* **Ex. B** *(deposition of Officer Roussel), pp. 58-61 ("Q. He was in front of the wrong house when he made [the "kissy sounds"], right? A. Correct.");* **Ex. F***, at 00:20.*

2. [The 911 complainant] indicated that the house was 1420 Felicity Street, a multi-family house, and indicated that the disturbance came from the downstairs apartment.

1

*This is technically contested in that the Browns' home is not a "multi-family house," but is rather a single family home with an attached downstairs apartment in which the Browns' personal friend was staying in at the time of the incident discussed herein. **Ex. C**, pp. 15-16.*

3. As Officer Burmaster neared the house, he made "kissing" noises to draw out any dogs.

   *This is contested to the extent that it implies that Burmaster made such noises when he was in front of or at the gate of the Browns' residence. He did not do that, but instead made these noises while passing the neighboring house next to the Browns' residence. **Ex. B** (deposition of Officer Roussel), pp. 58-61 ("Q. He was in front of the wrong house when he made [the "kissy sounds"], right? A. Correct."); **Ex. F**, at 00:20.*

4. There was no response and he also noticed that there was nothing in the yard to indicate dogs were present.

   *Burmaster failed to observe that the iron fence enclosing the property was reinforced at the bottom with a mesh screen to contain the Brown family's small puppy (Apollo was so small that he could fit between the iron fence posts). Exhs. D & F.*

5. The dogs were not behaving in a friendly manner but rather were aggressive.

   *This contested. At no time did Apollo bark, growl or vocalize in any way before Officer Burmaster shot him. At no time did Apollo jump, lunge or bear his teeth at Burmaster. Apollo's tail was wagging. Ex. G, pp. 8, 10-11; Ex. B, p. 46, 74-75; Ex. D, at 1:56; Ex. H, pp. 83-85. Apollo did not continue to advance towards Burmaster after the first shot. Ex. G, p. 15; Ex. H, pp. 83-84.*

6. Officer Burmaster was certain that the dog coming at him was going to bite him as it was coming in a threatening manner.

#101139164v1

> *This contested. At no time did Apollo bark, growl or vocalize in any way before Officer Burmaster shot him. At no time did Apollo jump, lunge or bear his teeth at Burmaster. Apollo's tail was wagging. Ex. G, pp. 8, 10-11; Ex. B, p. 46, 74-75; Ex. D, at 1:56; Ex. H, pp. 83-85. Apollo did not continue to advance towards Burmaster after the first shot. Ex. G, p. 15; Ex. H, pp. 83-84.*

7. He realized he did not have time to escape out of the gate as Officer Roussel did nor was he able to find any cover.

> *This is contested. At the moment Bucho first barked, Officer Roussel, who was "standing right next to" Burmaster, tapped Burmaster on the shoulder for the purpose of communicating to him that they should retreat out of the pedestrian gate that they just walked in through in response to the barking. After doing so, Roussel exited the pedestrian gate leading back to the sidewalk and held it open for Burmaster to do the same because Burmaster was "close enough to also exit in time." Ex. B, pp. 48-52. Burmaster chose not to exit the pedestrian gate with Roussel, and instead held his ground. Moreover, there was a table with chairs right in front of Burmaster that he could have used to create a barrier between himself and Apollo. And a second even larger unlocked vehicle gate was also right behind Burmaster that he could have retreated through. Ex. D, at 01:34; 01:52.*

8. He had to defend himself so he drew his gun and fired three shots at the smaller of the two dogs which was coming straight for him.

> *This is contested. He did not have to defend himself by using lethal force on a 22 pound puppy. He could have used his Taser, used his baton (if he had been carrying one as mandated by policy, or most obviously, simply kicked Apollo. See Exhs. B, C, H, & I. Not one expert or 30(b)(6)*

3

*designee of the Defendants stated that they would have used lethal force in this situation. Exhs. Q, R & S.*

9.  Sgt. Duplantier testified that Officer Burmaster had no viable alternative.

*This is a misrepresentation of Duplantier's deposition testimony. Rather, when asked whether he would have shot Apollo in the same situation, Duplantier testified that he was "more likely to ... try and kick at the dog." Ex. S, p. 145. Therefore, contrary to Burmaster's representation in his motion, Burmaster's designated expert and the City's 30(b)(6) designee on training flat out admitted that a "viable alternative" would have been to simply kick Apollo. And all of the other designated experts in this case, as well as Burmaster's partner Officer Roussel, completely agree with this.*

Plaintiffs further incorporate by reference herein their Statement of Uncontested Material Facts filed in conjunction with their Motion for Partial Summary Judgment on Liability (R. Doc. 110-2) and assert them all in response to Burmaster's alleged Uncontested Material Facts.

Respectfully submitted,

| | |
|---|---|
| */s/Tarak Anada* | */s/William Most* |
| TARAK ANADA (La. Bar No. 31598) | WILLIAM MOST (La. Bar No. 36914) |
| JONES WALKER LLP | DAVID LANSER (La Bar No. 37764) |
| 201 St. Charles Avenue, Ste. 4900 | MOST & ASSOCIATES |
| New Orleans, LA 70170 | 201 Saint Charles Ave., Ste. 114 #101 |
| Telephone: (504) 582-8322 | New Orleans, LA 70170 |
| Facsimile: (504) 589-8322 | Tel: (504) 509-5023 |
| Email: tanada@joneswalker.com | Email: williammost@gmail.com |

**Counsel for Plaintiffs Derek Brown and Julia Barecki-Brown**