# New Orleans Police Department
Public Integrity Bureau
Force Investigation Team
Administrative Shooting Investigation

To:         Captain Sabrina Richardson                                    Date: 8-4-2021
            Public Integrity Bureau

From:       Detective Shannon Brewer
            Force Investigation Team

Subject:    ASI #2021-03
            Administrative Shooting Investigation, Officer Derrick Burmaster, F.O.B. 6th
            District

## Event Summary

On Saturday, April 10, 2021, at or about 9:42 p.m., Officer Derrick Burmaster was assigned regular working to the 6th District B platoon. Officer Burmaster responded to a disturbance call for service in the 1400 block of Felicity Street. Officer Burmaster arrived on scene and met with the complainant. The complainant stated he observed a male and female arguing in front of 1420 Felicity Street. The complainant pointed to the lower apartment at 1420 Felicity Street as the location of occurrence.

Officer Burmaster and Officer John Roussel responded to 1420 Felicity Street and entered the front yard through an iron gate. Officers Burmaster and Roussel proceeded toward the lower apartment at 1420 Felicity Street. As the officers approached, they heard the sound of dogs barking. Officer Roussel turned and ran to exit the front yard, Officer Burmaster remained in the yard and unholstered his weapon. Officer Burmaster fired his weapon at the dog, striking and fatally wounding the dog. Officer Burmaster exited the front yard and notified dispatch of the firearm discharge.

The animal was stored at Metairie Small Animal Hospital for the night, the picked up by Louisiana Society for the Prevention of Cruelty of Animals (LASPCA) and taken to LSU's Veterinary School of Medicine for necropsy. Officer Burmaster was placed on reassignment and remained assigned to the 6th District detailed to desk duties.

EXHIBIT G

### Notifications

On Saturday, April 10, 2021, at 9:57 P.M., Sergeant Helou, unit 2141 of the Public Integrity Bureau's Force Investigation Team (PIB FIT) received a telephone call from the 6th District Assistant Commander Lieutenant Kevin Burns, Jr. Lieutenant Burns informed Sergeant Helou of a critical firearm discharge in the 6th District, specifically in the 1400 block of Felicity Street. Officer Derrick Burmaster reportedly discharged his firearm at a dog, striking the dog. Additionally, 6th District Officer John Roussel reportedly received an injury during this incident, possibly from shrapnel. Officer Burmaster was sequestered on-scene; Officer Roussel was transported to the hospital, later learned to be Tulane Medical Center.

Upon receipt of this information, Sergeant Helou make the following notifications:

10:01 P.M.-Sergeant Clinton Givens (PIB FIT Criminal Unit Supervisor) informed Sergeant Helou that Sergeant Debra Pruitt would be the lead criminal investigator.
10:03 P.M.- Sergeant Helou notified Detective Shannon Brewer and assigned Detective Brewer as the lead administrative investigator.
10:10 P.M.- PIB Deputy Chief Arlinda Westbrook was notified.
10:11 P.M.-PIB Captain Sabrina Richardson notified.
10:20 P.M.-NOPD Command Desk-Sergeant Helou requested crime lab and a representative form NOPD's range staff to the scene.
10:23 P.M.-Federal Consent Decree Monitor Jonathan Aronie notified.
10:25 P.M.-Federal Consent Decree Monitor Chet Epperson notified.
10:30 P.M.-Independent Police Monitor Susan Hutson notified.
10:31 P.M.-Officer Demetrius Smith, assigned to the City Attorney's office was notified.

### Force Investigation Team Response

Detective Shannon Brewer was notified of the incident by Sergeant John Helou and arrived on scene at 10:30 P.M. Upon arrival on scene, Detective Brewer assumed the role of lead administrative investigator.

### Lead Investigators

Detective Shannon Brewer was assigned to conduct the Administrative Shooting Investigation. Sgt. Debra Pruitt was assigned to conduct the Criminal Shooting investigation. This investigation was documented under ASI #2021-03 and NOPD Item D-13802-21.

