

# NEW ORLEANS POLICE DEPARTMENT OPERATIONS MANUAL

# CHAPTER: 41.11

## TITLE: BODY ARMOR

**EFFECTIVE:** 01/14/2018
**REVISED:** Replaces Policy 1024

### PURPOSE

The purpose of this Chapter is to provide officers with guidelines for the proper use of body armor.

### POLICY STATEMENT

1. It is the policy of the New Orleans Police Department to maximize officer safety through the use of body armor in combination with prescribed safety procedures.

2. While body armor provides a significant level of protection, it is <u>not a substitute</u> for the observance of officer safety procedures.

### ISSUANCE OF BODY ARMOR

3. Body armor shall be issued to all officers.

4. The department issued body armor shall meet or exceed the **NIJ 0101.06 – Armor Protection Level standards of the National Institute of Justice (NIJ)** for threat protection **Level IIA or higher**.

5. Body armor shall be issued when an officer begins field service with the New Orleans Police Department.

6. Body armor shall be replaced in accordance with the manufacturer's recommended replacement schedule or when the body armor becomes worn or damaged to the point that its effectiveness or functionality has been compromised.

### GENERAL INFORMATION ON LEVELS OF PROTECTION

7. The current existing Levels of Protection of NIJ 0101.06 rated body armor are:
    (a) **Level IIA**—Tested to stop 9mm and .40 S&W ammunition fired from short barrel handguns. No rifle ammunition protection.
    (b) **Level II**—Tested to stop 9mm and .357 Magnum ammunition fired from short barrel handguns. No rifle ammunition protection.
    (c) **Level IIIA**—Tested to stop .357 SIG and .44 Magnum ammunition fired from

EXHIBIT
L

longer barrel handguns. No rifle ammunition protection.
(d) **Level III**—Tested to stop 7.62mm FMJ lead core rifle ammunition.
(e) **Level IV**—Tested to stop .30cal steel core armor piercing rifle ammunition.

**USE OF BODY ARMOR**

8. Generally, the use of body armor is required subject to the following:
    (a) Officers shall only wear department-approved body armor.
    (b) Officers shall wear body armor anytime they are in a situation where they could reasonably be expected to take enforcement action.
    (c) Body armor shall be worn when an officer is working a uniform assignment.
    (d) Officers may be exempt from the requirement to wear body armor when they are functioning primarily in an administrative or support capacity and would not reasonably be expected to take enforcement action.
    (e) An officer may be exempt from the requirement to wear body armor when:
        - He/she is involved in undercover or plainclothes work that his/her supervisor determines could be compromised by wearing body armor, or
        - When a supervisor determines that other circumstances make it inappropriate to mandate wearing body armor.
    (f) Any officer exempt from wearing body armor due to administrative assignment must wear his/her body armor while conducting or participating in any raid, warrant execution, or other pre-planned, high-risk situation.
    (g) Body armor, if not worn due to an approved exemption, must be readily available should the need arise.
    (h) Specialized body armor, such as that worn over the clothes by the SOD Units (SWAT, VOWS, and Narcotics Division) while executing warrants, will be governed by rules promulgated by the respective commands and in accordance with best practice and NIJ standards.
    (i) All regular duty body armor, issued by the Department, will be worn in a manner not to be visible to the public (e.g., under the uniform clothing).

9. The Superintendent of Police or his/her designee, may order the issued body armor to be worn by all officers or any specific unit, at any time.

**INSPECTIONS OF BODY ARMOR**

10. Supervisors shall ensure that issued body armor is worn and maintained in accordance with this Chapter through routine observation and periodic, documented inspections.

11. Annual, unit level inspections of body armor shall be conducted by an authorized designee (inspector) for fit, cleanliness and signs of damage, abuse and wear.

12. The annual issued body armor inspections shall be documented in writing to the Division or District Commander by the designated inspector and maintained at the unit level.

**CARE AND MAINTENANCE OF SOFT BODY ARMOR**

13. Officers shall not alter, modify, or insert any object into, or remove any portion of, the vest except as necessary and as prescribed by the manufacturer for routine care and maintenance.

14. Officers are responsible for reporting any damage or wear to the ballistic panels or cover to the Commander of the Education and Training Division.

15. Soft body armor should never be stored for any period of time in an area where environmental conditions (e.g., temperature, light, humidity) are not reasonably controlled (e.g., normal ambient room temperature/humidity conditions), such as in automobiles or automobile trunks.

16. Soft body armor should be cared for and cleaned pursuant to the manufacturer's care instructions provided with the soft body armor. The instructions can be found on labels located on the external surface of each ballistic panel. The carrier should also have a label that contains care instructions. Failure to follow these instructions may damage the ballistic performance capabilities of the armor. If care instructions for the soft body armor cannot be located, contact the manufacturer to request care instructions.

17. Soft body armor shall not be exposed to any cleaning agents or methods not specifically recommended by the manufacturer.

**REPLACEMENT OF SOFT BODY ARMOR**

18. Body armor damaged during normal use will be replaced by the Department.

19. Replacement for body armor damaged due to abuse or neglect must be paid for by the officer.

20. The Commander of the Education and Training Division or his/her designee shall make the determination when body armor shall be replaced.

**EDUCATION AND TRAINING DIVISION RESPONSIBILITIES**

21. The Commander of the Education and Training Division or his/her designee shall:
    (a) Monitor professional sources (e.g., NIJ) for information about recalls of or identified problems with body armor issued to and used by department members.
    (b) Assess weapons and ammunition currently in use by local law enforcement and criminals and the suitability of the currently approved body armor to protect against those threats.
    (c) If the class weapons and ammunition assessed <u>exceeds</u> the rated capability of the departmental issued body armor, immediate recommendation for an upgrade to an adequate level of protection shall be made to the Superintendent.
    (d) Provide training that educates officers about the department policy on the proper use, care and the safety benefits of wearing body armor.