**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| DEREK BROWN and | * | CIVIL ACTION |
| JULIA BARECKI-BROWN | * | |
| | * | DOCKET NUMBER: 22-00847 |
| VERSUS | * | |
| | * | SECTION: L |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | HONORABLE ELDON E. FALLON |
| NEW ORLEANS | * | |
| | * | DIVISION: 4 |
| | * | |
| | * | HONORABLE KAREN WELLS ROBY |

*****************************************************************************

## SHAUN FERGUSON'S AND CITY OF NEW ORLEANS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY

Defendants, Shaun Ferguson and the City of New Orleans (the "City Defendants"), oppose Plaintiffs' Motion for Partial Summary Judgment on Liability ("Plaintiffs' Motion"), and respectfully show the following.

### INTRODUCTION

This is a classic case of second-guessing a police officer who was faced to make a split-second decision when faced with a tense, uncertain, and rapidly evolving situation. The evidence shows that the information that was reasonably available to Officer Derrick Burmaster on the night in question made his decision to shoot Plaintiff's "puppy," Apollo reasonable. His actions therefore did not violate the Fourth Amendment.

Plaintiffs' Second Amendment Complaint [Doc. 60] asserts various causes of action against Officer Burmaster and the City Defendants. Plaintiffs' Motion appears to be a cross motion in response to Officer Burmaster's Motion for Summary Judgment [Doc. 105]. Plaintiffs, in their Motion, do not specify which causes of action that their Motion applies to.  The City Defendants, out of caution, assert a general opposition to Plaintiffs' Motion and adopts and incorporates their

1

Motion for Summary Judgment, filed on March 19, 2023 [Doc. 109]. In further response, the City Defendants show the following.

## FACTS

On April 10, 2021, Officer Derrick Burmaster was a 23 year veteran of the New Orleans Police Department ("NOPD").[1] On that night, Officer Burmaster was on duty and was called to the Brown's house for a service call due to a report of potential domestic violence. A neighbor had heard a woman screaming at the Brown's house.[2] Officer Burmaster and another officer responded. Officer Burmaster had never been to the Brown's house and did not know that the Browns owned dogs.

The event of the unfortunate shooting of Apollo is accurately recorded by a body-worn camera that Officer Burmaster wore, as required by NOPD policy.[3] The video from that camera shows Officer Burmaster making kissing noises as approached the Brown's house.[4] No dogs were seen and no sign of dogs was evident.[5] However, the Brown's two dogs were lurking on the porch on the second level in the dark.[6] When Officer Burmaster and his partner entered the gate and entered the driveway, they heard loud barking and sounds coming from running dogs.[7] Officer Burmaster saw a large dog rush down the stairs and aggressively pursue his partner.[8] A second dog, Apollo, rushed out from behind the larger dog and ran at Officer Burmaster.[9]

---

[1] Ex. A, Excerpts of Deposition of Derrick Burmaster (Burmaster Deposition), p. 15:7 – 15:19.
[2] *Id.*, pp. 33:12 – 38:15
[3] See Doc. 110-6 (Burmaster Body Worn Camera Video – manually attached).
[4] *Id.*
[5] *Id.* (Officer Burmaster comments on the video that there were no dogs seen).
[6] Ex. B., Excerpts of Deposition of Derek Brown (Brown Deposition), pp. 49:1 – 51:8.
[7] Ex. A, pp. 51:11 – 51:23.
[8] Doc. 110-6.
[9] *Id.*

Officer Burmaster, surprised and dealing with the uncertainty of a potentially dangerous domestic disturbance call, had seconds evaluate his options.[10] Officer Burmaster believed he could not outrun either dog and had no reasonable avenues of escape.[11] He made a split-second decision to stand his ground and shoot dog that was running at him.[12]

Subsequently, NOPD investigated Officer Burmaster's shooting of Apollo to determine (1) whether he committed a crime, and (2) whether he violated NOPD policy.[13] In addition, NOPD's Use of Force Board reviewed whether Officer Burmaster violated NOPD policies.[14]

## LAW AND ARGUMENT

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Grant v. City of Houston*, 625 F. App'x 670, 675 (5th Cir. 2015) (quoting U.S. Const. amend. IV). The killing of a pet dog constitutes a seizure under the Fourth Amendment. *Id*. "Seizures by law-enforcement officials violate the Fourth Amendment only if they are unreasonable." *Id*. To determine whether a seizure was reasonable, courts look to "the totality of the circumstances, balancing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id*. (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

> The Court in *Grant* advised that an officer's use of force should be examined from
>
> the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. We thus allow for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and

---

[10] Ex. A, 51:24 – 54:7.
[11] *Id*.
[12] *Id*.
[13] Ex. C, Excerpts of Exhibits 20 (excerpt of Public Integrity Bureau Force Investigation Team investigation report of Shannon Brewer) and 37 (excerpts of Sgt. Debra Pruitt's criminal investigation report).
[14] Ex. E, Excerpts of Deposition 30(b)(6) Witness Chris Goodly, pp72:19 – 75:19, and Exhibit 29, Use of Force Board minutes.

