```
                UNITED STATES DISTRICT COURT
          EASTERN DISTRICT FOR THE STATE OF LOUISIANA

          * * * * * * * * * * * * * * * * * * * *

                      DEREK BROWN and
                     JULIA BARECKI-BROWN

                          VERSUS

          DERRICK BURMASTER, SHAUN FERGUSON, and the
                     CITY OF NEW ORLEANS

          * * * * * * * * * * * * * * * * * * * *
               CIVIL ACTION NO. 22-00847     DIVISION: 4

               SECTION: L


          The 30(b)(6) deposition of CHRIS GOODLY taken on

                Monday, March 7, 2023, starting at 1:45 p.m. at

          New Orleans City Hall, 1300 Perdido Street, Room 5E03,

                      New Orleans, Louisiana 70112.








CARRIE A. HARTILL

CERTIFIED COURT REPORTER

STATE OF LOUISIANA
```





EXHIBIT E

```
 1   APPEARANCES:
 2   FOR THE CITY OF NEW ORLEANS AND CITY DEFENDANTS:
 3    JAMES M. ROQUEMORE, ESQ
 4    CITY OF NEW ORLEANS
 5    NEW ORLEANS, LOUISIANA
 6    EMAIL: james.roquemore@nola.gov
 7
 8   FOR THE DEFENDANT, DERRICK BURMASTER:
 9    C. THEODORE ALPAUGH, III, ESQ.
10    FRATERNAL ORDER OF POLICE LEGAL COUNSEL
11    639 LOYOLA AVENUE, SUITE 2130
12    NEW ORLEANS, LOUISIANA 70113
13    PHONE: (504) 529-4141
14    EMAIL: cta@gustebarnett.com
15
16   FOR THE PLAINTIFF DEREK BROWN AND JULIA BARECKI-BROWN:
17    TARAK ANADA, ESQ.
18    JONES WALKER LLP
19    201 ST. CHARLES AVENUE, SUITE 4900
20    NEW ORLEANS, LA 70170
21    PHONE: (504) 582-8322
22    EMAIL: tanada@joneswalker.com
23
24
25
```



```
 1   ALSO REPRESENTING THE PLAINTIFFS:
 2   WILLIAM BROCK MOST, ESQ.
 3   MOST & ASSOCIATES
 4   201 SAINT CHARLES AVENUE, SUITE 114
 5   NEW ORLEANS, LA 70170
 6          PHONE: (504) 509-5023
 7   EMAIL: williammost@gmail.com
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```



```
 1
 2                              INDEX
 3                                                        PAGE
 4   DIRECT EXAMINATION:
 5   BY MR. MOST  . . . . . . . . . . . . . . . . . . .  6
 6   CROSS-EXAMINATION:
 7   BY MR. ALPAUGH  . . . . . . . . . . . . . . . . . . 86
 8   FOLLOW-UP:
 9   BY MR. MOST  . . . . . . . . . . . . . . . . . . .  97
10
11                            EXHIBITS
12                            DESCRIPTION                 PAGE
13   EXHIBIT NO. 8      NOD              . . . . . . . .  10
14   EXHIBIT NO. 24     NOPD OPERATIONS MANUEL . . . . .  15
15   EXHIBIT NO. 20     NOPD ASI     . . . . . . . . . .  26
16   EXHIBIT NO. 29     USE OF FORCE BOARD minutes . . .  30
17
18
19
20
21
22
23
24
25
```



|     |                                                              |
| --- | ------------------------------------------------------------ |
| 1   |                                                              |
| 2   |            S T I P U L A T I O N                             |
| 3   |       It is stipulated and agreed by and                     |
| 4   | between counsel that the deposition of                       |
| 5   |                 CHRIS GOODLY,                                |
| 6   | is hereby being taken pursuant to the Rules                  |
| 7   | of Court, including applicable articles of                   |
| 8   | the Louisiana Code of Civil Procedure.                       |
| 9   |       The formalities of sealing and                         |
| 10  | certification are hereby waived.  The                        |
| 11  | witness waives the right to read and sign                    |
| 12  | the deposition.  The party responsible for                   |
| 13  | the service of the discovery material shall                  |
| 14  | retain the original.                                         |
| 15  |       All objections are to be made in                       |
| 16  | accordance with the Rules of Court, including                |
| 17  | applicable articles of the Louisiana Code of                 |
| 18  | Civil Procedure.                                             |
| 19  |                    * * *                                     |
| 20  |       Carrie A. Hartill, Certified Court                     |
| 21  | Reporter in and for the State of Louisiana,                  |
| 22  | officiated in administering the oath to the                  |
| 23  | witness.                                                     |
| 24  |                                                              |
| 25  |                                                              |



```
 1   among the members of the board, right?
