UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and | * | CIVIL ACTION |
| JULIA BARECKI-BROWN | * | |
| | * | DOCKET NUMBER: 22-00847 |
| VERSUS | * | |
| | * | SECTION: L |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | HONORABLE ELDON E. FALLON |
| NEW ORLEANS | * | |
| | * | DIVISION: 4 |
| | * | |
| | * | HONORABLE KAREN WELLS ROBY |

*****************************************************************************

**SHAUN FERGUSON'S AND THE CITY OF NEW ORLEANS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants, Shaun Ferguson and the City of New Orleans (the "City Defendants"), submit the following Reply in Support of their Motion for Summary Judgment [Doc 109] and to Plaintiffs' Opposition [Doc. 122] (the "Opposition"), and respectfully show the Court the following.

1. **Plaintiffs' *Monell* claim should be dismissed because Plaintiffs concede that the City Defendants' training and supervision involving Officer Burmaster did not involve policy decisions.**

It is axiomatic that to establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001). A policy or custom is official only "when it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy." *Id*. (quoting *Jett v. Dallas Indep. Sch. Dist*., 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)).

However, Plaintiffs, in their Opposition, admitted that "the failure of training and oversight that Plaintiffs allege in this case are ***entirely at the operational level***, rather than the policymaking

1

level."[1] Plaintiffs continued, "[t]here is no dispute that the City chose to provide some training and supervision to Burmaster – the dispute is about ***whether the City failed operationally*** in how it carried out that training and supervision."[2] This concession constitutes a judicial admission. As such, any factual dispute as to the first required element of Plaintiffs' *Monell* claim is therefore resolved in the favor of the City Defendants. Summary judgment should be granted to the City Defendants on the *Monell* claims for this reason, alone.

The Fifth Circuit recognizes that judicial admissions may be made in parties' pleadings and serve to remove a fact question beyond controversy. See *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 477 (5th Cir. 2001) (counsel's statements during deposition that plaintiff was not "making any kind of physical injury claims" and "we're waiving any physical injury claims" constituted a judicial admission which could not be contradicted by affidavit or otherwise). *Martinez* explained,

> A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention. A statement made by counsel during the course of trial may be considered a judicial admission if it was made intentionally as a waiver, releasing the opponent from proof of fact.

*Id*., (citing *McCullough v. Odeco., Inc*., No. CIV.A. 90–3868, 1991 WL 99413, at *2 (E.D. La. May 30, 1991). The court further explained,

> By contrast, an ordinary evidentiary admission is merely a statement of assertion or concession made for some independent purpose," and it may be controverted or explained by the party who made it. A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party.

*Id*. (punctuation and citations omitted).

---

[1] Doc. 122, p. 8.
[2] *Id*. (emphasis added).

Plaintiffs, represented by sophisticated counsel, made this concession in the context of their opposition to the application of Louisiana's discretionary immunity statute, La. Rev. Stat. § 9:2798.1, to bar Plaintiffs' state law claims. Plaintiffs cited *Pierre v. Wellpath, LLC*, 2022 WL 2263693 (E.D. La., June 23, 2022), a case that did not involve a *Monell* claim. *Pierre* involved a lawsuit against a Sheriff for negligence in training and supervising deputies in connection to a jail. The Court found it significant that the Sheriff was bound by training requirements found in La. Rev. Stat. §§ 40:2404.2 and 40:2405.8. The Court ruled that dismissal was not proper upon the Sheriff's claim for discretionary immunity.

Since Plaintiffs have committed themselves to argue that the City Defendants' training and supervision of Officer Burmaster did not involve an "official policy," so be it. This is a strategic choice that is not unreasonable given the flaws in their *Monell* claims.

It should be noted that nowhere in their pleadings did Plaintiffs ever explicitly describe what the "official policy" was that they sought to base their *Monell* claim upon. An "official policy" is a key element of a *Monell* claim, which Plaintiffs have avoided addressing to this point.[3] The importance of showing an official policy is, among other things, to be able to determine whether the policy was a "moving force" for a plaintiff's claimed Constitutional violation, which is the third element of Plaintiffs' *Monell* claim. Without a clearly defined complained of policy, a plaintiff may attempt, as Plaintiff does in this case, to bring in sundry unrelated "bad" evidence in order to improperly influence a jury without connection to the elements dictated by the Supreme Court in *Monell*. Further, even if the Plaintiffs had adequately described a policy (*e.g.*, a policy to treat all dogs as threats), the evidence relied upon by Plaintiff – a single slide show provided to officers and the employment history of Officer Burmaster unrelated to dog encounters – is not

