**Firearm discharge**   PIB Control Number: ASI # 2015-02   Received: Jan 25, 2015

Item Number: A-29402-15

**Classification/Sub-classification:** Weapon(s) Discharge / Intentional On-Duty - Hit

**Involved citizen:**

   DOG

**Officers / employees involved:**

   SENIOR POLICE OFFICER Ryan Morgan [01237/019969]

   **Officer / employee current info:**

   Bureau: FOB - Field Operations Bureau
   District / Division: 5th District
   Division Assignment: Night Watch

   **Snapshot - Officer / employee information at time of incident:**

   Windows Username: 019969
   Bureau: FOB - Field Operations Bureau
   District / Division: Fifth District
   Division Assignment: C Platoon
   Unit Assignment: Patrol
   Working Status: Regular Working
   Shift Hours: Between 11pm-7am
   Rank/title: POLICE OFFICER 2
   Age: 30   Years of employment: 8   Years with unit: 4
   Off duty: No   Off duty employed: No

**Officer / employee witnesses:**

   SENIOR POLICE OFFICER Aundeah Kearney [02146/025603]

   **Officer / employee current info:**

   Bureau: FOB - Field Operations Bureau
   District / Division: 5th District
   Division Assignment: DIU Persons

**Summary:**

   Officer Morgan and Officer Kearney were investigating a trespass call for service at an abandoned residence. while investigating a pit bull growled and then ran in the direction of the officers. Morgan fired 1 shot and his partner discharged her CEW. The CEW missed but the dog made a sound as it were hit by a bullet. The dog scurried away and was not able to be located.

   Use of force deemed justified by a vote of 3-0 by UOFRB on 4/3/16.

**When/where:**

Date/time occurred: Jan 25 2015  03:54

CITY DEFENDANTS - 001793

Incident Location: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Precinct: 5th District
County: Orleans Parish

**Linked files:**

ASI 2015-02   (pdf)
ASI 2015-02   (pdf)
Criminal RPT   (doc)
Firearms request   (docx)
FTN 2015-0018 UOF RPT   (pdf)
Incident recall   (pdf)
lab exam   (doc)
Ryan Morgan DOG   (mp3)
statement of Officer Andia Curney 5th district   (WMA)
T1   (pdf)


**Auto-linked incidents ( Linked through common Item Number)**

A-29402-15:    Use of force

**Status/assignment information:**

Status: Completed  Priority: ASI

Opened: Assigned:    Due: 01/30/2015       Completed: 04/03/2016

Disposition: Use Of Force Authorized

Unit assigned: PIB F.I.T.
Handled at field/unit level: No
Investigator assigned: POLICE SERGEANT Andre Leblanc
Supervisor assigned: POLICE SERGEANT Kevin Burns Jr.
Source of information: NOPD Employee
Extension Due Date:


**Organizational component(s):**

Bureau: FOB - Field Operations Bureau
District / Division: Fifth District
Division Assignment: C Platoon
Unit Assignment: Patrol
Working Status: Regular Working
Shift Hours: Between 11pm-7am


**Entered by: POLICE LIEUTENANT John Helou on Feb 28, 2018 at 07:00**

CITY DEFENDANTS - 001794

DEPARTMENT OF POLICE

INTEROFFICE CORRESPONDENCE

**TO:** Deputy Chief Arlinda P. Westbrook  **DATE:** November 16, 2015
Public Integrity Bureau
**FROM:** Sergeant Andre' LeBlanc Jr.
Public Integrity Bureau–FIT
A.S.I. # 2015-02
**SUBJECT:** P/O Ryan Morgan, EI #19969, 5th District
P/O Aundeah Kearney, EI #25603, 5th District

