**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| DEREK BROWN and | * | Civil Action No. 22-00847 |
| JULIA BARECKI-BROWN | * | |
| | * | SECTION: L |
| VERSUS | * | |
| | * | HONORABLE ELDON E. FALLON |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON,  and the CITY OF | * | DIVISION: 4 |
| NEW ORLEANS | * | |
| | * | HONORABLE KAREN WELLS ROBY |

*************************************************************************

**PLAINTIFFS' OPPOSITION TO THE CITY'S *DAUBERT* MOTION TO EXCLUDE**
**CERTAIN TESTIMONY OF JAMES CROSBY**

The City moves to prevent Dr. James Crosby[1] from opining that "Burmaster failed to follow overall best practices and the policy and procedure of the New Orleans Police Department in his reckless deployment of deadly force against this dog."[2] The City makes that argument in the context of Plaintiffs' Fourth Amendment claim. The City's argument fails because "recklessness" is not a judicially defined or legally specialized term in the Fourth Amendment analysis, and it is not the same as opining about "reasonableness," which is for the jury to decide. The standard for determining whether the Fourth Amendment was violated is not recklessness.

The City also moves to exclude Dr. Crosby's opinions concerning the supervision, retention or discipline of police officers because it claims that his "qualifications *only* relate to the subject area of canine aggression and best practices for handling aggressive dogs."[3] This is incorrect. Crosby does in fact have substantial professional experience in the supervision, retention and discipline of police officers.

The City's motion should be denied in its entirety.

---

[1] James Crosby obtained his PhD after submitting his report in this matter.
[2] R. Doc. 121-1, p. 1.
[3] R. Doc. 121-1, p. 2.

## LAW AND ARGUMENT

Defendants' motion should be denied because Mr. Crosby's opinions are both reliable and relevant.

Fed. R. Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or other wise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"Rule 702 gives the district court considerable discretion to admit or exclude expert testimony." *Watson v. Snap-On Tools, Inc.*, No. 04-1313-A, 2006 U.S. Dist. LEXIS 55301, at *8 (W.D. La. July 25, 2006) (Drell, J.) (citing *General Electric Co. v. Joiner,* 522 U.S. 136, 138-39 (1997)). "Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592-93, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), trial courts are to act as 'gatekeepers,' making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.' The gatekeeping function is meant to ensure that 'any and all scientific testimony or evidence admitted is not only relevant, but [also] reliable.'" *Watson*, 2006 U.S. Dist. LEXIS 55301, at *9 (quoting *Daubert,* 509 U.S. at 589).

"[T]he rejection of expert testimony is the exception rather than the rule." *Id.* at *9-10. "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* at *10. (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)). "As the Court in *Daubert* stated: 'Vigorous cross-examination, presentation of contrary

evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 595).

"In general, 'questions relating to the bases and sources of an expert's testimony affect the weight to be assigned that opinion rather than its admissibility.'" *Olson v. City of Burnet*, No. A-20-CV-00162-JRN, 2021 U.S. Dist. LEXIS 69851, at *3 (W.D. Tex. Feb. 25, 2021) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). "The perceived flaws in the testimony of [the] experts are matters properly to be tested in the crucible of adversarial proceedings; they are not the basis for truncating that process." *14.38 Acres of Land*, 80 F.3d at 1079.

Experts may not "offer bald legal conclusions." *Estate of Baker*, 2018 U.S. Dist. LEXIS 244564, at *12 (citing *C.P. Interests, Inc. v. California Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001)). "However, there is no longer a 'per se rule against testimony regarding ultimate issues of fact.'" *Id.* (quoting *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 239 (5th Cir. 1983)). "Federal Rule of Evidence 704 ('Rule 704') provides that testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." *Id.*

**A.    The Court should deny Defendants' motion because Crosby's opinions meet the *Daubert* test for reliability in that they are based on his professional experience, education, training and personal observations from working in law enforcement for decades.**

"The party offering expert testimony…bears the burden of establishing 'by a preponderance of the evidence that the testimony is reliable.'" *Ricks v. City of Alexandria*, No. 12-0349, 2014 U.S. Dist. LEXIS 121244, at *21 (W.D. La. Aug. 28, 2014) (quoting *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). "In analyzing reliability, the trial court must assess whether the reasoning or methodology supporting the expert's testimony is valid. The point

3

is to exclude expert testimony that is based solely on subjective belief or unsupported speculation." *Watson*, 2006 U.S. Dist. LEXIS 55301, at \*10-11 (citing *Daubert*, 509 U.S. at 590).

