UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA ZORICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:17-cv-1522 PLC |
| | ) | |
| COREY ZAVORKA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE EXPERT TESTIMONY PURSUANT TO DAUBERT**

COME NOW Defendants, and offer the following as their Memorandum of Law in Support of their Motion to Exclude the Testimony of Plaintiff's Endorsed Expert James Crosby pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).

**I. Factual and Procedural Background**

On July 8, 2016, Mr. Crosby submitted a preliminary expert report containing ten numbered opinions (hereafter known as "Opinion 1," "Opinion 2," etc.). *See* Exhibit A. Plaintiff Angela Zorich has endorsed Mr. James Crosby as an expert witness to offer opinions included in his report. Because all ten of Mr. Crosby's Opinions fail to assist the trier of fact under the standard set out by Federal Rule of Evidence 702, Defendants ask the Court to exclude Mr. Crosby as an expert in this matter.

**II. Standard of Review and Legal Requirements**

Federal Rule of Evidence 702 governs the admission of expert testimony in federal court. The Supreme Court has interpreted Rule 702 to require district courts to serve as "gatekeepers," admitting only the expert evidence based on specialized knowledge that is both "relevant and reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). A district court's

1

EX. A

decision to exclude expert testimony because it lacks relevancy or reliability is subject to review for abuse of discretion. *Schmidt v. City of Bella Villa*, 557 F.3d 564, 570 (8th Cir. 2009).

The Eighth Circuit has mapped the contours of *Daubert*'s reliability and relevancy requirements. "First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). "Second, the proposed witness must be qualified to assist the finder of fact." *Id.* The third and final prong of Rule 702 requires that the expert's testimony must be "based on sufficient facts or data" collected via "reliable principles and methods," and that the expert must have "reliably applied" those principles and methods "to the facts of the case." Fed.R.Evid. 702(b)-(d).

Although "the factual basis of an expert opinion" usually "goes to the credibility of the testimony, not the admissibility," an expert opinion "so fundamentally unsupported that it can offer no assistance to the jury" must be excluded. *Nebraska Plastics, Inc., v. Holland Colors Americas, Inc.*, 408 F.3d 410, 416 (8th Cir. 2005) (qtd. case omitted). An expert opinion is fundamentally unsupported if it fails to fit the relevant and specific facts of the case at hand. *Lawrey v. Good Samaritan Hosp.*, 751 F.3d 947, 952-53 (8th Cir. 2014).

### III. Argument

Defendants ask the Court to exclude Mr. Crosby's testimony because it does not meet the criteria for admissibility under Federal Rule of Evidence 702. Mr. Crosby is simply unqualified to offer some of his ten Opinions; in forming others, he fails to reliably apply sound principles and methods to the facts at hand. Finally, many of the ten Opinions are not fact-based opinions but legal conclusions: as such, they do not meet the relevancy requirement of Rule 702.

#### A. Opinions 1 and 2: The Constitutionality of the 3036 Caprock Court Warrant

2

Mr. Crosby's Opinions 1 and 2 are that defendants were issued a warrant to search plaintiff's residence at 3036 Caprock Court for municipal code violations without "any reasonable justification" for a search (Opinion 1). Therefore, the warrant was "potentially constitutionally invalid and unlawful" (Opinion 2). (Crosby Expert Report, 7)

Defendants ask the Court to exclude Mr. Crosby's testimony on Opinions 1 and 2 because he is not qualified to give it. The second prong of Rule 702 requires that a proposed expert witness possess the qualifications to assist the triers of fact in deciding the issues of fact before them. In his report, Mr. Crosby cites twelve publications that aided him in forming his Opinions. None includes a discussion on the issuance of administrative search warrants for municipal code violations or otherwise. Not a one is a work of scholarship on constitutional law. Mr. Crosby admits the gaps in his understanding during his own deposition: he agrees that he cannot opine on administrative search warrants as understood by Missouri law (Crosby Deposition at 42-43). To fill those gaps, he relies entirely on his own "experience and training" (Opinions 1 and 2).

Mr. Crosby's qualifications as an expert witness on police practices come solely from his experience. The Eighth Circuit requires a close fit between that experience and his expert testimony. "For an expert witness to be qualified based on experience, that experience must bear a close relationship to the expert's opinion." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009) (affirming District Court's holding that a traffic patrol commander cannot testify as an expert witness on civil rights violations or strip-search procedure, since there is no "close fit" between witness' experience and opinion). *See also, Robertson v. Norton Co.*, 148 F.3d 905 (8th Cir. 1998) (holding that a ceramist lacks the experience to opine on the "questions of syntax and emphasis involved in evaluating the warning" attached to a ceramic product).

