```
 1                UNITED STATES DISTRICT COURT

 2                EASTERN DISTRICT OF LOUISIANA

 3    DEREK BROWN and           *   CIVIL ACTION
      JULIA BARECKI-BROWN       *
 4                              *   DOCKET NUMBER: 22-00847
      VERSUS                    *
 5                              *   SECTION: L
      DERRICK BURMASTER,        *
 6    SHAUN FERGUSON, and       *   HONORABLE ELDON E. FALLON
      the CITY OF NEW ORLEANS   *
 7                              *   DIVISION:  4
                                *
 8                              *   HONORABLE KAREN WELLS ROBY

 9    **********************************************************

10

11        Deposition of DEREK BROWN, taken via Zoom with

12    the witness located in New Orleans, Louisiana, on

13    Wednesday, the 19th day of December 2022, beginning

14                       at 9:00 a.m.

15

16

17

18

19

20

21    Reported by:

22    Jill Cox, CVR, CCR

23    NVRA CVR #7553

24    LA CCR #2019002

25
```

**EXHIBIT B**

```
 1                APPEARANCES:
 2   FOR THE PLAINTIFF (S):  DEREK BROWN and JULIA
 3   BARECKI-BROWN
 4        TARAK ANADA, ESQUIRE
 5        JONES WALKER, LLP
 6        201 ST. CHARLES AVENUE
 7        NEW ORLEANS, LOUISIANA 70170-5100
 8        PHONE:  (504) 582-8322
 9        EMAIL:  tanada@joneswalker.com
10   FOR THE DEFENDANT (S):  SHAUN FERGUSON and the CITY
11   OF NEW ORLEANS
12        JAMES M. ROQUEMORE, ESQUIRE
13        ASSISTANT CITY ATTORNEY
14        1300 PERDIDO STREET, SUITE 5E03
15        NEW ORLEANS, LOUISIANA 70112
16        PHONE:  504-658-9800
17        EMAIL:  james.roquemore@nola.gov
18   FOR THE DEFENDANT (S):  DERRICK BURMASTER
19        C. THEODORE ALPAUGH III, ESQUIRE
20        GUSTE, BARNETT, SCHLESINGER & ALPAUGH, LLP
21        639 LOYOLA AVE STE 2130
22        NEW ORLEANS, LA 70113-3157
23        PHONE:  (504) 529-4141
24        EMAIL:  cta@gustebarnett.com
25   ALSO PRESENT:  JULIA BARECKI-BROWN
```

```
 1                  S T I P U L A T I O N
 2              It is hereby stipulated by and between
 3   counsel of record for the parties hereto that the
 4   oral deposition of DEREK BROWN, is hereby taken
 5   pursuant to notice and in accordance with the
 6   Louisiana Code of Civil Procedure, and for all uses
 7   and purposes thereby provided, via Zoom at New
 8   Orleans, Louisiana, on December 19, 2022, commencing
 9   at or about 9:29 a.m.
10              That all formalities in connection with the
11   taking of the deposition are hereby waived with the
12   exception of the swearing of the witness and
13   reduction of the questions and answers to typewritten
14   form, and the right of the witness to read and sign
15   the completed transcript of testimony was WAIVED;
16              That all objections, save those as to the
17   form of the questions and the responsiveness of the
18   answer, are hereby reserved until such time as this
19   deposition, or any part thereof, may be used or
20   sought to be used in evidence, such objections as
21   might have been made had the testimony been given in
22   open court.
23              That Jill Cox, CVR, CCR, officiated in
24   administering the oath to the above-named witness.
25
```

```
 1                        INDEX
 2                                                      PAGE
 3        Stipulations ...................................3
 4        Reporter's Page ...............................71
 5        Reporter's Certificate ........................72
 6   EXAMINATIONS
 7        Examination By Mr. Roquemore ...................5
 8        Examination By Mr. Anada ......................68
 9   EXHIBITS (NOT PROVIDED TO COURT REPORTER)
10        Exhibit 1.  Notice of Deposition ...............9
11        Exhibit 2.  Adoption form .....................30
12        Exhibit 3.  Photos ............................36
13        Exhibit 4.  Report of vet autopsy .............40
14        Exhibit 5.  Psych evaluation ..................51
15
16
17
18
19
20
21
22
23
24
25
```

```
 1        Q.   So from what I understand your observation
 2   of the dogs while you were arguing with your wife
 3   was that the dogs were not affected, necessarily, in
 4   any way by your argument?
 5        A.   Not that I recall.  I mean, they are
 6   excitable dogs.  So I don't recall them getting wild
 7   or anything other than their normal behavior.  They
 8   may have followed us around.  Yeah, I don't really
 9   remember anything abnormal in their behavior.
10        Q.   And they were following you around, they
11   were inside the house at that time?
12        A.   They would follow us back and forth,
13   because as I recall we went outside and we came
14   inside, went outside and the dogs would always
15   follow us.  They would go out to pee or do their
16   business.  They would come back in and stare at us.
17        Q.   When the police officers arrived at your
18   property were you inside the house?
19        A.   Yes.
20        Q.   Your wife was inside the house?
21        A.   Yes.
22        Q.   And you were still arguing, right?
23        A.   Yes.
24        Q.   And the dogs were inside the house?
25        A.   No.  The dogs were outside.
```

```
 1        Q.   Okay.  How long had the dogs been outside
 2   at that time, when the police officers arrived?
 3              MR. ANADA:  Object to form.  Go
 4              ahead.
 5        A.   We rarely leave them outside unsupervised.
 6   So we usually make a point to bring them in if it's
 7   been more then a couple of minutes.  So I would say
 8   two or three minutes.
 9   BY MR. ROQUEMORE:
10        Q.   So why did you let the dogs outside at
11   that time?
12        A.   I think I was distracted.  You know, we
13   were arguing so I didn't -- I wasn't diligent like I
14   usually am about bringing them back inside.  So from
15   what I recall we were arguing in the hallway.  The
16   dogs were outside the window of our front door
17   looking in at us, like they often do when we leave
18   them outside for more any, more than a minute or
19   two.  They just come up to the front porch and stare
20   through the window looking at us until we let them
21   in.
22        Q.   Right.  But how did they get -- why did
23   they go outside in the first place?
24        A.   They had followed us out.
25        Q.   They followed you out when you went
```

```
 1   outside to argue, and then you came back in and you
 2   left the dogs outside?
 3        A.   Yes.
 4        Q.   And the reason why you left the dogs
 5   outside was what again?
 6        A.   I don't know why.  We would have left them
 7   outside maybe to do their business.  I don't know
 8   why we left them outside.
 9        Q.   Okay.  Do you remember talking to
10   Elizabeth Burke, a licensed clinical psychologist on
11   or about June 15, 2021?
12        A.   Yes.
13        Q.   And she was doing a psychological
14   evaluation of you with regard to the incident; is
15   that fair?
16             MR. ANADA:  Object to the form.
17        A.   Yes.
18   BY MR. ROQUEMORE:
19        Q.   I'm going to mark this, I'm going to show
20   you Exhibit No. 5.
21                       (Psych evaluation attached as
22                        Exhibit 5.)
23             This is a psychological evaluation, I
24   apologize for throwing it at you again.  This is
25   Exhibit No. 5 is the evaluation; is that right?
```