UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and | * | Civil Action No. 22-00847 |
| JULIA BARECKI-BROWN | * | |
| | * | SECTION: L |
| VERSUS | * | |
| | * | HONORABLE ELDON E. FALLON |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | DIVISION: 4 |
| NEW ORLEANS | * | |
| | * | HONORABLE KAREN WELLS ROBY |

*************************************************************************

**Plaintiffs' Response to Defendants' Objections to Exhibits**

In R. Doc. 63-1, this Court directed the parties to file responses to opposing parties' objections to their exhibits.

| Defendants' Objections<br>(City (R. Doc. 143); Burmaster (R. Doc. 147)) | Plaintiffs' Response |
|---|---|
| **Photographs of Apollo**<br><br>**City Objections to P2 – P5, P8-P10, P17**. These are all photographs of the dog, Apollo. Other photographs will be admitted without objection. These photographs are cumulative and any probative value of showing multiple pictures of Apollo weeks before his death will be substantially outweighed by the prejudice caused by the appeal to emotion Plaintiffs will make in connection to these many pictures. Fed. R. Evid. 401, 403.<br><br>**Burmaster Objections to P2 - P5 and P8.** These exhibits, consisting of various, photos of the dog which was killed by Burmaster, are submitted to be cumulative and submitted for the purpose of engendering sympathy on the part of the jury, thus unfairly prejudicing Defendant. In addition, except for one, there is no indication as to when they were taken. One photo of the dog, which is Exhibit B-1 and which is on page 1 of the Second Amended Complaint (Rec. Doc. 60) should be sufficient. As such these exhibits should be excluded in accordance with FRE 403. | This case will turn in large part on whether Burmaster reasonably apprehended a threat of serious harm from this particular dog. As such, it is important for the jury to see the size and appearance of dog that represented the supposed threat. These various photographs are not cumulative because they show the dog and its size from different angles, and in comparison to different things – *e.g.*, Apollo's size compared to a cat, a food bowl, a person, or a shoe, etc.<br><br>Further, Officer Roussel—Burmaster's partner who was "standing right next to him" during the incident—has already testified that that one of the images the Defendants now object to accurately depicts the size and appearance of Apollo on the date of the shooting. All of the photos were taken around the same time, and they were taken days, and not "weeks," before Apollo's death. This will be proven at trial because the Defendants specifically chose not to ask the Browns about the dates these photographs were taken during their depositions and written discovery. These images are therefore highly probative and nonprejudicial. |

1

| | |
|---|---|
| | It is unclear why the City objects to P17, since that shows Apollo on the night of his death, in the context in which he was shot.<br><br>Furthermore, Plaintiffs claim emotional distress damages based on their emotional connection to Apollo. According, photos of their bond with Apollo prior to the shooting are relevant to their emotional distress and mental anguish.<br><br>And Burmaster is wrong that the photos lack information about when they were taken. Plaintiffs will pull up the metadata for the photos to show the date they were taken. |
| **Adoption Contract**<br><br>**City Objection to P6**. This is Apollo's adoption contract. It contains a birthdate for Apollo, although Apollo was picked up as a stray and no one was present at his birth. The birth date constitutes hearsay and is excludable under Fed. R. Evid. 801, 802.<br><br>**Burmaster Objection to P6**. This document is the adoption contract for the dog at issue herein. It contains inadmissible hearsay as it contains what is purported to be the birthdate of the dog at issue yet this dog was a "rescue dog" and so no one knows its birth date. The fact that plaintiffs adopted the dog is not in question. Accordingly, this document is not relevant and should be excluded pursuant to FRE 401. | Trampled Rose Rescue regularly keeps track of the birthdates of the dogs that it takes care of and arranges for adoption. Witness Holly Williams will testify that Apollo's birthdate was accurately recorded in this document. Accordingly, the document is not hearsay according to FRE 803(6) ("Records of a Regularly Conducted Activity").<br><br>Defendants are incorrect to say "no one knows its birth date"; Ms. Williams will testify that she does know Apollo's birthdate based on her personal knowledge. Defendants don't know that because they chose not to depose Ms. Williams. |
| **US DOJ Training**<br><br>**Burmaster Objection to P12**. This is a Department of Justice training on dog encounters. There is no evidence that this training was used by the NOPD or that Burmaster ever received this training. There is also no evidence regarding the basis for this training and, it is submitted, the mere fact that the Department of Justice published this training does not fit within any exclusion to the hearsay rule. Accordingly, it should be excluded as not being relevant pursuant to FRE 401 as well as being not within any exception to the hearsay rule, FRE 801. The only way it could possibly be received is as a statement in a learned treatise pursuant to FRE 803(18). However, the last | Burmaster is correct that he did not receive this training. That is the whole point; NOPD copied and pasted from this document, and omitted crucial training elements. *Compare* verbatim match between R. Doc. 56-2 (NOPD Training) *with* R. Doc. 56-3 (US DOJ COPS training).<br><br>Witnesses will testify about this. For example, according to the City's 30(b)(6) witness on training, it "would be wrong" for NOPD to copy its training from the DOJ training, but leave out the part about how an "approaching dog is almost friendly." R. Doc. 122-5 at 137:21-137:6 |

