UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DEREK BROWN and** | * | CIVIL ACTION |
| **JULIA BARECKI-BROWN** | * | |
| | * | NO: 22-00847 |
| **VERSUS** | * | |
| | * | SECTION: L |
| **DERRICK BURMASTER, SHAUN** | * | JUDGE FALLON |
| **FERGUSON, and the CITY OF** | * | |
| **NEW ORLEANS** | * | MAGISTRATE DIVISION: 4 |
| | * | MAGISTRATE JUDGE ROBY |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, Derrick Burmaster ("Burmaster"), submits the following Reply Memorandum in support of his Motion for Summary Judgment (Rec. Doc. 105).[1]

**INTRODUCTION**

This is a classic case of second-guessing a police officer who was faced to make a split-second decision when faced with a tense, uncertain, and rapidly evolving situation. The evidence shows that the information that was reasonably available to Officer Derrick Burmaster on the night in question made his decision to shoot Plaintiff's dog, Apollo, reasonable. His actions therefore did not violate the Fourth Amendment and he is entitled to Qualified Immunity and the dismissal of the punitive damage claim against him.

**FACTS**

On April 10, 2021, Officer Derrick Burmaster was a 23-year veteran of the New Orleans Police Department ("NOPD").[2] On that night, Officer Burmaster was on duty and was called to

---

[1] Burmaster incorporates by reference as if set forth herein, *in extenso*, his Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment on Liability (Rec. Doc. 129) and the attachments thereto (Rec. Docs. 129-1-129-6).
[2] Ex. A, Excerpts of Deposition of Derrick Burmaster (Burmaster Deposition), p. 15:7 – 15:19.

1

the Brown's house for a service call due to a report of potential domestic violence. A neighbor had heard a woman screaming at the Brown's house.[3] Officer Burmaster and another officer responded. Officer Burmaster had never been to the Brown's house and did not know that the Browns owned dogs.

The event of the unfortunate shooting of Apollo is accurately recorded by a body-worn camera that Officer Burmaster wore, as required by NOPD policy.[4] The video from that camera shows Officer Burmaster making kissing noises as approached the Brown's house.[5] No dogs were seen and no sign of dogs was evident.[6] However, the Brown's two dogs were lurking on the porch on the second level in the dark.[7] When Officer Burmaster and his partner entered the gate and entered the driveway, they heard loud barking and sounds coming from running dogs.[8] Officer Burmaster saw a large dog rush down the stairs and aggressively pursue his partner.[9] A second dog, Apollo, rushed out from behind the larger dog and ran at Officer Burmaster.[10]

Officer Burmaster, surprised and dealing with the uncertainty of a potentially dangerous domestic disturbance call, had seconds to evaluate his options.[11] Officer Burmaster believed he could not outrun either dog and had no reasonable avenues of escape.[12] He made a split-second decision to stand his ground and shoot the dog that was running at him.[13]

---

[3] *Id.*, pp. 33:12 – 38:15
[4] See Rec. Doc. 105-3, Burmaster Body Worn Camera Video
[5] *Id.*
[6] *Id.* (Officer Burmaster comments on the video that there were no dogs seen).
[7] Ex. B., Excerpts of Deposition of Derek Brown (Brown Deposition), pp. 49:1 – 51:8.
[8] Ex. A, pp. 51:11 – 51:23.
[9] Rec. Doc. 105-3.
[10] *Id.*
[11] Ex. A, 51:24 – 54:7.
[12] *Id.*
[13] *Id.*

**LAW AND ARGUMENT**

1. **Burmaster's actions were not unreasonable.**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Grant v. City of Houston*, 625 F. App'x 670, 675 (5th Cir. 2015) (quoting U.S. Const. amend. IV). The killing of a pet dog constitutes a seizure under the Fourth Amendment. *Id*. "Seizures by law-enforcement officials violate the Fourth Amendment only if they are unreasonable." *Id*. To determine whether a seizure was reasonable, courts look to "the totality of the circumstances, balancing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id*. (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

> The Court in *Grant* advised that an officer's use of force should be examined from:
>
> the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. We thus allow for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Grant*, 625 F.App'x at 677 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 775, 134 S. Ct. 2012, 2020, 188 L.Ed.2d 1056 (2014)). In addition, *Grant* noted the following factors that should be considered:

- Whether the officer had notice that a dog was present on the premises;
- Whether the officer was genuinely surprised by the dog's presence and aggression;
- Whether the officer had time to prepare a non-lethal plan to subdue the dog;
- Whether reasonable precautions were taken avoid a lethal encounter with the dog;
- Whether the dog was "aggressive";

3

- Whether the officer exhausted all non-lethal means prior to using lethal force against the dog;

- Whether the dog was retreating or fleeing from the officer or running towards the officer at the time the lethal shot was fired; and

- Whether officer was imminently in danger of being bitten by the dog at the time the officer discharged his weapon.

