UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BROWN ET AL** | * | CIVIL ACTION |
| | * | |
| **VERSUS** | * | NO. 22-847 |
| | * | |
| **BURMASTER ET AL** | * | SECTION: "L" (4) |
| | * | |
| | * | |

**ORDER AND REASONS**

Before the Court are motions for summary judgment by Plaintiffs, Derek Brown and Julia Barecki-Brown, at R. Doc. 110, and Defendant Derrick Burmaster, at R. Doc. 105. Plaintiffs seek summary judgment on qualified immunity, their § 1983 claims, and their state law claims. Defendant Burmaster seeks summary judgment on qualified immunity and, in addition, asks this Court to dismiss Plaintiffs' claim for punitive damages.

Defendant Derrick Burmaster and Defendants Shaun Ferguson and the City of New Orleans (together, "City Defendants") have filed memoranda in opposition to Plaintiffs' motion, at R. Doc. 129 and R. Doc. 131, respectively. Plaintiffs have filed a memorandum in opposition to Defendant Burmaster's motion, at R. Doc. 130. Having considered the briefing and the applicable law, the Court rules as follows.

I.   **BACKGROUND**

This case arises out of the alleged shooting of a dog by a New Orleans Police Department ("NOPD") officer on April 10, 2021. R. Doc. 60 at ¶¶ 1-7. Plaintiffs allege that NOPD officer Derrick Burmaster and his partner, Officer John Roussel ("Officer Roussel"), arrived at the Plaintiffs' home, in New Orleans, to respond to a noise complaint. *Id.* at ¶ 29. The officers allegedly banged on the fence to see if there were any dogs present and then walked through the

1

gate. *Id.* at ¶ 30. As two dogs ran towards the officers, Burmaster's partner stepped backward and exited the gate. *Id.* at ¶ 32. Burmaster withdrew his firearm and fired three rounds at the smaller of the two dogs. *Id.* at ¶ 37. At least one of the rounds hit and killed the smaller of the two dogs: Apollo, an 18-week-old Catahoula puppy that stood at about 18 inches tall. *Id.* at ¶ 37. Shrapnel from the round hit Burmaster's partner, who was treated for minor hand injuries at Tulane University Medical Center. *Id.* at ¶¶ 43-44. Plaintiff allege that Burmaster was carrying a conducted energy weapon ("CEW"), a Taser, which he did not use or deploy. *Id.* at ¶ 35. In addition, Plaintiffs allege that did not use his police baton against the dog, because he was not carrying it even though doing so is a requirement of NOPD policy. *Id.* at ¶ 36.

After the incident, Plaintiff alleges, NOPD's internal affairs division, the Public Integrity Bureau ("PIB"), and NOPD Use of Force Review Board conducted an investigation and found the shooting to be unjustified, and that Burmaster had not engaged in appropriate de-escalation of the situation. *Id.* at ¶¶ 61-63. Plaintiffs allege that Burmaster is a "frequent user of force," who has used force at least 30 times since 2011, including an incident in 2012 when he shot and killed a dog while investigating a property damage complaint. *Id.* at ¶¶ 68-71. Plaintiffs allege that Burmaster's use of force has been the subject of multiple complaints, and that the NOPD has sustained at least twenty other rule violations against Burmaster, for violations involving "verbal intimidation, moral conduct, professionalism, performance of duty, neglect of duty, [and] failure to comply with instructions." *Id.* at ¶ 74.

Plaintiffs state several causes of action against Burmaster, against NOPD Superintendent Shaun Ferguson, and against the City of New Orleans. First, Plaintiffs allege that Burmaster's shooting of Apollo was a violation of their Fourth, Fifth, and Fourteenth Amendment rights under 42 U.S.C. § 1983, because "[i]t is clearly established that an officer cannot shoot a dog in

the absence of an objectively legitimate and imminent threat to him or others." *Id.* at ¶¶ 76-80.

