UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and<br>JULIA BARECKI-BROWN | * | Civil Action No. 22-00847 |
| | * | |
| | * | SECTION: L |
| VERSUS | * | |
| | * | HONORABLE ELDON E. FALLON |
| DERRICK BURMASTER, SHAUN<br>FERGUSON, and the CITY OF<br>NEW ORLEANS | * | |
| | * | DIVISION: 4 |
| | * | |
| | * | HONORABLE KAREN WELLS ROBY |

*************************************************************************

### Memorandum in Support of Motion to Determine Conflict-Free Counsel

In R. Doc. 179, Defendants moved to substitute Officer Burmaster's independent counsel with the City Attorney's Office, and in R. Doc. 181, the Court reserved ruling on that motion and ordered Plaintiff's counsel to proceed with filing the subject Motion to Determine Conflict-Free Counsel according to the protocol used in *Lou v. Lopinto*, *Rogers v. Smith, et al*.

The substitution of Officer Burmaster's independent counsel with the City Attorney's Office raises concerns because there is a structural potential conflict of interest between the City and Officer Burmaster. That is true because a "section 1983 claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), creates a potential conflict of interest between [an employer], and the employee defendants in their individual capacities."[1] That is a problem for <u>Plaintiffs</u> because an unaddressed conflict threatens the integrity of the proceedings, and puts a successful Plaintiffs' verdict at risk on appeal.[2]

---

[1] *Nagle v. Gusman*, No. CIV.A. 12-1910, 2015 WL 1525827, at *1 (E.D. La. Apr. 2, 2015)
[2] *See, e.g., Dunton v County of Suffolk*, 729 F.2d 903 (2nd Cir. 1984), *amended in part on other grounds*, 748 F.2d 69 (2nd Cir. 1984) (reversing plaintiffs' verdict against police officer in a civil rights case where the same attorneys represented the officer and municipality); *Shadid v. Jackson*, 521 F. Supp. 87 (E.D. Tex 1981) (finding joint representation of police officer and city by same attorney was conflict of interest, and that in the circumstances, the "potential for abuse is far too serious to permit joint representation to continue, even in the face of an apparent waiver signed by both of these defendants").

1

Furthermore, the conflict in this case is actual and especially acute here, given that Defendant City's review board unanimously determined Defendant Burmaster's actions to be "NOT JUSTIFIED."

To ensure the integrity of the case, these actual or potential conflicts should be addressed before this case proceeds to trial. Plaintiffs suggest that one of two things should happen. Either (1) the City of New Orleans and Derrick Burmaster should obtain separate counsel; or (2) the conflict should be eliminated through the procedure ordered by Judge Currault in *Lou v. Lopinto,* Case No. 21-80, R. Doc. 58 (E.D. La. Apr. 13, 2022), in which defendants were required to provide to provide affidavits regarding indemnification and conflict waiver if they wish to all retain the same counsel.

## I.     Legal Standard

"Ideally, conflict of interest problems should be settled between the attorney and his client . . . [however,] it is generally proper for an opposing party to bring conflict of interest matters to the attention of the court."[3] That is because an unaddressed conflict threatens the integrity of the proceedings, and puts a successful Plaintiff's verdict at risk on appeal.[4]

Federal courts assessing conflicts of interest apply local ethical rules, although ultimately the issue is one of federal law.[5] The United States District Court for the Eastern District of

---

[3] *U F.D.I.C. v. U.S. Fire. Ins. Co.*, 50 F.3d 1304, 1315 (5th Cir. 1995)); *see also U.S. vs. Ryan,* 20-cr-00065-EEF-KWR (E.D. La. Apr. 11, 2022) (disqualifying counsel on adverse party's motion, because paramount "to the Court's empathy to any particular party is its obligation to apply the law evenhandedly and enforce ethical lawyering.").

