UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and JULIA BARECKI-BROWN | * * * | CIVIL ACTION |
| | | DOCKET NUMBER: 22-00847 |
| VERSUS | * * | |
| | | SECTION: L |
| DERRICK BURMASTER, SHAUN FERGUSON, and the CITY OF NEW ORLEANS | * * * | HONORABLE ELDON E. FALLON |
| | * | DIVISION: 4 |
| | * * | HONORABLE KAREN WELLS ROBY |

*******************************************************************************

### THE CITY OF NEW ORLEANS' AND DERRICK BURMASTER'S JOINT RESPONSE AND OPPOSITION TO PLAINTIFF'S MOTION TO DETERMINE CONFLICT-FREE COUNSEL

Defendants, the City of New Orleans (the "City") and Derrick Burmaster ("Officer Burmaster") submit this joint opposition to Plaintiff's Motion to Determine Conflict-Free counsel [R. Doc. 183].

As is shown below, the City and Officer Burmaster are unified on every issue in their defense of this case. There is no dispute that Officer Burmaster used lawful force in compliance with NOPD policy in the unfortunate incident in shooting Plaintiff's dog.[1] Further, although the City has found that Officer violated NOPD's uniform policy, there is no dispute as between the defendants that such uniform policy did not affect the outcome of the incident. Importantly, the City readily admits that when Officer Burmaster shot the dog, he was acting in the course and scope of his employment. There are no other defendants in this case other than the City and Officer Burmaster, so there are no factual conflicts as to supervisory chain of command or any other

---

[1] See Exhibit 1, p. 1 (an October 27, 2023, correspondence from NOPD Superintendent Anne Kirkpatrick to Derrick Burmaster which exonerated Officer Burmaster of a charge of use of excessive force in shooting Plaintiff's dog) (Kirkpatrick exoneration).

1

material facts as between the defendants. Simply put, there is no conflict between the defendants. For this reason, there is no reason for the Court or Plaintiffs to question the ethics of the attorney-client relationship between the City Law Department and Officer Burmaster.

Plaintiffs' motion is a transparent trial tactic that should be rejected.[2] Plaintiffs offer the Defendants two disadvantageous take-it-or-leave-it choices: "Either (1) the City of New Orleans and Derrick Burmaster should obtain separate counsel; or (2) . . . defendants [must] provide [] separate affidavits regarding indemnification and conflict waiver if they wish to all retain the same counsel."[3] Moreover, Plaintiffs make it clear that the City must agree to indemnify Officer Burmaster for an award of punitive damages.[4] However, Plaintiffs' counsel knows full well that the City cannot, by law, indemnify its employees for punitive damages.[5] Plaintiffs' strategy is therefore to weaken the Defendants defense by separating their representation.

Neither of the options proposed by Plaintiffs is fair or reasonable. First, Defendants will be prejudiced by being prevented from presenting their unified defense at trial.[6] Second, although the

---

[2] See *Murray v. Metro. Life Ins. Co*., 583 F.3d 173, 178 (2d Cir. 2009) ("courts must guard against the tactical use of motions to disqualify counsel, [which are therefore] subject to fairly strict scrutiny[.]").

[3] R. Doc. 183-1, p. 2.

[4] See R. Doc. 183-1, p. 7 ("defendants could follow the procedure laid out in *Lou v. Lopinto*."); p. 8 (in *Lou*, the Court found that a conflict could be eliminated through confirmation, among other things, that "the Sheriff Office's agreement to indemnify the individual officers from liability for compensatory and ***punitive damages***") (emphasis added).

