UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and | * | Civil Action No. 22-00847 |
| JULIA BARECKI-BROWN | * | |
| | * | SECTION: L |
| VERSUS | * | |
| | * | HONORABLE ELDON E. FALLON |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | DIVISION: 4 |
| NEW ORLEANS | * | |
| | * | HONORABLE KAREN WELLS ROBY |

***************************************************************************

**Reply in Support of Motion to Determine Conflict-Free Counsel**

The City and Officer Burmaster were represented by different lawyers for the first three years of this case. Now the City Attorney's Office wants to represent both of them together. Plaintiff filed a motion to determine conflict-free counsel, given the structural potential conflicts inherent in such a situation.

Defendants' opposition, however, makes things worse – not better. The documents Defendants attach make explict that in many ways, the City Attorney's office will prioritize its representation of the City over Officer Burmaster. And the documents also make explicit that the City will not indemnify Burmaster for attorneys fees, punitive damages, gross negligence, or recklessness.

Thus, Burmaster is still subject to serious legal exposure, and it would be in his interest to emphasize the City's training deficiencies identified in this case. But the City Attorney's office is clear that it <u>will not make such an argument</u>[1] – even if it is in the best interest of Officer Burmaster.

Accordingly, the *Lou v. Lopinto* / *Rogers v. Smith* protocol should be followed to ensure conflict-free counsel in this case.

---

[1] R. Doc. 194-3 at 3 (if there "is a legal argument which should be made in your defense, but which conflicts with a legal position taken by the City of New Orleans, or any of its agencies, in this or another case, your Assistant City Attorney will not make the argument.")

1

**Discussion**

In opposing Plaintiffs' motion, Defendants attach several documents regarding the City's policy and process for indemnifying employees. Those documents show that in many ways, the City Attorney's offfice will prioritize its representation of the City over Officer Burmaster. For example the "Conditions of Representation" explain that:

- If there "is a legal argument which should be made in your defense, but which conflicts with a legal position taken by the City of New Orleans, or any of its agencies, in this or another case, your Assistant City Attorney will not make the argument."[2]

- In the event of an adverse judgment, the City Attorney's office will deterimine whether an appeal "would be in the interest of the City of New Orleans" – not Burmaster.[3]

Furthermore, the City explicitly does not promise to provide conflict counsel, and is explicit that it will not indemnify for punitive damages.[4] The City also explains in its policy on indemnification that it will not indemnify for "gross negligence, recklessness, or an intentional tort or wrong."[5] It is also ambiguous if the City would even indemnify for compensatory damages for constitutional violations, because the City only promises to indemnify for "lawful" acts[6] – and constituitonal violations are definitively not lawful.[7]

It also appears that the City will not indemnify for attorneys fees if awarded under 42 U.S.C. 1988. Its indemification memorandum "expressly excludes the payment of attorney's fees

---

[2] R. Doc. 194-3 at 3.
[3] R. Doc. 194-3 at 4.
[4] R. Doc. 194-3 at 4.
[5] R. Doc. 194-2 at 2.
[6] R. Doc. 194-2 at 2.
[7] *See, e.g., Byars v. United States,* 273 U.S. 28 (1927) ("A search prosecuted in violation of the Constitution is not made lawful by what it brings to light."); *Fletcher v. Wainwright*, 399 F.2d 62, 63 (5th Cir. 1968) ("If, as he contends, that conviction was obtained in violation of the Constitution, then his confinement is unlawful.")

and legal costs except as specifically provided in this memorandum," and there is no provision for indeminfying for attorneys fees awarded to Plaintiffs.[8]

Thus, the documents show that the City will *only* indemnify Burmaster for compensatory damages, and *only* for acts that were lawful, not grossly negligent, and not reckless, and *only* if Burmaster cooperates "as much as is reasonably possible with the City."[9]

Burmaster therefore is still facing serious liability. So are there potential conflicts between the parties? Yes. It would be in Burmaster's interest to blame the City's training. It was revealed in this case that NOPD took a training curriculum developed by the U.S. Department of Justice and then omitted or removed all the training about how an approaching dog is "almost always friendly" and how officers should not "view a dog running toward them as a threat" – which is exactly what happened with Burmaster and Apollo.[10] Because of this, Defendants are wrong to argue that none of the scenarios envisioned in *Nagle v. Gusman* are present here. *Nagle v. Gusman* discussed the situation in which an employee "may partially or completely avoid liability by showing that he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality." Exactly so here; Burmaster could argue that his actions were at least in part due to the NOPD's training, which biases officers in favor of use of force against dogs.

And it would be in the City's interest to blame Burmaster's choices. Defendants concede that Burmaster was violating NOPD policy by not carrying his baton, but they assert that the lack of a baton "did not affect the outcome."[11] It is unclear how they are so certain of this, given that there are "multiple police witnesses . . . who stated that the Burmaster's NOPD-issued baton

---

[8] R. Doc. 194-2 at 2; see also R. Doc. 194-3 at 4 (City would pay for "compensatory damages");
[9] R. Doc. 194-2 at 3.
[10] See R. Doc. 162 (order on motion for summary judgment) at 3.
[11] R. Doc. 194 at 7.

3

would have been an effective tool against Apollo."[12]

Finally, Defendants miscite the law. They contend that the Fifth Circuit has held that "in order to warrant a court to interfere in an individual's decision to hire a particular attorney, and unethical change of sides must be 'manifest and glaring' or 'open and obvious,' thereby 'confront[ing] the court with a plain duty to act.'"[13] The Fifth Circuit held no such thing. The "manifest and glaring" langauge appears in the discussion of a 1946 Western District of Washington case that the Fifth Circuit discussed, but does not appear in any rule the Fifth Circuit adopted.[14]

## Conclusion

Given the state of the City's indemnification policies, Defendants do not and cannot show that there are no potential conflicts between the City and Officer Burmaster. Nor do they provide any good reason not to conduct the conflict-free-counsel protocol repeatedly used by sections of this Court. That protocol both allows every defendant to have the attorney of their choice, and also ensures that conflicts are eliminated. The motion should be granted.

Respectfully Submitted:

*/s/ William Most*
HOPE PHELPS (La. Bar No. 37259)
WILLIAM MOST (La. Bar No. 36914)
DAVID LANSER (La. Bar No. 37764)
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
Tel: (504) 504-5023
Email: williammost@gmail.com

TARAK ANADA (#31598)
JONES WALKER LLP
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8322
Facsimile: (504) 589-8322
Email: tanada@joneswaker.com

---

[12] R. Doc. 162 at 4
[13] R. Doc. 194 at 9.
[14] *In re Yarn Processing Patent Validity Litigation*, 530 F. 2d 83 (5th Cir. 1976), *citing Porter v. Huber*, 68 F.Supp. 132 (W.D.Wash.1946).

4