UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DEREK BROWN, ET AL** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 22-847** |
| | * | |
| **DERRICK BURMASTER, ET AL.** | * | **SECTION L(4)** |

## ORDER & REASONS

Before the Court is a Motion to Determine Conflict-Free Counsel filed by Plaintiffs Derek Brown and Julia Barecki-Brown ("Plaintiffs"). R. Doc. 183. Defendants Derrick Burmaster ("Burmaster") and the City of New Orleans (the "City") oppose the motion. R. Doc. 194. The Plaintiffs replied. R. Doc. 195. After considering the record, briefing, and applicable law, the Court now rules as follows.

### I. BACKGROUND & PRESENT MOTION

On April 14, 2021, New Orleans Police Department ("NOPD") Officer Burmaster and his partner, Officer John Roussel, responded to an alleged domestic disturbance at the Plaintiffs' home. R. Doc. 60 at 1. Upon arrival, Burmaster and Roussel entered the Plaintiffs' fenced yard and noticed two dogs running toward them. *Id.* Burmaster then withdrew his firearm, fired, and killed one of the Plaintiffs' dogs: Apollo, an 18-week-old Catahoula puppy. *Id.* After the incident, NOPD's Public Integrity Bureau conducted an investigation into Burmaster's actions and recommended that he be charged with improper use of force and uniform violations. *Id.* at 7-8.

On March 31, 2022, Plaintiffs filed the instant civil case against Burmaster, alleging that the shooting of Apollo was a violation of their Fourth, Fifth, and Fourteenth Amendment rights under 42 U.S.C. § 1983. *Id.* at 9-10. Relevant to this motion, Plaintiffs also brought *Monell* claims against the City of New Orleans and the NOPD Superintendent for failing to adequately train,

1

supervise, and discipline Burmaster regarding how police should interact and approach dogs in the field. *Id.* at 14-17. Notably, at the beginning of this litigation, Burmaster and the City retained separate counsel due to the Public Integrity Bureau's aforementioned findings and the fact NOPD's disciplinary process had not yet concluded. Around a year later, Burmaster filed a motion for summary judgment based on qualified immunity, which this Court denied. R. Doc. 162. Thereafter, on March 30, 2023, the case was administratively stayed pending Burmaster's appeal of this Court's summary judgment determination. R. Doc. 167. During the stay, NOPD concluded its disciplinary proceedings concerning Burmaster's shooting of Apollo. R. Doc. 194-4. The hearing panel specifically exonerated Burmaster of all charges for improper use of force but sustained his uniform violations. *Id.*

On January 17, 2025, the Fifth Circuit issued its opinion affirming the denial of Burmaster's summary judgment motion, and this Court reopened the case for further proceedings. R. Docs. 174, 178. After participating in multiple status conferences and selecting new trial dates in this matter, Burmaster and the City have now filed a joint motion to substitute the City Attorney's Office as Burmaster's counsel. R. Doc. 179. Effectively, this change would mean that the City Attorney's Office would represent both Burmaster and the City going forward in the case, and the Defendants would no longer have separate representation.

The Plaintiffs argue that substitution of Burmaster's independent counsel with the City Attorney's Office raises attorney conflict concerns that threaten the integrity of these proceedings. R. Doc. 183-1 at 1. More specifically, they assert that their separate section 1983 claims against both Burmaster in his individual capacity and the City under a theory of *Monell* liability creates a conflict of interest between the two Defendants. *Id.* As such, they recommend this Court order the Defendants to either: (1) continue to retain separate counsel or (2) follow the informed consent

procedure laid out in *Lou v. Lopinto*, No. 21-80, R. Doc. 58 (E.D. La. Apr. 13, 2022). *Id.* at 7-8. In opposition, Burmaster and the City contend that they are unified on every issue regarding their theory of defense, and thus, no conflict of interest arises from the proposed joint representation. R. Doc. 194 at 1-2. Furthermore, the Defendants note that Burmaster knowingly signed a representation agreement with the City Attorney's Office that explains the consequences of a potential conflict should one manifest. R. Doc. 194-3. In reply, the Plaintiffs reassert their argument that allowing Burmaster and the City to share the same counsel would be improper without appropriate consent and point out alleged deficiencies in their representation agreement. R. Doc. 195.

