UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and | * | CIVIL ACTION |
| JULIA BARECKI-BROWN | * | |
| | * | DOCKET NUMBER: 22-00847 |
| VERSUS | * | |
| | * | SECTION: L |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | HONORABLE ELDON E. FALLON |
| NEW ORLEANS | * | |
| | * | DIVISION: 4 |
| | * | |
| | * | HONORABLE KAREN WELLS ROBY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**STATEMENT OF UNCONTESTED MATERIAL FACTS**

The City of New Orleans (the "City") and Derrick Burmaster in the above referenced matter submit the following statement of uncontested material facts in support of its Motion for Partial Summary Judgment:

1. Derrick Burmaster was hired by the New Orleans Police Department ("NOPD") on August 13, 2000, to serve as a police officer recruit.[1]

2. From 2000 to 2016, Officer Burmaster discharged a firearm three times.[2]

3. In 2007 and 2009, Officer Burmaster discharged his firearm at a human.[3]

4. In 2012, Officer Burmaster shot a dog.[4]

5. Officer Burmaster was not charged with violation of any NOPD policy as a result of any of the incidents in 2007, 2009 or 2012 in which he discharged his firearm.[5]

---

[1] Exhibit 18, Officer Burmaster's Employee Summary Report, p. 1 (CITY DEFENDANTS 3806)).
[2] Exhibit 1 (Pruitt Affidavit), ¶ 8; Exhibit 19 (Officer Involved A.S.I. Report (CITY DEFENDANTS 2016)).
[3] *Id*.
[4] Exhibit 20 (2012 Report regarding Officer Burmaster's prior dog shooting).
[5] Exhibit 1 (Pruitt Affidavit), ¶ 8.

1

6.  During the incident in which Officer Burmaster shot a dog in 2012, Officer Burmaster was charged by two dogs in an aggressive manner; Officer Burmaster instructed the dogs to "Get Back," and then discharged his firearm two times, killing one dog.[6]

7.  From 2000 to 2016, Officer Burmaster was investigated for possible violations of NOPD policy relating to use of force on seven occasions.[7]

8.  None of the seven disciplinary actions brought against Officer Burmaster for use of force from 2000 to 2016 involved discharging a firearm.[8]

9.  Each of the seven disciplinary actions brought against Officer Burmaster for use of force from 2000 to 2016 was investigated by the NOPD and resulted in a disposition of "not sustained" or "exonerated."[9]

10. From January 1, 2016, to April 10, 2021, Officer Burmaster used force while acting as an NOPD police officer 13 times.[10]

11. Each of Officer Burmaster's uses of force from 2016 to 2021 was reviewed by the NOPD and was determined by the NOPD to have been "justified" or "authorized"[11]

12. Until April 10, 2021, none of Officer Burmaster's uses of force from 2016 to 2021 involved a discharge of a firearm and none involved using force against an animal.[12]

13. From 2016 to April 10, 2021, Officer Burmaster was not charged with any violations of NOPD policy based on use of force.[13]

---

[6] Exhibit 20 (2012 NOPD report).
[7] Exhibit 1 (Pruitt Affidavit), ¶ 9.
[8] *Id.*
[9] *Id.*
[10] *Id.*, ¶ 8.
[11] *Id.*, ¶ 9.
[12] Exhibit 18, pp. 9-10 (CITY DEFENDANTS 3814-15).
[13] *Id.*

14. Beginning in or around 2000, NOPD trained its officers with respect to encounters with dangerous animals through annual "in service" training through the NOPD Academy, roll call training, daily training bulletins ("DTBs") provided by the NOPD's Professional Standards Accountability Bureau ("PSAB"), and by a mandated online course with the ASPCA, an animal-focused organization that, among other things, provides educational programs to law enforcement organizations.[14]

15. In "once-a-year" in service training concerning animal encounters, NOPD trained its officers with a goal to "avoid either, A, having animals hurt us or, B, us having to hurt the animals."[15]

16. At the NOPD academy, officers were trained to contact the Louisiana Society for the Prevention of Cruelty to Animals (the "SPCA") by radio "if they have an issue with an animal" and if there is sufficient time to do so.[16]

17. The NOPD in-service training "talked about the dog, the position of the tail, the ears, right, that -- I always stress to officers, the majority of the time, the dog is not trying to get into a confrontation, but their way of telling you, 'I don't want to fight, but if you come any closer, if you don't leave, I'm willing to do it,' is by them sitting there and their posture changes. You can see the hair on their body change, and they start barking, which is a warning mechanism, right."[17]

18. The NOPD trained its officers that a firearm should be used against an animal only in circumstances in which it reasonably appeared that the animal appeared to pose an imminent

---

[14] Exhibit 4, Excerpts of transcript of Deposition of David Duplantier ("Duplantier Deposition"), pp. 23:2 – 25:21, 27:3 – 30:24; 48:15 – 49:1; 50:17 - 50:21; 121:10 – 124:21; 128:11 – 128:14; Exhibit 5, Excerpts of Deposition of Derrick Burmaster ("Burmaster Deposition"), pp. 180:25 – 181::24; Exhibit 6, Excerpts of transcript of Deposition of David Barnes ("Barnes Deposition"), pp. 50:25 51:14.
[15] Exhibit 4, Duplantier Deposition, p. 30:3-17.
[16] Exhibit 6 (Barnes Deposition), pp. 52:20 -53:7.
[17] Exhibit 4, Duplantier Deposition, p. 32:10-23.

threat to human safety and alternative methods were not reasonably available or would likely not be effective.[18]

19. The NOPD trained its officers to evaluate risks posed by each potential animal encounter faced by officers and not to consider every animal encountered to be a threat.[19]

