ELIZABETH BERK, M.D. on 04/04/2025

ELIZABETH BERK, M.D. on 04/04/2025

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| DEREK BROWN AND<br>JULIA BARECKI-BROWN | \* | CIVIL ACTION<br>DOCKET NUMBER:<br>22-00847 |
| versus | \* | SECTION: L<br>HONORABLE<br>ELDON E. FALLON |
| DERRICK BURMASTER, SHAUN<br>FERGUSON, AND THE CITY OF<br>NEW ORLEANS | \* | DIVISION: 4<br>HONORABLE<br>KAREN WELLS ROBY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The deposition of DR. ELIZABETH BERK, taken on FRIDAY, APRIL 4, 2025, commencing at 2:00 PM via videoconference.

\* \* \*

New Orleans 504.522.2101　　　　　　　　　　　　　　　　North Shore 985.206.9303
Toll Free 800.526.8720　　　SerpasCourtReporting.com　　Baton Rouge 225.332.3040

INDEX
ELIZABETH BERK, M.D. on 04/04/2025

```
 1
 2  Caption .................................................1
    Appearances .............................................3
 3  Stipulation .............................................4
 4  Examination
 5       MR. ROQUEMORE  ....................................5
         MR. ANADA ........................................73
 6  Reporter's Certification ...............................85
    EXHIBIT NO. 1    ........................................8
 7       Notice of deposition
    EXHIBIT NO. 2    ........................................8
 8       CV
    EXHIBIT NO. 3    ........................................9
 9       Psychological evaluation of Derek Brown
    EXHIBIT NO. 4    .......................................10
10       Psychological evaluation of Julia
             Barecki-Brown
11  EXHIBIT NO. 5    .......................................11
         Standard progress note for Derek Brown
12  EXHIBIT NO. 6    .......................................11
         Standard progress note for Julia
13           Barecki-Brown
    EXHIBIT NO. 7    .......................................12
14       June 16, 2921 handwritten notes
    EXHIBIT NO. 8    .......................................13
15       Intake form for Derek Brown dated June 15,
             2021
16
17
18
19
20
21
22
23
24
25
```

New Orleans 504.522.2101                                North Shore 985.206.9303
Toll Free 800.526.8720        SerpasCourtReporting.com  Baton Rouge 225.332.3040

New Orleans 504.522.2101                                North Shore 985.206.9303
Toll Free 800.526.8720        SerpasCourtReporting.com  Baton Rouge 225.332.3040

```
 1                   A P P E A R A N C E S:
 2   Representing the PLAINTIFF, DEREK BROWN AND JULIA
     BARECKI-BROWN:
 3
          JONES WALKER
 4        201 St. Charles Avenue, Floor 49
          New Orleans, Louisiana 70170-5100
 5        (504) 582-8322
          tanada@joneswalker.com
 6        pvanburkleo@joneswalker.com

 7        BY:  TARAK ANADA, ESQUIRE
          BY:  PATRICK VAN BURKLEO, ESQUIRE
 8

 9   Representing the DEFENDANT, CITY OF NEW ORLEANS
     AND DERRICK BURMASTER:
10
          CITY OF NEW ORLEANS LAW DEPARTMENT
11        1300 Perdido Street, Suite 5E03
          New Orleans, Louisiana 70112
12        (504) 658-9800
          james.roquemore@nola.gov
13
          BY:  JAMES M. ROQUEMORE, ESQUIRE
14

15

16   Reported by:    CYNTHIA S. LEBLANC
                     Certified Court Reporter
17                   State of Louisiana

18

19

20

21

22

23

24

25
```

New Orleans 504.522.2101                                North Shore 985.206.9303
Toll Free 800.526.8720        SerpasCourtReporting.com  Baton Rouge 225.332.3040

