UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| DEREK BROWN and | \* CIVIL ACTION |
| JULIA BARECKI-BROWN | \* DOCKET NUMBER: |
| | \* 22-00847 |
| versus | \* SECTION: L |
| | \* HONORABLE: |
| | \* ELDON E. FALLON |
| DERRICK BURMASTER, SHAUN | \* DIVISION: 4 |
| FERGUSON, and the CITY OF | \* HONORABLE: |
| NEW ORLEANS | \* KAREN WELLS ROBY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

     The deposition of DR. JAMES W. CROSBY, taken on WEDNESDAY, MARCH 19, 2025, commencing at 12:54 PM, via videoconference.

\* \* \*

```
 1                         INDEX

 2    Caption ...................................1
      Appearances ...............................3
 3    Stipulation ...............................4

 4    Examination

 5         MR. ROQUEMORE  ......................5
           MR. ANADA .........................192
 6    Reporter's Certification ................220
      EXHIBIT NO. 1    .........................8
 7         Dr. Crosby's report
      EXHIBIT NO. 2    .........................8
 8         CV
      EXHIBIT NO. 3    .........................9
 9         Necropsy report
      EXHIBIT NO. 4    .........................9
10         New Orleans Police Department Operations
              Manual, Chapter 1.7.1
11    EXHIBIT NO. 5    ........................10
           New Orleans Police Department Operations
12            Manual, 1.3
      EXHIBIT NO. 6    ........................10
13         Department of Police Interoffice
              Correspondence from Hans Ganthier
14    EXHIBIT NO. 7    ........................11
           NOPD training slides
15    EXHIBIT NO. 8    ........................12
           COPS document
16

17

18

19

20

21

22

23

24

25
```

```
 1              A P P E A R A N C E S:

 2   Representing the PLAINTIFF, DEREK BROWN AND JULIA
     BARECKI-BROWN:
 3
          JONES WALKER
 4        201 St. Charles Avenue
          New Orleans, Louisiana 70170-5100
 5        (504) 582-8322
          tanada@joneswalker.com
 6
          BY:  TARAK ANADA, ESQUIRE
 7        BY:  PATRICK VAN BURKLEO, ESQUIRE

 8


 9   Representing the PLAINTIFF, DEREK BROWN AND JULIA
     BARECKI-BROWN:
10
          MOST & ASSOCIATES
11        201 Saint Charles Avenue,
          Suite 2500, Number 9685
12        New Orleans, Louisiana 70170
          (504) 509-5023
13        williammost@gmail.com

14        BY:  WILLIAM B. MOST, ESQUIRE


15


16   Representing the DEFENDANT, CITY OF NEW ORLEANS AND
     DERRICK BURMASTER:
17
          CITY OF NEW ORLEANS LAW DEPTARTMENT
18        1300 Perdido Street, Suite 5E03
          New Orleans, Louisiana 70112
19        (504) 658-9800
          james.roquemore@nola.gov
20
          BY:  JAMES M. ROQUEMORE, ESQUIRE
21


22
     Reported by:   CYNTHIA S. LEBLANC
23                  Certified Court Reporter
                    State of Louisiana
24

25
```

```
 1                    S T I P U L A T I O N

 2

 3         It is stipulated and agreed by and between

 4    Counsel for the parties hereto that the deposition

 5    of DR. JAMES CROSBY is hereby taken under the

 6    appropriate statutes of the Louisiana Code of Civil

 7    Procedure, for all purposes, and accordance with

 8    law;

 9         That the formalities of reading and signing

10    are specifically waived;

11         That the formalities of sealing,

12    certification, and filing are specifically waived;

13         That all objections, save those as to the form

14    of the questions, are hereby reserved until such

15    time as this deposition, or any part thereof, may

16    be used or sought to be used in evidence.

17                         * * * * *

18

19         CYNTHIA LEBLANC, Certified Court Reporter in

20    and for the State of Louisiana, officiated in

21    administering the oath to the above-mentioned

22    witness.

23

24

25
```

