```
             UNITED STATES DISTRICT COURT

             EASTERN DISTRICT OF LOUISIANA

****************************************************

DEREK BROWN AND              * CIVIL ACTION
JULIA BARECKI-BROWN          * DOCKET NUMBER:
                             * 22-00847
versus                       * SECTION: L
                             * HONORABLE
                             * ELDON E. FALLON
DERRICK BURMASTER, SHAUN     * DIVISION: 4
FERGUSON, AND THE CITY OF    * HONORABLE
NEW ORLEANS                  * KAREN WELLS ROBY

****************************************************

         The deposition of DR. ELIZABETH BERK,

taken on FRIDAY, APRIL 4, 2025, commencing at 2:00

PM via videoconference.


                      * * *
```

*New Orleans 504.522.2101*                                    *North Shore 985.206.9303*
*Toll Free 800.526.8720*        *SerpasCourtReporting.com*    *Baton Rouge 225.332.3040*

EXHIBIT B

```
 1                        INDEX

 2   Caption ...............................................1
     Appearances ...........................................3
 3   Stipulation ...........................................4

 4   Examination

 5        MR. ROQUEMORE  ..................................5
          MR. ANADA ......................................73
 6   Reporter's Certification ............................85
     EXHIBIT NO. 1    ......................................8
 7        Notice of deposition
     EXHIBIT NO. 2    ......................................8
 8        CV
     EXHIBIT NO. 3    ......................................9
 9        Psychological evaluation of Derek Brown
     EXHIBIT NO. 4    .....................................10
10        Psychological evaluation of Julia
              Barecki-Brown
11   EXHIBIT NO. 5    .....................................11
          Standard progress note for Derek Brown
12   EXHIBIT NO. 6    .....................................11
          Standard progress note for Julia
13            Barecki-Brown
     EXHIBIT NO. 7    .....................................12
14        June 16, 2921 handwritten notes
     EXHIBIT NO. 8    .....................................13
15        Intake form for Derek Brown dated June 15,
              2021
16

17

18

19

20

21

22

23

24

25
```

```
 1                A P P E A R A N C E S:

 2    Representing the PLAINTIFF, DEREK BROWN AND JULIA
      BARECKI-BROWN:
 3
           JONES WALKER
 4         201 St. Charles Avenue, Floor 49
           New Orleans, Louisiana 70170-5100
 5         (504) 582-8322
           tanada@joneswalker.com
 6         pvanburkleo@joneswalker.com

 7         BY:  TARAK ANADA, ESQUIRE
           BY:  PATRICK VAN BURKLEO, ESQUIRE
 8


 9    Representing the DEFENDANT, CITY OF NEW ORLEANS
      AND DERRICK BURMASTER:
10
           CITY OF NEW ORLEANS LAW DEPARTMENT
11         1300 Perdido Street, Suite 5E03
           New Orleans, Louisiana 70112
12         (504) 658-9800
           james.roquemore@nola.gov
13
           BY:  JAMES M. ROQUEMORE, ESQUIRE
14


15

16    Reported by:   CYNTHIA S. LEBLANC
                     Certified Court Reporter
17                   State of Louisiana

18

19

20

21

22

23

24

25
```

```
 1   unusual.                                                        3:02PM
 2       Q    But this is something that you as a                    3:02PM
 3   professional would ask him or it would be relevant              3:02PM
 4   to your assessment, right?                                      3:02PM
 5       A    Yes, I asked him.                                      3:02PM
 6       Q    And he said -- he did -- he said no?                   3:02PM
 7       A    Correct.                                               3:02PM
 8       Q    Now let's move on to the summary and                   3:02PM
 9   recommendations.  Essentially, you diagnosed him                3:02PM
10   as having depression and PTSD; is that correct?                 3:02PM
11       A    Correct.                                               3:02PM
12       Q    And that's based upon the checklist,                   3:02PM
13   the -- the test that you gave him and your -- the               3:03PM
14   history that you took from him, right?                          3:03PM
15       A    Correct.                                               3:03PM
16       Q    How long did the assessment on March                   3:03PM
17   15th take; how many hours?                                      3:03PM
18       A    June 15th, I met with him for an hour,                 3:03PM
19   for 60 minutes.  And that was the part where I                  3:03PM
20   interviewed and spoke with him.  He completed the               3:03PM
21   forms, some of them beforehand and some of them                 3:03PM
22   after.  It normally takes people about an hour and              3:03PM
23   a half, two hours to complete everything.                       3:03PM
24       Q    So you met with him for an hour and then               3:03PM
25   you spent some time reviewing the forms that he                 3:03PM
```

