UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and | * | CIVIL ACTION |
| JULIA BARECKI-BROWN | * | |
| | * | DOCKET NUMBER: 22-00847 |
| VERSUS | * | |
| | * | SECTION: L |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | HONORABLE ELDON E. FALLON |
| NEW ORLEANS | * | |
| | * | DIVISION: 4 |
| | * | |
| | * | HONORABLE KAREN WELLS ROBY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION [R. DOC. 214] TO MOTION FOR SUMMARY JUDGMENT [R. DOC. 208]**

NOW INTO COURT, come the City of New Orleans (the "City") and Derrick Burmaster ("Defendants") who respectfully submit this Reply to Plaintiff's Opposition [R. Doc. 214] (the "Opposition") to Defendants' Motion for Partial Summary Judgment [R. Doc. 208] (the "MSJ") and show the following.

### A. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Defendants demonstrated in their MSJ that Plaintiffs cannot produce evidence of the requisite level of psychic trauma to support their state law negligent infliction of emotional distress ("NEID") claim.[1] In particular, Plaintiffs cannot produce evidence that they received mental health treatment, which would constitute evidence that "suffered psychic trauma in the nature of or similar to a physical injury as a direct result of the incident itself[.]"[2]

---

[1] See *Doerr v. Mobil Oil Corp*, 04-1789, (La. App. 4 Cir. 6/14/06), 935 So.2d 231, writ denied, 06-1760 (La. 11/3/06).
[2] *Barrios v. Safeway Ins. Co.*, 2011-1028 (La. App. 4 Cir. March 21, 2012), 97 So.3d 1019, 1025 (damage award of $10,000 for killing a pet dog). Plaintiffs, in their Opposition, have stated that they agree with Defendants, albeit in a backhanded way, that they are not entitled to damages for "bystander liability" based on La. Code Civ. Proc. 2315.6. See R. Doc. 214, pp. 6-7 (Defendants use the wrong standard for NEID); R. Doc. 208-1 (bystander liability is not available under C.C.P. 2315.6 for the death of a pet dog).

1

Plaintiffs, in their Opposition, contend that "this Court already denied a motion for summary judgment on that claim."[3] However, the Order referenced by Plaintiffs only denied summary judgment as to *Plaintiffs'* motion for summary judgment.[4] Defendant Burmaster did not seek summary judgment as to state law claims; he only sought summary judgment as to qualified immunity and punitive damages.[5] In fact, Officer Burmaster's motion his motion did not mention "emotional distress" at all. In addition, the City Defendants' motion for summary judgment was denied as moot, "without prejudice, and the parties reserve the right to re-file these motions when a new trial date is set."[6] Thus, there is no "law of the case" or other procedural obstacle preventing the Defendants from seeking summary judgment on this claim.

Plaintiffs, in their Opposition, also contend that Defendants' MSJ should be denied as to the NEID claim because Defendants did not include "any facts related to the NIED claim" in their statement of material facts.[7] However, Plaintiffs fail to realize that Defendants' MSJ with respect to the NEID claim is a "no-evidence" MSJ. In other words, Defendants claim that they are entitled to summary judgment on this claim because Plaintiff fails to produce evidence to support a necessary element of their NEID claim, that of psychic trauma.

"When the non-movant for summary judgment bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact

---

[3] R. Doc. 214, p. 1 (citing R. Doc. 162).
[4] R. Doc. 162, p. 14 ("Plaintiffs also ask for summary judgment on their state law claims[.] … it would be inappropriate to grant summary judgment on these claims.").
[55] R. Doc. 105-1. Accordingly, Plaintiffs' citation of the final sentence of Defendant Burmaster's motion for summary judgment (at R. Doc. 105-1, p. 25), which prays that "all claims against Burmaster under federal and state law must be dismissed with prejudice and at the Browns cost" is taken out of context. As this Court recognized, given the content of the entire motion, Defendant Burmaster did not intend, by this final line, to seek summary judgment on all issues. The "law of the case doctrine" does not apply to this issue. See R. Doc. 214, footnote 8 (Plaintiff's argument that the law of the case doctrine applies here).
[6] R. Doc. 167.
[7] R. Doc. 214, p. 3 ("Defendants' motion should be denied on that basis alone as it relates to the NIED claim.").

