# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and | * | CIVIL ACTION |
| JULIA BARECKI-BROWN | * | |
| | * | DOCKET NUMBER: 22-00847 |
| VERSUS | * | |
| | * | SECTION: L |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | HONORABLE ELDON E. FALLON |
| NEW ORLEANS | * | |
| | * | DIVISION: 4 |
| | * | |
| | * | HONORABLE KAREN WELLS ROBY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION [R. DOC. 214] TO MOTION FOR SUMMARY JUDGMENT [R. DOC. 208]

NOW INTO COURT, come the City of New Orleans (the "City") and Derrick Burmaster ("Defendants") who respectfully submit this Reply to Plaintiff's Opposition [R. Doc. 214] (the "Opposition") to Defendants' Motion for Partial Summary Judgment [R. Doc. 208] (the "MSJ").

### A.  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Defendants, in their MSJ, point out that Plaintiffs fail to produce evidence of sufficient psychic trauma for their negligent infliction of emotional distress ("NEID") claim.[1] Particularly, Plaintiffs provides no documentation of mental health treatment for any alleged psychic injury.[2] Plaintiffs response is that "this Court already denied a motion for summary judgment on that claim."[3] However, this Court denied summary judgment only as to **Plaintiffs'** motion.[4] Defendant Burmaster did not seek summary judgment on this issue.[5]

---

[1] See *Doerr v. Mobil Oil Corp*, 04-1789, (La. App. 4 Cir. 6/14/06), 935 So.2d 231, writ denied, 06-1760 (La. 11/3/06).
[2] See *Barrios v. Safeway Ins. Co.*, 2011-1028 (La. App. 4 Cir. March 21, 2012), 97 So.3d 1019, 1025 (damage award of $10,000 for killing a pet dog, requiring plaintiffs to prove that they "suffered psychic trauma in the nature of or similar to a physical injury[.]"). Plaintiffs do not contend that they are entitled to damages for "bystander liability" based on La. Code Civ. Proc. 2315.6. See R. Doc. 214, pp. 6-7.
[3] R. Doc. 214, p. 1 (citing R. Doc. 162).
[4] R. Doc. 162, p. 14 ("Plaintiffs also ask for summary judgment on their state law claims[.] … it would be inappropriate to grant summary judgment on these claims.").
[5] R. Doc. 105-1.

Plaintiffs also contend that Defendants did not include "any facts related to the NIED claim" in their statement of material facts.[6] However, Defendants' MSJ with respect to NEID is a "no-evidence" MSJ. "When the non-movant for summary judgment bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting a trial."[7] Here, Defendants pointed out that the only documented contact that Plaintiffs had with a mental health professional occurred through the efforts of their attorney in this case, for purposes of this litigation. Defendants failed to document any follow-up to the evaluation done by their hired litigation expert or other mental health services.[8] The burden has shifted to Plaintiffs to demonstrate an issue of material fact for this element.

"When the movant has made a properly supported motion for summary judgment by demonstrating an absence of evidence to support the non-movants' case," the non-movants must "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'."[9] Further, Local Rule 56.2 requires that a party opposing a motion for summary judgment "include a *separate* and concise statement of the material facts."[10] Plaintiffs failed to include any facts regarding NEID in a separate statement.[11] Per Plaintiffs, failure to follow the rules warrants ruling against the offending party.[12]

---

[6] R. Doc. 214, p. 3 ("Defendants' motion should be denied on that basis alone as it relates to the NIED claim.").
[7] *Klocke v. University of Texas at Arlington*, 938 F.3d 204 (5th Cir. 2019), cert. denied, 140 S. Ct. 1268, 206 L. Ed. 2d 256 (2020).
[8] See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) ("burden on the moving party may be discharged by … pointing out … an absence of evidence[.]").
[9] *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).
[10] E.D. Local Rule 56.2 (emphasis added).
[11] See R. Doc. 214-1.
[12] See R. Doc. 214, p. 3 ("Defendants' motion should therefore be denied with regard to NIED given these procedural problems"); R. Doc. 214-1 ("Defendants' motion should be denied on that basis alone as it relates to the NIED

Regarding the merits of NEID, Plaintiffs concede that they must prove "the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious."[13] The Louisiana Supreme Court explained, "given the nature of such claims, a trier of fact must be heedful of the goal of preventing spurious claims, and that not every occasion that causes some harm yields concomitant liability and compensatory damages."[14] The Louisiana Fourth Circuit, in a case involving the killing of a pet dog, held that a pet owner must show that he or she "suffered psychic trauma in the nature of or similar to a physical injury as a direct result of the incident itself[.]"[15]

