## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DEREK BROWN and** | * | **Civil Action No. 22-00847** |
| **JULIA BARECKI-BROWN** | * | |
| | * | **SECTION: L** |
| **VERSUS** | * | |
| | * | **HONORABLE ELDON E. FALLON** |
| **DERRICK BURMASTER, SHAUN** | * | |
| **FERGUSON, and the CITY OF** | * | **DIVISION: 4** |
| **NEW ORLEANS** | * | |
| | * | **HONORABLE KAREN WELLS ROBY** |
| | * | |

*****************************************************************************

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF SERGEANT DAVID DUPLANTIER

Defendants have listed a current City employee, Sergeant David Duplantier, as a proposed expert to testify about the "level of force [Officer Burmaster] used and its reasonableness."[1]

The problem with Sgt. Duplantier's expert testimony, however, is that he applies the wrong legal analysis to determine reasonableness. In his deposition, Duplantier testified that his reasonableness analysis turned in large part on what Officer Burmaster *thought* and *believed* – *i.e.*, a *subjective* analysis. (Duplantier agreed that his assessment of the danger of a dog was based on the "subjective viewpoint" of the officer).

That may be an appropriate analysis for internal police disciplinary decisions. But the Fifth Circuit has been clear that the relevant standard for a constitutional violation requires an *objective* analysis.[2]

---

[1] R. Doc. 198.
[2] *See Ramirez v. Killian*, 113 F. 4th 415, 426 (5th Cir. 2024) (explaining that "relevant legal rule" involves requirement that "seizure be objectively reasonable.") (quoting *Stephenson v. McClelland,* 632 F. App'x 177, 184 (5th Cir. 2015) (unpublished)).

Because Sgt. Duplantier's opinions regarding Burmaster's use of force are based on his legally-inapposite "subjective reasonableness" standard, his opinions are irrelevant and would mislead the jury. They should therefore be excluded.

Sgt. Duplantier's opinions should also be excluded because he improperly opines on the ultimate issue to be decided by the jury—namely, whether Officer Burmaster's shooting of Apollo was "reasonable" under a totality of the circumstances.

### A.   Background

On their witness list, Defendants disclosed that "Sgt. Duplantier will testify as a … non-retained expert regarding … the level of threat, and the level of force justified his review of the incident made the basis of this lawsuit … the level of force used *and its reasonableness*."[3]

At his deposition, Sgt. Duplantier detailed the expert opinions he plans to render at trial:

1. When asked by Officer Burmaster's counsel about whether Officer Burmaster's decision to shoot Apollo "was a reasonable use of force," Sgt. Duplantier opined that it was in fact "reasonable":

   > Burmaster's counsel:   "[I]t was your determination that this was a *reasonable* use of force?"
   >
   > Sgt. Duplaintier:   Yes, sir.[4]

2. Sgt. Duplantier elaborated that "I didn't find it *unreasonable* for him to believe that the dog was attacking him."[5]

3. Sgt. Duplantier further elaborated:

   > Sgt. Duplantier:   "As police officers, our decisions to use force and the amount of force used must be based on *reasonableness*. That *reasonableness* is considered when determining if a situation is

---

[3] R. Doc. 199 at 1 (emphasis added).
[4] Duplantier Deposition, attached hereto as Ex. 1, at 101 (emphasis added).
[5] Ex. 1, at 99 (emphasis added).

#103886561v1

2

>> considered an imminent threat to ourselves or others. *Though there may be officers that may have addressed the charging animal in a different fashion, Officer Burmaster's decision to use lethal force towards the dog falls within reason.*"

> Burmaster's counsel: All right. And those comments are still your opinion today?
>
> Sgt. Duplantier: Yes, sir.[6]

4. When asked about evaluating an officer's decision to use lethal force, Sgt. Duplantier emphasized that "the biggest thing is, is *the key word is 'reasonableness*.'"[7]

5. When asked about how he evaluates an officer's use of lethal force, Sgt. Duplantier explained that, when conducting his "reasonableness" analysis, he factors in the particular officer's subjective state of mind: "So when we talk about reasonableness and threat levels, it also falls to the mind of that officer…."[8]

6. Sgt. Duplantier further elaborated on his consideration of subjective factors when evaluating an officer's use of force against animals:

> Q. … So there's some subjective component of –
>
> A. Yes.
>
> Q. --this decision-making matrix?
>
> A. Yes.
>
> Q. Okay. And is it correct that NOPD trains their officers that part of the use of force decision-making process is based on that particular officer's subjective thoughts, experience, comfort level with animals, etc.?
>
> A. For the most part, yes.[9]

---

[6] Ex. 1, at 103 (emphasis added).
[7] Ex. 1, at 15-16 (emphasis added).
[8] Ex. 1, at 16-17.
[9] Ex. 1, at 17-18.

