ANNE KIRKPATRICK on 05/01/2025

```
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF LOUISIANA
 3
 4   DEREK BROWN and JULIA        CIVIL ACTION NO.
 5   BARECKI-BROWN                22-00847
 6
 7   VERSUS                       SECTION: L
 8
 9   DERRICK BURMASTER, SHAUN     DIVISION: 4
10   FURGUSON, and the CITY OF
11   NEW ORLEANS
12
13
14
15        Video deposition of Anne Kirkpatrick, taken
16   in the offices of 1300 Perdido Street, New Orleans,
17   Louisiana on Thursday, May 1, 2025, commencing at
18   1:29 p.m.
19
20
21
     REPORTED BY:
22       BROOKE GARRISON
         CERTIFIED COURT REPORTER
23
24
25
```

```
 1    APPEARANCES:

 2           MOST & ASSOCIATES
             (BY:  WILLIAM MOST, ESQUIRE)
 3           201 ST. CHARLES AVE.
             SUITE 2500
 4           NEW ORLEANS, LOUISIANA  70170

 5                  ATTORNEYS FOR THE PLAINTIFF

 6
             THE OFFICE OF THE CITY ATTORNEY
 7           (BY:  JAMES ROQUEMORE, ESQUIRE)
             1300 PERDIDO STREET
 8           NEW ORLEANS, LOUISIANA  70112

 9                  ATTORNEYS FOR THE DEFENDANT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              MR. MOST:
 2                   Okay, we're not going to go that
 3      long.
 4              THE WITNESS:
 5                   Okay.
 6                      RE-EXAMINATION
 7    BY MR. MOST:
 8       Q.   Okay.  I just want to make sure it wasn't
 9    4:30.
10       A.   I appreciate that, but I'm here to
11    answer.
12       Q.   Thank you.  So Chief, you were a witness
13    to the shooting or any of the events around the
14    shooting?
15       A.   That's correct.
16       Q.   So your assessment of the reasonableness
17    of the shooting is your opinion; correct?
18       A.   It is an opinion, but it is one that I
19    think is weighted with a lot of experience and
20    knowledge.
21       Q.   Sure.
22       A.   Frankly, yes.
23       Q.   It's a well-informed opinion.
24       A.   It is a well-informed opinion.
25       Q.   Okay.  And there's references here to
```

```
 1   Burmaster being exonerated.  Hat's a determination
 2   within the police department.  It doesn't mean that
 3   the court has exonerated him; correct?
 4           BY MR. ROQUEMORE:
 5                Objection form.
 6           THE WITNESS:
 7                That would be correct.
 8   BY MR. MOST:
 9       Q.   And with your signature on the
10   disciplinary document, you approved of Burmaster's
11   decision to shoot the dog and his basis for it;
12   correct?
13       A.   I think it's reasonable that he fell
14   within that range of what would be deemed
15   reasonable.
16       Q.   And so you approved of the decision?
17       A.   Yes.
18       Q.   And his basis for making the decision?
19       A.   His and the weight of all the others who
20   weighed it along the way, which were all those
21   deputy chiefs, everyone who assisted us.
22       Q.   Okay.  And you said that your belief was
23   that no human was injured in this incident?
24       A.   I don't believe I said.  I think the
25   question was posed differently to me.  So what was
```

```
 1   your question that you asked before?  I don't think
 2   you asked that question.
 3        Q.    It was actually a question from Mr.
 4   Roquemore.  Are you aware that Burmaster's partner
 5   was wounded in this incident?
 6        A.    Now, that you mention it, I think so.
 7   But I didn't recall until you mentioned it.  But
 8   yes, I think he refreshed my thinking.
 9        Q.    Okay.  So you concluded it was reasonable
10   for Burmaster to fire his firearm; correct?
11        A.    I do.
12        Q.    And would it have been reasonable if he
13   had instead used his taser?
14        A.    That could also be reasonable.
15        Q.    Would it have been reasonable if he had
16   kicked the dog instead of using his gun or his
17   taser?
18        A.    If the circumstances were such where he
19   had kicked the dog, yes, it would have been
20   reasonable.
21        Q.    Okay.  And the taser or kicking could
22   have been effective in this scenario; correct?
23        A.    Possibly.  I'm dealing with what I know,
24   not the possibility of it.
25        Q.    Sure.  Do you have any facts that suggest
```

```
 1                    REPORTER'S CERTIFICATE

 2           This certification is valid only for a
     transcript accompanied by my original seal on this
 3   page.

 4           I, BROOKE GARRISON, Certified Court
     Reporter, in and for the State of Louisiana, as the
 5   officer before whom this testimony was taken, do
     hereby certify that Anne Kirkpatrick, to whom the
 6   oath was administered, after having been duly sworn
     by me upon authority of R.S. 37:2554, did testify as
 7   hereinbefore set forth in the foregoing 82 pages;

 8           That this testimony was reported by me in
     the steno mask reporting method, was prepared and
 9   transcribed by me or under my personal direction and
     supervision, and is a true and correct transcript to
10   the best of my ability and understanding;

11           That the transcript has been prepared in
     compliance with transcript format guidelines
12   required by statute or by rules of the board;

13           That I have acted in compliance with the
     prohibition on contractual relationships, as defined
14   by Louisiana Code of Civil Procedure Article 1434
     and in rules and advisory opinions of the board;
15
             That I am not related to counsel or the
16   parties herein, nor am I otherwise interested in the
     outcome of this matter.
17
             May 7, 2025, Lacombe, Louisiana.
18

19

20

21
                     _____
22

23                   BROOKE GARRISON, CCR

24                   CERTIFIED COURT REPORTER

25
```