UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and | * | Civil Action No. 22-00847 |
| JULIA BARECKI-BROWN | * | |
| | * | SECTION: L |
| VERSUS | * | |
| | * | HONORABLE ELDON E. FALLON |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | DIVISION: 4 |
| NEW ORLEANS | * | |
| | * | HONORABLE KAREN WELLS ROBY |

**************************************************************************

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' SECOND MOTION *IN LIMINE* TO EXCLUDE OPINION OF JAMES CROSBY**

The Defendants move to exclude Plaintiffs' expert Dr. James Crosby's testimony in certain limited areas including:

1. Opining that Officer Burmaster's conduct in shooting of Plaintiffs' 16-week-old, 22-pound puppy Apollo was "reckless," "unreasonable," or "excessive."[1]

2. Opining on "matters touching on the New Orleans Police Department's supervision and retention of Officer Burmaster."[2]

Defendants' arguments are meritless, and their motion should be denied in its entirety.

**A.   This Court should deny the motion as moot because Dr. Crosby will not be offering any legal opinions or conclusions at trial.**

Defendants argue that certain opinions of Dr. Crosby are "legal conclusions" that invade the province of the jury.[3] Plaintiffs agree that the question of whether Officer Burmaster's conduct in shooting Apollo was "objectively reasonable"[4] under the totality of the circumstances is a determination that must be reserved for the jury. Specifically, the Fifth Circuit has held that the

---

[1] R. Doc. 209, at 1.
[2] R. Doc. 209, at 1-2.
[3] R. Doc. 209-1. at 4.
[4] *Ramirez v. Killian*, 113 F.4th 415, 426 (5th Cir. 2024).

#103913199v1                                    1

Fourth Amendment's "reasonableness" analysis "centers on whether [1] the pet dog posed an immediate danger and [2] whether killing it was unavoidable."[5]

Here, Dr. Crosby's report[6] does not contain opinions about "reasonableness," and unlike Defendants' police practices expert Sgt. David Duplantier,[7] Dr. Crosby will not give any such testimony at trial. Indeed, when specifically asked about "reasonableness" by defense counsel at his deposition, Dr. Crosby responded "I don't think I can say whether that's reasonable or not. I believe that's a legal conclusion."[8] To avoid any doubt, Plaintiffs have previously and again hereby stipulate that Dr. Crosby will not give testimony as to whether Officer's Burmaster's use of force was "unreasonable" or "excessive" under the Fourth Amendment or in any other context. Defendants' motion is therefore moot as to the terms "unreasonable" and "excessive."[9]

Dr. Crosby should not be barred, however, from using other terms just because Defendants feel that they are similar to "unreasonable." Dr. Crosby intends to opine that Burmaster failed to follow overall best police practices[10] and NOPD's policies and procedures[11] in his reckless deployment of deadly force against the Plaintiffs' dog. It was reckless in that it endangered the lives of other people in the immediate vicinity in violation of NOPD policy.[12]

---

[5] *Id.* at 427-28.
[6] Dr. Crosby's CV and Expert Report are in the Court's record as R. Doc. 130-17. Dr. Crosby's updated CV is attached as **Ex. 1**.
[7] *See* R. Doc. 217 (Plaintiff's Motion to Exclude "reasonableness" testimony of Sgt. Duplantier).
[8] Deposition of Dr. Crosby, attached as **Ex. 2**, at 22.
[9] *See Gibbs v. Lopinto*, 2023 U.S. Dist. LEXIS 76866, at *8 (E.D. La. May 3, 2023) (denying motion to exclude plaintiff's police practices expert when "Plaintiffs have stipulated in their response that their expert will not testify 'to the legal conclusion that the force used was excessive for Fourth Amendment purposes.'" (Fallon, J.)).
[10] Law enforcement experts are permitted to give "opinions regarding best practices" for police officers. *Neal v. City of Hempstead*, 2014 U.S. Dist. LEXIS 110367, at *13-14 (S.D. Tex. Aug. 11, 2014).
[11] Law enforcement experts are also permitted to opine on whether a police department's policies or procedures were violated. *Gibbs*, 2023 U.S. Dist. LEXIS 76866, at *8.
[12] R. Doc. 130-17, at 20, 21 (Expert Opinion No. 3).

