UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and<br>JULIA BARECKI-BROWN<br><br>VERSUS<br><br>DERRICK BURMASTER, SHAUN<br>FERGUSON, and the CITY OF<br>NEW ORLEANS | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | CIVIL ACTION<br><br>DOCKET NUMBER: 22-00847<br><br>SECTION: L<br><br>HONORABLE ELDON E. FALLON<br><br>DIVISION: 4<br><br>HONORABLE KAREN WELLS ROBY |

*****************************************************************************

### DEFENDANTS' RESPONSE AND OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF SERGEANT DAVID DUPLANTIER [R. DOC. 217]

NOW INTO COURT, come Derrick Burmaster and City of New Orleans ("Defendants") who respectfully submit this Response and Opposition to Plaintiffs' Motion to Exclude Expert Testimony of Sergeant David Duplantier [R. Doc. 217] (the "Motion") and show the following.

**1. Sergeant David Duplantier.**

Sergeant David Duplantier, at all relevant times, was a supervisor at the New Orleans Police Department ("NOPD") Academy and taught officers use of force principles.[1] Following the shooting of Plaintiff's dog, Sgt. Duplantier reviewed the body-worn-camera footage of the incident at the request of the NOPD's Public Integrity Bureau to identify and discuss the actions and tactics taken by Officer Burmaster.[2] On October 7, 2021, Sgt. Duplantier authored a "Training Action Plan" report which evaluated Officer Burmaster's use of force with respect to the shooting of Plaintiffs' dog; among the factors that Sgt. Duplantier considered to be important in his evaluation were the following: Officer Burmaster responded to a "complaint of a possible domestic fight"; he

---

[1] Exhibit 1, Excerpts of transcript of deposition of David Duplantier, pp. 9.
[2] Exhibit 2, NOPD Training Action Plan, D. Duplantier (City Defendants 2711-2714).

1

whistled and made "kissing" noises in an attempt to alert animals inside the fenced area; he was "charged by two dogs"; and he was "faced with a medium sized dog running towards him."[3] In debriefing Officer Burmaster, Sgt. Duplantier explained that "[t]he totality of the circumstances, which involved the dog being of medium size and charging towards the officer, along with the officer being trapped in an area enclosed by a spiked, wrought iron fence, all factored in the officer's use of force decision."[4] Sgt. Duplantier concluded that Officer Burmaster "acted properly."[5] He explained his reasoning:

> As police officers, our decisions to use force and the amount of force used must be based on reasonableness. That reasonableness is considered when determining if a situation is considered an imminent threat to ourselves or others. Though there may be officers that may have addressed the charging animal in a different fashion, Officer Burmaster's decision to use lethal force towards the dog falls within reason."[6]

At his deposition Sgt. Duplantier was asked by Plaintiffs' counsel "how to determine whether the use of lethal force is reasonable versus non-reasonable"; Sgt. Duplantier responded "we take into consideration … the situation and the facts at hand."[7] In response to questions by Plaintiff's counsel, Sgt Duplantier acknowledged that "part of the use of force decision-making process is based on that particular officer's subjective thoughts, experience, comfort level with animals, et cetera[.]"[8] Counsel for Plaintiffs was especially focused on Officer Burmaster's subjective state of mind, and asked Sgt. Duplantier (and several other NOPD witnesses), "Do you ever remember Officer Burmaster telling you he was afraid Apollo would bite him in the penis?" and other similar inquiries.[9]

---

[3] *Id.*, p. City Defendants 2712.
[4] *Id.*, p. 2713. See Exhibit 1, pp. 95:3 – 100:18 (explaining his evaluation of Officer Burmaster's use of force).
[5] *Id.*
[6] *Id.*
[7] Exhibit 1, pp. 16:24 – 17:13.
[8] *Id.* p. 18:8-13.
[9] Id., pp. 22:24 – 23:1.

Defendants, in their Amended and Superseding Witness List (R. Doc. 199), identified Sergeant David Duplantier as a "will-call" witness and described his anticipated testimony as follows:

> Sgt. Duplantier will testify as a fact witness and a non-retained expert regarding his background, training, role and history at the NOPD Training Academy, the findings of the Public Integrity Bureau regarding same, NOPD training in use of force, including against animals, the level of threat, and the level of force justified his review of the incident made the basis of this lawsuit, his meeting with Officer Burmaster, the level of force used and its reasonableness; and, whether Officer Burmaster violated any training or policy of the NOPD and his observations and recommendations and the basis therefor.[10]

### 2. Law And Discussion.

Plaintiffs, based on Federal Rule of Evidence 702, seek to exclude all of Sgt. Duplantier's testimony from the trial of this matter, arguing that Sgt. Duplantier's testimony is irrelevant and impinges upon the "exclusive province of the jury to determine 'reasonableness.'"[11] However, Plaintiffs, in their Motion, misconstrue Sgt. Duplantier's testimony and misstate the law. For these reasons, the Motion should be denied.

