UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and | * | CIVIL ACTION |
| JULIA BARECKI-BROWN | * | |
| | * | DOCKET NUMBER: 22-00847 |
| VERSUS | * | |
| | * | SECTION: L |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | HONORABLE ELDON E. FALLON |
| NEW ORLEANS | * | |
| | * | DIVISION: 4 |
| | * | |
| | * | HONORABLE KAREN WELLS ROBY |

*******************************************************************************

## DERRICK BURMASTER'S AND CITY OF NEW ORLEANS' OPPOSITION TO PLAINTIFFS' MOTION ON RATIFICATION

Defendants, Derrick Burmaster ("Burmaster") and the City of New Orleans (the "City) (collectively, "Defendants"), oppose Plaintiffs' Motion for Partial Summary Judgment on Ratification (the "Motion") (R. Doc. 224), and respectfully show the following.

## INTRODUCTION

Plaintiffs' last-minute "ratification" theory should be rejected for several reasons. First, it is late. "[C]ourts in this circuit routinely decline to consider new claims asserted at the summary-judgment stage of litigation."[1] Second, it is meritless. The facts relied upon by the NOPD in determining that Officer Burmaster did not violate NOPD policy were not "extreme."[2] Plaintiff, on summary judgment, is not entitled to any inference in their favor.[3] Thus, Plaintiffs' inference-laden version of the facts is irrelevant for this Motion. Finally, Plaintiff misconstrue the prior

---

[1] *Martinez v. Prudential Ins. Co. of Am.*, 615 F. Supp. 3d 519, 541 (S.D. Tex. 2022).
[2] Exhibit 1 (Deposition excerpts of Anne Kirkpatrick); Exhibit 2 (October 27, 2023, letter from Anne Kirkpatrick to SPO Derrick Burmaster).
[3] See R. Doc. 162 (in the context of a motion for summary judgment, "the court must assess the evidence and 'review the facts drawing all inferences most favorable to the party opposing the motion.'" (quoting *Reid v. State Farm Mut. Auto. Ins. Co*. 784 F.2d 577, 578 (5th Cir. 1986).

1

rulings of this Court and the Fifth Circuit. Those prior rulings construed "the facts in the light most favorable to the Plaintiffs,"[4] Thus, this Court's denial of Burmaster's Motion for Summary Judgment as to qualified immunity or punitive damages cannot support their instant Motion.

Plaintiffs' motion is without merit and should be denied.

## I.    STATEMENT OF FACTS.

On October 27, 2023, NOPD Superintendent Anne Kirkpatrick issued a letter to Officer Burmaster informing him that he did not violate NOPD's use of force policy when he shot Plaintiffs' dog on April 10, 2021.[5] Superintendent Kirkpatrick, in the letter, explained the decision was based on the recommendation of a Superintendent's Hearing Committee, which had "considered the totality of informational content derived from the culmination of all relevant investigation and testimony provided during the hearing," which was summarized in a "Cover Letter authored by Chief Deputy Ganthier," which reported:

> Officer Derrick Burmaster entered the front yard and proceeded to go to the residence. Once half-way in the gate, Officer Burmaster heard barking sounds coming fast towards him. He removed his weapon because he did not observe a way out. He didn't think he was fast enough to make it out the gate before the dogs arrived. He did not observe a platform or car to jump on to escape. He didn't believe he could jump the fence because of the spikes on top of it. He prepared himself and once he observed the dog, he believed it was vicious and coming fast towards him. Officer Burmaster believed the dog would bite him on the leg or pelvis area. Officer Burmaster then shot the dog that was a threat to him. Officer Burmaster believed the dog was ferocious and was going to bite without provocation. He then attempted to deescalate the situation by apologizing to the owners on the scene Officer Burmaster stated he just wanted to get out safely without injuring himself or the dog.[6]

---

[4] *Brown v. Burmaster*, 2025 U.S. App. LEXIS 1129, *2, footnote 1 (5th Cir. Jan. 17, 2025).
[5] Exhibit 2.
[6] Exhibit 2, p. 3.

