UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and | * | CIVIL ACTION |
| JULIA BARECKI-BROWN | * | |
| | * | DOCKET NUMBER: 22-00847 |
| VERSUS | * | |
| | * | SECTION: L |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | HONORABLE ELDON E. FALLON |
| NEW ORLEANS | * | |
| | * | DIVISION: 4 |
| | * | |
| | * | HONORABLE KAREN WELLS ROBY |

*************************************************************************

### DERRICK BURMASTER AND THE CITY OF NEW ORLEANS' STATEMENT OF MATERIAL FACTS THAT PRESENT A GENUINE ISSUE

Shaun Ferguson and the City of New Orleans (the "City Defendants"), pursuant to Local Rule 56.2, submit the following Statement of Material Facts that Present a Genuine Issue. This statement is submitted solely for the purposes of Plaintiffs' Motion for Partial Summary Judgment on Ratification [Doc. 224]. Any statement herein is not to be considered an admission as to any fact or admissibility at trial.

1. **Defendants' response to Plaintiffs' Statement of Material Facts (R. Doc. 224-2).**

| # | Plaintiffs' Material Facts [Doc. 224-2] | City Defendants' Response |
|---|---|---|
| 1. | Officer Burmaster chose to aim at, shoot, and kill the smaller of two dogs on residential property. | Disputed. Plaintiff cites the Fifth Circuit opinion in the instant case, *Brown v. Burmaster*, 2025 U.S. App. LEXIS 1129 (5th Cir. Jan. 17, 2025). As the Court stated in footnote 1, "we view the facts in the light most favorable to the Plaintiffs." Id., *2, footnote 1. As such, the "facts" are not law of the case or deemed indisputable. In any event, this statement is inaccurate in that |

1

|    |    |    |
|----|----|----|
|    |    | Officer Burmaster "chose" to defend himself against what he reasonably believed was a threat of imminent harm from a vicious animal. |
| 2. | The dog was a sixteen-week-old puppy that weighed just over 22 pounds and was less than a foot and a half tall. | Disputed for the same reason as in number 1, above. Further, this statement mischaracterizes the threatening characters of the dogs faced by Officer Burmaster. |
| 3. | The video evidence "shows that Officer Roussel tapped Burmaster on the shoulder indicating they should leave through the gate and Burmaster chose not to leave." | Disputed for the same reason as in number 1, above. Further, this statement mischaracterizes the circumstances faced by Officer Burmaster in the fast-developing situation as Plaintiffs' dogs aggressively ran down the front porch stairs. |
| 4. | The Fifth Circuit affirmed that this conduct was such that the "district court did not err in not dismissing the Plaintiffs' claims for punitive damages." | Disputed. This is not a finding of fact. Further, the assertion that the Fifth Circuit made any findings as to Officer Burmaster's conduct is false. |
| 5. | On May 1, 2025, Superintendent Anne Kirkpatrick testified as follows:<br>·9· · · ·Q.· · And with your signature on the 10· ·disciplinary document, you approved of Burmaster's 11· ·decision to shoot the dog and his basis for it; 12· ·correct? 13· · · ·A.· · I think it's reasonable that he fell 14· ·within that range of what would be deemed 15· ·reasonable. 16· · · ·Q.· · And so you approved of the decision? 17· · · ·A.· · Yes. 18· · · ·Q.· · And his basis for making the decision? 19· · · ·A.· · His and the weight of all the others who 20· ·weighed it along the way, which were all those 21· ·deputy chiefs, everyone who assisted us. | Undisputed. |

2. **Defendants' Statement of Material Facts in opposition to Plaintiffs' Motion for Summary Judgment on Ratification.**

In further response Plaintiffs' Motion for Partial Summary Judgment on Ratification, Defendants provide the following additional facts that are not in dispute:

1. The New Orleans Police Department ("NOPD") has a policy concerning Use of Force with respect to Dangerous Animals, which is set forth in NOPD Operations Manual, Ch. 1.3, paragraph 32.[1]

2. On May 1, 2025, Superintendent Kirkpatrick testified as follows

    Q.    And paragraph 32 is a use of force policy specifically dealing with dangerous animals.

    A.    Yes, that's correct.

    Q.    In looking at paragraph 32, … can you explain where the imminent threat for his safety was?

    A.    Well, the animal is charging, and I think that that's an imminent threat, and to have an animal charging at you, that makes it imminent.· And the fact that the second officer also assessed that threat as imminent, such that he ran.

