UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DEREK BROWN, ET AL | CIVIL ACTION |
| VERSUS | NO. 22-847 |
| DERRICK BURMASTER, ET AL | SECTION "L" (4) |

**Memorandum in Support of Plaintiffs' Motions *in Limine***

This case is about the use of excessive force and killing of Plaintiffs' sixteen-week-old puppy by New Orleans Police Department officer Derrick Burmaster. At the trial of this matter, this Court should exclude the following by Defendants:

1. Any evidence or reference to Plaintiffs' *other* dog biting people, because Burmaster did not know the other dog's history, and so it could not have been relevant to his decision to shoot the puppy.

2. Any evidence or reference to Plaintiff Derek Brown's alcohol use as irrelevant and prejudicial.

3. Any evidence of or reference to Defendant Derrick Burmaster's military service and service-related trauma as irrelevant.

4. Any reference to the term or argument that Defendant Derrick Burmaster was "exonerated" as misleading.

5. Any testimony about NOPD academy training and a 2017 "Daily Training Bulletin" because Defendants do not know anything about the content of those trainings.

The Court should also grant Plaintiffs' prior Motions *in Limine* (R. Docs. 94, 102, and 125), re-urged in R. Doc. 182, and re-urged herein. Specifically, the Court should:

6. Bar any intimations of criminal conduct by Plaintiffs or reference to domestic violence, as NOPD cleared them of any wrongdoing.

7. Include Apollo's height and weight in the stipulated facts, given that the autopsy report is a joint exhibit.

8. Bar any reference to Burmaster's finances or financial status, because Burmaster failed to

1

#103959587v1

      disclose information on that topic until after his deposition.

9. Bar Sgt. Pruitt from saying the shooting was "justified" because she was using that word "strictly limited to whether or not [Burmaster] committed a crime."

For the reasons herein, Plaintiffs' motion should be granted.

**1.**      **This Court should exclude evidence of or reference to past behavioral history of Plaintiffs' other dog that Defendant Burmaster was unaware of at the time, because that unknown history could not influence Burmaster's decisionmaking.**

The Fourth Amendment guarantees the rights of individuals "against unreasonable searches and seizures."[1] In *Graham v. Connor,* the Supreme Court warned that the "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[2] In *Graham,* the Supreme Court explained that the analysis is limited to "the facts and circumstances confronting" the officers, rather than other factors.[3] For that reason, in an excessive force case, the finder of fact is to consider the "information available to the officer[s] at the time."[4] And so courts in excessive force cases will often exclude evidence of information that was not available to officers at the time of the use of force.[5]

---

[1] U.S. Const. amend. IV.
[2] *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989).
[3] *Id*. at 397.
[4] *Carroll v. Ellington*, 800 F.3d 154, 171 (5th Cir. 2015), citing United States v. Silva, 957 F.2d 157, 160 (5th Cir. 1992). *See also Wash. ex rel. J.W. v. Katy Indep. Sch. Dist.*, 390 F. Supp. 3d 822, 839 (S.D. Tex. 2019) (noting that in use of force context, a "court must consider only the information available to the officer at the time"); *Estate of Wise v. City of Gladewater*, 2019 U.S. Dist. LEXIS 90413, 2019 WL 2302719, at *5 (E.D. Tex. May 30, 2019) ("The Court's inquiry is to be conducted from the viewpoint of a reasonable officer with the information available to the [officer] at the time force was applied").
[5] *E.g., Ikhinmwin v. Rendon*, No. 5:16-CV-184-OLG, 2018 U.S. Dist. LEXIS 227885, at *5 (W.D. Tex. Apr. 13, 2018) (quashing subpoena because it sought information that would not have been "available to [the officer] at the time of the use of force."); *Behl v. Vill. of Riverton*, No. 20-CV-3097, 2022 U.S. Dist. LEXIS 238728, at *8 (C.D. Ill. May 19, 2022)(excluding evidence that was not "facts and circumstances available at the time of arrest"). *See also Ochana v. Flores*, 347 F.3d 266, 272 (7th Cir. 2003)("It was not an abuse of discretion for the court to grant the officers' motion in limine to bar ... the disposition of the underlying criminal charges, because these were not facts within the officers' knowledge at the time of the arrest ....").

