**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| DEREK BROWN and | * | CIVIL ACTION |
| JULIA BARECKI-BROWN | * | |
| | * | DOCKET NUMBER: 22-00847 |
| VERSUS | * | |
| | * | SECTION: L |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | HONORABLE ELDON E. FALLON |
| NEW ORLEANS | * | |
| | * | DIVISION: 4 |
| | * | |
| | * | HONORABLE KAREN WELLS ROBY |

**********************************************************************************

**MEMORANDUM IN SUPPORT OF**
**DERRICK BURMASTER'S AND CITY OF NEW ORLEANS'**
**RENEWED MOTION *IN LIMINE***

Defendants, Derrick Burmaster and the City of New Orleans ("Defendants"), in support of their Renewed Motion *in Limine*, respectfully show the Court the following.

**INTRODUCTION**

Defendants request that the Court issue the following evidentiary rulings:

1. No party may put on evidence of or make reference to any conclusion or recommendation of New Orleans' Police Department's Use of Force Board regarding Officer Derrick Burmaster's shooting Plaintiff's dog.[1]

2. No party may put on evidence of or make reference to any prior use of force by Officer Burmaster, except for a 2012 incident involving a dog.

3. No party may put on evidence of or make reference to any investigation by NOPD of any act by Officer Burmaster other than the shooting of Plaintiffs' dog concerning a potential violation of the NOPD.

4. No party may put on evidence of or make reference to any disciplinary action, use of force evaluation, or other NOPD investigation concerning Burmaster's conduct as an NOPD officer taken by NOPD for any act that occurred after April 10, 2021 (the shooting of Plaintiff's dog).

---

[1] This includes R. Doc. 228, pp. 12-13 (Exhibits P20, P21, P22, P29); and the testimony of Chris Goodley.

1

5. No party may put on evidence of or make reference to correspondence and comments on a draft document by one or more members of the Office of the Consent Decree Monitor.

6. No party may put on evidence of or make reference to the case opinion or the underlying facts of *State v. Lociano*, 254 So. 3d 761 (La. Ct. App. 2018).

7. Plaintiffs shall not refer to any witness as a "non-retained expert" of Defendants other than David Duplantier, John Helou, or Hans Ganthier.

8. A limiting instruction shall be given following any testimony regarding prior use of force by Officer Burmaster:

"You have heard testimony regarding one or more prior acts involving use of force by Officer Burmaster. Such evidence, to the extent you find the evidence credible, cannot be used by to infer that Officer Burmaster acted unreasonably or used excessive force on the night in question."

## ARGUMENT AND CITATION TO AUTHORITY

### 1. New Orleans' Police Department's Use of Force Board' conclusions and recommendations.

It is anticipated that Plaintiff will seek to introduce evidence that the NOPD's Use of Force Board concluded that Officer Burmaster's shooting of Plaintiff's dog was "not justified" within the meaning of NOPD's Use of Force Operations Manual, Chapter 1.3.[2] However, the NOPD's Use of Force Board's conclusion was determined to be incorrect by the NOPD Superintendent, Anne Kirkpatrick, who concluded that Officer Burmaster did not violate NOPD's use of force policy by shooting Plaintiff's dog.[3]

Superintendent Anne Kirkpatrick is the ultimate policy-maker for the NOPD. She reviewed the entire NOPD investigation for this matter and concluded that Officer Burmaster's shooting of the dog was done consistent with NOPD policy.[4] Any previous conclusion by a subordinate division of NOPD that is contrary to the Superintendent's decision should be excluded evidence

---

[2] See the Proposed Pretrial Order, R. Doc. 228, pp. 12-13 (Exhibits P20, P21, P22, P29); and the proposed testimony of Chris Goodley).
[3] See R. Doc. 208-16 (Oct. 27, 2023, final decision by Superintendent Anne Kirkpatrick).
[4] See R. Doc. 226-3.

due to irrelevance, undue confusion and undue prejudice.[5] The Use of Force Board's conclusion was wrong as to NOPD's policy and should be excluded pursuant to Federal Rule of Evidence 403.

