UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and<br>JULIA BARECKI-BROWN | * | Civil Action No. 22-00847 |
| | * | |
| | * | SECTION: L |
| VERSUS | * | |
| | * | HONORABLE ELDON E. FALLON |
| DERRICK BURMASTER, SHAUN<br>FERGUSON, and the CITY OF<br>NEW ORLEANS | * | |
| | * | DIVISION: 4 |
| | * | |
| | * | HONORABLE KAREN WELLS ROBY |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Plaintiffs' Objections to Defendants' Proposed Exhibits**

In R. Doc. 175-1, the Court asked for written objections as to "any exhibits to which the parties cannot agree." This filing provides Plaintiffs' objections to Defendants proposed exhibits, numbered according to the proposed Pre-trial Order.[1]

### **D1**    **Sgt. Duplantier's "Tactical Debrief" of Officer Burmaster**

This exhibit is documentation of a "tactical debrief" that Sgt. Duplantier conducted with Officer Burmaster after the shooting of the puppy Apollo. It should be excluded for several reasons.

First, it contains Sgt. Duplantier's opinions, including that the "incident was tragic and unfortunate; however, Officer Burmaster acted properly." But as detailed in Plaintiffs' *Daubert* motion (R. Doc. 217), Duplantier's opinions should be excluded because he applied a subjective analysis – and the issues at trial require an objective analysis.[2]

Second, the exhibit contains extensive, multiple levels of hearsay. It is an out-of-court statement by Duplantier saying what Burmaster said to Duplantier to justify his shooting.[3] And

---

[1] R. Doc. 228.
[2] *Ramirez v. Killian*, 113 F. 4th 415, 426 (5th Cir. 2024) (explaining that "relevant legal rule" involves the requirement that "seizure be objectively reasonable.").
[3] E.g., "Burmaster advised Sgt Duplantier that he was remorseful about having to shoot the dog. He thought

1

#103979592v1

those statements do not fall within any exception to the rule against hearsay.

Third, the exhibit contains inflammatory and prejudicial statements. It refers to a possible "domestic fight" even though there was only one voice heard yelling and the word "fight" would cause Plaintiffs prejudice in the that the Jury may mistakenly assume that domestic violence[4] was occurring inside the Browns' residence, which NOPD found no evidence of. And it contains Burmaster's rank and unsupported speculation that "the owners may have let the dogs out on the officers intentionally," which is inadmissible under FRE 602.

And fourth, if Duplantier is excluded from trial, this document should be excluded as well. If he is allowed to testify, this exhibit is impermissibly cumulative of Duplantier and Burmaster's testimony.

**D2, D3, D4**     **Chief's Hearing Documents Purporting to "Exonerate" Burmaster**

These exhibits consist of two letters from high-ranking NOPD officers to the Superintendent of Police, recommending that Burmaster be "exonerated" of the use of force violation (D2 and D3), and Chief Kirkpatrick's letter to Burmaster telling him he is "exonerated" (D4).[5]

These exhibits are subject to two motions *in limine*. In R. Doc. 225, Plaintiffs seek to exclude these exhibits because they contain the opinions of four high-ranking officers (Lubrano, Sanchez, Ganthier, and Kirkpatrick), all of whom applied a subjective analysis to the question of whether the shooting was reasonable. For example, Sanchez agreed that he applied a "subjective analysis"

---

of his own pets after having to use force against the animal."
[4] Merriam-Webster's dictionary defines "fight" as "to contend in battle or physical combat." https://www.merriam-webster.com/dictionary/fight.
[5] One of the letters from the high-ranking officers to the chief is found at R. Doc. 225-8.

that hinged on what Burmaster "believe[d] about the situation."[6] And Ganthier refused to say whether the dog <u>actually</u> posed a threat of harm to Burmaster, because "Officer Burmaster thought it" was a threat – and that was enough for Ganthier.[7] But as described above, the Fifth Circuit has required an objective analysis "without reference to the subjective intent or motivation that underlies the officer's conduct."[8]

Furthermore, all four officers conceded they only assessed whether the dog posed a threat. None of them assessed whether non-lethal measures could have addressed that threat.[9] But the question of alternative, non-lethal measures is part of both the Constitutional analysis and also NOPD policy.[10] Thus, the conclusions reflected in these exhibits would mislead the jury because all four officers entirely omitted a required analytical step, without explanation.

These exhibits are also covered by Plaintiffs' motion *in limine* seeking to exclude any reference to the term "exonerated." As Plaintiffs point out in R. Doc. 229-1 at 5-6, the word "exonerated" in common parlance means someone who has been judicially determined to be innocent. It would be confusing and misleading to the jury for Defendants to show exhibits that repeatedly say **EXONERATED** in bold, all capital letters, given that no one "exonerated" Burmaster except Defendants.

Finally, these exhibits also constitute inadmissible hearsay.

