## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and | * | CIVIL ACTION |
| JULIA BARECKI-BROWN | * | |
| | * | DOCKET NUMBER: 22-00847 |
| VERSUS | * | |
| | * | SECTION: L |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | HONORABLE ELDON E. FALLON |
| NEW ORLEANS | * | |
| | * | DIVISION: 4 |
| | * | |
| | * | HONORABLE KAREN WELLS ROBY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### DEFENDANTS' RESPONSE AND OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* REGARDING DEFENSE WITNESSES LUBRANO, SANCHEZ, GANTHIER, AND KIRKPATRICK [R. DOC. 225]

NOW INTO COURT, come Derrick Burmaster and City of New Orleans ("Defendants") who respectfully submit this Response and Opposition to Plaintiffs' Motion *in Limine* Regarding Defense Witnesses Lubrano, Sanchez, Ganthier, and Kirkpatrick [R. Doc. 225] (the "Motion").

### INTRODUCTION

Ann Kirkpatrick is the Superintendent of the New Orleans Police Department ("NOPD"). On October 23, 2023, Superintendent Kirkpatrick notified Burmaster that she had concluded that Burmaster did not violate NOPD's Use of Force policy when he shot Plaintiffs' dog.[1] Kirkpatrick based her decision upon the recommendation made by the three members of a "Superintendent's Committee Disciplinary Hearing," which consisted of Chief Deputy Superintendent Hans Ganthier of NOPD's Field Operations Bureau, Deputy Chief Kieth Sanchez, NOPD's Public Integrity Bureaus, and Deputy Chief Superintendent Ryan Lubrano, NOPD's Investigative Service Bureau.[2] The recommendation of the "Chief's Panel," which Kirkpatrick relied upon, was based on "the

---

[1] See Exhibit 1 (Oct. 23, 2023, letter from Kirkpatrick to Burmaster).
[2] See Id., p. 2.

1

totality of informational content derived from the culmination of all relevant investigation and testimony provided during the hearing."[3]

Plaintiffs, in the instant Motion, seek to exclude all evidence of the NOPD's decision-making process and final disciplinary decision which exonerated Burmaster' of use of force violations of NOPD's policy. At the same time, Plaintiffs propose to introduce opinion evidence that contradicts Kirkpatrick's determination that Burmaster did not violate NOPD's use of force policy. Plaintiffs mistakenly contend that the testimony of Kirkpatrick, Ganthier, Lubrano and Sanchez requires disclosure as an expert witness. However, these witnesses are lay witnesses merely testifying about subjects within their job duties. They do not need to be disclosed as expert witnesses. Further, their evaluation of Burmaster's conduct is fully consistent with Fifth Circuit Circuit precedent. As the Fifth Circuit made clear, "an officer may not, consistent with the Fourth Amendment, kill a pet dog unless he reasonably believes that the dog poses a threat and that he is in imminent danger of being attacked."[4] Kirkpatrick's and the Chief's evaluation analyzed Burmaster's reasonable belief that the dog posed a threat and he was in imminent danger of being attacked. For this reason, Plaintiffs' argument that grounds exist to exclude Kirkpatrick's and the Chiefs' testimony pursuant to Federal Rule of Evidence 403 is without merit.

## BACKGROUND

Defendants identified the individuals that are the subject of this Motion as potential witnesses on their exhibit list filed on March 31, 2025; their testimony was described as:

> Superintendent Kirkpatrick will testify as to the bases for the disciplinary letter dated October 23, 2023, [which exonerated Defendant Derrick Burmaster from charges of violating NOPD policy by use of excessive force in shooting Plaintiffs' dog], and NOPD policies relevant to this case.

---

[3] Id., p. 3. See Exhibit 2, (Sept. 11, 2023, recommendation authored by Chief Ganthier).
[4] *Brown v. Burmaster*, 22-08206, 2025 WL 227785, *3 (5th Cir. Jan. 17, 2025) (quoting *Ramirez v. Killian*, 113 F.4th 415, 427 (5th Cir. 2024).

>Chief Ganthier will testify as to the bases of the recommendations made in the memorandum dated September 11, 2023, to the NOPDD superintendent, and the evaluation of Officer Burmaster's conduct in this case.
>
>Deputy Superintendent Lubrano may testify as to the bases of the recommendations made in the memorandum dated September 11, 2023, to the NOPD superintendent, and the evaluation of Officer Burmaster's conduct in this case.
>
>Deputy Superintendent Sanchez may testify as to the bases of the recommendations made in the memorandum dated September 11, 2023, to the NOPD superintendent, and the evaluation of Officer Burmaster's conduct in this case.[5]
>
>These witnesses were subsequently deposed by Plaintiffs.

