# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and<br>JULIA BARECKI-BROWN | * | Civil Action No. 22-00847 |
| | * | |
| | * | SECTION: L |
| VERSUS | * | |
| | * | HONORABLE ELDON E. FALLON |
| DERRICK BURMASTER, SHAUN<br>FERGUSON, and the CITY OF<br>NEW ORLEANS | * | |
| | * | DIVISION: 4 |
| | * | |
| | * | HONORABLE KAREN WELLS ROBY |
| | * | |

***

**Plaintiffs' Response to Defendants' Exhibit Objections**

In R. Doc. 237, Defendants lodged objections to Plaintiffs' exhibits. This is Plaintiff's response.

**P12    DOJ Training Document**

This document (found at R. Doc. 56-3) is a training document produced by the United States Department of Justice. Defendants object that the document is hearsay. But it is not hearsay, because it is not offered for the truth of the matter asserted. Instead, it is offered to highlight a problem with NOPD's training: that NOPD copied a "U.S. Department of Justice COPS program training while taking out passages about the low risk and general friendliness of approaching dogs, and information about 'specific tactics' for dealing with animals."[1]

As the Court noted in its order denying summary judgment, "Plaintiffs have shown that the documents contained in this training session appear to be largely copied-and-pasted from the DOJ's COPS curriculum entitled 'The Problem of Dog-Related Incidents and Encounters.' . . . NOPD's version, however, notably altered key aspects of the DOJ's materials, such as omitting

---

[1] R. Doc. 115 (Order Denying Motion to Dismiss).

1

#103984478v1

facts that state 'serious [dog] bites are relatively rare' and that the 'overwhelming majority of dog bites are minor, causing either no injury at all or injuries so minor that no medical care is required.'"[2] The Court noted that the "City has yet to justify why exactly it chose to excise this pertinent information established by a federal agency from NOPD's materials and whether its decision to do so affected the sufficiency of its officers' training."[3]

### P14, P24    Burmaster Short Form and Long Form

These documents are NOPD records containing Officer Burmaster's disciplinary history. Defendants object that the records are irrelevant, prejudicial, and improper character evidence. This Court, however, has already assessed their relevance. At the motion to dismiss phase, the City argued that that Burmaster's prior uses of force, reputation for using force, and prior policy violations were irrelevant to Plaintiffs' claims.[4] Plaintiff countered that the evidence was relevant to Plaintiffs' *Monell* claims that the NOPD failed to adequately train, supervise, discipline, and retain Officer Burmaster.[5]

In the context of denying that motion, the Court acknowledged Plaintiffs' allegations that Burmaster is a "frequent user of force," who has used force at least 30 times since 2011, including the discharge of firearms against multiple humans and multiple animals.[6] And that Burmaster's use of force has been the subject of multiple complaints, and that NOPD has sustained at least twenty other rule violations against Burmaster.[7] The Court ruled that if true, Plaintiffs' allegations about Burmaster's past use of force incidents and other rule violations, the complaint does raise factual

---

[2] R. Doc. 245 at 16.
[3] *Id.*
[4] R. Doc. 68.
[5] R. Doc. 71.
[6] R. Doc. 115 at 2.
[7] R. Doc. 115 at 2.

2

questions about 'the inappropriateness of NOPD's choice to continue having Burmaster on the force.'"[8] Indeed, in a brief Defendants acknowledge this, conceding that if "the Court admits evidence of prior uses of force by Officer Burmaster, any relevance such evidence may have would be only to the *Monell* claim against the City . . ."[9]

At the summary judgment phase, the Court reaffirmed the relevance of this evidence, noting that as "the Court foreshadowed in a prior order, Burmaster's past uses of force and disciplinary record, now supported throughout the record, are more than sufficient for a reasonable jury to find that the City had 'constructive notice' that Burmaster was likely to commit a constitutional violation similar to the one allegedly visited upon the Plaintiffs."[10]

For this reason, any prejudice is outweighed by the probative nature of the documents. Furthermore, the documents are not prohibited as character evidence, because FRE 404(b) only restricts evidence proffered to "show that on a particular occasion the person acted in accordance with the character" – and Plaintiffs do not seek to do that here.

