UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and JULIA BARECKI-BROWN | * * * | Civil Action No. 22-00847 |
| VERSUS | * * | SECTION: L |
| DERRICK BURMASTER, SHAUN FERGUSON, and the CITY OF NEW ORLEANS | * * * * * | HONORABLE ELDON E. FALLON DIVISION: 4 HONORABLE KAREN WELLS ROBY |

*************************************************************************

**Plaintiffs' Objections to Kirkpatrick Deposition**

In this case, Defendants listed Superintendent Anne Kirkpatrick as a witness. Chief Kirkpatrick will be out of the state at the time of trial, and did not wish to appear by Zoom. Accordingly, her deposition was videotaped. Defendants propose to show the video of almost the entirety of her 81-page deposition. Attached as Exhibit A is a transcript, highlighted with the parties' objections. A key to the highlighting is as follows.

> **Key:**
> Red Highlighted Text is text that Defendants seek to exclude.
> Yellow Highlighted Text is text that Plaintiffs seek to exclude.
> Red Highlighted Text Surrounded by Green is text that Defendants seek to exclude, but Plaintiffs seek to include.

Plaintiffs object to some of the testimony as described below.[1] On June 4, 2025, the parties met and conferred about Plaintiffs' objections. (Defendants did not confer about their objections.)

---

[1] Plaintiffs have filed a motion *in limine* to exclude Superintendent Kirkpatrick's testimony. R. Doc. 225. In addition to the objections specifically addressed herein, Plaintiffs object to Kirkpatrick's deposition testimony for all reasons made in their motion *in limine* to exclude Superintendent Kirkpatrick's testimony and reply brief in support thereof, which are fully incorporated herein by reference.

1

#103985796v1

I.     **Non-Form Objections**

The following are non-form objections to Chief Kirkpatrick's testimony. Specifically, the Court should exclude:

A.  **Kirkpatrick's gratuitous references to "domestic violence." 16:21-17:16, 28:21-25, 31:6-7, 32:11-12, 71:23-72:1.**

"Unfairly prejudicial" evidence is that which has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[2] At deposition, without being asked about domestic violence, Chief Kirkpatrick repeatedly suggested that these "officers [were] responding to a domestic violence call."

But here, there was no firm evidence of a domestic violence situation – all that was reported to the police was that one woman was yelling, and something was heard breaking.[3] But "one yeller and things breaking" could as easily be a mental health call or a drunk person knocking over a lamp as it could be a domestic violence call. Thus, characterizing the situation as "domestic violence" is highly prejudicial and should be excluded.[4]

B.  **Kirkpatrick's conclusions about the "reasonableness" of Burmaster's actions. 15:17-16:2, 17:25-21:3, 18:7-10, 20:11-21:3, 41:7-17, 44:20-25, 67:25-68:1-6, 73:15-16, 74:1-2; 76:16-24, 77:13-15, 78:9-11.**

Whether Burmaster's shooting of Apollo was "reasonable" is a legal conclusion.[5] "The general rule is quite clear that witnesses, whether lay or expert, cannot testify as to legal

---

[2] *U.S. v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) (*quoting Old Chief v. United States*, 519 U.S. 172, 180 (1997)).
[3] R. Doc. 118 at 2 ("A man from on the other side -- across the street, on the other side of a fence, told me that he could hear a woman yelling. This is what he tells me. But he couldn't hear the male. And he heard things breaking.")
[4] *Tate v. Zaleski*, No. 2:19-cv-63-TBM-MTP, 2021 U.S. Dist. LEXIS 238458, at *6 (S.D. Miss. Dec. 14, 2021) ("any relevance of a subsequent domestic violence arrest is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.")
[5] *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020).

conclusions. To find otherwise would invade the province of the Court."[6]

Moreover, the parties stipulated that "no experts may use the terms reason, reasonableness, reasonable, unreasonable, or unconstitutional, and no experts may directly opine as to whether or not the Fourth Amendment was violated."[7]

The parties stipulated to that because whether "the officers' actions were reasonable ... is an ultimate question for the jury to decide."[8] And for that reason, courts exclude such legal conclusions at trial.[9] If an expert cannot testify as to the ultimate question of reasonableness, then *a fortiori* a lay witness like Kirkpatrick cannot either.[10] But throughout her deposition, Kirkpatrick repeatedly draws a conclusion about whether the shooting was "reasonable." These statements as to the ultimate question should be excluded.

Defendants agree to this exclusion in principle, but did not respond to Plaintiff about the specific lines proposed for exclusion.

