UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and | * | CIVIL ACTION |
| JULIA BARECKI-BROWN | * | |
| | * | DOCKET NUMBER: 22-00847 |
| VERSUS | * | |
| | * | SECTION: L |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | HONORABLE ELDON E. FALLON |
| NEW ORLEANS | * | |
| | * | DIVISION: 4 |
| | * | |
| | * | HONORABLE KAREN WELLS ROBY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**REPLY MEMORANDUM IN SUPPORT OF
DERRICK BURMASTER'S AND CITY OF NEW ORLEANS'
RENEWED MOTION *IN LIMINE***

Defendants, Derrick Burmaster and the City of New Orleans ("Defendants"), in reply to Plaintiffs' Opposition (R. Doc. 232) to Defendants' Renewed Motion *in Limine* (R. Doc. 230), show the Court the following.

### 1. Exclusion of the recommendation of the Use of Force Review Board.

Plaintiffs, in their Opposition, proffer three arguments against the exclusion of the New Orleans Police Department's ("NOPD's") Use of Force Review Board's conclusions concerning Officer Burmaster's use of force in shooting Plaintiff's dog. Each argument is addressed below.

#### a. The Use of Force's Fourth Amendment analysis.

At trial, Plaintiffs will attempt to use a conclusion by the NOPD's Use of Force Review Board (the "Board") to argue that Officer Burmaster violated NOPD policy when he shot Plaintiffs' dog. The Board recommended that Officer Burmaster violated NOPD policy. However, Superintendent Anne Kirkpatrick later determined that Officer Burmaster did not violate NOPD policy by shooting the dog.

1

In their Opposition, Plaintiffs argue that the Board "employed an objective analysis."[1] However, the Use of Force Review Board's minutes belie that assertion.[2] At the Board's hearing, the Board was advised by the Public Integrity Bureau investigator, Shannon Brewer, that "Officer Burmaster fired his weapon out of fear and not a threat."[3] The Board Facilitator, Deputy Superintendent Christopher Goodly "asked about Officer Burmaster firing out of fear" and "stated that [Burmaster] had a false perception of a threat that was not there."[4] Another speaker noted that "Officer Burmaster had a perception of an attack."[5] Given the Board's reliance on its conclusions about Officer Burmaster's subjective feelings, it is evident that the Board did not employ an "objective analysis."

Given these deficiencies, it cannot be said that the Board's analysis comported with Fifth Circuit jurisprudence, which provides that

> an officer may not, consistent with the Fourt Amendment, kill a pet dog unless he reasonably believes that the dog poses a threat and that he is in imminent danger of being attacked.[6]

Further, the Board's "Decision point analysis"[7] demonstrates that the Board improperly employed a recently debunked "moment of threat doctrine."[8] Under this doctrine, "a court looks only to the circumstances existing at the precise time an officer perceived the threat inducing him to shoot."[9] However, in May of 2025, the Supreme Court rejected this approach "as improperly narrowing the requisite Fourth Amendment analysis."[10] The Court explained that "[t]o assess

---

[1] R. Doc. 232, p. 1.
[2] See R. Doc. 110-17.
[3] R. Doc. 110-17, p. 2. See R. Doc. 232-5, p. 11 (deposition of John Helou), p. 11:15-23.
[4] *Id.*, p. 3.
[5] *Id.*
[6] *Ramirez v. Killian*, 113 F.4th 415, 427 (5th Cir. 2024).
[7] See R. Doc. 110-17, p. 2.
[8] Barnes v. Felix, 605 U.S. ---, 145 S.Ct. 1353, 1360 (2025) ("a court cannot thus 'narrow' the totality-of-the-circumstances inquiry, to focus on only a single moment.").
[9] Id., 145 S.Ct. at 1356.
[10] *Id*.

whether an officer acted reasonably in using force, a court must consider all the relevant circumstances, including facts and events leading up to the climactic moment."[11]

The Board's "Decision point analysis" improperly only considered the moment that "[t]he larger dog ran towards Officer Roussel with the smaller of the 2 dogs running towards Officer Burmaster."[12] In doing so, the Board failed to consider relevant circumstances leading up to the shooting, including the nature of the domestic disturbance call that Officer Burmaster was responding to, the time that elapsed between Officer Burmaster's entry thought the gate and proceeding upon the driveway, and the sudden appearance of the dogs which reasonably indicated that the dogs had purposefully been released upon the officers. These factors, if considered by the Board and taken in conjunction with the other objective factors such as the aggressiveness of the dogs, the quickness of the dog's approach to Officer Burmaster, and the lack of available options to escape, demonstrate that Officer Burmaster's conduct was not objectively unreasonable.

Given the Board's defective analysis, its conclusion that the shooting was "Not Justified" will be confusing and unduly prejudicial and should be excluded under Federal Rule of Evidence 403.

