UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and | * | CIVIL ACTION |
| JULIA BARECKI-BROWN | * | |
| | * | DOCKET NUMBER: 22-00847 |
| VERSUS | * | |
| | * | SECTION: L |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | HONORABLE ELDON E. FALLON |
| NEW ORLEANS | * | |
| | * | DIVISION: 4 |
| | * | |
| | * | HONORABLE KAREN WELLS ROBY |

*****************************************************************************

### DERRICK BURMASTER'S AND CITY OF NEW ORLEANS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO KIRKPATRICK DEPOSITION

One April 9, 2025, this Court ordered that the parties take Superintendent Anne Kirkpatrick's video deposition for perpetuation purposes. (R. Doc. 204). Plaintiffs are unhappy with the responses they received in response to the questions posed by Plaintiffs' counsel. Given the testimony does not fit the narrative they wish to present to the jury, Plaintiffs' counsel now seeks to exclude Superintendent Kirpatrick's testimony. Defendants, Derrick Burmaster ("Burmaster") and the City of New Orleans (the "City) (collectively, "Defendants"), oppose Plaintiffs' request that certain portions of her testimony be excluded, and respond to their argument that this Court should exclude the following:

**I.     Kirkpatrick's references to "domestic violence."**

The officers were responding to a domestic violence call. Plaintiffs acknowledge that the police received a report "that one woman was yelling, and something was heard breaking." (R. Doc. 247, pg. 2). As the Incident Recall Report reflecting the 911 call for the night in question, the stated "Problem" was that the complainant "can hear his neighbors across the street fighting."[1]

---

[1] Exhibit 1, Certified PremierOne Report, Incident Details, City Defendants 2132.

1

The parties' Joint Exhibit 1, which is the video of the incident, establishes that Officer Burmaster was on the scene and talked to a concerned neighbor about hearing a woman screaming at the Plaintiffs' home. Further, Derek Brown acknowledged that the Browns were engaged in a domestic situation on the night in question. Specifically, Mr. Brown testified that "I came home and [Mrs. Brown] was **upset** with me for not having responded and that's what our **argument** was about. . . **I do not remember anything in particular**. It was just **a lot of husband-wife arguing** about lack of communication, and of not being supportive. **I don't recall any specific words or sentences that we used that night**." Mr. Brown confirmed that "**it was loud enough for someone to have called 911**."[2]   Mrs. Brown also confirmed that they were arguing. She said, "**when he came home I started arguing with him** about where he was at." Mrs. Brown confirmed that she knew the police were called because somebody heard something. She also acknowledged that "I can be pretty loud sometimes" and that she was loud that night.[3]

The suggestion that the NOPD was not firm evidence of a domestic violence situation is false. The situation that night rose to the level of a neighbor being concerned enough to call the police. The neighbor called the police because they were concerned about the situation and contrary to plaintiff's argument, it is clear that it was a concern over domestic violence. This testimony is appropriate, based on the facts of this case, and should not be excluded.

II.  **Kirkpatrick's conclusions about the "reasonableness" of Burmaster's actions and testimony as a "lay witness."**

Contrary to Plaintiffs' argument, Superintendent Kirkpatrick's conclusions about the "reasonableness" of Burmaster's actions are not legal conclusions. Superintendent Kirkpatrick is the final authority on policy violations of NOPD Officers, which includes Officer Burmaster. She

---

[2] Exhibit 2 (Deposition of Derek Brown), pp. 47:1 – 48:25.
[3] Exhibit 3 (Deposition of Julia Barecki-Brown), pp. 20:9 -21:10.

determined that his actions did not run afoul of policy. Indeed, given she made this determination she has every right to use a common nomenclature to describe how she reached such a conclusion.

Plaintiffs' suggestion that the word "reasonable" is a legal conclusion is without merit. Her use of the word reasonable is not a legal conclusion. Superintendent Kirkpatrick's reached a conclusion about an employment matter that she is tasked with making as the Superintendent of NOPD. She concluded that his actions were reasonable, and it supported her decision to not subject him to adverse employment action.

Moreover, Plaintiffs' counsel repeatedly used the word "reasonable" and "reasonableness" during his examination of Superintendent Kirkpatrick. (R. Doc. 247-1, pp. 15, 18, 19, 20, 32, 35, 44, 76, and 78). For this reason alone, Plaintiffs request to strike this testimony should be denied. Plaintiffs' counsel repeatedly elicited testimony that he does not like now, which is not a basis to exclude her testimony. Why did Plaintiffs' counsel repeatedly ask Superintendent Kirkpatrick about reasonableness if he believed she was unable to provide such testimony and/or response? Because he was not asking for a legal conclusion, and he knew her conclusion was within her purview as ultimate authority on employee discipline for the NOPD.

