UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DEREK BROWN and** | * | **Civil Action No. 22-00847** |
| **JULIA BARECKI-BROWN** | * | |
| | * | **SECTION: L** |
| **VERSUS** | * | |
| | * | **HONORABLE ELDON E. FALLON** |
| **DERRICK BURMASTER, SHAUN** | * | |
| **FERGUSON, and the CITY OF** | * | **DIVISION: 4** |
| **NEW ORLEANS** | * | |
| | * | **HONORABLE KAREN WELLS ROBY** |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Plaintiffs' Reply Memorandum in Support of Motion *in Limine* to Exclude Testimony of Lubrano, Sanchez, Ganthier and Kirkpatrick (R. Doc. 225)**

Defendants clarify in their opposition that their witnesses Kirkpatrick, Ganthier, Lubrano, and Sanchez are "lay witnesses."[1] Defendants also state in their opposition that:

- Superintendent Kirkpatrick will be testifying about her "conclusion" that "based on the totality of the circumstances, Burmaster's shooting of Apollo was reasonable."[2]

- Sanchez and the rest of the Superintendent's Disciplinary Hearing Committee[3] will be testifying about "whether or not the force used by Burmaster was reasonable based on the set of facts."[4]

- These witnesses will opine about whether "Officer Burmaster's conduct [was] consistent with the Fourth Amendment and NOPD policy."[5]

This testimony should be excluded because, as this Court already pointed out, lay witnesses

---

[1] R. Doc. 235, at 2.
[2] R. Doc. 235, at 3.
[3] The Superintendent's Disciplinary Hearing Committee consists of Ganthier, Lubrano, and Sanchez, and includes Kirkpatrick as the final decision maker. R. Doc 235, at 1.
[4] R. Doc. 235, at 4.
[5] R. Doc. 235, at 6.

1

cannot provide testimony based on specialized knowledge. *See* R. Doc. 244 ("the Court informed the parties that at present, it is unlikely to allow Duplantier to testify as indicated pursuant to Federal Rule of Evidence 701, given he would be impermissibly opining as to 'other specialized knowledge within the scope of 702.'") And the testimony should be further excluded because the parties stipulated to exclude testimony about reasonableness.

1. **Ganthier, Lubrano, and Sanchez may not provide lay witness opinions that are based on "specialized knowledge" under Rule 701.**

Lay witness may not give opinion testimony that is "based on scientific, technical, or other <u>specialized knowledge</u> within the scope of Rule 702." Fed. R. Evid. 701(c) (emphasis added).

Ganthier, Lubrano, and Sanchez plan to provide lay opinions to the jury that Burmaster did not violate NOPD's Use of Force polices that require officers, before resorting to a firearm, to first attempt non-lethal methods if they would be effective and available:

> **Ch. 13, Sec. 32**: Officers are authorized to use firearms to stop an animal in circumstances in which the animal reasonably appears to pose an imminent threat to human safety and <u>alternative methods are not reasonably available or would likely be ineffective</u>. The officer must be cognizant of the surroundings when shooting at an animal and ensure there is no risk to people in the area.[6]
>
> **Ch. 1.7.1, Sec. 62**: The CEW [*i.e.,* Taser] has **proven to be an effective tool against dangerous animals** and may <u>reduce the need for greater, more injurious force against such animals</u>. The use of a CEW on an animal is a <u>safer, more humane, and less traumatic</u> conclusion to the incident.[7]

At their depositions, these lay witnesses disclosed that their opinions on whether non-lethal defense tools such as a taser or baton and/or other non-lethal defensive tactics would have been effective on Apollo are based on highly "specialized knowledge."

---

[6] R. Doc. 110-12, at 27, ¶ 32 (emphasis added).
[7] R. Doc. 110-12, at 9, ¶ 62 (emphasis added).

