UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and JULIA BARECKI-BROWN | * * | Civil Action No. 22-00847 |
| | * | SECTION: L |
| VERSUS | * | |
| | * | HONORABLE ELDON E. FALLON |
| DERRICK BURMASTER, SHAUN FERGUSON, and the CITY OF NEW ORLEANS | * * * | DIVISION: 4 |
| | * | HONORABLE KAREN WELLS ROBY |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Memorandum in Support of Plaintiffs' Rule 49 Motion**

In this motion, Plaintiffs ask this Court to amend the judgment or order a limited new trial per Rule 49 (or in the alternative, under Rule 59) for two reasons: (1) the verdict form improperly included both steps of qualified immunity in contravention of Fifth Circuit caselaw and the stipulated Pre-Trial Order; and (2) the verdict form double-counted municipal causation, leading to an irreconcilably inconsistent verdict on *Monell* liability.

First, qualified immunity. The doctrine has two steps, but only one of them is a question for the jury. In *Ramirez v. Killian*, the Fifth Circuit explained that the "jury decides the *factual* question of whether the officer violated the plaintiff's rights—the first step of the qualified immunity analysis. It does not decide the purely *legal* question of whether the officer's actions were objectively reasonable in light of clearly established law—the second step."[1]

Given that ruling, the parties stipulated in the Pre-Trial Order (R. Doc. 228 at 21) that the jury should **_not_** decide qualified immunity:

> **14. Jury Statement:** This is a jury case. The jury shall decide all disputed factual issues other than qualified immunity.

---

[1] *Ramirez v. Killian*, 113 F. 4th 415, 430 (5th Cir. 2024). (emphasis in original).

1

But here, this Court did exactly what the Fifth Circuit and the parties said it should *not*: it asked the jury to decide both steps of qualified immunity. In doing so, this Court disregarded a directive from the Fifth Circuit, the stipulation of the parties, and its own Pre-Trial Order. Thus, the judgment should be amended with qualified immunity struck from the verdict form, and a limited new trial should be ordered to determine whether punitive damages will be awarded.

So too with the verdict form's questions as to municipal liability and causation. The Fifth Circuit has held that there "there can be no municipal liability unless it is the moving force behind the constitutional violation."[2] And the Court properly instructed the jury that a "city is not liable under federal law for the actions of its employees unless the constitutional violation was caused by a city policy or custom."

Accordingly, when the jury found that the "City of New Orleans *is liable* for the violation" of Plaintiffs' constitutional rights, it necessarily found that there was causation. But then, confusingly, the jury said that the City did not cause the violation: which is impossible if the City is liable. The jury's subsequent, inconsistent answer should therefore also be struck from the verdict form, or a new trial ordered on the limited issue of municipal liability. For the reasons herein, the motion should be granted.

**A.    Applicable Legal Standards**

Federal Rule of Civil Procedure 49 "articulates the standards courts must follow in evaluating jury's verdicts."[3] When a jury returns "an internally inconsistent verdict, the judge has a duty to harmonize the inconsistent responses."[4] "If the verdict form … was a 'special verdict'— i.e., one where the jury merely resolves issues of fact—Rule 49(a) would apply."[5] "If, however,

---

[2] *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009).
[3] *Lindsley v. Omni Hotels Mgmt. Corp.*, 123 F.4th 433, 439 (5th Cir. 2024) (citing Fed. R. Civ. Proc. 49).
[4] *Id.*
[5] *Id.* (citing *Team Contractors, L.L.C. v. Waypoint Nola, L.L.C.*, 976 F.3d 509, 517 (5th Cir. 2020)).

2

the verdict form was a 'general verdict'—i.e., one where the jury goes beyond resolving fact issues and applies law to fact to indicate who won—Rule 49(b) would apply."[6] "Rule 49(b) … lists the actions a district court may take to resolve inconsistencies in a verdict form and explains in what contexts the court may do so."[7] Rule 49(b)(4) provides that, "'[w]hen the answers are inconsistent with each other and one or more is also inconsistent with the general verdict, judgment must not be entered; instead, the court must direct the jury to further consider its answers and verdict, or must order a new trial.'"[8]

This motion is also brought, in the alternative, under Federal Rule of Civil Procedure Rule 59(a)(1)(A), which allows a court after a jury trial to "grant a new trial on all or some of the issues" for "for any reason for which a new trial has heretofore been granted in an action at law in federal court." A new trial may be granted "if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course."[9]

