UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK BROWN and | * | CIVIL ACTION |
| JULIA BARECKI-BROWN | * | |
| | * | DOCKET NUMBER: 22-00847 |
| VERSUS | * | |
| | * | SECTION: L |
| DERRICK BURMASTER, SHAUN | * | |
| FERGUSON, and the CITY OF | * | HONORABLE ELDON E. FALLON |
| NEW ORLEANS | * | |
| | * | DIVISION: 4 |
| | * | |
| | * | HONORABLE KAREN WELLS ROBY |

*************************************************************************

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' RULE 49 MOTION [R. DOC. 278]**

Defendants, Derrick Burmaster ("Officer Burmaster") and the City of New Orleans (the "City"), oppose Plaintiffs' Rule 49 Motion (R. Doc. 278) (the "Motion"), and respectfully offer this response.

In the Motion, Plaintiffs ask this Court to nullify the jury's verdict rendered in favor of Officer Burmaster and the City on Plaintiffs' constitutional violation claims. Plaintiffs argue two things: (1) the Verdict Form should not have asked if Officer Burmaster was "entitled to qualified immunity"; and (2) the Verdict Form should not have asked if the City's policies caused the killing of Plaintiffs' dog.

Neither of these arguments has merit. First, with respect to qualified immunity, the jury instructions and verdict form followed the Fifth Circuit Pattern Jury Charges and applicable authority, including the 2024 dog shooting case of *Ramirez v. Killian*.[1] Second, based on the jury's verdict, there can be no question that the jury concluded that the City's policies did not cause the shooting of Plaintiffs' dog. There is no inconsistency or confusion as to the result that the City is not liable based on Plaintiffs' municipal liability claim; the Judgment properly reflected this fact.

---

[1] 113 F.4th 415 (5th Cir. 2024).

1

1. **<u>Qualified Immunity was properly submitted to the jury.</u>**

Plaintiffs argue that the Judgment should be reversed because it was "an error of law" to permit the jury to consider whether Officer Burmaster was entitled to qualified immunity.[2] This is wrong. The Fifth Circuit has held "while qualified immunity ordinarily should be decided by the court long before trial, if the issue is not decided until trial the defense goes to the jury which must then determine the ***objective legal reasonableness*** of the officers' conduct."[3]

In the instant case, several disputed issues precluded this Court from deciding the qualified immunity issue. This Court previously observed that the issue of qualified immunity was "laden with competing facts, [so] summary judgment is inappropriate[.]"[4] Further, the Fifth Circuit in *Brown v. Burmaster*,[5] highlighted several factual disputes that made it appropriate for the issue of qualified immunity to be submitted to the jury, including:[6]

1. Whether "a **reasonable jury** could conclude that Burmaster did not reasonably believe that [Apollo] posed a threat."[7]

2. Whether "a **reasonable jury** could further conclude that Burmaster did not reasonably believe he was in imminent danger, based on [Apollo's] size, Burmaster's ability to exit the yard, and the availability of non-lethal tools like the taser and police boots."[8]

3. And whether "particularly in light of *Ramirez*, a reasonable jury could ultimately find that Burmaster 'seized' [Apollo] ***in violation of clearly established law***."[9]

---

[2] R. Doc. 278-1, p. 4.
[3] *McCoy v. Hernandez*, 203 F.3d 371, 376 (5th Cir. 2000) (citing *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998)). See *Melear v. Spears*, 862 F.2d 1177, 1184 (5th Cir. 1989) (where summary judgment is denied or not sought, "the trier of fact must determine the objective legal reasonableness of an officer's conduct by construing the facts in dispute."); *Presley v. City of Benbrook*, 4 F.3d 405, 409 (5th Cir. 1989) (affirming jury's finding that "a reasonable officer possessing knowledge of clearly established law and the information they knew at the time, could have believed that entry of his residence was lawful.").
[4] R. Doc. 162, p. 14 (Order and Reasons, March 29, 2023).
[5] 2025 WL 227785 (5th Cir. Jan. 17, 2025). Plaintiffs, in their Motion, fail to mention the law of the case established by *Brown*.
[6] *Id*. ("even if Burmaster had not conceded materiality, the factual dispute is material and Burmaster would not be entitled to qualified immunity.").
[7] *Id*. (emphasis added).
[8] *Id*. (emphasis added).
[9] *Id*. (emphasis added).

