**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **DEREK AND JULIA BARECKI BROWN** | * | **CIVIL ACTION** |
| | * | **No. 22-00847** |
| **VERSUS** | * | |
| | * | **SECTION: "L" (4)** |
| **DERRICK BURMASTER, SHAUN FERGUSON AND THE CITY OF NEW ORLEANS** | * | |
| * * * * * * | * | |

**CITY OF NEW ORLEANS' OPPOSITION TO**
**PLAINTIFFS' MOTION FOR LIMITED DISCOVERY**

The City of New Orleans respectfully submits this memorandum in opposition to Plaintiffs' Motion for Limited Discovery, which asks the Court to reopen discovery on the eve of the January 12, 2027 trial. (R. Doc. 310). The motion should be denied.

Plaintiffs' motion was filed after the October 17, 2026 arrest of Derrick Burmaster ("Burmaster"). (R. Doc. 310-1, p. 2). Burmaster's arrest concerns a domestic incident that occurred while he was off-duty. Plaintiffs reference the fact that he allegedly "was accused of drunkenly using his 'NOPD-issued firearm'" during the incident in a blatant attempt to create a nexus between his conduct and the NOPD. *Id.*

In the wake of news coverage following the 2026 arrest, a person identifying himself as "Michael Burden" posted a comment on a Facebook post, stating that "20 years ago," "[i]n [K]enner," Officer Burmaster "beat his wife," that "Kenner cops came," that Burmaster "was able to reverse the cuffs on to [K]enner police," and that "[h]e was demoted from detective down to traffic." *Id*. at 3. Plaintiffs' counsel claims to have spoken with Mr. Burden by telephone and then Plaintiffs' counsel filed his own declaration recounting what Mr. Burden "reported" and what Mr. Burden "heard." *Id*. Per counsel's hearsay declaration, when a Kenner officer went to handcuff

Burmaster twenty years ago, Burmaster allegedly performed a maneuver to escape the cuffs and placed them on the Kenner officer; the charges were "dropped," and Mr. Burden "heard" that Burmaster was demoted. (R. Doc. 310-2, p. 2).

Although the Declaration of William Most asserts that is based on personal knowledge; counsel only relays what Mr. Burden allegedly told him, which at best relies on additional hearsay -- i.e., what Mr. Burden "heard." *Id*. Relying solely on hearsay, Plaintiffs ask the Court to reopen discovery so they can investigate the veracity of a Facebook comment from an unknown individual who claims to have knowledge of Burmaster's job assignment and his belief that his duties were changed following a domestic incident that occurred twenty years ago.

As acknowledged by Plaintiffs' counsel, Burmaster was questioned about his arrest during his March 10, 2023, deposition. Burmaster testified that he was arrested for "simple battery, domestic." (R. Doc. 310-1, pp. 4-5). In response to the testimony, Plaintiff's counsel posed no follow-up questions to attempt to ascertain where the arrest occurred or who was allegedly battered. But without any evidence, Plaintiffs' counsel claims that "[Burmaster] declined to mention that he had engaged in a battery on an officer and been demoted for it." *Id*. It is not atypical that a witness may fail to answer a question that was never asked. Indeed, Plaintiffs' counsel had the opportunity to ask when the domestic incident occurred, who was involved in the domestic incident, who made the arrest, the location of the arrest, and whether the incident resulted in any employment action, but he did not. Plaintiff's counsel continues: "Plaintiffs missed out on the opportunity to depose witnesses (sic) conduct discovery (sic) this incident." *Id*. However, Plaintiffs' counsel's failure to properly frame his questions during the deposition is not the fault of any defendant. The City agrees that Plaintiffs' counsel missed an opportunity to discover more information about this arrest during the deposition that occurred three years ago. However, review

of the transcript related to this issue readily demonstrates that is a problem of Plaintiffs' counsel's making. As shown below, Plaintiffs' counsel routinely asks leading questions and the responses to leading questions are generally yes or no answers. There is no basis to award Plaintiffs the proverbial second bite at the apple.

**LAW & ARGUMENT**

Plaintiffs' motion rests entirely on inadmissible hearsay. Plaintiffs support the motion not with a declaration from the witness but rather with counsel's declaration, which merely repeats what a self-identified former neighbor told counsel by telephone. The purported statements of the alleged neighbor repeat what that neighbor claims to have "heard" two decades prior. This is textbook double or even triple hearsay, offered by an attorney declarant who has no personal knowledge of any underlying fact. If the alleged twenty-year-old battery of two (2) people – Burmaster's then wife and a Kenner police officer – occurred, this event would have generated both Kenner police and court records, but counsel for Plaintiff made no showing that those public records of an entirely different jurisdiction were sought or are available. The City theorizes that Plaintiffs' counsel avoided attempting to discover those public records because the motion reflects that "[t]he charges were dropped," which completely begs the question whether any criminal activity even occurred. The fact that the City of Kenner and/or the Jefferson Parish District Attorney's Office "dropped" the charges conclusively indicates that Burmaster is not guilty of the alleged criminal activity that purportedly occurred twenty years ago.