## Involved Officer

| | |
|---|---|
| Senior Police Officer Derrick Burmaster | Badge 10222 |
| Employee Identification number | 12743 |
| Duty Assignment | FOB 6th District |
| Personal Information: | Race: White |
| | Sex: Male |
| | Date of Birth: |
| | Age: 51 years old |
| Uniform Status: | In uniform, regular working |
| Appointed to NOPD: | August 13, 2000 |
| P.O.S.T. Firearm Certification: | February 3, 2021 |
| Body Armor Equipment: | Issued, not worn at the time. |
| BWC: | Yes. |
| Previous Serious Use of Force: | NOPD Item D-20860-07 |
| | April 19, 2007, No injuries |
| | Intentional |
| | On Duty |
| | No reports available on this incident |
| | |
| | NOPD Item B-12388-09 |
| | February 11, 2009 |
| | Intentional |
| | On Duty |
| | In uniform |
| | Other Officer Struck by Perpetrator |
| | No reports available on this incident |
| | |
| | NOPD Item A-01212-12 |
| | January 1, 2012 |
| | Intentional |
| | On Duty |
| | In Uniform |
| | Discharged weapon at Dog. |

The incident occurred at 1418 St. Ferdinand. Officer Burmaster was advised by a crime lab technician who was processing a scene at the location, that there were dogs in the yard and the crime lab technician was afraid. Officer Burmaster relocated to the yard to tell the

owners to detain the dogs, when the dog made a Motion toward Officer Burmaster, the officer grabbed his crotch with his left hand and unholstered his weapon. Officer Burmaster fired his weapon twice fatally wounding the dog.

NOTE: There were no disciplinary investigation associated with the above referenced Use of Force.

PIB Short Form:

**2020:**
March 12, 2020
Allegation: Neglect of Duty (1) day suspension.
The officer failed to conduct a field narcotics test.

Professionalism: Letter of Reprimand.
The officer was involved in a verbal argument with a citizen on a traffic stop.

**2021**
July 14, 2021
Allegation: Professionalism (public initiated) Pending

July 16, 2021: Professionalism (public initiated) Pending
The July 16th complaint was made a duplicate of the July 14th complaint. The complainant stated the officer told him his police report was a low priority and refused to allow the complainant to change the telephone number on the report.

| | |
|---|---|
| Attorney Involved: | Donovan Livicarri |
| Injuries: | Officer Roussel sustained an injury to the left forearm, possibly from shrapnel. Animal fatally wounded. |
| Photos Taken: | NOPD Crime Lab Photographed the scene |
| Public Safety Statement: | Sergeant Clarence Mitchell obtained a Public safety statement from Officer Derrick Burmaster. |
| Duty Status following CFD: | Officer Burmaster was placed on Reassignment and remained assigned to the 6th District. |

## Public Safety Statement

*A public-safety statement is a statement by an involved or witness officer that describes the type of force used, the direction and an approximate number of shots fired by the involved officer (s) and the suspect, the location of any injured persons, the description of any outstanding suspects, and the direction of the suspect's flight. The public safety statement may also include the amount of time elapsed since the suspect was last seen, whether the suspect is armed, any other information that could assist in the apprehension of outstanding suspects, descriptions of any victims or witnesses, and a description and location of any known evidence. The public safety statement may also include any other information needed to ensure public safety.*

*Public Safety Statement to Sergeant Clarence Mitchell*

*On Saturday, April 10, 2021, Sergeant Clarence Mitchell unit 610B of the sixth (6th) District, responded to 1420 Felicity Street. Sergeant Mitchell met with Officer Burmaster regarding the critical firearm discharge. Officer Burmaster stated he fired his weapon an unknown number of times and the incident occurred only in the front yard of 1420 Felicity Street. Sergeant Mitchell sequestered Officer Burmaster to await the Force Investigation Team arrival on scene.*

## Scene Description

The location of the Officer Involved Shooting was 1420 Felicity Street between Prytania Street and Coliseum Street in the parish of Orleans. 1420 Felicity Street is a two-story wood frame structure, one house from the corner of Coliseum Street. There is an iron gate securing the front yard of the residence, with brick steps directly in the entrance. There are three (3) brick steps directly in the entrance, with a raised brick platform leading to the exterior stairs to the upstairs apartment. There is a multi-structure residence with multiple apartments at the corner of Coliseum and Felicity Street, which is to the right of 1420 Felicity Street. There is a residence (double) to the left of 1420 Felicity Street. There is a brick apartment building directly across the street from 1420 Felicity Street.

## Civilian Witness

There were no civilian witnesses at the time of the shooting.

## Summary of Officer Derrick Burmaster's Criminal Statement

The beginning of the interview captured Officer Burmaster explaining he wanted to read his force statement. Sergeant Pruitt interjected by introducing all members present for the Criminal Statement. Sergeant Pruitt advised Officer Burmaster of his Miranda Rights via form 230. Officer Burmaster affirmed he understood his rights and answered, yes and no when asked if he was willing to talk to Sergeant Pruitt. Officer Burmaster followed up by stating he was willing to talk to Sergeant Pruitt. Officer Burmaster signed for 230 affirming he was advised of his rights. Before beginning the interview, Sergeant Givens and Representative Livicarri stepped out of the interview and returned a short time later.