> rapidly evolving—about the amount of force that is necessary in a particular situation.

*Grant*, 625 F.App'x at 677 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 775, 134 S. Ct. 2012, 2020, 188 L.Ed.2d 1056 (2014)). In addition, *Grant* noted the following factors that should be considered:

- Whether the officer had notice that a dog was present on the premises;
- Whether the officer was genuinely surprised by the dog's presence and aggression;
- Whether the officer had time to prepare a non-lethal plan to subdue the dog;
- Whether reasonable precautions were taken avoid a lethal encounter with the dog;
- Whether the dog was "aggressive";
- Whether the officer exhausted all non-lethal means prior to using lethal force against the dog;
- Whether the dog was retreating or fleeing from the officer or running towards the officer at the time the lethal shot was fired; and
- Whether officer was imminently in danger of being bitten by the dog at the time the officer discharged his weapon.

*Id*. at 676 - 677.

In this case, from the perspective of a reasonable officer on the scene, it was not unreasonable for Officer Burmaster to have discharged his weapon at Apollo. The body-camera video shows that Officer Burmaster actively examined the Brown's residence for signs of dogs. He made kissing sounds as he approached the residence. Objectively, there was no indication that the Browns had dogs. Officer Burmaster was clearly surprised by the sudden loud barking from above and the appearance of two dogs out of the darkness of the porch above, and the aggressiveness of both dogs who were running at the officers. Officer Burmaster had little time to

evaluate options. The gate was slammed shut by his retreating partner and spikes precluded escaping over the fence. He did not know that Apollo was a "puppy" or how many teeth Apollo had. He saw Apollo running fast towards him and had to make a split second decision. Apollo was still running towards Officer Burmaster when the shots were fired.

This case is similar to *Stephenson v. McClelland*, 632 F.App'x 177 (5th Cir. 2015), where an officer shot and killed a family dog that was showing his teeth, either "baring them aggressively or 'smiling.'" *Id*. at 185. The court ruled that the officer was entitled to qualified immunity because the plaintiff failed to show that a constitutional right was clearly established o that aa reasonable officer in that situation would have understood that his or her conduct violated that right. The court found the following factors significant: (1) the officer did not know that there would be a dog present and was surprised y its presence; (2) the officer did not know that the family pet was friendly and nonaggressive; and (3) the officer was forced "to make a split-second decision in a tense situation and he acted to protect himself." *Id*. at 185 (quoting *Grant*).

In this case, like in Stephenson, Officer Burmaster did not know dogs would be at the Brown's house, was surprised, did not know the age or disposition of Apollo, and had very little time to gather information about the dog. Officer Burmaster cannot be expected to have known Apollo was a puppy without teeth. Officer Burmaster saw the "puppy" for two seconds running at him. Officer Burmaster was forced to make an instant decision to protect himself. As in *Stephenson*, from the perspective of an officer in that situation, it was not unreasonable to shoot the dog that he reasonably believed posed a threat.[15]

---

[15] Plaintiffs refer to "Defendants' own Experts" as supporting their argument that a Fourth Amendment violation occurred. However, the City Defendants, for their part did not designate any experts on the subject of the reasonableness of Officer Burmaster's use of force. This type of opinion would invade the province of the jury and would be improper. Rather, the City Defendants' experts are designated to testify as to opinions regarding the PIB investigation and complaint process, the Civil Service administrative appeal process, best practices in use of force, and NOPD policies. The opinions of the "experts" that Plaintiffs rely so heavily upon are merely their opinions, recommendations, or conclusions with respect to NOPD policies, not reasonableness of use of force under the Fourth

## **CONCLUSION**

The Browns cannot show that no genuine issue of fact exists as to the reasonableness of Officer Burmaster's actions in shooting Plaintiffs dog, Apollo. Their Motion for Partial Summary Judgment should therefore be denied.

Respectfully submitted:

*/s/ James M. Roquemore*_____
**JAMES M. ROQUEMORE, LSB #40035**
ASSISTANT CITY ATTORNEY
james.roquemore@nola.gov
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET, SUITE 5E03
NEW ORLEANS, LOUISIANA 70112
TEL: (504) 658-9800
FACSIMILE: (504) 658-9868

*Counsel for Shaun Ferguson and the City of New Orleans*

---

Amendment. For this reason, Plaintiffs' argument about "Defendants' own Experts" [Doc. 110-1, p. 20] is inapt and should be ignored.