 2   A.  Correct.
 3   Q.  And it's at least in my observation that it
 4   seems like SOD is sort of often advocating in
 5   favor of finding the officer's use of force
 6   justified; is that in your observation, as well?
 7              MR. ROQUEMORE:
 8                  Objection form.
 9              MR. ALPAUGH:
10                  Same objection.
11              THE WITNESS:
12                  No, I mean.  I don't want to say "advocate."
13              They give their opinion.  And then it's up to
14              the board members to decide you know, how much
15              weight we want to give, but that doesn't
16              have any overbearing influence on me
17              one way or another.
18   BY MR. MOST:
19    Q.  Okay.  So looking at page 2 of Exhibit 29.
20   I guess, 2 and to page 3.  This lists a range
21   of policy violations that were sustained; do you
22   see this?
23   A.  Yes.
24    Q.  Okay.  And so these were the the policies that
25   PIB found that Burmaster had violated?
```



```
 1            MR. ROQUEMORE:
 2                 Objection to form.
 3            MR. ALPAUGH:
 4                 Same objections.
 5            THE WITNESS:
 6                 I would have to compare them to what's
 7            actually incorporated in the administrative
 8            shooting investigative report. (reviewing)
 9            But it appears paragraph 11, 32.
10            By appearance it appears to be similar to
11            the same violation that are actually in the
12            ASI report.
13    BY MR. MOST:
14    Q. Okay.  So there was a finding that Officer
15    Burmaster had violated policy by when he in
16    his removal of his gun from his holster, right?
17    A. Let me make sure, I've got to see what's
18    sustained, you said "removing his gun from his holster"?
19         (reviewing) I would just say there's sustained violations.
20    But once again, those are just dispositions.
21    The ultimate rendering of the disciplinary action
22    is still pending.
23    Q.  Right.  So, I understand that this may not be the
24    final word on the matter, but at least at this stage,
25    that there was -- a whether or not it becomes the
```



```
1    final word on the matter, PIB determined that
2    Burmaster had violated policy regarding the removal
3    of his gun from the holster, right?
4         That's the first one.
5     A.   Yes, it says, "Officers shall not draw or exhibit
6    their firearm unless the circumstances around the incident
7    create an objectively reasonable belief
8    that a situation may escalate to the point which lethal
9    force will be authorized.  Once an officer determines
10   that use of deadly force is no longer likely,
11   the officer shall reholster the weapon."
12   So that's the verbiage in there.  I'd
13   have to look at the policy to see if they
14   actually are relating it to paragraph 11 or 13(a).
15        That's what I'm saying.  You've got -- it's listing
16   the violation and then is given a little
17   reference to which one they violated so
18   I'm assuming, without looking at the policy that it's
19   referencing 11, but I can't be certain.
20
21     Q. Do you want to just, you can look at the policy
22   there.
23     A. Okay.  Yes, this is related to 11.
24     Q. I'm just trying to put these into plain language,
25   so there was one policy violation about Burmaster
```



```
 1   removing his gun from the holster or failing to
 2   reholster it, right; that was the first one?
 3     A. Yes.
 4     Q. And then the second one was about his use of
 5   deadly or lethal force
 6     A. Yes.  Correct.
 7     Q. And then the third policy violation was about
 8   his use of a firearm on an animal?
 9     A. Dangerous animals, correct.
10     Q. And then the fourth one, I guess,
11   it doesn't have a description on it.
12     A. I guess, that's what I'm --
13             MR. ANADA:
14                 If you go to the next page --
15     A.  Yeah, it goes straight to violation number five
16   on the next page.
17     Q. And the final one is about the failure to wear
18   body armor, right?