---

[3] See Doc. 60, ¶¶ 112-137; Doc. 71 (Memorandum in Opposition to City Defendants' Motion to Dismiss Monell Claim as Contained in the Second Amended Complaint); and Doc. 122.

sufficient to contradict the clear and direct evidence of (1) Sergeant Duplantier, who trains recruits and commissioned officers regarding use of force upon animal, who testified that NOPD does ***not*** have a policy to treat all dogs as threats, and (2) the other evidence that shows that NOPD were not deliberately indifferent to the need to train and supervise officers with regard to lawful use of force upon dogs.

Plaintiffs cannot have it both ways in connection to their *Monell* claims or their state law claims. Either they allege that training and supervision of Burmaster were based on ***policy*** decisions or they allege that training and supervision were ***operational*** decisions. Plaintiffs have opted for arguing operational, so their *Monell* claim should be dismissed. Otherwise, their state law claims would be dismissed.

2. **Plaintiffs' allegations in the Second Amended Petition are not supported by competent evidence.**

   a. **Rebuttal to Plaintiffs' Evidence Chart.**

Plaintiffs include in their Opposition a chart in which they list items of evidence that they contend supports their Opposition.[4] The chart below is the City Defendants' rebuttal to that chart. As seen below, the evidence relied upon by Plaintiffs is immaterial and/or inadmissible.

| Plaintiffs' allegation/evidence in support | City Defendants' response |
|---|---|
| "Officer Burmaster reported use of force thirty or more times at NOPD" | Officer Burmaster's prior uses of force not involving animals should be excluded at trial based on FRE 403 and 404(b).[5] Unless a prior occurrence is "substantially similar" it cannot support a claim of an existence of a pattern to support a claim of municipal liability.[6] |
| "Burmaster's use of force includes "an incident in 2012 when he shot and killed a | This fact is true. In 2012, Officer Burmaster's shot a dog. The incident was |

---

[4] Doc. 125-1, pp. 4-5 of the Opposition.
[5] See Doc. 123-1 (City Defendants' Second Motion *in Limine*), pp. 2-4.
[6] See Doc. 115 (Order and Reasons), p. 6.

4

| | |
|---|---|
| dog while investigating a property damage complaint." | investigated and no allegation of any NOPD policy violation was made against Officer Burmaster.[7] However, this single prior dog shooting does not constitute a pattern sufficient to support a claim of municipal liability. |
| Allegation: "Burmaster's use of force has been the subject of multiple complaints." <br><br> Evidence: "there have been five complaints about Burmaster's use of force" | None of the five formal investigations by NOPD resulted in a finding of policy violation against Officer Burmaster.[8] In addition, none of those five investigations involved shooting of a dog.[9] |
| "at least PIB has approved 22 rule violations by Burmaster." | The 22 rule violations included only incidents (each incident was investigated for multiple potential rule violations).[10] These prior incidents did not involve dogs or use of force and are not admissible for the reasons given in the City Defendants' Second Motion *in Limine*.[11] |
| "PIB has sustained 22 rule violations by Burmaster, including violations regarding verbal intimidation, moral conduct, professionalism, performance of duty a, and neglect of duty." | As stated above, these prior incidents are not substantially similar to the dog shooting incident and are not admissible for the reasons given in the City Defendants' Second Motion *in Limine*.[12] |
| Allegation: NOPD's training is deficient "because it copies a U.S. Department of Justice COPS program training while taking out passages about the low risk and general friendliness of approaching dogs, and information about the "specific tactics" for dealing with animals." <br><br> Evidence: "Compare verbatim match between R. Doc. 56-2 (NOPD Training) with R. Doc. 56-3 (US DOJ COPS training). <br><br> And the Expert Report of Jim Crosby. | This item is discussed below. |

---

[7] See Doc. 109-5, pp. 39:5 – 45:12.

[8] *Id*. 40:15 – 45:12.

[9] *Id*.

[10] See Doc. 122-3, pp. 21:20 – 25:20

[11] Doc. 123-1.

[12] *Id*.