---

ITEM #: __A-29402-15__  DISTRICT __5th District__  ZONE __A01__

LOCATION OF FIREARMS DISCHARGE: __1424 Annette Street__

DISCHARGE DATE & TIME __01/25/15 at 3:54am__ ORIGINAL SIGNAL __63__

TYPE OF DISCHARGE: INTENTIONAL __X__ NEGLIGENT ____ S.W.A.T ACTION ____

INJURIES: NONE ____ SUSPECT ____ ANIMAL __X__ OFFICER ____ OTHER ____

FATALITY: NONE __X__ SUSPECT ____ ANIMAL ____ OFFICER ____ OTHER ____

BWC ISSUED (Kearney): YES __X__ NO ____   BWC ON: YES __X__ NO ____
BWC ISSUED (Morgan): YES __X__ NO ____   BWC ON: YES __X__ NO ____

IN CAR CAMERA: YES __X__ NO ____ IN CAR CAMERA ON: YES ____ NO __X__

CEW ISSUED (Kearney): YES __X__ NO ____ CEW EFFECTIVE: YES ____ NO __X__

WEAPONS DATA: MAKE __Glock__ MODEL __22__ CALIBER __40__

RANGE QUALIFICATIONS: YES __X__ NO ____ CERTIFICATION DATE __08-20-14__

ADMINISTRATIVE VIOLATIONS OBSERVED: YES ____ NO __X__ UNDETERMINED ____

TRAINING ISSUES OBSERVED: YES __X__ NO ____ UNDETERMINED ____

DISCIPLINARY ACTION WARRANTED: YES ____ NO __X__

(If yes, explain in remarks)
OFFICER(S) RECOMMENDED FOR COMMENDATION: YES ____ NO __X__

**REMARKS:**

# INTRODUCTION

On January 25, 2015, at 3:41am, Fifth District Police Officers Ryan Morgan and Aundeah Kearney were dispatched to 1424 Annette Street under item A-29402-15 to investigate an allegation of subjects trespassing. The officers arrived and proceeded to the rear of the residence because there was no porch on the front of the residence. Once on the porch, the officers could not retreat because of its condition. An aggressive, growling and barking pit bull was not immediately visible to them, but charged them. Officer Morgan fired his departmental weapon and Officer Kearney deployed her electronic control weapon. The animal was struck by Officer Morgan's discharge and ran away. A canvass of the area was conducted and the animal was unable to be located.

# INVESTIGATION

On Sunday, January 25, 2015 at 2:26am, a person identified as Shannon contacted the NOPD Communication Division regarding a white male wearing a black hoodie and brown pants trespassing inside of a residence at 1428 Annette Street. The call was given a code 2 priority and the call was broadcasted. Unit 530C, Sergeant Landries Jackson was notified the call was holding for dispatch at 2:34am. The call was dispatched to unit 531C, Officer Ryan Morgan and Recruit Aundeah Kearney, at 3:41am. Upon arrival at the location at approximately 3:50am, Officer Morgan recognized the address to be a bad address and the correct location was 1424 Annette Street.

The officers approached the front door of the location and learned the front door of the location was locked. The officers went to the rear of the property and discovered there was no door. The officers climbed onto the (not so sturdy) porch at which point a dog was heard growling inside of the residence. Officer Morgan informed Recruit Kearney there was a dog inside and the dog (a brown pit bull) walked into the doorway of the residence. The dog maintained an aggressive stance and continued growling. Officer Morgan removed his firearm from the holster as he was unable to quickly retreat due to the condition of the porch and the lack of stairs. Officer Morgan discharged his firearm at the dog, just after it stopped and barked at them. The dog appeared to have been struck it in the torso area of the body. The dog ran in the officer's direction on the porch and Recruit Kearney deployed her CEW at the dog. The TASER probes missed the dog, which ran off into the open yard and then unknown. Officer Morgan then notified Sergeant Landries Jackson of the discharges. Immediately after being notified of the incident, Sergeant Jackson notified the dispatcher and Command Desk. Officer Morgan and Recruit Kearney's actions were captured on the body worn camera; the actions were consistent with their statements. The video depicted the officers continue into the residence to ensure no one was trespassing inside and met a female, who was asleep in the first room to the left of the entryway. She was unaware of any other occupants present and their search revealed no additional persons.