Importantly, "the Advisory Committee Note to Rule 702 of the Federal Rules of Evidence explains that *testimony from an expert whose reliability is based mainly on that expert's personal observations, professional experience, education, and training may be admissible*." *Watson*, 2006 U.S. Dist. LEXIS 55301, at \*12 (emphasis added). Specifically, that Committee Note provides:

> Nothing in this amendment is intended to suggest that *experience alone—or experience in conjunction with other knowledge, skill, training or education*—may not provide sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates *that an expert may be qualified on the basis of experience*.

*Id.* at \*13 (emphasis added) (quoting 2000 Advisory Committee Note to Rule 702). Indeed, "[i]n certain fields, *experience is the predominant, if not sole, basis* for a great deal of reliable expert testimony." 2000 Advisory Committee Note to Rule 702 (emphasis added).

Illustrative of this point is the Fifth Circuit decision of *St. Martin v. Mobil Expl. & Producing U.S. Inc.*, 224 F.3d 402, 405 (5th Cir. 2000). In that case, the defendant challenged the admissibility of plaintiff's expert's opinions because the expert "hasn't published an article relating to his specific hypothesis in this case, his hypothesis has not been subject to peer review and is not supported by specific studies and he hasn't conducted tests to verify his hypothesis." The Fifth Circuit rejected the defendant's arguments, and held that the expert's opinions were sufficiently reliable based on his professional experience, education, and training and personal observations: "Dr. Chabreck's expertise in marshland ecology and in the erosion of vegetative mats in particular, along with his personal observation of the St. Martins' property, sufficiently qualified him to testify as an expert." *Id.* The *St. Martin* Court viewed plaintiff's expert's

4

professional experience, education, and training and personal observations to be sufficient "alternative indices of his testimony's reliability and relevance." *Id.* at 407.

*Estate of Baker v. Castro*, No. H-15-3495, 2018 U.S. Dist. LEXIS 244564, at *11-12 (S.D. Tex. Sep. 18, 2018) is a case involving an alleged unconstitutional police shooting that is also illustrative. There, the Defendants enlisted Dirden as an expert in police practices, policies and procedures to offer opinions about a shooting by a police officer and the training practices of the officer's department. Specifically, Dirden rendered opinions that the shooting was not a result of excessive force or unlawful policies of the Police Department, and that the shooting officer's conduct comported with that of "other reasonable police officers." *Id.* at *5.

The Plaintiff moved to exclude Dirden's testimony on the ground that his opinions were unreliable because they were speculative, lacked foundation and were allegedly unsupported by scientific theories or techniques. After considering Dirden's extensive professional experience with the Houston Police Department, first as a patrol officer, then as a Sergeant, and ultimately as an Assistant Chief and officer instructor, the Court denied the motion, reasoning:

> "Dirden is qualified by experience to provide expert testimony in areas such as law enforcement policies and procedures. The majority of Dirden's report focuses on these issues. He discussed the HPD policies and procedures … and … established a connection between his years of experience as a trainer, supervisor, and Assistant Police Chief to his conclusions and demonstrated that his experience and knowledge can be applied to the facts of this case. Considering the nature of his testimony, it was not necessary for Dirden to rely on a scientific theory or technique to make his testimony reliable."

*Id.* at * 11-12. The court further concluded that "Dirden is qualified to express his opinion on whether the behavior exhibited by" the shooting officer reflected "principles of reasonableness." *Id.* at *13-14.[4]

Here, Mr. Crosby's opinions are reliable because they are based on and sufficiently tied to his professional experience, education, training and personal observations from working in law enforcement for decades. His professional experience leads to the conclusions he has reached, his experience is a sufficient basis for his opinions and, it his experience is reliably applied to the facts.

Moreover, courts routinely accept expert testimony as helpful to the jury in cases involving a police officer's use of force. Indeed, "[w]hen the jury will be asked to decide whether [an officer]'s use of force was 'objectively reasonable' considering various facts and circumstances, *expert opinions on those facts and circumstances is crucial testimony*." *Olson v. City of Burnet*, No. A-20-CV-00162-JRN, 2021 U.S. Dist. LEXIS 69851, at *13 (W.D. Tex. Feb. 25, 2021) (emphasis added). As such, qualified experts are permitted to "opin[e] about what