3

Like the expert witnesses at issue in *Schmidt* and *Robertson*, Mr. Crosby cannot dovetail his experience with his opinions. Mr. Crosby's report attests to his service as a Police Officer in Jacksonville, Florida from 1977 to 1999. However, he has never served as a code enforcement officer. (Crosby Deposition at 67). And, despite testifying on aggressive dog behavior in more than seventeen cases in the past four years, he has never served as an expert on police policy or procedure-making (Crosby Deposition at 63). Though the *Robertson* ceramist had a lifetime's experience designing ceramic products, he was nevertheless unqualified to evaluate written policies for their safe use. Likewise, though Mr. Crosby may have executed numerous warrants, he is not equipped to answer the "questions of syntax and emphasis" involved in evaluating those written warrants.

Mr. Crosby also admits that while he may be familiar with Jacksonville's municipal code, such familiarity does not extend to the St. Louis County municipal code. He has no knowledge of provisions of the building code, the purpose behind each, or the safety concerns involved. Indeed the Affidavit of Marcellus Speight of the St. Louis County Department of Public Works establishes the health and safety concerns behind the St. Louis County Code provisions, as well as the reasonable justification for seeking the warrant for interior inspection. Further, instead of recognizing that an administrative warrant *is* a search warrant, Mr. Crosby differentiates between the two as he does between Jacksonville's "inspection warrants" and search warrants. (Crosby Deposition at 41-43). As the *Schmidt* court might say, there is no "close fit" between an officer who served a warrant in 1999 based on the Jacksonville, FL municipal code and an expert who opines on the validity of a warrant issued in 2014 in St. Louis County. The experience and expert opinion are separated by time, geography, and job description.

Case: 2:22-cv-10084-PEEF-KWR  Document: 048-1/13 Filed: 06/26/23  Page: 4 of 13

4

Mr. Crosby lacks the qualifications to reach his Opinions 1 and 2. Yet even if he were qualified to speak on the constitutionality of administrative search warrants, his Opinions would still be inadmissible. Even with Mr. Crosby's lack of qualification put aside, the substance of his Opinions is still subject to the requirements of Rule 702. Because Mr. Crosby's Opinions 1 and 2 are not fact-based opinions but legal conclusions, they fail to assist the jury in deciding the ultimate issues of fact in the case at hand. They fail to meet the first prong of Rule 702: they are irrelevant.

The Eighth Circuit holds that legal knowledge lies squarely in the realm of the Court; "resolving […] questions of law is the distinct and exclusive province of the trial judge" *McCabe v. Macaulay*, No. C05-73-LRR, 2007 U.S. Dist. LEXIS 14210 (N.D. Iowa, 2007). When an expert witness testifies to a legal conclusion, that "special legal knowledge of the judge makes the witness' testimony superfluous [and] [t]he admission of such testimony would give the appearance that the court was shifting to witnesses the responsibility to decide the case." *Farmland Indus. v. Frazier-Parrott Commodities, Inc.*, 871 F.2d 1402, 1409 (8th Cir. 1989) (qtd. in *Lipp v. Ginger C, L.L.C.*, Case No. 2:15-cv-04257-NKL, 2017 U.S. Dist. LEXIS 7413 (W.D. Mo. 2017)). Finders of fact already have the benefit of one judge's specialized legal knowledge; they do not need an expert witness masquerading as another judge.

In opining on the constitutionality of the warrant to search 3036 Caprock Court, Mr. Crosby is issuing a "superfluous" legal conclusion like the testimony excluded in *Farmland*, *Lipp*, and *McCabe*. He is invading the province of the trial judge, and of the judge who issued the warrant for 3036 Caprock Court. Mr. Crosby's own counsel acknowledges, in deposition that evaluating the Caprock Court warrant's accordance with Missouri law "calls for a legal

5

conclusion." She objects to Mr. Crosby's drawing the same legal conclusions in deposition that he has already drawn in Opinions 1 and 2. (Crosby Deposition at 84-85).