2

| | |
|---|---|
| sentence of that rule specifically states that: "If admitted, the statement may be read into evidence but not received as an exhibit." | (emphasis added). The City's witness said "that's pertinent information." *Id*.<br><br>Plaintiffs' expert will also testify about this. See also R. Doc. 110-18 at ¶ 12 (Expert report of Jim Crosby, observing that "crucial [DOJ] material was specifically omitted from the presented [NOPD] course material and likely contributed to Burmaster's incorrect perception of Apollo as a threat. Other materials illustrative of positive behavior of dogs is likewise omitted from the offered presentation.")<br><br>It is not offered for the truth of the matter asserted, and so is not hearsay; it is offered to show what the City chose to omit. |
| **Burmaster's PIB Records**<br><br>**City Objection to P14, 24, P32, P33**. These documents list prior disciplines of Officer Burmaster. These documents are covered by the City Defendants' Second Motion in Limine numbers 2, 3, and 4. See Doc. 123-1, p 4-5. The documents contain prior allegedly bad acts of Officer Burmaster and contain information regarding complaints that are substantially different from the incident in the instant case. The documents are excludable under Fed. R. Evid. 401, 403, and 404(b)<br><br>**Burmaster Objection to P14**. This is Burmaster's "Short Form" which is a partial listing of complaints against Burmaster maintained by the NOPD. This list contains much more than complaints about use of force, which is what this case is about. Further many of the complaints were deemed deemed to be not sustained or otherwise unfounded. To submit this document to the jury would be prejudicial and therefore it must be excluded pursuant to FRE 401 and 403. The plaintiffs have listed Lt. John Helou of the Public Integrity Bureau as a witness. He can provide testimony to the extent that it is relevant. However admitting this exhibit would allow evidence that is not relevant and is prejudicial, particularly in the hands of an unsophisticated jury. | This Court already ruled that evidence of non-force rule violations is relevant. In denying the City's Motion to Dismiss, this Court ruled that: "if this Court accepts as true Plaintiffs' allegations about Burmaster's past use of force incidents and other rule violations, the complaint does raise factual questions about 'the inappropriateness of NOPD's choice to continue having Burmaster on the force.'" R. Doc. 115 at 8 (emphasis added).<br><br>Furthermore, Plaintiffs do not intend to offer such things as evidence of Burmaster's bad character. They intend to offer them for the purpose that the Court articulated: the "inappropriateness of NOPD's choice to continue having Burmaster on the force" despite his twenty-two rule violations that included violations "regarding verbal intimidation, moral conduct, professionalism, performance of duty, and neglect of duty." R. Doc. 122-3 (Helou Dep.) at 27:4-15.<br><br>And finally, whether or not these items are relevant for Monell does not end the inquiry. They are also relevant to Plaintiffs' Negligent Training, Retention, and Supervision claim (R. Doc. 60 at ¶¶ 94-101). |