*Id*. at 676 - 677.

In this case, from the perspective of a reasonable officer on the scene, it was not unreasonable for Officer Burmaster to have discharged his weapon at Apollo. The body-camera video shows that Officer Burmaster actively examined the Brown's residence for signs of dogs. He made kissing sounds as he approached the residence. Objectively, there was no indication that the Browns had dogs. Officer Burmaster was clearly surprised by the sudden loud barking from above and the appearance of two dogs out of the darkness of the porch above, and the aggressiveness of both dogs who were running at the officers. Officer Burmaster had little time to evaluate options. The gate was slammed shut by his retreating partner and spikes precluded escaping over the fence. He did not know how old Apollo was or how many teeth Apollo had. He saw Apollo running fast towards him and had to make a split second decision. Apollo was still running towards Officer Burmaster when the shots were fired.

This case is similar to *Stephenson v. McClelland*, 632 F.App'x 177 (5th Cir. 2015), discussed in Burmaster's Motion for Summary Judgment, where an officer shot and killed a family dog that was showing his teeth, either "baring them aggressively or 'smiling.'" *Id*. at 185. The court ruled that the officer was entitled to qualified immunity because the plaintiff failed to show that a constitutional right was clearly established so that a reasonable officer in that situation would

have understood that his or her conduct violated that right. The court found the following factors significant: (1) the officer did not know that there would be a dog present and was surprised by its presence; (2) the officer did not know whether the dog was friendly and nonaggressive; and (3) the officer was forced "to make a split-second decision in a tense situation and he acted to protect himself." *Id*. at 185 (quoting *Grant*).

In this case, like in *Stephenson*, Officer Burmaster did not know dogs would be at the Brown's house, was surprised, did not know the age or disposition of Apollo, and had very little time to gather information about the dog. Officer Burmaster cannot be expected to have known Apollo had no teeth. Officer Burmaster saw the dog for two seconds running at him. Officer Burmaster was forced to make an instant decision to protect himself. As in *Stephenson*, from the perspective of an officer in that situation, it was not unreasonable to shoot the dog that he reasonably believed posed a threat.

**2. The Court should decide this Motion prior to trial.**

Since Qualified Immunity is an immunity from suit and not just a defense to liability, the Supreme Court has stated that it should be decided "long before trial":

> In *Hunter* we also reiterated the principle that questions of immunity ordinarily should be decided by the court, not by the jury, 502 U.S., at 228, 112 S.Ct., at 537, because "[t]he entitlement is an immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). See *Hunter*, *supra*, 502 U.S., at 227, 112 S.Ct., at 536 (collecting cases).

*McCleary v. Navarro*, 504 U.S. 966, 967–68, 112 S. Ct. 2324, (Mem)–2325, 119 L. Ed. 2d 243 (1992)

> *Immunity ordinarily should be decided by the court long before trial*. See *Mitchell*, *supra*, 472 U.S., at 527–529, 105 S.Ct., at 2815–2817. Second, the court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed five years after the fact.

*Hunter v. Bryant*, 502 U.S. 224, 228, 112 S. Ct. 534, 537, 116 L. Ed. 2d 589 (1991), emphasis added.

## CONCLUSION

The Browns cannot carry their burden to negate Burmaster's right to qualified immunity. Burmaster reasonably believed that his conduct was not barred by existing law and that current precedent does not place the constitutional question beyond debate.  Further, plaintiff has not established the basis for a claim for punitive or exemplary damages.

Accordingly, all claims against Burmaster under federal and state law must be dismissed with prejudice and at the Browns cost.

Respectfully submitted:

/s/ C. Theodore Alpaugh, III
**C. THEODORE ALPAUGH, III (#02430)**
**CLAUDE A. SCHLESINGER (#15042)**
Guste, Barnett, Schlesinger & Alpaugh, L.L.P.
639 Loyola Avenue, Suite 2130
New Orleans, Louisiana 70113
Tel:     (504) 529-4141
Fax:    (504) 561-0326
Email: cta@gustebarnett.com

**Attorneys for Defendant,**
**DERRICK BURMASTER**