The Plaintiffs have also made claims for *Monell* liability against Shaun Ferguson and the City of New Orleans. Plaintiffs allege that the City had a "constitutional duty to adequately train, supervise and discipline Burmaster in order to prevent the violation of the rights of the citizens that he encountered," and that it was deliberately indifferent to Plaintiffs' constitutional rights in its failure to do so. *Id.* at ¶¶ 113-114. Plaintiffs allege that, despite Burmaster's 2012 shooting of a dog, he either received no training or the NOPD's "The Problem of Dog-Related Incidents and Encounters" training. *Id.* at ¶ 110. This training is deficient, Plaintiffs allege, because it copies a U.S. Department of Justice COPS program training while taking out passages about the low risk and general friendliness of approaching dogs, and information about "specific tactics" for dealing with animals. *Id.* at ¶¶ 121-135. Plaintiffs allege that the inclusion of these facts would have reduced the likelihood of Burmaster shooting Apollo. *Id.* at ¶¶ 121-136.

Plaintiffs also bring claims of negligence; negligent hiring, training, and supervision; vicarious liability; indemnity; and conversion against various defendants.

## II.     PRESENT MOTIONS

The motions for summary judgment submitted by Plaintiffs and Defendant Derrick Burmaster center on Burmaster's liability under § 1983, and the threshold question of whether Burmaster should be granted qualified immunity.

### A. Plaintiffs' Motion for Summary Judgment on Liability

Plaintiffs ask the Court to grant their § 1983 claim, to dismiss Burmaster's qualified immunity defense, and to grant their state law claims against all Defendants. They assert that "Officer Burmaster's use of lethal force on Apollo was avoidable, objectively unreasonable and violative of the Brown family's constitutional rights." R. Doc. 111 at 2.

Plaintiffs argue that, under the totality of the circumstances, Burmaster's use of lethal force against the Plaintiffs' dog violated their constitutional rights because it was unreasonable. First, Plaintiffs argue, Burmaster made "kissy sounds" to draw out dogs, but the Body-Worn Camera ("BWC") footage from the incident shows that he did so in front of the neighbor's house, some distance from the Plaintiffs' own home, and therefore the sounds would have been inaudible to the Browns' dogs. *Id.* at 14. Second, Plaintiffs contend that Burmaster's belief that Apollo would cause him "serious bodily harm" was objectively unreasonable. *Id* at 15. Plaintiffs argue that the BWC footage shows that Apollo "never barked, growled, vocalized, jumped, lunged, or bared his teeth at Burmaster," and note that the NOPD's PIB team, which investigated Burmaster determined that Burmaster "fir[ed] his weapon out of fear and not because the dog presented a threat of serious bodily injury or death to Officer Burmaster." *Id.* at 16. Further, Plaintiffs' note, Defendants' 30(b)(6) representative Sergeant John Helou and Christopher Goodly came to the same conclusion as the PIB. *Id.*

Third, Plaintiffs argue, Burmaster acted unreasonably because he employed none of the "numerous effective non-lethal options readily available to him at the time he shot Apollo." *Id.* at 17. Plaintiffs point to the CEW that Burmaster had on his person, which NOPD policy states may be used to reduce the need for greater force against animals. *Id.* at 18. Further, Plaintiffs cite the depositions of multiple police witnesses, who stated that the Burmaster's NOPD-issued baton would have been an effective tool against Apollo; however, Burmaster was not carrying the baton with him when he arrived at the Plaintiffs' home, "in express violation of NOPD's mandatory policy." *Id.* Furthermore, Plaintiffs argue, these same witnesses said that he could have kicked the puppy away with his boots. *Id.*

Plaintiffs contend that the findings of the PIB, which concluded that Burmaster violated

five separate NOPD policies relating to the use of deadly force, along with Burmaster's firing of multiple shots "without conducting any evaluation of the need to do so," weigh against a finding of reasonableness. *Id.* at 19-20.