[4] *See, e.g., Dunton v County of Suffolk*, 729 F.2d 903 (2nd Cir. 1984), *amended in part on other grounds*, 748 F.2d 69 (2nd Cir. 1984) (reversing plaintiffs' verdict against police officer in a civil rights case where the same attorneys represented the officer and municipality); *Shadid v. Jackson*, 521 F. Supp. 87 (E.D. Tex 1981) (finding joint representation of police officer and city by same attorney was conflict of interest, and that in the circumstances, the "potential for abuse is far too serious to permit joint representation to continue, even in the face of an apparent waiver signed by both of these defendants").

[5] *In re American Airlines, Inc*., 972 F.2d 605, 610 (5th Cir. 1992).

Louisiana has adopted the Rules of Professional Conduct of the Louisiana State Bar Association.[6] The applicable Louisiana Rule of Professional Conduct governing conflicts of interest is Rule 1.7 which states:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
>   (1) the representation of one client will be directly adverse to another client; or
>   (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
>   (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>   (2) the representation is not prohibited by law;
>   (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>   (4) each affected client gives informed consent, confirmed in writing.

Louisiana's rule is identical to the ABA Model Rule of Professional Conduct 1.7 (2002). The Comments to the ABA Model Rule 1.7 further explain that, with respect to concurrent representation of codefendants, "A conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question."

The ABA's Model Code also addresses concurrent conflicts of interest. It provides, in relevant part:

> Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises

---

[6] *See* Local Civil Rules of the U.S. District Court for the Eastern District, Rule 83.2.3.

3

whenever a lawyer is asked to represent two or more clients who *may* have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant.

Ethical Canon 5–14 (emphasis added). The Code states the duty of an attorney in this situation:

If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, *he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided* if he accepts or continues the employment. *He should resolve all doubts against the propriety of the representation.* A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests.[7]

Even after an attorney representing clients with potentially differing interests has weighed the risks and determined that representation may continue, he or she nevertheless owes each client a full explanation of the issues involved.[8]

In sum, both the applicable rules and the Model Code suggest that concurrent representation of clients with potentially conflicting interests may continue only if (1) the firms reasonably believe that they can provide competent, diligent, and unimpaired representation to both sets of clients and (2) the clients have given their informed consent. Moreover, the rules require that this consent be "confirmed in writing."[9]

## II.    DISCUSSION

**A.    Concurrent representation of the City of New Orleans and Officer Burmaster is an actual conflict or a significant potential conflict of interest.**

The City Attorney's concurrent representation of all the Defendants in this case, including the City of New Orleans and Derrick Burmaster, presents both a structural and a potentially direct conflict of interest under Rule 1.7 and federal law.

---

[7] Ethical Canon 5–15 (emphasis added).
[8] Ethical Canon 5–16.
[9] Rules of Professional Conduct, Rule 1.7(b)(4).

4

1. <u>Concurrent representation of a City and its employee presents a structural conflict</u>.

The interests of the City of New Orleans and the interests of its employee Derrick Burmaster are adverse to one another. As the Fifth Circuit explained in *Van Ooteghem v. Gray*,[10] after the Supreme Court's decision in *Monell* allowed suits against local governmental entities, a "serious problem of conflict of interest could exist" in cases where "one attorney represents both a county and a county official individually," due to the parties' adverse interest. The Second Circuit, relying on *Van Ooteghem*, explained why those interests may be adverse in *Dunton v. Suffolk County*:

> A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality.[11]

In *Dunton*, a similar situation as here was present: the same counsel represented both an individual defendant and the County as a municipality. After the trial ended in a jury verdict for plaintiffs, the Second Circuit reversed the jury verdict based on the inherent conflict of interest between the individual Defendants and the municipality. The County had pursued a defense which was in *its* interest, that the individual officer was acting outside the scope of his duties, but failed to present a good-faith defense on the individual officer's behalf: "This was a good defense for the county, which eventually was dismissed from the action. However, it was not in the best interest of Pfeiffer, who was ultimately found liable in his individual capacity."[12] The County

---

[10] 628 F.2d 488, 495 n.7 (5th Cir. 1980), *aff'd in part, vacated in part on other grounds*, 654 F.2d 304 (5th Cir. 1981) (*en banc*) (*per curiam*).
[11] 729 F.2d 903, 907 (2nd Cir. 1984)
[12] *Id.*

indemnified the individual for compensatory damages, but because the jury had also imposed punitive damages which the County did not indemnify, a new trial was required.[13]