[5] Plaintiffs' counsel represented the plaintiffs in *Lou v. Lopinto*, E.D. La. Case No. 21-80. In a pleading filed in *Lou* (R. Doc. 18-1, p. 4, n 4), Plaintiffs' counsel made it clear that he understood that a governmental entity could not indemnify its employees for punitive damages, asserting: "While Defendant Sheriff Lopinto has admitted in response to Request for Admissions that he will indemnify the individual deputies for any judgment for punitive damages, (an obligation which could not lawfully be imposed upon the Sheriff in his official capacity under 42 USC 1983), there is a serious issue as to the enforceability of this admission, given the Louisiana constitutional prohibition of the pledge or donation of public funds by a political subdivision to any person under Article 7, Section 14. See also *Board of Directors of the Industrial Development Board of the City of Gonzales, Louisiana, Inc v All Taxpayers, Property Owners, Citizens of the City of Gonzales, et al*, 938 So2d 11, 2005-2298 (La. 9/6/06) (the "*Cabela's*" case). There are serious concerns that this pledge is against the public interest, is not a binding contract and will be unenforceable should punitive damages be assessed against the individual deputies and the Sheriff or any successor Sheriff refuses to pay. It is also not clear whether the Sheriff intends to indemnify himself, at taxpayer expense, if the jury finds that he is personally liable for punitive damages due to his own reckless or wanton behavior in this case.").

[6] See *Van Ooteghem v. Gray*, 628 F.2d 488, 495 n. 7 (5th Cir. 1980), aff'd in part, vacated in part on other grounds, 654 F.2d 304 (5th Cir. 1981) (en banc) (per curiam) (recognizing that in a Section 1983 case, "both the employee and the county benefitted from being jointly represented" where their interests completely coincided).

City has agreed to indemnify Officer Burmaster for compensatory damages, the City, by law will not indemnify employees for acts of "gross negligence, recklessness, or an intentional tort or wrong" (*i.e*., for punitive damages).[7] Officer Burmaster has acknowledged this fact. In his signed "Conditions of Representation" letter in which he accepted the Law Department's representation in this case, Officer Burmaster acknowledged that although "the City of New Orleans would pay the judgment of compensatory damages if you were within the course and scope of your employment[.]"[8] Officer Burmaster further acknowledged that [b]y law, the City of New Orleans cannot be held liable for punitive damages . . . you would be personally responsible in the unlikely event punitive damage are assessed."[9]

For these reasons, it is evident that no conflict exists between the City and Officer Burmaster which would call into question the City's Law Department providing joint representation. To the extent that a potential conflict might arise (after verdict) based on indemnification, Officer Burmaster has acknowledged and waived such potential conflict. Plaintiffs' Motion has no merit and should be denied without any further action.

## **BACKGROUND**

On April 14, 2021, Officer Derrick Burmaster, a New Orleans Police Department ("NOPD") Senior Police Officer, responded to a domestic disturbance at Plaintiff's house, entered the Plaintiffs' fenced in yard, and encountered two aggressive dogs running down the porch stairs.[10] Officer Burmaster shot and killed one of the dogs.[11] Following an investigation by the NOPD's Public Integrity Bureau ("PIB") into Officer Burmaster's actions in shooting the dog, the

---

[7] See Exhibit 2, p. 2 (City of New Orleans Chief Administrative Office Policy Memorandum No. 47(R), dated June 7, 2015, re: Indemnification for City Officers and Employees.
[8] Exhibit 3, (Conditions of Representation, signed by Officer Burmaster).
[9] *Id*.
[10] See Exhibit 1, p. 1 (an October 27, 2023, correspondence from NOPD Superintendent Anne Kirkpatrict to Derrick Burmaster which exonerated Officer Burmaster of a charge of use of excessive force in shooting Plaintiff's dog).
[11] *Id*.

PIB investigator recommended that Officer Burmaster be charged with "sustained" policy violations based on use of force and uniform violations.[12]

Plaintiffs filed their complaint in the instant case on March 31, 2022.[13] At the time the defendants filed their answers, NOPD's disciplinary process was not concluded. The defendants therefore utilized separate counsel to file their answers and to litigate the case. On March 30, 2023, the Court stayed litigation pending Officer Burmaster's appeal of the denial of his motion for summary judgment based on qualified immunity on March 30, 2023.[14]

While the case was stayed, on June 15, 2023, NOPD conducted a Bureau Superintendent's Disciplinary Hearing concerning Officer Burmaster's disciplinary charges relating to the shooting of Plaintiff's dog.[15] Following the hearing, the hearing panel, which was comprised of Chief Ganthier, Deputy Superintendent Ryan A. Lubrano, and Deputy Superintendent Keith A. Sanchez, recommended that Officer Burmaster be "exonerated" of the charges of disciplinary violations based on use of force, but "sustained" as to the uniform violations.[16]