## II.    LAW & ANALYSIS

The Court agrees with the Plaintiffs that the interests of a municipality and the interests of its employees may be adverse to one another in section 1983 cases such as the one here. *Nagle v. Gusman*, No. CIV.A. 12-1910, 2015 WL 1525827, at *1 (E.D. La. Apr. 2, 2015) (citing *Van Ooteghem v. Gray*, 628 F.2d 488, 495 (5th Cir. 1980), *aff'd in part, vacated in part on other grounds*, 654 F.2d 304 (5th Cir. 1981) (en banc) (per curiam)); *see also Shadid v. Jackson*, 521 F. Supp. 87, 90 (E.D. Tex. 1981). As one court has explained, this conflict issue presents itself in two ways. *Dunton v. Suffolk Cnty., State of N.Y.*, 729 F.2d 903, 907 (2d Cir.), *amended*, 748 F.2d 69 (2d Cir. 1984) (citing *Van Ooteghem*, 628 F.2d at 495). On one hand, an employee can at least shift part of his liability to the municipality if he can show that his actions were pursuant to an official policy. *Id.* Conversely, a municipality may attempt to avoid liability by showing that its employee was not acting within the scope of his or her duties. *Id.*

Applying this rationale to the present facts, the Court finds that it could be in Burmaster's interest to argue at trial that the shooting of Apollo is partially the City's fault because NOPD's

3

training program allegedly fails to adequately address how to interact with dogs during police work. However, the City Attorney's Office makes clear – per its representation agreement with Burmaster – that it will not raise such a claim given it would "conflict with a legal position taken by the City." R. Doc. 194-3. Moreover, the City could blame Burmaster for not carrying his baton when he approached the Plaintiffs' home, as required by NOPD uniform policy, which prompted him to use his firearm instead. Indeed, although the City exonerated Burmaster for his improper use of force violations, it also sustained his violation of officer uniform policy. R. Doc. 194-4. While the Court acknowledges that at this time both Defendants assert the same defense that Burmaster acted as a reasonable police officer when he encountered Apollo on the day in question, they cannot unequivocally guarantee that their "unified" position will remain unchanged before, during, or after trial. Put simply, there is nothing that restricts the City's ability to change its theory of defense and shift the blame to Burmaster. The Court thus concludes that the City Attorney's Office's joint representation of Burmaster and the City creates a potential conflict of interest. The Court must now focus on whether conflict may be waived by Burmaster, or whether he must have separate counsel.

Here, Plaintiffs specifically allege that the Defendants' joint representation is a prohibited "concurrent conflict of interest," which exists when (1) the representation of one client will be directly adverse to another client, or (2) there is a significant risk that the representation of one or more clients will be materially limited. La. Rules of Prof. Conduct 1.7. Such conflicts, however, are not *per se* unlawful and may be waived if the attorney reasonably believes he or she can represent both clients, and the clients give their informed consent. *Id.*

It appears Burmaster has already attempted to waive this concurrent conflict by signing a "Conditions of Representation" form with the City. R. Doc. 194-3. A question remains, however,

whether this document contains sufficient information to satisfy the requirement that Burmaster had informed consent in choosing the City Attorney's Office as his counsel. For example, in the form, there is notably no mention of the City's indemnification policy – which is contained in an entirely separate document – that significantly limits its ability to pay for Burmaster's compensatory damages involving certain claims and expressly excludes payment of attorney's fees and legal costs. R. Doc. 194-2. The Court is also concerned whether any attorney thoroughly explained to Burmaster the terms of his new representation in comparison to when he was represented by separate counsel.

However, the Court recognizes that Burmaster has a right to the counsel of his own choosing and may waive any potential conflicts. As such, it will allow the City Attorney's Office to represent both Burmaster and the City upon conducting an in-person hearing in open court to ensure Burmaster is informed of any potential conflicts that may arise. Given the fast-approaching trial date in June, the Court wishes to expedite this issue and thus will hold the hearing on Tuesday, April 8, 2025 at 3:30 P.M. in place of the telephone status conference previously scheduled in this matter. The Court will require counsel for the Plaintiffs, counsel for the City, Defendant Derrick Burmaster, and his current counsel to attend the hearing.

### III.   CONCLUSION

For the foregoing reasons;

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Determine Conflict Free Counsel, R. Doc. 183, is **GRANTED**.

**IT IS FURTHER ORDERED** that the Court will hold a hearing on Tuesday, April 8, 2025 at 3:30 P.M. to ensure Defendant Derrick Burmaster has informed consent before allowing the City Attorney's Office to assume his representation.

**IT IS FURTHER ORDERED** that counsel for the Plaintiffs, counsel for the City, Defendant Derrick Burmaster, and his current counsel shall attend the hearing.

New Orleans, Louisiana, this 4th day of April, 2025.

_____
United States District Judge