20. The NOPD trained its officers to consider alternative means to avoid use of force against animals.[20]

21. NOPD Operations Manual, Chapter 1.3, entitled "Use of Force," became effective December 6, 2015, and was revised on April 1, 2018.[21]

22. Chapter 1.3, paragraph 32, entitled "Dangerous Animals," provides:

Officers are authorized to use firearms to stop an animal in circumstances in which the animal reasonably appears to pose an imminent threat to human safety and alternative methods are not reasonably available or would likely be ineffective. The officer must be cognizant of the surroundings when shooting at an animal and ensure there is no risk to people in the area. Under circumstances in which officers have sufficient advance notice that a potentially dangerous animal may be encountered, officers should develop reasonable contingency plans for dealing with the animal (e.g., fire extinguisher, CEW, animal control officer). Nothing in this Chapter shall prohibit any officer from shooting a dangerous animal if circumstances reasonably dictate that a contingency plan has failed or becomes impractical.[22]

23. In May 2017, as part of its monthly "Daily Training Bulletin" ("DTB") training program, NOPD, through its PSAB department, required all police officers to take an online course through the American Society for the Prevention of Cruelty to Animals (the "ASPCA").[23]

---

[18] *Id.*, pp. 23:2 – 25:21, 27:3 – 30:24; 30:3 -30:17; 32:9 – 42:24.42:25 – 45:17; 48:15 – 49:1; 121:10 – 124:21; 125:18 – 127:7; 128:11 – 128:14; 130:19 – 136:1. 78:23 – 81:7; Exhibit 5 (Burmaster Deposition), p. 250:9 – 250:12.
[19] Exhibit 4 (Duplantier Deposition), pp. 30:3 -30:17, 32:10 – 42:24.
[20] *Id*, pp. 42:46:15; 130:19 – 133:4.
[21] Exhibit 3, New Orleans Police Department Operations Manual, Chapter 1.3, Use of Force, Rev. 2018 (BROWN_ 1210-1219).
[22] *Id.*, Ch. 1.3, para. 32.
[23] Exhibit 6, Barnes Deposition, p. 10:1-20; 86:13-23. Exhibit 7, April 27, 2017, email and attachment sent by NOPD PolicyandPlanning to all NOPD employees, re: "May 2017 DTB Special Instructions." (the "May 2017 DTB") (CITY DEFENDANTS 5076-5081).

24. The May 2017 DTB was entitled, "Officer Safety – Dog Bite Prevention," and contained training units entitled: "Recognizing Forms of Canine Aggression," "Basics of Canine Communications," and "Dog Bite Prevention."[24]

25. Officer Burmaster attended the May 2017 ASPCA course and completed the testing portion of the DTB on May 31, 2017.[25]

26. In October 2019, the NOPD, through its PSAB, provided training to its police officers in the form of a DTB slide presentation entitled "The Problem of Dog-Related Incidents and Encounters."[26]

27. The October 2019 DTB training quoted the complete paragraph of NOPD Policy Chapter 1.3., paragraph 32, (Dangerous Animals).

28. The October 2019 DTB provided training information and techniques to officers to assist officers in discharging their duties while compiling with Chapter 1.3, paragraph 32.[27]

29. On November 20, 2019, Officer Burmaster completed his October 2019 DTB training and passed the testing component of the training.[28]

30. On April 10, 2021, Officer Burmaster responded to a domestic disturbance call at Plaintiff's residence and shot Plaintiffs' dog.[29]

---

[24] Exhibit 7 (May 2017 DTB).
[25] Exhibit 8 (May 2017 DTB test) (CITY DEFENDANTS 5076-5081); Exhibit 9 (May 2017 DTB NOPD test confirmation (CITY DEFENDANTS 5287-5305), Officer Burmaster's confirmation is on page CITY DEFENDANTS 5290; Exhibit 1 (Pruitt Affidavit) ¶ 5 (Ex. A to the Pruitt Affidavit, Officer Burmaster's Employee Summary Report, p. 35 (CITY DEFENDANTS 3840 (showing credit awarded to Officer Burmaster for successful completion of 2017-05-MAY-DTB)).
[26] Exhibit 6 (Barnes Deposition), pp. 10:1-20; 44:21 – 50:2; 88:13 – 89:5; Exhibit 10, NOPD October 2019 DTB training material entitled "the Problem with Dog Related Encounters (the "October 2019 DTB") (CITY DEFENDANTS 5135-5146); Exhibit 11, testing component for the October 2019 DTB (CITY DEFENDANTS 5115-5117).
[27] Exhibit 10 (October 2019 DTB), p. CITY DEFENDANTS 5146.
[28] Exhibit 6, p. 95:12-17; Exhibit 12 (October 2019 DTB NOPD test confirmation) (CITY DEFENDANTS 5120-5132), Officer Burmaster's confirmation is on page CITY DEFENDANT 5315.
[29] Exhibit 13, October 27, 2023, letter from NOPD Sup. Anne Kirkpatrick to Officer Burmaster regarding final result of discipline charges relating to use of force (exoneration for charge of unlawful use of force) (CITY DEFENDANTS 5076-81)

Respectfully submitted:

*/s/ James M. Roquemore*_____
**JAMES M. ROQUEMORE, LSB #40035**
ASSISTANT CITY ATTORNEY
james.roquemore@nola.gov
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET, SUITE 5E03
NEW ORLEANS, LOUISIANA 70112
TEL: (504) 658-9800
FACSIMILE: (504) 658-9868

*Counsel for Shaun Ferguson and the City of New Orleans*