New Orleans 504.522.2101                                North Shore 985.206.9303
Toll Free 800.526.8720        SerpasCourtReporting.com  Baton Rouge 225.332.3040

```
 1                    S T I P U L A T I O N
 2        It is hereby stipulated by and between counsel for
 3   the parties hereto that the deposition of
 4                     DR. ELIZABETH BERK
 5   be taken before Cynthia S. LeBlanc, Certified
 6   Court Reporter, for all purposes, pursuant to
 7   notice and to the provisions of the appropriate
 8   statutes of the Federal Rules of Civil Procedure.
 9        The parties hereto waive all formalities in
10   connection with the taking of said deposition,
11   including the reading and signing thereof, except
12   the swearing of the witness, and the reduction of
13   the questions and answers to typewriting.
14        Counsel for all parties reserve all
15   objections except as to the form of the question
16   and responsiveness of the answer at the time of
17   taking said deposition, but they also reserve the
18   right to make objections at the time said
19   deposition or any part thereof may be offered in
20   evidence, with the same rights as if the testimony
21   had been taken and given in Open Court.
22        CYNTHIA LEBLANC, Certified Court Reporter in
23   and for the State of Louisiana, officiated in
24   administering the oath to the above-mentioned
25
```

| | | | |
|---|---|---|---|
| 1 | A | Yes. | 2:21PM |
| 2 | Q | Do you get paid for preparation work? | 2:21PM |
| 3 | | Does that count for -- as deposition? | 2:21PM |
| 4 | A | I believe I do. | 2:21PM |
| 5 | Q | Did you do any preparation for today? | 2:21PM |
| 6 | A | Yes. | 2:21PM |
| 7 | Q | What did you do to prepare for today's | 2:21PM |
| 8 | | deposition? | 2:21PM |
| 9 | A | Well, the case happened in 2021 so I | 2:21PM |
| 10 | | reread all of my notes. I went through the tests. | 2:21PM |
| 11 | | I reread the reports and spoke to Tarak about what | 2:21PM |
| 12 | | would be expected of me. | 2:21PM |
| 13 | Q | Did you review any other documents? | 2:22PM |
| 14 | A | Nothing outside of what was included in | 2:22PM |
| 15 | | the exhibits. | 2:22PM |
| 16 | Q | I'm going to refer you to -- we're going | 2:22PM |
| 17 | | to talk about Derek Brown's evaluation. | 2:22PM |
| 18 | A | Okay. | 2:22PM |
| 19 | Q | So if you would pull up Exhibit No. 3? | 2:22PM |
| 20 | A | Yes. | 2:22PM |
| 21 | Q | This is an evaluation that you did on | 2:22PM |
| 22 | | 6/15/2021, right? | 2:22PM |
| 23 | A | Yes. | 2:22PM |
| 24 | Q | Had you ever met Derek Brown before you | 2:22PM |
| 25 | | conducted this evaluation? | 2:22PM |

| | | | |
|---|---|---|---|
| 1 | A | No. | 2:22PM |
| 2 | Q | And I see the -- under, reason for | 2:22PM |
| 3 | | referral, it says, "Mr. Brown was referred by his | 2:22PM |
| 4 | | lawyers," right? | 2:23PM |
| 5 | A | Yes. | 2:23PM |
| 6 | Q | How did that come about? | 2:23PM |
| 7 | | MR. ANADA:  I'm just going to object to | 2:23PM |
| 8 | | form and I'll ask the witness not to | 2:23PM |
| 9 | | disclose any communications between Mr. | 2:23PM |
| 10 | | Brown or Ms. Barecki-Brown's attorneys | 2:23PM |
| 11 | | and yourself, given that that's covered | 2:23PM |
| 12 | | by the attorney-client privilege, but | 2:23PM |
| 13 | | you can respond to the question.  If | 2:23PM |
| 14 | | there is a response you can give without | 2:23PM |
| 15 | | disclosing such communication. | 2:23PM |
| 16 | | THE WITNESS:  Sure.  I believe that | 2:23PM |
| 17 | | Mr. Anada reached out to me because we | 2:23PM |
| 18 | | had worked -- I had done a different | 2:23PM |
| 19 | | case, a different evaluation in the past | 2:23PM |
| 20 | | with them for a client.  And I believe | 2:23PM |
| 21 | | that I was connected with him there | 2:23PM |
| 22 | | because one of my colleagues asked a | 2:23PM |
| 23 | | group of us if anyone had time or | 2:23PM |
| 24 | | resources to do such an evaluation. | 2:23PM |
| 25 | | BY MR. ROQUEMORE: | 2:24PM |