| | | |
|---|---|---|
| 1 | ahead. | 1:23PM |
| 2 | THE WITNESS: I'm aware that the | 1:24PM |
| 3 | superintendent's committee issued a | 1:24PM |
| 4 | different opinion and the superintendent | 1:24PM |
| 5 | apparently signed off on that, yes. | 1:24PM |
| 6 | BY MR. ROQUEMORE: | 1:24PM |
| 7 | Q  Going back to your report, bullet point | 1:24PM |
| 8 | nine, we're still talking about the exhibits that | 1:24PM |
| 9 | you looked at, or the documents that you looked | 1:24PM |
| 10 | at, and you list various documents regarding past | 1:24PM |
| 11 | discipline and performance issues with Burmaster | 1:24PM |
| 12 | provided in discovery; do you see that? | 1:24PM |
| 13 | A  Yes. | 1:24PM |
| 14 | Q  Okay, you don't agree that that really | 1:24PM |
| 15 | doesn't give us an idea -- what you looked at? | 1:24PM |
| 16 | MR. ANADA: Object to form -- | 1:24PM |
| 17 | THE WITNESS: That material is material | 1:24PM |
| 18 | that I looked at regarding Burmaster's | 1:24PM |
| 19 | history, but had no impact on my | 1:24PM |
| 20 | opinion. I simply have listed it for | 1:24PM |
| 21 | completeness. My opinion was requested | 1:24PM |
| 22 | on this incident and this incident | 1:25PM |
| 23 | alone, not Burmaster's disciplinary | 1:25PM |
| 24 | history or write-ups, or anything in the | 1:25PM |
| 25 | past. I put that in there for -- to | 1:25PM |

```
 1                  make sure that I was completely          1:25PM
 2                  transparent in what I looked at.         1:25PM
 3      BY MR. ROQUEMORE:                                    1:25PM
 4          Q    All right.  So for purposes of this         1:25PM
 5      report and the opinions you're going to provide in   1:25PM
 6      this case, we can ignore all the documents           1:25PM
 7      regarding past discipline and performance issue      1:25PM
 8      with Burmaster?                                      1:25PM
 9                  MR. ANADA:  Object to form, go ahead.    1:25PM
10                  THE WITNESS:  That's correct.  I am not  1:25PM
11                  issuing an opinion on what should have   1:25PM
12                  been done to Burmaster before this.      1:25PM
13      BY MR. ROQUEMORE:                                    1:25PM
14          Q    All right.  I just want to make sure        1:25PM
15      that I'm clear about your opinions that you're       1:25PM
16      providing in this case, and maybe we can save        1:25PM
17      ourselves a little bit of time.  If you go to the    1:25PM
18      last page in your report, there's a listing of       1:26PM
19      number 17.                                           1:26PM
20          A    Okay.  Yes.                                 1:26PM
21          Q    Yeah, do you see that?  Do you see that     1:26PM
22      opinion there?                                       1:26PM
23          A    Yes, I did --                               1:26PM
24          Q    Are you withdrawing that opinion at this    1:26PM
25      time?                                                1:26PM
```

| | | | |
|---|---|---|---|
| 1 | Q | Okay.  So what documents did you look | 1:27PM |
| 2 | at? | | 1:27PM |
| 3 | | MR. ANADA:  Object to form.  Asked and | 1:27PM |
| 4 | | answered and stated in his report.  Go | 1:27PM |
| 5 | | ahead, Jim. | 1:27PM |
| 6 | | THE WITNESS:  Let me pull up the -- | 1:27PM |
| 7 | BY MR. ROQUEMORE: | | 1:27PM |
| 8 | Q | Mr. Crosby, let me rephrase that.  What | 1:27PM |
| 9 | documents did you look at in forming your opinion | | 1:28PM |
| 10 | that's contained in Paragraph 17 of the last page | | 1:28PM |
| 11 | of your report? | | 1:28PM |
| 12 | A | There were -- | 1:28PM |
| 13 | | MR. ANADA:  Same objection; go ahead. | 1:28PM |
| 14 | | THE WITNESS:  There were disciplinary | 1:28PM |
| 15 | | files and so forth that were provided in | 1:28PM |
| 16 | | discovery, and that's what I looked at. | 1:28PM |
| 17 | | I'm trying to find if I can find a stack | 1:28PM |
| 18 | | of those easily without having to waste | 1:28PM |
| 19 | | any time here.  I don't -- I'm afraid | 1:28PM |
| 20 | | that I've redone my storage, and I don't | 1:28PM |
| 21 | | have -- I have a folder that says -- | 1:28PM |
| 22 | | NOPD documents, that did contain that, | 1:28PM |
| 23 | | but apparently they didn't translate | 1:28PM |
| 24 | | over.  I could go back to my email and | 1:29PM |
| 25 | | resurrect that file, but that would take | 1:29PM |