| | | |
|---|---|---|
| 1 | A   I believe sometimes she just didn't do | 3:34PM |
| 2 | them or would really have to force herself to do | 3:34PM |
| 3 | them or would complete tasks poorly. | 3:34PM |
| 4 | Q   And you have no -- the recommendation | 3:35PM |
| 5 | that you made for therapy I think it's clear where | 3:35PM |
| 6 | you clarified that she didn't do therapy with you, | 3:35PM |
| 7 | right? | 3:35PM |
| 8 | A   Correct. | 3:35PM |
| 9 | Q   And you don't have any information about | 3:35PM |
| 10 | whether she took your recommendations to do any | 3:35PM |
| 11 | therapy after she met with you, right? | 3:35PM |
| 12 | A   Correct. | 3:35PM |
| 13 | Q   You recommended therapy and I'm guessing | 3:35PM |
| 14 | we kind of went through -- would this fall under | 3:35PM |
| 15 | long-term therapy or short-term, or just as needed | 3:35PM |
| 16 | within the discretion of the counselor?  How would | 3:35PM |
| 17 | you describe that? | 3:35PM |
| 18 | A   I would describe it as is within the | 3:35PM |
| 19 | discretion of the counselor, which I think it's | 3:35PM |
| 20 | technically short-term to be within that | 3:35PM |
| 21 | 16-to-20-week window, but at the discretion of the | 3:35PM |
| 22 | person. | 3:35PM |
| 23 | Q   So the process when she starts such a | 3:36PM |
| 24 | therapy, that therapist would do an initial | 3:36PM |
| 25 | evaluation, right? | 3:36PM |

```
 1      A    Correct, yes.                                    3:36PM
 2      Q    And then that therapist would create a           3:36PM
 3   treatment plan, correct?                                 3:36PM
 4      A    Correct.                                         3:36PM
 5      Q    And that would be depending on her               3:36PM
 6   current state of mental health and her current           3:36PM
 7   needs, right?                                            3:36PM
 8      A    Correct.                                         3:36PM
 9      Q    Are you providing an opinion about the           3:36PM
10   cause of the -- Julie Barecki's diagnosis that you       3:36PM
11   have?  I just want to make sure -- you diagnosed         3:36PM
12   her with traumatic stress disorder, right?               3:36PM
13      A    Yes.  In my professional opinion it was          3:36PM
14   directly caused by the death of the dog.  She did        3:37PM
15   not have any of these symptoms beforehand.  She          3:37PM
16   had never had symptoms of PTSD in her life and           3:37PM
17   they started immediately following the loss of her       3:37PM
18   dog.                                                     3:37PM
19      Q    And the information that you received            3:37PM
20   regarding not having the symptoms beforehand came        3:37PM
21   from her, right?                                         3:37PM
22      A    Yes.                                             3:37PM
23      Q    The information regarding the symptoms           3:37PM
24   that she was suffering immediately after the dog         3:37PM
25   was shot came from her also, right?                      3:37PM
```

| | | |
|---|---|---|
| 1 | A   Her, and when I interviewed each of | 3:37PM |
| 2 | them, they commented on each other's states also. | 3:37PM |
| 3 | Q   Okay.  So part of the information about | 3:37PM |
| 4 | her mental condition immediately after the dog | 3:37PM |
| 5 | came from her, right? | 3:38PM |
| 6 | A   Yes, most of it, yes. | 3:38PM |
| 7 | Q   And part of it came from Mr. Brown, | 3:38PM |
| 8 | right? | 3:38PM |
| 9 | A   Yes. | 3:38PM |
| 10 | Q   And then you conducted some tests | 3:38PM |
| 11 | that originally relied upon from the information | 3:38PM |
| 12 | provided to you by Ms. Barecki, right? | 3:38PM |
| 13 | A   Yes. | 3:38PM |
| 14 | Q   And you as a professional interviewed | 3:38PM |
| 15 | and took that information and created this report, | 3:38PM |
| 16 | right? | 3:38PM |
| 17 | A   Yes. | 3:38PM |
| 18 | Q   Okay.  Same set of questions for | 3:38PM |
| 19 | Mr. Brown, information about his previous mental | 3:38PM |
| 20 | health before the dog was shot came from him, | 3:38PM |
| 21 | right? | 3:38PM |
| 22 | A   Correct. | 3:38PM |
| 23 | Q   The mental health issues he was feeling | 3:38PM |
| 24 | after the dog was shot came from him, right? | 3:38PM |
| 25 | A   Correct. | 3:39PM |