2

warranting a trial."[8] This is what Defendants have done here. Defendants pointed out that the only documented contact that Plaintiffs had with a mental health professional occurred through the efforts of their attorney in this case, for purposes of this litigation. Further, Defendants failed to provide any documentation indicating that they followed any recommendation of the professional or otherwise obtained the services of a mental health professional.[9] Under these circumstances, the burden is on the Plaintiffs to demonstrate that there is an issue of material fact in dispute.

Accordingly, for this MSJ claim, Defendants are not required to include any facts in their Statement of Material Facts. Plaintiffs, on the other hand, do have a duty to respond and to identify material facts at issue in their Statement of Material Facts. "When the movant has made a properly supported motion for summary judgment by demonstrating an absence of evidence to support the non-movants' case," the non-movants must "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'."[10] Further, Local Rule 56.2 requires that "Any opposition to a motion for summary judgment must include a *separate* and concise statement of the material facts which the opponent contends present a genuine issue."[11] However, Plaintiffs failed to include any facts to support their NEID claim in a separate statement of material facts.[12] According to Plaintiffs, failure to follow the local rules in this regard is grounds to rule against the offending party.[13]

---

[8] *Klocke v. University of Texas at Arlington*, 938 F.3d 204 (5th Cir. 2019), cert. denied, 140 S. Ct. 1268, 206 L. Ed. 2d 256 (2020).
[9] See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) ("the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.").
[10] *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed. R. Civ. P. 56(e)).
[11] E.D. Local Rule 56.2 (emphasis added).
[12] See R. Doc. 214-1.
[13] See R. Doc. 214, p. 3 ("Defendants' motion should therefore be denied with regard to NIED given these procedural problems"); R. Doc. 214-1 ("Defendants' motion should be denied on that basis alone as it relates to the NIED

Regarding the merits of the NEID claim, Plaintiffs concede that they must prove "the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious."[14] As the Louisiana Supreme Court explained, "given the nature of such claims, a trier of fact must be heedful of the goal of preventing spurious claims, and that not every occasion that causes some harm yields concomitant liability and compensatory damages."[15] The Louisiana Fourth Circuit, in a case involving the killing of a pet dog, held that this standard required the pet owners to show that they "suffered psychic trauma in the nature of or similar to a physical injury as a direct result of the incident itself[.]"[16]

In *Spencer*, the Supreme Court applied this standard to plaintiffs who suffered emotional distress due to a refinery explosion near their house. The court held that the plaintiffs failed to demonstrate sufficient emotional distress. The Court noted that the plaintiffs were awakened by the shock wave of the explosion, which broke windows. One plaintiff, the mother of small children, described being "anxious and concerned about her physical safety and that of her children as well as potential exposure to chemicals" as well as "possible adverse health effects from exposure to chemical."[17] Another plaintiff, a child, expressed being "scared and anxious as a result of the explosion" and later, "anxious and concerned."[18] Another plaintiff reported being "shaky and very scared" following the explosion.[19] Stringently applying the rule requiring "severe" mental injury

---

claim."). To be clear, because Plaintiffs failed to abide by Local Rule 56.2, Defendants object to the evidence cited by Plaintiffs in their Opposition, R. Doc. 208-1, *supra* footnotes 9-26.
[14] *Spencer v. Valero Refining Meraux, L.L.C.*, 2022-00469 (La. 1/27/23), 356 So.3d 936.
[15] *Id.*, 356 So.3d at 949.
[16] *Barrios v. Safeway Ins. Co.*, 2011-1028 (La. App. 4 Cir. March 21, 2012), 97 So.3d 1019, 1025 (damage award of $10,000 for killing a pet dog). Plaintiffs, in their Opposition, have stated that they agree with Defendants, albeit in a backhanded way, that they are not entitled to damages for "bystander liability" based on La. Code Civ. Proc. 2315.6. See R. Doc. 214, pp. 6-7 (Defendants use the wrong standard for NEID); R. Doc. 208-1 (bystander liability is not available under C.C.P. 2315.6 for the death of a pet dog).
[17] *Id.*, 356 So.3d at 941.
[18] *Id.*
[19] *Id.* at 944.