*Spencer* is illustrative. That involved a refinery explosion near the plaintiffs' houses. The plaintiffs were awakened by the shock wave of the explosion, which broke windows. One plaintiff, the mother of small children, described being "anxious and concerned about her physical safety and that of her children as well as potential exposure to chemicals" as well as "possible adverse health effects from exposure to chemical."[16] Another plaintiff, a child, expressed being "scared and anxious as a result of the explosion" and later, "anxious and concerned."[17] Another plaintiff reported being "shaky and very scared" following the explosion.[18] However, the Court held that no plaintiff put forth enough evidence to show "an especial likelihood of genuine and serious mental distress" as a guarantee the claim was not spurious.[19]

---

claim."). To be clear, because Plaintiffs failed to abide by Local Rule 56.2, Defendants object to the evidence cited by Plaintiffs in their Opposition, R. Doc. 208-1, *supra* footnotes 9-26.

[13] *Spencer v. Valero Refining Meraux, L.L.C.*, 2022-00469 (La. 1/27/23), 356 So.3d 936.

[14] *Id.*, 356 So.3d at 949.

[15] *Barrios v. Safeway Ins. Co.*, 2011-1028 (La. App. 4 Cir. March 21, 2012), 97 So.3d 1019, 1025 (damage award of $10,000 for killing a pet dog). Plaintiffs, in their Opposition, have stated that they agree with Defendants, albeit in a backhanded way, that they are not entitled to damages for "bystander liability" based on La. Code Civ. Proc. 2315.6. See R. Doc. 214, pp. 6-7 (Defendants use the wrong standard for NEID); R. Doc. 208-1 (bystander liability is not available under C.C.P. 2315.6 for the death of a pet dog).

[16] *Id.*, 356 So.3d at 941.

[17] *Id.*

[18] *Id.* at 944.

[19] *Id.*, (citing *Moresi v. State Through Dep't of Wildlife & Fisheries*, 567 So.2d 1081, 1096 (La. 1990)).

Similarly, here, Plaintiffs merely offer an opinion of a counsellor hired by their lawyer, based on Plaintiffs' self-reported symptoms. Plaintiffs failed to offer proof that followed the expert's recommendations. Thus, Plaintiff has not demonstrated a "serious" mental disturbance under the as that term is used in *Spencer* or *Barrios*. Their NEID claim should be dismissed.

### B. DISCRETIONARY IMMUNITY

Plaintiffs' analysis of discretionary immunity under Louisiana Revised Statute § 9:2798.1 is flawed in several respects. Initially, Plaintiffs fail to recognize that "[u]nder Louisiana law, state public officials are presumptively entitled to immunity from liability stemming from 'discretionary acts' that are 'within the course and scope of their lawful powers and duties.'"[20] The burden is upon Plaintiffs to rebut this presumption.

To rebut the presumption, Plaintiff "must raise a genuine issue of material fact as to whether [the NOPD's] actions constituted 'criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.'"[21] The immunity "does not shield the state or its officials from liability for 'legal fault or negligent conduct at the operational level, but only confers immunity for policy decisions.'"[22] "Whether the conduct at issue falls within the general protections of the statute or is proscribed by the statute's exceptions 'is purely a question of law and is within the province of the trial court to determine at the summary judgment stage.'"[23]

Under Louisiana law, in order to determine if immunity applies, courts apply the two-step test provided in *Berkovitz v. U.S.*, 486 U.S. 531, 108 S. Ct. 1954 (1988):[24]

---

[20] *Larpenter v. Vera*, No. 22-30572, 2023 WL 5554679, at *7 (5th Cir. Aug. 29, 2023) (quoting La. Rev. Stat. § 9:2798.1(B)).

[21] *Larpenter*, 2023 WL 5554679, at *7 (quoting La. Rev. Stat. § 9:2798.1(C)(2)).

[22] *Reeder v. Ducote*, No. 19-00807, 2021 WL 2292921, at *1 (W.D. La. June 4, 2021) (quoting *Foster v. Jeter*, No. 18-01178, 2019 WL 3063597, at *4 (W.D. La. July 10, 2019)).

[23] *Romback v. Culpepper*, 20-30554, 2021 WL 2944809, *9 (5th Cir. 2021) (citing *Simmons v. Hughes*, 2019-1389, p. 13 (La. App. 1 Cir. 11/25/20), 316 So.3d 488, 497 (citations omitted), reh'g denied (Jan. 4, 2021).