7. When asked about what factors were relevant to him in evaluating whether the use of lethal force is appropriate on a dog, Sgt. Duplantier further explained:

> Q. Okay. But not the breed of the dog? Does that factor in?
>
> A. Yeah. I mean -- and once again, it goes to -- I'm -- I'm going to say, for me, it would be a factor.
>
> Q. Yeah.
>
> A. But for some people, they don't -- they just see a dog. They see an animal. So some people's fear level when it comes to animals -- like people with horses; they won't get near them. So for me, the breed would be a factor. For some people -- I can't say for everyone -- that -- that's going to be taken into consideration.
>
> Q. It's one of the *subjective components of this*, right, based on your own personal experiences, thoughts --
>
> A. Yes, sir.
>
> Q. -- beliefs, and that kind of stuff? *And you train the officers that it's fine to factor in your subjective beliefs* --
>
> A. *Yes, sir.*
>
> Q. *-- into the overall decision-making rubric. Right?*
>
> A. *Yes.*
>
> Q. *There's no reason that they shouldn't, right?*
>
> A. *No, there's no reason they shouldn't.*
>
> Q. What about the size of the dog?
>
> A. And -- and I'm going to go back to my answer on the first question. For me, the size would take -- or play a big factor in it. You know, I -- the last thing I want to do is hurt any animal. But if kicking the dog would suffice, then I would kick the dog. If it -- if I thought it was a credible threat to me. I took it as a credible threat, a potential bite.
>
> Q. That would work really well for a small dog, right --
>
> A. A small dog.

#103886561v1

4

> Q. -- kicking?
>
> A. Like, a small. But then again, like I said, you -- a person's -- when we're going back to talking about use of force and *that person's interpretation to the threat level*, as long as it stays within reason -- *so some people, even though it may be a small dog, it still may be a very credible threat to them.*
>
> Q. *Based on their subjective viewpoint, right?*
>
> A. *Yes.*
>
> . . .
>
> Q. All right. *So if I'm an officer and I've been bitten by small dogs, puppies before, then I'm allowed to factor that in when I decide whether I use lethal force or not. Right?*
>
> A. It -- *it is a factor* but not --
>
> Q. Yeah. Not --
>
> A. -- the only -- not the only factor. *It is a factor*.
>
> Q. *It's part of the equation*?
>
> A. *Yes, sir*.
>
> . . .
>
> Q. If I have this strange ongoing fear for the last ten years that small dogs are going to bite my genitalia, am I allowed to consider that in the overall analysis?
>
> A. ... I'm going to say consider it in the overall analysis.[10]

8. As further evidence that his opinions regarding Burmaster's shooting of Apollo were based on a subjective analysis, Sgt. Duplantier explained:

> Q. You would have shot that 22-pound puppy in that situation?
>
> A. Honestly, I'm going to give you an answer that's for you and against you. I don't know. I may have. I'm more likely,

---

[10] Ex. 1, at 35-38 (emphasis added).

#103886561v1

>         having dealt with dogs all my life -- more likely to maybe
>         try and kick at the dog.[11]

In sum, Sgt. Duplantier's opinion that Officer Burmaster's use of lethal force on Apollo was "reasonable" is based on his consideration of how Officer Burmaster subjectively viewed the alleged threat that Apollo posed in light of Burmaster's own fears and past experience ("*Though there may be officers that may have addressed the charging animal in a different fashion*, Officer Burmaster's decision to use lethal force towards the dog falls within reason."[12]). Such considerations, however, run counter to the law in the Fifth Circuit.

### B.  Law and Argument

"Under *Daubert*, courts, as 'gatekeepers,' are tasked with making a preliminary assessment of whether expert testimony is both relevant and reliable. The party offering the expert opinion must show by a preponderance of the evidence that the expert's testimony is reliable and relevant." *Joseph v. Doe*, 2021 U.S. Dist. LEXIS 106081, at *3-4 (E.D. La. June 7, 2021). "[N]on-retained experts . . . are no different than any other expert for purposes of Rule 702; before proffering expert testimony, they must withstand *Daubert* scrutiny like everyone else." *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, 2016 U.S. Dist. LEXIS 73985, at *39 (E.D. La. June 7, 2016) (citing *Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 704 (7th Cir. 2015)).