Defendants take the position that the term "[r]eckless, as used by Crosby and Plaintiffs in this case, [is] synonymous with 'unreasonable' and 'excessive.' Crosby's opinion concerns the ultimate question for the jury with respect to the Fourth Amendment claim."[13] This position is meritless for several reasons.

First, "[f]ederal Rule of Evidence 704 provides that 'testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.'" *Gibbs v. Lopinto*, 2023 U.S. Dist. LEXIS 76866, at *5 (E.D. La. May 3, 2023) (Fallon, J.) (quoting Fed. R. Evid. 704).

Second, the legal standard for determining whether a seizure of property violated the Fourth Amendment does not involve any determination of "recklessness." As the Court is aware, in determining whether "the killing of a dog can constitute a seizure within the meaning of the Fourth Amendment" the trier of fact must determine whether it was "objectively reasonable." *Ramirez v. Killian*, 113 F.4th 415, 426 (5th Cir. 2024) (quoting *Stephenson v. McClelland*, 632 F. App'x 177, 184 (5th Cir. 2015) (unpublished)). Defendants cite no authority (because there is none) to suggest that a determination of "recklessness" is required in the Fourth Amendment seizure analysis. Thus, contrary to Defendants' argument, Dr. Crosby's use of the term "reckless" does not "concern[] the ultimate question for the jury with respect to the Fourth Amendment claim."[14] Rather, Dr. Crosby's use of the term "reckless" relates to his opinion that Officer Burmaster violated police best practices and NOPD's policies and procedures, including but not limited to Chapter 1.3 of NOPD's Operations Manual ("Use of Force") when, "[b]y firing his

---

[13] R. Doc. 209-1, at 5.
[14] R. Doc. 209-1, at 5.

sidearm, Burmaster also endangered and exposed civilians and the other officer to the possibility of ricochet, misfire, or misdirection of the projectiles."[15]

Here, NOPD's Use of Force Policy 1.3, para. 32 specifically states that "when shooting at an animal," the officer "must be cognizant of the surroundings" to "ensure that there is no risk to people in the area."[16] When he shot Apollo, Burmaster violated this policy. He shot at the ground from a diagonal angle in the direction of his partner Officer Roussel, causing bullet ricochet to injure Roussel.[17]

Crosby opines that Burmaster's actions in recklessly putting his partner at risk in this manner was a violation of NOPD's Use of Force Policy. As this Court has already held, "expert testimony regarding policies and procedures, and Defendants' compliance with those policies and procedures, is admissible." *Gibbs*, 2023 U.S. Dist. LEXIS 76866, at *8. And, in evaluating the reasonableness of an officer's use of force, "a policy violation can serve as evidence that an act was objectively unreasonable." *Dawes v. City of Dall.*, No. 17-1424, 2021 U.S. Dist. LEXIS 260494, at *7-8 (N.D. Tex. Sep. 24, 2021) (citing *Anthony v. Morton*, No. 05-0027, 2007 U.S. Dist. LEXIS 101798, 2007 WL 628750, *7 (W.D. Tex. Jan. 31, 2007) (holding that officer's violation of police baton policy "is certainly probative in determining if [officer] acted in an objectively reasonable manner."); *Hope v. Pelzer*, 536 U.S. 730, 743-44, (2002) (holding that official's disregard of prison regulation "provides equally strong support for the conclusion that they were fully aware of the wrongful nature of their conduct.")). "Relatedly, a policy violation may show that a reasonable, alternative course of action was available to the officer." *Dawes*, 2021 U.S. Dist. LEXIS 260494, at *8.

---

[15] R. Doc. 130-17, at 20, 21 (Expert Opinion No. 3).
[16] R. Doc. 110-12, p. 27, para. 32.
[17] *See* R. Doc. 130-3, at 29.