### a. Sgt. Duplantier's testimony is admissible because he is qualified and his opinions are relevant and reliable.

Rule 702 provides that a witness may offer "an expert opinion only if he or she draws on some special 'knowledge, skill, experience, training, or education' to formulate that opinion."[12] The basis of an expert's specialized knowledge may come from a variety of sources, including academic training and credentials or practical experience.[13] Sgt. Duplantier's opinion testimony is based on his more than 30 years of experience with the NOPD, his work on the SWAT team, more than 50 incidents in which he encountered dogs while serving in the field, and his 13 years as

---

[10] R. Doc. 199, p. 1. R. Doc. 199 replaced R. Doc. 198 because R. Doc. 198 inadvertently omitted a witness.
[11] R. Doc. 217, p. 1.
[12] *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (citing Fed. R. Evid. 702).
[13] S. Cement Co. v. Sproul, 378 F.2d 48, 49 (5th Cir. 1967).

instructor at the NOPD Academy during which he taught use of force concepts to officers.[14] Plaintiffs do not challenge Sgt. Duplantier's qualifications to offer opinions relating to use of force, including the use of force in this case.

### b. Sgt. Duplantier's testimony is relevant and reliable.

Pursuant to Rule 702, expert testimony must "assist the trier of fact to understand the evidence or determine a fact in issue."[15] Relevant evidence is evidence which has "any tendency to make any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[16] To be relevant, expert testimony must use "reasoning or methodology [that] properly can be applied to the facts in issue."[17]

The reliability requirements of Rule 702 are the same as set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc*.[18] *Daubert* provides the "analytical framework for determining whether expert testimony is admissible under Rule 702."[19] The *Daubert* analysis considers "whether the reasoning or methodology underlying the testimony is scientifically valid."[20]

Plaintiffs contend that Sgt. Duplantier's opinions are based on "his consideration of 'subjective' factors leading to Officer Burmaster's decision to use lethal force Apollo."[21] Plaintiffs argue that subjective factors are irrelevant and analytically wrong as applied a Fourth Amendment use of force analysis, so therefore Sgt. Duplantier's opinions are inadmissible due to being irrelevant and unreliable.[22]

---

[14] Exhibit 1, pp. 8:17 – 10:16.
[15] Fed. R. Evid. 702; *Bocanegra v. Vicmar Servs*., 320 F.3d 581, 584 (5th Cir. 2003).
[16] *Mathis v. Exxon Corp*., 302 F.3d 448, 460 (5th Cir. 2002) (quoting Fed. R. Evid. 401).
[17] *Knight v. Kirby Inland Marine Inc*., 482 F.3d 347, 352 (5th Cir. 2007) (quotation omitted).
[18] 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
[19] *Pipitone v. Biomatrix*, 288 F.3d 239, 243 (5th Cir. 2002).
[20] Knight v. Kirby Inland Marine, Inc., 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 592–93, 113 S.Ct. 2786).
[21] R. Doc. 217-1, p. 7.
[22] *Id*.

However, Plaintiffs' description of Sgt. Duplantier's opinion is misleading and incorrect. Sgt. Duplantier, in his deposition, explained that "when we're teaching use of force, we take into consideration the situation and the facts at hand."[23] Further, in his training report, he made it clear that any evaluation of use of force must be based on the "totality of the circumstances," which involved, as described by Sgt. Duplantier, examining the objective facts (among others listed in the report) of "the dog being of medium size and charging towards the officer along with the officer being trapped in an area enclosed by a spiked, wrought iron fence[.]"[24] A review of Sgt. Duplantier's testimony and report shows that his opinion is based on objective facts, not Officer Burmaster's subjective state of mind. In fact, the only time the word, "subjective" was used at his deposition was by Plaintiff's counsel in his leading questions.[25]