2

NOPD has a policy concerning its officers' permissible use of force with respect to dangerous animals.[7] That policy is set forth in NOPD Operations Manual, Chapter 1.3, paragraph 32, and provides:

> Officers are authorized to use firearms to stop an animal in circumstances in which the animal reasonably appears to pose an imminent threat to human safety and alternative methods are not reasonably available or would likely be ineffective. The officer must be cognizant of the surroundings when shooting at an animal and ensure there is no risk to people in the area. Under circumstances in which officers have sufficient advance notice that a potentially dangerous animal may be encountered, officers should develop reasonable contingency plans for dealing with the animal (e.g., fire extinguisher, CEW, animal control officer). Nothing in this Chapter shall prohibit any officer from shooting a dangerous animal if circumstances reasonably dictate that a contingency plan has failed or becomes impractical.[8]

Superintendent Kirkpatrick, at her deposition, explained her reasons to exonerate Officer Burmaster with respect to use of force, Chapter 1.3, paragraph 32, upon Plaintiffs' dog:

> Q. And paragraph 32 is a use of force policy specifically dealing with dangerous animals.
>
> A. Yes, that's correct.
>
> Q. In looking at paragraph 32, … can you explain where the imminent threat for his safety was?
>
> A. Well, the animal is charging, and I think that that's an imminent threat, and to have an animal charging at you, that makes it imminent.· And the fact that the second officer also assessed that threat as imminent, such that he ran.
>
> Q. Can you explain where you found a reasonable methods not reasonably available or likely to be ineffective?

---

[7] Exhibit 3, NOPD Policy, Ch. 1.3, para. 32.
[8] *Id.*.

3

A.   According to … Officer Burmaster, who said he wasn't going to be able to jump over the fence. The other officer had already run out and was closing the fence. He didn't think he had time to get out that gate. He also didn't think he could jump over that gate or over the fence because I think it had spikes at the top, that's my understanding. And so he's now in an imminent situation and he had already drawn his gun and I actually support the fact that he had pulled his firearm.

Q.   I would like to ask you that. Explain why pulling his firearm when he did was not a violation of NOPD?

A.   It's not a violation as a matter of fact because he's going into a domestic violence situation. The reports that came to them was that they could hear that whoever reported said there was yelling and screaming, which means you, in an officer's mind, is that there's an active, assaultive behavior potentially. And they're walking in, he's hearing these dogs coming out. How do you know that it wasn't a party involved in the domestic sending dogs out? You don't know. And so for him to have drawn his weapon, it's dark. All of those factors to me are reasonable that you would draw your weapon.

Q.   The next line, it says the officer must be cognizant of the surroundings when shooting at an animal and show no risk to people in the area. Was there evidence that he was cognizant of the surroundings?

A.   Yes. … And the fact that he was doing the kissing voices to see if there was a dog, trying to see if he could solicit, that is telling me he's cognizant that there could be some danger issues here.

Q.   But is there evidence that he was actively looking to see if dogs were evidence?

A.   Yes, and that to me was even more supportive that he is operating under his training and his policy, and he was trying to assess that, sure enough, the dogs come charging.

Q.   The other part of that sentence has to do with to ensure there's no risk to people in the area, in evaluating the totality of the circumstances and the facts. What do you have to say about that factor?

A.   They're unrolling very fast on them, and ·the law and the policy says that we're not to do the 20-20 hindsight when things are evolving in split-second decisions and he apparently had assessed well enough that no one was injured in his ·use of deadly force.

Q.   The next sentence in this particular policy, deals with reasonable contingency plans.

A.   Yes.

Q.   How did that factor into your decision?

A.   Again, I didn't think it was unreasonable. When you have this unfolding event, you've got your partner running away on you, that, again, I cannot overemphasize how that corroborated, for me, the fact that there was two different independent people who perceived a threat at the same time. One was able to run out the gate, and so we are having split-second decisions here. And so I think he squarely was within the policy, because it was cognizant. He was aware.  He knew

5

what he was walking into. And he was making reasonable efforts to see, even about the dogs. That's mindfulness.[9]

## II.   LAW AND DISCUSSION.

### a.   Summary Judgment Standard.

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] A dispute is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.[11] A fact issue is "material" if its resolution could affect the outcome of the action.[12] Plaintiff's Motion should be denied for three reasons: it is procedurally defective; it has no substantive merit; and it is based on a misreading of prior rulings in this case.