    Q.    Can you explain where you found a reasonable methods not reasonably available or likely to be ineffective?

    A.    According to … Officer Burmaster, who said he wasn't going to be able to jump over the fence. The other officer had already run out and was closing the fence. He didn't think he had time to get out that gate. He also didn't think he could jump over that gate or over the fence because I think it had spikes at the top, that's

---

[1] Exhibit 3, NOPD Operations Manual, Ch. 1.3.

my understanding. And so he's now in an imminent situation and he had already drawn his gun and I actually support the fact that he had pulled his firearm.

Q. I would like to ask you that. Explain why pulling his firearm when he did was not a violation of NOPD?

A. It's not a violation as a matter of fact because he's going into a domestic violence situation. The reports that came to them was that they could hear that whoever reported said there was yelling and screaming, which means you, in an officer's mind, is that there's an active, assaultive behavior potentially. And they're walking in, he's hearing these dogs coming out. How do you know that it wasn't a party involved in the domestic sending dogs out? You don't know. And so for him to have drawn his weapon, it's dark. All of those factors to me are reasonable that you would draw your weapon.

Q. The next line, it says the officer must be cognizant of the surroundings when shooting at an animal and show no risk to people in the area. Was there evidence that he was cognizant of the surroundings?

A. Yes. … And the fact that he was doing the kissing voices to see if there was a dog, trying to see if he could solicit, that is telling me he's cognizant that there could be some danger issues here.

Q. But is there evidence that he was actively looking to see if dogs were evidence?

A. Yes, and that to me was even more supportive that he is operating under his training and his policy, and he was trying to assess that, sure enough, the dogs come charging.

Q. The other part of that sentence has to do with to ensure there's no risk to people in the area, in evaluating the totality of the circumstances and the facts. What do you have to say about that factor?

A. They're unrolling very fast on them, and the law and the policy says that we're not to do the 20-20 hindsight when things are evolving in split-second decisions and he apparently had assessed well enough that no one was injured in his use of deadly force.

Q. The next sentence in this particular policy, deals with reasonable contingency plans.

A. Yes.

Q. How did that factor into your decision?

A. Again, I didn't think it was unreasonable. When you have this unfolding event, you've got your partner running away on you, that, again, I cannot overemphasize how that corroborated, for me, the fact that there was two different independent people who perceived a threat at the same time. One was able to run out the gate, and so we are having split-second decisions here. And so I think he squarely was within the policy, because it was cognizant. He was aware. He knew what he was walking into. And he was making reasonable efforts to see, even about the dogs. That's mindfulness.[2]

---

[2] Exhibit1, Excerpts of Deposition of Anne Kirkpatric, pp. 70:3 – 74:2.

2.      On October 27, 2023, by letter issued from Superintendent Kirkpatrick to Officer Derrick Burmaster, Superintendent Kirkpatrick issued a final decision on the disciplinary investigation conducted by NOPD concerning Officer Burmaster's shooting of Plaintiffs' dog.[3]

Respectfully submitted:

*/s/ James M. Roquemore*
**JAMES M. ROQUEMORE, LSB #40035**
ASSISTANT CITY ATTORNEY
james.roquemore@nola.gov
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET, SUITE 5E03
NEW ORLEANS, LOUISIANA 70112
TEL: (504) 658-9800
FACSIMILE: (504) 658-9868

*Counsel for Shaun Ferguson and the City of New Orleans*

---

[3] Exhibit 2, Letter dated October 27, 2023, from Anne Kirkpatrick to SPO Derrick Burmaster, re: PIB Control Tracking Number: 2021-0238-R.