Plaintiffs anticipate that Defendants will attempt to put on evidence regarding information that was not available to Defendant Burmaster at the time of his use of force. Namely, during the deposition of Plaintiff Derek Brown, Defendants questioned him regarding Plaintiffs' other dog, Bucho, and whether Bucho had any history of biting people.[6]

This testimony should be excluded at trial under Fed. R. Evid 402, because it does not reflect information available to Defendant Burmaster at the time, and so is irrelevant to the legal analysis.[7] Additionally, Defendant Burmaster was not responding to Bucho's behavior because Bucho did not approach him.[8] Defendant Burmaster did not fire his weapon at Bucho, he fired his weapon at the puppy, Apollo, because he was responding to Apollo's approach – this response is captured on Officer Burmaster's body-worn camera video.

Even if the behavioral history of Plaintiffs' other dog was relevant for another purpose, it should be excluded under Fed. R. Evid. 403, because the probative value is substantially outweighed by unfair prejudice, confusing the issues, and the risk of misleading the jury. It is undisputed that Apollo was an 16-week-old puppy. Allowing Defendants to put on evidence of Bucho's behavioral history would risk the jury conflating the risk posed by the 16-week-old puppy Apollo with the risk posed by a fully grown adult dog.

**2.    This Court should exclude any evidence of Plaintiff Derek Brown's alcohol use as irrelevant and prejudicial.**

During the deposition of Plaintiff's expert, Dr. Elizabeth Berk, Defendants questioned Dr.

---

[6] Ex. A (Derek Brown Dep.) at 23:11-26:7.
[7] Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").
[8] R. Doc. 122-2 (Burmaster Dep.) at 66:16-20 ("Q. The larger dog did not run at you; correct? A. I don't know what the dog was doing, but when I shot the smaller dog, the other one retreated back upstairs, and I was able to escape out of the backyard.")

#103959587v1

Berk about whether Mr. Brown was a "functional alcoholic."[9] Dr. Berk responded that she had "no indication" that Mr. Brown was a functional alcoholic. In response to Defendants' counsels' questions about Mr. Brown's alcohol consumption and tolerance level, Dr. Berk declined to speculate. Dr. Berk clarified that she determined Mr. Brown's symptoms were consistent with PTSD. She did not observe symptoms consistent with alcoholism or alcohol abuse.

Speculation, even by an expert, is prohibited by Fed R. Evid. 702 and *Daubert*. The subject of an expert's testimony must be "scientific knowledge", and "knowledge" connotes more than subjective belief or unsupported opinion.[10] In this case, Plaintiff's expert, Dr. Berk, declined to speculate and confirmed that she had no basis to believe Mr. Brown's symptoms of emotional distress were due to alcoholism or alcohol abuse.

Information regarding Mr. Brown's alcohol consumption is not related to Dr. Berk's opinion and should be excluded under Fed. R. Evid. 402 because it lacks probative value.[11] Even if it were relevant for another purpose, "gratuitously mentioning drug and/or alcohol use when it is not related to the opinions these experts offer violates Fed. R. Evid. 403."[12] Accordingly, Defendants should be prohibited from introducing evidence of Plaintiff Derek Brown's alcohol use.

3.  **This Court should exclude evidence of and reference to Defendant Derrick Burmaster's military service or service-related trauma as irrelevant.**

Prior to the incidents which form the basis of the Plaintiffs' causes of action, Defendant Derrick Burmaster had previously served in the United States Military. His military service is