The supremacy of the Superintendent's interpretation of NOPD police over the NOPD's Use of Force Board, is demonstrated by the stated purpose of the NOPD Use of Force Board, which is set forth in NOPD Operations Manual 1.3.7:

> The Use of Force Review Board (UFRB) serves as a ***quality control mechanism*** to ensure timely reviews of all serious use of force investigations to determine the appropriateness of the investigative findings, and to ***quickly appraise*** use of force incidents from a tactics, training, policy, and agency improvement perspective.[6]

Given the Use of Force Board's "quality control" purpose "to quickly appraise use of force incidents" from an "agency improvement" perspective, it is evident that the Board's recommendation that Officer Burmaster receive additional training is a subsequent remedial measure.[7] As such, the Use of Force Board's conclusion that Officer Burmaster's shooting of Plaintiff's dog was "unjustified" and its recommendation that Officer Burmaster receive training should be excluded for the additional reason that it is a subsequent remedial measure that is inadmissible pursuant to Federal Rule of Evidence 407.[8]

---

[5] Fed. R. of Evid. 403.

[6] Exhibit 1, NOPD Operations Manual 1.3.7, p. 1. Available at Chapter-1-3-7-Use-of-Force-Review-Board-EFFECTIVE-11-15-19-(1).pdf (last checked May 26, 2025) (emphasis added).

[7] See Fed. R. Evid. 407 ("when measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction."); See *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986)(a "disciplinary proceeding [against a police officer] constituted a remedial measure.")

[8] See *Ponds v. FORCE CORP*., No. 16-1935, 2017 WL 67530, *3 (E.D. La. Jan. 6, 2017) ("Corrective Action Items" listed in a post-accident report fall within the exclusionary scope of Rule 407); *Thornton v. Diamond Offshore Drilling, Inc*., No. 07-1839, 2008 WL 2315845, (E.D. La. May 19, 2008) (recommendations for changes in safety procedures contained within an investigation report should be excluded under Rule 407).

2. <u>**Prior uses of force by Officer Burmaster, except for a 2012 incident against a dog.**</u>

At trial, Plaintiff intends to present evidence concerning other uses of force by Officer Burmaster which did not involve animals.[9] Among other things, Plaintiff intends to argue that Officer Burmaster is "a frequent use of force" and that he "used force at least 30 times from 2011 to the present."[10] However, the truth is that Officer Burmaster only fired his gun at a dog once before, in 2012, nine years before he shot Plaintiffs' dog.[11] In addition, Officer Burmaster fired a gun in the line of duty on only two other occasions, in 2007 and 2009; but these weapon discharges were against humans.[12] For all of Officer Burmaster's other 27 reported uses of force, none involved use of a firearm.[13] Further, although Officer Burmaster's use of force triggered an NOPD disciplinary investigation on eight instances, he was not found to have violated NOPD policy on any occasion.

Evidence of Officer Burmaster's character or prior acts is not relevant or admissible to prove that he acted in that way in the present case. Federal Rule of Evidence 404(a)(1) provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." In addition, Rule 404(b) provides, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." For this reason, any argument based on Officer Burmaster's prior uses of force, and any facts relating to such prior occasions, cannot be used to support a claim that Officer Burmaster

---

[9] See R. Doc. 228, pp. 12-14 (Exhibits P14, P24, P32, P33).
[10] Doc 60 (Second Amended Complaint), ¶¶ 70, 71.
[11] R. Doc. 208-4 Affidavit of Sgt. Debra Pruitt, ¶ 8.
[12] *Id*.
[13] *Id*., ¶¶ 7, 10; R. Doc. 208-20.

used excessive force on the night in question when he shot Plaintiffs' dog. Fed. R. Evid 404(a), (b).

Further, with respect to Plaintiffs' *Monell* claim related to supervision of Officer Burmaster, prior uses of force which do not involve use of a firearm (27 uses of force), or do not involve encounters with animals (29 uses of force), are too dissimilar to give NOPD any reason to foresee that Officer Burmaster might use unreasonable force in an encounter with an animal. For example, from January 1, 2016, to April 10, 2021, the uses of force by Officer Burmaster included such things as exhibiting a firearm (4 times), use of hands (3 times), causing a take down (4 times), and exhibiting a CEW Exhibit/Laser (2 times).[14]

For *Monell* claims, Fifth Circuit jurisprudence requires that prior incidents be "substantially similar" to the alleged Constitutional violation in the case at hand.[15] The connection between prior acts and the Constitutional violation must be strong.[16] In the instant case, there is only a tenuous connection between use of force against humans and use of force against animals.