### D12, D13, D14, D15, D16, D17        Records of Other NOPD Officers Shooting Other Dogs

---

[6] R. Doc. 225-4 (Sanchez Dep.) at 22:13-23:9
[7] R. Doc. 225-5 (Ganthier Dep.) at 13:19-14:7.
[8] *Lytle v. Bexar Cty. Tex.,* 560 F.3d 404, 411 (5th Cir. 2009)
[9] See R. Doc. 225-1 at 9-10.
[10] *Ramirez, supra*, at 428. (the analysis of whether killing a pet dog is reasonable "centers on whether the pet dog posed an immediate danger and whether killing it was unavoidable."); R. Doc. 208-6 (NOPD Policy Manual Chapter 1.3) at ¶ 32 (requiring analysis of whether non-lethal means were "reasonably available.")

These exhibits are records related to other officers (*i.e.,* not Burmaster) who shot other dogs (*i.e.*, not Apollo). For example, D12 describes a 2012 incident in which two officers shortly after Hurricane Isaac non-fatally shot a "large Rottweiler dog." D13 describes a 2015 incident in which Officer Ryan Morgan shot a "growling and barking pit bull" that charged him.

During a meet and confer, Plaintiffs' counsel asked Defendants' counsel how these exhibits could possibly be relevant, given that Plaintiffs are not advancing a pattern-of-dog-shootings *Monell* theory. Defendants' counsel did not offer a theory of relevance.

Given that these exhibits reflect other officers shooting other dogs, in some cases nearly a decade before Burmaster shot Apollo, they should be excluded as irrelevant. Furthermore, Defendants have not listed any percipient witnesses to these shootings as trial witnesses, so there is no one to competently discuss these incidents even if they were relevant.

### D18    Burmaster's Training Records

This exhibit has several subparts. One subpart is Duplantier's "Tactical Debrief" found in D1, and should be excluded for the reasons above.

Another subpart consists of certificates that Burmaster received that have nothing to do with the issues in this case, such as certificates about FEMA training and "Understanding Sexual Assault." Another subpart consists of records of Burmaster's shooting range scores, which have nothing to do with this case. And the final subpart consists of records of training that are completely unrelated to responding to animals. For example, these records show that Burmaster received training about "Substance Abuse," "Handcuffing Control," "Psychopharmacology," "Fingerprint Training," etc.

None of these records are relevant to the issues in this case, and should be excluded.

**D19, D20, D21        May 2017 DTB Records (ASPCA Training)**

These exhibits are documents related to a May 2017 training that Officer Burmaster completed. The training consisted of a few online ASPCA videos officers were supposed to watch and then take a short test.[11]

These exhibits are addressed by a motion *in limine* (R. Doc. 229-1). Specifically, they should be excluded because NOPD does not possess the content of the training… and no one at NOPD can remember anything about it. Specifically, because no one from NOPD "downloaded or captured any of those videos," the City's 30(b)(6) witness conceded that the City does not "know anything about the contents of these videos."[12] Sgt. David Duplantier – another 30(b)(6) witness on training – could not recall anything about the content of the 2017 daily training bulletin.[13] And Burmaster did not recall taking this training at all.[14]

If Defendants did not preserve the content of this training and cannot recall anything about it, there is no way of knowing whether it was excellent or completely deficient. Given that, Defendants should not be allowed to use it to bolster their defense. Because these exhibits offer no probative value, but carry a substantial risk of prejudice by confusing the Jury into concluding that these records establish that the City provided adequate use of force on animals training to Burmaster (which we have no way of knowing), they should be excluded under FRE 403.

---

[11] R. Doc. 229-6 (Barnes Dep.) at 87:4-9.
[12] *Id*. at 87:9-12 ("Q. So you don't know anything about the contents of these videos, right? A. That's correct. I don't know the specific content of the videos."). Plaintiffs subpoenaed videos from the ASPCA in 2023, but they are undated – so there is no way of knowing if they are the same ones used by NOPD in 2017.
[13] R. Doc. 122-5 (Duplantier Dep.) at 29:16-22 ("Q. Do you have any knowledge of whether Burmaster took that online ASPCA training? A. No knowledge. Q. Okay. Have you taken it? A. Yes, sir. Q. Do you remember what was covered? A. No, I don't.").
[14] R. Doc. 122-2 (Burmaster Dep.) at 183:11-184:4 ("Q. Do you recall receiving an in-service training -- inservice training using this curriculum in 2019 or so? . . . The Witness: This looks familiar. . . . .Q. Do you recall receiving any training besides the training that you received using this document? A. No.").

#103979592v1

Respectfully submitted:

| | |
|---|---|
| /s/ *William Most* | /s/ *Tarak Anada* |
| WILLIAM MOST (La. Bar No. 36914) | TARAK ANADA (#31598) |
| HOPE PHELPS (La. Bar No. 37259) | PATRICK VAN BURKLEO (#41471) |
| DAVID LANSER (La. Bar No. 37764) | JONES WALKER LLP |
| MOST & ASSOCIATES | 201 St. Charles Avenue |
| 201 St. Charles Ave., Ste. 2500, # 6825 | New Orleans, Louisiana 70170-5100 |
| New Orleans, LA 70170 | Telephone: (504) 582-8322 |
| Telephone: (504) 509-5023 | Facsimile: (504) 589-8322 |
| E-Mail: williammost@gmail.com | E-Mail: tanada@joneswalker.com |