Superintendent Kirkpatrick, at her deposition, testified that she was the decisionmaker with respect to NOPD policies and discipline.[6] She concluded, based on the "totality of circumstances" that Burmaster's shooting of Plaintiff's dog was reasonable.[7] She was asked whether a bright-line rule should exist that officers "should not shoot their firearm, whether it's a dog or a person, if alternative less than lethal means are reasonably available?"[8] Her answer was, "Are reasonably available and the circumstances would dictate. Not every circumstance allows, because it's unfolding so quickly that a different alternative use of force could be used."[9] She explained repeatedly that the reasonableness of Officer Burmaster's conduct must be evaluated subjectively and objectively.[10]

Chief Ganthier, at his deposition, testified that he analyzed the situation from an "objective viewpoint, but I have to look at the totality. … it's his perception of what he was looking at, at the time. That's what we, as a board, have to objectively look at. What is he thinking about? What is he experiencing? I can't sit from a viewpoint of 15 10,000 feet and go, yeah, okay, that's Monday morning quarterbacking. The law just doesn't allow for it. It is what the immediate thought process

---

[5] R. Doc. 199.
[6] Exhibit 3 (Excerpts of Deposition of Anne Kirkpatrick), pp. 54:11-16; 59:15 – 23
[7] *Id*., pp. 67:25 – 68:6.
[8] *Id*., p. 12:21-24.
[9] *Id*., 12:25 – 13:3.
[10] *Id*., pp. 18:1419:15; 20:18-21:21:3; 32:7-17; 35:6 – 36:2; 48:22 – 49:9.

of that officer is."[11] Chief Ganthier explained the several objective factors that contributed to his conclusion that Officer Burmaster reasonably believed that Plaintiff's dog posed a risk of serious bodily harm:

> Officer Burmaster heard a deep barking, not associated with a 23 22-pound dog. When he looks over, there is big dog coming out. He is responding to a domestic violence call, so he doesn't know what that is about. As he is focusing on the dog, another dog pops up. Now, whether he had time to size up the dog or not, I don't think he did, the way it looked, but it was coming at him. Burmaster's size does not allow him to get away from the fence or 6 jump the fence. There is no way he is going to be able to do that in time, so he reacts. He shoots at what he perceived to be an imminent threat to him. So that's what I saw it as what I'm looking at, and that is how I am able to sometimes put myself in the officer's total experience of what he is going through. Everything taken into account, I felt that it was justified.[12]

Chief Sanchez, at his deposition, testified that he applied a subjective and objective analysis.[13] He explained that "[w]e engaged in an analysis of whether or not the force that was utilized by Officer Burmaster was reasonable based off the set of facts."[14] With respect to whether "alternative methods" were discussed at the Chief's hearing, Chief Sanchez responded, " "I do not recall. … I don't recall whether or not there was a healthy discussion as it relates to that."[15] However, Chief Sanchez explained that "there's different parts of the policy that speaks to the -- the right to use deadly force, and I think if you look at the policy as a whole as it relates to deadly force, whether you can use deadly force or not, that is -- that is what we looked at, whether or not, the -- the use of force that Officer Burmaster used based on the circumstances were within policy as it relates to the use of the deadly force itself. That's what -- that's what we -- we looked at, whether or not he was in imminent danger -- whether he believed he was in imminent danger of

---

[11] Exhibit 4 (Excerpts of Deposition of Hans Ganthier), p. 11:1-20.
[12] *Id*., pp. 12:16-13:13.
[13] Exhibit 5 (Excerpt of deposition of Keith Sanchez), pp. 23:10-24:8.
[14] *Id*., p. 34:22-24
[15] *Id*., p 35:4-10.

4

receiving great 6 bodily injury, and whether or not deadly force was authorized."[16] In addition, Chief Sanchez identified an extensive list of objective factors that contributed to the conclusion that Burmaster did not violate NOPD policy by shooting Plaintiff's dog.[17]

Chief Lubrano, at his deposition, clarified that any trial testimony that he may give would not be "opinions" but rather would "be based on everything that we saw when we did the chief's panel hearing."[18] He confirmed that the evaluation of Burmaster's shooting of the dog was based on "whether or not Officer Burmaster's subjective belief was reasonable under the circumstances."[19]

## ARGUMENT AND CITATION TO AUTHORITY

1. **Kirkpatrick, Ganthier, Lubrano, and Sanchez do not need to be disclosed as retained or non-retained experts because their testimony will consist of lay opinions based on their NOPD duties.**

Federal Rule of Evidence 701 permits lay witnesses to provide opinion testimony if such testimony is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[20] In general, employees may provide lay opinions so long as the testimony is related to the employee's job duties.[21] Further, corporate officers and business owners may provide testimony on matters that relate to business affairs, such as industry practices and pricing.[22]

---

[16] *Id.*, pp. 35:17 – 36:7.
[17] *Id.*, pp. 49:23 – 62:11.
[18] Exhibit 6 (Excerpt of deposition of Ryan Lubrano), pp. 27:5 – 28:6.
[19] *Id.* 92:19-22
[20] FRE 701.
[21] *U.S. v. Valencia*, 600 F.3d 389, 416 (5th Cir. 2010) (former risk officer could provide opinions as to risk tolerances as a lay witness).
[22] *Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc*., 414 F.3d 546, 551–52 (5th Cir. 2005)