**P20, P21, P22, P29 – NOPD's Public Integrity Bureau ("PIB"), Force Investigation Team, Administrative Shooting Investigation Report, NOPD Use of Force Review Board ("UFRB") PowerPoint Presentation, NOPD Use of Force Review Board Hearing Video, and NOPD Use of Force Review Board Hearing Report.**

NOPD seeks to exclude its own internal documents because: these "NOPD reports and presentations contains hearsay, impermissible opinion testimony, and would be given undue weight by the jury, and contain conclusions about whether Officer Burmaster violated NOPD policy which are not true in that Superintendent Kirkpatrick, the final word on policy, determined that Officer Burmaster did not violate NOPD policy in his use of force. The exhibits should be

---

[8] R. Doc. 115 at 7-8.
[9] R. Doc. 230-1 at 9.
[10] R. Doc. 245 at 19.

excluded under the rule against hearsay and FRE 403."

Defendants are wrong. These exhibits are not hearsay because they are all statements of NOPD employees and are therefore "statements of a party opponent." "[A] statement is 'not hearsay' if it is 'offered against an opposing party and . . . was made by the party.' Fed. R. Evid. 801(d)(2)(A). Thus, '[h]earsay problems are not a concern if the jury believes that the defendant was one of the participants in the conversation; any statements he made would be admissible as a statement of a party opponent.'" *United States v. Taylor*, 2024 U.S. Dist. LEXIS 105183, at *4 (E.D. La. June 12, 2024) (Fallon, J.) (quoting *United States v. Thompson*, 130 F.3d 676, 683 n.7 (5th Cir. 1997)). All of these materials consist solely of statements made Burmaster and other NOPD officers (all employees of the City), and are being offered by Plaintiffs against their "party opponents" Burmaster and the City. They are therefore not hearsay.

Nor do these exhibits contain "impermissible opinion testimony." Defendants make this generic assertion but do not support it with any facts or argument whatsoever. It is Defendants' burden to prove that these exhibits somehow contain opinions that fall within the scope of FRE 702, but Defendants have failed to point to any portion of any of these exhibits that do so.

Finally, these exhibits are highly probative. They go to the heart of numerous claims and issues. For example, these exhibits are highly probative of Plaintiffs' ratification claim. This Court expressly recognized this in R. Doc. 245 when it denied Plaintiffs' Motion for Partial Summary Judgment on ratification. As this Court explained:

> Courts, however, have held "a municipality is not liable under the ratification theory where a Police Chief accepts [their] officers' version of events, so long as 'the version did not show that the deputies' actions were manifestly indefensible." … Rather, the plaintiff must show that the ratifying policymaker knew that their employees' actions were unlawful and "clearly excessive" to the

4

> officer's apparent need to defend themselves but approved them anyways. ... Indeed, "such limitations on municipal liability are necessary to prevent the ratification theory from becoming a theory of respondeat superior, which . . . *Monell* does not countenance." ... With this precedent in mind, the Court finds that Plaintiffs have failed to meet their burden on summary judgment because they have not presented any evidence beyond Superintendent Kirkpatrick's mere affirmance of Burmaster's actions to support their ratification theory. But the Court observes that **there may still be a fact question as to whether she did so impermissibly** such that ratification could be viable here **in light of the fact that NOPD's PIB previously found the shooting of Apollo to be unjustified, and NOPD only just recently changed its position, exonerating Burmaster of any wrongdoing during the course of this litigation.**

R. Doc. 245, at 22 (emphasis added).

Thus, as the Court has expressly recognized, the fact question that the Jury must determine at trial to resolve Plaintiffs' ratification claim is whether Superintendent Kirkpatrick "impermissibly" ratified Burmaster's actions "in light of the fact that NOPD's PIB previously found the shooting of Apollo to be unjustified." Accordingly, the Jury must be permitted to hear NOPD's PIB/UFRB's determinations about Burmaster's actions to be able to determine for themselves whether Kirkpatrick's ratification of them was "impermissible" and therefore violative of Plaintiffs' constitutional rights.

And Defendants' contention that the PIB/UFRB's determinations about Burmaster's conduct "are not true" is no reason to exclude these exhibits. It is the Jury—and not Defendants—who get to determine what facts are true and not true.