C.    **Kirkpatrick's Lay Witness "Opinions." 67:22-68:6, 70:10-72:3, 76:16-24.**

In the deposition, Kirkpatrick refers to her assessment of the reasonableness of the shooting as her "opinion."[11] Throughout her deposition she gives her opinions about whether the shooting and NOPD's training were reasonable or not. But Kirkpatrick was never designated as a FRE 702

---

[6] *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 2013 U.S. Dist. LEXIS 190580, at *5 (S.D. Miss. Feb. 25, 2013) (citing *United States v. El-Mezain*, 664 F.3d 467, 511 (5th Cir. 2011) (It is also generally prohibited for a lay witness to … give legal opinions.")).
[7] Ex. B.
[8] *Joseph v. Doe*, 2021 U.S. Dist. LEXIS 106081, at *8-10 (E.D. La. June 7, 2021)
[9] *Id*. ("Najolia may not testify that the conduct of the Gretna police officers met or failed to meet the applicable legal standard, such as the 'reasonableness' of the Gretna police officers' use of force…. Najolia is barred from offering legal conclusions at trial.")
[10] *Robinson v. State*, 702 A. 2d 741 (Md. 19897) ("We agree with the observation of Robinson's counsel at oral argument that the State could not introduce the testimony of a qualified chemist as to the chemical composition of a substance unless such an opinion was based upon the scientific evidence necessary to support that opinion. Hence, it follows *a fortiori,* that a lay witness may not offer such an unsupported opinion based solely on visual observation.")
[11] Kirkpatrick Dep. at 76:16-24.

expert witness, and she cannot be a lay witness for the same reasons the Court raised about Duplantier.[12] Therefore, her "opinions" should be excluded.

**D.    References to Hypothetical Ethical Violations by Plaintiffs' Counsel. 25:17-26:3. (Agreed upon by parties.)**

The parties agree to exclude this testimony. In her deposition, Chief Kirkpatrick used a hypothetical that: "It would be no different, Mr. Most, if five people made a bar complaint against you and each result of that investigation was either unfounded or not sustained. Does it make you less credible?" Plaintiffs' counsel did not take offense; the Chief was making a hypothetical argument. But it could be confusing or misleading to a jury. For that reason, and because the parties agree, it should be excluded.

**E.    References to a Hypothetical District Attorney Referral. 45:12-46:10.**

At one point, Chief Kirkpatrick refers to a hypothetical referral to the District Attorney. In this case, the evidence shows that the matter was referred to the district attorney.[13] But it is not clear what happened with that referral – whether it was explicitly declined, or just not responded to.[14] Regardless the outcome, discussion about the district attorney referral is irrelevant and potentially prejudicial.[15] It should be excluded.

**F.    Defendants' Counsel's Expert-Qualifying Questions. 50:20-54:7, 64:3-65:12**

Foundational questions qualifying a potential expert witness can be prejudicial if the expert

---

[12] R. Doc. 244 ("More specifically, the Court informed the parties that at present, it is unlikely to allow Duplantier to testify as indicated pursuant to Federal Rule of Evidence 701, given he would be impermissibly opining as to "other specialized knowledge within the scope of 702." Fed. R. Civ. P. 701(c).")
[13] Plaintiff's Trial Exhibit 20 at 16.
[14] *Id.* ("Criminal Investigator Sergeant Debra Pruitt submitted the case to Orleans Parish Assistant District Attorney Paige Kline on April 28, 2021. No results at this time.")
[15] *See McMahon v. Valenzuela,* 2015 U.S. Dist. LEXIS 159611, at *41 (C.D. Cal. Nov. 25, 2015) (granting motion in limine excluding reference to DA referral because "referral to the District Attorney's office is irrelevant and, in any event, unfairly prejudicial under Rule 403, as any such evidence would likely lead the jury to make impermissible inferences about the individual defendants' culpability.")

is later excluded.[16] For that reason, courts have recognized the need for procedures to "prevent the jury from hearing potentially prejudicial foundation testimony if the expert's opinions are ultimately excluded."[17]

Here, at deposition, Defendants' counsel asked Chief Kirkpatrick a long series of questions about her professional history, educational background, professional affiliations, etc. These questions laid the foundation for her to be called as an expert witness – but Defendants are not calling her as an expert witness.[18] Thus, this is far worse than a situation where a party seeks to lay the foundation for an expert, but the court declines to qualify the expert. That is potentially prejudicial, but understandable. What Defendants seek to do here is lay the foundation for an expert <u>without calling her as an expert</u>. There is no basis for that. The same is true for Defendants' questioning of Kirkpatrick about how experienced other witnesses are, like Sanchez and Ganthier.[19] For that reason, these questions should be excluded.