### b. **Plaintiff's theory that NOPD's superintendent's decision making was affected by Plaintiffs' lawsuit is baseless.**

Plaintiffs, in their Opposition suggest, without factual support, that Plaintiffs' lawsuit was so important that it caused the NOPD highest executives to act dishonestly in deciding to exonerate Officer Burmaster. By making this argument, Plaintiffs make it clear that they are not interested in focusing on the facts and circumstances of the dog shooting in this case. Instead, they seek to clothe their position in the imprimatur of a NOPD official pronouncement. However, the fact is

---

[11] *Id*.
[12] R. Doc. 110-17, p. 2.

that the Use of Force Review Board's conclusion is just a recommendation for the Superintendent to consider or reject. In this case, the Superintendent rejected the Board's recommendation. There is no evidence to show that the fact that Plaintiff had filed a lawsuit affected the Superintendent's decision in any way. The Plaintiffs' argument in this regard is thus without merit, is insulting, and should be rejected.

    **c. The Plaintiffs' theory that the Use of Force Review Board's conclusion represents NOPD policy is incorrect.**

Plaintiffs, in their Opposition, argue that the Use of Force Review Board's recommendation regarding NOPD policy is relevant where the NOPD's ultimate policy maker has declared that NOPD policy was not violated. This is, as a matter of law, not true. Further, whether or not Chris Goodley is permitted to provide an opinion at trial as an "expert," he is not the Superintendent and is not authorized to establish NOPD policy. Given that the Board's recommendation to the Superintendent regarding Officer Burmaster's use of force was not accepted by the Superintendent, the Board's recommendation should not be admitted as evidence in this.

Plaintiffs, in the Opposition, attack Anne Kirkpatrick's testimony and argue that her testimony should be excluded. However, Plaintiffs' arguments in these regards are without merit and, at most, go the weight, not admissibility of her testimony.[13]

    **d. The Use of Force Review Board should be excluded pursuant to FRE 407.**

Plaintiffs, in their Opposition, deny that the Use of Force Review Board's actions concerning Officer Burmaster were remedial measures subject to Rule 407. In doing so, Plaintiffs wholly ignore the plain language of NOPD Operations Manual Chapter 1.3.7, which declares that

---

[13] See R. Doc. 235.

the Board "serves as a quality control mechanism[.]"[14] In addition, Plaintiffs contend that the Board's report and recommendation that Officer Burmaster receive training were merely a "post incident investigation"[15] where "no actual remedial measures, training, or discipline ever took place."[16] However, it is undisputed that Officer Burmaster received training as a result of this report, which included "Review [of] the body worn camera footage to identify and discuss the actions/tactics taken by the officer[.]"[17] Thus, it is not correct to say that no remedial measures were taken as a result of the Board's conclusion here.

Finally, Plaintiffs argue that the Board's actions were "required by a federal court order, as part of the NOPD consent decree."[18] However, the consent decree, in relevant part, provides merely that "NOPD agrees to develop and implement a Use of Force Review Board to review all serious uses of force and other FIT investigations."[19] Thus, the consent decree reflects a voluntary agreement. Further, any obligation for the NOPD to conduct use of force reviews derives from its own policy. Thus, Plaintiffs' argument that the Board's actions were required by a superior authority is not correct.

### e. **Goodley's testimony regarding the Use of Force Review Board should be excluded.**

It is anticipated that the entirety of Chris Goodley's testimony will involve his actions and recommendations made as part of the Board. Plaintiffs make clear that they seek to have Goodley testify as an "expert" to interpret NOPD policy. In this regard, Plaintiffs cite authority that

---

[14] R. Doc. 230-3.
[15] R. Doc. 232, p. 8.
[16] R. Doc. 232, p. 9.
[17] R. Doc. 105-10, pp. 3, 5-6.
[18] R. Doc. 232, p. 9.
[19] United States of America v. City of New Orleans, Case No. 12-cv-1924 (E.D. La.), R. Doc. 778 (April 18, 2024) ¶ 108.

provides, "a policy violation can serve as evidence that an act was objectively unreasonable."[20] It also follows that acting in accordance with policy is probative of acting reasonably. In this case, there is only one person who can definitively interpret NOPD policy – that person is Superintendent Anne Kirkpatrick. Thus, Goodley's testimony concerning his recommendation that Officer Burmaster violated policy, which was not followed by the Superintendent, will be unhelpful, and confusing to the jury. This testimony should be excluded.

### 2/3    Officer Burmaster's prior uses of force and prior NOPD investigations.

Defendants recognize that this Court's Order & Reasons (R. Doc. 245, pp. 18-21) commented on Officer Burmaster's prior uses of force and prior NOPD investigation. Given that commentary, Defendants do not believe that anything else needs to be added beyond their argument in R. Doc. 230-1.