In an attempt to buttress their argument, Plaintiffs go on to suggest that the stipulation that "no experts may use the terms reason, reasonableness, reasonable, unreasonable, or unconstitutional, and no experts may directly opine as to whether or not the Fourth Amendment was violated" applies to her testimony. The stipulation does not apply to this witness. Moreover, as noted above, Plaintiffs' counsel repeatedly used the words reasonable and reasonableness when eliciting her testimony. Superintendent Kirkpatrick is not being offered as an expert witness. In fact, the City has never attempted to qualify Superintendent Kirkpatrick as an expert witness. Conversely, counsel for Plaintiff, in a previous case in the Eastern District, filed a motion to

designate Superintendent Kirkpatrick as a non-retained expert witness.[4] Had he elicited the testimony in the instant case that he hoped to achieve, the City has zero doubt that he would have again designated her as a non-retained expert. Nevertheless, at present, she is not testifying as an expert in this matter. Superintendent Kirkpatrick is testifying about her review of the reports submitted and conclusions she reached in finding that Officer Burmaster did not violate NOPD's use of force policy.  It is apparent that Plaintiffs do not want the jury to hear how she reached this conclusion, which includes her finding that Officer Burmaster's actions were reasonable.

### III.    References to the District Attorney Referral.

Plaintiffs' briefing for this Objection notes, "**the evidence shows that the matter was referred to the district attorney**." (R. Doc. 247, pg. 4). Plaintiffs' now assert that it is "hypothetical" that this matter was referred to the district attorney.  Plaintiffs' argument relative to this testimony makes zero sense.  Plaintiffs' Trial Exhibit 20, which Superintendent Kirkpatrick reviewed in connection with her decision to exonerate Officer Burmaster, references that the matter was referred to the district attorney.  There is no question that this matter was referred to the district attorney.  In fact, Shannon Brewer will be testifying at trial and will confirm that the matter was referred to the district attorney.

### IV.    Questions about Superintendent Kirkpatrick's experience or legal background.

The City does not agree with Plaintiffs' contention that the questions were "expert-qualifying questions." (R. Doc. 247, pg. 4).  Nevertheless, the City does not oppose deleting these questions.

---

[4] See Exhibit 4, Upton v. Vicknair, Case No. 21-cv-407 (E.D. La.) (Motion to Designate NOPD Superintendent Anne Kirkpatrick as Plaintiff's Non-Retained Expert).

### V.     Kirkpatrick's "Credibility Assessments."

Here is another example of Plaintiffs' counsel eliciting testimony and now attempting to exclude the same. Plaintiffs' counsel repeatedly asked about credibility of witnesses. (R. Doc. 247-1, pp. 23, 24, 25, 26). This is what prompted the City to ask about credibility of other witnesses. Plaintiffs cannot have it both ways. Plaintiffs' counsel wanted to ask about credibility and does not want the City to ask about credibility. This objection should therefore be denied.

### VI.    References to Burmaster being "Exonerated."

The NOPD is not "misleading" anyone by using the term exonerated. This is a term that is used by the NOPD in reference to findings of Public Integrity Bureau investigations. See *Rogoff v. New Orleans Police Dep't*, 2022-0070 (La.App. 4 Cir. 7/20/22, 2–3); 345 So.3d 1029, 1031; *Palmer v. Dep't of Police*, 97-1593, p. 2 (La.App. 4 Cir. 1/28/98); 706 So.2d 658, 659. There is no reason to prevent the NOPD from using a word that it regularly uses when making a finding for a disciplinary investigation. If Plaintiffs are concerned about her testimony and use of the word, which is an accurate and appropriate use, the City would be happy to work with Plaintiffs' counsel on a stipulation about the definition of the word in reference to the conclusion of an employee disciplinary investigation.

Respectfully submitted:

*/s/ James M. Roquemore*_____
**JAMES M. ROQUEMORE, LSB #40035**
ASSISTANT CITY ATTORNEY
james.roquemore@nola.gov
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET, SUITE 5E03
NEW ORLEANS, LOUISIANA 70112
TEL: (504) 658-9800
FACSIMILE: (504) 658-9868

*Counsel for Derrick Burmaster and the City of New Orleans*