2

For example, Superintendent Lubrano explained in detail that his lay opinions about the effectiveness or ineffectiveness of non-lethal force on Apollo is based on his highly specialized knowledge:

> Q. So this use of force continuum isn't training that, in your mind, you would expect the average lay person to have, right?
>
> A. Probably not.[8]
>
> …
>
> Q. … Because you have this training, this very specific detailed training about the taser, you are able to give opinions on whether a taser would be effective in a certain situation or not, right?
>
> A. I would say yes.
>
> Q. But that's because you have specialized technical training in the taser as a police officer, right?
>
> A. Yes.
>
> Q. And these opinions that you could give, based on that specialized technical knowledge, you would not expect a lay person to be able to give those same opinions, right, accurately?
>
> A. No.[9]
>
> …
>
> Q. So given your specialized training that you've had in the baton, are you able to answer questions about whether a baton would or would not be effective in a certain situation that you would expect lay people to not be able to answer?
>
> A. Yes.
>
> Q. Because of your specialized technical training, right?
>
> A. Yes.[10]
>
> …

---

[8] Depo. of Lubrano, R. Doc. 225-7, at 13.
[9] R. Doc. 225-7, at 17.
[10] R. Doc. 225-7, at 20.

#103993613v1

> Q. Assuming no one on the jury in this case is a police officer, you would expect that you would be in a unique situation to explain the effectiveness of the taser in a particular situation to the jury because of your highly-specialized technical training on the taser, right?
>
> A. Yes.[11]

Based on all of this technical and specialized knowledge he possesses, Superintendent Lubrano plans to provide lay opinion testimony that a Taser would not have been effective on Apollo: "I would be leery to use a taser on a dog. For one thing, it's fast moving. It's, you know, not like a five foot nine guy where, you know, those prongs separate where you are still making contact…."[12]

Lubrano will further opine:

> Q. So you have said that you don't think on a moving dog a taser would be effective, because the prongs are not likely to make the contact that they need to make, right?
>
> A. Correct.
>
> Q. The reason you know that better than me is because you, as you started earlier, you have actual technical training expertise in taser and in taser prongs, right?
>
> A. Yes.[13]
>
> …
>
> A. I don't -- again, I don't think a baton would be effective.
>
> …
>
> Q. Again, you know that because of your specialized training in using a baton?
>
> A. Yes.[14]

---

[11] R. Doc. 225-7, at 21-22.
[12] R. Doc. 225-7, at 53.
[13] R. Doc. 225-7, at 55.
[14] R. Doc. 225-7, at 56.

#103993613v1

> …
>
> A. ... A moving target, something like in this situation, where you have a dog running towards you, I would not go to a taser.
>
> Q. And at trial, if asked, you are going to give that opinion to the jury based on your specialized technical knowledge that you uniquely have, right?
>
> A. Yes.[15]

Similarly, Superintendent Ganthier explained:

> A. I'm a SWAT school instructor. I've been on the SWAT team for 11 years as a supervisor and officer. I am a SWAT school supervisor. I taught various techniques on, you know, one, two, several classes about situational avoidance. I'm a certified instructor in leadership in police organizations.
>
> Q. You have training on the baton?
>
> A. Yes.
>
> Q. This is all specialized training that you've had because you are a police officer who has had a long, decorated career that lay people, ordinary people, typically would not have, right?
>
> A. Yeah. Obviously, tasers, baton training, weapons, yes.
>
> . . .
>
> Q. Okay. So let's say you are asked to tell a jury about what force would be appropriate in a certain situation, what type of defensive tactics would work, what type of weapons would be effective and what wouldn't be effective in a particular situation. You would have more of a basis to give those kinds of opinions than someone like me off the street who doesn't -- who never had any of the training that you had, right?
>
> A. I would say so, yes.
>
> …

---

[15] R. Doc. 225-7, at 58.

#103993613v1

>Q. So if anyone asks you at trial whether a taser [would have] worked or not, you are going to draw upon that specialized training that you've received to answer that question, right?
>
>A. Yes.[16]

To the extent Defendants attempt to illicit any similar lay opinions regarding these or similar topics from Superintendent Sanchez at trial, such testimony would similarly be based on Sanchez' specialized knowledge.