"The trial court's power to grant a new trial [under Rule 59(a)] on the basis of the court's firm belief that the verdict is clearly contrary to the weight of the evidence has . . . long been regarded as an integral part of trial by jury."[10] The Fifth Circuit has instructed that district courts should "respect the jury's collective wisdom and must not simply substitute its opinion for the jury's," but "if the trial judge is not satisfied with the verdict of a jury, he has the right—and indeed the duty—to set the verdict aside and order a new trial."[11]

---

[6] *Id.* at 439-440.
[7] *Id.* at 440.
[8] *Id.* (quoting Fed. R. Civ. P. 49(b)(4)).
[9] *Sims v. City of Jasper*, 117 F.4th 283, 288 (5th Cir. 2024), *quoting Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985).
[10] *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985).
[11] *Id.* (internal quotations omitted).

Trial courts have broad discretion in this area, given that the "authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court."[12] A motion for a new trial is a much more lenient test than for renewed judgment as a matter of law, and will not be upset upon appeal unless an abuse of discretion.[13]

Furthermore, Rule 59(e) allows a court to "alter or amend a judgment" if a motion is filed "no later than 28 days after the entry of the judgment." Amending a judgment is a remedy that "should be used sparingly."[14] The court has discretion to balance the need for finality against the need for justice.[15] The need for justice generally favors a Rule 59(e) motion only when the moving party demonstrates a mistake of law or fact or presents newly discovered evidence that was previously unavailable.[16]

B. **The Judgment Should be Amended by Striking Question 3 of the Verdict Form Because the Second Step of Qualified Immunity is a "Purely Legal Question" Not Appropriate for a Jury, Per Controlling Fifth Circuit Precedent and the Parties' Stipulation.**

The Court's judgment should be amended to reflect the jury's verdict without the qualified immunity question, because putting that question to the jury was an error of law.

The "qualified-immunity inquiry has two steps. First, we ask whether 'the officer's conduct violated a federal right.' Second, we ask 'whether the right in question was 'clearly established' at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his [] conduct.'"[17]

---

[12] *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); see also *Peterson v. Wilson*, 141 F.3d 573, 577 (5th Cir. 1998).
[13] *Jones v. Wal-Mart Stores, Inc.,* 870 F. 2d 982, 986 (5th Cir. 1989).
[14] *Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 837 (E.D. La. 2012) (*quoting Templet v. Hydrochem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004)).
[15] *Lavespere v. Niagara Mach. & Tool Works, Inc*., 910 F.2d 167, 174 (5th Cir. 1990).
[16] *See Stephens v. Witco Corp*., No. 97-1351, 1998 WL 426214, *1 (E.D. La. July 24, 1998).
[17] *Cantu v. Tamez*, No. 23-40673, 2024 U.S. App. LEXIS 22630, at *4 (5th Cir. 2024) (citations omitted)

4

In a Fourth Amendment context, the first step of qualified immunity is <u>factual</u> and asks whether the constitution was violated "by conduct that, viewed from the officer's perspective and information at the time, is objectively unreasonable."[18]

The second step, by contrast, "assesses the objective <u>legal</u> reasonableness of the action, that is, whether every reasonable officer would have known that the conduct in question was illegal."[19] According to the Supreme Court and the Fifth Circuit, this is a "purely legal question."[20]

Here, prior to trial the parties disagreed about whether the qualified immunity question had been resolved by the court on summary judgment and appeal. Plaintiffs contended that qualified immunity had already been denied pre-trial, because that is what the Fifth Circuit said: it held that "the district court did not err in denying Burmaster qualified immunity."[21] Defendants disagreed. But what the parties did agree on was that *if* qualified immunity were still a live issue, it would be for the Judge, not the Jury, to decide. The parties met and conferred about that, and counsel for all parties signed a stipulation that "the jury shall decide all disputed factual issues other than qualified immunity."[22] This stipulation ultimately became part of the Court's Pre-Trial Order.[23]

At trial, defendants did raise qualified immunity to the Court in their Rule 50 motion at the close of plaintiffs' case in chief. The Court denied it. But then the question was put *again* to the jury on the verdict form. That was an error. Specifically, the jury was asked to decide both steps of the qualified immunity analysis. In question one of the jury verdict form, the jury was asked if

---

[18] *Cole v. Carson*, 935 F.3d 444, 462 (5th Cir. 2019).
[19] *Id.* (emphasis added).
[20] *Siegert v. Gilley*, 500 US 226, 232 (1991) (describing the second step as a "purely legal question"); *Ramirez v. Killian*, 113 F. 4th 415, 430 (5th Cir. 2024) (describing the "second step" as a "purely legal question"); *Taylor v. LeBlanc*, 60 F. 4th 246, 251 (5th Cir. 2023) (whether "a given course of conduct would be objectively unreasonable in light of clearly established law" is a "purely legal question"); *Cole v. Carson*, 935 F.3d 444, 462 (5th Cir. 2019) ("The second step assesses the objective legal reasonableness of the action").
[21] *Brown v. Burmaster*, 2025 WL 227785 (5th Cir. Jan. 17, 2025).
[22] R. Doc. 228 at 21.
[23] *See* R. Doc. 244 (Minutes of Pre-Trial Conference) (referring to "pretrial order").