The jury in the instant case was properly instructed with respect to qualified immunity and the question of whether Officer Burmaster was entitled to qualified immunity was properly presented to the jury.[10]

Plaintiffs contend the Fifth Circuit's 2024 opinion in *Ramirez v. Killian*[11] changed the law as to whether a jury may properly consider the issue of qualified immunity where there are factual issues in dispute.[12] However, this is a gross misinterpretation of *Ramirez*.

In *Ramirez v. Killian*, a pet dog was shot by a police officer. Following trial, a jury determined that the officer who shot the plaintiff's pet dog was not entitled to qualified immunity.[13] However, the trial court nullified the jury's verdict by granting the officer's post-verdict motion for judgment as a matter of law based on a finding that the plaintiff "failed to identify evidence indicating that no reasonable officer could have believed shooting the Plaintiffs' pit bull to be lawful."[14] The Fifth Circuit held that this was reversible error.

The Court found that "the jury had ample evidence before it to find that qualified immunity did not apply."[15] The Court held that "[t]here is … no requirement that plaintiffs present 'evidence' to overcome **the second prong** of qualified immunity, or specifically produce officer testimony as to what a reasonable officer would regard as lawful."[16] As such, the result of the trial court's denial of the officer's motion for summary judgment was that "assuming that the plaintiff's version of

---

[10] The jury instructions in this regard were derived from the Fifth Circuit Civil Pattern Jury Instruction § 10.3. See Committee on Civil Pattern Jury Instructions, Dist. Judges Assoc. Fifth Cir., Pattern Jury Instructions (Civil Cases) PJI 10.3 (2020) (available at https://www.lb5.uscourts.gov/juryinstructions/fifth/2020civil.pdf, last visited June 30, 2025).
[11] 113 F.4th 415 (5th Cir. 2024).
[12] R. Doc. 278-1, 6-7.
[13] The instructions in *Ramirez*, like those in the instant case, were derived from the Fifth Circuit Pattern Charges, section 10.3. See *Ramirez v. Killian*, Case No. 18-cv-107, R. Doc. 130 (jury instructions) and R. Doc. 131 (verdict form) (N.D. Tex., Mar. 25, 2022).
[14] *Id*., 113 F.4th at 429.
[15] *Id*.
[16] *Id*. at 430, footnote 8 (emphasis added) (citing *McCoy v. Hernandez*, 203 F.3d 371 (5th Cir. 2000) for the proposition that "a jury could properly decide whether qualified immunity applies[.]").

the facts was true, the defendant would not be entitled to qualified immunity."[17] For that reason, the trial court had no discretion to ignore the factual determination that resulted in the verdict denying qualified immunity.

*Ramirez* therefore stands for the <u>opposite</u> of what Plaintiffs seek in this case. *Ramirez* requires that a jury resolve disputed issues, including the issue of the legal reasonableness of the officer's conduct. Accordingly, as the *Ramirez* court concluded, "The jury delivered a verdict in favor of [the plaintiffs]. That should have ended the matter."[18] Similarly, here, the jury delivered a verdict in favor of Officer Burmaster. As in *Ramirez*, that should end the matter.

Importantly, *Ramirez* relied upon *McCoy v. Hernandez,* which held that "if the issue [of Qualified Immunity] is not decided until trial the defense goes to ***the jury which must then determine the objective legal reasonableness of the officers' conduct***."[19] As such, *McCoy* further contradicts Plaintiffs' argument in this Motion that a jury should "not decide the purely legal question of whether the officer's actions were objectively reasonable in light of clearly established law[.]"[20]

Further, Plaintiffs' contention that *Ramirez* "resolved" a "confusion" as to whether qualified immunity may be presented to the jury is not correct.[21] To the contrary, less than one month after the *Ramirez* opinion was released, the Fifth Circuit issued another opinion which again emphasized that "the determination of whether an officer is entitled to qualified immunity is not the exclusive province of district courts[.]"[22] In that case, the Court explained, "in certain