Regardless, the alleged Kenner incident – which allegedly occurred on an undetermined date twenty years ago – is clearly a personal, domestic matter that has nothing to do with Officer Burmaster's exercise of NOPD police authority, the investigation was handled by a different police department, the investigation did not result in a criminal conviction, and this alleged Kenner

incident bears no resemblance to the conduct underlying Plaintiffs' *Monell* claim. The incident that allegedly occurred twenty years ago cannot establish the pattern of similar violations that a failure-to-supervise or failure-to-train claim requires, and reopening discovery to pursue it would be pointless. Moreover, even if true, an incident which occurred over twenty years ago logically cannot serve as "an escalation of the other incidents in the pattern" as Plaintiffs claim. *Id.* at 4.

Plaintiffs' counsel intimates that the Defendants engaged in "sanctionable discovery misconduct." *Id*. at 4. Plaintiffs' position is not only false, but it is also offensive to counsel for the City. The City responded to Plaintiffs discovery and produced all documents that were available. Burmaster also appeared at a deposition and answered counsel's questions. Fact discovery in this case closed years ago and the mandate issued by the 5th Circuit does not authorize discovery. The Fifth Circuit's mandate rule requires a district court on remand to effect the appellate mandate and do nothing else. *Collins v. Lew*, 642 F. Supp. 3d 577 (S.D. Tex. 2022).

Reopening discovery would not only violate the mandate rule; it would force the City to litigate a two-decades-old collateral matter on the eve of trial. In *Marathon Fin. Ins., Inc., RRG v. Ford Motor Co*, the Fifth Circuit affirmed the denial of a motion to reopen discovery, faulting the movant for failing to timely engage in discovery. 591 F. 3d 458, 469–470 (5th Cir. 2009). The court underscored that a litigant with ample opportunity to pursue the issue earlier cannot wait until "the eve of trial" to seek relief. *Id*. at 470–471. Plaintiffs' belated request fails for the same reason.

**I. The motion is not supported by competent evidence.**

The declarant – Plaintiffs' counsel – has no personal knowledge of the alleged Kenner events; his declaration relays what Mr. Burden told him based upon what Mr. Burden claims to have observed and "heard." That is "inadmissible hearsay within hearsay," and under Federal Rule

of Evidence 805 "both levels of hearsay must come within exceptions to the hearsay rule." *Furlow v. Bullzeye Oilfield Serv., LLC*, 2017 WL 11049242 (W.D. Tex. Aug. 4, 2017); Fed. R. Evid. 805. Where an affiant "was not present" at the underlying events, "any information regarding those events could have been obtained only through hearsay," and the affidavit "is not admissible." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507–508 (5th Cir. 2008). An attorney's declaration that is not based on personal knowledge is properly disregarded – "[t]he lawyer's affidavit, being hearsay, is no evidence at all." *Tate v. Starks*, 444 F. App'x 720, 727 (5th Cir. 2011). That is exactly the posture here.

If, as alleged, Burmaster was arrested in Kenner, committed a battery on a Kenner officer, and was demoted, those events would have generated Kenner Police Department and court records. Yet the City trusts Plaintiffs never obtained, or even requested, the records from the jurisdiction that would hold them. As shown in subsection III below, Plaintiffs had the opportunity to discover this information during the deposition of Burmaster. Given the questions posed by Plaintiffs' counsel about the event were clearly insufficient, they now attempt to rely on a neighbor's twenty-year-old recollection of what he "heard," which is nothing more than classic inadmissible hearsay.

**II. The alleged Kenner domestic incident is irrelevant to Plaintiffs' *Monell* claim.**

Even if the alleged incident could be competently proven, it could not advance Plaintiffs' *Monell* claim, so reopening discovery to pursue it would serve no purpose.

The alleged Kenner incident concerns a domestic dispute that allegedly occurred twenty years ago between Burmaster and his then-wife, followed by an alleged struggle with a responding officer. It did not involve the use of police force in the course of NOPD duties, and it bears no resemblance to the conduct underlying this case. The Fifth Circuit has squarely held that an officer's prior off-duty act of "pull[ing] a gun on another driver following a routine traffic

accident" "lack[s] 'similarity and specificity'" and does "not point to the specific violation in question," and therefore cannot support a failure-to-train, failure-to-supervise, or failure-to-discipline pattern. *Edwards v. City of Balch Springs, Texas*, 70 F.4th 302, 313–314 (5th Cir. 2023). Likewise, Burmaster's off-duty domestic dispute twenty years ago does not relate to the shooting of a dog that he believed was a threat to his safety.