Officer Burmaster stated on Saturday, April 10, 2021, he was assigned to the New Orleans Police Department's Sixth District, B-Platoon (2:25PM-11:00PM) and was attired in a class B uniform. Officer Burmaster was outfitted with a functioning BWC, and his vehicle was outfitted with a functioning front ICC (rear camera not functioning).

Officer Burmaster stated he and Officer John Roussel were dispatched to the 1400 block of Felicity Street to address a fight. The dispatcher's information stated there was an argument at the location. Upon arrival, Officer Burmaster spoke to a witness, suspected 911 caller. The witness stated there was a woman screaming across the street and there were items being broken. Then man suspected the incident he witnessed was domestic and pointed to the residence at 1420 Felicity Street, bottom left corner residence.

Sergeant Pruitt asked Officer Burmaster to explain what happened next. Officer Burmaster opened his phone and began reading from the phone. Officer Burmaster read from his phone, Sergeant Clinton Givens stopped Officer Burmaster and noted he would be able to read his statement but directed Officer Burmaster to answer the specific questions asked by Sergeant Pruitt. Officer Burmaster and Representative Livicarri stood from their seats. Officer Burmaster continued to say he prepared the document and spent a lot of time on the document commenting that investigators did not want to hear it.

Sergeant Givens advised Officer Burmaster he was not in control of the interview and needed to follow the format provided by the investigator. Sergeant Pruitt asked Representative Livicarri and Officer Burmaster to continue if that is what they wanted to do. As Officer Burmaster continued to read his statement, Captain Sabrina Richardson and Sergeant Sam Davis interjected. Captain Richardson advised he could not read his force statement for the Criminal Investigation because it was part of the Administrative Investigation. Captain Richardson asked Officer Burmaster if he as reading his force statement. Officer Burmaster affirmed he was reading his force statement and felt comfortable doing so.

Representative Livicarri stated if Officer Burmaster chose to read his force statement for the Criminal Interview, that was his choice. Captain Richardson wanted to make clear for the record Officer Burmaster willingly read his force statement as part of his Criminal Statement.

Sergeant Pruitt and Sergeant Givens returned to the conference room, and it was made part of the record they understood the force statement was reserved for the administrative investigation and wished to enter the information into the criminal investigation.

Sergeant Pruitt asked Officer Burmaster to explain what happened in his own words. Officer Burmaster stated the residence he was going to was described as an apartment surrounded by a gate. Officer Burmaster stated whenever he approaches a residence with a gate, he checks for dogs. One method used is to make kissing noises which was heard on the BWC. Officer Burmaster stated there was no response to the kissing noises and verbally stated on the BWC, no dogs.

Noting the residence was an apartment complex, it there were any dogs' it would have to be an even-tempered dog that would get along with others. Officer Burmaster stated the apartment complex should not have had any vicious animals. The officer described a vicious animal as a dog that would attack without provocation. Officer Burmaster described the two dogs as vicious and noted the City of New Orleans required a vicious animal, because they possessed a dog that would attack without provocation inside the common area of an apartment complex. Officer Burmaster stated there were no beware of dog sign, no food or water bowls and no response to the kissing noises.

After speaking to the witness of the disturbance, Officer Burmaster stated he was compelled to go beyond the fence. If he did not investigate, he would have been a coward and it would have be in neglect of duty as per responding to call for service. Officer Burmaster stated as he was inside that fence, he heard large dogs aggressively barking. The dogs came from the upstairs residence down the stairs towards the officer. Officer Burmaster stated he could not jump over the fence because there were spikes on top and would have hurt himself. Officer Burmaster stood up from his seat and stated he had the right to come to work and not get bit by a dog. Sergeant Pruitt instructed Officer Burmaster to have a seat.

Officer Burmaster stated Officer Roussel ran and was able to elude the dogs because he was closer to the gate. Officer Burmaster stated Officer Roussel was a few feet from him but was really close to the gate opening. Sergeant Givens asked Officer Burmaster to describe the attack. Officer Burmaster stated the dogs ran up on him as they were barking and thought the dogs were going to bite him. Officer Burmaster stated there were two dogs and stated the dogs ran up to both he and Officer Roussel. The larger of the two dogs ran

toward Officer Roussel and the smaller of the two ran up to him. The large dog ran from the staircase straight to the gate opening toward Officer Roussel. Officer Burmaster stated he was afraid the larger of the two dogs was going to attack since Officer Roussel made it out of the gate.