19     A. Yes
20     Q. Okay.  So if you look at page three.  You
21   see where it says, third paragraph down
22   from the top, it says "NOTE: Officer Burmaster
23   could not be found in violation of Rule 2,
24   Moral Conduct, Paragraph 6, Unauthorized force --
25     A.  It only applies to a person.
```



ASI2021-03, D-13802-21

# Use of Force Board

MINUTES  AUGUST 19, 2021  11:57 A.M  VIA ZOOM

| MEETING CALLED BY | Sergeant Samuel Davis Jr. |
|---|---|
| TYPE OF MEETING | Use Of Force Review Board |
| FACILITATOR | Deputy Superintendent Christopher Goodly |
| NOTE TAKER | Sergeant Samuel Davis Jr |
| TIMEKEEPER | Sergeant Samuel Davis Jr. |
| VOTING MEMBERS | Deputy Superintendent Christopher Goodly<br>Deputy Superintendent Paul Noel<br>Deputy Superintendent Arlinda Westbrook |
| NON-VOTING MEMBERS | Captain Hans Ganthier Training Academy<br>Captain Sandra Contreras PSAB<br>Captain Regina Williams Fifth District<br>Captain Daryll Albert SOD<br>Consent Decree Monitor Mitchell Brown |

## Agenda topics

ASI2021-03

**DISCUSSION**

It should be noted this use of force review board was held via Zoom. The entire review board has been recorded with both audio and video and has been stored for future reference.

Below is a gist of the presentation highlighting recommendations and deficiencies. An audio recording of the entire review board, as well as the power point containing all videos have been stored for future review.

No New Follow-ups

ASI2021-03 Firearms Discharge against a Canine by Sergeant Shannon Brewer

The involved officer was SPO Derrick Burmaster assigned to the 6th District, B Platoon. Officer Burmaster has been a member of NOPD since August 13, 2000. His last firearms qualification was February 3, 2021.

Previous serious uses of force: April 19, 2007 firearms discharge D-20860-07, Firearms Discharge February 11, 2009 under B-12388-21, Firearms Discharge against a Canine under B-12388-09, the Canine was fatally wounded. In this incident Officer Burmaster was told by a crime lab tech of the presence of a dog in the yard. Officer Burmaster relocated to the yard to have the owners detain the dogs. When the dog made a motion towards officer Burmaster he grabbed his crotch with his left hand and drew his weapon and fired twice striking the dog.

There was no disciplinary action taken on any of the above incidents. Officer Burmaster had 4 other disciplinary incidents involving Professionalism and Neglect of Duty.

On April 10, 2021, at 9:42 PM, Officer Burmaster and John Roussel responded to a domestic call for service at 1420 Felicity Street. Officer Burmaster stated he made kissing sounds to see if there were any dogs and got no response. As the officers approached the lower apartment, they heard dogs barking. Officer Roussel turned and ran to exit the yard, Officer Burmaster remained in the yard and drew his weapon. Officer Burmaster then fired his weapon 3 times striking and fatally wounding a dog. He then exited the yard and notified communications of the discharge.

1

ASI2021-03, D-13802-21

Sergeant Brewer showed Officer Roussel's BWC video. As the officers entered a courtyard 2 dogs ran down the steps towards them, the larger dog ran towards Officer Roussel. Officer Roussel was observed holding his forearm after the firearms discharge by Officer Burmaster. It was unclear if he was struck by shrapnel.

Sergeant Brewer showed Officer Burmaster's BWC video. As the officers entered 2 dogs were seen coming down the steps towards the officers, Officer Roussell ran out of the yard and Officer Burmaster discharged his weapon at the smaller dog.

Photographs of the scene and the expired dog were shown.

Sergeant Brewer explained discrepancies, clarifications, and credibility assessments. Sergeant Brewer deemed Officer Burmaster not credible during her investigation based on his administrative statement and evidence review. Officer Burmaster stated he checked the front yard for dogs before entering. During his criminal statement he said he fired his weapon as the dogs were running up on him as it barked coming towards him. Officer Burmaster could not recall in his administrative statement what the dog's actions were. He said he was afraid the dog would bite his genitals. He was not equipped with a baton and did not attempt any less lethal options.

Sergeant Brewer determined Officer Burmaster heard the dogs barking upon entering the courtyard. He removed his weapon upon hearing the dogs barking. He then observed Officer Roussel run toward the front gate and the 2 dogs running down the steps. Officer Burmaster determined the dogs presented a threat because Officer Roussel ran towards the gate. Sergeant Brewer stated Officer Burmaster fired his weapon out of fear and not a threat. Officer Burmaster could not recall the attack or attempted attack by either dog. Again, Sergeant Brewer said Officer Burmaster fired his weapon out of fear and not an actual threat.

Decision point analysis: The larger dog ran towards Officer Roussel with the smaller of the 2 dogs running towards Officer Burmaster. The smaller dog did not attack or attempt to attack Officer Burmaster. Officer Burmaster was not equipped with a baton and did not attempt any less lethal options.