5

| Officer Burmaster admitted an Instagram post about an ethics test. | This not admissible under FRE 403 and 404(b). |

### b. Plaintiffs "additional relevant facts."

Plaintiffs also cite "additional relevant facts," but most of these facts are taken out of context and misconstrue the testimony of the witnesses. Some of the facts are irrelevant.

### i. Sergeant Duplantier.

The City Defendants do not disagree with Plaintiffs' contention that Sergeant Duplantier stated that it was wrong for the slide presentation shown to him at his deposition by Plaintffs' counsel to exclude the concepts: "approaching dogs are almost always friendly;" an officer should not "always view a dog running towards them as a threat;" and "[d]ogs are seldom dangerous."[13] However, Sergeant Duplantier testified that NOPD trains its officers to "go in thinking the dogs are friendly, but we're constantly assessing to see if that doesn't hold true."[14] Thus, Plaintiffs' supposition that the slide presentation reflects the entirety of NOPD training is simply not true. The single slide presentation cannot not support an inference that NOPD trained its officers to consider all dogs as dangerous given the uncontradicted direct evidence otherwise available.

### ii. Plaintiffs' other evidence is inadmissible or immaterial.

All of the remaining facts cited by Plaintiffs at page 6 of their opposition are either inadmissible or non-material. For example, how often other officers shot their guns and the size of Burmaster's use of force file are wholly irrelevant to any issue. In addition, Plaintiffs cite the fact that Officer Burmaster's partner opined that it would have been "more prudent" for Officer Burmaster to have made kissing noises later than when Officer Burmaster made the sounds,

---

[13] Doc122-5, p
[14] Doc. 122-5, 130:19 – 131:25.

although the partner did not point this out to Officer Burmaster at the time. This opinion is not probative as to Officer Burmaster's use of force.

Officer Burmaster shot a dog in 2012. He was not terminated because there was no policy violation. So, as of April 9, 2019, Officer Burmaster had shot only one dog previously. In addition, this fact does not support a claim that the City Defendants were deliberately indifferent given that the single incident does not show a pattern.

The City Defendants do not dispute that Officer Burmaster was involved in a case, reported at *State v. Lociano*, 2019-0497 (Ct. App. 4 Cir. August 22, 2018), 254 So. 3d 761, in which he conducted a warrantless search of an automobile and the Court of Appeals found the search to be without probable cause. The City Defendants agree that a record of such matter should have been in Officer Burmaster's personnel file but was not. However, the facts of the car search are very different than the facts in this case and do support a *Monell* claim based on deliberate indifference. The case opinion is otherwise inadmissible as against Officer Burmaster as evidence of prior bad acts. Fed. R. Evid. 404(b).

Expert James Crosby's opinion as to supervision and retention is the subject of the City Defendants *Daubert* motion.[15] Mr. Crosby is not qualified by any metric to give testimony on managing a law enforcement agency or supervising its officers. Among other reasons, Mr. Crosby's last experience supervising any officers was 20 years ago and there is no indication that he has performed any continuing education on the subject. He has never, to counsel's research, provided an expert opinion on the subject of the proper supervision, discipline or retention of law enforcement officers. His testimony on this subject should be excluded.

---

[15] Doc. 121.

### 3. There are no genuine disputes as to the City Defendants' material facts.

Contrary to Plaintiffs' manufactured controversy, the clear evidence shows that the City Defendants' Motion for Summary Judgment is based on undisputed material facts.

*First*, Sergeant Duplantier clearly and extensively explained NOPD's training for officers with respect to dog encounters and use of force upon dogs.[16] None of the prior discovery responses contradicted anything Sergeant Duplantier testified about. For example, Sergeant Duplantier testified that "we teach to the policy."[17] Hence, the City Defendants identification of NOPD polices was reasonable, especially given that it was relatively early in discovery. The discovery response was accurate.

In addition, Sergeant Duplantier explained that officer training is provided through the Academy, the Professional Standards and Accountability Bureau ("PSAB"), and with online courses. In particular, the NOPD provided training to commissioned officers between 2000 and 2014 specifically in handling animals and mandated an online course through the ASPCA, each of which Officer Burmaster was required to attend.[18] In addition, PSAB provides monthly training for officers through "daily training bulletins."[19] Sergeant Duplantier testified that "one of the DTBs dealt with, you know, handling animals and being confronted by animals, et cetera."[20] However, Sergeant Duplantier does not work at PSAB and there was a new captain at PSAB when Sergeant Duplantier attempted track down the animal training DTB.[21] Sergeant Duplantier could not obtain