Command Desk notified Lieutenant Christopher Kalka (Unit Commander of the Force Investigation Team), unit 2140. Lieutenant Kalka then notified Sergeant Kevin Burns, unit 2142, on Sunday, January 25, 2015, at 4:30am. Sergeant Burns notified Sergeant Regina Williams for assistance with the investigation. Sergeant Burns proceeded to the location of occurrence at 5:08am and arrived at 5:11am.

Upon arrival at the scene, Sergeant Burns met with Fifth District C Platoon Supervisor, Sergeant Landries Jackson. Sergeant Jackson provided Sergeant Burns with a public safety statement, which was provided to him by Officers Ryan Morgan and Officer Aundeah Kearney. He stated the officers were dispatched to 1424 Annette Street under item A-29402-15 to investigate an incident of criminal trespass.

*ASI 2015-02* *Page 3 of 6*

When the officers arrived, they proceeded to the rear side of the residence. Once the officers reached the porch, they were met by an aggressive pit bull that charged. Officer Morgan fired his departmental weapon and Officer Kearney deployed her electronic control weapon. Sergeant Jackson indicated both officers were still on scene.

On Sunday, January 25, 2015, at 5:16am, Sergeant Burns began to survey the scene, which was described as follows: 1424 Annette Street was a wood framed, duplex home, which appeared to be abandoned or unoccupied. The residence was elevated approximately 3 to 4 feet from the ground. There was an empty lot to the right of 1424 Annette Street, which was used to access the rear of the residence. There was no door on the rear door frame, which left the property open. There was a set of damaged/missing wooden stairs and a wooden porch which was water logged and partially covered in mold. On the top of the porch was a spent casing and an electronic control weapon cartridge. There was a single drop of blood on the porch approximately 10 inches from the spent casing. No other articles of evidentiary value were found. Ms. Susan Hutson of the Independent Police Monitor's Office accompanied Sergeant Burns as he made observations.

On Sunday, January 25, 2015, at 5:19am, Sergeant Burns met with Officer Morgan, who was instructed to unload his departmental issued Glock. Officer Morgan handed Sergeant Burns a partially charged magazine that he removed from his weapon; 13 WIN 40 S&W live rounds were ejected from the magazine. Officer Morgan ejected 1 WIN 40 S&W live round from the chamber of his weapon.

On Sunday, January 25, 2015, at 5:21am, Sergeant Williams met with Officer Kearney in the 1400 block of Annette Street for the giving of a formal statement. Officer Kearney stated she was investigating a criminal trespass with Officer Morgan. She proceeded to the rear of the house and went onto the damaged porch. There were not any steps and the porch was falling apart. Once on the porch, she heard growling, and then the dog emerged and charged. She stated Officer Morgan fired his weapon and then she deployed her electronic control weapon. The animal was struck and ran away never to be located. Officer Kearney indicated a female named Amber was located in the residence. She stated the female was cooperative and indicated she did not hear anything and was instructed to gather her personal belongings.

On Sunday, January 25, 2015, at 5:23am, Sergeant Burns met with Officer Morgan in the 1400 block of Annette Street for the giving of a formal statement. Officer Morgan stated he and Recruit Kearney were dispatched to a signal 63 (trespassing) at 1424 Annette. Because there was not a porch on the front of the residence, they proceeded to the rear door. Once they were on the porch, they were encountered by a brown pit bull dog. Officer Morgan described the dog as aggressive, growling and barking. Officer Morgan drew his weapon and the recruit drew her electronic control weapon. The dog lunged at Morgan and he fired one shot. Officer Morgan stated he had no place to retreat due to the condition of the structure (porch). The dog was not immediately visible because it came from behind the wall. The animal fled northwest away from the incident location. Officer Morgan indicated his body worn camera was activated and he did not use any other force. At the conclusion of the interview, Sergeant Burns instructed Officer Morgan to report to the New Orleans Police Crime Lab to test fire his departmental issued weapon. The test fire would allow the investigator to compare the spent casing on scene to the test fired spent casing.