---

[4] *See also Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) ("[T]he text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience…no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."); *Olson v. City of Burnet*, No. A-20-CV-00162-JRN, 2021 U.S. Dist. LEXIS 69851, at *13 (W.D. Tex. Feb. 25, 2021) ("The Court finds that [police practice expert's] opinions are sufficiently tied to his experience and training as well as his perception of facts he observed. The motion [to exclude him] is denied."); *Kumho Tire Co.*, 526 U.S. 137 (1999) (the Supreme Court endorsed expert testimony based on personal observation and experience); *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665 (5th Cir. 2015) ("[A]n expert witness's testimony (and its reliability) may be based on his personal and professional experience and his own observation."); *Holsclaw v. USAA Gen. Indem. Co.*, Case No. 2:21-cv-00810, 2022 U.S. Dist. LEXIS 135753, at *6 (W.D. La. June 15, 2022) ("The Court finds that Mallet is qualified to testify as to causation based on his lengthy experience in the related industry."); *Tingle v. Hebert*, Case No. 15-626, 2018 U.S. Dist. LEXIS 207536, at *9 (M.D. La. Apr. 19, 2018) ("[I]f the expert's testimony does not rest on traditional scientific methods, the court may permit testimony where a proposed expert witness bases her testimony on practical experience rather than scientific analysis….In such cases . . . courts recognize that experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience.'") (quoting *Kumho Tire*, 526 U.S. at 149-50); *LeBlanc v. Chevron USA, Inc.*, 396 F. App'x. 94, 100 (5th Cir. 2010) (same)); *Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001) ("[T]here is no question that an expert may still properly base his testimony on 'professional study or personal experience.'").

a reasonable police officer in a similar position" would have done." *Id*. Experts may also testify about whether a police officer's "actions fell short of police officer standards" and policies. *Id.* at * 11. Courts also routinely accept expert opinions about whether the practices of a police department, such as training, supervision and hiring, meet industry standards. *Olson*, 2021 U.S. Dist. LEXIS 69851, at *11 (holding that opinions about whether a police department's "practices are below the standard of other police departments" are admissible and "well within the purview of an expert.").

The Court must next determine whether Mr. Crosby's testimony is relevant under *Daubert* and Fed. R. Evid. 702. The "dispositive question" regarding relevance in this context "is whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue,' not whether the testimony satisfies the plaintiff's burden on the ultimate issue at trial." *Watson*, 2006 U.S. Dist. LEXIS 55301, at *16 (quoting *Daubert*, 509 U.S. at 591; Fed. R. Evid. 702. As discussed below, Crosby's testimony will assist the jury in understanding the evidence and determining facts at issue, and is therefore relevant.

**B.      Dr. Crosby's report does not contain opinions about "reasonableness," and Crosby will not give any such testimony at trial. He should not be barred, however, from using other terms just because the City feels they are similar to reasonableness.**

Although Federal Rule of Evidence 704 states that "an opinion is not objectionable just because it embraces an ultimate issue," the opinion still "must be helpful to the trier of fact" and cannot "merely tell the jury what result to reach."[5] Crosby intends to opine that Burmaster failed

---

[5] Federal Rule of Evidence 704, Advisory Committee Notes.

to follow overall best police practices[6] and NOPD's policies and procedures[7] in his reckless deployment of deadly force against the Plaintiffs' dog. It was reckless in that it endangered the lives of other people in the immediate vicinity in violation of NOPD policy.

The City accepts that Crosby will not testify about "reasonableness" at trial. Indeed, the parties have already stipulated that no expert shall be permitted to give opinions about "reasonableness" at trial. The City's argument is that, in opining that Burmaster failed to follow law enforcement policies, standards and best practices, he may not use the term "reckless" because it is too similar to the prohibited and legally specialized term "reasonable."

The City cites no authority for this position other than *Zorich v. St. Louis Cty.*, No. 17-1522, 2018 U.S. Dist. LEXIS 141506. (E.D. Mo. Aug. 21, 2018). There, the Defendants then filed a *Daubert* motion to exclude the Mr. Crosby's use of the term "unreasonable":

> Mr. Crosby's Opinions 7-10 are that Defendants' conduct upon entering the residence at 3036 Caprock Court was "objectively unreasonable" under the circumstances. According to Case: 4:17-cv-01522-PLC Doc. #: 30 Filed: 06/11/18 Page: 8 of 13 PageID #: 385 9 Opinion 7, the service of the search warrant at 3036 Caprock Court without additional prior surveillance of the property was effected "without reasonable and objective justification." According to Opinion 8, the lack of a dog-encounter plan for service and the failure to use nonlethal force on the aggressive dog at 3036 Caprock Court were "objectively unreasonable." Opinion 9 deems the speed with which officers evaluated the situation at 3036 Caprock Court "unreasonable," and Opinion 10 concludes that the use of force was "not a reasonable response" to that situation. Defendants ask the Court to exclude all testimony concerning Mr. Crosby's Opinions 7,

---

[6] Law enforcement experts are permitted to give "opinions regarding best practices" for police officers. *Neal v. City of Hempstead*, No. 4:12-cv-1733, 2014 U.S. Dist. LEXIS 110367, at *14 (S.D. Tex. Aug. 11, 2014).