Furthermore, Mr. Crosby admits in deposition that police officers do not draw legal conclusions on the validity of their search warrants. Instead, officers can and do rely on the validity of a warrant issued by a judge (Crosby Deposition at 80). Yet his opinions fault Defendants for doing exactly that. Mr. Crosby's duties in the police department did not include evaluating the constitutionality of search warrants. Nor should they in the courtroom.

**B. Opinions 3 -6: Justification for the TAC Team's Dynamic Entry at 3036 Caprock Court**

Mr. Crosby's Opinions 3-6 evaluate the use of St. Louis County's TAC team to execute a dynamic, no-knock entry at the 3036 Caprock Court residence. He asserts in Opinion 3 that the TAC team's dynamic entry was unjustified, as "there was no exigency involved: no member of the public was at risk [and] no member of the occupying Zorich family was at risk." (Crosby Expert Report at 7). He concludes in Opinions 4 and 5 that no "credible evidence" justified the dynamic entry for reasons of evidentiary preservation or officer safety, and he states in Opinion 6 that the dynamic entry in fact created a dangerous situation at the 3036 Caprock Court residence (*Id.*).

Defendants ask this Court to exclude Mr. Crosby's expert testimony on Opinions 3, 4, 5, and 6, because Mr. Crosby lacks the qualifications to offer them. Like his testimony on Opinions 1 and 2, this testimony would violate the second requirement of Rule 702, and so would not assist the triers of fact in this case.

As stated above, the Eighth Circuit requires a "close fit" between an expert's experience and opinions (*Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). Once again, it is

6

a "close fit" that Mr. Crosby's testimony lacks. He never served as a code enforcement officer (Crosby Deposition at 67) or received any particularized training on property maintenance codes (*Id*.). Finally, he has "no information or knowledge" about the training that St. Louis County TAC team officers received in order to serve no-knock warrants safely. (Crosby Deposition at 90-91). Mr. Crosby is unqualified to evaluate the evidence of code violations at 3036 Caprock Court or the potential safety risks, either to residents or to officers, associated with those code violations.

Furthermore, the facts Mr. Crosby draws upon in forming Opinions 3-6 go to show that entering the residence at 3036 Caprock Court was necessary to ensure the safety of its inhabitants. Contrary to Mr. Crosby's unqualified statement that no evidence of a safety risk existed at 3036 Caprock Court, disconnected gas service at an occupied residence is in and of itself evidence of a significant safety risk, because it gives rise to the suspicion that an alternative method is being used to heat water in that residence. "When a gas water heater is the source of hot water to a residence, heating water by an alternative method is prohibited by the [St. Louis County] Plumbing Code because it poses a health hazard. The temperature of the water cannot be regulated, which in turn creates a risk of injury and insufficient sanitation." (Speight Aff. at para. 5). In alleging in Opinion 3 that "no member of the occupying Zorich family was at risk," Mr. Crosby has failed to consider those risks comprehended by St. Louis County's Plumbing Code and its Department of Public works.

Not only does disconnected gas service at an occupied residence pose a safety risk, it poses a risk that is serious enough to require the removal of residents for their own safety. "St. Louis County issues orders to vacate when a gas water heater is the source of hot water to an occupied residence and there is no gas service to the residence." (Speight Aff. at para. 8).

7

Finally, that safety risk also requires further investigation. Contrary to Mr. Crosby's assertion in Opinion 4, the lack of documented evidence of additional, interior code violations at 3036 Caprock Court speaks not to the impropriety of entering the residence but to its necessity: "serious code violations such as disconnected utilities that are visible from the exterior of a residence raise reasonable suspicion of interior code violations" which may pose additional safety risks to residents. (Speight Aff. at para. 6).

According to the objections of Mr. Crosby's own counsel, the scope of Mr. Crosby's expertise does not extend to the potential safety risks of a natural gas cutoff and the safety risks associated with alternative methods of heating a residence (Crosby Deposition at 65). An opinion of whether the dilapidated deck at 3036 Caprock Court posed a safety risk to the house's inhabitants is similarly beyond the scope of Mr. Crosby's expertise (Crosby Deposition at 66). Therefore, Mr. Crosby exceeds the scope of his expertise in alleging, in his report, that no such safety risks – or credible evidence of safety risks – existed.