3

| | |
|---|---|
| **Report of PIB Administrative Investigation**<br><br>**City Objection to P20**. This is an NOPD investigation into whether Officer Burmaster violated NOPD policies in shooting Plaintiffs dog. The report is objectionable in that it contains hearsay. In addition, there is little relevance to the investigator's mere compilation of facts in the report. In addition, the opinion that Officer Burmaster violated policies is int relevant because the standards are different from whether a Fourth Amendment violation occurred. In addition, the jury will likely give the report undue weight. The report is excludable under Fed. R. Evid. 401, 403, 801, 802. | This document is not hearsay because it is a statement by a party opponent under FRE 801(d)(2) (excluding from definition of hearsay "An Opposing Party's Statement.")<br><br>Furthermore, FRE 803(8) provides an exception in civil cases for reports that reflect "factual findings from a legally authorized investigation," which is exactly what this document is.<br><br>And Burmaster's policy violations are relevant, because "a policy violation can serve as evidence that an act was objectively unreasonable." *Dawes v. City of Dall.*, No. 17-1424, 2021 U.S. Dist. LEXIS 260494, at *7-8 (N.D. Tex. Sep. 24, 2021) (*citing Anthony v. Morton*, No. 05-0027, 2007 U.S. Dist. LEXIS 101798, 2007 WL 628750, *7 (W.D. Tex. Jan. 31, 2007) (holding that officer's violation of police baton policy "is certainly probative in determining if [officer] acted in an objectively reasonable manner.") (emphasis added); *Hope v. Pelzer*, 536 U.S. 730, 743-44, (2002) (holding that official's disregard of prison regulation "provides equally strong support for the conclusion that they were fully aware of the wrongful nature of their conduct."). |
| **Documents about Burmaster's 2012 Dog Shooting**<br><br>**Burmaster Objection to P19 and P26**. These exhibits are relating to a dog shooting by Burmaster that occurred over a decade ago. Other than the fact that a dog was involved and was killed they have no relevance to this event. Further, P19 is an email written by one Roderick Franklin some four days after the incident set forth in P26. Franklin is not listed as a witness and this email is not self-authenticating. Both are out of court written assertions, neither of which fall within an exception to the hearsay rule, so to the extent plaintiffs plan to use these exhibits for the truth of the matter asserted, they are hearsay under FRE 801(c)(2) and should be excluded. | These documents are not hearsay because they are statements by a party opponent under FRE 801(d)(2) (excluding from definition of hearsay "An Opposing Party's Statement.")<br><br>Furthermore, FRE 803(8) provides an exception in civil cases for reports that reflect "factual findings from a legally authorized investigation," which is what these documents are.<br><br>And the relevance is that it speaks to Burmaster's credibility. Both in 2012 and 2021, Burmaster shot and killed a dog and then claimed that he was afraid it would bite him in the penis. The repetition of that excuse – which no witness has said any other officer has ever expressed – may factor into the jury's weighing of Burmaster's credibility. |

| | |
|---|---|
| **Video of NOPD Use of Force Review Board**<br><br>**City Objection to P22**. This video contains statements of many persons who will not be available at trial. In addition, the subject matter – whether Officer Burmaster violated NOPD's policy on use of force – is of marginal relevance in comparison to the undue weight that a jury may give. In addition, the video will add no new evidence. The video is excludable under Fed. R. Evid. 401, 403, 801, 802. | This NOPD video is not hearsay because it contains statements by a party opponent under FRE 801(d)(2) (excluding from definition of hearsay "An Opposing Party's Statement.") It also falls within the FRE 803(8) exception in civil cases for reports that reflect "factual findings from a legally authorized investigation."<br><br>The relevance of the video should be weighed in the context in which it is offered. |
| *State v. Loicana*<br><br>**City Objection to P27**. This is a case opinion of the reported case *State v. Loicana*, 254 So.3d 761, in which the Louisiana Court of Appeals reversed a conviction and in doing so ruled that a warrantless search of an automobile by Officer Burmaster was conducted without probable case. This exhibit is the subject of City Defendants' Second Motion in Limine number 5. See Doc 123- 1, p.5-6. The opinion is excludable under Fed. R. of Evid. 401, 403, and 404(a) and (b)<br><br>**Burmaster Objection to P27**. Plaintiffs wish to submit to the jury a Louisiana Fourth Circuit opinion in the case of State v. Loicana, 254 So. 3d 761 (4th Cir. August 22, 2018). This case involves a warrantless search conducted by Burmaster of a vehicle in conjunction with an arrest. The trial court granted a motion to suppress which the Fourth Circuit upheld, finding no probable cause to search the vehicle in violation of the Fourth Amendment. With respect, that case has no bearing here and is irrelevant to this case which involves the shooting of a dog. As such, it should be excluded pursuant to FRE 401 and 405. It is also an attempt to use of prior bad act evidence in violation of Federal Rule of Evidence 404(b) and should be excluded on that basis as well. | In its Motion in Limine, the City asked this Court to exclude any reference to the *State v. Loicana* case. In that case, the state Fourth Circuit Court of Appeal upheld a trial court ruling that Officer Burmaster had violated the constitution with a warrantless search. The City contends that reference to this case would constitute "prior bad act evidence." R. Doc. 123-1 at 5.<br><br>But that misses the point. Plaintiffs are not offering the case to prove previous bad acts. The reason why *Loicana* is relevant is that it reveals a major gap in NOPD's supervision of its officers. Two courts found that Burmaster had violated the constitution – but that fact does not appear anywhere in Burmaster's PIB, personnel, or human resources files. R. Doc. 122-3 (Helou Dep.) at 33:13-34:9. The City's 30(b)(6) representative conceded that courts' findings of constitutional violations "could be" relevant to "whether NOPD chooses to retain an officer." *Id*. at 34:22-35:7. And in the City's filing, it concedes that "a record of such matter should have been in Officer Burmaster's personnel file but was not." R. Doc. 137-1 at 7.<br><br>But NOPD has no system for tracking those findings of constitutional violations, despite their relevance to the question of whether to retain an officer. As a result, that gap in NOPD's tracking system is relevant to Plaintiffs' Monell claim under the failure to supervise and retention |