Plaintiffs argue that the law—that the unreasonable killing of a dog is considered an unconstitutional "seizure" under the Fourth Amendment—was "clearly established" at the time Burmaster shot Apollo, and that Burmaster had "reasonable notice of the illegality" of his action. *Id.* at 22. Plaintiffs cite *Skinner v. Ard*, in which a district court notes that in the Fifth Circuit "'[i]t is beyond dispute that the killing of an individual's pet dog by an officer constitutes a 'seizure' within the meaning of the Fourth Amendment' and that '[s]eizures by law-enforcement officials violate the Fourth Amendment . . . if they are unreasonable." R. Doc. 111-1 (citing *Skinner v. Ard*, 517 F. Supp. 3d 586, 603 (M.D. La. 2021) (citing *Grant v. City of Hous.*, 625 F. App'x 670, 675 (5th Cir. 2015)). Because controlling authority in the Fifth Circuit and "a robust consensus of persuasive authority" creates a "framework" for determining whether the shooting of a dog is a Fourth Amendment violation, Plaintiffs reason that the unlawfulness of Burmaster's shooting of Apollo would be apparent to a reasonable officer. R. Doc. 111-1 at 24-25.

In their memorandum in opposition, the City Defendants argue that Plaintiffs are not entitled to summary judgment because doing so would constitute "second-guessing a police officer" who made a "split-second decision when faced with a tense, uncertain, and rapidly evolving situation." R. Doc. 131 at 1. The City Defendants argue that it was "not unreasonable" for Burmaster to have discharged his weapon at Apollo because of a number of facts: he made "kissy sounds" as he approached the house; there was "objectively" no indication that the Browns had dogs; Burmaster was "clearly surprised by the sudden loud barking from above" and the subsequent appearance of two dogs on the stairs; Officer Roussel "slammed shut" the gate

5

during his retreat; and Burmaster did not know that Apollo was a "puppy." *Id.* at 4-5.

The City Defendants cite *Stephenson vs. McClelland*, 632 F. App'x 177 (5th Cir. 2015), in which the Fifth Circuit upheld a district court ruling that an officer was entitled to qualified immunity when an officer shot a dog that was showing his teeth. *Id.* at 5. In that instance, like this one, the City Defendants argue, the officer was surprised by the dog, the officer "did not know the family pet was friendly and nonaggressive," and the officer had to make a "split-second decision" to defend himself. *Id.* As a result, the City Defendants argue that the Plaintiffs "cannot show that no genuine issue of fact exists as to the reasonableness of Officer Burmaster's actions" and that their motion should be denied. *Id.* at 6.

B. **Defendant Derrick Burmaster's Motion for Summary Judgment**

Defendant Burmaster argues that he is entitled to summary judgment on qualified immunity because the Plaintiffs' constitutional rights were not violated. R. Doc. 105-1 at 1. Even if they were, Defendant Burmaster argues, "the Browns cannot demonstrate that Burmaster's alleged conduct violated a constitutional right that was clearly established at the time." *Id.*

Burmaster argues that there is "undisputed evidence" from the BWCs of Burmaster and his partner, Roussel, that both officers "were totally surprised by the presence of the dogs and their aggressive behavior." *Id.* at 17. Defendant Burmaster argues that these videos, along with the testimony of Sergeant David Duplantier ("Sgt. Duplantier")—an NOPD Training Academy supervisor who reviewed Officer Burmaster's actions after the incident—establish that "in the short time he had to react, Burmaster had no non-lethal options available to him." *Id.* at 17. To support his contention that he and his partner were surprised by the dogs, Burmaster notes that he made "kissing" noises to draw out the dogs, but heard no response and saw no posted signs indicating the presence of dogs. *Id.* at 3. When the dogs appeared and ran down the stairs,

6

Burmaster states, "the dogs were not behaving in a friendly manner but rather were behaving aggressively" leading him to be fear the dog would bite him. *Id.*

To the Plaintiffs' point about subsequent reviews by the NOPD finding that he was "not credible" weighing in favor of a finding that his actions were not reasonable, Burmaster argues that he was not present at the Use of Force Review Board, in which the board reviewed the BWC videos and the PIB investigation, and ultimately determined that the shooting was "not justified." *Id.* at 7. Burmaster also points to the review meeting that he underwent with Sgt. Duplantier of the NOPD Training Academy, in which Sgt. Duplantier recommended that Burmaster return to full duty because "Burmaster's decision to use lethal force towards the dog falls within reason." *Id.* at 8.