In addition to the Fifth Circuit decision in *Van Ooteghem*, courts within the Fifth Circuit have also recognized this conflict. In *Shadid v. Jackson*, 521 F. Supp. 87 (E.D. Tex. 1981), the parties raised the conflicts issue before trial. The District Court recognized that there was an "obvious potential for conflict of interest" where the same counsel represented an individual police officer and the city.[14] "It is in the interests of this individual defendant to contend that if the events alleged did in fact occur, he was acting at all times in good faith within the scope of his lawful, official duties. Conversely, the City of Clarksville might try to avoid liability by proving that this police officer was acting without authority and outside the scope of his employment."[15] The Court held that the individual officers and municipality must be represented by separate counsel, because "an attorney seeking to represent both of these defendants with utmost zeal might find himself in an untenable position."[16]

Finally, Judge Sarah Vance of this district addressed a Motion for Conflict Free Counsel in *Nagle v. Gusman,* holding that "plaintiffs' section 1983 claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), creates a potential conflict of interest between Sheriff Gusman in his official capacity, and the employee defendants in their individual capacities."*[17]*

More recently, Judge Triche Milazzo of this disrcict concurred, noting that "Plaintiff correctly points out that 'in section 1983 cases, the interests of a municipality and the interests of its employees are adverse to one another.'"[18]

---

[13] *Id*. at 909–10.
[14] *Id*. at 88–89.
[15] *Id*.
[16] *Id*. at 89.
[17] No. CIV.A. 12-1910, 2015 WL 1525827, at *1 (E.D. La. Apr. 2, 2015).
[18] *Rogers v. Smith,* 20-cv-00517-JTM-JVM, R. Doc. 274 *(*E.D. La. Nov. 21, 2023).

6

The conflict identified in *Van Ooteghem*, *Dunton*, *Shadid, Nagle, Lou,* and *Rogers* is present here, and if not addressed, has the potential to negatively affect a future verdict. Plaintiff has a claim against the City, as well as claims against an individual officer who served under the City at its will.

2. <u>The City's Use of Force Review Board's finding and representations made by Defendants' counsel suggest additional conflicts.</u>

In addition to the structural conflict, there are potential direct conflicts in that the City's Use of Force Review Board unanimously determined Burmaster's shooting to be "not justified."[19] And Defendants' recent filing makes the matter worse: counsel writes that "the City Attorney's Office will not assert any legal argument in this case on behalf of Defendant Burmaster that conflicts with a legal position taken by the City of New Orleans."[20] That is to say: the City is conforming Burmaster's arguments to the <u>City's</u> position, even though that may be bad for Burmaster.

In recent years, however, sections of this Court have addressed this situation with a process in which defendants are required to provide affidavits regarding indemnification and conflict waiver if they wished to all retain the same counsel.[21]

**B.    The problem can be resolved by defendants either (1) obtaining separate counsel; or (2) following the procedure laid out in *Lou v. Lopinto*.**

These problems can be solved in one of two ways. First, the City and Derrick Burmaster could obtain separate counsel. Second, the defendants could follow the procedure laid out in *Lou v. Lopinto*.[22] In that case, as here, the plaintiffs moved for a determination of conflict-free counsel

---

[19] R. Doc. 162 (Order on Summary Judgment) at pg. 7.
[20] R. Doc. 179-1.
[21] *See, e.g., Lou v. Lopinto,* Case No. 21-80, R. Doc. 58 (E.D. La. Apr. 13, 2022), *Rogers v. Smith*, 20-cv-00517-JTM-JVM, R. Doc. 289 (E.D. La. Jan. 9, 2024).
[22] *Lou v. Lopinto*, Case No. 21-80, R. Doc. 58 (E.D. La. Apr. 13, 2022),

7

given the inherent conflicts between a sheriff and deputies. Judge Currault found that the conflict could be eliminated through confirmation "that the individual officers were acting in the scope of their official duties, the Sheriff Office's agreement to indemnify the individual officers from liability for compensatory and punitive damages, and defense counsel's confirmation that all parties are in alignment on their defenses."[23] She ordered that such confirmation occur as follows:

> IT IS ORDERED that, within 14 days, counsel for Defendants file a separate Affidavit by each Defendant to establish informed consent has been provided, which Affidavit should confirm that counsel (a) met with the defendant; (b) explained the litigation, the claims against the defendant, and the ways in which the defendant's interest is potentially adverse to the interests of other defendants represented by the same counsel; (c) explained the ramifications of the potential conflicts and the ways in which counsel's representation of the defendant may be limited by its obligations to other defendants; (d) explained the effect of the indemnification agreement and the waiver of potential conflicts; (e) confirmed that the defendant was notified that the Sheriff's Office would pay for separate counsel, if necessary; and (f) confirmed that the defendant was offered an opportunity to consult with separate counsel regarding the waiver of potential conflicts before waiving same. If anything contained in these Affidavits contain confidential client information or information subject to the attorney-client privilege or work product doctrine, the Affidavit(s) may be filed UNDER SEAL;
>
> IT IS FURTHER ORDERED that, within 14 days, defense counsel provide his own affidavit averring (a) that he reasonably believes that he will be able to provide competent and diligent representation to each defendant; (b) that the Sheriff's Office has agreed to indemnify the individual defendants for compensatory and punitive damages, costs, and attorneys' fees; and (c) that counsel has met with each defendant and (1) explained the litigation, the claims against the defendant, and the ways in which the defendant's interest is potentially adverse to the interests of other defendants represented by the same counsel; (2) explained the ramifications of the potential conflicts and the ways in which counsel's representation of the defendant may be limited by its obligations to other defendants; (3) explained the effect of the indemnification agreement and the waiver of potential conflicts; (4) confirmed that the defendant was notified that the Sheriff's Office would pay for separate counsel, if necessary; and (5) confirmed that the defendant was offered an opportunity to consult with separate counsel regarding the waiver of potential conflicts before waiving same. If anything contained in the Affidavit contains confidential client information or information subject to the attorney-client privilege or work product doctrine, the Affidavit may be filed UNDER SEAL;[24]

---

[23] *Id.* at 1-2.
[24] *Id.* at 2-3.

So too in *Rogers v. Smith*. In that case, which involved one set of lawyers seeking to represent both the Sheriff and his deputies, the Court noted the adverse interests, and set a hearing to determine conflict-free counsel.[25] At that hearing, the Court questioned each defendant about potential conflicts (including whether the Sheriff would pay for both compensatory and punitive damages if the jury so awarded), and then ordered the defendants to file affidavits under seal.[26] The Court ordered that "I'm going to issue, basically, the same order that Judge Currault did in the Lopinto case so that you file the affidavits under seal in the record, even though we've had a brief conversation, but there are specific questions that need to be answered."[27]

After reviewing the affidavits, the Court determined that it was "satisfied that Defendants have been informed about any potential conflict, that they have waived that conflict, and that the Sheriff has agreed to indemnify the Deputy Defendants and pay for separate counsel if necessary."[28]

Plaintiffs proffer that following Judge Currault's procedure from *Lou v. Lopinto*, which was followed by Judge Milazzo in *Rogers v. Smith*, would solve the problem here.

### III. CONCLUSION

For the reasons above, Plaintiffs ask that this motion be granted.

Respectfully Submitted:

*/s/ Hope Phelps*
HOPE PHELPS (La. Bar No. 37259)
WILLIAM MOST (La. Bar No. 36914)
DAVID LANSER (La. Bar No. 37764)
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
Tel: (504) 500-7974
Email: hopeaphelps@outlook.com

TARAK ANADA (#31598)
JONES WALKER LLP
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8322
Facsimile: (504) 589-8322
Email: tanada@joneswaker.com

---

[25] *Rogers v. Smith,* 20-cv-00517-JTM-JVM, R. Doc. 274 (E.D. La. Nov. 21, 2023).
[26] *Id.* at R. Doc. 277. See Transcript of Hearing Attached as Exhibit A.
[27] Ex. A at pg. 11.
[28] *Id.* at R. Doc. 289.