In his September 11, 2023, correspondence to the NOPD Superintendent, Chief Ganthier explained the facts that the panel learned which "justified the recommended disposition":

> Officer Derrick Burmaster entered the front yard and proceeded to go to the residence. Once half-way in the gate, Officer Burmaster heard barking sounds coming fast towards him. He removed his weapon because he did not observe a way out. He didn't think he was fast enough to make it out the gate before the dogs arrived. He did not observe a platform or car to jump on to escape. He didn't believe he could jump the fence because of the spikes on top of it. He prepared himself and once he observed the dog, he believed it was vicious and coming fast towards him. Officer Burmaster believed the dog would bite him on the leg or pelvis area. Officer Burmaster then shot the dog that was a threat to him. Officer Burmaster believed the dog was ferocious and was going to bite without provocation. He then attempted

---

[12] *Id.*, p. 2.
[13] R. Doc. 1.
[14] R. Doc. 167.
[15] See Exhibit 4 (p. 2), Interoffice Correspondence dated September 28, 2023, from Chief Deputy Superintendent Hans Ganthier to Superintendent Anne E. Kirkpatrick, attaching an Interoffice Correspondence dated September 11, 2023, from Hans Ganthier to Superintendent Michelle M. Woodfork (the "Ganthier Memo").
[16] *Id.*, p. 3.

4

to deescalate the situation by apologizing to the owners on the scene Officer Burmaster stated he just wanted to get out safely without injuring himself or the dog.[17]

In addition, Chief Ganthier noted that "[t]he panel believed the outcome of the incident would not have been affected by Officer Burmaster having the PR24/Expandable Baton and/or the department issued Body Armor."[18] On October 27, 2023, Superintendent Kirkpatrick issued a letter to Officer Burmaster which exonerated him of the disciplinary charges based on use of force against Plaintiffs' dog and sustained the uniform violation.[19] This action concluded Officer Burmaster's NOPD disciplinary proceeding.

On January 27, 2025, this Court conducted a status conference and issued an order setting a new trial date for this litigation.[20] On February 6, 2025, Officer Burmaster signed a Conditions of Representation agreement whereby the City Law Department became Officer Burmaster's attorneys.[21] On February 11, 2025, the defendants filed a joint motion to substitute Officer Burmaster's counsel for the City's Law Department.[22] Plaintiffs then filed a response to the motion to substitute counsel,[23] and later filed the instant Motion to Determine Conflict-Free Counsel (the "Motion").[24]

## ARGUMENT AND CITATIONS TO AUTHORITY

Plaintiffs' Motion should be denied because Plaintiffs fail to carry their burden to demonstrate a "manifest and glaring" or "open and obvious" conflict of interest, as is required by

---

[17] *Id.*, p. 4.
[18] *Id.*, p. 4
[19] Exhibit 1 (Kirkpatrick Exoneration).
[20] R. Doc 174.
[21] Exhibit 3. (Conditions of Representation).
[22] R. Doc. 179.
[23] R. Doc. 181.
[24] R. Doc. 183.

5

Fifth Circuit jurisprudence.[25] Contrary to Plaintiff's argument, there is no presumption of a "structural conflict" requiring Court intervention just because an employee and municipality are represented by the same counsel in a Section 1983 case.[26] As one court in this district has explained, "[d]epriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration."[27] A Court must consider "[a]ll of the facts particular to [the] case . . . in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights."[28]

*Nagle v. Gusman*,[29] cited by Plaintiffs, explained that there are two factual situations where a potential conflict may arise in a Section 1983 case.