|    |    |    |
|---|---|---|
| 1 | support from people in their lives.  But | 2:28PM |
| 2 | people have seen me for that reason | 2:28PM |
| 3 | before. | 2:28PM |
| 4 | BY MR. ROQUEMORE: | 2:29PM |
| 5 | Q   In this case being referred to -- when | 2:29PM |
| 6 | Mr. Brown was referred by his lawyer, you | 2:29PM |
| 7 | understood that what you were doing was making an | 2:29PM |
| 8 | assessment for purposes of litigation; is that | 2:29PM |
| 9 | correct? | 2:29PM |
| 10 | A   Yes.  I knew there was potential | 2:29PM |
| 11 | litigation and that they also were asking for | 2:29PM |
| 12 | treatment recommendations. | 2:29PM |
| 13 | Q   I'm going to just want to go to Exhibit | 2:29PM |
| 14 | No. 5 and your standard progress notes.  You see | 2:29PM |
| 15 | that, of Derek Brown? | 2:29PM |
| 16 | A   Yes. | 2:29PM |
| 17 | Q   Okay.  And we're under the overall note, | 2:29PM |
| 18 | the third line down starts, Patient is seeking; do | 2:29PM |
| 19 | you see that? | 2:30PM |
| 20 | A   Yeah. | 2:30PM |
| 21 | Q   Patient is seeking an evaluation report | 2:30PM |
| 22 | to be used by his lawyer if needed.  Was that your | 2:30PM |
| 23 | understanding of the reason why he was coming in | 2:30PM |
| 24 | for the evaluation? | 2:30PM |
| 25 | MR. ANADA:  Object to form.  Asked and | 2:30PM |