| | | |
|---|---|---|
| 1 | a few minutes here. | 1:29PM |
| 2 | BY MR. ROQUEMORE: | 1:29PM |
| 3 | Q  So as we're sitting here today, the best | 1:29PM |
| 4 | you can answer this question, is that you looked | 1:29PM |
| 5 | at various documents regarding past disciplinary | 1:29PM |
| 6 | performance issues with Burmaster? | 1:29PM |
| 7 | A  Yes. | 1:29PM |
| 8 | MR. ANADA:  Object to form -- produced | 1:29PM |
| 9 | in discovery, but go ahead. | 1:29PM |
| 10 | THE WITNESS:  Yes, and I reviewed those | 1:29PM |
| 11 | documents that were produced in | 1:29PM |
| 12 | discovery.  I did not list them | 1:29PM |
| 13 | individually. | 1:29PM |
| 14 | BY MR. ROQUEMORE: | 1:29PM |
| 15 | Q  All right.  So this report that we're | 1:29PM |
| 16 | looking in number 1, this is your only report in | 1:29PM |
| 17 | this case, right? | 1:29PM |
| 18 | A  Yes. | 1:29PM |
| 19 | Q  It has all of your opinions that you are | 1:29PM |
| 20 | intending to offer in this case, correct? | 1:29PM |
| 21 | A  Unless you ask something else that was | 1:29PM |
| 22 | not covered, because I also expressly stated that | 1:29PM |
| 23 | if there was any new material evidence or | 1:30PM |
| 24 | testimony that was introduced, then I would | 1:30PM |
| 25 | reserve the right to have an opinion on that also. | 1:30PM |

| | | |
|---|---|---|
| 1 | have seen in person have been dead. | 1:51PM |
| 2 | BY MR. ROQUEMORE: | 1:51PM |
| 3 | Q So let's turn to Exhibit 2. I just want | 1:51PM |
| 4 | to run through your CV and make sure we're not | 1:51PM |
| 5 | going to miss anything. Your first line, you say | 1:51PM |
| 6 | Dr. James W. Crosby is a certified behavior | 1:51PM |
| 7 | consultant. Do you see that part? | 1:51PM |
| 8 | A Yes. | 1:51PM |
| 9 | Q Certified -- who are you certified by? | 1:51PM |
| 10 | A I'm certified by the Certification | 1:51PM |
| 11 | Counsel for Professional Dog Trainers. I'm also | 1:52PM |
| 12 | certified as a dog behavior consultant by the | 1:52PM |
| 13 | International Association of Animal Behavior | 1:52PM |
| 14 | Consultants. | 1:52PM |
| 15 | Q So -- in your -- in your experience | 1:52PM |
| 16 | you've -- have you ever been -- well, you've never | 1:52PM |
| 17 | been a chief of police, right? The highest level | 1:52PM |
| 18 | in Jacksonville was a lieutenant, correct? | 1:52PM |
| 19 | A That is correct. I was a lieutenant | 1:53PM |
| 20 | with the Jacksonville Sheriff's Office. I was the | 1:53PM |
| 21 | division manager, so the effective chief of Bay | 1:53PM |
| 22 | County Animal Control out in West Florida. And I | 1:53PM |
| 23 | also served as the acting chief of Jacksonville | 1:53PM |
| 24 | Animal Care and Protective Services here in | 1:53PM |
| 25 | Jacksonville. So those were both technically law | 1:53PM |

```
 1   enforcement agencies, but I have not been a chief       1:53PM
 2   of police.                                              1:53PM
 3        Q    And you've never had the responsibility       1:53PM
 4   for creating policy for a Police Department or          1:53PM
 5   other law enforcement agency, correct?                  1:53PM
 6        A    No, incorrect.  I have -- I have not          1:53PM
 7   been the final approval, but I have assisted a          1:53PM
 8   number of departments in developing policies            1:53PM
 9   regarding police encounters with dogs and proper        1:53PM
10   uses of less, non, and lethal force.  And I've          1:53PM
11   also developed those policies and so forth for          1:54PM
12   animal control code enforcement agencies.               1:54PM
13             I further assisted the development of         1:54PM
14   the federal law in the capital territory of             1:54PM
15   Australia and the national law in the Commonwealth      1:54PM
16   of the Bahamas and have provided assistance to the      1:54PM
17   government of the United Kingdom.                       1:54PM
18        Q    You did all this before --                    1:54PM
19        A    And the government of Singapore.              1:54PM
20        Q    This is through your work as a                1:54PM
21   consultant, right?                                      1:54PM
22        A    Yes.                                          1:54PM
23        Q    So you're not saying that you created         1:54PM
24   the policy as a consultant.  You provided them          1:54PM
25   options and you gave them advice; is that fair?         1:54PM
```