| | | |
|---|---|---|
| 1 | Q And the evaluations were largely | 3:39PM |
| 2 | self-evaluated, self-reporting evaluations which | 3:39PM |
| 3 | came from him, again, correct? | 3:39PM |
| 4 | A Correct. | 3:39PM |
| 5 | Q And then you took that information as a | 3:39PM |
| 6 | mental health professional and created that | 3:39PM |
| 7 | report, right? | 3:39PM |
| 8 | A Yes. That would be the pretty | 3:39PM |
| 9 | traditional way to do it. If someone wasn't | 3:39PM |
| 10 | hospitalized or they didn't have other medical | 3:39PM |
| 11 | records from other professionals, then I would | 3:39PM |
| 12 | have nothing to review. | 3:39PM |
| 13 | Q And you did not do an assessment as to | 3:39PM |
| 14 | any kind of couples issue with what was going on | 3:39PM |
| 15 | between Mr. Brown and Ms. Barecki, right? | 3:39PM |
| 16 | A No. That wasn't within the scope of | 3:39PM |
| 17 | what I was doing. | 3:40PM |
| 18 | Q I just want to make sure that I have | 3:40PM |
| 19 | asked you everything. | 3:40PM |
| 20 | A Sure. | 3:40PM |
| 21 | Q All right. Dr. Berk, I appreciate your | 3:40PM |
| 22 | time. That's all I have to ask you. Thank you. | 3:40PM |
| 23 | A Thank you, Mr. Roquemore. | 3:40PM |
| 24 | E X A M I N A T I O N | 3:40PM |
| 25 | BY MR. ANADA: | 3:40PM |

| | | | |
|---|---|---|---|
| 1 | Q | Dr. Berk, have a few questions for you. | 3:40PM |
| 2 | A | Sure. | 3:40PM |
| 3 | Q | Mr. Roquemore asked you about your | 3:40PM |
| 4 | opinion of the cause of Ms. Barecki-Brown's | | 3:40PM |
| 5 | symptoms and disorders; do you remember that? | | 3:40PM |
| 6 | A | Yes. | 3:40PM |
| 7 | Q | And your opinion was the cause was due | 3:40PM |
| 8 | to the police officer shooting of her dog. | | 3:41PM |
| 9 | A | Yes. | 3:41PM |
| 10 | | MR. ROQUEMORE: Object to form. Asked | 3:41PM |
| 11 | | and answered. | 3:41PM |
| 12 | BY MR. ANADA: | | 3:41PM |
| 13 | Q | Okay. What about the cause of | 3:41PM |
| 14 | Mr. Brown's symptoms and diagnoses? | | 3:41PM |
| 15 | | MR. ROQUEMORE: Go ahead, you can | 3:41PM |
| 16 | | answer. | 3:41PM |
| 17 | | THE WITNESS: In my professional opinion | 3:41PM |
| 18 | | also, and as a result of the dog being | 3:41PM |
| 19 | | shot. He didn't have any symptoms | 3:41PM |
| 20 | | before that, as far as I could tell. | 3:41PM |
| 21 | BY MR. ANADA: | | 3:41PM |
| 22 | Q | Okay. And just to clear up the record, | 3:41PM |
| 23 | Mr. Roquemore asked you a line of questions about | | 3:41PM |
| 24 | whether your diagnoses, the disorders he was | | 3:41PM |
| 25 | diagnosed with or his symptoms, were caused by | | 3:41PM |

C E R T I F I C A T E

    This certification is valid only for a transcript accompanied by my original signature and original required seal on this page.

    I, Cynthia LeBlanc, Certified Court Reporter, in and for the State of Louisiana, as the officer before whom this testimony was taken, do hereby certify that, DR. ELIZABETH BERK, after having been duly sworn by me upon authority of R.S. 37:2554, did testify as hereinbefore set forth in the foregoing 84 pages; that this testimony was reported by me in the stenomask reporting method, was prepared and transcribed by me or under my personal direction and supervision, and is a true and correct transcript to the best of my ability and understanding; that the transcript has been prepared in compliance with transcript format guidelines required by statute or by rules of the board and that I am informed about the complete arrangement, financial or otherwise, with the person or entity making arrangements for deposition services; that I have acted in compliance with the prohibition on contractual relationships, as defined by Louisiana Code of Civil Procedure Article 1434 and in rules and advisory opinions of the board; that I have no actual knowledge of any prohibited employment or contractual relationship, direct or indirect, between a court reporting firm and any party litigant in this matter, nor is there any such relationship between myself and a party litigant; that I am not related to counsel or to the parties herein, nor am I otherwise interested in the outcome of this matter.

    Dated this 14th day of April, 2025.


_____
Cynthia S. LeBlanc, CCR
Louisiana Certification No. 2019006