requirement, the Court held that no plaintiff put forth sufficient evidence to demonstrate that there was "an especial likelihood of genuine and serious mental distress" to serve to guarantee the claim was not spurious, and therefore dismissed the NIED claims.[20]

Similarly, in the instant case, Plaintiffs merely offer an opinion of a counsellor hired by their lawyer, which opinion was based on Plaintiffs' own self-reported symptoms. Plaintiffs failed to offer any proof that they actually needed mental health treatment. Under these circumstances, Plaintiff has not demonstrated a "serious" mental disturbance under the as that term is used in *Spencer* or *Barrios*. Their NEID claim should be dismissed.

B. **DISCRETIONARY IMMUNITY**

Plaintiffs' analysis of discretionary immunity under Louisiana Revised Statute § 9:2798.1 is flawed in several respects. Initially, Plaintiffs fail to recognize that "[u]nder Louisiana law, state public officials are presumptively entitled to immunity from liability stemming from 'discretionary acts' that are 'within the course and scope of their lawful powers and duties.'"[21] The burden is upon Plaintiffs to rebut this presumption.

To rebut this presumption, Plaintiff "must raise a genuine issue of material fact as to whether [the NOPD's] actions constituted 'criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.'"[22] The immunity "does not shield the state or its officials from liability for 'legal fault or negligent conduct at the operational level, but only confers immunity for policy decisions.'"[23] "Whether the conduct at issue falls within the general

---

[20] *Id.*, (citing *Moresi v. State Through Dep't of Wildlife & Fisheries*, 567 So.2d 1081, 1096 (La. 1990)).
[21] *Larpenter v. Vera*, No. 22-30572, 2023 WL 5554679, at *7 (5th Cir. Aug. 29, 2023) (quoting La. Rev. Stat. § 9:2798.1(B)).
[22] *Larpenter*, 2023 WL 5554679, at *7 (quoting La. Rev. Stat. § 9:2798.1(C)(2)).
[23] *Reeder v. Ducote*, No. 19-00807, 2021 WL 2292921, at *1 (W.D. La. June 4, 2021) (quoting *Foster v. Jeter*, No. 18-01178, 2019 WL 3063597, at *4 (W.D. La. July 10, 2019)).

protections of the statute or is proscribed by the statute's exceptions 'is purely a question of law and is within the province of the trial court to determine at the summary judgment stage.'"[24]

Under Louisiana law, in order to determine if immunity applies, courts apply the two-step test provided in *Berkovitz v. U.S.*, 486 U.S. 531, 108 S. Ct. 1954 (1988):[25]

> "First, if a statute, regulation, or policy prescribes a particular course of action, there is no choice or discretion involved, and the immunity does not apply.
>
> However, when discretion is involved, the court must then determine whether that discretion is the kind that is shielded by the statutory immunity, that is, discretion grounded in social, economic or political policy."[26]

State and federal courts regularly interpret this test to mean "that Louisiana's discretionary immunity statute immunizes officers from state-law negligent training, hiring, supervision, and retention claims."[27] The instant case is no different than other immunity cases in which law enforcement departments are given immunity for decisions involving training and supervision. The analysis applied in *Roberts v. City of Shreveport* is equally applicable here:

> [The Chief] had a wide variety of options for training officers under his command; no law, regulation, or policy of the State of Louisiana explicitly directed his course of action. Further, his training and supervisory decisions are grounded in policy considerations; he had to assess the community's needs, contemplate the types of situations his officers would face, and ultimately reconcile his training decisions with the department's budget. Because his actions meet both prongs of the discretionary immunity test, [the Chief] is immune from the plaintiffs' state law tort claims.[28]