[24] *Magnolia Island Plantation, LLC v. Lucky Family, LLC*, 18-1526, 2024 WL 4884477, *2 (W.D. La. Nov. 25, 2024)

> "First, if a statute, regulation, or policy prescribes a particular course of action, there is no choice or discretion involved, and the immunity does not apply.
>
> However, when discretion is involved, the court must then determine whether that discretion is the kind that is shielded by the statutory immunity, that is, discretion grounded in social, economic or political policy."[25]

State and federal courts regularly interpret this test to mean "that Louisiana's discretionary immunity statute immunizes officers from state-law negligent training, hiring, supervision, and retention claims."[26] The analysis in *Roberts v. City of Shreveport* applies to the instant case:

> [The Chief] had a wide variety of options for training officers under his command; no law, regulation, or policy of the State of Louisiana explicitly directed his course of action. Further, his training and supervisory decisions are grounded in policy considerations; he had to assess the community's needs, contemplate the types of situations his officers would face, and ultimately reconcile his training decisions with the department's budget. Because his actions meet both prongs of the discretionary immunity test, [the Chief] is immune from the plaintiffs' state law tort claims.[27]

Here, as in *Roberts*, Defendants' training and supervisory decisions are grounded in policy considerations based on the needs and unique circumstances of the City of New Orleans, the NOPD police force, and the City budget. These are policy decisions, not operational decisions.

Plaintiffs' reliance upon *Pierre v. Wellpath*[28] is unavailing. In *Pierre*, the plaintiff was subjected to sexual assault and harassment while providing medical care at the Orleans Justice Center. The plaintiff sued the Sheriff, among others, alleging a state law claim of failing to train

---

[25] *Id.* (quoting Addington v. Wells, No. 22-30220, 2023 WL 2808466, at *5 (5th Cir. Apr. 6, 2023).
[26] *Pellerin v. Lafayette Consol. Gov't*, No. 20-01380, 2023 WL 8814664, at *11 (W.D. La. Dec. 20, 2023) (collecting cases). *Pellerin* cites the following cases (parentheticals are as provided by the court): *Roberts v. City of Shreveport*, 397 F.3d 287, 298 (5th Cir. 2005). (La. Rev. Stat. 9:2798.1(B) renders police chief immune from state-law claims premised on his "training officers under his command"); *Smith v. Lafayette Parish Sheriff's Dep't*, 2003-517, p. 7 (La. App. 3 Cir. 2004), 874 So. 2d 863, 868 (sheriff's "hiring/retention policy was a discretionary act" for purposes of immunity under La. Rev. Stat. 9:2798.1); *Hoffpauir v. Columbia Cas. Co.*, No. 12-403, 2013 WL 5934699, at *12 (M.D. La. Nov. 5, 2013) ("[T]he hiring, training, and supervision policy of the Livingston Parish Sheriff's Department is a discretionary function."); *Skinner v. Ard*, 519 F. Supp. 3d 301, 321 (M.D. La. 2021) (sheriff's "duties to train, supervise, and hire are not prescribed by law or regulation, and these duties are grounded in policy considerations").
[27] *Roberts*, 397 F.3d at 296.
[28] *Pierre v. Wellpath*, 21-1043, 2022 WL 226393 (E.D. La. June 23, 2022).

and supervise employees. Importantly, in *Pierre*, the plaintiff specifically alleged that "the Sheriff had a mandatory duty to train and supervise deputies in accordance with certain officer training requirements described in La. Rev. Stat. §§ 40:2404.2 and 40:2405.8 and that the Sheriff was negligent in regards to this duty to train and supervise."[29] The Court denied the defendants' Rule 12(b)(6) motion to dismiss, holding that the statutes "mandate officer training requirements," including that "officers [] be trained for a certain number of hours."[30] The Court reasoned that the defendants did not have discretion as to the training requirements of La. Rev. Stat. §§ 40:2404.2 and 40:2405 and that discovery was needed regarding policy considerations.