### 1.  Expert testimony that misleads the jury as to the applicable legal standard is inadmissible.

Rule 702 requires that expert testimony be both relevant and reliable, and it must help the jury understand the evidence or determine a fact in issue. Testimony that misleads the jury as to the applicable legal standard fails to meet these requirements, and is further inadmissible under

---

[11] Ex. 1, at 145.
[12] Ex. 1, at 103.

Rules 401 and 403, which mandate that only relevant evidence is admissible, and only then if its probative value outweighs the danger of misleading the jury or confusing the issues.

"An expert cannot testify to something that is not relevant to the present controversy." *Noskowiak v. Bobst Sa*, 2005 U.S. Dist. LEXIS 19536, at *14-15 (E.D. Wis. Sep. 2, 2005). "Part of the Court's gatekeeping function is to exclude largely irrelevant evidence." *Id.* (citing Fed. R. Evid. 402). An expert's "testimony should not be a source of confusion by invoking [an erroneous] legal standard, which entails a different set of issues than those operative in the present controversy." *Id*. Therefore, an expert whose opinion is premised on legal standards "not relevant in the present case" or who "invoke[s] an incorrect legal standard to show how he reached his conclusions" should be excluded. *Id.* (excluding expert who "employed a methodology (risk/utility) that relies upon an incorrect legal standard."); *see also Douglas v. Chem Carriers Towing, LLC*, 431 F. Supp. 3d 830, 839 (E.D. La. 2019) (excluding expert opinions premised on "inapplicable regulations.").

Here, as shown above, Sgt. Duplantier's expert opinions are based on his consideration of "subjective" factors leading to Officer Burmaster's decision to use lethal force on Apollo. However, not only are such subjective factors irrelevant to the use of force analysis, their consideration is expressly disallowed by the Fifth Circuit. As the Court is aware, the Fifth Circuit "has held that the killing of a dog can constitute a seizure within the meaning of the Fourth Amendment," and has clarified that "[t]he Fourth Amendment requires that a seizure be *objectively reasonable*." *Ramirez v. Killian*, 113 F. 4th 415, 426 (5th Cir. 2024) (emphasis added) (explaining that the "relevant legal rule" was stated in *Stephenson v. McClelland*, 632 F. App'x 177, 184 (5th Cir. 2015) (unpub.) (citing *Grant v. City of Houston*, No. 14-20653, 625 F. App'x 670, 2015 U.S.

#103886561v1

App. LEXIS 16240, 2015 WL 5255102, at *3 (5th Cir. 2015); *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

As the Fifth Circuit has further emphasized, an officer's use of force may only be evaluated "objectively," and "subjective" factors may not be considered:

> Assessing the reasonableness of a police officer's use of force involves 'a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake.' *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)). … *We judge the reasonableness of an officer's conduct 'objectively,' that is, without reference to the subjective intent or motivation that underlies the officer's conduct.*

*Lytle v. Bexar Cty. Tex.*, 560 F.3d 404, 411 (5th Cir. 2009) (emphasis added); *see also Skinner v. Ard*, 517 F. Supp. 3d 586, 600 (M.D. La. 2021) (noting that the use of deadly force against a household pet is reasonable only "if the pet poses an imminent threat to the law enforcement officer's safety, viewed from the perspective of an *objectively reasonable* officer") (emphasis added) (citing *Bletz v. Corrie*, 974 F.3d 306, 310 (3d Cir. 2020); *Id.* at 601 ("[K]illing the dog when he was no longer a threat was *objectively unreasonable* and plainly incompetent."); *Sonnier v. Ackal*, 2017 U.S. Dist. LEXIS 112386, at *6-7 (W.D. La. June 27, 2017) ("The Fourth Amendment requires that a seizure be *objectively reasonable*. Therefore, after a determination has been made that there was a seizure, whether the Amendment was in fact violated. . . requires determining if the seizure was reasonable. In determining whether the seizure — in this case, the killing of the dog — was *objectively reasonable*, the court must examine the totality of the circumstances, balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.") (emphasis added) (internal quotations and citations omitted); *Kincheloe v. Caudle*, 2009 U.S. Dist. LEXIS 96371, at *19 (W.D. Tex. Oct. 16, 2009) ("Chief Caudle's actions were only constitutional if it is

determined that the killing of Buddy was *objectively reasonable* under the circumstances.") (emphasis added); *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 568 (6th Cir. 2016) ("[A] police officer's use of deadly force against a dog … is reasonable under the Fourth Amendment when, given the totality of the circumstances and viewed from the perspective of an *objectively reasonable* officer, the dog poses an imminent threat to the officer's safety.") (emphasis added).