4

Crosby opines that this was not just a minor or technical violation of policy, but was rather an egregious violation in light of Burmaster's recklessness. His opinion in this regard is helpful to the jury in understanding how irresponsible Burmaster's firearm discharge was, and why it constituted a severe violation of NOPD's Use of Force Policy. Jurors are not experts on issues like police policy compliance or bullet ricochet, and Crosby's specialized professional expertise will be helpful to them in understanding these issues. Conversely, Crosby is not merely telling the jury what result to reach because he is not opining that Burmaster's actions were or were not "reasonable." Experts are permitted to testify about issues "which go to the ultimate issue[] of … what conduct is 'objectively reasonable'—so long as they do not use … 'judicially defined' and 'legally specialized' terms." *M.H. v. Cty. of Alameda*, No. 11-2868, 2015 U.S. Dist. LEXIS 44, at *6-8 (N.D. Cal. Jan. 1, 2015). "Recklessness" is not a "legally specialized" term in the context of the Fourth Amendment.

Next, the term "reckless" is not synonymous with the term "unreasonable," as Defendants contend.[18] The Cambridge dictionary defines "reckless" as "doing something dangerous and not worrying about the risks and the possible results,"[19] whereas "unreasonable" is defined as "not fair or acceptable."[20] These terms are simply not synonymous.

Finally, the Defendants' citation to *Zorich v. St. Louis Cty.*, No. 17-1522, 2018 U.S. Dist. LEXIS 141506. (E.D. Mo. Aug. 21, 2018) does not support their argument. There, the Defendants filed a *Daubert* motion to exclude Dr. Crosby's use of the term "unreasonable":

> Mr. Crosby's Opinions 7-10 are that Defendants' conduct upon entering the residence at 3036 Caprock Court was "objectively unreasonable" under the circumstances. According to Case: 4:17-cv-01522-PLC Doc. #: 30 Filed: 06/11/18 Page: 8 of 13 PageID #:

---

[18] R. Doc. 209-1, at 5.
[19] https://dictionary.cambridge.org/us/dictionary/english/reckless
[20] https://dictionary.cambridge.org/us/dictionary/english/unreasonable

> 385 9 Opinion 7, the service of the search warrant at 3036 Caprock Court without additional prior surveillance of the property was effected "without reasonable and objective justification." According to Opinion 8, the lack of a dog-encounter plan for service and the failure to use nonlethal force on the aggressive dog at 3036 Caprock Court were "objectively unreasonable." Opinion 9 deems the speed with which officers evaluated the situation at 3036 Caprock Court "unreasonable," and Opinion 10 concludes that the use of force was "not a reasonable response" to that situation. Defendants ask the Court to exclude all testimony concerning Mr. Crosby's Opinions 7, 8, 9, and 10, because that testimony draws legal conclusions that are properly drawn by the Court and not by an expert witness.

Thus, in *Zorich*, the defendants only sought to exclude the use of the term "unreasonable." The court agreed with the defendants that Crosby could not opine as to "reasonableness," and excluded any such testimony. However, the defendants in *Zorich* took no issue with Crosby's use of the term "reckless," and did not even reference the term "reckless" in their *Daubert* motion.[21] The *Zorich* court, therefore, made no ruling about the term reckless because the issue was not before it. If anything, the *Zorich* court's holding should be interpreted as permitting the term reckless, because the court noted that Crosby's report used both terms "unreasonable" and "reckless," but ruled only that "Crosby's opinions relating to the 'reasonableness' of Defendants' actions are legal conclusions and invade the province of the jury." *Id*. at *4, 6-7.

**B.    This Court should deny the motion because Crosby has substantial professional experience in the supervision, retention and discipline of police officers.**

Defendants further argue that Crosby should be excluded in part because he "is not an expert on supervision, discipline or retention of law enforcement officers."[22] This is incorrect.