To the extent that Sgt. Duplantier considered Officer Burmaster's subjective beliefs, he did so in accordance with Fifth Circuit jurisprudence. As the Fifth Circuit stated in this case when it was on appeal, "an officer may not, consistent with the Fourth Amendment, kill a pet dog unless he **_reasonably believes_** that the dog poses a threat and that he is in imminent danger of being attached."[26] Whether an officer reasonably believes a dog poses a threat depends, in part, on the information that is subjectively available to the officer.[27] It is apparent from examining Sgt. Duplantier's opinions as reflected in his report and at deposition, his opinion as to Officer

---

[23] Exhibit 1, p.17:4-8.
[24] Exhibit 2, p. City Defendants 2713.
[25] See, e.g., R. Doc. 217-2, pp. 18:3, 18:11, 36:13, 36:19, 37:19.
[26] *Brown v. Burmaster*, 23-30180, 2025 WL 227785, *3 (5th Cir. Jan. 17, 2025) (emphasis added) (quoting *Ramirez v. Killian*, 113 F.4th 415, 427 (5th Cir. 2024). See *Pearson v. Callahan*, 555 U.S. 223, 244, 129 S. Ct. 808, 823, 172 L.Ed.2d 565 (2009) ("The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law.").
[27] See *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (For purposes of qualified immunity, in determining whether a right was clearly established, "[t]he relevant question ... is ... whether a reasonable officer could have believed [his or her conduct] to be lawful, in light of clearly established law and the information the ... officers possessed.").

Burmaster's use of force are based on objective circumstances known to Officer Burmaster at the time of the shooting; it was against these facts that Officer Burmaster's belief was judged.

As this Court recognized, the instant case is "laden with competing facts" including, among other things, "the body camera footage, in combination with the testimony of the two officers involved, the reports issued by the NOPD, NOPD policies known to Burmaster before the shooting, and other available evidence" which will be necessary to be considered in order to determine whether or not Officer Burmaster acted reasonably when he shot Apollo rather than choosing a non-lethal course of action."[28]  Sgt. Duplantier's opinions regarding NOPD police policies and procedures, and whether Officer Burmaster's dog shooting comported with those policies or procedures, are well-founded and will help the jury in deciding this case. His testimony should not be excluded.

### c. Sgt. Duplantier's testimony does not constitute improper legal conclusions.

Plaintiffs contend that Sgt. Duplantier's testimony about "reasonableness" is a legal conclusion and should be excluded. Federal Rule of Evidence 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." However, "courts caution that for ultimate legal conclusions, the judge is the source of law and the only expert needed by a jury."[29]

Relevantly, this Court has held previously that "a use of force expert may offer testimony regarding police policies and procedures as well as whether or not specific acts by a defendant comported with those policies or procedures."[30] This Court has also held that "an expert should not opine on whether the officers' conduct meets the ultimate legal standard of 'reasonableness.'"

---

[28] R. Doc. 162, p. 14.
[29] *Cortez v. Custard*, 20-3110, 2024 WL 2941166, *4 (E.D. La. June 11, 2024) (punctuation omitted) (quoting *Manton v. Strain*, No. 09-0339, 2010 WL 4364480, at *2 (E.D. La. Oct. 21, 2010) (quoting *Bodzin v. City of Dallas*, 768 F.2d 722, 725 (5th Cir. 1985))).
[30] *Id.*, (citing *Joseph v. Doe*, No. 17-5051, 2021 WL 2313475, at *4 (E.D. La. June 7, 2021); and *Campion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908 (6th Cir. 2004) (finding testimony about specific use of force practices and training admissible.)).

Here, Defendants intend to offer Sgt. Duplantier's testimony consistent with his report (submitted as Exhibit 2), which concerns whether Officer Burmaster's actions were in accordance with NOPD policies, procedure, and training. Defendants will not elicit testimony from Sgt. Duplantier concerning "reasonableness" under the applicable Fourth Amendment standard. Plaintiffs' Motion in this regard should be denied.[31]

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be denied in its entirety.

Respectfully submitted:

*/s/ James M. Roquemore*
**JAMES M. ROQUEMORE, LSB #40035**
ASSISTANT CITY ATTORNEY
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET, SUITE 5E03
NEW ORLEANS, LOUISIANA 70112
TEL: (504) 658-9800
FACSIMILE: (504) 658-9868
James.Roquemore@nola.gov
*Counsel for Derrick Burmaster and the City of New Orleans*

---

[31] Sgt. Duplantier will also provide testimony, if needed, concerning NOPD training.