### b.   Plaintiffs should be precluded from raising this ratification claim for the first time on summary judgment.

Plaintiff's Second Amended Complaint, which was filed on December 14, 2022, does not contain a claim for *Monell* liability based on ratification. Plaintiffs have known of the facts underlying this claim (the NOPD's exoneration of Officer Burmaster) since well before this case was reopened in January of this year.[13] However, Plaintiffs have waited until the eve of trial, after the deadline for filing motions for summary judgment has passed, to file the instant Motion.[14]

It is the general rule that summary judgment is not the stage for bringing new claims.[15] Even if Plaintiffs had requested leave to amend their complaint (which they did not), amendment

---

[9] Exhibit 1, Excerpts of Deposition of Anne Kirkpatric, pp. 70:3 – 74:2.
[10] Fed. R. Civ. P. 56(a).
[11] *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000).
[12] *Id*.
[13] See *In Re: Derrick P. Burmaster*, Case No. 23-11081, R. Doc. 48 (U.S. Bankr. E.D. La., Oct. 1, 2024).
[14] See R. Doc. 175, p. 2.
[15] See *DeKort v. Integrated Coast Guard Sys*., 475 F. App'x 521, 522 (5th Cir. 2012) ("We also conclude that the district court did not err in denying DeKort's motion for partial summary judgment because he attempted to raise a new claim, not asserted in his fifth amended complaint."); see also *Gilmour v. Gates, McDonald & Co*., 382 F.3d 1312, 1314 (11th Cir. 2004) ("[T]he Supreme Court has mandated a liberal pleading standard for civil complaints

at this stage would be inappropriate because of the moving target that Defendants would face with Plaintiffs' evolving claims and the fact that Defendants would have sought summary judgment against this claim, too, when they (timely) filed their motion for summary judgment.[16]

Plaintiffs' Motion is procedurally defective and causes undue prejudice to Defendants. The Motion should be denied for this ground alone.

### c. The "facts" are not extreme enough to trigger a Monell ratification claim.

In the instant Motion, Plaintiffs seek summary judgment under a *Monell* theory – which requires the existence of a municipal policy – merely because the NOPD agreed with Officer Burmaster's version of the events and decided that Officer Burmaster did not violate NOPD policy. The United States Supreme Court has held that "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."[17] However, the Fifth Circuit limits this theory to "extreme factual situations."[18] For example, "pouring" gunfire into a truck and killing an occupant will warrant ratification.[19]

However, "a municipality is not liable under the ratification theory where a Police Chief accepts his officers' version of events, so long as 'that version did not show that the deputies'

---

under Federal Rule of Civil Procedure 8(a). This standard however does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage."); Janik v. City of Dallas, No. 3:95–CV–2594, 1998 WL 249213, at *1 (N.D. Tex. May 12, 1998) ("This court will not grant summary judgment dismissing a claim that plaintiffs have not pleaded.").

[16] See *Quintanilla v. Tex. Television, Inc*., 139 F.3d 494, 498–99 (5th Cir.1998) (holding that plaintiffs who pleaded copyright-infringement claim did not plead claim for accounting of copyright co-owners and affirming summary judgment and denial of leave to amend to add accounting claim where "summary judgment motion was prepared based on the pleadings on file"); *Faulk v. Duplantis*, Nos. 12–1714, 12–1717, 2013 WL 4431339, at *4–*5 (E.D. La. Aug. 16, 2013) (declining, in employment case, to consider retaliatory acts raised for the first time in affidavit in support of summary-judgment motion because "Rule 8(a) is [not] so relaxed that [a plaintiff] need not plead the specific acts of retaliation upon which he bases his claim for relief. Defendants cannot defend a retaliation case that behaves as a moving target.").

[17] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 108 S. Ct. 915, 99 L.Ed.2d 107 (1988),

[18] *Peterson v. City of Fort Worth, Tex*., 588 F.3d 838, 848 (5th Cir. 2009) (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir.1998)) (knee strike to plaintiff's thigh was not extreme).

[19] *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir.1985).