---

[9] Ex. B (Dr. Elizabeth Berk Dep.) at 38:23-45:9.
[10] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590(1993).
[11] *See Bester v. Travis*, No. 4:11CV60 DPJ-FKB, 2013 U.S. Dist. LEXIS 89767 *4 (S.D. Ms. June 26, 2013).
[12] *Id.*

honorable, but not relevant to the claims or defenses in this matter. Plaintiffs anticipate that defense counsel may attempt to improperly bolster the character of Defendant Derrick Burmaster by referencing his military service or service-related trauma to bolster his credibility with the jury or to improperly influence or prejudice the jury in favor of Burmaster. In excessive force cases, the question is whether officers violated the law on a specific date. The question is not whether they are generally good or generally bad officers. For that reason, courts frequently exclude evidence of military service.[13]

Accordingly, this Court should exclude any evidence of Defendant Burmaster's military service or service-related trauma as irrelevant under Rule 402, more prejudicial than probative under Rule 403, and also as improper hearsay and character evidence.

4. **This Court should exclude any reference to the term "exonerated" and prohibit Defendants from making any argument that Defendant Burmaster was "exonerated."**

During a New Orleans Police Department Chief's Hearing, the NOPD hearing committee characterized Defendant Burmaster as "exonerated" of some of the alleged violations. What they meant is that NOPD – not an external body – had decided Burmaster did not violate NOPD policy.

Plaintiffs anticipate the Defendants may improperly use this term at trial to characterize Defendant Burmaster as "exonerated," *i.e.* found not liable for the subject allegations by a legal authority. The word "exonerated" in common parlance means someone who has been judicially determined to be innocent.[14] In the context of this trial, the legal term "exonerated" would

---

[13] *E.g.,* in *United States v Barry*, 814 F.2d 1400 (9th Cir. 1987); *United States v. Warren*, 2010 U.S. Dist. LEXIS 124063, at *14 (E.D. La. Nov. 4, 2010); *Arcement v. Geovera Specialty Ins. Co.*, No. 13-5436, 2014 U.S. Dist. LEXIS 203178, at *11 (E.D. La. July 10, 2014).

[14] *E.g., United States v. Proctor*, 356 U.S. 677, 681 n.6, 78 S. Ct. 983, 986 (1958) (describing an "innocent accused who is exonerated"); *Haskell v. Harris*, 669 F.3d 1049, 1051 (9th Cir. 2012) ("DNA analysis is an extraordinarily effective tool for law enforcement officials to identify arrestees, solve past crimes, and exonerate innocent suspects."); *Delaney v. Superior Court*, 50 Cal. 3d 785, 809, 268 Cal. Rptr. 753, 767,

5

unnecessarily confuse the issues and mislead the jury. It would be just as probative and far less misleading to state that NOPD decided that Defendant Burmaster did not violate certain policies. Accordingly, Defendants should be prohibited from using the legal term "exonerated" or making any argument that Defendant Burmaster was "exonerated."

5. **This Court should exclude any testimony about academy training and a 2017 "Daily Training Bulletin" because Defendants do not know anything about the content of those trainings.**

At deposition, the City's 30(b)(6) witness testified about "daily training bulletins" used by NOPD to train officers. Specifically, NOPD identified two daily training bulletins about interactions with animals – one from 2017 and one from 2019.

The City was able to provide the 2019 DTB, and so Plaintiffs do not object to evidence of it. But this Court should exclude any reference of the 2017 DTB because Defendants have not been able to provide it and cannot even describe the contents.

Apparently, the 2017 DTB consisted of a few online ASPCA videos officers were supposed to watch and then take a short test.[15] But because no one from NOPD "downloaded or captured any of those videos," the City's 30(b)(6) witness conceded that the City does not "know anything about the contents of these videos."[16] Sgt. David Duplantier – another 30(b)(6) witness on training – could not recall anything about the content of the 2017 daily training bulletin.[17] And Burmaster

---

789 P.2d 934 (1990) ("'Exoneration' means "the removal of a burden, charge, responsibility, or duty.), *citing* Black's Law Dict. (5th ed. 1979) p. 516, col. 2.

[15] Ex. C (Barnes Dep.) at 87:4-9.

[16] *Id*. at 87:9-12 ("Q. So you don't know anything about the contents of these videos, right? A. That's correct. I don't know the specific content of the videos."). Plaintiffs subpoenaed videos from the ASPCA in 2023, but they are undated – so there is no way of knowing if they are the same ones used by NOPD in 2017.