Further the number of uses of force by Officer Burmaster is not a sign that Officer Burmaster was unreasonable in his use of force. As Lieutenant John Helou testified,

Q. You were asked whether – about Officer Burmaster allegedly using force 13 times since 2016. Do you remember that?

A. Yes, sir.

Q. Is that an unusual amount of use of force for an officer in that time frame that's being a proactive police officer.

---

[14] R. Doc. 208-21 (Employee Summary Report) (CITY DEFENDANTS 3814-15).

[15] See *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 1989); *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).

[16] See *Gomez v. Galman*, 18 F.4th 769, 778 (5th Cir. 2021) (to show "deliberate indifference," a plaintiff "must show that the hired officer was highly likely to inflict the particular type of injury [he or she] suffered." (quoting *Gros v. City of Grand Prairie*, 209 F.3d 431, 433–34 (5th Cir. 2000)).

A. What was the time frame again? I'm sorry.

Q. I believe the question is since 2016?

A. No. I wouldn't say it's unusual.[17]

For these reasons, prior acts of Officer Burmaster that did not result in a finding of policy violation should not be charged against Defendants. Such evidence has no probative value. The prejudicial effect, though, would be substantial. Therefore, such evidence should be excluded under Federal Rule of Evidence 403.

### 3.  NOPD investigations concerning alleged policy violations by Officer Burmaster.

It is anticipated that Plaintiff intends to present evidence and testimony concerning NOPD investigations of potential policy violations.[18] The NOPD investigated seven of Officer Burmaster's uses of force, each of which occurred between 2000 and 2016; each of these investigations resulted in a disposition of "not sustained" or "exonerated."[19] Notably, Officer Burmaster was not charged with any disciplinary violations based on use of force from 2016 to 2021.[20] None of Officer Burmaster's other NOPD disciplinary investigations involve use of force. As such, the investigations have no probative value as to the foreseeability of the instant case by the NOPD. The only purpose this evidence has would be to impermissibly impugn Officer Burmaster's character. This evidence should be excluded pursuant to Federal Rules of Evidence 403 and 404(a) and (b).

---

[17] R. Doc. 208-5, (Excerpts of Deposition of 30(b)(6) witness John Helou), 39:5 – 39:16.
[18] See the Proposed Pretrial Order, R. Doc. 228, pp.  12-13 (Exhibits P14, P24, P32, P33)
[19] R. Doc. 208-4 Affidavit of Sgt. Debra Pruitt, ¶ 10.
[20] R. Doc. 208-21 (Employee Summary Report) (CITY DEFENDANTS 3814-15).

9. **NOPD disciplinary action, use of force evaluation, or other NOPD investigation concerning Burmaster's conduct as an NOPD officer taken by NOPD for any act that occurred after April 10, 2021 (the shooting of Plaintiff's dog).**

Defendants are not certain that Plaintiffs will seek to offer evidence concerning Officer Burmaster's conduct as a police officer after the incident involving Plaintiffs' dog, but out of an abundance of caution, Defendants seek a ruling to exclude any evidence of any NOPD disciplinary action, use of force evaluation, or other NOPD investigation concerning Officer Burmaster's conduct as an NOPD officer after April 10, 2021. Any such conduct would have no relevance as to NOPD's supervision or discipline of Officer Burmaster, since they do not prove any foreseeability. Thus, such evidence should be excluded pursuant to Federal Rule of Evidence 402 and 403.

10. **No party may put on evidence of or make reference to correspondence and comments on a draft document by one or more members of the Office of the Consent Decree Monitor.**

It is anticipated that Plaintiffs will seek to introduce an email correspondence containing comments by members of the Office of the Consent Decree Monitor ("OCDM") to the NOPD's Use of Force investigation.[21] These documents and testimony about the OCDM's communications are hearsay not admissible for any purpose. In addition, the comments constitute inadmissible opinion evidence and are irrelevant. As such this evidence should be excluded pursuant to Federal Rules of Evidence 403, 701, 702 and 802.