Here, Kirkpatrick, Ganthier, Lubrano and Sanchez will provide lay opinions consistent with their NOPD duties. Their testimony will be rationally based on their perception of the investigatory results and hearing testimony. Each of these witnesses have duties within to interpret NOPD policies and, as part of the disciplinary process, to determine whether employees have violated NOPD policies. In the instant case, Ganthier, Lubrano and Sanchez conducted the "Superintendent's Committee Disciplinary Hearing," which was a Constitutionally mandated step in Officer Burmaster's disciplinary process (and the first time he was able to present evidence in the process).[23] Kirkpatrick, as final policymaker, is responsible for making the final disciplinary decisions for all NOPD employees. Because these witnesses are lay witnesses, they did not need to be disclosed as experts pursuant to Fed. R. Civ. P. 26(a)(2)(A).[24]

Their opinion testimony will be helpful to clearly understanding NOPD Officer Burmaster's disciplinary actions in this case. Testimony regarding police policies and procedures as well as whether or not specific acts by a defendant comported with those policies or procedures is relevant in a use of force case.[25] Contrary to Plaintiffs' contentions, the witnesses properly evaluated Officer Burmaster's conduct consistent with the Fourth Amendment and NOPD policy. As the Fifth Circuit stated in this case when it was on appeal, "an officer may not, consistent with the Fourth Amendment, kill a pet dog unless he *reasonably believes* that the dog poses a threat and that he is in imminent danger of being attached."[26] Whether an officer reasonably believes a

---

[23] See *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985) (public employee has a due process right to hearing prior to an adverse employment action).
[24] See Smith v. Progressive County Mut. Ins. Co. 11-872, 2012 WL 702061, *3 (E.D. La. Mar. 1, 2012) (requiring disclosure where law enforcement investigator sought to provide opinion on cause of accident and fault).
[25] *Joseph v. Doe*, No. 17-5051, 2021 WL 2313475, at *4 (E.D. La. June 7, 2021); and *Campion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908 (6th Cir. 2004) (finding testimony about specific use of force practices and training admissible.)).
[26] *Brown v. Burmaster*, 23-30180, 2025 WL 227785, *3 (5th Cir. Jan. 17, 2025) (emphasis added) (quoting *Ramirez v. Killian*, 113 F.4th 415, 427 (5th Cir. 2024). See *Pearson v. Callahan*, 555 U.S. 223, 244, 129 S. Ct. 808, 823, 172 L.Ed.2d 565 (2009) ("The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law.").

dog poses a threat depends, in part, on the information that is subjectively available to the officer.[27] It is clear that the witnesses properly considered the objective circumstances as observed by Officer Burmaster, i.e, his "reasonable belief," in determining whether his conduct met with the NOPD policy standards. Plaintiffs' argument about "alternative methods" is not supported by case law or logic. The NOPD witnesses evaluated Officer Burmaster's actions under the totality of the circumstances, which includes whether alternative methods were reasonably available. In this case, given the quickly developing situation, the NOPD witnesses unanimously determined that alternative methods were not reasonably available.

However, assuming for the sake of argument that these witnesses should have been disclosed as expert witnesses, their testimony should not be excluded because failure to disclose them was substantially justified and harmless. Failure to make the required Rule 26(a) disclosures prevents a party from using the undisclosed material, "unless the failure was substantially justified or harmless."[28] In deciding whether to exclude untimely-disclosed expert witness testimony, the Court should consider four factors: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice."[29]

Here, the reason for not designating these witnesses as experts is that it is believed that their testimony is lay testimony and did not need disclosure. The proposed testimony is important in that Officer Burmaster's compliance with NOPD policy is relevant to whether he acted

---

[27] See *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (For purposes of qualified immunity, in determining whether a right was clearly established, "[t]he relevant question ... is ... whether a reasonable officer could have believed [his or her conduct] to be lawful, in light of clearly established law and the information the ... officers possessed.").
[28] Fed. R. Civ.P. 37(c)(1).
[29] *Smith v. Progressive County Mut. Ins. Co.* 11-872, 2012 WL 702061, *3 (E.D. La. Mar. 1, 2012) (citing *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir.2007) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir.1990))).

reasonably under the circumstances. Defendants will be prejudiced because Plaintiffs seek to present evidence that is contrary to the Superintendent's decision that no NOPD policy was violated by Burmaster's use of force. Plaintiffs will not be prejudiced because all witnesses were deposed and previously identified. There is no need to continue this case.[30]

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be denied.

Respectfully submitted:

*/s/ James M. Roquemore*_____
**JAMES M. ROQUEMORE, LSB #40035**
ASSISTANT CITY ATTORNEY
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET, SUITE 5E03
NEW ORLEANS, LOUISIANA 70112
TEL: (504) 658-9800
FACSIMILE: (504) 658-9868
James.Roquemore@nola.gov
*Counsel for Derrick Burmaster and the City of New Orleans*

---

[30] See *Certain Underwriters at Lloyd's London v. Covington Flooring Company, Inc*., 2024 WL 3741399, *8 (E.D. La. Mar. 8, 2024) (allowing late designation on similar facts).