These exhibits are also highly probative of the City's and its witnesses' credibility. NOPD's attempt to "walk back" the Use of Force Review Board's conclusions at the Bureau Superintendent's Disciplinary Hearing presents serious credibility and bias concerns that Plaintiffs should be permitted to test at trial. First, the jury should be permitted to hear that all NOPD review

5

board panels that reviewed Burmaster's shooting before a civil suit was filed unanimously concluded that Burmaster's use of lethal force on Apollo violated was unjustified. And that only after a civil suit seeking monetary damages was filed, NOPD unsurprisingly attempted to partially walk back its unfavorable determinations via the Bureau Superintendent's Disciplinary Hearing

### Exhibit P27 – *State v. Loicana*

This exhibit was addressed at the pre-trial conference. Plaintiffs will not use this exhibit, and instead will use testimony instead.

### Exhibits P40, P41 – Office of the Consent Decree Monitor Email and Draft Report.

In 2021, the court-appointed OCDM reviewed the PIB investigation of Burmaster's killing of Plaintiff's dog, provided comments on the draft PIB investigatory report, and met with PIB about it.[11] The OCDM comments are significant and directly relevant to the issues in this case. Two former chiefs of police – Chief Chet Epperson and Chief Mitch Brown[12] – make comments such as: "I submit to you that not only is [the shooting] unreasonable, but unauthorized also" and if "someone was struck by Officer Burmaster's discharge I am assuming you would charge him with reckless conduct?"[13]

Defendants object that the OCDM documents are hearsay, irrelevant, and prejudicial. They are not hearsay because, as detailed in Plaintiffs' brief (R. Doc. 232 at 16), they fall within the FRE 804 "Declarant Unavailable" exception to the rule against hearsay. That is because the OCDM personnel are prohibited from testifying by a section of this Court.[14]

---

[11] R. Doc. 232-6.
[12] R. Doc. 232-5 (Helou Dep.) at 11:16-12:11.
[13] R. Doc. 232-6.
[14] *United States v. City of New Orleans*, 12-cv-01924-SM-DPC, R. Doc. 778 at ¶ 463 (E.D. La., April 18, 2024).

#103984478v1

The documents are relevant because they show that former chiefs of police suggested that Burmaster's conduct was potentially criminally reckless if it resulted in a person being struck – which happened.[15] This goes directly to the "extreme conduct" element of Plaintiff's ratification *Monell* claim. Indeed, NOPD Superintendent Kirkpatrick herself acknowledged the relevance of the OCDM comments:

```
     Q.    Okay.  And you're familiar with the
Office of the Consent Decree Monitor?
     A.    I am.
     Q.    Okay.  If a member of that officer
suggested that Officer Burmaster might be criminally
charged for reckless conduct about this shooting,
would that be something you'd want to know?
          MR. ROQUEMORE:
               Objection form.
          THE WITNESS:
               Yes.
```

Thus, these documents support Plaintiffs' ratification claim: former chiefs of police assigned to conduct oversight over NOPD suggested that Burmaster's actions might be criminally reckless – and NOPD ratified them anyway. Given the relevance of these documents, their probative value outweighs any prejudice.

---

[15] R. Doc. 228 at 5 ("Roussel was wounded by a fragment of something put in motion by a bullet fired by Burmaster").

Respectfully submitted:

| | |
|---|---|
| */s/ William Most* | */s/ Tarak Anada* |
| WILLIAM MOST (La. Bar No. 36914) | TARAK ANADA (#31598) |
| HOPE PHELPS (La. Bar No. 37259) | PATRICK VAN BURKLEO (#41471) |
| DAVID LANSER (La. Bar No. 37764) | JONES WALKER LLP |
| MOST & ASSOCIATES | 201 St. Charles Avenue |
| 201 St. Charles Ave., Ste. 2500, # 6825 | New Orleans, Louisiana 70170-5100 |
| New Orleans, LA 70170 | Telephone: (504) 582-8322 |
| Telephone: (504) 509-5023 | Facsimile: (504) 589-8322 |
| E-Mail: williammost@gmail.com | E-Mail: tanada@joneswalker.com |

#103984478v1