**G.     Kirkpatrick's Testimony About Herself and Others Being Licensed Attorneys with an "Understanding of the Law." 53:8-12, 63:5-65:12.**

In her deposition, Kirkpatrick testified that "as a licensed attorney, I certainly have a foundation and understanding of the law. I did teach criminal law and criminal procedures for many years at the Washington State Police Academy." Similarly, she testified that Deputy Chief Sanchez is "an attorney" who "taught criminal law." This testimony risks misleading the jury. Each "courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province

---

[16] *See United States v. Hermanek*, 289 F.3d 1076, 1095 n.7 (9th Cir. 2002) (suggesting that an "[expert's] potentially prejudicial qualifying testimony ... should have been presented outside the presence of the jury").
[17] *United States v. Holguin,* 51 F.4th 841, 853 (9th Cir. 2022), *citing United States v. Alatorre, 222 F.3d 1098, 1105 (9th Cir. 2000)* ("[A]t least ensuring an opportunity for voir dire outside the presence of the jury may be appropriate in certain cases.").
[18] *See* R. Doc. 232-4 (Defendants' Designation of Experts).
[19] E.g., 65:7-12.

5

alone to instruct the jury on the relevant legal standards.'"[20] Chief Kirkpatrick's testimony about her understanding of the law and teaching the law risks confusing the jury about who is to instruct the jury on legal standards.

She also should not be permitted to testify that "the law says we are not to do the 20-20 hindsight." 19:11-13. 73:5-10

**H.   Kirkpatrick's "Credibility Assessments" of Other Defense Witnesses. 63:5-64-2**

In narrow circumstances, FRE 608(a) allows for "testimony about the witness's reputation for having a character for truthfulness." But that rule also states that "evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked." Here, Defendants' counsel asked Chief Kirkpatrick to engage in an "evaluation of . . . credibility" for other Defense witnesses like Ganthier. But Plaintiffs have never attacked these witnesses character for truthfulness, and do not intend to do so at trial. Therefore, Kirkpatrick's opinion of their credibility should be excluded.

**I.   References to Burmaster Being "Exonerated." 28:15-20, 57:25-58:18, 69:22-70:1, 76-25-77:3.**

At her deposition, Chief Kirkpatrick referred to "exonerating" Burmaster. The word "exonerated" in common parlance means someone who has been judicially determined to be innocent.[21] In the context of this trial, the legal term "exonerated" would unnecessarily confuse

---

[20] *Lamar Adver. Co. v. Zurich Am. Ins. Co.,* 533 F. Supp. 3d 332, 341 (M.D. La. 2021), *quoting Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213, 324 U.S. App. D.C. 241 (D.C. Cir. 1997). *See also Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir.1988) ("There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge.")

[21] *E.g., United States v. Proctor*, 356 U.S. 677, 681 n.6, 78 S. Ct. 983, 986 (1958) (describing an "innocent accused who is exonerated"); *Haskell v. Harris*, 669 F.3d 1049, 1051 (9th Cir. 2012) ("DNA analysis is an extraordinarily effective tool for law enforcement officials to identify arrestees, solve past crimes, and exonerate innocent suspects."); *Delaney v. Superior Court*, 50 Cal. 3d 785, 809, 268 Cal. Rptr. 753, 767, 789 P.2d 934 (1990) ("'Exoneration' means "the removal of a burden, charge, responsibility, or duty.), *citing* Black′s Law Dict. (5th ed. 1979) p. 516, col. 2.

the issues and mislead the jury. It would be just as probative and far less misleading to state that NOPD decided that Defendant Burmaster did not violate certain policies. It should therefore be excluded.

## II.     Form Objection

At one point, Defendants' counsel asked the following question: "And was that, if you look on the first page, it has the date, the effective date for this policy. And does that tell you whether or not this particular policy wasn't enforced in 2021 when this incident, this lawsuit happened?"[22] That question is leading, incomprehensible, or both. It also has a false premise: this lawsuit was filed in 2022, not 2021. It should be excluded.

Respectfully submitted:

| | |
|---|---|
| /s/ William Most | /s/ Tarak Anada |
| WILLIAM MOST (La. Bar No. 36914) | TARAK ANADA (#31598) |
| HOPE PHELPS (La. Bar No. 37259) | PATRICK VAN BURKLEO (#41471) |
| DAVID LANSER (La. Bar No. 37764) | JONES WALKER LLP |
| MOST & ASSOCIATES | 201 St. Charles Avenue |
| 201 St. Charles Ave., Ste. 2500, # 6825 | New Orleans, Louisiana 70170-5100 |
| New Orleans, LA 70170 | Telephone: (504) 582-8322 |
| Telephone: (504) 509-5023 | Facsimile: (504) 589-8322 |
| E-Mail: williammost@gmail.com | E-Mail: tanada@joneswalker.com |

---

[22] **Ex. A** at 57:7-15.