### 4.    NOPD investigations of incidents after the shooting in question.

Plaintiffs agree to this motion *in limine*.[21]

### 5.    Comments of the Office of the Consent Decree Monitor.

Plaintiffs, in their Opposition, attach a proposed exhibit[22] containing comments by one or members of the Office of the Consent Decree Monitor ("OCDM"), which they seek to introduce at trial. A review of the document shows that it is a draft of the Administrative Shooting Investigation authored by Detective Shannon Brewer, which contains comments alongside of the text. Most of the comments are questions; there are no facts. There are two statements that contain opinions.[23] Among other things, the commenter states, "Based on your findings, officer Burmaster

---

[20] R. Doc. 232, p. 10 (citing *Dawes v. City of Dall.*, No. 17-1424, 2021 U.S. Dist. LEXIS 260494, at *7-8 (N.D. Tex. Sep. 24, 2021), *Hope v. Pelzer*, 536 U.S. 730, 743-44 (2002).
[21] R. Doc. 232, p. 14.
[22] R. Doc. 232-7.
[23] R. Doc. 232-7, p.17.

is in violation of Chapter 1.3 paragraph 8(a) as well. I submit to you that not only is it unreasonable, but unauthorized also."[24]

Plaintiff argues that "the OCDM comments are extremely trustworthy – they are made by officials selected by a section of this Court to conduct oversight over NOPD."[25] Defendants contend that the opinions and questions made by members of the OCDM in this draft document are of no probative value as to whether Officer Burmaster acted unreasonably. The comments are based on a report, which is itself hearsay; because the report is not final, it is additionally unreliable. The comments and opinions of the OCDM are hearsay based on hearsay. Although Rule 804 might apply because the OCDM members may qualify as unavailable declarants, the report itself is inadmissible hearsay; the comments on the report are therefore inadmissible. Further, given that the comments were made on a non-final draft of a report, there is insufficient indicia of reliability to warrant admission based on Rule 807.

Plaintiffs argues that Rule 702 (and presumably Rule 701) does not apply because they "are not offering any testimony by the OCDM personnel."[26] However, the statements clearly contain opinions which are based on the presumed "specialized knowledge" known by the OCDM based on their appointment by the Court and oversight over the NOPD. These out of court declarations are subject to Rules 701 and 702. Plaintiffs have not attempted to demonstrate the admissibility of the opinions contained in the comments under Rules 701 or 702. The exhibit should be excluded.

Plaintiffs fail to address Defendants objection to this document based on Rule 403.[27] This document contains no factual content and is of no probative value. However, given the OCDM's

---

[24] R. Doc. 232, p. 17.
[25] *Id*.
[26] R. Doc. 232, p. 17.
[27] R. Doc. 230-1, p. 7.

appointment by the Court as monitors of the NOPD, it is likely that the jury will give these ambiguous comments and opinions undue weight to the point where they may relinquish their fact-finding duties. The exhibit should therefore be excluded pursuant to Rule 403.

### 6. Exclusion of *State v. Loicana*.

Plaintiffs, in the Opposition, contend that commentary regarding the content of this opinion should be admitted for the purpose of showing "the failure of NOPD to properly supervise Officer Burmaster."[28] There are several problems with Plaintiffs' position.

First, the ruling in the case, which dealt with an illegal search, is wholly irrelevant to NOPD's supervision or discipline of Officer Burmaster's based on his use of force. Second, there is not evidence that NOPD was notified about the ruling in this case. Presumably, the district attorney, if there was reason to believe that Officer Burmaster acted improperly, would have made a complaint to NOPD's Public Integrity Bureau; but no such complaint was made. NOPD cannot be held to supervision or discipline standards based on information that they have no access to. Third, Plaintiffs' suggestion that testimony about the opinion, rather than the opinion itself, would cure the unfair prejudice is not true. If the jury is informed that there was an appellate case involving Officer Burmaster, they will be unduly influenced by that fact. Further, much valuable time and effort would be wasted by the Defendants having to explain the irrelevance of the appellate opinion to the dog shooting in this case. The opinion, and testimony about it, should therefore be excluded pursuant to Rule 403.

### 7. Plaintiff should be precluded from referring to Shannon Jones-Brewer or Chris Goodley as Defendants' experts.

Defendants, on March 28, 2025, designated two Sgt. David Duplantier and Lt. John Helou as non-retained experts, and noted that "This designation supersedes and replaces any previous

---

[28] R. Doc. 232, p. 18.

designation made by the City."[29] The Defendants object to Plaintiffs' stated intention to "point out that the City considered [Brewer-Jones] to be an expert, given that they designated her as an expert."[30] This comment should be excluded under Rule 403 in that it would misleadingly imply that Defendants consider her testimony to be in some way credible. Whether the Defendants designated her in a superseded notice is irrelevant to any issue in this case. For the same reasons, Plaintiffs should be precluded from commenting or eliciting testimony that the Defendants at one point designated Goodley as a non-retained expert.

Respectfully submitted:

*/s/ James M. Roquemore*_____
**JAMES M. ROQUEMORE, LSB #40035**
ASSISTANT CITY ATTORNEY
james.roquemore@nola.gov
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET, SUITE 5E03
NEW ORLEANS, LOUISIANA 70112
TEL: (504) 658-9800
FACSIMILE: (504) 658-9868

*Counsel for Derrick Burmaster and the City of New Orleans*

---

[29] R. Doc. 232-4.
[30] R. Doc. 232, p. 19.