Thus, for these lay witnesses to testify about ineffectiveness of non-lethal tools or defensive tactics on Apollo, they would have to draw upon their technical and "specialized knowledge." Such testimony would therefore constitute impermissible lay witness opinion testimony under Rule 701(c). *See Silva v. Chung*, No. 15-00436 HG-KJM, 2019 U.S. Dist. LEXIS 85667, at * 13-15 (D. Haw. May 21, 2019) (excluding lay witness testimony because "matters involving police practices and the use of Tasers are matters which require specialized or technical knowledge that require expert testimony" (emphasis added)).

Defendants attempt to bypass Rule 701(c)'s clear restrictions by arguing that "so long as the testimony is related to the employee's job duties," then lay witnesses may opine about literally anything.[17] But this is not the law. Putting aside the fact that adopting Defendants' argument would render Rule 701(c) useless, as the Fifth Circuit recently held in *In re: Taxotere (Docetaxel) Products Liability Litigation*, 26 F.4th 256, 264-66 (5th Cir. 2022), even if a lay witnesses' opinions are "related to his … job duties" or "derived from the duties he held at his company," they still may not testify regarding "specialized and technical information":

>Regardless of whether it was a "very straightforward process" to Dr. Kopreski, his refinement of the TAX316 data in the context of litigation was the product of "scientific, technical, or other specialized knowledge" and application of scientific "principles and

---

[16] Depo. of Ganthier, R. Doc. 225-5, at 51-54.
[17] R. Doc. 235, at 5.

>methods" within the scope of Rule 702, not simply lay opinion testimony based on his perceptions, as allowed by Rule 701. Therefore, it was erroneous for the district court to allow Dr. Kopreski to testify about his "re-analysis" of the TAX316 data ….

*Id*. at 267 (rejecting application of *United States v. Valencia*, 600 F.3d 389 (5th Cir. 2010) (per curiam), which Defendants solely rely on for their "related to employee's job duties" argument. (R. Doc. 235, at 5, n. 21)); *see also* DAVID H. KAYE, ET AL., THE NEW WIGMORE: EXPERT EVIDENCE § 1.7 at 39-40 (2004):

>"Some courts mistakenly interpreted the original version of Federal Rule of Evidence 701 and state equivalents as allowing lay testimony on technical issues. . . . Some courts held that under this rule a lay witness with first-hand knowledge can offer an opinion akin to expert testimony in most cases, so long as the trial judge determines that the witness possesses sufficient and relevant specialized knowledge or experience to offer the opinion. Under this interpretation, courts dodged restraints on expert opinions by calling them lay opinions . . . . However, the proper interpretation of Rule 701 - and the proper interpretation of analogous state rules - was that it did 'not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness."[18]

Moreover, all of these opinions of Lubrano, Sanchez, and Ganthier's regarding the ineffectiveness of non-lethal force on Apollo or Burmaster's compliance with NOPD policies would be the <u>same opinions that are sought to be given by Defendants' proffered expert Sgt. Duplantier</u>. *See* R. Docs. 220, 220-1, 220-2. At the June 2, 2025 Pretrial Conference, this Court already held that Sgt. Duplantier's proffered opinions are based on "other specialized knowledge within the scope of 702. Fed. R. Civ. P. 701(c)." R. Doc. 244, at 1. For the same reasons that Sgt. Duplantier's opinions are based on "specialized knowledge," so too are the lay opinions of Lubrano, Sanchez, and Ganthier.

---

[18] Internal citations and quotations omitted.

In sum, Lubrano, Sanchez, and Ganthier should be excluded from providing the foregoing (or any other) impermissible lay witness opinion testimony that is based on their technical or specialized knowledge pursuant to Rule 701(c).

### 2. Testimony about these same topics by Kirkpatrick, Lubrano, Sanchez, and Ganthier would be impermissibly cumulative.