Burmaster "acted in an objectively unreasonable manner by killing Apollo."[24] That is step one of the qualified immunity analysis. Then, in question three of the jury verdict form, the jury was asked whether Burmaster is "entitled to qualified immunity."[25] That necessarily addresses step two of the qualified immunity analysis, since that is the only step left.

But jury should not have been asked to decide that second step for two reasons. First, because the second step of qualified immunity is a "purely legal question" – and trial courts commit error when they ask "the jury to answer both the factual question and the legal question."[26] As the Fifth Circuit explained in *Ramirez v. Killian*, the "jury decides the *factual* question of whether the officer violated the plaintiff's rights—the first step of the qualified immunity analysis. It <u>does not decide</u> the purely *legal* question of whether the officer's actions were objectively reasonable in light of clearly established law—<u>the second step</u>."[27] But here, <u>this Court did exactly what the Fifth Circuit said it should not</u>: it put both steps of qualified immunity to the jury.

In the past, there was some confusion over this issue, and qualified immunity was sometimes submitted to juries.[28] But that confusion was recently resolved by the Fifth Circuit, at least in cases where a suit survives a qualified immunity defense at summary judgment. In *Ramirez,*

---

[24] R. Doc. 269.
[25] *Id*.
[26] *Tamez v. City of San Marcos*, 118 F.3d 1085, 1094 (5th Cir. 1997) ("However, the court erroneously instructed the jury to answer both the factual question and the legal question. . . . Although the question of whether certain conditions were present is surely a question for the jury, the legal question of whether those circumstances justified Misiaszek's actions is a legal question that should have been determined by the court."); *Gomez v. Galman*, No. 24-30207, 2025 U.S. App. LEXIS 8786, at *13 (5th Cir. Apr. 14, 2025) ("the district court erred in submitting to factfinders the question whether a duty exists as a matter of law."); *United States v. Johnson*, 718 F.2d 1317, 1333-34 (5th Cir. 1983) ("That the determination may be difficult is insufficient to permit a judge to pass a legal question to a jury.")
[27] *Ramirez, supra*, at 430. (emphasis added and in original). *See also Benavides v. Nunez*, 24-20445 (5th Cir. 2025) (when a "factual dispute precludes finding qualified immunity at the summary judgment stage," the role for the jury is to "resolve the underlying factual dispute, guided by the district court's instructions regarding the law" which will then "determine the "objective legal reasonableness of the officer's conduct.")
[28] *See Carswell v. Borough of Homestead*, 381 F.3d 235, 242, 243 (3d Cir. 2004)

the Fifth Circuit held that when "<u>a plaintiff's claim survives the defendant's qualified immunity defense at summary judgment and proceeds to trial, there has already been, necessarily, a judicial determination as to the second qualified immunity step</u>."[29] And that is precisely the situation in this case: Plaintiffs' claims survived Defendant Burmaster's qualified immunity defense at the summary judgment phase both in the district court[30] and at the Court of Appeal.[31] Therefore, under the Fifth Circuit's express directive, prior to this case going to the jury, "<u>there ha[d] already been, necessarily, a judicial determination as to the second qualified immunity step</u>,"[32] and having the jury address again it was improper.

Moreover, "stipulations of parties are generally enforceable as a matter of law"[33] given that the Supreme Court has held that "stipulations must be binding."[34] Here, on May 30, 2025, the parties met and conferred to develop the pre-trial order.[35] In the proposed pre-trial order, the parties stipulated that the "jury shall decide all disputed factual issues other than qualified immunity."[36] All parties signed that proposed pre-trial order.[37] Plaintiffs were entitled to rely on the stipulation that the jury would not decide qualified immunity, and it prejudiced them for that to be changed mid-trial.