---

[17] *Id.*
[18] *Id.*
[19] *McCoy v. Hernandez*, 203 F.3d at 376. See *Waganfeald v. Gusman*, 674 F.3d 475, 484 (5th Cir. 2012) (quoting *McCoy* for the proposition that a jury may "determine the objective legal reasonableness of the officer's conduct") (emphasis added).
[20] R. Doc. 278-1, p. 6 (emphasis omitted).
[21] *Id.*
[22] *Holmes v. Reddoch*, 117 F.4th 309, footnote 9 (5th Cir. 2024) (opinion issued September 6, 2024)

circumstances where there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question."[23]

Furthermore, Plaintiffs interpretation of the verdict form is misleading and illogical. According to Plaintiffs, questions one and three of the verdict form should be read together with respect to the qualified immunity analysis. However, question one only asks whether "Burmaster acted in an objectively unreasonable manner by killing Apollo" and does not mention qualified immunity. Question three is the only question that mentions qualified immunity.[24] In the jury instructions in this case, "objectively reasonable manner" is explained in a section of the jury instructions separate and apart from the section of the instructions dealing with qualified immunity.

Relevantly, the jury instructions stated:

Qualified immunity applies if a reasonable officer could have believed that the killing of Plaintiffs' pet dog Apollo was lawful in light of clearly established law and the information Defendant Derrick Burmaster possessed. …

In this case, the clearly established law at the time was that the use of deadly force against a pet dog by a police officer is not violative of the Fourth Amendment if the dog poses an immediate danger and killing it is unavoidable. …

After considering the scope of discretion and responsibility generally given to police officers in performing their duties and after considering all of the circumstances of this case as they would have reasonably appeared to defendant Derrick Burmaster at the time of the killing of plaintiffs' pet dog Apollo, if you find that Plaintiffs Derek Brown and Julie Barecki-Brown failed to prove that no reasonable officer could have believed that the killing of their pet dog Apollo was lawful, then Defendant Derrick Burmaster is entitled to qualified immunity, and your verdict must be for Defendant Derrick Burmaster on those claims.[25]

---

[23] *Holmes*, footnote 9 (quoting *Kokesh v. Curlee*, 14 F.4th 382, 391–92 (5th Cir. 2021), and citing *McCoy v. Hernandez*) (bracket omitted).
[24] R. Doc. 269, p. 1.
[25] See R. Doc. 274-1 (Final Draft - Jury Charges), p. 17-18 (sent to counsel by Cameron Ott via email on June 12, 2025, at 10:07 a.m.).

It is apparent that the facts considered by the jury with respect to question one were different than those with respect to question three. Given this distinction, there is no reason to conclude that question one is part of the qualified immunity analysis.

Courts in this district have previously rejected the same argument being proposed in Plaintiffs' Motion. For example, in *Matthews v. LeBlanc*,[26] Judge Africk rejected the notion that "the issue of qualified immunity is a question of law for the Court to decide and that, as such, the issue cannot be presented to the jury."[27] In *Matthews*, the Court held that qualified immunity may be addressed by the jury where the court is "unable to make the determination of the objective reasonableness of the officer's activities 'without settling on a coherent view of what happened in the first place[.]'"[28] The Court concluded:

> When there is general agreement as to the factual events that gave rise to the lawsuit, the issue of qualified immunity should be decided as a matter of law by the court via pretrial motion at the earliest possible stage. When, however, the underlying facts of the case are in dispute and the issue has not been decided before trial, qualified immunity may be sent to the jury.[29]

The circumstances in the instant case are the same as in *Matthews*. In the instant case, this Court denied both parties' cross motions for summary judgment and required the issue of qualified immunity to be submitted to the jury. Ultimately, the issue of qualified immunity was properly submitted to the jury.[30]

Alternatively, Plaintiffs assert that the parties reached a "stipulation" that precluded the jury from considering the issue of qualified immunity. As an initial matter, Defendants deny that