Plaintiffs have also made no showing that the alleged domestic event fell within NOPD's supervisory authority or furnished NOPD notice of any risk. Furthermore, the incident allegedly occurred in Kenner and was handled by the Kenner Police Department – a wholly different department – and the only suggestion that any demotion followed comes from a neighbor's account of what he "heard." Plaintiffs do not explain how an off-duty domestic matter policed by another jurisdiction put NOPD on notice of a need to train or supervise Officer Burmaster differently in the use of force, or how any failure to do so relates to the conduct at issue in this case.

Finally, Plaintiffs' other rationale – that the incident bears on Burmaster's "credibility as a witness" – does not justify reopening discovery. (R. Doc. 310-1, p. 4). The incident has no bearing on Burmaster's credibility. Plaintiffs do not identify any prior statement, inconsistency, or act of untruthfulness that the incident would impeach. Their true aim is to attack Burmaster's character, not his credibility – and Plaintiffs desire to attack Burmaster's character is not a proper basis for reopening discovery on the eve of trial.

**III. Burmaster was questioned about this incident on March 10, 2023.**

As acknowledged by counsel, Plaintiffs were afforded the opportunity to ask about this incident. During Burmaster's deposition, Plaintiffs' counsel elicited the following testimony in response to the questions posed by Plaintiffs' counsel:

Q. Yeah. And this is a -- a question I ask of all witnesses. It's not specific to you, but have you ever been arrested?

A. Yes.

Q. What were you arrested for?

A. Simple battery, domestic.

Q. And when was that?

A. I would have to look that up.

Q. Was it in the last two years?

A. No. It was many years ago. My partner got shot and it was the -- the morning after he got shot.

---



Q. So your partner at the police department got shot on the job and the next day you were arrested for simple battery?

A. Yeah. He -- He was -- Yeah. He was sitting in the car next to me when he got shot.

Q. Okay. So your -- Many years ago, your partner was sitting next to you, got shot, and then the next day, you were arrested for simple battery, domestic?

A. Yes.

Q. Okay. Did you have an altercation with your romantic partner in between your partner getting shot and your arrest?

A. Yes. There was an altercation in the house.

Q. Okay. And were the charges accepted for that?

A. No.

Q. So you were never convicted of that?

A. Correct.

Q. Have you ever been arrested for anything else?

A. No.

Q. And you said your job title now is senior officer; is that correct?

This exchange makes clear that Plaintiffs' counsel was aware of the arrest, failed to seek any additional information about the alleged simple battery during the deposition, and made the decision to only ask leading questions about what he already knew about that event. It was Plaintiffs' counsel's decision to limit his questioning, and his failure to fully inquire about the event while he had Burmaster under oath is a problem of his own making. Had Plaintiffs' counsel inquired further about the event, Burmaster would have undoubtedly answered the additional questions. For instance, Plaintiffs' counsel could have asked Burmaster to tell him about what led to the cops being called, the arrest, and the prosecution, if any. However, as shown above, Plaintiffs' counsel decided to mostly rely on leading questions – which require only a yes or no answer – and the form of his questioning is solely his decision.

In *Leza v. City of Laredo*, 496 F. App'x 375 (5th Cir. 2012), the Fifth Circuit affirmed the denial of a motion to reopen discovery where the plaintiff sought additional discovery after retaining new counsel following his original attorney's suspension from practice. The court held that a party seeking to reopen discovery based on prior counsel's alleged inadequacy must make specific allegations that the action or inaction of the previous attorney negatively impacted the case. This principle extends naturally to situations where counsel – who has been on the case since day one – conducted a deposition but failed to ask all the questions that, in hindsight, would have been appropriate. Plaintiffs noticed a deposition of Burmaster in early 2023, the deposition was taken, the opportunity to examine the witness was available, and counsel's failure to fully exploit that opportunity was a strategic decision or tactical shortcoming that does not constitute good cause to reopen discovery.

Discovery should not be reopened because Plaintiffs' counsel missed an opportunity to discover information that they clearly had the opportunity to discover over three years ago. Had

Plaintiffs' counsel asked different questions about the event, perhaps they could have sought the arrest record related to this incident, a copy of any incident report, or any court record concerning the alleged event. Counsel's failure to fully explore a witness' testimony during the discovery period does not warrant reopening discovery to correct the party's mistake.

**CONCLUSION**

For all of the foregoing reasons, this Court should reject Plaintiffs' request that discovery be reopened.

Respectfully submitted,

*/s/ Corwin St. Raymond*

**CORWIN ST. RAYMOND, LSB# 31330**
CHIEF DEPUTY CITY ATTORNEY
1300 Perdido Street, Ste. 5E03
New Orleans, Louisiana 70112
Telephone: 504-658-9920
Facsimile: 504-658-9868
cmstraymond@nola.gov