Sergeant Givens asked Officer Burmaster to describe the attack, opposed to what he thought was going to happen. Officer Burmaster stated the dogs were barking while running toward him. Sergeant Pruitt followed up by asking when the officer first heard the dogs. Officer Burmaster stated several seconds after entering the yard he heard the dogs. Upon first entering the yard, Officer Burmaster stated he thought how nice it was there were no dogs. Sergeant Pruitt asked why he would think how nice it was there were no dogs.

Officer Burmaster stated when he trains officers or when he responds to call like that, he tells them the same thing. Be aware of the dogs and about the dangers of animals when responding to calls. Sergeant Pruitt asked Officer Burmaster where he was when he made kissing noises, he responded a couple feet from the house. Officer Burmaster stated the dogs should have heard him as they came from the second-floor balcony. Sergeant Pruitt advised the kissing noises were made outside of the gate before entering the perimeter of the property and asked if he thought his noises were premature. Officer Burmaster stated his noises were loud and was at the gate when he made them. No further kissing noises were made.

Officer Burmaster stated he thought the dogs were inside and let out by the owners. Had the dogs been on the porch they would have immediately come down. Officer Burmaster continued to say the dog's owners were irresponsible and should be the ones being questioned. Sergeant Pruitt continued with her prepared questions.

Officer Burmaster the only way to avoid getting bit, going to the hospital, and catching rabies from the unknown dogs to take his gun out. Officer Burmaster stated one dog looked to be a pit bull and the second dog was a small unknown breed.

Captain Richardson advised Officer Burmaster to answer the questions asked by the Sergeant.

Officer Burmaster stated that dog that attacked him, was running at a quick pace and the officer believed the dog was going to bite him. He further stated the dogs were barking but was not sure which or if both the dogs were barking. Officer Burmaster stated the dog did not make physical contact with him but would have if he didn't shoot it. The dog was a couple feet away when he deployed his weapon. Officer Burmaster stated he gave the verbal command of "get back" but later thought it was dumb because dogs don't speak English.

Officer Burmaster stated he was concerned the dog was going to bite his penis. Once the officer shot the small dog, the large dog retreated. Officer Burmaster stated he perceived the large dog to be a threat as well. When the large dog retreated, Officer Burmaster was able to exit the yard and let the dispatcher know he fired his weapon. As to the visibility of the yard, Officer Burmaster described it a s poor because it was dimly lit. Officer Burmaster found the scene safe to deploy his firearm as it was the two officer and the two dogs.

Officer Burmaster stated when he fired his weapon, he fired three times at the smaller of the two dogs. The smaller dog was the dog closest to Officer Burmaster and did not fire at the larger dog because immediate retreated. Officer Burmaster stated after firing three times, the dog was laid out. The dog continued in a forward motion toward Officer Burmaster after the first and second shots. Following the shooting, Officer Burmaster encountered the owners were upset and asked why the officer shot their dog.

Sergeant Pruitt asked if an investigation was completed for the domestic incident they responded to. Officer Burmaster stated he was told to move away from the residence and thought that FIT was going to investigate the call for service. Officer Burmaster stated he did not know of any investigation into the original incident.

Officer Burmaster listed the following equipment carried on his person: handgun, taser, handcuffs, Narcan. Sergeant Pruitt asked about the officer's baton. Officer Burmaster stated he was not carrying a baton because he carried the aforementioned items. Sergeant Pruitt mentioned hands and feet as part of what may be used during a force incident. Officer Burmaster stated he did not use any other tools because he would have been bit.

Officer Burmaster stated he received training on encounters with dogs. Officer Burmaster stated that was why he made kissing noises, checked for food, beware of dog signs, and water bowls. Officer Burmaster stated as it related to dog behavior, he learned dogs were territorial and would protect their space. Officer Burmaster stated his objective in shooting the dog was to stop the threat of a battery from the dog.

### Administrative Statement of Officer Derrick Burmaster

On Tuesday, June 15, 2021, at 2:00 P.M., Detective Brewer obtained an audio/video recorded administrative statement from Officer Derrick Burmaster at the Public Integrity Bureau, 1340 Poydras Street, Suite 1900. Officer Burmaster was represented by his private counsel, Donovan Liviccari. Present during the interview were Sergeant Candice Preston (PIB). Detective Brewer previously provided Officer Burmaster with a New Orleans Police Department Notice to Render a Statement Form via email. This form contained Officer Burmaster's rights and responsibilities as an employee under investigation.