Policy Violations:
V1: Rule 4 Performance of Duty, Paragraph 4 Neglect of Duty (c6) Failing to comply with instructions, oral or written from any authoritative source to wit NOPD Chapter 1.3 Use of Force, Paragraph 11 ............SUSTAINED

Officer shall not draw or exhibit their firearm unless the circumstances surrounding the incident create an objectively reasonable belief that a situation may escalate to the point at which lethal force would be authorized. Once an officer determines that the use of deadly force is no longer likely, the officer shall re-holster their weapon.

V2: Rule 4: Performance of Duty, Paragraph 4 Neglect of Duty c6 Failing to comply with Instructions, oral or written, from any authoritative source to wit; NOPD Chapter 1.3 Use of Force; Paragraph 13(a) ...................... SUSTAINED

Deadly/Lethal force shall be used only when: There is an imminent danger of death or serious physical injury to the officer or another person;

V3: Rule 4: Performance of Duty, Paragraph 4 Neglect of Duty c6 Failing to comply with Instructions, oral, or written, from any authoritative source to wit, NOPD Chapter 1.3 Use of Force, Paragraph 32 ..................... SUSTAINED

Dangerous Animals-Officers are authorized to use firearms to stop an animal in circumstances in which the animal reasonably appears to pose an imminent threat to human safety and alternative methods are not reasonably available or would likely be ineffective. The officer must be cognizant of the surroundings when shooting at an animal and ensure there is no risk to people in the area. Under circumstances in which officers have sufficient advance notice that a potentially dangerous animal may be encountered, officers should develop reasonable contingency plans for dealing with the animal (e.g., fire extinguisher, CEW, animal control officer). Nothing in this Chapter shall prohibit any officer from shooting a dangerous animal if circumstances reasonably dictate that a contingency plan has failed or becomes impractical.

V4: Rule 4: Performance of Duty, Paragraph 4 Neglect of Duty c6 Failing to comply with Instructions, oral, or written, from any authoritative source to wit, NOPD Chapter 41.10 Paragraph 29 ....................... SUSTAINED

V5: Rule 4: Performance of Duty, Paragraph 4 Neglect of Duty c6 Failing to comply with Instructions, oral, or written, from any authoritative source to wit, NOPD Chapter 41.11 Body Armor, Paragraph 8c ................SUSTAINED

Body armor shall be worn when an officer is working a uniform assignment.

NOTE: Officer Burmaster could not be found in violation of Rule 2, Moral Conduct, Paragraph 6, Unauthorized Force, due to Unauthorized Force only applies to a person.

Policy Recommendations: NOPD policy regarding Unauthorized Force to include force used against an animal

Training Recommendation: Officer Burmaster will receive De-escalation training

Equipment Considerations: None

Discussion: Chief Goodly asked about Officer Burmaster firing out of fear. What was his target when he fired his weapon? Sergeant Brewer explained Officer Burmaster stated he fired at the dog closest to him and he did see the larger dog going towards Officer Roussel. Chief Goodly stated he had a false perception of a threat that was not there. Chief Westbrook stated Officer Burmaster did not articulate any threat towards him.

Captain Albert (SOD) stated after watching all video he noted Officer Burmaster said the dogs were attacking him and the barking was what caused him to believe it was an attack. Chief Noel asked Captain Albert he believed this to be true. Captain Albert said he did not see an attack, but Officer Burmaster had a perception of an attack. Officer Burmaster did not describe any threat.

Sergeant Brewer explained something was removed from Officer Roussel's arm by EMS but was unable to determine what the object was.

Chief Goodly stated the larger dog was the bigger threat and the smaller dog posed no threat. IPM and OCDM had no questions.

Sergeant Davis asked if Officer Burmaster should be reviewed for being an FTO. Captain Ganthier (academy) stated he will be reviewed as he is released back to full duty.

Voting:
Chief Goodly: NOT JUSTIFIED
Chief Noel: NOT JUSTIFIED
Chief Westbrook: NOT JUSTIFIED

| CONCLUSIONS | NOT JUSTIFIED | |
|---|---|---|

| ACTION ITEMS | PERSON RESPONSIBLE | DEADLINE |
|---|---|---|
| Burmaster De-escalation training | Academy | ASAP |

| OBSERVERS | I.P.M: ABE Lowe, PSAB: Captain Contreras, , Sgt. Seuzeaneu, Tim Lindsey, Joy Butler, PIB: Sgt. Helou, Sgt. Pruitt, Det. Brewer, |
|---|---|
| RESOURCE PERSONS | |
| ENDING TIME | 12:26 PM |

3