---

[16] Doc 109-4, Ex. B, pp. 23:2 – 25:21, 27:3 – 30:24; 48:15 – 49:1; 50:17 - 50:21; 121:10 – 124:21; 128:11 – 128:14; 109-6, Ex. D, Excerpts of Deposition of Derrick Burmaster, pp. 180:25 – 181:24.15 Ex. B, 23:2 – 25:21; 122:10-124:21
[17] Doc 109-4, Ex. B, p. 48:20.
[18] Doc 122-5, pp. 23: 7 – 25:1.
[19] *Id.*, 25:1 – 25:18.
[20] *Id.*, 25:16 – 25:18.
[21] *Id.*, 26:5 – 26:16.

PSAB records regarding the prior DTB dealing with animals.[22] Sergeant Duplantier also testified that some records may not exist at all because of a previous cybersecurity issue that caused some electronic data to be lost.[23] When he was shown a copy of the slide presentation, he testified that it looked like a PSAB daily training bulletin, but because he had not seen it before he declined having knowledge of where the document came from.[24] There is no contradiction in this testimony.

*Second*, according to the official records of NOPD, there were only eight animal shooting by NOPD officers between 2012 and April 10, 2021.[25] Plaintiffs contend that testimony of Sergeant Debra Pruitt in which she answered yes to Plaintiffs' counsel's question "is it correct that dogs get shot multiple times every year by the NOPD."[26] However, Sergeant Pruitt was designated only to testify as to the facts of the shooting and the Public Integrity Bureau's investigation relating to the shooting.[27] Sergeant Pruitt provided no explanation of what she based her answer upon, and Plaintiffs counsel asked no follow up questions. Plaintiffs' argument,[28] that Sergeant Pruitt's vague, unsupported, and personal opinion somehow puts into dispute the clear facts shown by the NOPD's record, is without merit.

*Third*, Plaintiffs contend that the fact, "NOPD trained its officers to evaluate risks posed by each potential animal encounter faced by officers and not to consider every animal encountered to be a threat" is in dispute.[29] Plaintiffs base this argument on Officer Burmaster's testimony in which he stated he was familiar with the presentation "The Problem of Dog-Related Incidents and

---

[22] *Id.*
[23] *Id.*, 66:15 – 67:6.
[24] *Id.* 127:25 – 128:12.
[25] Doc. 109-1, p. 11 (citing Ex. C (Helou Deposition), p. 48:18 – 49:1).
[26] Doc. 122-7, 73:10 -12.
[27] Id., 10:23 – 11:10.
[28] Doc. 112, p. 11.
[29] Doc. 122, p. 11.

Encounters."[30] Plaintiffs contend that the slide presentation does not have certain language in it regarding not to consider every dog a threat, etc. However, the undisputed testimony of Sergeant Duplantier was that NOPD trained its officers that they should not consider every animal a threat. The mere absence of language in one slide presentation, taken in isolation, does not create a dispute when there is clear and positive evidence that such training was actually given.

*Fourth*, Plaintiffs dispute that Officer Burmaster did not violate any NOPD policy in connection with his only other dog shooting, which occurred many years previous, on January 1, 2012.[31] The shooting event was reviewed by NOPD and a report was filed. However, no disciplinary complaint was made against Officer Burmaster and he, obviously was not found to have violated any policy. Plaintiffs surmise that because Officer Burmaster reported afterwards that he was afraid of being bitten, he must have acted unreasonably in shooting the dog in 2012. This speculation cannot create a dispute where there is none. There is no dispute as this genuine issue of material fact.

## CONCLUSION

For the above and foregoing reasons, Defendants, Shaun Ferguson and the City of New Orleans, respectfully pray that their Motion for Summary Judgment be granted and all claims be dismissed against them with prejudice and at Plaintiff's cost.

---

[30] Doc. 122, p. 11 (citing Doc 122-2, 182:6-25, 250:20-251:7).
[31] Doc. 122, p. 11.

Respectfully submitted:

*/s/ James M. Roquemore*_____
**JAMES M. ROQUEMORE, LSB #40035**
ASSISTANT CITY ATTORNEY
james.roquemore@nola.gov
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET, SUITE 5E03
NEW ORLEANS, LOUISIANA 70112
TEL: (504) 658-9800
FACSIMILE: (504) 658-9868

*Counsel for Shaun Ferguson and the City of New Orleans*