On Sunday, January 25, 2015, at 6:20am, Officer Shelia Matthews, assigned to the New Orleans Police Academy, arrived to inspect Officer Morgan's weapon. The weapon was in compliance with all departmental approved parts and trigger. Officer Matthews provided Officer Morgan with one .40

ASI 2015-02                                                                                                    Page 4 of 6

caliber round replacing the fired round. Officer Matthews provided a facsimile of Officer Morgan's range qualifications which indicated Officer Morgan's most recent qualification date was August 20, 2014; and the Firearms Training Procedure Assessment Report which revealed Officer Morgan's weapon was in proper working condition and the ammunition was compliant with department policy.

On Sunday, January 25, 2015, at 7:25am, Crime Lab Technician Veronica Manuel, unit 5115, arrived at 1424 Annette Street to process the scene. The incident location was photographed as it existed. The 40 caliber Win S&W spent casing was collected by Technician Manuel and placed on the books as evidence as exhibit 001. Officer Kearney's Electronic Control Weapon cartridge number C4103822P was photographed and then collected by Sergeant Burns. The cartridge was inspected and then returned to Officer Kearney to be exchanged for a new cartridge at the Training Academy.

On Monday, January 26, 2015, at 1:20pm, Sergeant Burns reviewed Officer Morgan's body worn camera video of the incident. The video depicted Officer Morgan exit the passenger side of a police vehicle and walk to the rear of the location. Officer Morgan indicated the incorrect address was possibly given for the property. The lighting was poor and the steps were non-existent or in poor condition at best. It appeared Officer Morgan lost his footing once he climbed onto the porch. His partner also lost her footing while trying to climb onto the porch. Officer Morgan approached the door and scanned with his light. Sergeant Burns could not see past the first room. A dog could not be seen. Less than a minute later, Sergeant Burns could hear a dog barking. Morgan placed himself in front of his partner and shouted, "Back up!" Officer Morgan was observed retreating while giving instructions. Sergeant Burns could hear what sounded to be movement that could have been attributed to the animal. For a moment the view from the camera was blocked, possibly from Officer Morgan's arm, as he had drawn his weapon and raised it toward the target (dog). A single shot was heard followed by a cry from the dog. The dog then ran from the residence, at which time, Recruit Kearney discharged her electronic control weapon. The dog cried a second time. It was unclear if her weapon made contact with the dog. Officer Morgan immediately notified his supervisor. During Sergeant LeBlanc's review of the video, the description provided by Sergeant Burns was confirmed.

On Monday, January 26, 2015, at 1:26pm, Sergeant Burns reviewed Officer Kearney's body worn camera video. The video footage corroborated Officer Morgan's body worn camera video, but was from a slightly different vantage point. During Sergeant LeBlanc's review of the video, the description provided by Sergeant Burns was confirmed.

Note: When Sergeant LeBlanc reviewed the BWCs of both officers, the female who was encountered in the residence provided identification to the officers. Officer Kearney returned to the patrol car and checked the name via the mobile data terminal and determined the female was not wanted. She was allowed to leave the scene.

Additionally, Sergeant LeBlanc observed another BWC video from the location, which depicted several persons who lived in the abandoned property. They appeared to approach the officers as they were waiting on the FIT investigators. The individuals had questions about the whereabouts of the brown pit bull. They also communicated a disturbance with a male who they believed called the police. Officer Morgan asked the individuals whether they wished to file an incident report regarding the incident and they replied that they didn't. Officer Morgan also suggested they obtain their property from the abandoned residence. Officer Morgan followed them to the rear of the residence and then entered the residence at which point, he discovered several persons had entered the residence and settled in. Officer Morgan called Officer Kearney for assistance and the persons were escorted from the residence. The

evidence related to the officer involved shooting was not compromised, but could have been. Officers Morgan and Kearney participated in the 2015 In-Service program at the NOPD Training Academy after the incident, where Sergeant LeBlanc provided instruction regarding the proper manner of securing the scene of officer involved shootings, or use of force incidents and identifying, notifying and/or providing the identity of any witnesses to the supervisor and investigators.