[7] Law enforcement experts are also permitted to testify about what "would be a violation of police policies and procedures." *Doucet v. City of Bunkie*, No. 04-1231-A, 2008 U.S. Dist. LEXIS 18336, at *15 (W.D. La. Mar. 10, 2008)

8, 9, and 10, because that testimony draws legal conclusions that are
properly drawn by the Court and not by an expert witness.[8]

Thus, in *Zorich*, the defendants only sought to exclude the use of the term "unreasonable." The court agreed with the defendants that Crosby could not opine as to "reasonableness," and excluded any such testimony.

However, the defendants in *Zorich* took no issue whatsoever with Crosby's use of the term "reckless," and did not even reference the term "reckless" in their *Daubert* motion.[9] The *Zorich* court, therefore, made no ruling about the term reckless because the issue was not before it. If anything, the *Zorich* court's holding should be interpreted as permitting the term reckless, because the court noted that Crosby's report used both terms "reasonable" and "reckless," but ruled only that "Crosby's opinions relating to the 'reasonableness' of Defendants' actions are legal conclusions and invade the province of the jury." *Id.* at *4, 6-7.

One of the factors that the jury may consider in determining whether Burmaster's use of deadly force on Apollo was objectively reasonable under the totality of the circumstances is whether Burmaster's conduct violated NOPD policy. In evaluating the reasonableness of an officer's use of force, "a policy violation can serve as evidence that an act was objectively unreasonable." *Dawes v. City of Dall.*, No. 17-1424, 2021 U.S. Dist. LEXIS 260494, at *7-8 (N.D. Tex. Sep. 24, 2021) (citing *Anthony v. Morton*, No. 05-0027, 2007 U.S. Dist. LEXIS 101798, 2007 WL 628750, *7 (W.D. Tex. Jan. 31, 2007) (holding that officer's violation of police baton policy "is *certainly probative in determining if [officer] acted in an objectively reasonable manner.*") (emphasis added); *Hope v. Pelzer*, 536 U.S. 730, 743-44, (2002) (holding that official's disregard

---

[8] *See* Defendants' Memorandum in Support of their *Daubert* Motion filed in the *Zorich* case, attached as **Ex. A**, pp. 8-9 (emphasis added).
[9] **Ex. A**.

of policy "provides equally strong support for the conclusion that they were fully aware of the wrongful nature of their conduct."). "Relatedly, a policy violation may show that a reasonable, alternative course of action was available to the officer." *Dawes*, 2021 U.S. Dist. LEXIS 260494, at *8.

Here, NOPD's Use of Force Policy 1.3, para. 32 specifically states that "when shooting at an animal," the officer "must be cognizant of the surroundings" to "ensure that there is no risk to people in the area."[10] When he shot Apollo, Burmaster violated this policy. He shot at the ground from a diagonal angle in the direction of his partner Officer Roussel, causing bullet ricochet to injure Roussel.

Crosby opines that Burmaster's actions in recklessly putting his partner at risk in this manner was a violation of NOPD's Use of Force Policy. Crosby further opines that this was not just a minor or technical violation of policy, but was rather an egregious violation in light of Burmaster's recklessness. His opinion in this regard is helpful to the jury in understanding how irresponsible Burmaster's firearm discharge was, and why it constituted a major violation of NOPD's Use of Force Policy. Jurors are not experts on issues like police policy compliance or bullet ricochet, and Crosby's specialized professional expertise will be helpful to them in understanding these issues. Conversely, Crosby is not merely telling the jury what result to reach because he is not opining that Burmaster's actions were or were not "reasonable." As the Court is aware, the legal standard for determining whether the Fourth Amendment was violated is not recklessness. Experts are permitted to testify about issues "which go to the ultimate issue[] of … what conduct is 'objectively reasonable'—so long as they do not use … 'judicially defined' and 'legally specialized' terms." *M.H. v. Cty. of Alameda*, No. 11-2868, 2015 U.S. Dist. LEXIS 44, at

---

[10] R. Doc. 110-12, p. 27, para. 32.

*6-8 (N.D. Cal. Jan. 1, 2015). Crosby's testimony is therefore permissible under the Federal Rules of Evidence, even though it may "embrace" the "ultimate issue" of reasonableness.

### C.   Crosby has substantial professional experience in the supervision, retention and discipline of police officers, and may provide expert testimony on these issues.