Finally, to the extent Mr. Crosby opines that the use of the TAC team to execute the warrant was not objectively reasonable, such opinions constitute improper legal conclusions. In *Schmidt v. City of Bella Villa*, 557 F.3d 571 (8th Cir. 2009), *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995), *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003), *and Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1250 (10th Cir. 2013), the court specifically held that opinions that touch on the objective reasonableness of the use of force are inadmissible. Defendants develop the point further in the section below.

### C. Opinions 7-10: The "Objective Reasonableness" of Defendants' Conduct

Mr. Crosby's Opinions 7-10 are that Defendants' conduct upon entering the residence at 3036 Caprock Court was "objectively unreasonable" under the circumstances. According to

8

Opinion 7, the service of the search warrant at 3036 Caprock Court without additional prior surveillance of the property was effected "without reasonable and objective justification." According to Opinion 8, the lack of a dog-encounter plan for service and the failure to use nonlethal force on the aggressive dog at 3036 Caprock Court were "objectively unreasonable." Opinion 9 deems the speed with which officers evaluated the situation at 3036 Caprock Court "unreasonable," and Opinion 10 concludes that the use of force was "not a reasonable response" to that situation.

Defendants ask the Court to exclude all testimony concerning Mr. Crosby's Opinions 7, 8, 9, and 10, because that testimony draws legal conclusions that are properly drawn by the Court and not by an expert witness. Furthermore, in deciding the ultimate issue of the case, Mr. Crosby's testimony invades the province of the fact finders. As such, it does not assist the trier of fact and is not relevant under the requirements of Rule 702.

In the Eighth Circuit, "opinions that are 'phrased in terms of inadequately explored legal criteria' or that 'merely tell the jury what result to reach' are not deemed helpful to the jury, […] and thus, are not admissible under Rule 702." *United States v. Whitted*, 11 F.3d 782 (8th Cir. 1993) (holding that expert witness physician cannot testify directly to the ultimate issue of whether sexual abuse has in fact occurred). Within the narrower context of a use-of-force case, an expert witness cannot testify to the ultimate conclusion that officers' conduct comports, or fails to comport, with the legal standard of "objective reasonableness." (*For standard, see Graham v. Connor*, 490 U.S. 386 (1989)). Rules 702 and 704 require that courts "differentiat[e] between the officers' testimony that they saw no 'law enforcement' or 'legitimate' reason for [Defendant's use of force] and testimony that [Defendant's] actions were objectively

9

unreasonable.'" *Peters v. Woodbury County*, 979 F. Supp. 2d 901, 923 (N. D. Iowa 2013) (*aff'd sub. nom. Peters v. Risdahl*) (qting. *United States v. Perkins*, 470 F.3d 150 (4th Cir. 2006)).

Mr. Crosby's Opinions fall squarely on the inadmissible side of the line between a fact based opinion and a legal conclusion. Extensive precedent in use-of-force cases within and without the Eighth Circuit excludes expert opinions that are conclusory statements of "objective reasonableness" or the lack thereof (*See, e.g., Schmidt v. City of Bella Villa*, 557 F.3d 571 (8th Cir. 2009), *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995), *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003), *and Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1250 (10th Cir. 2013)).

Mr. Crosby's Opinions 7, 8, 9, and 10 are all conclusory statements of "objective unreasonableness." None of the Opinions are hypothetical statements alleging that *if* a reasonable police officer planned to serve a warrant under circumstances like those at 3036 Caprock Court, that reasonable officer would have performed additional surveillance, or attempted to use nonlethal force, or taken more time to evaluate the situation inside the residence. Nor is Mr. Crosby using his specialized knowledge to help the jury form an abstract understanding of the reasonable use of force. In fact, Mr. Crosby is unwilling during deposition to discuss the constitutional factors that make an officer's use of force reasonable: "I wouldn't be comfortable giving an opinion on that. There's too many legal factors." (Crosby Deposition at 83).

Instead of applying his specialized knowledge to a hypothetical or abstract case, Mr. Crosby applies the legal standard directly to the facts at hand. In doing so, he not only fails to assist the fact-finders but usurps their role as deciders of the case's ultimate issue. Mr. Crosby's invasion of the jury's province renders his testimony irrelevant under the first prong of Rule 702.

**D. Opinions 8 and 10: "Best Practices" in Police Encounters with Dogs**

10

None of the unqualified assertions and legal conclusions expressed in Mr. Crosby's ten Opinions survives the tests for reliable and relevant testimony laid out by the second and third prongs of Rule 702. Nevertheless, Defendant St. Louis County asks the Court to exclude testimony concerning Mr. Crosby's Opinions 8 and 10 for an additional reason: the two Opinions do not speak to any fact at issue in the case at hand. As such, they do not assist – and may even actively mislead – the trier of fact.