5

| | |
|---|---|
| | theories, as well as Plaintiffs' state-law Negligent Training, Retention, and Supervision claim. |
| **Use of Force Review Board Report**<br><br>**City Objection to P29**. This document contains the conclusion of members of NOPD's Use of Force Review Board. It contains the conclusions of many persons who will not be witnesses in this case. In addition, the findings related to whether Officer Burmaster violated NOPD policies, so there is great risk that the jury would give this document undue weight and prejudice the City Defendants. The document is excludable under Fed. R. Evid. 401, 403, 801, 802.<br><br>**Burmaster Objection to P20 and P29**. These are reports of an Administrative Shooting Investigation and the Use of Force Review Board Minutes and Recommedations. These documents contain inadmissible hearsay under Rule 801. To the extent that plaintiffs intend to introduce them to prove the truth of the matter asserted, they are hearsay under FRE 801(c)(2). And they contain double hearsayas theycontain out of court statements describing statements of Burmaster and other officers. These exhibits should be excluded under FRE 802. | This report is not hearsay because it contains statements by a party opponent under FRE 801(d)(2) (excluding from definition of hearsay "An Opposing Party's Statement.") It also falls within the FRE 803(8) exception in civil cases for reports that reflect "factual findings from a legally authorized investigation."<br><br>And City official's conclusions about Burmaster's policy violations are relevant, because "a policy violation can serve as evidence that an act was objectively unreasonable." *See Dawes v. City of Dall., supra, et al.* |
| **Burmaster Facebook Post**<br><br>Burmaster Objection to P43 John Wick Facebook Post. This exhibit has nothing whatsoever to do with the matters before this court and is solely listed in an attempt to inflame the jury, thus unfairly prejudicing Defendant. As such, this Exhibit is irrelevant and should be excluded in accordance with FRE 401. If there is any question as to its relevance, it should be excluded in accordance with FRE 403. | Burmaster conceded he posted this joking Facebook post about killing a dog. R. Doc. 122-2 (Burmaster Dep. at 206.) He says "it was a joke." *Id*. He conceded that the joke is that "it wouldn't even be worth killing this man's dog for 15 mill -- $15 million." *Id*. at 207. The post is relevant because it reflects the seriousness with which Burmaster holds the topic of dog-killing, which the jury may weigh in evaluating Burmaster's credibility. |

Respectfully Submitted:

*/s/ William Most*
WILLIAM MOST (La. Bar No. 36914)
HOPE PHELPS (La. Bar No. 37259)
DAVID LANSER (La. Bar No. 37764)
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
Tel: 504.509-5023
Email: williammost@gmail.com

TARAK ANADA (#31598)
JONES WALKER LLP
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8322
Facsimile: (504) 589-8322
E-Mail: tanada@joneswaker.com