Burmaster argues that, even if there was no threat to him based on the foregoing facts, Plaintiffs "cannot carry the burden of proving that it is clearly established law that making a split second decision to shoot a dog that is aggressively charging at an officer is unconstitutional." *Id.* at 24. As a result, Burmaster argues, he should still be entitled to qualified immunity. *Id.*

Burmaster further argues that the Plaintiffs' claim for punitive damages should be dismissed because Plaintiff "has not alleged any specific facts against Burmaster, and there is no evidence adduced to date, to establish malicious, wanton or oppressive conduct to warrant the consideration of punitive damages." *Id.* at 25.

In their memorandum in opposition, Plaintiffs largely restate the content of their own motion for summary judgment on the qualified immunity issue. With regards to punitive damages, Plaintiffs argue, "a reasonable jury could conclude that Burmaster's actions reflected a reckless indifference to the Browns' rights" because he could have avoided killing Apollo by "extremely simple" means, including kicking the dog or using his Taser or baton. R. Doc. 130 at

7

25.

### III.     APPLICABLE LAW

#### A. Summary Judgment Standard

Summary judgment is proper if the pleadings and the evidence gathered in discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.

"A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When ruling on a motion for summary judgment, a court may not resolve credibility issues or weigh evidence. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Moreover, the court must assess the evidence and "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). However, "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of

evidence" are not sufficient to show a genuine dispute of material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## IV.   ANALYSIS

The Court will consider the following three issues in turn: first, Plaintiffs' and Defendant Burmaster's motions for summary judgment regarding qualified immunity and Plaintiffs' § 1983 Claims; second, the Plaintiffs' motion for summary judgment on their state tort claims; and fourth, Defendant's motion for this Court to dismiss Plaintiffs' punitive damages claim.

### A.   Qualified Immunity and § 1983 Claims

For lawsuits brought against public officials under 42 U.S.C. § 1983, the Supreme Court has established the doctrine of qualified immunity. The doctrine aims "to balance two competing societal interests: 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). When this immunity from suit is invoked, the summary judgment burden shifts from the public official-defendant—that is, the moving party on whom the burden traditionally rests—to the plaintiff. *Id.*

Qualified immunity has two prongs which a plaintiff must overcome in order to defeat summary judgment. First, the plaintiff must demonstrate that the actor claiming immunity violated his constitutional or statutory right. Second, the plaintiff must show that the "violated right was 'clearly established' at the time of the alleged violation." *Id.* at 329. "'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every 'reasonable official would understand that what he is doing is unlawful.'" *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (internal quotation marks omitted). The

Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Wesby*, 138 S. Ct. at 590 (internal quotation marks omitted).

In sum, when a public official makes a good-faith invocation of qualified immunity, it is the plaintiff's burden: (1) to demonstrate a genuine dispute of material fact and to show "that a jury could return a verdict entitling the plaintiff to relief for a constitutional [or statutory] injury," and (2) to show that the allegedly violated right was clearly established by "'identify[ing] a case—usually, a body of relevant case law—in which an officer acting under similar circumstances . . . was held to have violated the Constitution.'" *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d at 329 (quoting *Wesby*, 138 S. Ct. at 590).