> [First,] [a] municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality. If he is successful in asserting a good faith immunity defense, the municipality may be wholly liable because it cannot assert the good faith immunity of its employees as a defense to a section 1983 action.[30]
>
> Second, the proof required for individual section 1983 liability also creates a potential conflict of interest between the "lower-level" . . . defendants who were directly involved in [the plaintiff's] care and the "supervisory" . . . defendants to whom the lower-level defendants reported. . . . [T]he lower-level defendants have an interest in proving that they reported failures . . . and thus did not "disregard" risks . . . In contrast, supervisory defendants have an interest in proving that they

---

[25] *In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83 (5th Cir. 1976). Disqualifications motions based on alleged conflicts of interest are guided by the standards set forth in the ABA Model Rule 1.7 (prohibiting concurrent representation where there exists a conflict of interest unless the client waives such conflict). See *F.D.I.C. v. U.S. Fire Ins*. Co., 50 F.3d 1304, 1311-12 (5th Cir. 1995) (standards for disqualification motions); Eastern District Local Civ. Rule 83.2.3 (adopting the Louisiana State Bar Association's Rules of Professional Conduct).
[26] See, *e.g*., *Legacy Recovery Services LLC v. City of Monroe*, 2024 WL 1169422, *7 (W.D. La. March 1, 2024) (because the municipality will be liable for the actions of the employee there was "no reason to find a potential conflict of interest.").
[27] *Nagle v. Gusman*, 2015 WL 1525827, *1 (E.D. La. April 2, 2015). (quoting *In re ProEducation Int'l, Inc*., 587 F.3d 296, 299–300 (5th Cir.2009)
[28] *Id*.
[29] R. Doc. 183-1, p. 6.
[30] *Id*. (quoting *Dunton v. Suffolk Cnty., State of N.Y.*, 729 F.2d 903, 907 (2d Cir.) amended, 748 F.2d 69 (2d Cir.1984) (relying on *Van Ooteghem*, 628 F.2d 488).

6

were not informed of any failures . . . and thus did not "know of" the risks to detainees' health.[31]

In the instant case, neither of the *Nagle* situations exist. Officer Burmaster acted within the scope of his official duties when he responded to the call at Plaintiffs' residence and shot their dog. In addition, Officer Burmaster's actions complied with NOPD policies as to use of force; the uniform violations did not affect the outcome. As such, neither defendant in this case has a defense or interpretation of the facts that is adverse to the other. Further, because there are no other employees named as defendants, there are no evidentiary conflicts between any lower-level employee. Defendants have a fully unified defense.

*Van Ooteghem v. Gray*[32] does not support Plaintiffs' position. A later case from the Western District of Louisiana, *Legacy Recovery Services LLC v. City of Monroe*, explained that *Van Ooteghem* did not stand for the proposition that a conflict presumptively existed in all cases where counsel represented both a municipality and an employee.[33] As the Court explained, "*Van Ooteghan v. Gray*, . . . gestures towards the possibility of potentially problematic conflicts of interest in joint representation. . . . In dicta, the Fifth Circuit speculated that the then-recent holding in *Monell* could result in the type of conflict propounded by Plaintiffs. . . . However, the *Van Ooteghem* court did not make any findings on this issue and posited that 'no party could prevail on the issue, given our conclusion that, as a matter of law the municipality-defendant must be liable for the actions of its agent and co-defendant. . . . There is thus no reason to find a potential conflict of interest on the part of Defendants' counsel[.]"[34] Accordingly, in the instant case, as in *Legacy Recovery Services*, given the City's acknowledgment that Officer Burmaster acted within

---

[31] Id. (citations omitted).
[32] 628 F.2d at 495 n.7.
[33] *Legacy Recovery Systems*, 2024 WL 1169422.
[34] *Id.*, *7 (punctuation and citations omitted).

7

NOPD policy and within the course and scope of his employment, there is no reason to find a conflict of interest.