| | | |
|---|---|---|
| 1 | Q | You understand he's suing for money now, | 2:31PM |
| 2 | right? | | 2:31PM |
| 3 | A | Yes, now I do. | 2:31PM |
| 4 | Q | Okay. And the same applied to Julia | 2:31PM |
| 5 | Barecki for the reason why she was coming, was to | | 2:31PM |
| 6 | be used by his lawyer for litigation as needed; is | | 2:31PM |
| 7 | that correct? | | 2:31PM |
| 8 | A | Yes. | 2:31PM |
| 9 | | MR. ANADA: Object to form. Sorry. | 2:31PM |
| 10 | BY MR. ROQUEMORE: | | 2:31PM |
| 11 | Q | The answer is yes, right? | 2:31PM |
| 12 | A | Yes, in addition to treatment | 2:31PM |
| 13 | recommendations. | | 2:32PM |
| 14 | BY MR. ROQUEMORE: | | 2:32PM |
| 15 | Q | You would make treatment | 2:32PM |
| 16 | recommendations and she would decide to follow | | 2:32PM |
| 17 | your treatment recommendations, right? | | 2:32PM |
| 18 | A | She would decide if she wanted to, yes. | 2:32PM |
| 19 | Q | Let's go back to Derek Brown, the | 2:32PM |
| 20 | Exhibit No. 3 in your report. You conducted -- | | 2:32PM |
| 21 | under, Evaluation Procedures you have the steps | | 2:32PM |
| 22 | that you took -- you're talking to Mr. Brown, he's | | 2:32PM |
| 23 | giving you answers, right? | | 2:32PM |
| 24 | A | Yes. I have a format that I've gone | 2:32PM |
| 25 | through many times that goes through specific | | 2:32PM |

```
 1   neighbors called the police?                        2:45PM
 2           MR. ANADA:  Object to form.  Calls for      2:45PM
 3           speculation.  Go ahead, you can answer.     2:45PM
 4           THE WITNESS:  Yeah.  I'm not -- I'm not     2:45PM
 5           really sure what would cause someone, it    2:45PM
 6           would depend on who's hearing it.  What     2:45PM
 7           would be their level of concern.  I         2:45PM
 8           think some people might hear screaming      2:46PM
 9           and never call the police.  Some people     2:46PM
10           might hear something and call.              2:46PM
11   BY MR. ROQUEMORE:                                   2:46PM
12       Q   Okay.  So you have no opinion about         2:46PM
13   whether or not it's an unusual amount of arguing    2:46PM
14   to argue to the level where people feel it's        2:46PM
15   necessary to call the police?                       2:46PM
16           MR. ANADA:  Object to form.  Go ahead.      2:46PM
17           THE WITNESS:  I -- what I would say is      2:46PM
18           that I wouldn't find it unusual for         2:46PM
19           people to fight and raise their voices      2:46PM
20           and scream at each other.  I think that     2:46PM
21           that is common in families.                 2:46PM
22   BY MR. ROQUEMORE:                                   2:46PM
23       Q   All right.  But you did ask, at some        2:46PM
24   point, Mr. Brown, about the amount that he was      2:46PM
25   drinking on a regular basis before this happened,   2:46PM
```

```
 1   right?                                                  2:46PM
 2       A    Yes.                                           2:46PM
 3       Q    So before his dog was shot, his response       2:47PM
 4   was he had one to two drinks every day; is that         2:47PM
 5   fair?                                                   2:47PM
 6       A    Most days, yes, every day.                     2:47PM
 7       Q    Okay.  And what did he mean by one to          2:47PM
 8   two drinks?                                             2:47PM
 9            MR. ANADA:  Object to form.                    2:47PM
10   BY MR. ROQUEMORE:                                       2:47PM
11       Q    Was it one to two beers, was it one to         2:47PM
12   two liquor drinks, or what?                             2:47PM
13       A    I believe -- I'm not totally sure that I       2:47PM
14   recall.  I'm not sure.                                  2:47PM
15       Q    Okay.  So you don't know what he was           2:47PM
16   drinking, one to two drinks most days.                  2:47PM
17       A    No.                                            2:47PM
18       Q    Is that correct?                               2:47PM
19       A    Correct.                                       2:47PM
20       Q    And he also told you he would smoke only       2:47PM
21   one cigarette a day?                                    2:47PM
22       A    Yes, he did.                                   2:47PM
23       Q    Okay.  And you believed him on that one?       2:47PM
24       A    Yes.                                           2:48PM
25       Q    In talking to him, he said that after          2:48PM
```

```
 1   the shooting he was drinking more, right?            2:48PM
 2        A    Yes.                                       2:48PM
 3        Q    Okay.  Did he tell you what he meant by    2:48PM
 4   that?                                                2:48PM
 5        A    He did not say a consistent amount, but    2:48PM
 6   that he would drink, like, in the evening before,    2:48PM
 7   but then would drink throughout the day, for those   2:48PM
 8   few weeks after the incident.                        2:48PM
 9        Q    So after the incident he was drinking      2:48PM
10   during the day, right?                               2:48PM
11        A    Yes.                                       2:48PM
12        Q    He was drinking to a level that was        2:48PM
13   affecting his ability in different ways, right?      2:48PM
14            MR. ANADA:  Object to form.                 2:48PM
15            THE WITNESS:  Yeah, I'm not sure how he     2:48PM
16            was impaired.                               2:49PM
17   BY MR. ROQUEMORE:                                    2:49PM
18        Q    Well, he mentioned difficulty              2:49PM
19   concentrating, right?                                2:49PM
20        A    Yes.                                       2:49PM
21        Q    Alcohol would affect your ability to       2:49PM
22   concentrate; is that true?                           2:49PM
23            MR. ANADA:  Object to form.                 2:49PM
24            THE WITNESS:  It would be one thing that    2:49PM
25            would affect your ability to                2:49PM
```

```
 1                concentrate.                              2:49PM
 2   BY MR. ROQUEMORE:                                      2:49PM
 3        Q    In your experience as a counselor, in        2:49PM
 4   your training as a psychologist, you would agree       2:49PM
 5   that somebody who's drinking during the day,           2:49PM
 6   that's going to affect their ability to                2:49PM
 7   concentrate?                                           2:49PM
 8        A    If they were self-medicating it may or       2:49PM
 9   may not.  There are many fully functional              2:49PM
10   alcoholics who drink all day and still do their        2:49PM
11   jobs, so it really depends on the person.              2:49PM
12        Q    Are you saying, though, that Mr. Brown       2:49PM
13   may have been a functional alcoholic?                  2:49PM
14        A    No.  I have no indication of that.           2:50PM
15        Q    You don't have an indication or you just    2:50PM
16   don't know if he was a functional alcoholic?           2:50PM
17        A    He did not report that.  It did not          2:50PM
18   appear that he was.  He was sober when he came to      2:50PM
19   the appointment as far as I could assess.              2:50PM
20        Q    So difficulty concentrating, if he was a    2:50PM
21   functional alcoholic it wouldn't be related to         2:50PM
22   alcohol, correct?                                      2:50PM
23             MR. ANADA:  Object to form.                  2:50PM
24             THE WITNESS:  Yeah, not necessarily.  I      2:50PM
25        mean it could be, it couldn't be.  I              2:50PM
```