| | | |
|---|---|---|
| 1 | BY MR. ROQUEMORE: | 4:59PM |
| 2 | Q    You've never done law enforcement in the | 4:59PM |
| 3 | city of New Orleans though, right? | 4:59PM |
| 4 | A    Actually, I was present post-Katrina, | 4:59PM |
| 5 | but I wasn't doing law enforcement, although I was | 4:59PM |
| 6 | working closely with law enforcement in the city. | 4:59PM |
| 7 | And I know that's not being the police, but I just | 4:59PM |
| 8 | want to be transparent there. | 4:59PM |
| 9 | Q    What were you doing working closely with | 4:59PM |
| 10 | the police after Katrina? | 4:59PM |
| 11 | A    I was working doing animal rescue work. | 4:59PM |
| 12 | And, for instance, would go out with the police, | 4:59PM |
| 13 | particularly with the National Guard, who were | 4:59PM |
| 14 | assigned in New Orleans to assist in the recovery | 4:59PM |
| 15 | of injured or aggressive or other animals in those | 4:59PM |
| 16 | cases.  And that was with both the NOPD and, like | 4:59PM |
| 17 | I said, with the National Guard, who was there in | 5:00PM |
| 18 | a law enforcement capacity. | 5:00PM |
| 19 | Q    You were never deputized by the NOPD to | 5:00PM |
| 20 | be a law enforcement person. | 5:00PM |
| 21 | A    No. | 5:00PM |
| 22 | Q    This was post-Katrina, so it was a | 5:00PM |
| 23 | unique situation for New Orleans, correct? | 5:00PM |
| 24 | A    As far as I know, yes, it was very | 5:00PM |
| 25 | unique. | 5:00PM |

| | | |
|---|---|---|
| 1 | Q So the next line goes, "He didn't | 5:13PM |
| 2 | believe he could jump the fence because of the | 5:13PM |
| 3 | spikes on top of it." Do you agree with that | 5:13PM |
| 4 | statement? | 5:13PM |
| 5 | A Again, I don't know what he believed. I | 5:13PM |
| 6 | know that, myself, I've gone over fences just like | 5:13PM |
| 7 | that in pursuit of suspects, so I know it's a | 5:14PM |
| 8 | doable thing. Whether he felt he could, I don't | 5:14PM |
| 9 | know. | 5:14PM |
| 10 | Q You'll agree that the fence had spikes | 5:14PM |
| 11 | on top of it, right? | 5:14PM |
| 12 | A Sure. They make a great place to grab | 5:14PM |
| 13 | on so you can go over. | 5:14PM |
| 14 | Q So your answer is sure. | 5:14PM |
| 15 | A My answer is that yes, there were spikes | 5:14PM |
| 16 | on top of the fence. They make a good handhold to | 5:14PM |
| 17 | help you get over. | 5:14PM |
| 18 | Q The next line, He prepared himself and | 5:14PM |
| 19 | once he observed -- "He prepared himself and once | 5:14PM |
| 20 | he observed the dog, he believed it was vicious | 5:14PM |
| 21 | and coming fast towards him." Do you disagree | 5:14PM |
| 22 | that Officer Burmaster believed Apollo was | 5:14PM |
| 23 | vicious? | 5:14PM |
| 24 | A Again, I can't testify to what he | 5:14PM |
| 25 | believed. I can tell you that based on the | 5:14PM |