---

[24] *Romback v. Culpepper*, 20-30554, 2021 WL 2944809, *9 (5th Cir. 2021) (citing *Simmons v. Hughes*, 2019-1389, p. 13 (La. App. 1 Cir. 11/25/20), 316 So.3d 488, 497 (citations omitted), reh'g denied (Jan. 4, 2021).
[25] *Magnolia Island Plantation, LLC v. Lucky Family, LLC*, 18-1526, 2024 WL 4884477, *2 (W.D. La. Nov. 25, 2024)
[26] (quoting Addington v. Wells, No. 22-30220, 2023 WL 2808466, at *5 (5th Cir. Apr. 6, 2023).
[27] *Pellerin v. Lafayette Consol. Gov't*, No. 20-01380, 2023 WL 8814664, at *11 (W.D. La. Dec. 20, 2023) (collecting cases). *Pellerin* cites the following cases (parentheticals are as provided by the court): *Roberts v. City of Shreveport*, 397 F.3d 287, 298 (5th Cir. 2005). (La. Rev. Stat. 9:2798.1(B) renders police chief immune from state-law claims premised on his "training officers under his command"); *Smith v. Lafayette Parish Sheriff's Dep't*, 2003-517, p. 7 (La. App. 3 Cir. 2004), 874 So. 2d 863, 868 (sheriff's "hiring/retention policy was a discretionary act" for purposes of immunity under La. Rev. Stat. 9:2798.1); *Hoffpauir v. Columbia Cas. Co.*, No. 12-403, 2013 WL 5934699, at *12 (M.D. La. Nov. 5, 2013) ("[T]he hiring, training, and supervision policy of the Livingston Parish Sheriff's Department is a discretionary function."); *Skinner v. Ard*, 519 F. Supp. 3d 301, 321 (M.D. La. 2021) (sheriff's "duties to train, supervise, and hire are not prescribed by law or regulation, and these duties are grounded in policy considerations").
[28] *Roberts*, 397 F.3d at 296.

Here, as in *Roberts*, Defendants' training and supervisory decisions are grounded in policy considerations based on the needs and unique circumstances of the City of New Orleans, the NOPD police force, and the City budget. These are policy decisions, not operational decisions. For these reasons, Defendants are immune from Plaintiffs' state law tort claims.

Plaintiffs' reliance upon *Pierre v. Wellpath*[29] is unavailing. In *Pierre*, the plaintiff was subjected to sexual assault and harassment while providing medical care at the Orleans Justice Center. The plaintiff sued the Orleans Parish Sheriff and the former Sheriff, among others, alleging various federal and state law claims, including a claim of negligence for failing to train and supervise employees. Importantly, in *Pierre*, the plaintiff specifically alleged in her operative complaint that "the Sheriff had a mandatory duty to train and supervise deputies in accordance with certain officer training requirements described in La. Rev. Stat. §§ 40:2404.2 and 40:2405.8 and that the Sheriff was negligent in regards to this duty to train and supervise."[30] The Court denied the defendants' Rule 12(b)(6) motion to dismiss, holding that the statutes "mandate officer training requirements," including that "officers [] be trained for a certain number of hours."[31] The Court reasoned that the defendants were not entitled to immunity because they did not have discretion as to whether to meet the training requirements of training requirements of La. Rev. Stat. §§ 40:2404.2 and 40:2405 and that further discovery was needed to determine whether the Sheriff's actions were based on policy considerations.

In contrast, Plaintiffs, in their Second Amended Complaint, do not allege that Defendants failed to meet any training requirements contained in 40:2404.2 or 40:2405.8; in fact, these statutes are not mentioned anywhere in the Second Amended Complaint.[32] Neither is the "court-ordered

---

[29] *Pierre v. Wellpath*, 21-1043, 2022 WL 226393 (E.D. La. June 23, 2022).
[30] *Id*., at p. 4.
[31] *Id*.
[32] See R. Doc. 60, ¶¶ 94-101.

federal consent decree," which the Plaintiffs' cite in their Opposition.[33] Notably, even in the Opposition, Plaintiffs do not suggest that Defendants violated either statute or the Consent Decree. The instant case is therefore distinguishable from *Pierre*.