In contrast, Plaintiffs, do not allege that Defendants failed to meet any training requirements contained in Sections 40:2404.2 or 40:2405.8; in fact, these statutes are not mentioned in the Second Amended Complaint.[31] Further, Plaintiffs do not allege that Defendants failed to train for a particular number of hours. Rather, Plaintiffs allege that the NOPD's training should have included components relating to interactions with dogs. There is no statute that requires law enforcement to be trained regarding dog interactions. The content of NOPD's training as to police dog interactions is a discretionary decision rooted in policy.[32]

Finally, Plaintiffs contend that the NOPD's creation of the October 2019 DTB training component falls under Section 2798.1(C)(2), which provides that immunity is not available to acts or omissions which constitute "criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct."[33] However, the NOPD's actions here were plainly not reckless.[34]

---

[29] *Id.*, at p. 4.
[30] *Id.*
[31] See R. Doc. 60, ¶¶ 94-101. Nor is the Federal Consent Decree.
[32] Plaintiff cites *Chavis v. Lawrence*, 23-cv-1129, R. Doc. 36 at * 24 M.D. la. Jan. 21, 2024). R. Doc. 214, supra footnote 44. However, this citation is to a pleading, a "Plaintiffs' Response in Opposition to Defendant Troy Larence Jr.'s Motion to Dismiss," filed in *Chavis v. Larence*. This pleading is not competent authority for any purpose.
[33] La. R.S. § 9:2798.1(C)(2).
[34] See *Mariana v. Magnolia Auto Transport, LLC*, App. 5 Cir.2022, 341 So.3d 1281, 21-447 (La. App. 5 Cir. 5/26/22) (in order to lose immunity, conduct must amount to gross negligence).

### C. <u>TRAINING</u>

Defendants, in their MSJ, presented evidence that NOPD trains its officers training regarding dog interactions through (1) in-service training; (2) a NOPD Professional Standards and Accountability Bureau ("PSAB") directed training bulletin ("DTB") training in May of 2017 and (3) a PSAB DTB training in October of 2019.[35] The evidence shows that NOPD trains its officers as to evaluation of potentially dangerous dogs, use of force, and community resources to contact. This evidence demonstrates the adequacy of the training and absence of deliberate indifference.

Plaintiffs contend that Burmaster's academy training "was apparently so insufficient" that Officer Burmaster was "<u>instructed to forget all training from that era</u>."[36] Plaintiffs conclude that "the City did not provide any new training on the topic – for 17 years."[37] However, this conclusion is absurd; rather, it is more likely that Officer Burmaster was told to "forget" prior training while he was receiving new training that improved on the prior training.

Plaintiffs assert that "the Court has already opined on [the NOPD's] training."[38] However, the Court merely addressed the adequacy of Plaintiffs' allegations in the context of a Motion to Dismiss. As this Court noted, "[i]n the context of municipal liability, only minimal factual allegations are required at the motion to dismiss stage."[39] This MSJ requires a different standard.[40]

Finally, Plaintiffs cite a recommendation of the NOPD Use of Force Review Board that Officer Burmaster receive "De-escalation training … ASAP."[41] However, this recommendation

---

[35] R. Doc. 208-1, p. 14-15.
[36] R. Doc. 214, p. 13 (emphasis in original).
[37] *Id.*
[38] R. Doc. 214, p. 15.
[39] *Id.* (citing *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842-43 (S.D. Tex. 2011)).
[40] Compare *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) with *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[41] R. Doc. 214, p. 15. Defendants object to the use of this evidence because conclusions and recommendations of the NOPD Use of Force Review Board are subsequent remedial measures which are inadmissible pursuant to Fed. R. Evid. 407. See NOPD Operations Manual Ch. 1.3.7, Use of Force Review Board. Available at

does not support Plaintiffs' argument that NOPD's training was inadequate; it speaks to ways to improve the NOPD and its officers. According to NOPD Operations Manual, Ch. 1.3.7, the NOPD Use of Force Review Board "serves as a quality control mechanism to ensure timely reviews of all serious use of force investigations to determine the appropriateness of the investigative findings, and to quickly appraise use of force incidents from a tactics, ***training***, policy, and agency improvement perspective."[42] Given NOPD's commitment to quality control, it cannot be said that the NOPD is deliberately indifferent with respect to training (or supervision) of its police officers.

### D.    SUPERVISION

Plaintiffs suggest that this Court's prior Order on Defendants' Motion to Dismiss is controlling authority.[43] However, "[t]he standards for motions to dismiss and for motions for summary judgment are entirely different."[44] The law-of-the-case rule does apply as between a motion to dismiss and a motion for summary judgement where, as here, the summary judgment is supported by evidence.[45]

Further, in their Opposition, Plaintiffs fail to address the MSJ evidence that shows that no pattern exists concerning Officer Burmaster's prior conduct and the shooting of Plaintiffs' dog. The evidence shows merely that Officer Burmaster lawfully shot a dog nine years previously; he shot at (but did not strike) humans on two other occasions; and he used force 27 other times but

---

https://nola.gov/nola/media/NOPD/Policies/Chapter-1-3-7-Use-of-Force-Review-Board-EFFECTIVE-11-15-19-(1).pdf (last accessed April 29, 2025) (outlining the remedial purpose of the Board).