Therefore, when it determines whether Officer Burmaster violated the constitution when he used lethal force on Apollo, the jury will need to determine whether his conduct was "objectively reasonable" under the totality of the circumstances. Sgt. Duplantier's opinions, which improperly consider subjective factors such as a particular officer's fear of and past experiences with dogs, does not help the jury in conducting this analysis. (In fact, Duplantier even goes as far as to assess the subjective intent *of the dogs* – which is even further afield from the relevant standard.[13])

Because Duplantier's opinions can only serve to confuse the jury into applying the wrong legal standard, they should be excluded.

## 2. Sgt. Duplantier cannot opine as to the "reasonableness" of Officer Burmaster's use of force.

The Fifth Circuit has explained that "'courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law.'" *Joseph*, 2021 U.S. Dist. LEXIS 106081, at *8-9 (quoting *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977)). "Testimony that tells the jury what conclusion to reach or merely states a legal conclusion is not helpful to the jury." *Id.* at *9. "*Whether the officers' actions were reasonable ... is an ultimate question for the jury to decide*

---

[13] Ex. 1, at 145.

after they have heard the evidence and this Court has instructed them on the law at the conclusion of the case." *Id.* (emphasis added).

While a "use of force expert may offer testimony regarding police policies and procedures as well as whether or not specific acts by a defendant comported with those policies or procedures," he "must not cross the borderline long recognized by this court between a 'mere explanation of the expert's analysis of the facts; and a 'forbidden opinion on the 'ultimate legal issue' in the case." *Id.* (quoting *United States v. Speer*, 30 F.3d 605, 610 (5th Cir. 1994)). Applying these standards, this Court in *Joseph* disallowed a use of force expert from opining about the "reasonableness" of an officer's use of force: "Najolia may not testify that the conduct of the Gretna police officers met or failed to meet the applicable legal standard, *such as the 'reasonableness' of the Gretna police officers' use of force*…. Najolia is barred from offering legal conclusions at trial." *Id.* at *10 (emphasis added).

Here, Defendants have represented to the Court in their Witness List that Sgt. Duplantier plans to provide expert testimony as to Officer Burmaster's "level of force used *and its reasonableness*."[14] Because experts are barred from offering such opinions which invade the exclusive province of the jury, Sgt. Duplantier's testimony should be excluded.[15]

**C.  Conclusion**

Sgt. Duplantier's opinions are irrelevant, and can only serve to mislead the jury and confuse the issues. Moreover, they invade the exclusive province of the jury to determine reasonableness. His testimony should therefore be excluded.

---

[14] R. Doc. 199 at 1 (emphasis added).

[15] Indeed, the Defendants themselves have moved to exclude any testimony of Plaintiffs' expert James Crosby concerning the "reasonableness" of Officer Burmaster's use of lethal force (even though Mr. Crosby has clearly stated that he is not opining about "reasonableness"). R. Doc. 209. Thus, by their own motion, Defendants concede that Sgt. Duplantier's opinions about "reasonableness" must be excluded.

#103886561v1

10

Respectfully submitted,

| | |
|---|---|
| */s/Tarak Anada* | */s/William Most* |
| TARAK ANADA (La. Bar No. 31598) | WILLIAM MOST (La. Bar No. 36914) |
| JONES WALKER LLP | DAVID LANSER (La Bar No. 37764) |
| 201 St. Charles Avenue, Ste. 4900 | MOST & ASSOCIATES |
| New Orleans, LA 70170 | 201 Saint Charles Ave., Ste. 114 #101 |
| Telephone: (504) 582-8322 | New Orleans, LA 70170 |
| Facsimile: (504) 589-8322 | Tel: (504) 509-5023 |
| Email: tanada@joneswalker.com | Email: williammost@gmail.com |

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that May 6, 2025 the foregoing was sent to all counsel of record by email via CM/ECF.

*/s/ Tarak Anada*

#103886561v1