"[A]n expert witness's testimony (and its reliability) may be based on his personal and professional experience and his own observation." *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665

---

[21] That *Daubert* motion is in the Court's record as R. Doc. 148-1.
[22] R. Doc. 209-1, at 5.

(5th Cir. 2015). "[T]estimony from an expert whose reliability is based mainly on that expert's personal observations, professional experience, education, and training may be admissible." *Watson v. Snap-On Tools, Inc.*, 2006 U.S. Dist. LEXIS 55301, at *12 (W.D. La. July 25, 2006).

As plainly stated on his CV, Dr. Crosby was an officer with the Jacksonville Sherriff's Office for twenty-two years. During that time, he served as a patrol officer, a Sergeant and a Lieutenant. His professional duties included conducting and supervising police patrol operations, investigating reported criminal activity, conducting "knock and talks," responding to emergency calls, training, supervising and disciplining junior officers, and investigating "use of force complaints" made against other officers. He has received extensive training in all of these areas from the Jacksonville Sheriff's Office and elsewhere.[23]

As a Lieutenant, Crosby supervised up to four Sergeants, forty officers, and additional officers in training at any given time. He also served on the Firearms Review Board designated to determine whether discharges of firearms by officers were justified under Florida Statute and department guidelines. As both a Sergeant and a Lieutenant, Crosby had a day-to-day responsibility to oversee the training of both officers and supervisors in police operations, investigations and the use of force.[24]  He has also taught the Florida Animal Control Certification Curriculum, and has developed a nation-wide curriculum for law enforcement training in canine encounters.[25] He has trained law enforcement officers in at least four countries, and has a range of professional memberships and certifications.[26]

---

[23] R. Doc. 130-17, at 16-17.
[24] R. Doc. 130-17, at 16-17.
[25] *Id.* at 15-17.
[26] *Id*. at 14-17.

7

"The qualification standard for expert testimony is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Emperador-Baker v. Jazz Casino Co., LLC*, No. 16-17058, 2017 U.S. Dist. LEXIS 188501, 2017 WL 5483766, at *1 (E.D. La. Nov. 15, 2017). Because Crosby has substantial professional experience and training, supervising and disciplining police officers during his decades-long career at the Jacksonville Sherriff's Office, he is much more than "minimally qualified" to opine in these areas.

Defendants next argue that Crosby's opinions are not reliable due to the time that has passed since he was employed in a police supervisory role.[27] Defendants cite no jurisprudence to support this argument. That is likely because the available case law on this topic states the opposite. *See Estate of Casillas v. City of Fresno*, No. 16-1042 AWI-SAB, 2019 U.S. Dist. LEXIS 23710, at *17 (E.D. Cal. Feb. 13, 2019) (holding that police practices expert who had not worked as a police officer since the "80's and 90's" and had since spend the rest of his career working as a securities fraud investigator was qualified to testify as a police practices expert, and any criticisms regarding how long it had been since he worked in the field went to the weight of his testimony).

Finally, the Defendants argue that Crosby's testimony should be excluded due to his allegedly inadequate description of one of the nine categories of documents that he reviewed in rendering his opinions: "Various documents regarding past discipline and performance issues with Burmaster provided in discovery." Because of this, Defendants claim that "there is no way to determine the bases or reliability of his opinion regarding officer Burmaster's retention." This argument is unavailing. Defendants are well aware that they produced a specific set of records regarding Burmaster's disciplinary history and prior use of force incidents on September 7, 2022.

---

[27] R. Doc. 209-1, at 7.