7

actions were manifestly indefensible."[20] Thus, shooting a fleeing suspect in the back will not warrant ratification, even if it is determined that such conduct did not violate policy.[21] Further, in a case where officers dragged a sleeping man out of his car, threw him to the ground, and kneed him in the thigh, rupturing his femoral artery, no ratification was found.[22] In that case, the Fifth Circuit panel "quickly conclude[d]" that precedent "forecloses ratification liability," even though the chief determined after an investigation that the officers were complying with policies.[23]

This instant case is not extreme enough to trigger a ratification claim. Here, Officer Burmaster faced a fast-developing situation involving two aggressive dogs arising out of a dangerous call for service in which he had to make a split-second decision.[24] The facts determined by the NOPD established that Officer Burmaster's actions were within NOPD use of force policies. NOPD use of force policy is that "an officer may not kill a pet dog unless he reasonably believes the dog poses a threat, and he is in imminent danger of being attacked."[25] The correspondence from Superintendent Kirkpatrick to Officer Burmaster, and Superintendent Kirpatrick's deposition testimony, describes the numerous objective facts supported the finding that Officer Burmaster reasonably believed that the dog was a threat and that he was in imminent danger of being attacked.[26]

For these reasons, Plaintiff's Motion should be denied.

---

[20] *Allen v. City of Galveston, Tex.*, No. G–06–467, 2008 WL 905905, at *8 (S.D.Tex. March 31, 2008) (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1162 (5th Cir.1986)).
[21] *Snyder*, 142 F.3d at 798
[22] *Peterson v. City of Fort Worth, Texas* 588 F.3d 838, 843 (5th Cir. 2009).
[23] *Id.*, at 848.
[24] Because Plaintiffs are the movants, they are not entitled to any inferences in their favor. See R. Doc. 162, p. 8 ("the court must … draw[] all inferences most favorable to the party opposing the motion." (quoting *Reid v. State Farm Mut. Auto. Ins. Co*. 784 F.2d 577, 578 (5th Cir. 1986).
[25] Exhibit 4 (Excerpt of transcript of deposition of Ryan Lubrano), pp. 90:21 – 91:2; Exhibit 3, para. 32.
[26] Exhibits 1, 2.

### d. **Prior rulings of this Court denying the parties' motions for summary judgment do not support a factual finding of "extreme" circumstances.**

Finally, Plaintiffs mistakenly rely on a ruling in the Fifth Circuit's opinion on Burmaster's qualified immunity appeal to assert that law of the case has been created establishing that this case is "extreme" for purposes of a ratification theory. This argument is defective for many reasons.

First, the Fifth Circuit ruling was that "district court did not err in not dismissing the Plaintiffs' claims for punitive damages."[27] The Fifth Circuit's ruling did not involve any analysis with respect to ratification, did not make any findings of fact. There is no basis for Plaintiffs' assertion that the Fifth Circuit's opinion provides evidentiary support for their ratification claims. Contrary to Plaintiffs' assertion, the Fifth Circuit did not find that "the shooting could be the basis for punitive damages."[28] The Court merely decided that evidence could be presented to the jury regarding punitive damages.

Second, this Court's ruling on Burmaster's motion for summary judgment concerning punitive damages, which the Fifth Circuit referenced, was "that, like the reasonableness analysis, the question of whether or not Defendant Burmaster showed 'reckless or callous indifference" to the Plaintiffs' constitutional rights is a factual question that must be decided by the jury."[29] Hence, it is clear that neither this Court, nor the Fifth Circuit, made any factual findings that could support Plaintiffs' instant Motion. Further, this Court's ruling was guided by the rule that "the court must assess the evidence and review the facts drawing all inferences most favorable to the party opposing the motion."[30] Thus, although Plaintiff benefited from inference as non-movant in a

---

[27] R. Doc. 224-1, p. 3 (quoting *Brown v. Burmaster*, 2025 U.S. Ap. LEXIS 1129, *7, footnote 3 (5th Cir. Jan. 17, 2025).
[28] R. Doc. 224-1, p. 1.
[29] R. Doc. 162, p.14-15.
[30] R. Doc. 162, p. 8.

summary judgment motion, that is not the case here. Plaintiffs are not entitled to favorable inferences and their Motion should be denied.

Respectfully submitted:

*/s/ James M. Roquemore*
**JAMES M. ROQUEMORE, LSB #40035**
ASSISTANT CITY ATTORNEY
james.roquemore@nola.gov
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET, SUITE 5E03
NEW ORLEANS, LOUISIANA 70112
TEL: (504) 658-9800
FACSIMILE: (504) 658-9868

*Counsel for Derrick Burmaster and the City of New Orleans*