[17] R. Doc. 122-5 (Duplantier Dep.) at 29:16-22 ("Q. Do you have any knowledge of whether Burmaster took that online ASPCA training? A. No knowledge. Q. Okay. Have you taken it? A. Yes, sir. Q. Do you remember what was covered? A. No, I don't.")

did not recall taking this DTB at all.[18]

The Court should also exclude references to academy training about animals.[19] Sgt. David Barnes – one of the City's 30(b)(6) witnesses about training – could not recall anything about the content of the academy training at any time before the present.[20] And Burmaster's only recollection about any of his training about interacting with animals was two words: "be safe."[21]

Because no witness can testify about what Burmaster's academy training or the 2017 DTB actually consisted of, Defendants should not be allowed to put on evidence of those training items.

**6.   This Court should exclude the evidence identified in Plaintiffs' Motions *in Limine* (R. Docs. 94, 102, and 125).**

Plaintiffs respectfully request that this Court reconsider and, after reconsideration, grant Plaintiffs' Motions *in Limine* (R. Docs. 94, 102, and 125). This includes:

a.  <u>This Court should bar any intimations of criminal conduct or domestic violence by Plaintiffs, as NOPD cleared them of any wrongdoing.</u>

Plaintiffs ask that this Court bar Defendants from suggesting that Plaintiffs committed a crime, either related to the initial call for service or for how they secured their dogs. Officer Burmaster has already agreed not to accuse Plaintiffs of "criminal conduct of plaintiffs with regard to their dogs,"[22] but the City has not agreed.

---

[18] R. Doc. 122-2 (Burmaster Dep.) at 183:11-184:4 ("Q. Do you recall receiving an in-service training -- in-service training using this curriculum in 2019 or so? . . . The Witness: This looks familiar. . . . .Q. Do you recall receiving any training besides the training that you received using this document? A. No.")
[19] R. Doc. 122-2 (Burmaster Dep.) at 182:12-15 ("Q. Okay. And you -- What other training have you received since that era about interacting with animals on the job? A. Be safe.")
[20] Ex. C (Barnes 30(b)(6) Dep) at 14:14-20 ("Q. Do you know anything about the contents of the academy training at any time for NOPD? A. I don't know the specifics of the contents of the academy training, just that it is the -- it is now a DOJ and COPS training through an online training that they do that is, I think, five modules."); 15:9-10 ("some academy training, but you're not sure of the contents of it . . . That's correct.")
[21] R. Doc. 122-2 (Burmaster Dep.) at 182:12-15 ("Q. Okay. And you -- What other training have you received since that era about interacting with animals on the job? A. Be safe.")
[22] R. Doc. 118 at 1.

The facts of this case were precipitated by an argument the Plaintiffs had, which led a neighbor to call the police. Neither plaintiff was arrested, and there are no allegations of domestic abuse. Because Burmaster was answering a call for service, Plaintiffs do not dispute that Burmaster had a valid reason to enter their property. As a result, the specific facts of the call for service are not relevant here. They should therefore be excluded as irrelevant under Fed. R. Evid. 401.

Going into the details of the call for service might falsely suggest to the jury that one of the Plaintiffs was engaged in domestic violence. Indeed, some of Defendants' witnesses at deposition suggested – without any evidence – that it was a "domestic violence" situation.[23]

For that reason, the details of the call for service or any description of it as a "domestic violence" call should also be excluded as unfairly prejudicial under Fed. R. Evid. 403. "Unfairly prejudicial" evidence is that which has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[24]

If an explanation for Burmaster's presence is needed at trial, it is sufficient to say there was "a call for service" or a "disturbance" without getting into the details, which are irrelevant to the claims and defenses here.