11. ***State v. Lociano*, 254 So. 3d 761**

It is anticipated that Plaintiffs intend to use as evidence an opinion of Fourth Circuit Court of Appeal, State of Louisiana, in *State v. Lociano*, 254 So. 3d 761.[22] *Lociano* involved an appeal in which the Court suppressed evidence based on a ruling that Officer Burmaster should have

---

[21] See R. Doc. 228, pp. 14, P40, P41.
[22] *Id.*, p. 12, P27.

obtained a warrant prior to searching an automobile. The case has nothing to do with animals or use of force. Thus, it is apparent that Plaintiffs seek to use this case to impugn Officer Burmaster's character in an effort to prove fault in this case. Further, a tribunal such as the Court of Appeals of the State of Louisiana would be given great deference by the jury, even if the case was not relevant to the issues at hand. As such, the evidence should therefore be excluded pursuant to Federal Rules of Evidence 403, and 404(a) and (b).

**12. <u>Plaintiffs should not refer to any witness as a "non-retained expert" of Defendants other than David Duplantier, John Helou, or Hans Ganthier.</u>**

Plaintiffs intend to describe one of their witnesses, Shannon Jones-Brewer, as a "non-retained expert of the City."[23] However, Defendants do not identify Shannon Jones-Brewer as a non-retained expert. In fact, Defendants do not identify her as a witness at all.[24] Further, on March 28, 2025, The City served upon Plaintiffs its Designation of Non-Retained Experts (the "Designation"), which expressly "supersedes and replaces any previous designation made by the City."[25] In its Designation, the City identified as non-retained experts, Sgt. David Duplantier, Lt. John Helou, and Chief Deputy Superintendent Hans Ganthier.

Thus, Plaintiffs' description of Shannon Jones-Brewer (or any other person not on the City's Designation) as being designated an expert will be false, confusing to the jury, unduly prejudicial to Defendants. For these reasons, Plaintiffs should be precluded from describing Shannon Jones-Brewer as being designated a non-retained expert by the City.

---

[23] See Proposed Pre-Trial Order, R. Doc. 228, p. 19 ("Shannon Jones-Brewer … NOPD 30(b)(6) witness and designated as a non-retained expert by the City.").
[24] See *Id.*, pp. 19-21.
[25] See Exhibit 2, "The City of New Orleans' Designation of Non-Retained Experts"), p. 1, footnote 1.

**13. <u>Limiting instruction regarding prior bad acts of Officer Burmaster.</u>**

Under Federal Rule of Evidence 105, if evidence is admissible for one purpose but not another, "the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." When a court admits such evidence, "it cannot refuse a requested limiting instruction."[26] The instruction "need not be given in the particular form or manner that is sought by the parties, so long as the general instructions sufficiently serve the limiting purposes of Rule 105."[27]

If the Court admits evidence of prior uses of force by Officer Burmaster, any relevance such evidence may have would be only to the *Monell* claim against the City Defendants and not to any claim against Officer Burmaster. For that reason, a limiting instruction in the following form should be given following any witness providing such testimony:

> "You have heard testimony regarding prior acts involving use of force by Officer Burmaster. Such evidence, to the extent you find the evidence credible, cannot be used by to infer that Officer Burmaster acted unreasonably or used excessive force on the night in question."

**<u>CONCLUSION</u>**

For the foregoing reasons, the Defendants' Renewed Motion *in Limine* should be granted.

---

[26] *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc*., 630 F.2d 250, 266 (5th Cir.1980).
[27] *Id*.

Respectfully submitted:

*/s/ James M. Roquemore*_____
**JAMES M. ROQUEMORE, LSB #40035**
ASSISTANT CITY ATTORNEY
james.roquemore@nola.gov
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET, SUITE 5E03
NEW ORLEANS, LOUISIANA 70112
TEL: (504) 658-9800
FACSIMILE: (504) 658-9868

*Counsel for Derrick Burmaster and the*
*City of New Orleans*