The Court may exclude "needlessly cumulative" evidence under FRE 403. "It is within the power of the district court to exclude testimony that is repetitious and cumulative of testimony already before the court." *Howard v. J&B Hauling*, LLC, 2024 U.S. Dist. LEXIS 200522, at *6 (E.D. La. Oct. 9, 2024). It would be needlessly cumulative and highly prejudicial if Defendants were permitted to call <u>four NOPD witnesses in a row</u> to give the <u>same opinions</u> that non-lethal tactics would not have been effective on Apollo and that Burmaster's shooting of Apollo did not violate NOPD policy. And this problem would be compounded even further if the Court allows Defendants to present the testimony of their proffered expert Sgt. Duplantier, who seeks to provide the exact same opinions.

### 3. Kirkpatrick, Ganthier, Lubrano, and Sanchez may not provide legal opinions, and the parties stipulated not to put on testimony of "reasonableness."

Defendants make clear in their opposition that these witness will be opining that "based on the totality of the circumstances, Burmaster's shooting of Apollo was reasonable,"[19] about "whether or not the force used by Burmaster was reasonable based on the set of facts,"[20] and that "Officer Burmaster's conduct [was] consistent with the Fourth Amendment."[21]

These are all impermissible legal conclusions. "Whether the officers' actions were reasonable ... is an ultimate question for the jury to decide after they have heard the evidence and

---

[19] R. Doc. 235, at 3.
[20] R. Doc. 235, at 4.
[21] R. Doc. 235, at 6.

#103993613v1

this Court has instructed them on the law at the conclusion of the case." *Joseph v. Doe*, 2021 U.S. Dist. LEXIS 106081, at *9 (E.D. La. June 7, 2021). And whether Burmaster's conduct was "consistent with the Fourth Amendment" is also an obvious legal conclusion. "[W]itnesses, whether lay or expert, cannot testify as to legal conclusions. To find otherwise would invade the province of the Court." *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 2013 U.S. Dist. LEXIS 190580, at *5 (S.D. Miss. Feb. 25, 2013) (citing *United States v. El-Mezain*, 664 F.3d 467, 511 (5th Cir. 2011) (It is also generally prohibited for a lay witness to … give legal opinions.")). The Court should exclude any such legal opinions offered by Kirkpatrick, Ganthier, Sanchez or Lubrano.

Moreover, the parties stipulated not to have experts testify as to reasonableness. stipulated that "no experts may use the terms reason, reasonableness, reasonable, unreasonable, or unconstitutional, and no experts may directly opine as to whether or not the Fourth Amendment was violated."[22] If an expert cannot testify as to the ultimate question of reasonableness, then *a fortiori* a lay witnesses cannot either.[23] It is somewhat shocking that Defendants are seeking to have lay witnesses testify to conclusions that Defendants agreed experts could not.

Plaintiffs' motion should be granted.

---

[22] R. Doc. 247-2 (Stipulation of the Parties).
[23] *Robinson v. State*, 702 A. 2d 741 (Md. 19897) ("We agree with the observation of Robinson's counsel at oral argument that the State could not introduce the testimony of a qualified chemist as to the chemical composition of a substance unless such an opinion was based upon the scientific evidence necessary to support that opinion. Hence, it follows *a fortiori,* that a lay witness may not offer such an unsupported opinion based solely on visual observation.").

9

Respectfully Submitted:

| | |
|---|---|
| */s/ William Most* | */s/ Tarak Anada* |
| WILLIAM MOST (La. Bar No. 36914) | TARAK ANADA (#31598) |
| HOPE PHELPS (La. Bar No. 37259) | PATRICK VAN BURKLEO (#41471) |
| DAVID LANSER (La. Bar No. 37764) | JONES WALKER LLP |
| MOST & ASSOCIATES | 201 St. Charles Avenue |
| 201 St. Charles Ave., Ste. 2500, # 6825 | New Orleans, Louisiana 70170-5100 |
| New Orleans, LA 70170 | Telephone: (504) 582-8322 |
| Telephone: (504) 509-5023 | Facsimile: (504) 589-8322 |
| E-Mail: williammost@gmail.com | E-Mail: tanada@joneswalker.com |

#103993613v1