Thus, in putting the second step of qualified immunity to the jury, the Court disregarded both controlling Fifth Circuit caselaw and the binding stipulation of the parties. The motion should be granted, the judgment should be amended to (1) reflect the jury's determination that Derrick

---

[29] *Ramirez*, 113 F. 4th at 430 (emphasis added).
[30] R. Doc. 162.
[31] *Brown v. Burmaster*, 2025 U.S. App. LEXIS 1129 (5th Cir. Jan. 17, 2025).
[32] *Ramirez*, 113 F. 4th at 430.
[33] *Steigerwald v. Wal-Mart Stores Tex., LLC*, No. 3:19-CV-00394, 2020 U.S. Dist. LEXIS 66813, at *13 (S.D. Tex. Mar. 31, 2020); *Jones v. Wal-Mart Stores, Inc.*, 870 F.2d 982, 985 (5th Cir. 1989); *Brown & Root, Inc. v. Peisander*, 648 F.2d 415, 419 (5th Cir. 1981).
[34] *Standard Fire Ins. Co. v. Knowles*, 568 US 588 (2013).
[35] R. Doc. 228 at 1.
[36] R. Doc. 228 at 21.
[37] R. Doc. 228 at 22.

Burmaster committed a Fourth Amendment violation and (2) remove the jury's finding that Burmaster was nonetheless entitled to qualified immunity, and the Court should order a limited new trial to determine whether punitive damages will be awarded.[38]

## C. Question 5 of the Jury Verdict Form Should be Struck Because There Cannot Be Municipal Liability Without Causation.

Under Rule 49(b)(4), in reconciling a jury verdict form, "[w]hen the answers are inconsistent with each other and one or more is also inconsistent with the general verdict, judgment must not be entered; instead, the court must direct the jury to further consider its answers and verdict, or must order a new trial." Importantly, "the legal error resulting from the entry of a judgment based on inconsistent special interrogatories is one which undermines the validity and integrity of the judgment."[39]

Relevant here, an elementary principle of municipal liability under Section 1983 is the requirement of "direct causation."[40] That is to say, "there can be no municipal liability unless it is the moving force behind the constitutional violation."[41] That was explained to the jury here: the Court instructed the jury that a "city is not liable under federal law for the actions of its employees unless the constitutional violation was cause by a city policy or custom."[42]

Thus, the question of municipal liability was conclusively established when the jury answered question four, stating "yes" the "City of New Orleans is liable for a violation of

---

[38] The Court determined that the punitive damages phase of the original trial would not go forward in light of the Jury's improper determination regarding qualified immunity.
[39] *Mercer v. Long Mfg. N. C., Inc.*, 671 F.2d 946, 948 n.1 (5th Cir. 1982).
[40] *Covington v. City of Madisonville*, 812 F. App'x 219, 225 (5th Cir. 2020) ("Whatever its form, to yield municipal liability under § 1983, the policy must have been the "moving force" behind the plaintiff's constitutional violation. . . In other words, a plaintiff "must show direct causation, i.e., that there was 'a direct causal link' between the policy and the violation."")
[41] *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009); *see also McInnis v. A.M.F., Inc.,* 765 F.2d 240, 248 (1st Cir. 1985) ("Causation in fact is an integral component of a tort claim; without causation there can be no liability.")
[42] Final Jury Instructions at pg. 19.

[Plaintiffs'] constitutional rights":[43]

> 4. Did the Plaintiffs prove by a preponderance of the evidence that Defendant the City of New Orleans is liable for a violation of their constitutional rights for any of the following reasons: (1) inadequately training, (2) inadequately supervising, or (3) inadequately disciplining Derrick Burmaster with respect to the use of force on dogs?
>
> ✓ Yes     ___ No

Thus, the jury rendered its "general verdict" that the City "was liable" to Plaintiffs under the constitution for a for a *Monell* violation, but then immediately afterwards, the jury answered the next special interrogatory in a manner that was inconsistent with the general verdict—stating that the City had not "caused" the Plaintiffs' damages. But that answer is impossible: the jury could not have found that the City did not "cause" the damages, because the jury had already found the City "liable" and there cannot be liability without causation. As the Court is aware, "*Monell liability requires*" the plaintiff to "*demonstrate a direct causal link* between the municipal action and the deprivation of federal rights."[44]

The Fifth Circuit's recent decision in *Lindsley*, 123 F.4th at 441, is instructive. There, the jury made a "no-liability finding" in a Title VII case, and the Fifth Circuit characterized that no-liability finding as the basis for the court's "general verdict." *Id.* However, after holding that the defendant was "not liable" for the Title VII violation, the jury awarded damages against that defendant in the amount of $25 million for a Title VII violation. The Fifth Circuit held that, based on this inconsistency, "the district court had no power to enter judgment upon receipt of the … verdict form" under Rule 49(b), and was required to instead order more jury deliberation or order a new trial:

> The jury's answers to special interrogatories were inconsistent with each other: Omni did not violate Title VII yet owed $25 million for

---

[43] R. Doc. 269.
[44] *Moses v. City of New Orleans*, 2025 U.S. Dist. LEXIS 46649, at *20 (E.D. La. Mar. 14, 2025) (emphasis added).