---

[26] 2018 WL 2198508 (E.D. La. May 14, 2018) (Judge Africk).
[27] *Id*. at *1,
[28] *Id*. at 2 (citing *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). Contrast *Tamez v. City of San Marcos*, 118 F.3d 1085, 1094 (5th Cir. 1997) (cited by Plaintiffs) ("[t]he jury did not need to sit as a factfinder to determine whether [] facts and circumstances existed, because the parties agree on virtually all relevant facts" and it therefore may be error to "instruct[] the jury to answer both the factual question and the legal question[.]").
[29] *Id*., *2 (punctuation and citation omitted).
[30]

6

they waived their right to have the jury consider qualified immunity in accordance with Fifth Circuit precedent. Contrary to Plaintiffs' assertion, the language relied upon by Plaintiffs was not a stipulation, but rather was part of the "Jury Statement."[31] In any event, it was Defendants' intent that at trial the jury would consider the disputed factual issues concerning qualified immunity and the Court would resolve questions of law, as is the common practice for jury trials.

The Court has wide discretion to interpret its pretrial order.[32] As a result, when Plaintiffs objected to the introduction of evidence at trial based on the "Jury Statement," the Court reasonably interpreted the pretrial order to allow for the jury to consider all issues relating to qualified immunity other than the purely legal ones.

In any event, Plaintiffs, by arguing that the issue of qualified immunity is a question of law for this Court to decide, invite this Court to rule that Officer Burmaster is entitled to qualified immunity as a matter of law. Such a ruling granting Officer Burmaster qualified immunity as a matter of law would be appropriate given the jury's verdict. The jury, after four days of trial, concluded that Officer Burmaster was entitled to qualified immunity.[33] In so deciding, the jury resolved disputed factual questions of whether Officer Burmaster reasonably believed Apollo posed an immediate danger to him, whether killing the dog was unavoidable, and whether any reasonable officer could have reached the same conclusion. Ample evidence supported the jury's verdict. This evidence included two videos of the incident, testimony of witnesses who opined regarding the actions of Officer Burmaster, and testimony of witness who described the lack of alternatives available to Officer Burmaster to avoid shooting the dog. Plaintiffs' own expert

---

[31] R. Doc. 228, p. 21. See *Williams v. Sake Hibachi Sushi & Bar, Inc*., 574 F.Supp.3d 395, 401 (N.D. Tex., 2021) (portion of pretrial order found in "summary of the issues" is not a stipulation).
[32] See *Hall v. State Farm Fire & Cas. Co*., 937 F.2d 210, 213 (5th Cir. 1991) (A trial court has great discretion in interpreting a pretrial order.").
[33] R. Doc. 269, p. 1, number 3

provided testimony that supported Officer Burmaster's decision not to run away when Apollo ran at him. If the Court determines that there remains a legal issue to be resolved, then the jury's factual conclusions should not be discounted. As a result, this Court's ruling should be consistent with the jury's verdict that Officer Burmaster is entitled to qualified immunity.

    **3. Question 5 of the Jury Verdict Form should not be struck because the jury unquestionably intended to render a verdict that the City's policies did not cause the killing of Plaintiffs' dog.**

Plaintiffs, in the Motion, argue that this Court erred by adopting the jury's verdict in favor of the City on the 42 U.S.C. § 1983 constitutional violation claim finding that "the City's policies with respect to the training, supervision, and/or discipline of Burmaster did not cause the shooting of Apollo."[34] In support of this argument, Plaintiffs posit that the jury, in its answer to Verdict question four, entered a "general verdict" that the City was "liable" for a violation of Plaintiffs' constitutional rights due to training, supervising, and training of Officer Burmaster.[35] Plaintiffs contend that the jury's answer to Verdict question 5, which concluded that the Plaintiffs failed to prove that the City's policies caused the killing of Plaintiffs dog, should be disregarded because, according to Plaintiffs, it is inconsistent with the "general verdict."