Detective Brewer advised Officer Burmaster the investigation was administrative in nature and advised him of the Police Officer Bill of Rights, Louisiana Revised Statute 40.2531. Detective Brewer also advised Officer Burmaster of Chapter 52.1.1, titled "Misconduct Intake and Complaint Investigation," of the NOPD's Operations Manual. This chapter required all Department employees to answer questions in official inquiries honestly and truthfully, and that failure to comply would result in termination. Officer Burmaster stated he understood his rights and then rendered a statement at which time he relayed the following:

Officer Burmaster began by stating he has been a New Orleans Police Department Officer for twenty-one years and has responded to dog calls and houses where dogs were present. Officer Burmaster stated he has been bitten several times by dogs that range in size from small to large. Officer Burmaster stated he is tired of being bitten by dogs and tired of going to the hospital for treatment for dog bites. Officer Burmaster stated there is an ongoing problem in the city where people are negligent with their dogs. Officer Burmaster stated because of these issues, when he is responding to calls for service at a location, he will look for food and water bowls, "dog mess" in the yard, and also the officer will make a "kissing" noise, before entering the yard. Officer Burmaster stated if an animal would have responded to the "kissing" noises, he would have explored other options before entering the gate. Officer Burmaster stated when training other officers, he always takes the time to go over safety measures with the officers.

Officer Burmaster entered the front yard first, with Officer Roussel following behind. Officer Burmaster stated he was not sure if the dog was causing the female to scream and break things at the location. Officer Burmaster stated he heard the sound of a large dog barking. Officer Burmaster stated the barking did not sound like a Chihuahua or Shih Tzu, or Pekinese puppy. Officer Burmaster stated, all of a sudden, what looked like 80 pounds of dog came running down the steps at him. Officer Roussel took off running because he was closer to the gate, while Officer Burmaster remained in the yard. Officer Burmaster stated he was about 25-30 feet inside the fence when he heard the dogs barking. Officer Burmaster stated he removed his weapon from the holster when he heard the dogs barking. Officer Burmaster could not recall if he had sight of the dogs when he removed his weapon from the holster. Officer Burmaster stated he heard at least one dog barking and believed there was an imminent threat to his safety. Officer Burmaster believed he was in danger of receiving a battery. Officer Burmaster stated because the dogs were barking and running towards him, he believed they were dangerously aggressive. Officer Burmaster stated the larger dog ran towards Officer Roussel, while the smaller dog ran towards Officer Burmaster. Officer Burmaster stated he fired his weapon at the smaller dog, striking the smaller dog because it was closer to him. Officer Burmaster stated the smaller dog did not harm him, only his reputation.

Officer Burmaster stated he did not want to respond to the call for service due to it being late in his shift. Officer Burmaster stated he likes to get off from work on time and being involved in a use of force would cause him to get off work late. Officer Burmaster stated he has previously been bitten by small dogs, on two occasions while on duty.

Officer Burmaster stated he did not attempt to use any less lethal methods such as CEW due to the CEW being a one shot, and if he missed the dog, he believed he would not have time to reload. Officer Burmaster stated he believed he would suffer a permanent disfigurement due to the dog bite; Officer Burmaster believed the dog would bite his genitals and cause serious physical injury.

Officer Burmaster stated he was not wearing his NOPD issued body armor at the time of this incident.

**END STATEMENT**

## Summary of Officer Burmaster's BWC

At the 6:11 timestamp, Officer Roussel arrived on scene. Officer Burmaster briefed Officer Roussel on the information from the complainant. Officer Roussel and Burmaster approached 1420 Felicity Street. At the 6:43 timestamp, Officer Burmaster passed 1422 Felicity Street, Officer Burmaster made a "kissing" sound. At the 6:47 timestamp, Officer Roussel could be heard saying "no dogs". At the 6:50 timestamp, Officer Roussel entered the front yard of 1420 Felicity Street through the gate, followed by Officer Burmaster. At the 7:04 timestamp, Officer Burmaster could be heard saying "oh shit". In the background, you could hear the sound of dogs approaching. At the 7:06 timestamp, Officer Roussel exited the front gate, while Officer Burmaster drew his firearm. At the 7:07 timestamp, Officer Roussel could be heard saying "get back, get back". Officer Roussel is observed exiting the front gate (via Officer Burmaster BWC) with the larger dog approaching and barking. The larger dog remained at the front gate of the yard. At the 7:08 timestamp, (via Officer Burmaster BWC), in the left corner of the BWC video, another dog approached Officer Burmaster. Officer Burmaster aimed his weapon in the direction of the second dog and discharged 1 shot in the direction of the second dog. At the 7:09 timestamp, Officer Burmaster fired a second shot, the second dog is observed to the right side of Officer Burmaster with the dog's head facing downward. Officer Burmaster fired a third shot shortly after. The larger dog returned to the steps, and Officer Burmaster exited the front yard. Officer Burmaster shouted "it's the police". Officer Burmaster apologized to the dog owner repeatedly. Officer Burmaster then stated to the dog owner "why did you let the dogs out". The dog owner is observed crying, then asked Officer Burmaster to leave.