A review of the call received by Operator 195 revealed there was a female caller who indicated there were squatters going in and out of her yard at 1427 Annette Street. The female indicated the person went into the house across the street (1428 Annette Street). She described him as a white male wearing a black "hoodie" with brown pants. She also indicated it was not the first time they called the police and the house she was referring to was abandoned. The dispatcher asked the caller whether her phone number was ▓▓▓▓▓. The call was ended with the dispatcher informing the complainant that the police would be dispatched to the location.

The accompanying Incident History Report indicated the call was received at 2:26am from 1428 Annette Street and given a priority 2. The name of the caller was listed as Shannon with the phone number of ▓▓▓▓▓▓▓▓. The caller checked the status of a police unit at 2:50am and an officer was dispatched at 3:41am. The officers arrived at 3:50am and at 3:55am, unit 530C notified the dispatcher of a TASER discharge. At 4:00am, 530C was notified to call Command Desk for notification details.

On Friday, January 30, 2015, at 3:05pm, Sergeant Burns obtained and reviewed the ballistic examination report. The report indicated the spent casing recovered from the incident location was of the 40 caliber class and exhibited an elliptical shaped firing pin. The results of the examination did not address the question of whether the casing located at the scene was fired by Officer Morgan's weapon. To have the question answered, Sergeant Burns prepared a firearms request, which detailed a request for Morgan's test fired spent casing be compared to the casing found on scene. The exam was completed and revealed the casing recovered from the incident location at 1424 Annette Street was fired by Officer Morgan's weapon.

On Friday, January 30, 2015, at 3:10 p.m., Sergeant Burns reviewed Officer Kearney's electronic control weapon (ECW) footage. It was 5 seconds long. It depicted a brown pit bull dog approaching her direction. As the animal came within 4 feet of her, she deployed her ECW; it could not be determined if the animal was struck by her weapon. It appeared Officer Kearney was falling or stumbling when she deployed. Sergeant LeBlanc was unable to determine the distance between the dog and Officer Kearney, but the dog appeared to be approaching the officers.

## Summary

On January 25, 2015, at 3:41am, Fifth District Police Officers Ryan Morgan and Aundeah Kearney were dispatched to 1428 Annette Street under item A-29402-15 to investigate an allegation of subjects trespassing. The officers arrived and proceeded to the rear of the residence because there was no porch on the front of the residence. Once on the porch, the officers could not retreat because of its condition. An aggressive, growling and barking pit bull was not immediately visible to them, but charged them. Officer Morgan fired his departmental weapon and Officer Kearney deployed her electronic control

weapon. The animal was struck by Officer Morgan's discharge and ran away. A canvass of the area was conducted and the animal was unable to be located.

Additional information was obtained from Officers Morgan and Kearney, which was not collected during the original interview. Officer Morgan indicated after the firearm discharge, they were flagged over to a residence across the street from the location by an individual, who wished not to identify themselves by name. The male was not able to be scene clearly either as he stood in the door of the residence and indicated the police was called by someone from their home because the individual originally described by to the dispatcher was using water from the water hose in the yard without his authorization. The male indicated the trespassing male relocated to the rear of the home as they called the police and then unknown. Sergeant LeBlanc relocated to 1427 Annette Street on January 27, 2015 and January 28, 2015 at approximately 12:00pm in an attempt to locate the resident at 1427 Annette Street and to locate any possible witnesses to the incident and was not able to locate any witnesses.

Officer Morgan also elaborated that the location of the incident was determined to be the actual location very easily, due to the fact the home appeared to be the only un-kept/abandoned residence on the block. Based on the information they obtained prior to arriving at the location, Officer Morgan did not believed he needed additional units to assist with the search of the property, as he believed he needed only to remove anyone occupying the residence if located anyone and the fact the call did not mention any details of anyone being violent.