 "[A]n expert witness's testimony (and its reliability) may be based on his personal and professional experience and his own observation." *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665 (5th Cir. 2015). The City alleges that Crosby "has no education, specialized training, or current professional affiliations to any organization that would qualify him to offer an opinion regarding NOPD's supervision, discipline, or retention of" police officers.[11] This is incorrect.

Dr. Crosby was an officer with the Jacksonville Sherriff's Office for twenty-two years. During that time, he served as a patrol officer, a Sergeant and a Lieutenant. His professional duties included conducting and supervising police patrol operations, investigating reported criminal activity, conducting "knock and talks," responding to emergency calls, training, supervising and disciplining junior officers, and investigating "use of force complaints" made against other officers. He has received extensive training in all of these areas from the Jacksonville Sheriff's Office and elsewhere.[12]

As a Lieutenant, Crosby supervised up to four Sergeants, forty officers, and additional officers in training at any given time. He also served on the Firearms Review Board designated to determine whether discharges of firearms by officers were justified and reasonable under Florida Statute and department guidelines. As both a Sergeant and a Lieutenant, Crosby had a day-to-day

---

[11] R. Doc. 121-1, p. 5.
[12] R. Doc. 130-17, p. 16-17.

#101139185v2

responsibility to oversee the training of both officers and supervisors in police operations, investigations and the use of force.[13]

"The qualification standard for expert testimony is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Emperador-Baker v. Jazz Casino Co., LLC*, No. 16-17058, 2017 U.S. Dist. LEXIS 188501, 2017 WL 5483766, at *1 (E.D. La. Nov. 15, 2017). Because Crosby has substantial professional experience and training, supervising and disciplining police officers during his decades-long career at the Jacksonville Sherriff's Office, he is much more than "minimally qualified" to opine in these areas.

The City next alleges that Crosby's opinions are not reliable due to the time that has passed since he was employed by the Jacksonville Sheriff's Office. The City cites no jurisprudence to support this argument. That is likely because the available case law on this topic goes against the City. *See Estate of Casillas v. City of Fresno*, No. 16-1042 AWI-SAB, 2019 U.S. Dist. LEXIS 23710, at *17 (E.D. Cal. Feb. 13, 2019) (holding that police practices expert who had not worked as a police officer since the "80's and 90's" and had since spend the rest of his career working as a securities fraud investigator was qualified to testify as a police practices expert, and any criticisms regarding how long it had been since he worked in the field went to the weight of his testimony).

Finally, the City argues that Crosby's testimony should be excluded due to his description of one of the nine categories of documents that he reviewed in rendering his opinions: "Various documents regarding past discipline and performance issues with Burmaster provided in

---

[13] R. Doc. 130-17, p. 16-17.

discovery."[14] Because of this, the City claims that "[i]t is impossible to know" what records Crosby analyzed in rendering his opinions. This argument is unavailing. The City is well aware that it produced a specific set of records regarding Burmaster's disciplinary history and prior use of force incidents on September 7, 2022.[15] These records are detailed on Plaintiffs' Exhibit List.[16] These are the only Burmaster records that Plaintiffs have provided to Crosby to review—no more, no less. The Plaintiffs have not provided Crosby with any other secret records regarding Burmaster other than the ones the City produced. As such, the City knows exactly what Burmaster records Crosby reviewed. If it was still somehow confused, it should have taken Crosby's deposition, but chose not to. It also could have met and conferred with Plaintiffs' counsel on the issue to seek clarification, but chose not to.

## CONCLUSION

The City's motion should be denied in its entirety.

Respectfully submitted,


/s/Tarak Anada_____          /s/William Most_____
TARAK ANADA (La. Bar No. 31598)     WILLIAM MOST (La. Bar No. 36914)
JONES WALKER LLP               DAVID LANSER (La. Bar No. 37764)
201 St. Charles Avenue, Ste. 4900    MOST & ASSOCIATES
New Orleans, LA 70170            201 Saint Charles Ave., Ste. 114 #101
Telephone: (504) 582-8322         New Orleans, LA 70170
Facsimile: (504) 589-8322         Tel: (504) 509-5023
Email: tanada@joneswalker.com      Email: williammost@gmail.com

**Counsel for Plaintiffs Derek Brown and Julia Barecki-Brown**

---

[14] R. Doc. 130-17, p. 18.
[15] *See* the City's September 7, 2022 Reponses to Plaintiffs' Requests for Production of Documents, attached as **Ex. B** (the City's document production was supplemented one time by order of Magistrate Judge Roby).
[16] R. Doc. 100.

#101139185v2