Mr. Crosby alleges that officers' failure to subdue the aggressive dog at 3036 Caprock Court departed from "best practices within the field of police encounters with dogs" (Opinion 8); likewise, the use of force on the aggressive dog was not in keeping with "best professional practices" (Opinion 10). In discussing best practices for police officers who encounter aggressive canines, Mr. Crosby is finally offering opinions in a subject his experience qualifies him to give. Nevertheless, these two Opinions are irrelevant.

Like the question of Mr. Crosby's qualifications, the application of his specialized knowledge to the relevant facts of the case is also a question of fit. Expert opinions that do not apply "the proper standard" are both irrelevant and "potentially unduly misleading and prejudicial, warranting their exclusion under Rule 403." *Langenbau v. Med-Trans Corp.*, 167 F. Supp. 3d 983, 999 (N.D. Iowa 2016) (excluding expert testimony that applied a measure of damages different from the standard accepted under Iowa law). *See also Peters v. Woodbury County*, 979 F. Supp. 2d 901, 925 (N.D. Iowa 2013) (excluding expert testimony on whether police conduct violated the Eighth Amendment "wanton and unnecessary use of force" standard when the correct standard was "objective reasonableness" under the Fourth Amendment) and *Lawrey v. Good Samaritan Hosp.*, 751 F.3d 953 (excluding expert testimony because the

11

opinions offered, while scientifically valid and offered by a qualified expert, "simply did not fit the facts of the case.")

Mr. Crosby cannot evaluate the policies of the St. Louis County Police Dept. against the "accepted best practices within the field of police encounters with dogs," because the "best practices" standard does not fit the facts of the case. The finders of fact in this case are tasked with deciding whether St. Louis County's policies and training for canine encounters were so deficient as to constitute "deliberate indifference to constitutional rights of its citizens." *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385 (8th Cir. 2007). "Best practices," whatever they may be, do not answer the question at hand.

The opinion that St. Louis County's policies and training do not meet an entirely different – and significantly higher – standard should not influence the decision-making process of the jury in this case. The *Langenbau* fact-finders were tasked with using the standard approved by Iowa law to value a plaintiff's estate; the expert witness' significantly higher valuation, based on an entirely different standard, would only mislead or prejudice them. Allowing the jury to hear that St. Louis County's policies and training may mislead the finders of fact, encouraging them to measure Defendants' conduct against Mr. Crosby's "best practices" rather than the law's deliberate indifference standard. It may well prejudice the jury, encouraging the false assumption that a county whose policies are not "best practices" is a county with a propensity to disregard the constitutional rights of its citizens. Failure to follow best practices is not equivalent to deliberate indifference. *Shadrick v. Hopkins County,* 805 F.3d 724, 752 (6th Cir. 2015); *Ross v. Univ. of Tulsa,* 180 F.Supp. 3d 951, 969 (N.D. Okla 2016); *Riggins v. City of Indianola,* 196 F.Supp.3d 681, 696 (N.D. Miss. 2016); Therefore, Defendants ask this Court to shield its fact-finders from confusion or prejudice by excluding Mr. Crosby's testimony on Opinions 8 and 10.

## IV. Conclusion

"The powerful nature of expert testimony, coupled with its potential to mislead the jury," warrants its exclusion in cases where the reliability and relevancy requirements of Rule 702 are not met. *United States v. Kime*, 99 F.3d 870, 884 (8th Cir. 1996) (*qting. United States v. Rincon*, 28 F.3d 921, 926 (9th Cir. 1994)). For the reasons listed above, Defendants respectfully urge this Court to exercise its gatekeeping function to keep Mr. Crosby from putting expert testimony that is neither reliable nor relevant before the fact-finders in this case.

**PETER J. KRANE**
**COUNTY COUNSELOR**

/s/ Priscilla F. Gunn
Priscilla F. Gunn #29729MO
Associate County Counsel
Pgunn@stlouisco.com
41 S. Central, Ninth Floor
Clayton, MO 63105
(314) 615-7042
(314) 615-3732 (fax)

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was sent and by the Court's electronic filing to all counsel of record this 11th day of June, 2018.

/s/ Priscilla F. Gunn

13