This Court has the discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson*, 555 U.S. at 236. In other words, the Court may choose to analyze the second prong—that is, the clearly established prong— immediately without first deciding whether there was a violation of rights. *See id.*

1. **Clearly Established Law**

It is clearly established law that the unreasonable shooting of a pet dog by a police officer is an unconstitutional seizure under the Fourth Amendment. "[I]t is beyond dispute that the killing of an individual's pet dog by an officer constitutes a 'seizure' within the meaning of the Fourth Amendment" and that "[s]eizures by law-enforcement officials violate the Fourth Amendment . . . if they are unreasonable." *Skinner v. Ard*, 517 F. Supp. 3d 586, 602-03 (M.D. La. 2021) (citing *Grant v. City of Houston*, 625 F. App'x 670, 675 (5th Cir. 2015)). *See also Jones v. Lopez*, 689 Fed. Appx. 337, 339 (5th Cir. 2017). In determining whether a seizure was

reasonable, "we look to the totality of the circumstances, balancing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Stephenson v. McClelland*, 632 F. App'x 177, 184 (5th Cir. 2015) (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

Plaintiffs and Defendant Burmaster have each cited a number of cases in which a court did or did not grant qualified immunity to a police officer that shot a dog, based on the evidence marshalled by the parties regarding the reasonability of the officer's actions. *See Grant v. City of Hous.*, 625 Fed.App'x 670, 674 (5th Cir. 2015) ("The evidence in the record indicates that Simpson was genuinely surprised by Buster's presence and aggression, and Grant has marshalled only a scintilla of evidence to dispute the expert and eyewitness testimony indicating that Simpson exhausted all non-lethal options prior to using lethal force against the dog."); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211 (3d Cir. 2001) (If the facts asserted by the Browns are found to be true, we conclude that a reasonable officer in Officer Eberly's position could not have applied these well established principles to the situation before him and have concluded that he could lawfully destroy a pet who posed no imminent danger and whose owners were known, available, and desirous of assuming custody.").

Each of these cases rests on the same core logic: that it is reasonableness that determines constitutionality, and that reasonableness itself is determined by an inquiry into the "totality of the circumstances." *Stephenson v.* 632 F. App'x at 184 (5th Cir. 2015).

2. **Reasonability of Defendant Burmaster's Actions**

In this case, whether or not Defendant Burmaster's actions were reasonable is a question of fact for the jury—not this Court—to decide, because there are genuine issues as to a number of material facts in this case. *Celotex*, 477 U.S. at 322. As the Fifth Circuit has explained,

> [R]easonableness under the Fourth Amendment should frequently remain a question for the jury. To put the matter more directly, since we lack a clearly defined rule for declaring when conduct is unreasonable in a specific context, we rely on the consensus required by a jury decision to help ensure that the ultimate legal judgment of "reasonableness" is itself reasonable and widely shared.

*Lytle v. Bexar Cty. Tex.*, 560 F.3d 404, 411 (5th Cir. 2009) (citing *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999)). In the context of claims of Fourth Amendment violations arising out of pet shootings, summary judgment is inappropriate when issues of material fact must be resolved to determine if an officer's actions were reasonable. *Jones*, 689 Fed. Appx. at 338 ("We find genuine issues of material fact regarding the events at the plaintiffs' residence, making the applicability of qualified immunity unresolvable at this juncture."); *Kincheloe v. Caudle*, No. A-09-CA-010 LY, 2009 U.S. Dist. LEXIS 96371, at *24 (W.D. Tex. Oct. 16, 2009) ("[T]he Court finds that material fact issues exist as to the reasonableness of Chief Caudle's shooting and killing of the Kincheloes' pet dog which precludes summary judgment on this issue.")

As in *Jones* and *Kincheloe*, this is a clear instance in which the consensus of a jury decision is necessary to determine whether or not the Defendant's choice to use lethal force on Plaintiffs' dog was reasonable. The parties claim that the available evidence proves different and often conflicting facts. For instance, both Plaintiffs and Defendants state that the evidence shows different facts regarding even the "kissing noises" that Defendant Burmaster made before he entered the Plaintiffs' property: Burmaster argues that he made them outside of the Plaintiffs' fence, while Plaintiffs contend that he in fact made them at the neighbor's house, before he reached their home. As a result, Plaintiffs argue, their dogs could not have been expected to hear the noises or be drawn out by them. Similarly, Plaintiffs allege that Burmaster's BWC footage shows that Apollo "never barked, growled, vocalized, jumped, lunged, or bared his teeth at Burmaster," R. Doc. 111 at 15, and that his tail was wagging, while Defendant Burmaster

testified in his deposition that Apollo "was coming at me, aggressive, barking" and approaching "in a manner that made me think that he was going to bite . . . my leg . . . bite me somewhere else." R. Doc. 105-1 at 4.