The Second Circuit case of *Dunton v. Suffolk County*[35] does not support Plaintiffs' argument, either. In *Dunton*, the court observed that that although since *Monell*, "the interests of a municipality and its employee as defendants in a section 1983 action are in conflict,"[36] that "need not create here a per se rule that disqualification is automatic in conflicts of this nature[.]"[37] Courts in other circuits have clarified that there is no per se rule mandating disqualification.[38] In addition Second Circuit case law developed since *Dunton* has made it clear that in the context of a municipality and an employee being represented by the same counsel, "disqualification is far from automatic."[39] Rather, disqualification is appropriate "only where counsel acts in a way that is actually against the officer's interests."[40] In addition, there must be a showing of "actual prejudice" to the employee.[41]

For example, in *Nolan v. City of New York*, in a Section 1983 case, the city defendant conceded that its employee acted outside of his scope of employment. The defendants asserted a "unified theory of defense" which posited that Plaintiffs' complaint showed no unconstitutional policy or practice and that the plaintiff's rights, whether or not clearly established, were not

---

[35] 729 F.2d 903 (2nd Cir. 1984)
[36] *Id*. at 907.
[37] *Id*. at 908 n. 4
[38] See *Johnson v. Bd. of Cty. Comm'rs for Cty. of Fremont*, 85 F.3d 489, 493 (10th Cir. 1996) (declining to adopt a per se rule requiring separate representation in Section 1983 cases), cert denied, 117 S. Ct., 611 (1996); *Coleman v. Smith*, 814 F.2d 1142, 1147-48 (7th Cir. 1987) ("We are troubled by the Second Circuit's broad holding that after *Monell* an automatic conflict results when a governmental entity and one of its employees are sued jointly under section 1983. We believe that that holding must be read in context with the factual situation present in *Dunton*.").
[39] *Nolan v. City of New York*, 2024 WL 4575374, *4 (S.D. New York, Oct. 25, 2024) (citing *Billewicz v. Town of Fair Haven, Vermont*, 2022 WL 4115966, at *3 (D. Vt. Aug. 11, 2022) (collecting cases), aff'd, 2023 WL 3961437 (2d Cir. June 13, 2023).
[40] *Id*. (quoting *Lieberman v. City of Rochester*, 681 F. Supp. 2d 418, 425 (W.D.N.Y. 2010)).
[41] *Id*. (citations omitted).

violated. Given these circumstances, the court held that there was no conflict caused by counsel's joint representation of the city and employee, and no *Dunton* issue.[42]

The facts of *Dunton* are distinguishable to those in the instant case. In *Dunton*, a conflict existed between the officer and county because "the County Attorney stated that [the officer] was not acting under color of state law but rather as an 'irate husband.'"[43] In addition, at trial, the officer was represented by county counsel, who argued in his opening statement that the officer "acted as a husband, not even as an officer."[44] In contrast, in the instant case, both defendants assert the same defense: Officer Burmaster acted as a reasonable police officer when he encountered Plaintiffs' aggressive dog. Here, Plaintiffs fail to identify any facts similar to *Dunton* that would create a potential conflict. *Dunton* provides no support for Plaintiffs' Motion.[45]

In *In re Yarn Processing Patent Validity Litigation*,[46] the Fifth Circuit held that, as a general rule, "courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification."[47] *In re Yarn* requires that, in order to warrant a court to interfere in an individual's decision to hire a particular attorney, and unethical change of sides must be "manifest and glaring" or "open and obvious," thereby "confront[ing] the court with a plain duty to act."[48] Here, the City and Officer Burmaster are presenting a unified defense. There is no potential that the City will argue that Officer Burmaster was not acting in the course and scope of

---

[42] Id., *7.
[43] *Id.* at 907.
[44] *Id.* at 906.
[45] Similarly, the other cases cited by Plaintiffs are factually inapt and do not support their Motion. See *Shadid v. Jackson*, 521 F. Supp. 87, 88-89 (E.D. Tex 1981) (the city defendant could raise a defense that the employee was "without authority and outside the scope of his employment"); *Rogers v. Smith*, 20-cv-00517-JTM-JVM, R. Doc. 274 (E.D. La. Nov. 21, 2023); see R. Doc. 183-2, p. 8:12-15 (multiple defendants and "there is a question as to whether or not you were acting individually and whether the sheriff was directing the investigation, or you were operating under a policy in the Sheriff's Office."); *Lou v. Lopinto*, E.D. La. Case No. 21-80, R. Doc. 18-1, pp. 2, 3 (involving "various claims" against "various defendants" involving "the Sheriff in his individual capacity and official capacity, as well JPSO supervisory and lower-level deputies").
[46] 530 F.2d 83 (5th Cir. 1976).
[47] *Id.* at 88.
[48] *Id.* at 88-89.

his employment. The City has determined that Officer Burmaster complied with its use of force policies in shooting the dog and that the uniform violation did not affect the shooting. In addition, the City has a clear indemnity policy, which excludes indemnification for punitive damage awards, but which contemplates indemnification for compensatory awards. The City's interests are fully aligned with Officer Burmaster's interest in preventing any award being made against Officer Burmaster. There is simply no conflict and Plaintiffs' motion should be denied.

Plaintiffs argue that the NOPD's Use of Force Review Board's review of Officer Burmaster's actions in shooting Plaintiffs' dog should be admissible and demonstrate a conflict of interest. However, the Use of Force Review Board is a "quality control mechanism" that was established as part of the Consent Decree Litigation to review serious uses of force.[49] As a quality control mechanism, the findings of the Use of Force Review Board are inadmissible pursuant to, among other provisions, Federal Rules of Evidence 407 as subsequent remedial measures.[50] Further, the Use of Force Review Board quality control decisions does not create a conflict where the Superintendent of the NOPD (the policy maker for the NOPD) has determined that an officer's actions did not violate NOPD policy.

Finally, and in the alternative, the "Conditions of Representation" signed by Officer Burmaster, demonstrates that, to the extent that there could be a conflict in the future concerning indemnification for punitive damages, Officer Burmaster understood and still desired representation by the City Law Department.[51] Any potential conflict in that regard is understood and waived. Plaintiffs' demand that the City indemnify its employee for punitive damages is a

---

[49] Exhibit 5, p. 1 (NOPD Operations Manual Chapter 1.3.7); See *United States of America v. City of New Orleans*, R. Doc. 159-1, pp. 32-33, para. 108 (Consent Decree, January 1, 2013).
[50] See *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986) (affirming the district court's determination that a "disciplinary proceeding [against a police officer] constituted a remedial measure.").
[51] See Exhibit 3.

10

catch-22. If this rule is adopted by the Court as a standard, it would preclude a governmental entity's law department from ever jointly representing its employee and the entity, due to the Louisiana constitutional prohibition of the pledge or donation of public funds by a political subdivision to any person under Article 7, Section 14. Plaintiffs' Motion should therefore be denied.

## CONCLUSION

Officer Burmaster has expressed his desire to be represented by the City Law Department. The Defendants will benefit by presenting a unified defense at trial. There is no actual or potential conflict as to defenses at trial because the City acknowledges that Officer Burmaster acted in the course and scope of his employment and complied with NOPD policy in his encounter with Plaintiffs' dog. Plaintiffs have failed to carry their burden to demonstrate any "manifest and glaring" or "open and obvious," conflict that requires the Court's intervention. Plaintiffs' Motion is merely an unfair trial tactic to divide the Defendants at trial. The Motion should be denied.

Respectfully submitted,

*/s/ James M. Roquemore*
**JAMES M. ROQUEMORE, LSBA #40035**
DEPUTY CITY ATTORNEY
Email: james.roquemore@nola.gov
**CORWIN ST. RAYMOND, LSBA #31330**
CHIEF OF LITIGATION
Email: cmstraymond@nola.gov
**DONESIA D. TURNER, LSBA #23338**
CITY ATTORNEY
Email: donesia.turner@nola.gov
1300 PERDIDO STREET
CITY HALL - ROOM 5E03
NEW ORLEANS, LOUISIANA 70112
TELEPHONE: (504) 658-9800
FACSIMILE: (504) 658-9868

*Counsel for the City of New Orleans*

And

 */s/ C. Theodore Alpaugh, III*
**C. Theodore Alpaugh, III**, LSBA # 02430
Guste, Barnett, Schlesinger & Alpaugh, L.L.P.
639 Loyola Avenue, Suite 2130
New Orleans, Louisiana 70113
(504) 529-4141 Office
(504) 561-0326 Facsimile
cta@gustebarnett.com E-mail