|  |  |  |
|---|---|---|
| 1 | think it would be an individual | 2:50PM |
| 2 | case-by-case basis. | 2:50PM |
| 3 | BY MR. ROQUEMORE: | 2:50PM |
| 4 | Q  Being forgetful, he often reported that, | 2:50PM |
| 5 | right? | 2:50PM |
| 6 | A  Yes. | 2:50PM |
| 7 | Q  And that very well could be alcohol | 2:50PM |
| 8 | related? | 2:50PM |
| 9 | A  Potentially.  I think the -- the sort | 2:50PM |
| 10 | of, like, chicken and the egg sometimes is that if | 2:50PM |
| 11 | you are experiencing any of these other symptoms, | 2:51PM |
| 12 | you might drink to cope with them, not necessarily | 2:51PM |
| 13 | that the alcohol is causing the symptoms. | 2:51PM |
| 14 | Q  The question is, if you're drinking, | 2:51PM |
| 15 | drinking is going to make it -- you more forgetful | 2:51PM |
| 16 | than if you weren't.  Is that fair? | 2:51PM |
| 17 | MR. ANADA:  Object to form.  Calls for | 2:51PM |
| 18 | speculation.  Go ahead. | 2:51PM |
| 19 | THE WITNESS:  It would depend on what | 2:51PM |
| 20 | you were drinking I would say. | 2:51PM |
| 21 | BY MR. ROQUEMORE: | 2:51PM |
| 22 | Q  Okay.  Explain that. | 2:51PM |
| 23 | A  If you, you know, are a regular drinker | 2:51PM |
| 24 | and had two beers and had a high tolerance, I | 2:51PM |
| 25 | would guess that you would probably be able to go | 2:51PM |

| | | |
|---|---|---|
| 1 | about your daily life.  If you had five | 2:51PM |
| 2 | margaritas, you probably would be more forgetful. | 2:51PM |
| 3 |     Q    We're getting to that.  I'm just trying to get | 2:51PM |
| 4 | an idea of where Mr. Brown fell in between five | 2:51PM |
| 5 | margaritas and being a regular drinker? | 2:52PM |
| 6 |         MR. ANADA:  Object to form. | 2:52PM |
| 7 | BY MR. ROQUEMORE: | 2:52PM |
| 8 |     Q    Do you have any idea? | 2:52PM |
| 9 |     A    I do not. | 2:52PM |
| 10 |     Q    He also said sleeping more after this | 2:52PM |
| 11 | event.  Again, sleeping more could very well be | 2:52PM |
| 12 | alcohol related, right? | 2:52PM |
| 13 |         MR. ANADA:  Object to form. | 2:52PM |
| 14 |         THE WITNESS:  It could be.  It could be | 2:52PM |
| 15 |         related to a number of things. | 2:52PM |
| 16 | BY MR. ROQUEMORE: | 2:52PM |
| 17 |     Q    Someone who was drinking during the day, | 2:52PM |
| 18 | you would agree that's going to affect their | 2:52PM |
| 19 | ability to sleep well? | 2:52PM |
| 20 |         MR. ANADA:  Object to form.  Calls for | 2:52PM |
| 21 |         speculation.  Asked and answered. | 2:52PM |
| 22 |         THE WITNESS:  Yeah, it could.  It might | 2:52PM |
| 23 |         not; it might. | 2:52PM |
| 24 | BY MR. ROQUEMORE: | 2:52PM |
| 25 |     Q    And for these -- a couple of other | 2:52PM |

ELIZABETH BERK, M.D. on 04/04/2025

44

| | | |
|---|---|---|
| 1 | things; eating poorly, isolating himself socially; | 2:52PM |
| 2 | you would agree that drinking would make somebody | 2:53PM |
| 3 | eat less, eat more poorly, right? | 2:53PM |
| 4 | MR. ANADA: Object to form. Calls for | 2:53PM |
| 5 | speculation. | 2:53PM |
| 6 | THE WITNESS: No, not necessarily. | 2:53PM |
| 7 | BY MR. ROQUEMORE: | 2:53PM |
| 8 | Q  Having a headache; often people have | 2:53PM |
| 9 | headaches after drinking a lot, right? | 2:53PM |
| 10 | MR. ANADA: Object to form. Calls for | 2:53PM |
| 11 | speculation. | 2:53PM |
| 12 | BY MR. ROQUEMORE: | 2:53PM |
| 13 | Q  You do understand what I mean by having | 2:53PM |
| 14 | a headache -- | 2:53PM |
| 15 | A  I do understand. They may. | 2:53PM |
| 16 | Q  So if you were drinking everyday for two | 2:53PM |
| 17 | weeks -- hey, can we take a -- take a quick break? | 2:53PM |
| 18 | I'm going to put you guys on pause. | 2:53PM |
| 19 | MR. ANADA: Sure. | 2:53PM |
| 20 | (At this time, a brief recess was | 2:56PM |
| 21 | taken.) | 2:56PM |
| 22 | BY MR. ROQUEMORE: | 2:56PM |
| 23 | Q  So when you met Mr. Brown June 15, 2021, | 2:56PM |
| 24 | this was a full two months after the shooting of | 2:56PM |
| 25 | the dog.  Is that what your understanding was? | 2:56PM |

```
 1      A    Yes.                                              2:56PM
 2      Q    Okay.  And when he met with you, was he           2:56PM
 3   currently doing what he said, drinking more?              2:56PM
 4      A    No.  He reported that was for the first           2:56PM
 5   three weeks to a month.                                   2:56PM
 6      Q    So he was no longer drinking alcohol any          2:56PM
 7   more than a one to two drinks on a regular basis,         2:56PM
 8   right?                                                    2:57PM
 9      A    Correct.                                          2:57PM
10      Q    You understand that one of the things             2:57PM
11   that Mr. Brown and Mr. Barecki did after the dog          2:57PM
12   got shot was to go out and adopt another dog,             2:57PM
13   right?                                                    2:57PM
14      A    Yes.                                              2:57PM
15      Q    And do you know why they did that?                2:57PM
16      A    I can speculate that they were trying to          2:57PM
17   heal in some way by doing that.                           2:57PM
18      Q    Is that a recognized way for somebody to          2:57PM
19   heal from the loss of a pet, to get another pet?          2:57PM
20           MR. ANADA:  Object to form.                       2:57PM
21           THE WITNESS:  Yeah, I guess I'm not sure          2:58PM
22           of everyone, but in my life it's quite            2:58PM
23           common, I would say.  I don't know if I           2:58PM
24           can make a professional opinion on that;          2:58PM
25           but, yes I know many people who have              2:58PM
```

|   |   |   |
|---|---|---|
| 1 | just might be a different kind of format. | 3:08PM |
| 2 | Q    Okay.  So as we're sitting here today | 3:08PM |
| 3 | what you recommended was very -- it could have | 3:08PM |
| 4 | been as short as one session, two sessions? | 3:08PM |
| 5 | A    No.  I think before when I talked about | 3:08PM |
| 6 | that course of the average for people who are | 3:08PM |
| 7 | going through PTSD treatment, more of 16 to 20 is | 3:08PM |
| 8 | the sort of average median number. | 3:09PM |
| 9 | Q    So as we're sitting here today the range | 3:09PM |
| 10 | you're thinking, 16 to 20 sessions? | 3:09PM |
| 11 | A    Yes. | 3:09PM |
| 12 | MR. ANADA:  Object to form. | 3:09PM |
| 13 | THE WITNESS:  And then like I said | 3:09PM |
| 14 | before, an evaluation by the therapist | 3:09PM |
| 15 | or by his treatment team to see if it's | 3:09PM |
| 16 | effective to continue or to switch | 3:09PM |
| 17 | courses and try potentially another type | 3:09PM |
| 18 | of therapy. | 3:09PM |
| 19 | BY MR. ROQUEMORE: | 3:09PM |
| 20 | Q    Now, in fact, is it true -- did | 3:09PM |
| 21 | Mr. Brown seek therapy after you made this | 3:09PM |
| 22 | recommendation? | 3:09PM |
| 23 | A    I am not sure.  I don't believe I spoke | 3:09PM |
| 24 | to him again, other than -- no, I don't think I | 3:09PM |
| 25 | did after getting his feedback. | 3:09PM |