| | | |
|---|---|---|
| 1 | behavioral evidence shown in the videos, that a | 5:14PM |
| 2 | well-trained, reasonable officer would not have | 5:15PM |
| 3 | perceived that dog, that puppy, as being a valid | 5:15PM |
| 4 | threat or vicious. | 5:15PM |
| 5 | Q    And you base that on your review of the | 5:15PM |
| 6 | body worn camera, right? | 5:15PM |
| 7 | A    Correct, and my experience in many, many | 5:15PM |
| 8 | situations. | 5:15PM |
| 9 | Q    The final part of that sentence it says, | 5:15PM |
| 10 | "coming fast towards him." Do you agree -- do you | 5:15PM |
| 11 | disagree that Apollo was coming fast towards | 5:15PM |
| 12 | Officer Burmaster? | 5:15PM |
| 13 | A    I'd agree that the dog was coming | 5:15PM |
| 14 | towards him fairly rapidly, yeah. | 5:15PM |
| 15 | Q    The next line, "Officer Burmaster | 5:15PM |
| 16 | believed the dog would bite him on the leg or | 5:15PM |
| 17 | pelvis area." Do you disagree that Officer | 5:15PM |
| 18 | Burmaster had that belief that the dog was going | 5:16PM |
| 19 | to bite him in the leg or pelvis area? | 5:16PM |
| 20 | A    I don't know, again, what he believed. | 5:16PM |
| 21 | It's -- most dog bites commonly happen to the | 5:16PM |
| 22 | lower leg and are very minimal. It's very rare | 5:16PM |
| 23 | for a dog to bite someone in the pelvis. That's | 5:16PM |
| 24 | extremely unusual. Whether he believed it or not, | 5:16PM |
| 25 | I don't know. | 5:16PM |

| | | |
|---|---|---|
| 1 | Q   I just ask if we can go off-line for two | 5:37PM |
| 2 | minutes, so I can review my notes and then maybe | 5:37PM |
| 3 | we can wrap this thing up? | 5:37PM |
| 4 | MR. ANADA:  Yeah, let's take five. | 5:37PM |
| 5 | (At this time, a brief recess was | 5:37PM |
| 6 | taken.) | 5:37PM |
| 7 | BY MR. ROQUEMORE: | 5:43PM |
| 8 | Q   Mr. Crosby, let me ask you a couple of | 5:43PM |
| 9 | questions about your background.  Do you have any | 5:43PM |
| 10 | education, specialized training or professional | 5:43PM |
| 11 | affiliations regarding management of law | 5:43PM |
| 12 | enforcement officers? | 5:43PM |
| 13 | A   I don't belong to any -- well, I do | 5:43PM |
| 14 | belong to the National Sheriffs Association and am | 5:43PM |
| 15 | still on the president's committee on animal abuse | 5:43PM |
| 16 | and animal issues.  I'm a lifetime member of the | 5:43PM |
| 17 | fraternal order of police.  I don't any longer | 5:43PM |
| 18 | belong to any other police organizations at all. | 5:44PM |
| 19 | Q   Okay.  Do you have any -- in any of | 5:44PM |
| 20 | those associations, do you have any membership in | 5:44PM |
| 21 | management specialty area of those organizations? | 5:44PM |
| 22 | A   No.  NSA and the Fraternal Order of | 5:44PM |
| 23 | Police, no, I'm not in a management capacity in | 5:44PM |
| 24 | either one of those. | 5:44PM |
| 25 | Q   Okay.  And the last time you supervised | 5:44PM |

|   |   |   |
|---|---|---|
| 1 | any officers was more than 20 years ago; is that | 5:44PM |
| 2 | correct? | 5:44PM |
| 3 | A    The last time I actually was supervising | 5:44PM |
| 4 | police officers, yes, was over 20 years ago.  The | 5:44PM |
| 5 | last time I supervised enforcement officers, being | 5:44PM |
| 6 | the Animal Control code enforcement officers, was | 5:44PM |
| 7 | 2016, so less than 10. | 5:44PM |
| 8 | Q    In any of your law enforcement roles, | 5:45PM |
| 9 | have you ever had a position where you determine | 5:45PM |
| 10 | whether policy violations occurred and discipline | 5:45PM |
| 11 | should be imposed? | 5:45PM |
| 12 | A    Yes, absolutely.  Everything from verbal | 5:45PM |
| 13 | warnings to recommending firing. | 5:45PM |
| 14 | Q    Anything else? | 5:45PM |
| 15 | A    Well, no I think that pretty much covers | 5:45PM |
| 16 | the whole stove, from telling somebody you | 5:45PM |
| 17 | shouldn't have done that to firing them.  That's a | 5:45PM |
| 18 | pretty wide scope of options. | 5:45PM |
| 19 | Q    Have you ever been in a position where | 5:45PM |
| 20 | a -- you reviewed history of an officer and | 5:45PM |
| 21 | recommended somebody be fired? | 5:45PM |
| 22 | A    Yes. | 5:45PM |
| 23 | Q    How many times have you done that -- | 5:46PM |
| 24 | A    I really can't put a number on it | 5:46PM |
| 25 | because, you know, my recommendation on something | 5:46PM |