Further, here, unlike *Pierre*, the Plaintiffs do not allege that Defendants failed to train for a particular number of hours in violation of La. Rev. Stat. §§ 40:2404.2 and 40:2405.8. Rather, Plaintiffs allege that the NOPD's training should have included certain components relating to interactions with dogs, which are not required by the statutes or Consent Decree. Whether the NOPD should have included Plaintiffs' suggestions into its training, or should have supervised or disciplined Officer Burmaster differently, are discretionary decisions well-rooted in policy considerations.[34]

Finally, Plaintiffs contend that the NOPD's creation of the October 2019 DTB training component was "reckless" within the meaning of Section 2798.1(C)(2), which provides that immunity is not available to acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct."[35] However, the creation and/or implementation of the training module at issue is plainly reasonable, not reckless.[36] Therefore, Plaintiffs have failed to meet their burden to disprove the Defendants' entitlement to discretionary immunity pursuant to Louisiana Revised Statute § 9:2798.1

---

[33] R. Doc. 214, p. 10.
[34] Plaintiff cites *Chavis v. Lawrence*, 23-cv-1129, R. Doc. 36 at * 24 M.D. la. Jan. 21, 2024) as support of their mistaken argument that "Defendants offer nothing whatsoever to suggest that their training choices were "related to public policy considerations[.]" R. Doc. 214, supra footnote 44. However, this citation is to "Plaintiffs' Response in Opposition to Defendant Troy Larence Jr.'s Motion to Dismiss" submitted in the *Chavis v. Larence* case. This pleading does not constitute persuasive authority for any purpose and should be disregarded.
[35] La. R.S. § 9:2798.1(C)(2).
[36] See Mariana v. Magnolia Auto Transport, LLC, App. 5 Cir.2022, 341 So.3d 1281, 21-447 (La. App. 5 Cir. 5/26/22) (in order to lose immunity, conduct must amount to gross negligence).

### C. **TRAINING**

Plaintiffs, in their Opposition, misleadingly contend that NOPD's training consists only of "three items of training."[37] Defendants have produced evidence that NOPD officers received training as to dealing with dangerous animals through (1) in-service training; (2) a NOPD Professional Standards and Accountability Bureau ("PSAB") directed training bulletin ("DTB") training in May of 2017 and (3) a PSAB DTB training in October of 2019.[38] In addition, the NOPD provided evidence that its officers received additional training in the NOPD academy and PSAB, which included how to evaluate animals, the use of force, and community resources to contact. Further, Defendants showed that their training policies and practices were adequate, that the NOPD was clearly not indifferent to officer interactions with animals in the field, and that the trainings that were provided to Officer Burmaster did not cause the shooting of Plaintiffs' dog. This *Monell* claim based on training should be dismissed.

Plaintiffs contend that Burmaster's academy training "was apparently so insufficient" that Officer Burmaster testified at his deposition that he was "instructed to forget all training from that era."[39] Plaintiffs' counsel did not seek clarification about what Officer Burmaster meant by that statement, but instead assert in the Opposition, without good reason, that "the City did not provide any new training on the topic – for 17 years."[40] However, Officer Burmaster was not asked when he was told to "forget" his training or what the circumstances were for this instruction. It is likely that Officer Burmaster was told to "forget" prior training at the same time he was receiving new training. In any event, this statement does not support an inference that NOPD's training was insufficient.

---

[37] R. Doc. 214, p. 11.
[38] R. Doc. 208-1, p. 14-15.
[39] R. Doc. 214, p. 13 (emphasis in original).
[40] *Id.*

9

Plaintiffs assert that "the Court has already opined on [the NOPD's] training."[41] However, the Court, in the Order cited by Plaintiffs, was addressing the adequacy of Plaintiffs' allegations in its Second Amended Complaint. As this Court noted, "[i]n the context of municipal liability, only minimal factual allegations are required at the motion to dismiss stage."[42] The instant motion for summary judgment requires a different standard than a motion to dismiss.[43] Thus, Plaintiffs' assertion in this regard is incorrect.

Finally, Plaintiffs cite a recommendation made by the NOPD Use of Force Review Board that Officer Burmaster receive "De-escalation training … ASAP."[44] However, this recommendation does not indicate that NOPD's training was inadequate; it only speaks to the Board's recommendation of a way to improve the NOPD and its officers. According to NOPD Operations Manual, Ch. 1.3.7, the NOPD Use of Force Review Board "serves as a quality control mechanism to ensure timely reviews of all serious use of force investigations to determine the appropriateness of the investigative findings, and to quickly appraise use of force incidents from a tactics, *training*, policy, and agency improvement perspective."[45]

In this regard, the Use of Force Review Board recommendation shows that the NOPD was not deliberately indifferent to the training and supervision of its officers, including Office Burmaster. Given NOPD's commitment to quality control in supervision and training of its officers as shown in part by its use of the Use of Force Review Board, it cannot be said that the NOPD is

---

[41] R. Doc. 214, p. 15.
[42] *Id*. (citing *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842-43 (S.D. Tex. 2011)).
[43] Compare *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) with *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[44] R. Doc. 214, p. 15. Defendants object to the use of this evidence because conclusions and recommendations of the NOPD Use of Force Review Board are subsequent remedial measures which are inadmissible pursuant to Fed. R. Evid. 407. See NOPD Operations Manual Ch. 1.3.7, Use of Force Review Board. Available at https://nola.gov/nola/media/NOPD/Policies/Chapter-1-3-7-Use-of-Force-Review-Board-EFFECTIVE-11-15-19-(1).pdf (last accessed April 29, 2025) (outlining the remedial purpose of the Board).
[45] NOPD Operations Manual Ch. 1.3.7 (emphasis added).

deliberately indifferent with respect to training (or supervision) of its police officers. The recommendation supports dismissal of Plaintiffs' *Monell* claims.

### D. <u>SUPERVISION</u>

Plaintiffs, in their Opposition, suggest that a prior Order of this Court, in which it denied Defendants' Motion to Dismiss, should be considered persuasive authority like a law of the case.[46] Plaintiffs provide no authority for a proposition that a motion to dismiss can establish law of the case or be considered persuasive authority for purposes of a motion for summary judgment. That is because Plaintiffs' position is incorrect. "The law-of-the-case doctrine does not bar a court from reaching a conclusion at summary judgment that is different from a ruling at the motion-to-dismiss stage.[47] This result is intuitive because "[t]he standards for motions to dismiss and for motions for summary judgment are entirely different."[48] Given that substantial discovery has occurred since the Motion to Dismiss was filed and the MSJ is supported by evidence not available previously, the Order on the Motion to Dismiss has no persuasive effect on the deciding the MSJ.

In their Opposition, Plaintiffs choose to ignore the evidence submitted by Defendants in support of the MSJ. Further, Plaintiffs fail to address the evidence that shows that no pattern exists concerning Officer Burmaster's conduct that could have put NOPD on notice that he would shoot a dog. The evidence cited to by Plaintiffs consist of only sporadic and unrelated events like the fact that Officer Burmaster shot a dog nine years previously under circumstances where the use of

---

[46] See R. Doc. 214, p. 17 ("the Court has already weighed in on this issue. … the Court should consider how the City's Motion for Summary Judgment intersects with the Corut's ruling on the Motion to Dismiss."); R. Doc. 115 (the Order on Defendants' Motion to Dismiss).
[47] *Constance Joy II, LLC v. Stewart & Stevenson FDDA LLC*, 2024 WL 4008094 (S.D. Tex. Aug. 30, 2024) (citing *Lockheed Martin Corp. v. Network Sols., Inc*., 141 F.Supp.2d 648, 654 (N.D. Tex. 2001)). See also *McKenzie v. BellSouth Telecomm., Inc*., 219 F.3d 508, 513 (6th Cir.2000) ("a motion to dismiss does not establish the law of the case for purposes of summary judgment, when the complaint has been supplemented by discovery."). See *Zarnow v. City of Wichita Falls, Tex*, 614 F.3d 161, 171 (5th Cir. 2010) (district court could decide second summary judgment on same issues as previous summary judgment).
[48] *Constance Joy II, LLC*., (quoting *Frakes v. Masden*, H-14-1753, 2015 WL 1637893, at *2 n.1 (S.D. Tex. Apr. 13, 2015), aff'd sub nom. Frakes v. Ott, 668 F.App'x 130 (5th Cir. 2016).

force was justified; Officer Burmaster shot at (but did not strike) humans on two other occasions during his tenure with NOPD (since 2000); and Officer Burmaster's used force 27 other times but none involved shooting a firearm.[49] In addition, Officer Burmaster was referred to the NOPD's Public Integrity Bureau for potential policy violations for uses of force only seven times; each of these times his use of force was determined to be "justified" or "authorized."[50] None of the other incidents cited by Plaintiff concerns use of force.[51]

Thus, Plaintiffs fail to demonstrate a "pattern," and their Monell claim based on supervision should be dismissed. Plaintiffs' attempt to rely on the Court's previous Order is unavailing. The previous Order was decided on a different standard than is applicable for the instant Motion. Moreover, Plaintiffs fail to rebut the Fifth Circuit authority cited by Defendants which requires (1) similarity and numerosity of prior incidents in order to establish a pattern and (2) a demonstrated connection between the background of the individual and the specific violation in order to show that the officer was "highly likely to inflict the particular type of injury [he] suffered."[52] In this case, there is no similarity and there is no numerosity. A pattern simply does not exist.

Plaintiffs rely on the "opinion" of their designated expert, James Crosby, who says that "the disciplinary history of Officer Burmaster" shows that the NOPD "wrongly retained Burmaster[.]"[53] However, at his deposition James Crosby could not even remember what documents he relied on in formulating this opinion. In addition, his background and training did not sufficiently indicate that he had any expertise in managing or disciplining law enforcement officers. The Defendants have filed a Motion to Exclude the Opinion of James Crosby based on

---

[49] *Id.*
[50] *Id.*
[51] See, e.g., R. Doc. 214, p. 18 (asserting various non-force incidents).
[52] See R. Doc. 208-1, footnote 123; p. 23 (quoting *Gomez v. Galman*, 18 F.4th 769778 (5th Cir. 2021)).
[53] *Id.*, p. 19.

this demonstrated lack of qualifications and his failure to provide a proper foundation for his opinion.[54] The Motion to Exclude is pending; James Crosby's opinion should be disregarded for purposes of Plaintiff's Opposition to this MSJ.

### E. RATIFICATION

Plaintiffs contend that the MSJ should be denied because "one of Plaintiffs' *Monell* theories [is] ratification."[55] However, Plaintiffs' Second Amended Complaint fails to allege a ratification theory, so it is uncertain how Plaintiff will get this theory before the jury.[56] Plaintiffs have known about this theory since 2022 but have never sought to include it in their operative complaint.[57]

The theory is, in any event, without merit. The United States Supreme Court held that "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."[58] However, the Fifth Circuit limited the theory of ratification to "extreme factual situations."[59] For example, "pouring" gunfire into a truck and killing an innocent occupant will warrant ratification.[60] However, shooting a fleeing suspect in the back will not warrant ratification.[61]

This case does not involve an extreme situation. A shooting of an aggressive dog is far different from pouring gunfire into an occupied vehicle or even shooting a fleeing suspect (a human being) in the back. Under the facts of this case, there is no viable ratification claim. Plaintiffs' hypothetical theory of ratification provides no basis to deny Defendants' MSJ.

---

[54] R. Doc. 209.
[55] R. Doc. 214, p. 20.
[56] R. Doc. 60, para. 137 ("As a result of the City's actions and omissions, including failure to train, supervise and discipline Burmaster, Plaintiffs' constitutional rights were violated.").
[57] See R. Doc. 214, p. 20 ("In 2022 … ratification").
[58] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 108 S. Ct. 915, 99 L.Ed.2d 107 (1988),
[59] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009) (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir.1998)) (knee strike to plaintiff's thigh was not extreme).
[60] *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir.1985).
[61] *Snyder*, 142 F.3d at 798

Respectfully submitted:

*/s/ James M. Roquemore*
**JAMES M. ROQUEMORE, LSB #40035**
ASSISTANT CITY ATTORNEY
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET, SUITE 5E03
NEW ORLEANS, LOUISIANA 70112
TEL: (504) 658-9800
FACSIMILE: (504) 658-9868
James.Roquemore@nola.gov
*Counsel for Derrick Burmaster and the City of New Orleans*