[42] NOPD Operations Manual Ch. 1.3.7 (emphasis added).

[43] See R. Doc. 214, p. 17 ("the Court has already weighed in on this issue."); R. Doc. 115.

[44] *Constance Joy II, LLC*., (quoting *Frakes v. Masden*, H-14-1753, 2015 WL 1637893, at *2 n.1 (S.D. Tex. Apr. 13, 2015), aff'd sub nom. *Frakes v. Ott*, 668 F.App'x 130 (5th Cir. 2016).

[45] *Constance Joy II, LLC v. Stewart & Stevenson FDDA LLC*, 2024 WL 4008094 (S.D. Tex. Aug. 30, 2024) ("The law-of-the-case doctrine does not bar a court from reaching a conclusion at summary judgment that is different from a ruling at the motion-to-dismiss stage."). See also *McKenzie v. BellSouth Telecomm., Inc*., 219 F.3d 508, 513 (6th Cir.2000) ("a motion to dismiss does not establish the law of the case for purposes of summary judgment, when the complaint has been supplemented by discovery."). See *Zarnow v. City of Wichita Falls, Tex*, 614 F.3d 161, 171 (5th Cir. 2010) (district court could decide second summary judgment on same issues as previous summary judgment).

none involved shooting a firearm.[46] In addition, Officer Burmaster was investigated for potential policy violations for uses of force seven times, but none was determined to be unlawful; None of the other incidents in which he was investigated for policy violations involved use of force.[47]

Plaintiffs ignore the robust Fifth Circuit authority cited by Defendants which requires (1) similarity and numerosity of prior incidents in order to establish a pattern and (2) a demonstrated connection between the background of the individual and the specific violation in order to show that the officer was "highly likely to inflict the particular type of injury [he] suffered."[48] In this case, there is no similarity and there is no numerosity.

In addition, Plaintiffs rely on the "opinion" of an "expert," James Crosby, who opines that "the disciplinary history of Officer Burmaster" shows that the NOPD "wrongly retained Burmaster[.]"[49] However, James Crosby does not know what documents he relied on in formulating this opinion. In addition, his background and training are not sufficient to establish any expertise in managing or disciplining law enforcement officers. The Defendants have filed a motion to exclude his opinion, which is pending.[50]

### E.  RATIFICATION

Plaintiffs contend that "one of Plaintiffs' *Monell* theories [is] ratification."[51] However, Plaintiffs' Second Amended Complaint fails to allege such a theory.[52] This theory is without merit. The United States Supreme Court held that "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality

---

[46] R. Doc. 208-1, pp. 20-24.
[47] *Id.*
[48] See R. Doc. 208-1, footnote 123; p. 23 (quoting *Gomez v. Galman*, 18 F.4th 769778 (5th Cir. 2021)).
[49] *Id.*, p. 19.
[50] R. Doc. 209.
[51] R. Doc. 214, p. 20.
[52] R. Doc. 60, para. 137.

because their decision is final."[53] However, the Fifth Circuit limited this theory to "extreme factual situations."[54] For example, "pouring" gunfire into a truck and killing an occupant will warrant ratification.[55] However, shooting a fleeing suspect in the back will not warrant ratification.[56]

This case is not an extreme situation. Shooting an aggressive dog is different from pouring gunfire into an occupied vehicle or shooting a fleeing suspect. Under these fact, Plaintiffs' hypothetical theory of ratification provides no basis to deny Defendants' MSJ.

Respectfully submitted:

*/s/ James M. Roquemore*
**JAMES M. ROQUEMORE, LSB #40035**
ASSISTANT CITY ATTORNEY
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET, SUITE 5E03
NEW ORLEANS, LOUISIANA 70112
TEL: (504) 658-9800
FACSIMILE: (504) 658-9868
James.Roquemore@nola.gov
*Counsel for Derrick Burmaster and the City of New Orleans*

---

[53] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 108 S. Ct. 915, 99 L.Ed.2d 107 (1988),
[54] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009) (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir.1998)) (knee strike to plaintiff's thigh was not extreme).
[55] *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir.1985).
[56] *Snyder*, 142 F.3d at 798