These records referenced by Crosby (which are already in the Court's record) are summarized as follows:

| Allegation | Supporting documentary evidence cited by Crosby |
|---|---|
| "Burmaster is a 'frequent user of force,' who has used force at least 30 times since 2011." R. Doc. 115 at 2. | R. Doc. 122-4 at pgs. 3-4 (admitting RFA that "Officer Burmaster reported use of force thirty or more times at NOPD"). |
| Burmaster's use of force includes "an incident in 2012 when he shot and killed a dog while investigating a property damage complaint." *Id.* | R. Doc. 122-2 at 191:3-8 (Burmaster admitting he killed a dog while on the job in 2012). |
| "Burmaster's use of force has been the subject of multiple complaints'" *Id.* | R. Doc. 122-4 at 3 (admitting that there have been five complaints about Burmaster's use of force); R. Doc. 122-3 (30(b)(6) Dep.) (admitting "least five complaints of use of force"). |
| "NOPD has sustained at least twenty other rule violations against Burmaster." *Id.* | R. Doc. 122-3 (30(b)(6) Dep.) at 25:11-20 ("Q. So at least PIB has approved 22 rule violations by Burmaster? . . . A. Yeah. I'd agree to that based on the document.") |
| Burmaster's rule violations involved "'verbal intimidation, moral conduct, professionalism, performance of duty, neglect of duty, [and] failure to comply with instructions." *Id.* | R. Doc. 122-3 at 26: ("PIB has sustained 22 rule violations by Burmaster, including violations regarding verbal intimidation, moral conduct, professionalism, performance of duty, and neglect of duty. Agreed? . . . The Witness: Yes.") |
| Burmaster posted an Instagram post about an ethics test. *Id.* at 7. | R. Doc. 122-2 at 201:20-25 (Burmaster admitting he posted the item to Instagram). |

There are no other documents in this case that relate to Officer Burmaster's disciplinary/use of force history than the above-referenced documents that Defendants produced in discovery. As such, regardless of Dr. Crosby's apparent inability to specifically identify each document by memory during his deposition, Defendants know exactly what Burmaster records Crosby reviewed in forming his opinions. "A witness' experience, studies and education, *combined with a review of the relevant materials* can provide a reliable basis for expert testimony." *Serrano-Cordero v. Kroger*, 2012 U.S. Dist. LEXIS 114926, at *8 (E.D. Tex. Aug. 15, 2012) (emphasis added).

9

Finally, Defendants attempt to joust with Dr. Crosby about the bases of his opinions that the Defendants disagree with.[28] But as the Court is aware, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the factfinder's consideration." *Arnold v. Alvarado*, 2024 U.S. Dist. LEXIS 100595, at *11 (E.D. La. June 6, 2024) (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)). "The perceived flaws in the testimony of [the] experts are matters properly to be tested in the crucible of adversarial proceedings; they are not the basis for truncating that process." *14.38 Acres of Land*, 80 F.3d at 1079.

"[T]he rejection of expert testimony is the exception rather than the rule." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 288 (5th Cir. 2019) "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Bazile v. Chevron U.S.A., Inc.*, 2012 U.S. Dist. LEXIS 40361, at *4 (W.D. La. Mar. 22, 2012) (quoting *14.38 Acres of Land*, 80 F.3d at 1078). "As the Court in *Daubert* stated: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* at *4-5 (quoting *Daubert*, 509 U.S. at 595).

Because Dr. Crosby has extensive professional experience in the supervision, retention and discipline of police officers, he should be permitted to provide expert testimony in these issues.

The Defendants' motion should be denied in its entirety.

---

[28] R. Doc. 209-1, at 6.

#103913199v1

Respectfully submitted,

| | |
|---|---|
| */s/Tarak Anada*_____ | */s/William Most*_____ |
| TARAK ANADA (La. Bar No. 31598) | WILLIAM MOST (La. Bar No. 36914) |
| JONES WALKER LLP | DAVID LANSER (La Bar No. 37764) |
| 201 St. Charles Avenue, Ste. 4900 | MOST & ASSOCIATES |
| New Orleans, LA 70170 | 201 Saint Charles Ave., Ste. 114 #101 |
| Telephone: (504) 582-8322 | New Orleans, LA 70170 |
| Facsimile: (504) 589-8322 | Tel: (504) 509-5023 |
| Email: tanada@joneswalker.com | Email: williammost@gmail.com |

***Counsel for Plaintiffs Derek Brown and Julia Barecki-Brown***