Also, during his internal affairs interviews, Burmaster suggested that the Browns might have committed a crime by failing to secure their dogs. But the dogs were behind a latched gate, and Burmaster had no specific facts to suggest a failure to secure. Sergeant Deborah Pruitt of NOPD's Public Integrity Bureau investigated the question of whether the dogs were secured, and concluded that the dogs were "properly secured" and that there "was not any wrongdoing on the

---

[23] *E.g.*, R. Doc. 225-7 (Lubrano Dep.) at 30:9-18 ("It was a domestic violence call.")
[24] *U.S. v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) (*quoting Old Chief v. United States*, 519 U.S. 172, 180 (1997)).

#103959587v1

Browns' part."[25] Accordingly, any suggestion that the Browns failed to follow the law in securing their dogs is unsupported and unfairly prejudicial, and should be excluded.

    b. <u>This Court should include Apollo's height and weight in the stipulated facts, given that the autopsy report is a joint exhibit.</u>

This Court ordered the parties to conduct a conference "for the purpose of arriving at all possible stipulations."R. Doc. 63-1. The parties held that conference on March 15, 2023. Defendants reviewed Plaintiffs proposed stipulated facts, circulated several days in advance. The parties agreed on some stipulated facts, and could not agree on others. One in particular, however, presents an issue at trial.

Plaintiffs proposed as a stipulated fact that "Apollo was 17.7 inches tall, and weighed 22.3 pounds." That height and weight is derived from converting the 45 cm and 10.1 kg measurements of Apollo's autopsy into inches and pounds.[26] The autopsy is a joint exhibit.[27]

But despite the height and weight being contained in a joint exhibit, City Defendants refused to stipulate to that fact. They did not dispute that the measurements are accurate; they only contended that Apollo's size was not relevant to the case. But Apollo's size is certainly relevant to this dog-shooting case, in which Burmaster contends he shot Apollo because the dog

---

[25] R. Doc. 94-6 at 71-72 (Deposition of 30(b)(6) witness D. Pruitt):

    Q. Turning to page 37. Am, I correct that you concluded that the owners, the Brown's, had properly secured their yard to prevent the dogs from escaping?
    A. Correct.
    . . .
    Q.· Understood. So you base -- based on what I just read, you concluded that there was not any wrongdoing on the Brown's part, correct?
    A. Correct.

[26] R. Doc. 94-11 (Autopsy) at 2 ("Submitted for postmortem examination is a 10.1 kg, juvenile, intact male Catahoula dog . . . Crown to rump length is 68 cm, height is 45 cm, and the body thickness is 17 cm.")
[27] R. Doc. 228 (Joint Exhibit 8).

9

presented a serious risk of injury.[28]

And the City Defendants' refusal to stipulate to a fact they do not dispute creates a logistical problem at trial: a witness will have to do math on the stand to convert Apollo's height and weight from kilograms and centimeters to the more familiar pounds and inches. For that reason, Plaintiffs ask that this Court include in the stipulated facts what the City does not dispute – that "Apollo was 17.7 inches tall, and weighed 22.3 pounds." This simple stipulation would prevent unnecessary testimony and avoid wasting trial time on unit conversions.

c. This Court should bar any reference to Burmaster's finances or financial status, because Burmaster failed to disclose information on that topic until after his deposition.

On June 30, 2022, counsel for Plaintiffs propounded a first set of Interrogatories, Requests for Production of Documents, and Requests for Admissions to Burmaster.[29] Those requests included requests regarding Burmaster's financial information.

On July 28, 2022, Burmaster's attorney asked for a thirty-day extension of the time to respond.[30] Plaintiffs' counsel agreed. On August 29, 2022, Burmaster's attorney asked for a three-day extension of the time to respond.[31] Plaintiffs' counsel agreed. Also on August 29, 2022, Burmaster's asked for an additional six-day extension of the time to respond.[32] Plaintiffs' counsel agreed.

On September 7, 2022, Defendant Burmaster partially responded to the discovery requests.[33] He provided objections and written responses to some requests. But he did not provide

---

[28] *See Stephenson v. McClelland*, 632 Fed. Appx. 177 (5th Cir. 2015) (unpublished) (noting in dog shooting case that the dog was a "50-pound, three-year-old boxer").
[29] R. Doc. 86-4.
[30] *Id*. at ¶ 3.
[31] *Id*. at ¶ 4.
[32] *Id*. at ¶ 5.
[33] R. Doc. 86-6.

a single page of documents responsive to any of the Requests for Production. Nor did he provide a privilege log.[34] Nor did he provide any information about his financial status.

Later on September 7, 2022, counsel for Plaintiffs sent a letter to Burmaster's counsel to set a meet and confer regarding Burmaster's deficient responses.[35] Counsel for Plaintiff explained that the request for information related to Defendant Burmaster's financials was relevant to Plaintiffs' punitive damages claim.[36]

On September 16, 2022, the parties held a meet-and-confer by telephone to address the deficient responses described in Plaintiff's counsel's meet-and-confer letter.[37] At that meet-and-confer, Burmaster's counsel agreed to provide his financial documents and information.[38]

Over the next months, Burmaster did not follow through on any of the items his counsel committed to providing.[39] On February 19, 2023, Plaintiffs' counsel sent an email pointing out the failure to follow-through, and asking Burmaster's counsel to provide by February 24 the items he committed to producing.[40]

On February 24, 2023, the parties held a meet-and-confer by telephone to discuss why Burmaster had not provided any of the items that he had committed to providing.[41] Counsel for Defendant Burmaster offered no explanation for why no items had been provided, other than that "last fall was quite busy."[42] Counsel for Defendant Burmaster stated that he would get back with

---

[34] R. Doc. 86-4 at ¶ 6.
[35] R. Doc. 86-7.
[36] *Id.* at pg. 2, *citing U.S. E.E.O.C. v. Denham Springs Pub. Co.,* No. CIV.A. 10-614, 2012 WL 262268, at *2 (M.D. La. Jan. 27, 2012), citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981).
[37] R. Doc. 86-8.
[38] *Id.*
[39] R. Doc. 84-4 at ¶ 10.
[40] R. Doc. 86-9.
[41] R. Doc. 86-10.
[42] *Id.*

Plaintiff's counsel regarding this on Monday, February 27, 2023.[43]

On February 27, 2023, counsel for Defendant Burmaster provided supplemental discovery responses.[44] These responses were deficient in that Defendant Burmaster still refused to conduct an ESI search of his emails, social media, and text messages and still did not provide the requested financial information.[45] He still did not provide any document responsive to any request for production.[46]

Plaintiffs filed a motion to compel.[47] After that, Burmaster provided a short interrogatory response and three documents related to limited aspects of his financial status. But he produced no documents or information about the contents of his retirement accounts. There is no indication that he even looked.

Then, two days <u>after</u> his deposition, and just three weeks before the original trial, Burmaster provided two years of tax returns.[48] This late production prevented Plaintiffs from serving subpoenas on financial institutions or questioning Burmaster about his tax returns at his deposition. It would therefore be prejudicial to allow Burmaster to plead poverty at trial, when his incomplete and late production prevented Plaintiffs from fully inquiring.[49]

Plaintiffs are willing, however, to give up their right to put on evidence at trial of

---

[43] *Id.*
[44] R. Doc. 86-11.
[45] *Id.*
[46] R. Doc. 86-4 at ¶ 15.
[47] R. Doc. 86.
[48] *Compare* R. Doc. 92-4 (March 10, 2023 deposition) *with* R. Doc. 92-3 (March 12, 2023 production of tax records).
[49] *See Imani v. Baton Rouge*, 17-cv-00439-JWD-EWD, R. Doc. 376 at 3-4 (M.D. La. Dec. 20, 2022) (excluding "defense witnesses that were not disclosed in initial disclosures" because these "witnesses were not disclosed timely to Plaintiffs and Plaintiffs would suffer prejudice were the Court to allow their testimony since they are not able to depose them at this time.").

Burmaster's finances, in exchange for Burmaster being similarly limited. Plaintiffs propose that no party put on any evidence at trial about Burmaster's finances.

   d. <u>The Court should exclude Sgt. Pruitt from saying the shooting was "justified" because she was using that word "strictly limited to whether or not [Burmaster] committed a crime."</u>

Sgt. Debra Pruitt was the NOPD officer assigned to investigate the "criminal aspect" of Burmaster's shooting of Apollo.[50] That meant that she looked to "see if there's any possible criminal criminality to it."[51] She investigated the shooting and issued a report that concluded that "Sergeant Pruitt did not find Officer Burmaster violated R.S. 14:102-Relative to Cruelty to Animals; simple and aggravated or any other municipal or state violation. Sergeant Pruitt found Officer Burmaster justified in his actions."[52]

In his Motion for Summary Judgment, Burmaster cited Pruitt's report for the proposition that Sgt. Pruitt "determined that . . . he was justified in his actions." R. Doc. 105-7 at 6. Plaintiffs anticipate that Burmaster will elicit testimony at trial from Pruitt about this written statement.

That would mislead the jury. It would be misleading because Pruitt was clear that she used the term "justified" only in the context of whether or not Burmaster had committed a crime. She explained that in her deposition:

> Q. . . . "Sergeant Pruitt found Officer Burmaster to be justified in his action." You're only saying that in the context of a criminal investigation, right?
>
> A. Yes.
>
> Q. You're not talking about whether he violated any NOPD policies, whether he was liable in the administrative proceeding, whether he was constitutionally liable;

---

[50] R. Doc. 94-6 at 11:20-23 (Defendants' counsel explaining that "Sergeant Pruitt handled the PIB criminal aspect of the investigation. Then there is an administrative aspect that Shannon Jones Brewer conducted.")
[51] R. Doc. 94-6 (Pruitt Dep.) at 13:16-20.
[52] R. Doc. 105-7 at 37.

this statement is strictly limited to whether or not he committed a crime, right?

A. Correct.[53]

She was clear that she did not assess whether Burmaster had committed a constitutional violation or tort:

Q. But you did not, in your investigation, assess whether he'd committed a constitution violation or a tort, correct?

A. No.[54]

For these reasons, testimony and argument about Pruitt's "justified" statement should be excluded under Federal Rules of Evidence Rule 401 and 403. Here, whether or not Burmaster committed a crime is irrelevant to this civil proceeding. All that needs to be determined in this case is whether Burmaster's use of force met the civil standards of objective reasonableness or negligence, which are completely different than the criminal standard.[55]

The Fifth Circuit has also cautioned against mixing phrases between their civil and criminal contexts.[56] If Defendants are allowed to point to Pruitt's statement about no criminal liability in a trial about civil liability, there would be a serious risk of confusing the jury.

### D.    Conclusion

For the reasons described above, this Court should grant Plaintiffs' motions *in limine*.

---

[53] R. Doc. 94-6 (Pruit Dep.) at 78-79 (emphasis added). Pruitt went on to state that, based on her training, a puppy running towards her would be an insufficient threat to justified lethal force; there would have to be some other indication of a threat, *id*. p. 38, and that she would not have even taken her gun out in the situation Burmaster faced. *Id*. p. 70.
[54] *Id*. at 77:15-18.
[55] *See Brown v. Edwards*, 721 F.2d 1442 (5th Cir. 1984) ("criminal and civil causes of action are different.")
[56] *U.S. v. Estate of Parsons*, 367 F.3d 409, 416 (5th Cir. 2004) ("These unfortunate situations also create the danger of misusing the term 'victim' in different contexts — civil and criminal — with the same force.")

Respectfully Submitted:

*/s/ William Most*
WILLIAM MOST (La. Bar No. 36914)
HOPE PHELPS (La. Bar No. 37259)
DAVID LANSER (La. Bar No. 37764)
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 2500, # 6825
New Orleans, LA 70170
Telephone: (504) 509-5023
E-Mail: williammost@gmail.com

TARAK ANADA (#31598)
PATRICK VAN BURKLEO (#41471)
JONES WALKER LLP
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8322
Facsimile: (504) 589-8322
E-Mail: tanada@joneswalker.com

#103959587v1