9

a Title VII violation. And the damages answer conflicted with the general verdict that followed from the jury's no-liability finding. Accordingly, Rule 49(b)(4) applies. Under that rule, the district court had no power to enter judgment upon receipt of the first verdict form, but it did have discretion to either order more deliberation or order a new trial. Fed. R. Civ. P. 49(b)(4).[45]

Here, just like in *Lindsley*, the jury clearly determined that the City "was liable"—providing the basis for the general verdict against the City—but afterwards, answered a special interrogatory in a way that was inconsistent with the general verdict by stating that the City, despite being liable, had not "caused" Plaintiffs' damages. Under Rule 49(b)(4), because "the answers are inconsistent with each other and one or more is also inconsistent with the general verdict, judgment must not be entered; instead, the court must direct the jury to further consider its answers and verdict, or must order a new trial." Because the jury cannot be ordered to further consider its answers and verdict at this stage, a new trial on the City's liability must be ordered if the judgment is not simply reformed to acknowledge the jury's finding of liability.

Question five should be struck from the verdict form, and the judgment amended to reflect the jury's finding that "the City of New Orleans is liable for a violation of [Plaintiff's] constitutional rights." Or alternatively, a new trial on the City's liability should be held. When looking at an inconsistent verdict form, when "the answers cannot be reconciled after a concerted effort, a new trial must be granted."[46] In that case, because the Jury's answers to questions 4 and 5 "are inconsistent with each other and one or more is also inconsistent with the general verdict,

---

[45] *Id.* (internal citations omitted).
[46] *Richard's Paint & Body Shop, LLC v. BASF Corp.*, 2012 U.S. Dist. LEXIS 158069, at *28 (W.D. Tex. Nov. 5, 2012) (ordering new trial under Rule 49 because "[t]he Jury's answers to the fraud questions (Questions Three and Six) are in direct conflict with its answers on the excuse questions (Questions Seven and Nine) since both questions required the Jury to find that BASF and FinishMaster made a material false misrepresentation to CCC.") (quoting *Guidry v. Kem Mfg. Co.*, 598 F.2d 402, 406 (5th Cir. 1979) ("[B]ecause the jury's answers to the questions reflect inconsistent fact findings, we must reverse the judgment in favor of Kem on Drackett's cross-claim for contribution and remand for a new trial with respect to that issue.")).

judgment must not be entered; instead, the court must … order a new trial."[47] The motion should be granted.

## Conclusion

The motion should be granted. The Court should render the judgment to reflect the verdict form after taking out jury questions three and five.

Respectfully submitted:

| | |
|---|---|
| */s/ William Most* | */s/ Tarak Anada* |
| WILLIAM MOST (La. Bar No. 36914) | TARAK ANADA (#31598) |
| HOPE PHELPS (La. Bar No. 37259) | PATRICK VAN BURKLEO (#41471) |
| DAVID LANSER (La. Bar No. 37764) | JONES WALKER LLP |
| MOST & ASSOCIATES | 201 St. Charles Avenue |
| 201 St. Charles Ave., Ste. 2500, # 6825 | New Orleans, Louisiana 70170-5100 |
| New Orleans, LA 70170 | Telephone: (504) 582-8322 |
| Telephone: (504) 509-5023 | Facsimile: (504) 589-8322 |
| E-Mail: williammost@gmail.com | E-Mail: tanada@joneswalker.com |

---

[47] *See Lindsley v. Omni Hotels Mgmt. Corp.,* 123 F.4th 433, 441 (5th Cir. 2024) (holding that relief under Rule 49(b)(4) was warranted because "[t]he jury's answers to special interrogatories were inconsistent with each other: Omni did not violate Title VII yet owed $25 million for a Title VII violation. And the damages answer conflicted with the general verdict that followed from the jury's no-liability finding."); *Richard v. Firestone Tire & Rubber Co.,* 853 F.2d 1258, 1259-60, 1260 n.1 (5th Cir. 1988) (finding the answers inconsistent when the jury answered "yes" to the question of whether the tire was defective and "no" to the question of whether the defect caused the plaintiff's injury but proceeded to answer that defendant was 10% at fault for the plaintiff's injury and assessed damages at $629,000).