Defendants disagree with Plaintiffs' premise that question 4 of the verdict was a "general verdict." "Verdict forms are considered part of the jury instruction," reviewed in light of the instruction as a whole.[36] In reviewing jury answers to special verdicts, courts must make a "concerted effort to reconcile apparent inconsistencies if at all possible."[37] In this respect, a court should ask whether "the answers may fairly be said to represent a logical and probable decision on

---

[34] R. Doc. 277, p. 1.
[35] R. Doc. 278-1, p. 9.
[36] *Matter of 3 Star Props.*, L.L.C., 6 F.4th 595, 610 (5th Cir. 2021).
[37] *Snyder v. Trepagnier*, 142 F.3d at 800 (quoting *Alverez v. J. Ray McDermott & Co.*, 674 F.2d 1037, 1040 (5th Cir. 1982)).

8

the relevant issues as submitted, even though the form of the issue or alternative selective answers prescribed by the judge may have been the likely cause of the difficulty and largely produced the apparent conflict."[38] Only if there is no view of the case that will make the jury's answers consistent may a court set aside the jury's decision.[39]

In the instant case, based on a reasonable reading of the verdict form in conjunction with the jury instructions, it is reasonable that question 4 was a special interrogatory that merely asked if the City's policies violated Plaintiff's constitutional rights. In this logical and probable interpretation, there is no inconsistency and no reason to negate the jury's verdict. It is not inconsistent that the jury may have concluded that the City's policies may have been deficient but did not cause the shooting of the dog. In fact, this verdict is fully consistent with the jury's apportionment of fault, where the jury determined that Officer Burmaster was 40% at fault, the Plaintiffs were 50% at fault, and Officer Burmaster's partner was 10% at fault. As such, the judgment entered by this Court was proper under Rule 49(b)(2), which provides that "When the general verdict and the answers are consistent, the court must approve, for entry under Rule 58, an appropriate judgment on the verdict and answers."

However, even assuming, as Plaintiffs contend, that question 4 of the Verdict form was a "general verdict," the Plaintiffs are incorrect in their assertion that the jury's answer to question 5 should be "struck from the verdict form" because of a supposed inconsistency.[40] Pursuant to Rule 49(b)(3), "When the [verdict] answers are consistent with each other but one or more is inconsistent with the general verdict, the court may [among other things] (A) approve, for entry under Rule 58, an appropriate judgment according to the answers, notwithstanding the general

---

[38] *Id.* (quoting *Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir.1973)).
[39] *Id.*
[40] R. Doc. 278-1, p. 10.

verdict." Here, it is clear based on the answer to question 5 that the jury specifically decided that the City's policies did not cause the shooting of Plaintiffs' dog. As Plaintiffs concede, causation is a required element for their municipal liability claim.[41] Thus, the Court's judgment in favor of the City on the Section 1983 constitutional claim was appropriate and was authorized by Rule 49(b)(3)(A).

A party challenging jury instructions "must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations."[42] A court should uphold a jury verdict "unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did" or "the legal conclusions implied from the jury's verdict cannot in law be supported by those findings."[43] Plaintiffs have failed to carry their burden to demonstrate that "substantial and ineradicable doubt" exists whether the jury has been properly guided in its deliberations. Their Motion should be denied.

Respectfully submitted:

*/s/ James M. Roquemore*
**JAMES M. ROQUEMORE, LSB #40035**
DEPUTY CITY ATTORNEY
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET, SUITE 5E03
NEW ORLEANS, LOUISIANA 70112
TEL: (504) 658-9800
FACSIMILE: (504) 658-9868
James.Roquemore@nola.gov
*Counsel for Derrick Burmaster and the City of New Orleans*

---

[41] See R. Doc. 278-1, p. 8 ("an elementary principle of municipal liability under Section 1983 is the requirement of 'direct causation.'") (quoting *Mercer v. Long Mfg. N.C., Inc*. 671 F.2d 946, 948 n.1 (5th Cir. 1982)).
[42] *RSBCO v. United States*, 104 F.4th 551, 555 (5th Cir. 2024) (citation omitted), cert. denied, No. 24-561, 2025 WL 76488 (U.S. Jan. 13, 2025).
[43] *Lindsley v. Omni Hotels Management Corporation*, 123 4th Cir. 433, 438-39 (5th Cir. 2024).

10