## Summary of Officer Roussel's BWC

At the 2:01 timestamp, Officer Roussel arrived on scene. Officer Roussel exited the police unit and Officer Burmaster briefed him regarding the information from the complainant. At the 2:21 timestamp, Officer Burmaster made a "kissing" sound while passing 1422 Felicity Street. At the 2:29 timestamp, Officer Roussel entered the front gate of the 1420 Felicity Street, followed by Officer Burmaster. Officers Burmaster and Roussel approached the bottom apartment of 1420 Felicity Street. At the 2:43 timestamp (via Officer Roussel BWC), Officer Burmaster stated "of shit", the sound of dogs approaching could be heard in the background. Officer Roussel turned to run toward the front gate, while Officer Burmaster drew his firearm. At the 2:46 timestamp, Officer Roussel exited the front gate while stating "get back, get back". At the 2:48 timestamp, Officer Roussel checked his right forearm. At the 2:51 timestamp, a female is heard screaming in the background. At the 2:53 timestamp, Officer Burmaster is heard saying "it's the police". At the 2:55 timestamp, Officer Roussel rubbed his right forearm. At the 15:03 timestamp, EMS arrived on scene and treated Officer Roussel. EMS removed an unknown object from the right forearm of Officer Roussel. EMS advised Officer Roussel to seek treatment from a doctor as soon as possible to remove any remaining objects in the forearm and to prevent infection.

## **Firearms Report**

On Wednesday, April 28, 2021, The Firearms Analysis was completed, and the results were as follows. Officer Burmaster's Glock model 17, Gen 5, 9mm was test fired and the fired cartridges were retained as reference and compared to the following collected evidence.

Three fired 9mm caliber cartridge casings were collected from the scene and were found to have been fired from Officer Burmaster's firearm. Three unknown caliber copper jacket fragments, fifteen unknown caliber lead fragments, and one unknown fragment were collected from Apollo's necropsy. No information could be obtained from the fragments collected in the necropsy.

## **Evidence & Firearms Recovered/Processed**

On Saturday, April 10, 2021, at 11:14 pm, Technician L. Robbins 5132 and Technician A. Sparacino 5135 of the Scientific Criminal Investigation Division (Crime Lab), arrived on scene.

The below-listed items were collected under NOPD Item D-13802-21 on April 10, 2021. Evidence collected and processed were located at 1420 Felicity Street.

### Evidence collected at 1420 Felicity Street.

**Exhibit 001-** One (1) WIN 9mm Luger spent casing. The item was later processed for DNA. Evidence to be retained by NOPD Central Evidence and Property.

**Evidence 002-** One (1) WIN 9mm luger spent casing. The item was later processed for DNA. Evidence to be retained by NOPD Central Evidence and Property.

**Evidence 003-** One (1) possible Blood Sample

The firearm is an NOPD department issued duty weapon. The weapon was examined by Officer Stephen Fox and determined to have no malfunctions or defects.

On Tuesday, April 13, 2021, Detective Brewer received the results for Officer Burmaster. The test results, including the breathalyzer sample, were negative for any prohibited substances or alcohol. On Monday, June 7, 2021, Detective Brewer received the results for Officer Burmaster substance abuse test. The results concluded Officer Burmaster was negative for any prohibited substances.

### Scientific Analysis Report

| Specimen | Sample Description |
|---|---|
| #01 | One (1) Glock, model 17 Gen 5, 9mm caliber semi-automatic pistol, serial number NO-2261-PD- received by T. Koelling form Officer. |
| #02 | One (1) fired 9mm caliber cartridge case-scene/1420 Felicity Street. (from sidewalk). |
| #03 | One (1) fired 9mm caliber cartridge case-scene/1420 Felicity Street (from front yard). |
| #04 | One (1) fired 9mm caliber cartridge case-scene/1420 Felicity Street. |
| #05 | Three (3) unknown caliber copper jacket fragments-recovered during the Necropsy of K-9 Apollo. |
| #06 | Fifteen (15) unknown caliber lead fragments-recovered during the necropsy Of K-9 Apollo. |
| #07 | One (1) unknown fragment-recovered during the necropsy of K-9 Apollo. |

NOTE: The unknown fragment removed from the right forearm of Officer John Roussel was dropped on the ground by EMS and could not be located.

## Results

The Glock pistol, specimen #1, was test fired using material from the laboratory collection and was operable as received. Reference fired cartridge cases obtained were microscopically compared to the fired 9mm caliber cartridge cases in specimens #2 through #4. The examination revealed specimens #2, #3, and #4 possessed the same class characteristics, as well as sufficient reproducing individual characteristics to one another and to the test fired material from specimen #1 and were determined to have been fired in the Glock pistol, specimen #1.

No information could be obtained from the unknown caliber copper jacket fragments, lead fragments, and unknown fragment in specimen #5, #6, and #7.

## Academy Staff Involvement

On Saturday, April 10, 2021, at 12:00 A.M., Officer Stephen Fox of the New Orleans Police Department Firearms Range Staff, arrived on scene. Officer Fox determined Officer Burmaster was in possession of fourteen (14) live rounds. Sergeant Helou and Officer Fox inspected Officer Burmaster spare magazines. Officer Burmaster was in possession of (2) spare magazines with (17) live rounds each. Sergeant Helou and Officer Fox inspected Officer Roussel magazines. Officer Roussel was in possession if (3) magazines with (17) lives each. Officer Fox determined Officer Roussel did not discharge his weapon during this incident. All consistent with NOPD issued ammunition. Officer Fox replaced Officer Burmaster's three (3) rounds.

## Electronic Transmissions

Detective Brewer requested a copy of the incident recall log pertaining to NOPD Item D-13802-21 via email. Detective Brewer received a copy of the incident recall via email from Public Records Specialist Darlene Ferdinand. The incident recall document the following:

    9:31 pm -Incident created as verbal domestic disturbance.
    9:42 pm -Incident classified as Officer Weapon Discharge.
    9:51 pm- Unit 620 advised dog shooting and 1 officer has poss shrapnel.
    10:47 pm -Sergeant John Helou notified.

## Discrepancies, Clarifications, & Credibility Assessments

Detective Brewer, based on the information obtained from the BWC for Officers Derrick Burmaster and John Roussel deemed it necessary to initiate a Formal Disciplinary Investigation.

Detective Brewer, after comparing the administrative statement provided by Officer Burmaster with the evidence reviewed during this investigation, deemed Officer Burmaster not to be credible. Officer Burmaster responded to a call for service. Officer Burmaster stated before entering the front yard of the residence, he checked the yard for any signs of dogs. Upon entering the yard and approaching the front door of the residence, Officers Burmaster and Roussel heard the sound of dogs barking. Officer Burmaster removed his weapon from the holster and fired on the dog closest to him. In Officer Burmaster's Criminal Statement, Officer Burmaster stated fired his first shot at the dog because the dogs ran up on him as they were barking and thought the dogs were going to attack him. Officer Burmaster stated he fired the second and third shots because the dog continued toward him. However, in Officer Burmaster's Administrative Statement, he stated when he fired his weapon three times at the dog, it was all a blur and Officer Burmaster could not recall the dog's actions. Officer Burmaster stated he was scared the dog would bite his genitals, causing a penetrating wound. Officer Burmaster stated he was not equipped with his PR 24/Expandable Baton or ASP at the time of this incident and did not attempt any less lethal options.

Detective Brewer determined based on the preponderance of evidence; Officer Burmaster heard dogs barking upon entering the front yard at 1420 Felicity Street. Officer Burmaster removed his weapon from the holster upon hearing the dogs barking. Upon observing Officer Roussel run toward the front gate, Officer Burmaster observed two dogs running down the stairs. Officer Burmaster determined due to Officer Roussel running out the front gate, the dogs presented a threat, therefore Officer Burmaster fired his weapon fatally wounding the dog. Officer Burmaster fired his weapon out of fear and not because the animal presented an imminent threat of serious bodily injury to Officer Burmaster. Officer Burmaster could not describe or recall the attack or attempted attack by either dog. The dog did not harm or attempt to harm Officer Burmaster. Based on the information obtained from Officer Burmaster and Officer Roussel BWC, the force statements provided by both officers, the administrative statement provided by Officer Burmaster, and the criminal witness statement provided by Officer Roussel, Detective Brewer determined Officer Burmaster was scared and fired his weapon. The dog fatally wounded by Officer Burmaster did not present an imminent threat toward Officer Burmaster and upon recognizing the dog did not present a threat of serious bodily harm, Officer Burmaster should have holstered his weapon.

### Consultation with the District Attorney

Criminal Investigator Sergeant Debra Pruitt submitted the case to Orleans Parish Assistant District Attorney Paige Kline on April 28, 2021. No results at this time.

### Decision Point Analysis

Officer Burmaster heard the sound of dogs barking when he entered the front yard. Without sight of the dogs, Officer Burmaster removed his weapon from the holster. Upon observing the dogs, Officer Burmaster fired his weapon. Officer Burmaster stated he fired his weapon on the dog closest to him, however the dog did not harm Officer Burmaster and did not attempt to harm Officer Burmaster. Officer Burmaster became scared upon observing Officer Roussel exit the front yard and fired his weapon.

Detective Brewer reviewed the BWC for Officer Burmaster and Officer Roussel and observed (on Officer Roussel BWC), Officer Burmaster remove his weapon from the holster upon hearing the sound of dogs barking. Detective Brewer observed the larger dog run toward Officer Roussel who had exited the front yard. The larger dog did not approach Officer Burmaster. Detective Brewer observed the smaller dog run toward Officer Burmaster. The smaller dog did not attack or attempt to attack Officer Burmaster.

Detective Brewer determined that Officer Burmaster fired his weapon out of fear and not due to an attack or attempted attack by the dog. Detective Brewer determined the dog did not present a threat of serious bodily injury to Officer Burmaster. Officer Burmaster was not equipped with a PR 24/Expandable Baton or ASP at the time of this incident. Officer Burmaster did not attempt any other less lethal options including exiting the front yard.

Officer Burmaster received disciplinary action related to these policy violations.

### Training

Detective Brewer, based on the evidence reviewed during this investigation, consulted with Sergeant Duplantier at the training academy for a Tactical debrief and Use of Force re-training.

Detective Brewer did not believe any changes to the current NOPD policy were necessary.

### Equipment

The equipment used in the incident was a department issued Glock 9mm, model 17. There were no malfunctions or modifications to the weapon.

## Policy Violations

Rule 4: Performance of Duty, Paragraph 4 Neglect of Duty (c6) Failing to comply with instructions, oral or written from any authoritative source to wit NOPD Chapter 1.3 Use of Force, Paragraph 11.

Rule 4: Performance of Duty, Paragraph 4 Neglect of Duty c6 Failing to comply with instructions, oral or written, from any authoritative source to wit, NOPD Chapter 1.3 Use of Force, paragraph 32.

Rule 4: Performance of Duty, Paragraph 4 Neglect of Duty c6 Failing to comply with instructions, oral or written, from any authoritative source to wit, NOPD Chapter 41.10 paragraph 29.

Rule 4: Performance of Duty, Paragraph 4 Neglect of Duty c6 Failing to comply with instructions, oral or written, from any authoritative source to wit, NOPD Chapter 1.3 paragraph 13a.

Rule 4: Performance of Duty, Paragraph 4 Neglect of Duty c6 Failing to comply with Instructions, oral, or written, from any authoritative source to wit, NOPD Chapter 41.11 Body Armor, Paragraph 8c.

**NOTE:** Officer Burmaster could not be found in violation of Rule 2, Moral Conduct, Paragraph 6, Unauthorized Force, due to the verbiage written in the rule which states the Unauthorized Force must be against a person.

Detective Brewer initiated an investigation into the actions of Officer Burmaster. Detective Brewer determined all allegations to be sustained.

## Summary & Conclusion

Detective Brewer investigation revealed Officer Burmaster's discharge occurred due to Officer Burmaster observing the dogs and firing his weapon out of fear and not because the dog presented a threat of serious bodily injury or death to Officer Burmaster.

## Final Recommendations Section

It is the recommendation of Detective Brewer that NOPD Policy which relates to Unauthorized Force is revised to include animals.

The NOPD Training Academy will review the findings in this incident and determine if Officer Burmaster should remain as a Field Training Officer.

There are no other recommendations regarding policies, tactics, training, or discipline as a result of this incident.

## Signatures

Respectfully Submitted

*[signature]*

Detective Shannon Brewer
NOPD Force Investigation Team


Concur / ~~Does Not Concur~~

*[signature]* 8-26-2021

Sergeant John Helou
Force Investigation Team


Concur / ~~Does Not Concur~~

*[signature]* 8-27-21

Captain Sabrina Richardson
Public Integrity Bureau