Officer Morgan indicated he did not believe the female he encountered after the incident would provide any pertinent information relative to the firearm discharge due to the fact he interviewed her and the other individuals appeared to be evasive during the interview and the information was captured on his body camera.

Officer Kearney was unable to provide any additional information and indicated she was following Officer Morgan's direction during the Field Training phase of her training.

Respectfully Submitted,

*For LeBlanc*  Date: 4-13-16

**Sergeant Andre' LeBlanc Jr.**
**Force Investigation Team**
**Public Integrity Bureau**

Note: Additional information to follow in supplemental ASI.

CITY DEFENDANTS - 001800

DEPARTMENT OF POLICE

INREROFFICE CORRESPONDENCE

**TO:** Deputy Chief Arlinda Westbrook          **DATE:** 4-13-16
Public Integrity Bureau
**FROM:** Lt. Kevin Burns
Public Integrity Bureau
A.S.I. # 2015-02
**SUBJECT:** Supplemental

Page 1 of 4

    On Sunday, January 25, 2015, at 4:30 a.m., Lieutenant Christopher Kalka (Retired) made notifications to criminal investigator (former) Sergeant Kevin Burns. Criminal investigator Sergeant Regina Williams assisted with the criminal investigation. During this time, there was only one administrative investigator assigned to FIT (Sergeant Andre Leblanc). He was unavailable on this date. Being self-critical of FIT related procedures, Lieutenant Burns acknowledged the importance of a concurrent criminal and administrative investigation. Additional notifications to IPM Susan Hutson were made and she later arrived to make her independent observations of the investigation.

    Following this particular incident and many other officer involved shootings/discharges well into 2016, FIT and the department has made improvements to scene management. Though training and oversight, FIT drafted a *District Personnel Responsibilities for Officer Involved Shootings* check list to assist district personnel in scene preservation prior to the arrival of FIT. Looking back on this incident, Lieutenant Burns examined areas of the investigation for consideration for improvements.

    When Lieutenant Burns arrived on scene, he noticed the officers were not separated. The officers were later separated and interviewed by the responding FIT investigators. Although the scene was confined to the house, there was no crime scene tape placed around the scene to limit pedestrian traffic in and out of the scene.

    Lieutenant Burns, through training and oversight, understood the importance of a canvass. A canvass was not completed until January 27, 2016 and was not thorough enough to include locations and who was contacted. As mentioned in the initial ASI, potential witnesses and the occupant of the residence were released prior to being interviewed as part of the FIT investigation. There were no surveillance cameras that may have captured the incident.

CITY DEFENDANTS - 001801

Officer Morgan appeared calm. There was no odor of an alcoholic beverage coming from his breath. There was nothing about his speech or the manner he communicated that led Lieutenant Burns to believe he was under the influence of any form of drug. Officer Kearny appeared calm. There was no odor of an alcoholic beverage coming from her breath. There was nothing about her speech or the manner she communicated that led Lieutenant Burns to believe he was under the influence of any form of drug. Both officers' uniform parts were in place. There was no sign of a struggle or evidence suggestive of a dog bite or transfer evidence.

Officer Kearny had zero use of fore incidences prior to 1-25-15. Officer Kearney never discharged her weapon during her career as a police officer to date. She has no complaints of unauthorized force. Officer Morgan never discharged his weapon prior to 1-25-15 or any time after. Under DI-1 number 2014-0381-R (May 6, 2014) Officer Morgan had a rank initiated complaint for an alleged failure to report a neck hold. The disposition in that matter was not sustained. Officer Morgan had no complaints of unauthorized force. Kearney was hired on May 25, 2014. Morgan was hired May 24, 2009.

A lone trespasser at an abandoned home was the only information known to the officers at the time. A description was provided of only one person. Additional violators were not known. The possibility of a dog being present was not known. A check of the residence by the officers to the dispatcher may have aided the officers in knowing if there were similar calls to the location involving squatters and or animal attacks. After reviewing the BWC footage, the lieutenant noticed a dog bowl in the center of the floor and a bark was heard prior to the dog revealing itself. The officers could have developed a different course of action. Electing to continue with the search, the officers found themselves confronted with an aggressive pit bull and were not in a position to retreat due to the hazardous condition of the porch. Manpower was not an issue for this particular call.

Lieutenant Burns and Sergeant Sam Davis examined the tactics used by the officers by viewing the BWC footage. The officers exited their marked police vehicle and made their approach to the residence. Due to poor lighting, the officers both used their flashlights to illuminate the scene and ducked under windows as they approached the entry point on the C side of the structure. The officers arrived at the rear porch and engaged in casual conversation all while standing in the fatal funnel. The officers did not request radio traffic to be held and did not lower their radios for a proper building search. After the weapon and CEW discharge, Officer Morgan began to communicate on his radio to make notifications. He did so while standing in the fatal funnel. Officer Kearny's back was to the residence at one point as she also stood in the fatal funnel. The officers entered the first room and made contact with one occupant. The officers did not search the remainder of the room or the house immediately. Officer Morgan separated from Kearney to search the hall and only one other room. The remainder of the home was not thoroughly searched. The occupant was not patted down for weapons. The officers exited the residence to focus on locating the spent casing rather that

CITY DEFENDANTS - 001802

continuing to search and secure the residence. At one point the officers holstered their weapons and continued searching the residence with the occupant in between them and a flash light only. Officer Morgan had his gun hand in his pocket while speaking to the occupant of the residence. Officer Kearney did observe a knife in the residence and removed it to the exterior portion of the house for officer safety.

After speaking with Sergeant Sam Davis, the appropriate training to correct the tactics used by these officers would be building searches. This particular training is available at the NOPD training academy. It should be noted building searches were part of the initial training both officers received during their time at the NOPD Academy only. Officer Morgan was a field training officer and Kearney was a recruit at the time. Officer Morgan's senses did not appear to be heightened during the search and gave the overall impression of complacency. Officer Morgan also made the comment, "someone's dog is about to get shot." Comments as such may impress upon the minds of jurors, investigators or any other observer of his BWC footage.

**Recommendations**

Justified **X**    Not Justified____    Within Policy **X**    Violated Policy____

Training Consideration **X**    Policy Consideration **X**

Equipment Consideration____    Commendation____

Use of force: Justified. Officer Morgan and Officer Kearney were faced with a pit bull. The dog took an aggressive stance while barking. Officer Morgan fired his weapon at the dog. The dog reacted with a cry as a result of being shot. There were no strike marks in the floor so the bullet remained in the dog. The dog ran in the officers' direction and Officer Kearney deployed her CEW. It was ineffective due to an incomplete circuit.

**Policy Violations:** None

**Policy Consideration:** It is recommended that not only firearms and driving be considered for yearly requalifications for all officers, but building searches, simmunitions, grappling or any other important aspect regarding training an officer receives during the academy phase. (Some training an officer receives is only once during their time at the academy.)

**Equipment:** None

CITY DEFENDANTS - 001803

**Tactics:** The tactics used in this incident were poor and can be improved through the below listed training recommendations

**Training Consideration:** It is recommended that Officer Kearney and Officer Morgan both attend a building search refresher course at the NOPD Academy to improve upon their tactics. Officer Morgan was a field training officer on the date of this incident and remains to date. Officer Morgan can benefit from an FTO refresher course. His interactions with future recruits will have a lasting effect on how they become molded into permanent status as officers. During this training, it should also address prohibited communication while BWC's are activated.

**Commendation:** None

Respectfully Submitted,

*[signature]* 4-13-16

Lt. Kevin Burns Jr.
Force Investigation Team
Public Integrity Bureau

CONCUR / ~~DOES NOT CONCUR~~

*[signature]* Gwen Nolan        Date: 4.13.16
Commander Gwen Nolan
Public Integrity Bureau

CONCUR / ~~DOES NOT CONCUR~~

*[signature]*                    Date: 4-13-16
Deputy Chief Arlinda P. Westbrook
Public Integrity Bureau