Burmaster argues that the evidence from Burmaster's and Roussel's BWCs provide "undisputed and clear" evidence that the Defendant's version of events is true. R. Doc. 105-1 at 17. He cites *Tucker v. City of Shreveport* for the proposition that it is appropriate to "view [ ] the facts in the light depicted by the videotape." *Tucker v. City of Shreveport*, 998 F.3d 165, 170 (5th Cir. 2021) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007)). But Defendant Burmaster, City Defendants, and Plaintiffs all cite to the same two body camera videos to support different facts and different interpretations of the same event. To the City Defendants, Burmaster's body camera footage shows that "Officer Burmaster saw a large dog rush down the stairs and aggressively pursue his partner." R. Doc. 131 at 7. From the same exact video, Plaintiffs conclude that "Apollo's tail was clearly and visibly wagging as he approached Burmaster." R. Doc. 111-1 at 6.

The Court has reviewed the BWC footage of both Burmaster and his partner, Officer Roussel, and finds that the videos do not fall within the territory described in *Scott v. Harris,* in which a video clearly establishes or contradicts either party's version of events. The footage is grainy, brief, and could be taken to support a number of the factual allegations made by both sides. If this Court is to "review the facts drawing all inferences most favorable to the party opposing the motion[s]," *Reid*, 784 F.2d at 578, neither party can prevail on a motion for summary judgment on the qualified immunity issue.

In summary, both the Plaintiffs and Defendant Burmaster seek summary judgment. Plaintiff argues that Burmaster's killing of Apollo was unreasonable and a violation of the Fourth

13

Amendment. Defendant, on the other hand, argues that the shooting was reasonable and that Burmaster is entitled to qualified immunity. Each cite evidence supporting their respective positions regarding the reasonableness of Burmaster' actions. Even so, the result depends on the weight given to the specific evidence each party cites. That is the providence of a jury and not a court. When a matter is so laden with competing facts, summary judgment is inappropriate. It is, rather, appropriate for jurors to consider the body camera footage, in combination with the testimony of the two officers involved, the reports issued by the NOPD, NOPD policies known to Burmaster before the shooting, and other available evidence to determine whether or not Burmaster acted reasonably when he shot Apollo rather than choosing a non-lethal course of action

### B. Plaintiffs' State Law Claims

Plaintiffs also ask for summary judgment on their state law claims of conversion, negligence, negligent infliction of emotional distress, vicarious liability, and indemnity. R. Doc. 111-1 at 25. The Plaintiffs argue that summary judgment may be granted on these claims based on the "same evidence" that supports summary judgment on the issues of § 1983 and qualified immunity. *Id.* Given the Court's determination above that the evidence available in the record creates a factual dispute appropriate for the jury to decide, it would be inappropriate to grant summary judgment on these claims.

### C. Punitive Damages

To prevail on punitive damages, Plaintiffs must show that "the official conduct [was] 'motivated by evil intent' or demonstrate[d] 'reckless or callous indifference' to a person's constitutional rights." *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 513 (5th Cir. 2022). The Court finds that, like the reasonableness analysis, the question of whether or not Defendant Burmaster

showed "reckless or callous indifference" to the Plaintiffs' constitutional rights is a factual question that must be decided by the jury. Although the Court recognizes that this is a higher hurdle than the reasonability determination required in qualified immunity analysis, it remains a question of fact.

V.     **JUDGMENT**

Plaintiffs' Motion for Partial Summary Judgment, at R. Doc. 110, is **DENIED**. Defendant Derrick Burmaster's Motion for Summary Judgment, at R. Doc. 105, **DENIED**.

New Orleans, Louisiana, this 29th day of March, 2023.

　　　　　　　　　　　　　　　　　　　　　　　　　_____
**THE HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE**